## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **TRI-M GROUP, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-556-KAJ** |
| | ) | |
| **THOMAS B. SHARP, SECRETARY,** | ) | |
| **DELAWARE DEPARTMENT OF** | ) | |
| **LABOR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT THOMAS B. SHARP'S
## <u>BRIEF IN SUPPORT OF HIS MOTION TO DISMISS</u>

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

Linda M. Carmichael, I.D. #3570
Deputy Attorney General
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302)577-8400
Counsel for Defendant

DATED: October 27, 2006

## **TABLE OF CONTENTS**

TABLE OF CITATIONS ................................................................. ii

NATURE AND STAGE OF THE PROCEEDINGS ......................................... 1

SUMMARY OF THE ARGUMENT ...................................................... 2

STATEMENT OF FACTS ............................................................. 3

ARGUMENT ....................................................................... 6

       STANDARD OF REVIEW ...................................................... 6

       a.     Federal Rule of Civil Procedure 12(b)(1) ..................................... 6

       b.     Federal Rule of Civil Procedure 12(b)(6) ..................................... 7

I.     PLAINTIFF'S COMPLAINT ASSERTED UNDER 42 U.S.C. § 1983 MUST BE DISMISSED AS THOMAS B. SHARP, SECRETARY OF LABOR IS NOT A "PERSON" SUBJECT TO SUIT UNDER 42 U.S.C. § 1983 ................................................................... 9

II.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THE SECRETARY OF LABOR SUED IN HIS OFFICIAL CAPACITY IS IMMUNE FROM LIABILITY UNDER THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE DOCTRINE OF SOVEREIGN IMMUNITY ............................... 10

III.   EVEN IF THE SECRETARY OF LABOR HAD BEEN SUED IN HIS INDIVIDUAL CAPACITY, HE WOULD BE IMMUNE FROM SUIT UNDER THE DOCTRINE OF QUALIFIED IMMUNITY ................... 11

IV.   DISMISSAL IS APPROPRIATE BECAUSE PLAINTIFF'S SUIT IS NOT RIPE NOR DOES PLAINTIFF HAVE STANDING ..................... 12

       a.     No actual controversy that is ripe for judicial decision exists ........... 13

       b.     Plaintiff lacks standing to bring this litigation ................................. 17

V.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ............................................................... 19

CONCLUSION ..................................................................... 21

## <u>TABLE OF CITATIONS</u>

<u>CASES</u>

Albright v. Oliver, 510 U.S. 266 (1994) .............................................................12

American Civil Liberties Union v. The Florida Bar, 999 F.2d 1486 (11th Cir.1993)........16

Ashwander v. TVA, 297 U.S. 288 (1936) .......................................................13

Baker v. Carr, 369 U.S. 186 ...........................................................................17

Bell v. Hood, 327 U.S. 678 (1946) ..................................................................6

Calif, Div. of Labor Standards enforcement v. Dillingham constr. N.A., Inc. 519
    U.S. 316 (1997) .....................................................................................19

City of Los Angeles v. Lyons, 461 U.S. 95 (1983) .............................................7

Conley v. Gibson, 355 U.S. 41 (1957)..............................................................8

Coxson v. Commonwealth of Pennsylvania, 935 F.Supp. 624 (W.D. Pa. 1996) ...............6

Davis v. Scherer, 468 U.S. 183 (1984) ..............................................................8

Edelman v. Jordan, 415 U.S. 651 (1974) .........................................................10

Elk Grove Unified School Dist. V. Newdow, 542 U.S. 1 (2004)....................................12

Gregory Electric Company, Inc. v. U.S. Dep't of Labor, 268 F. Supp.
    987 (S.C. 1967) ................................................................................18, 19

Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277 (3d Cir. 1993) ...............6

Harlow v. Fitzgerald, 457 U.S. 800 (1982).......................................................12

Hiland Dairy, Inc. v. Kroger Co.,
    402 F.2d 968 (8th Cir. 1968), cert. denied, 395 U.S. 961 (1969) ...........................8

KVUE, Inc. v. Moore, 709 F.2d 922 (5th Cir. 1983).........................................14

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406 (3d Cir. 1991) ...........................6, 7

Kimel v. Florida Bd. of Regents, 528 U.S. 62 (2000) ........................................10

Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994)....................................6

Lee v. Mihalich, 847 F.2d 66 (3d Cir. 1988) ...............................................................11, 12

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ........................................................7

Miller v. City of Philadelphia, 174 F.3d 368 (3d Cir. 1999) ......................................11, 12

Mortensen v. First Federal Savings & Loan Assoc., 549 F.2d 884 (3d Cir. 1977) ............6

Neeley v. Samis, 183 F.Supp. 2d 672 (D.Del. 2002).......................................................10

Pauling v. McElroy, 278 F.2d 252 (D.C. Cir. 1960), *cert. denied*, 364 U.S. 835 (1960)....8

Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984) .....................10, 11

Poe v. Ullman, 367 U.S. 497 (1961)................................................................................13

Reno v. Catholic Social Servs., Inc., 509 U.S. 43 (1993)...................................................6

Ryan v. Burlington County, 889 F.2d 1286 (3d Cir. 1989)...............................................11

Salvation Army v. Dep't of Community Affairs of the State of N.J.,
      919 F.2d 183 (3d Cir. 1990)..............................................................................13, 14

Scheuer v. Rhodes, 416 U.S. 232 (1974),
      *overruled on other grounds*, Davis v. Scherer, 468 U.S. 183 (1984) .....................8

Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996).................................................10

Signore v. City of McKeesport, Pa.,
      680 F.Supp. 200 (W.D.Pa. 1988), *aff'd*, 877 F.2d 54 (3d Cir. 1989) .....................8

Slack v. McDaniel, 529 U.S. 437 (2000)..........................................................................13

Step-Saver Data System, Inc. v. Wyse Technology, 912 F.2d 643
      (3d. Cir. 1990)......................................................................................... passim

Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,
      140 F.3d 478 (3d Cir. 1998).....................................................................................8

Warth v. Seldin, 422 U.S. 490 (1975)................................................................................7

Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989) ...............................................9

Winterberg v. CNA Ins. Co., 868 F.Supp. 713 (E.D.Pa. 1994)......................................7, 8

Wyatt, Virgin Islands, Inc. v. Gov't of the Virgin Isalands, 385 F.3d 801
    (3d Cir. 2004)................................................................................................16

Younger v. Harris, 401 U.S. 37 (1971)...............................................................14

STATUTES AND OTHER AUTHORITIES

United States Constitution, Art. I § 8, Cl. 3 .............................................1, 5, 10

United States Constitution, Art. III .................................................................7, 10

United States Constitution, Eleventh Amendment .................................9, 10, 11

United States Constitution, Fourteenth Amendment .......................................11

28 U.S.C. § 2201(a) .........................................................................................13

29 U.S.C.A. § 50............................................................................15, 17, 18, 19, 20

42 U.S.C. § 1983 ....................................................................................... passim

29 Del. C. § 6960(10)(a) ....................................................................................3

29 Del. C. § 6960(12)(a) ....................................................................................4

29 Del. C. § 6960(12)(b)....................................................................................4

Fed. R. Civ. P. 12(b)(1)..............................................................................6, 7, 17

Fed. R. Civ. P. 12(b)(6).......................................................................................7

29 C.F.R. 29.1 (a)(b) .........................................................................................17

29 C.F.R. 29.2(o) ...............................................................................................18

Delaware Apprenticeship and Training Rules and Regulations, Section 1.2 ...................20

Delaware Apprenticeship and Training Rules and Regulations, Section 3.1 .................3, 9

Delaware Prevailing Wage Regulations, Section III.D.1.a............................................3, 9

Pennsylvania Apprenticeship and Training Act, Act of 1961, P.L. 604, No. 304
    Section 8.............................................................................................................20

10 A C. Wright, A. Miller &  M. Kane Federal Practice and Procedure § 2757

(2d ed. 1983) ...........................................................................................................15

## NATURE AND STATE OF THE PROCEEDINGS

Plaintiff Tri-M Group, LLC ("Tri-M") filed its complaint on or about September 7, 2006, challenging the validity of various statutes contained in Title 29, Delaware Code, known as the Prevailing Wage Law, and Rules and Regulations governing Delaware Apprenticeship and Training.  D.I. 1.  Plaintiff's complaint alleges a violation of its civil rights under 42 U.S.C. § 1983 and seeks a declaratory judgment that certain section of Delaware's Prevailing Wage Regulations, and Apprenticeship and Training Rules and Regulations violate the Commerce Clause of the United States Constitution, U.S. Const. art. 1, § 8, cl. 3, in that plaintiff has been deprived of its right to engage in interstate commerce.  (D.I. 1).  Plaintiff also seeks compensatory damages and attorney's fees.  D.I. 1.

Plaintiff named Thomas B. Sharp, in his official capacity as Delaware's Secretary of Labor, as a defendant.   Plaintiff alleges that Secretary Sharp acted under color of state law when he enforced or supervised the enforcement of the regulations challenged herein. D.I. 1, par. 36.  This is State Defendant's Brief in Support of his Motion to Dismiss.

## <u>SUMMARY OF ARGUMENT</u>

I.    **PLAINTIFF'S COMPLAINT ASSERTED UNDER 42 U.S.C. § 1983 MUST BE DISMISSED AS THOMAS B. SHARP, SECRETARY OF LABOR IS NOT A "PERSON" SUBJECT TO SUIT UNDER 42 U.S.C. § 1983.**

II.    **PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THE SECRETARY OF LABOR SUED IN HIS OFFICIAL CAPACITY IS IMMUNE FROM LIABILITY UNDER THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE DOCTRINE OF SOVEREIGN IMMUNITY.**

III.    **EVEN IF THE SECRETARY OF LABOR HAD BEEN SUED IN HIS INDIVIDUAL CAPACITY, HE WOULD BE IMMUNE FROM SUIT UNDER THE DOCTRINE OF QUALIFIED IMMUNITY**

IV.    **DISMISSAL IS APPROPRIATE BECAUSE PLAINTIFF SUIT IS NOT RIPE NOR DOES PLAINTIFF HAVE STANDING.**

V.    **PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**STATEMENT OF FACTS**

Plaintiff Tri-M Group, LLC alleges that Section III.D.1.a of the Delaware Prevailing Wage Regulations and Section 3.1 of the Delaware Apprenticeship and Training Rules and Regulations (collectively "Regulations") violate the Commerce Clause of the United States Constitution and Tri-M's civil rights. D.I. 1.  As such, Plaintiff seeks declaratory and injunctive relief, and compensatory damages.  Plaintiff specifically requests that this court (1) declare the Regulations unconstitutional under the Commerce Clause, (2) permanently enjoin Secretary Sharp, in his capacity as Secretary of the Delaware Department of Labor, from requiring contractors to pay journeyman's prevailing wage rates to apprentices registered in states other than Delaware, and (3) permanently enjoin Secretary Sharp, in his capacity as Secretary of the Delaware Department of Labor, from initiating or maintaining enforcement proceedings of any kind against Tri-M based upon Tri-M's use of apprentices registered in Pennsylvania, and the reversal of any order or citation against Tri-M based on such findings or allegations. *Id*.

Tri-M, a Pennsylvania limited liability company, bid on and was awarded a State project – the Delaware Veterans Homes (the "Project"). *Id*. at par. 2, 8.  The bidding procedures are set forth in statute.  "In the case of any public works contract for the construction, reconstruction, alteration or repair of any public building (not a road, street or highway) the agency shall call a meeting of all prospective bidders upon reasonable notice and at a place and time stated in the notice. The meeting shall be at least 15 days before the date for the submission of bids."  29 Del. C. § 6960 (10)(a).  Thereafter, "[b]ids shall be opened publicly and the contractor and the total bid price or the contractor, based bid, and alternate price should be read aloud at the time and place

designated in the plans and specifications." 29 Del. C. § 6960(12)(a). After the bid opening, bids are unconditionally accepted without alteration – "no corrections in bid prices or other provisions of bids prejudicial to the interest of the State or fair competition shall be permitted." 29 Del. C. § 6960(12)(b).

Tri-M was the successful bidder for the electrical work on the Project. D.I. 1, par. 8. Tri-M began work on the Project in on or about August 26, 2005. *Id.* In May 2006, a Labor Law Enforcement Officer from Delaware Department of Labor ("DDOL") conducted a prevailing wage compliance audit of Tri-M's payroll records. *Id.*, par. 10. On May 9, 2006, the DDOL sent a letter to Tri-M detailing certain deficiencies found after a review of Tri-M's payroll records. D.I. 1, Exhibit A. Specifically, Tri-M was not paying the prevailing rate for electricians on the Project, and Tri-M was paying unregistered apprentices the apprentice rate instead of the prevailing wage for electricians. *Id.* In order to come into compliance, DDOL requested Tri-M perform a self-audit and provide evidence of its self-audit results for DDOL review. *Id.* In response to the May 9, 2006 letter requesting Tri-M perform a self-audit, the DDOL on May 19, 2006, received payrolls checks from Tri-M for Tri-M's six (6) unregistered Delaware apprentices. D.I. 1, Exhibit B. Tri-M did not contest the DDOL"s classification of its workers as unregistered apprentices prior to providing the self audit and the supplemental paychecks for these six individuals.

Tri-M's Safety and Health Specialist, Mark Weaber, contacted Kevin Calio, DDOL's Manager of Apprenticeship and Training and stated that Tri-M was losing money on the Project and needed to register its apprentices in Delaware to be able to pay the lower apprentice rate in order to show a profit. D.I. 1, Exhibit C. Mr. Calio informed

Mr. Weaber that Tri-M is required to become a registered sponsor before it can register its Pennsylvania apprentices in Delaware. *Id*., par. 19. One requirement of a registered sponsor is that Tri-M has a permanent place of business in Delaware. *Id*. Mr. Weaber asked if Tri-M's site trailer, which has been on AstraZeneca's property in Delaware for many years could serve as its permanent place of business. D.I.1, Exhibit C. Mr. Calio informed Mr. Weaber that "site trailers" were specifically excluded by the Apprenticeship and Training Rules and Regulations. *Id*.

Thereafter, Tri-M's counsel wrote to Secretary Sharp stating that the DDOL's denial of Tri-M's request to register its Pennsylvania apprentices violated the United States Constitution. *Id*. Secretary Sharp responded by distinguishing State Apprenticeship Programs from Federal Bureau of Apprenticeship and Training Programs ("BAT"), and detailed the DDOL's position. Thereafter, Tri-M filed the instant action.

## ARGUMENT

**STANDARD OF REVIEW**

**a.        Federal Rule of Civil Procedure 12(b)(1)**

It is axiomatic that a court cannot entertain a complaint over which it has no subject matter jurisdiction.  Federal Rule of Civil Procedure 12(b)(1).  Federal district courts have only the jurisdiction provided to them by statute and the burden of establishing jurisdiction rests squarely with the plaintiff.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Dismissal for lack of subject matter jurisdiction is appropriate if the right(s) claimed by Plaintiff are "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy."  *Coxson v. Commonwealth of Pennsylvania*, 935 F. Supp. 624, 626 (W.D. Pa. 1996)(*citing Growth Horizons, Inc. v. Delaware County, Pa.*, 983 F.2d 1277, 1280-81 (3d Cir. 1993).  On a facial 12(b)(1) motion to dismiss, as here, the district court will accept the factual allegations of the complaint as true and will draw all reasonable inferences in favor of the plaintiff.  *Mortensen v. First Federal Savings & Loan Assoc.*, 549 F.2d 884, 891 (3d Cir. 1977).  Dismissal for a facial challenge is "proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or  . . . is wholly insubstantial and frivolous.'"  *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991) (*quoting Bell v. Hood*, 327 U.S. 678, 682 (1946)).

The ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."  *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 58 n.18 (1993).  This doctrine is meant to prevent a court

from prematurely adjudicating an issue.  The Third Circuit espouses a three part ripeness test in *Step-Saver Data System, Inc. v. Wyse Technology*, 912 F.2d 643 (3d Cir. 1990). Applying the *Step-Saver* test, a court should look to:  1) "the adversity of the interest of the parties";  2) "the conclusiveness of the judicial judgment"; 3) "the practical help, or utility of that judgment."  *Id.* at 647 (citation omitted).

The United States Supreme Court has defined standing as "whether the litigant is entitled to have the court decide the merits of a dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).   Standing is a "threshold issue in every federal case, determining the power of the court to entertain the suit."  *Id.*   The Supreme Court enunciated three requirements for standing which originate from Article III of the Constitution, for a federal court to entertain a claim all must be satisfied.  To satisfy the constitutional standing requirements, the plaintiff must show that he has (1) suffered or will imminently suffer an injury, which is (2) fairly traceable to the defendant's conduct and which is (3) likely to be redressed by a favorable federal ruling on the matter.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).   First, the plaintiff must show that his injury is "actual or imminent, not conjectural or hypothetical."   *Id.* Moreover, the plaintiff who seeks injunctive relief must show that the defendant's conduct will likely cause injury in the future.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983). The Plaintiff bears the burden of persuasion under Rule 12(b)(1). *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

      **b.**      **Federal Rule of Civil Procedure 12(b)(6)**

The purpose of a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *Winterberg v. CNA Ins. Co.*, 868 F. Supp. 713, 718 (E.D. Pa. 1994), *aff'd* 72 F.3d 318 (3d Cir. 1995). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). A pro se complaint may be dismissed for failure to state a claim if it appears "beyond doubt that a Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, the Court does not have to accept legal conclusions, unsupported conclusions, or sweeping legal conclusions cast in the form of factual allegations. *Hiland Dairy, Inc. v. Kroger Co.*, 402 F.2d 968 (8th Cir. 1968), *cert. denied*, 395 U.S. 961 (1969); *Pauling v. McElroy*, 278 F.2d 252 (D.C. Cir. 1960), *cert. denied*, 364 U.S. 835 (1960). Mere allegations, unsupported by facts, do not preclude dismissal and do not constitute a cause of action. *Signore v. City of McKeesport, Pa*, 680 F.Supp. 200, 203 (W.D. Pa. 1988), *aff'd*, 877 F.2d 54 (3d Cir. 1989).

The question is not whether the plaintiff will ultimately prevail, but whether he is entitled to present evidence in support of his claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds, *Davis v. Scherer*, 468 U.S. 183 (1984). Under these standards, the Plaintiff's complaint must be dismissed because, even assuming Plaintiff's allegations as true, he has not invoked the subject matter of this Court and he has failed to state any claim upon which relief could be granted by this Court.

I.    **PLAINTIFF'S COMPLAINT ASSERTED UNDER 42 U.S.C. § 1983 MUST BE DISMISSED AS THOMAS B. SHARP, SECRETARY OF LABOR IS NOT A "PERSON" SUBJECT TO SUIT UNDER 42 U.S.C. § 1983.**

The Plaintiff has named Thomas B. Sharp, Secretary of Labor as a defendant in this matter. Delaware's Department of Labor is a State Agency under the direction of Thomas B. Sharp, Secretary of Labor, an appointed official. The Secretary of Labor, Thomas B. Sharp, cannot be considered a "person" as contemplated by the jurisprudence interpreting 42 U.S.C. § 1983.

The United States Supreme Court has held that a state official acting in his or her official capacity is immune from suit under 42 U.S.C. § 1983 because he or she is not a "person" under the statute. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). Just as States themselves are protected from suit under the immunity granted by the Eleventh Amendment to the U.S. Constitution, so are state actors in their "official" capacities.

> As the Supreme Court in *Will* explained: "[o]bviously, state official literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office…. As such it is no different from a suit against the State itself.

*Will*, 491 U.S. at 71.

Plaintiff's complaint alleges that Thomas B. Sharp, in his capacity as Delaware Secretary of Labor, did not recognized Tri-M's Pennsylvania registered apprentices for purposes of prevailing wage law in compliance with two regulations of Delaware Prevailing Wage Regulations and Section 3.1 of Delaware Apprenticeship and Training Rules and Regulations. D.I. No. 1 at 5. The facts set forth in the complaint clearly

9

indicate that Thomas B. Sharp at all times acted in his official capacity at Delaware Secretary of Labor in responding to Tri-M's request to have its Pennsylvania registered apprentices recognized.   Delaware's Secretary of Labor, Thomas B. Sharp, is not a "person" subject to suit in this Court.

II.    **PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THE SECRETARY OF LABOR SUED IN HIS OFFICIAL CAPACITY IS IMMUNE FROM LIABILITY UNDER THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE DOCTRINE OF SOVEREIGN IMMUNITY.**

The sovereign immunity of the states is found in the Eleventh Amendment to the United States Constitution, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   Further, the United States Supreme Court has held that in the absence of consent, a state is "immune from suits brought in federal courts by her own citizens as well as citizens of another State."   *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts' jurisdiction under Article III."   *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 65 (1996).   "Congress' powers under Article I of the Constitution do not include the power to subject States to suit at the hands of private individuals."   *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 80 (2000).   "The Eleventh Amendment limits federal judicial power to entertain lawsuits against a State and, in the absence of congressional abrogation or consent, a suit against a state agency is proscribed."   *Neeley v. Samis*, 183 F. Supp. 2d 672, 678 (D.Del. 2002) (*citing Pennhurst*

*State School & Hospital v. Halderman,* 465 U.S. 89, 98-100 (1984).

The United States Congress can waive the state's sovereign immunity, and therefore, its Eleventh Amendment immunity through the Fourteenth Amendment; however, only a clear indication of Congress' intent to waive state immunity will produce this result. *Id.* No such clear intent can be seen in 42 U.S.C. § 1983. In fact, a review of the statute demonstrates that Congress did not intend to waive the states' immunity. The statute facially allows suits only to be brought against "persons." 42 U.S.C. § 1983. As discussed supra, the Secretary of Labor acting in his official capacity is not a "person" as contemplated by 42 U.S.C. § 1983.

### III.   EVEN IF THE SECRETARY OF LABOR HAD BEEN SUED IN HIS INDIVIDUAL CAPACITY, HE WOULD BE IMMUNE FROM SUIT UNDER THE DOCTRINE OF QUALIFIED IMMUNITY

There is nothing in the instant complaint to support a claim against the Secretary of Labor in his individual capacity. The Third Circuit has held that the proper analysis is for the trial court to first determine whether the Plaintiff asserts a valid violation of a constitutional right, before considering immunity issues. *Miller v. City of Philadelphia*, 174 F.3d 368, 374 (3d Cir. 1999). Plaintiff here has not made that showing. Nonetheless, Plaintiff's claims against the Secretary of Labor in his individual capacity would be barred by the doctrine of qualified immunity.[1] It is well settled that government officials performing discretionary functions enjoy qualified immunity from damages when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Mihalich*, 847 F.2d 66, 69 (3d

---

[1] As the Third Circuit held in *Ryan v. Burlington County*, 889 F.2d 1286, 1292 (3d Cir. 1989) "[t]he defense of qualified immunity is a recognition of the fact that subjecting public official to personal liability for their discretionary actions results in the distraction of those officials from their public duties, inhibits their discretionary actions and, quite possibly, deters qualified people from accepting public service." *Id.*

Cir. 1988) (*citing Harlow v. Fitzgerald*, 457 U.S. 800 (1982) (*Lee v. Mihalich* abrogated on unrelated grounds per *Albright v. Oliver*, 510 U.S. 266 (1994)).  The test is one of "objective legal reasonableness" of an official's acts.  *Lee*, 847 F.2d at 69.  Secretary Sharp is entitled to qualified immunity unless Plaintiff can show that (1) his "right" is clearly established by law, and (2) the "unlawfulness must be apparent."  *Id.*  In *Miller*, the Third Circuit, citing Supreme Court authority, held that where abusive action is alleged against a government official, there will be no constitutional liability unless the "action [is] so ill-conceived or malicious that it 'shocks the conscience'  . . .  officials will not be held liable for actions that are merely negligent."  *Miller*, 174 F.3d at 375 (citations omitted).

Applying the *Lee/Miller* test, it is clear that Plaintiff has not pled any facts that would defeat the qualified immunity of Secretary Sharp.  Tri-M has no "right" – let alone a "clearly established right" to bring a claim against the Secretary of Labor.  In addition, Plaintiff has not pled any facts to show action on the part of Secretary Sharp that was malicious or that "shocks the conscience."  As plaintiff fails to set forth any factual basis that would defeat the defense of good faith immunity, the Secretary of Labor is not subject to liability.

### IV.    DISMISSAL IS APPROPRIATE BECAUSE PLAINTIFF SUIT IS NOT RIPE NOR DOES PLAINTIFF HAVE STANDING.

The federal courts have long followed the prudential rule of not adjudicating constitutional issues unless necessary.  *Elk Grove Unified School Dist. V. Newdow*, 542 U.S. 1, 11-12 (2004).  It is a long–standing practice that the "Court will not pass upon a constitutional question although properly presented by the record, if there is also present

some other ground upon which the case may be disposed of." *Slack v. McDaniel*, 529 U.S. 437, 485 (2000) (*citing Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)). Thus, it is proper for this Court to determine the case here on procedural grounds prior to argument on the merits of this case.

        a.        **No actual controversy that is ripe for judicial decision exists.**

Plaintiff's suit is not an actual controversy for purposes of 42 U.S.C. § 1983 or the Declaratory Judgment Act, 28 U.S.C. § 2201(a). "[F]ederal judicial power is to be exercised to strike down legislation, whether state or federal, only at the instance of one who is himself immediately harmed, or immediately threatened with harm, by the challenged action." *Poe v. Ullman*, 367 U.S. 497, 504 (1961). Federal 1983 case law requires that "[i]n order to present a justiciable controversy in an action seeking a declaratory judgment to protect against a feared future event, the plaintiff must demonstrate that the probability of that future event occurring is real and substantial, 'or sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Salvation Army v. Dep't of Cmty Affairs of the State of N.J.*, 919 F.2d 183, 192 (3d Cir. 1990) (citation omitted). In this case, Plaintiff bid on a portion of the Delaware Veteran's Home Project and was awarded that contract, therefore no restraint of trade exists. As a result of being awarded the bid on the Project, Tri-M was asked to perform a self-audit for compliance with the bid requirements – the payment of prevailing wages. Tri-M performed a self-audit, found itself to be non-compliant and submitted the appropriate prevailing wages for its workers to bring itself into compliance. In the future, Plaintiff states that it "plans to submit bids" on Delaware public works projects. Plaintiff has not asserted any immediate contract for which it intends to bid nor has Tri-M made any

showing that if it bid on such a project it would be the successful bidder.  Consequently, it can demonstrate absolutely no probability of any imminent threat of future action by the Department of Labor.

"[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs in such cases."  *Younger v. Harris*, 401 U.S. 37, 42 (1971).  Moreover, "[a]llegations of chilling injury are not sufficient basis for standing to challenge a government action, at least when the chill is 'subjective' and not substantiated by evidence that the government action has a present and concrete effect."  *Salvation Army*, 919 F.2d at 193 (citations omitted).  This dispute must be real not hypothetical, and the plaintiff must be personally affected.  *KVUE, Inc. v. Moore*, 709 F.2d 922, 927 (5th Cir. 1983).

Such injury as the Plaintiff may suffer is not only "subjective" but self-inflicted. Tri-M has the opportunity to apply to become a Delaware Apprentice Sponsor.  Instead, Tri-M decided to litigate rather than obtain a permanent place of business in Delaware to satisfy the Apprenticeship and Training Rules and Regulations even though it has had a site trailer in Delaware for many years.  Tri-M's choice cannot be blamed on Secretary Sharp or Delaware Department of Labor.  It is simply the result of a business decision by the Plaintiff.  As a result, Tri-M is requesting this Court change the rules of the game, post-bidding, at the risk of dismantling the effective regulation of apprentices in Delaware.

The three elements of a § 1983 justiciability inquiry are:  (1) the adversity of the interest[s] of the parties, (2) the conclusiveness of the judicial judgment, and (3) the practical help, or utility, of that judgment."  *Step-Saver Data System, Inc. v. Wyse Tech*,

912 F.2d 643, 647 (3d Cir. 1990). The parties' interests are <u>not</u> adverse. The Plaintiff bid on and was awarded a public works contract. After submission and acceptance of its bid, Tri-M is precluded from altering its bid. In an attempt to remain, or obtain profitability, on the Project, Tri-M now seeks to alter the terms of the prevailing wage statute to take advantage of the economic incentives available by the employment of apprentices on public works projects. The effect of a bona fide apprenticeship program is to make lower costs possible for a contractor on government projects by allowing the contractor to pay its apprentices at apprentice rates rather than at journeyman rates. The consequence to the contractor is to make lower bids and obtain more government contracts. The National Apprenticeship Act of 1937, 29 U.S.C.A. § 50, commonly known as the Fitzgerald Act, upon which the federal and state apprenticeship programs are based, seek to facilitate development of apprenticeship programs. No apprenticeship program is required by Delaware Law on Delaware public works projects. If a contractor chooses to hire apprentices for a public works project, it need not hire them from an approved program, although if it does not, it must pay these apprentices journeyman wages.

"For there to be an actual controversy the defendant must be so situated that the parties have adverse legal interests." *Step-Saver*, 912 F.2d at 648 (citing 10 A C. Wright, A. Miller & M. Kane *Federal Practice and Procedure* § 2757, at 582-83 (2d ed. 1983)). The parties do not have adverse legal interests. Tri-M asserts only an adverse economic interest in it quest to use the lower apprentice wages for public works projects without complying with Delaware's apprentice sponsorship requirements. The intent of Delaware's Apprenticeship and Training Rules and Regulations is for the protection of

the apprentice. There is an economic advantage for contractors that sponsor bona fide apprentice programs and utilize apprentices on public works projects.

"The conclusivity inquiry . . . goes to whether the parties' rights will be definitively decided by a declaratory judgment." *Id.* At 649 n.9. In the instant case, this question cannot be answered affirmatively. There is no present action by the Department of Labor against Tri-M concerning their use of unregistered apprentices. Tri-M conducted a self-audit and found itself to owe certain wages to its employees. Tri-M determined the amount to be paid to its employees and paid those wages over. Lastly, Tri-M is in the final stages of the Project and has not identified any new public works projects that have been bid on nor bids that have been accepted.

A plaintiff must allege either (1) he was threatened with prosecution; (2) prosecution is likely; or (3) there is a credible threat of prosecution. *American Civil Liberties Union v. The Florida Bar*, 999 F.2d 1486, 1492 (11th Cir. 1993). "The conflict between the parties must be ripe for judicial intervention; it cannot be 'nebulous or contingent' [such as upon the award of a future public works contract and the employment of apprentices on that project], but 'must have taken on fixed and final shape . . . .'" *Wyatt, Virgin Islands, Inc. v. Gov't of the Virgin Islands*, 385 F.3d 801, 806 (3d Cir. 2004) (citations omitted).

According to *Step-Saver*, "[o]ne of the primary purposes behind the Declaratory Judgment Act was to enable plaintiffs to preserve the status quo before irreparable damage was done, . . . and a case should not be considered justiciable unless "the court is convinced that [by its action] a useful purpose will be served." *Step-Saver*, 912 F.2d at 650. Plaintiff fails to provide any facts to demonstrate a "credible threat of prosecution"

necessary to show that this dispute – which is merely potential – is justiciable.  There is no jurisdiction to hear a potential action.  Fed. R. Civ. Pro. 12(b)(1).

Simply put, Tri-M's claim is premature.  Here, there is an option available to Tri-M (to become a registered sponsor of apprentices in Delaware) which would eliminate Tri-M's constitutional claim and ultimately enable Tri-M to partake in the economic advantage offered by employing bona fide registered apprentices on future Delaware public works contracts.  This is purely a business decision for Tri-M.

**b.    Plaintiff lacks standing to bring this litigation.**

A plaintiff must have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions."  *Baker v. Carr*, 369 U.S. 186, 204.  The Fitzgerald Act "authorizes and directs the furtherance of labor standards necessary to safeguard the welfare of apprentices, to extend the application of such standards by encouraging the inclusion thereof in contracts of apprenticeship, to cooperate with State agencies engaged in the formulation and promotion of standards of apprenticeship . . . ."  29 C.F.R. 29.1(a).  The purpose of the Fitzgerald Act

> is to set forth labor standards to safeguard the welfare of apprentices, and to extend the application of such standards by prescribing policies and procedures concerning the registration, for certain Federal purposes, or acceptable apprenticeship programs . . .  These labor standards, policies and procedures cover the registration, cancellation and deregistration of apprenticeship programs and of apprenticeship agreements; the recognition of a State agency as the appropriate agency for registering local apprenticeship programs for certain Federal purposes; and matter related thereto.

17

*Id*. at 29.1(b) (emphasis added).  Thus, the Fitzgerald Act established a dual system of approval and recognition so that either the Bureau of Apprenticeship and Training ("BAT") or a State agency can approve an apprenticeship program for federal purposes. The regulations  authorize the BAT to approve appropriate state bodies for registration and/or approval of local apprenticeship programs and agreements for federal purposes. 29 C.F.R. § 29.2(o).

Tri-M seeks to have Delaware recognize a Pennsylvania apprenticeship program for work on a Delaware public work project.  The District Court in South Carolina was faced with a similar issue in G*regory Electric Company, Inc., et al. v. U.S. Dep't of Labor*, 268 F.Supp. 987 (S.C. 1967).  In *Gregory*, the plaintiffs brought an action seeking to require the United State Department of Labor to approve and register their proposed apprenticeship program for the electrical trade.  *Id.*  The *Gregory* court found that "[t]he decision on whether to register an apprenticeship program requires a substantial amount of judgment and expertise.  Such decision may turn on many technical facts. These are clearly matters which Congress has left to the agency, and matters in which the court should not interfere."  *Id.* at 992.  Further, the *Gregory* court held that the plaintiffs have suffered no legal wrong under the Davis-Bacon Act  . . . and regulations thereunder, which allow contractors to use apprentices on federal contract projects only where they work under a program registered by the Bureau of Apprenticeship and Training or an approved state agency, is clear from the decision in *Perkins v. Lukens Steel Company. Id.* at 992-993 (internal citations omitted).  The instant plaintiff, like the plaintiff in *Gregory*, claims harm as a result of being denied permission to use its Pennsylvania registered apprentices on Delaware public works projects.   "The wording of the National

18

Apprenticeship Act, mandating the Secretary 'to safeguard the welfare of apprentices,' leads . . . to the conclusion that this type of statutory and regulatory scheme was intended to promote the interest of laborers and not contractors." *Id.* at 993. Just like the plaintiffs in *Gregory* and *Luken Steel*, Tri-M appears to be in the same position without infringement of a legal right which provides it standing. Tri-M has not made application to the Delaware's Apprenticeship and Training Council to establish a Delaware sponsorship for apprentices. Instead, Tri-M has made a telephone call with a follow-up letter to the Secretary Sharp. Tri-M can show no injury in fact, and no infringement of a legal right providing standing and therefore its complaint should be dismissed.

## V.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The United States Supreme Court has held that "where federal law is said to bar state action in fields of traditional state regulation . . . we have worked on the 'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Calif. Div. of Labor Standards Enforcement. v. Dillingham Constr. N.A., Inc.,* 519 U.S. 316, 325 (1997). "[T]he Fitzgerald Act recognized pre-existing state efforts in regulating apprenticeship programs and apparently expected that those efforts would continue." *Id.* at 330. As stated earlier, an apprenticeship program can be approved for federal purposes either by the BAT or by a State Apprenticeship Council. Delaware established the Delaware Apprenticeship and Training Council and Pennsylvania established its own State Apprenticeship and Training Council. Tri-M is a sponsor under Pennsylvania's State Apprenticeship and Training Council. Tri-M does not allege to be a member of a

BAT approved apprentice sponsorship program.    Tri-M seeks to have Delaware recognize a Pennsylvania registered apprenticeship program which by its own limitation is a voluntary program.    Pennsylvania Apprenticeship and Training Act, Act of 1961, P.L. 604, No. 304, Section 8.    The purpose of Delaware's Apprenticeship and Training program is to "safeguard the welfare of Apprentices."    Section 1.2, Delaware Apprenticeship and Training Rules and Regulations.    To that end, Delaware registers and monitors compliance of its apprenticeship sponsors.    Delaware Apprenticeship and Training Council should be permitted to exercise its decision making process in the registration of apprentice sponsors to ensure the safety of those apprentices.

Tri-M is not aggrieved under the National Apprenticeship Act, since it is passed for the protection of the apprentice.    Likewise, for the same reason, Tri-M is not aggrieved under Delaware's Apprenticeship Act.    In actuality, what Tri-M seeks to do is appeal it prevailing wage self-audit determination through the back door but by attacking the apprenticeship sponsorship program instead of using proper administrative procedures.    This back door approach should not be tolerated, and Tri-M's complaint should be dismissed for failure to state a claim.

## <u>CONCLUSION</u>

Based upon the foregoing arguments, Defendant, Thomas B. Sharp, Secretary Delaware Department of Labor respectfully requests that this Honorable Court enter an Order dismissing Plaintiff's complaint for the reasons set forth herein.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

<u>BY: /s/ Linda M. Carmichael</u>
Linda M. Carmichael, I.D. #3570
Deputy Attorney General
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302)577-8400
Counsel for Defendant

DATED:  October 27, 2006

21

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2006, I caused to be electronically filed

Defendant Thomas B. Sharp, Secretary Delaware Department of Labor's Opening Brief

in Support of His Motion to Dismiss with the Clerk of the Court using CM/ECF.  In

addition, two copies were sent via U.S. Mail to the following:

      M. Duncan Grant, Esquire
      Phillip T. Mellett, Esquire
      Pepper Hamilton LLP
      Hercules Plaza, Suite 5100
      1313 N. Market Street
      P.O. Box 1709
      Wilmington, DE  19899-1709

                    By: /s/ Linda M. Carmichael
                    Linda M. Carmichael I.D. #3570
                    Deputy Attorney General
                    Carvel State Office Building
                    820 North French Street, 6th Flr.
                    Wilmington, DE 19801
                    (302) 577-8400
                    linda.carmichael@state.de.us
                    Attorney for Defendant
                    Thomas B. Sharp, Secretary
                    Department of Labor