## IN THE UNITED STATES DISTRICT COURT
## FOR THE  DISTRICT OF DELAWARE

| | |
|---|---|
| TRI-M GROUP, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-556-KAJ |
| ) | |
| THOMAS B. SHARP, SECRETARY, DELAWARE ) | |
| DEPARTMENT OF LABOR, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## PLAINTIFF TRI-M GROUP, LLC'S ANSWERING BRIEF
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

OF COUNSEL:

Stephen J. Sundheim
Glenn A. Beard
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Dated:  December 8,  2006

M. Duncan Grant (Del. Bar No. 2994)
Phillip T. Mellet (Del. Bar No. 4741)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE   19899-1709
(302) 777-6500

Attorneys for Plaintiff Tri-M Group, LLC

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................1

    A. Nature and Stage of Proceeding ...........................................................1

    B. Summary of Argument ...........................................................................1

II.  STATEMENT OF FACTS ..........................................................................2

III. STANDARDS OF REVIEW .......................................................................6

IV. ARGUMENT ...............................................................................................7

    A. Secretary Sharp In His Official Capacity Is A "Person" Subject To Suit For Prospective Relief Under 42 U.S.C. § 1983.................................................7

    B. The Eleventh Amendment Does Not Bar Tri-M's Claims For Prospective Relief Against Secretary Sharp In His Official Capacity................................8

    C. Secretary Sharp In His Official Capacity Cannot Claim Qualified Immunity.................9

    D. Tri-M's Claim Is Ripe Because There Is A Credible Threat That The Challenged Regulations Will Be Enforced Against Tri-M. ...............................9

    E. Tri-M Has Standing To Challenge The Regulations........................................13

    F. Tri-M's Complaint States A Claim For Violation Of The Dormant Commerce Clause. ..............................................................................15

V.  CONCLUSION ...........................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

American Civil Liberties Union v. Florida Bar, 999 F.2d 1486 (11th Cir. 1993)...................11, 12

Bacchus Imports, Ltd. v. Dias, 468 U.S. 263 (1984).......................................................16

Brandon v. Holt, 469 U.S. 464 (1985)..............................................................................9

Contractors Association of Eastern Pa., Inc. v. City of Philadelphia, 6 F.3d 990
(3d Cir. 1993) .........................................................................................................14

Edelman v. Jordan, 415 U.S. 651 (1974)......................................................................8, 9

Gregory Electric Company, Inc. v. U.S. Department of Labor, 268 F. Supp. 987
(D.S.C. 1967).....................................................................................................13, 14

Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277 (3d Cir. 1993) ...........6

Joseph Stong, Inc. v. Boyd, Civ. No. 01-2914 (GEB), 2003 U.S. Dist.
LEXIS 11931 (D.N.J. Mar. 26, 2003) ...............................................................16, 17

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ......................................13, 14, 15

Melo v. Hafer, 912 F.2d 628 (3d Cir. 1990).................................................................8, 9

Mortensen v. First Federal Savings & Loan Ass'n, 549 F.d 884, 891
(3d Cir. 1977) ...........................................................................................................6

National Rifle Association of America v. Magaw, 132 F.3d 272 (6th Cir. 1997) ........13

Northeastern Fla. Chapter of Associated General Contractors of America v.
City of Jacksonville, 508 U.S. 656 (1993) ..............................................................14

Oregon Waste System, Inc. v. Department of Environmental Quality, 511 U.S. 93 (1994).........16

Planned Parenthood of Central N.J. v. Farmer, 220 F.3d 127 (3d Cir. 2000)...............9, 10, 11, 13

Poe v. Ullman, 367 U.S. 497 (1961) ..............................................................................10

Salvation Army v. Department of Community Affairs of N.J., 919 F.2d 183
(3d Cir. 1990) .........................................................................................................10

Thomas v. Union Carbide Agricultural Products Co., 473 U.S. 568 (1985).................13

Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478
    (3d Cir. 1998) ................................................................................................7

W.B. v. Matula, 67 F.3d 484 (3d Cir. 1995) .................................................9

Will v. Michigan Department of State Police, 491 U.S. 58 (1989)........................7, 8, 9

Younger v. Harris, 401 U.S. 37, 42 (1971) .................................................10

## STATUTES AND RULES

Fed. R. Civ. P. 12(b)(1) ....................................................................1, 6

Fed. R. Civ. P. 12(b)(6) ....................................................................1, 6

29 U.S.C. § 50 ..............................................................................13

29 Del. C. § 6960 et seq................................................................2

29 Del. C. § 6960(e) .......................................................................11

42 U.S.C. § 1983 ...........................................................................1, 7, 14

U.S. Const. art. I, § 8, cl. 3 ...........................................................6, 15

## I.   INTRODUCTION

### A.   Nature and Stage of Proceeding

Plaintiff Tri-M Group, LLC ("Tri-M") brought this action for declaratory and injunctive relief against Defendant Thomas B. Sharp ("Defendant" or "Secretary Sharp"), the Secretary of the Delaware Department of Labor ("DDOL"), based on DDOL's discriminatory and unconstitutional regulation of the employment of apprentices on state-funded construction projects in Delaware.  Tri-M alleges that Defendant has discriminated against Tri-M and other out-of-state contractors by refusing to recognize their out-of-state registered apprentices for purposes of the Delaware Prevailing Wage Law, thereby burdening interstate commerce without justification in violation of the Commerce Clause of the United States Constitution.  Defendant has filed a motion to dismiss Tri-M's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).  This is Tri-M's answering brief in opposition to Defendant's motion.

### B.   Summary of Argument

As demonstrated below, Defendant's motion to dismiss should be denied because:

(1)    Secretary Sharp in his official capacity is a "person" subject to suit for declaratory and injunctive relief under 42 U.S.C. § 1983;

(2)    The Eleventh Amendment does not bar claims for prospective relief against Secretary Sharp in his official capacity;

(3)    Secretary Sharp in his official capacity cannot claim qualified immunity;

(4)    Tri-M faces a credible threat that the Defendant's regulations will be enforced, making its claim ripe for review;

(5)    Tri-M has standing to challenge Defendant's regulations under the Commerce Clause; and

(6)    The Complaint states a claim for discrimination against interstate commerce in violation of the dormant Commerce Clause.

## II.    STATEMENT OF FACTS

The following facts alleged in Tri-M's Complaint should be accepted as true for the purposes of Defendant's motion.

Tri-M is a Pennsylvania-based electrical contracting company that has performed, and plans to continue to perform, work on state-funded construction projects in Delaware. (Complaint ¶ 2, D.I. 1.)  Secretary Sharp is Secretary of DDOL, an agency of the Delaware state government charged with administering and enforcing the Delaware Prevailing Wage Law, 29 Del. C. § 6960 et seq., and related regulations.  (Id. ¶ 3.)

Tri-M maintains an apprenticeship program that is registered with the Pennsylvania Apprenticeship and Training Council of the Pennsylvania Department and Labor and Industry ("PATC") under standards approved by PATC and the Federal Committee on Apprenticeship.  (Id. ¶ 6.)  Tri-M employs apprentice electricians who participate in Tri-M's apprenticeship program and are individually registered with PATC in that apprenticeship program pursuant to individual apprenticeship agreements.  (Id. ¶ 7.)

Tri-M was the successful bidder on the contract for electrical work at the Delaware State Veterans Home (the "Project"), a construction project in Milford, Delaware that is funded in part by Delaware state funds.  (Id. ¶ 8.)  Tri-M began work on the Project on or about August 26, 2005.  (Id.)  Tri-M employed Pennsylvania-registered apprentices on the Project and initially paid them apprentice wage rates based on DDOL's prevailing wage determination for the Project.  (Id. ¶ 9.)

-2-

In May 2006, DDOL's Office of Labor Law Enforcement conducted a prevailing wage compliance audit of Tri-M's payroll records from the Project. (Id. ¶ 10.)  On May 9, 2006, Daniel Nelson, a Labor Law Enforcement Officer with DDOL's Office of Labor Law Enforcement, informed Tri-M that it had violated the Delaware Prevailing Wage Law by paying apprentice rates to its Pennsylvania-registered apprentices who were not registered with DDOL. (Id. ¶ 11; see Exhibit A to Complaint.)  Mr. Nelson informed Tri-M that it was required to either perform a self-audit and make payment for any prevailing wage deficiencies or submit to further investigation by DDOL's Office of Labor Law Enforcement and face potential legal action and civil penalties.  (Complaint ¶ 12.)

Tri-M was compelled to perform a self-audit to avoid the legal action and civil penalties threatened by DDOL's Office of Labor Law Enforcement.  (Id. ¶ 13.)  As a result of its self-audit, Tri-M reported that it had paid apprentice rates to six (6) Pennsylvania-registered apprentices who, according to Mr. Nelson's May 9 letter, would not be recognized as apprentices by DDOL's Office of Labor Law Enforcement for purposes of the Delaware Prevailing Wage Law.  (Id. ¶ 14.)  According to Mr. Nelson's letter, Tri-M was not permitted to pay apprentice rates to those apprentices in Delaware.  (Id.)  On or about May 19, 2006, in accordance with Mr. Nelson's directive, Tri-M submitted payroll checks to DDOL's Office of Labor Law Enforcement to make up the difference between the apprentice rates it had paid to its six (6) Pennsylvania-registered apprentices and the substantially higher journeyman's rate that DDOL's Office of Labor Law Enforcement demanded they be paid.  (Id. ¶ 15.)  The total amount of Tri-M's retroactive payments to apprentices exceeded $10,000.  (Id.)

On June 1, 2006, Mr. Nelson informed Tri-M that it had violated the Prevailing Wage Law by failing to pay full (journeyman's) wage rates to the six (6) Pennsylvania-registered

apprentices, because they were not registered in Delaware. (Id. ¶ 16; see Exhibit B to Complaint.) Mr. Nelson further informed Tri-M that it had brought itself into compliance by retroactively paying journeyman's wage rates to the Pennsylvania-registered apprentices. (Id.) Mr. Nelson also informed Tri-M that any future purported violations might result in legal action and civil penalties. (Complaint ¶ 17.)

On or about May 15, 2006, Mark Weaber, Tri-M's Safety and Health Specialist, contacted Kevin Calio, DDOL's Director of Apprenticeship and Training, and asked how Tri-M could register its apprentices in Delaware. (Id. ¶ 18.) Mr. Calio informed Mr. Weaber that Tri-M's apprentices would not be allowed to register in Delaware unless Tri-M had a permanent place of business in Delaware. (Id. ¶ 19.) Mr. Calio stated that a site trailer that Tri-M had maintained in Delaware for many years did not qualify as a permanent place of business for purposes of this requirement. (Id.)

On June 23, 2006, Secretary Sharp confirmed in writing that DDOL will not recognize Tri-M's Pennsylvania-registered apprentices because they are not registered in Delaware and because Tri-M does not have a permanent place of business in Delaware. (Id. ¶ 20; see Exhibit C to Complaint.) To support his refusal to recognize Tri-M's Pennsylvania-registered apprentices, Defendant has relied on two regulations (the "Regulations"): Section III.D.1.a. of the Delaware Prevailing Wage Regulations and Section 3.1 of the Delaware Apprenticeship and Training Rules and Regulations. (Complaint ¶ 21.) Section III.D.1.a. of the Prevailing Wage Regulations defines "apprentice," for purposes of the Prevailing Wage Law, as "persons who are indentured and employed in a bona fide apprenticeship program and individually registered by the program sponsor with the Delaware Department of Labor." (Id. ¶ 22.) Section 3.1 of the Delaware Apprenticeship and Training Rules and Regulations provides

-4-

that, to be a registrant or sponsor of an apprenticeship program registered in Delaware, an employer must <u>hold and maintain a permanent place of business in Delaware</u>. (<u>Id.</u> ¶ 23.)

Thus, Defendant has promulgated and enforced regulations that require non-Delaware contractors working on Delaware public works projects, including Tri-M, to pay journeyman's rates to their non-Delaware apprentices, while Delaware contractors on the same projects are permitted to pay substantially lower apprentice rates to their Delaware apprentices. (<u>Id.</u> ¶ 24.) Defendant's regulations place Tri-M and other out-of-state public works contractors at a competitive disadvantage by requiring them to pay their Pennsylvania-registered apprentices substantially higher wages than the wages that Delaware contractors are allowed to pay their Delaware apprentices. (<u>Id.</u> ¶ 25.) This creates a significant disincentive for out-of-state contractors to seek work on Delaware public works projects. (<u>Id.</u>)

Tri-M is a Pennsylvania-based contractor that does not have a permanent place of business, other than a site trailer, in Delaware. (<u>Id.</u> ¶ 26.) Tri-M is obligated to complete its work on the Project and plans to continue to submit bids and perform work on other Delaware public works projects. (<u>Id.</u> ¶ 27.) Tri-M has employed, and expects to employ in the future, on public works projects in Delaware, employees who are registered in Pennsylvania apprenticeship programs but not in Delaware apprenticeship programs. (<u>Id.</u> ¶ 28.) Since the completion of its self-audit, Tri-M has paid the substantially higher journeyman's rates to its Pennsylvania-registered apprentices on the Project to avoid further citations and possible legal actions and penalties threatened by DDOL, and will be compelled to continue to do so on public works projects in Delaware, unless and until Defendant's refusal to recognize Tri-M's apprentices is declared unlawful and enjoined. (<u>Id.</u> ¶ 29.)

The Regulations promulgated and enforced by Defendant require non-Delaware contractors working on Delaware public works projects, including Tri-M, to pay journeyman's rates to their non-Delaware apprentices, while Delaware contractors on the same projects are permitted to pay substantially lower apprentice rates to their Delaware apprentices. (Id. ¶ 31.) As detailed in its Complaint, Tri-M alleges that Defendant's promulgation and enforcement of the Regulations against Tri-M and other out-of-state contractors who employ out-of-state apprentices unjustifiably discriminates against and burdens interstate commerce in violation of the Commerce Clause of the United States Constitution, U.S. Const. art. I, § 8, cl. 3. (Id. ¶¶ 31-34.) Tri-M's Complaint seeks declaratory and injunctive relief against Secretary Sharp in his capacity as Secretary of the Delaware Department of Labor. (Id. at 7.)

## III.    STANDARDS OF REVIEW

Defendant's motion seeks the dismissal of Tri-M's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is appropriate only if the rights claimed by a plaintiff are "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1280-81 (3d Cir. 1993). In considering Defendant's motion under Rule 12(b)(1), the Court must accept the factual allegations of the Complaint as true and draw all reasonable inferences in favor of Tri-M. Mortensen v. First Federal Savings & Loan Ass'n, 549 F.d 884, 891 (3d Cir. 1977). Defendant faces a similarly demanding standard under Rule 12(b)(6). A complaint may be dismissed for failure to state a claim "only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no

relief could be granted under any set of facts consistent with the allegations of the complaint."

Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998).

## IV.    ARGUMENT

### A.    Secretary Sharp In His Official Capacity Is A "Person" Subject To Suit For Prospective Relief Under 42 U.S.C. § 1983.

Defendant's first argument is that Secretary Sharp is immune from Tri-M's claims under 42 U.S.C. § 1983 because he is not a "person" subject to suit under the statute.  Citing Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), Defendant contends that the Eleventh Amendment bars a lawsuit against a state official acting in his official capacity, because such a suit is no different from an action against the state itself.  (Def.'s Brf., at 9, D.I. 7.)

Defendant is correct that Tri-M has sued Secretary Sharp in his official capacity. The Complaint expressly requests injunctive relief against Secretary Sharp "in his capacity as Secretary of the Delaware Department of Labor."  (Complaint at 7.)  However, Secretary Sharp ignores the nature of Tri-M's lawsuit and misapplies Will when he argues that he is not a "person" who can be sued under Section 1983.  In Will, the Supreme Court held only that the Eleventh Amendment prohibited a lawsuit for money damages against a state official in his official capacity.  Will, 491 U.S. at 68-71 & n. 10.  The Court made clear in a footnote – conveniently avoided by Defendant – that this prohibition does not apply to actions for prospective relief:

> Of course a state official in his or her official capacity, when sued
> for injunctive relief, would be a person under § 1983 because
> "official capacity actions for prospective relief are not treated as
> actions against the State."

Id. at 71 (quoting Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985), and Ex parte Young, 209 U.S. 123, 159-60 (1908) (emphasis added)).  The Third Circuit has relied on this footnote

from Will in holding that "the Will opinion supports maintenance of a section 1983 claim against a state official for reinstatement" – a form of prospective relief.  Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990).

Here, Tri-M has sued Secretary Sharp in his official capacity for prospective relief – specifically a declaratory judgment and preliminary and permanent injunctions.  (Complaint at 7.)  Under the Supreme Court and Third Circuit precedents cited above, Secretary Sharp unquestionably is a "person" who can be sued for prospective relief under Section 1983.[1]

B.    The Eleventh Amendment Does Not Bar Tri-M's Claims For
      Prospective Relief Against Secretary Sharp In His Official Capacity.

Defendant's second argument is intertwined with his first and is equally meritless. In a nutshell, Secretary Sharp asserts that he embodies the State of Delaware and therefore is immune from suit under the Eleventh Amendment.  In cases cited by Defendant, the Eleventh Amendment has indeed been interpreted to bar certain lawsuits against state officials where the state itself is the real party in interest.  See Edelman v. Jordan, 415 U.S. 651, 663 (1974). However, Edelman itself notes that this prohibition is limited to cases in which "the action is in essence one for the recovery of money from the state" and the liability "must be paid from public funds in the state treasury."  Id.  As it did in Will, the Supreme Court in Edelman reaffirmed the well-established rule of Ex parte Young – that the Eleventh Amendment does not bar a lawsuit seeking prospective relief, including injunctive relief, against a state official in his official capacity.  Id. at 664 (Eleventh Amendment did not bar portion of district court's order that entered prospective injunction against state officials in equal protection case).  Similarly, the Third Circuit in Melo noted that, "[i]n suits for injunctive or declaratory relief . . . , the Eleventh

_____

[1] To the extent that the Complaint asserts a demand for money damages against Secretary Sharp, Tri-M voluntarily withdraws any such claim.

Amendment does not bar an action in which a state official is the named party." Melo v. Hafer, 912 F.2d at 635 n. 5 (citing Ex parte Young).

As with his argument under Section 1983, Defendant ignores the fact that Tri-M's Complaint seeks prospective (declaratory and injunctive) relief against Secretary Sharp in his official capacity. The Supreme Court precedents cited by Defendant (Will and Edelman) explicitly recognize that Eleventh Amendment immunity does not extend to this type of lawsuit. In short, Secretary Sharp simply has no colorable argument that he, acting in his official capacity, is immune from suit in this case.

C.    Secretary Sharp In His Official Capacity Cannot
      Claim Qualified Immunity.

Defendant's third argument is that Secretary Sharp is immune from suit in his individual capacity under the doctrine of qualified immunity. This argument is irrelevant and unworthy of extended discussion. As noted above and in Defendant's own motion, Tri-M's Complaint is brought against Secretary Sharp in his official capacity. It is well established that "the doctrine of qualified immunity shields officials acting only in their individual capacities" and may not be asserted by a state official sued in his official capacity. W.B. v. Matula, 67 F.3d 484, 499 (3d Cir. 1995) (citing Brandon v. Holt, 469 U.S. 464, 472-73 (1985)). Thus, qualified immunity is not applicable to this case and may not be asserted as a basis for dismissing Tri-M's Complaint.

D.    Tri-M's Claim Is Ripe Because There Is A Credible Threat That The
      Challenged Regulations Will Be Enforced Against Tri-M.

Defendant's fourth argument for dismissal is that there is no actual controversy between it and Tri-M that is ripe for judicial decision. The ripeness doctrine "seeks to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements." Planned Parenthood of Central N.J. v. Farmer, 220 F.3d 127, 147 (3d

Cir. 2000) (citations and internal quotation marks omitted). "To determine whether a claim is ripe, a court must weigh: (1) the hardship to the parties of withholding court consideration; and (2) the fitness of the issues for judicial review." Id. at 148 (citation and internal quotation marks omitted).

Defendant superficially cites a number of cases for the proposition that a case is not ripe when a plaintiff has "no fears of state prosecution except those that are imaginary or speculative." (Def.'s Brf. at 14 (quoting Younger v. Harris, 401 U.S. 37, 42 (1971).) This is an accurate statement of the law, but Defendant ignores the facts in the cited cases and thereby avoids the obvious and dispositive distinctions between those cases and the case at bar. In each of the decisions cited by Defendant, a plaintiff's constitutional challenge to a state statute was held unripe because there had been absolutely no threat that the state would enforce the statute against the plaintiff. See Poe v. Ullman, 367 U.S. 497, 501, (1961) (plaintiff had not been threatened with prosecution for violation of 1879 statute prohibiting use of contraceptives, and state had never initiated any such prosecution except in one test case in 1940); Younger, 401 U.S. at 42 (plaintiffs had never been threatened with prosecution for violation of criminal syndicalism law, did not claim that prosecution was remotely possible and brought suit only because they felt "inhibited" by statute); Salvation Army v. Dep't of Cmty. Affairs of N.J., 919 F.2d 183, 192-93 (3d Cir. 1990) (state had not threatened to enforce boarding house regulation against plaintiff and in fact had granted plaintiff express exemption from challenged provisions).

In stark contrast to the plaintiffs in these cases, Tri-M faces a credible and imminent threat that DDOL will enforce the challenged Regulations against it. As detailed above and in the Complaint, DDOL audited Tri-M and announced that Tri-M had violated the Prevailing Wage Law by paying apprentice rates to its Pennsylvania-registered apprentices.

DDOL then threatened Tri-M that, if it did not perform a self-audit and make payment for any violations of the Regulations, DDOL likely would initiate an enforcement action and seek civil penalties against Tri-M.  As a result, Tri-M was compelled to perform a self-audit and to pay thousands of dollars in additional wages to its apprentices.  DDOL thereafter reasserted its position that Tri-M had violated the Regulations and threatened future legal action and civil penalties based on any future violations by Tri-M.  Tri-M is continuing work on the Project and has alleged that it plans to continue to submit bids and perform work on Delaware public works projects.

   In <u>Planned Parenthood</u>, the Third Circuit held that a plaintiff may bring a pre-enforcement challenge to a state law – even one imposing civil rather than criminal penalties – if "there exists a credible threat of prosecution thereunder."  <u>Planned Parenthood</u>, 220 F.3d at 131, 148.  Where such a threat is present, a plaintiff "should not be required to await and undergo [an enforcement action] as the sole means of seeking relief."  <u>Id.</u> at 148.  Here, Tri-M was presented with a credible threat of an enforcement action under the Prevailing Wage Act that could lead to monetary penalties and debarment – a prohibition on Tri-M's bidding or receiving public works contracts for three years.  <u>See</u> 29 <u>Del. C.</u> § 6960(e).  Tri-M properly chose not to run that risk and initiated this action instead.  Under <u>Planned Parenthood</u>, Tri-M's claim is ripe for review because requiring it to succumb to the threatened enforcement action before challenging the Regulations would constitute "hardship to the parties of withholding court consideration."  <u>Planned Parenthood</u>, 220 F.3d at 148.

   Another case cited by Defendant further demonstrates why Tri-M's claim is ripe for adjudication.  In <u>American Civil Liberties Union v. Florida Bar</u>, 999 F.2d 1486 (11th Cir. 1993), the plaintiff was a lawyer who challenged the constitutionality of a rule of judicial

conduct that arguably prohibited him from making statements critical of his opponent in a campaign for election as a judge. Id. at 1488-89. The plaintiff alleged that he was forced to self-censor his speech because a state committee issued an advisory opinion that his proposed campaign speech would violate the rule, and because the disciplinary commission would not tell him whether or not it would press charges if he made the speech. Id. at 1492. The court found a credible threat of prosecution and held that the plaintiff's claim was ripe because he was not required to expose himself to prosecution to be entitled to challenge the rule. Id. at 1493. Just as the plaintiff in ACLU was forced to self-censor his speech, Tri-M was forced to perform a self-audit and to pay additional wages as a result of DDOL's express threats to enforce the Regulations. Tri-M should not be required to expose itself to penalties and debarment by disobeying the Regulations before its challenge to the constitutionality of the Regulations will be heard by the Court.

Defendant asserts that Tri-M's injury is "self-inflicted" because it has the "option" of obtaining a permanent place of business in Delaware and becoming a registered sponsor of apprentices in Delaware. (Def.'s Br. at 14, 17.) But these are precisely the Regulations that Tri-M is challenging as unconstitutional in this case. It is Defendant's insistence on enforcing the Regulations that creates the controversy between Tri-M and Secretary Sharp. Of course Tri-M could choose to comply with an unconstitutional regulation, but it is not obliged to do so and has every right to challenge discriminatory state action that is causing it harm. Thus, Defendant's repeated references to "choice" and Tri-M's "business decision" completely miss the point and have nothing to do with ripeness. Indeed, Defendant's insistence in his brief that Tri-M should comply with the Regulations to have its apprentices recognized only highlights the adversity of interest between the parties.

Defendant never addresses the fitness of the issues for judicial review – the other element of the ripeness test under Planned Parenthood.  The Supreme Court has held that an issue is fit for judicial resolution by declaratory judgment when it is purely legal and requires little or no factual development.  Thomas v. Union Carbide Agricultural Prods. Co., 473 U.S. 568, 581 (1985).  A facial Commerce Clause challenge to a statute raises purely legal issues that do not require further factual development by way of an enforcement action.  See National Rifle Ass'n of America v. Magaw, 132 F.3d 272, 290 (6th Cir. 1997) (holding that firearms dealers' pre-enforcement Commerce Clause challenge to gun control statute was ripe).  Here, Tri-M alleges that the Regulations are unconstitutional on their face.  As in Magaw, the Court's legal analysis of Tri-M's claim will not be informed by any facts that might be developed in an enforcement action brought by DDOL against Tri-M.  The issues therefore are fit for judicial review at this stage.  In sum, there is an actual controversy between Tri-M and Defendant and this issue is ripe for the Court's determination.

E.    Tri-M Has Standing To Challenge The Regulations.

Defendant's fifth argument is that Tri-M lacks standing to bring this litigation.  Standing exists if a plaintiff (1) has suffered an actual or imminent "injury in fact" that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

Defendant appears to be contending that Tri-M lacks standing because the National Apprenticeship Act ("Fitzgerald Act"), 29 U.S.C. § 50, "was intended to promote the interest of laborers and not contractors."  (Def.'s Brf. at 17-19.)  Defendant relies extensively on Gregory Electric Company, Inc. v. U.S. Dep't of Labor, 268 F. Supp. 987 (D.S.C. 1967), in which the plaintiff contractors sued the U.S. Department of Labor in an attempt to compel it to register and approve their apprenticeship program.  Id. at 990.  The court held that the

-13-

contractors had no standing because they could not claim to be aggrieved under governing statutes – the Fitzgerald Act and the Davis-Bacon Act – that were passed for the benefit of workers. Id. at 993-94. This holding and Defendant's argument are irrelevant because Tri-M has not sued under the Fitzgerald Act, the Davis-Bacon Act or any other statute that was intended to protect the welfare of laborers or apprentices.

   Rather, as is manifestly clear from the Complaint, Tri-M has brought suit under 42 U.S.C. § 1983 to vindicate its own constitutional right to engage in interstate commerce free of the discriminatory burdens imposed by Defendant's Regulations. Applying the Lujan factors to the claim that Tri-M actually has brought, Tri-M has alleged not one but two actual injuries it suffered or will suffer as a result of Defendants' enforcement, or threatened enforcement, of the Regulations. First, Tri-M was forced to perform a self-audit and to pay its apprentices over $10,000 in back wages based on DDOL's refusal to recognize Tri-M's Pennsylvania-registered apprentices. Tri-M will continue having to pay additional wages to its Pennsylvania-registered apprentices on Delaware public works projects, unless and until the Regulations are declared unconstitutional. Second, the Regulations place Tri-M at a competitive disadvantage by requiring it to pay Pennsylvania-registered apprentices substantially higher wages than the wages that Delaware contractors are allowed to pay their Delaware apprentices. The Third Circuit, following Supreme Court precedent, has held that "construction contractors have standing to challenge a [discriminatory] ordinance upon a showing they are 'able and ready to bid on contracts [subject to the ordinance] and that a discriminatory policy prevents [them] from doing so on an equal basis." Contractors Ass'n of Eastern Pa., Inc. v. City of Philadelphia, 6 F.3d 990, 995 (3d Cir. 1993) (quoting Northeastern Fla. Chapter of Associated Gen. Contractors of

America v. City of Jacksonville, 508 U.S. 656, 666 (1993)).  Tri-M has suffered just such an injury in being prevented from competing with Delaware contractors on an equal footing.

The remaining Lujan factors, which Defendant does not bother to address, are satisfied by the allegations of the Complaint.  Tri-M's injuries obviously are fairly traceable to Defendant's challenged action in promulgating and enforcing the Regulations.  Further, a decision in favor of Tri-M would find the Regulations unconstitutional and enjoin their enforcement, thereby redressing Tri-M's injuries.  Thus, Tri-M has standing to maintain a Commerce Clause challenge in this case.

F.    Tri-M's Complaint States A Claim For Violation
       Of The Dormant Commerce Clause.

Defendants' final argument is that Tri-M's Complaint fails to state a claim upon which relief can be granted.  Although it is difficult to discern a coherent theory in this section of Defendant's brief, the contention apparently is that Tri-M is not aggrieved under the National Apprenticeship Act or the Delaware Apprenticeship Act and that Delaware should be permitted to exercise its discretion in registering apprenticeship programs.  (Def.'s Brf. at 19-20.) However, as noted above with respect to standing, Tri-M is not asserting rights under any apprenticeship act and is not seeking to compel DDOL to register or approve a particular apprenticeship program.  Again, the actual claim that Defendant seems intent on obscuring is that Secretary Sharp has violated the Commerce Clause by denying recognition to Tri-M's Pennsylvania-registered apprentices for purposes of the Delaware Prevailing Wage Act.

The Commerce Clause of the United States Constitution provides that "Congress shall have Power . . . [t]o regulate Commerce . . . among the several States."  U.S. Const. art. I, § 8, cl. 3.  Although it is phrased as an affirmative grant of power to Congress, the Commerce Clause has long been understood to have a "negative" or "dormant" aspect that prohibits the

-15-

states from unjustifiably discriminating against or burdening interstate commerce. <u>Oregon Waste Sys., Inc. v. Department of Environmental Quality</u>, 511 U.S. 93, 98 (1994). In short, a state law or regulation is unconstitutional and invalid if it discriminates against interstate commerce – that is, if it results in "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." <u>Id.</u> at 99. A finding that a state law or regulation creates such "economic protectionism" may be made on the basis of discriminatory purpose or discriminatory effect. <u>Bacchus Imports, Ltd. v. Dias</u>, 468 U.S. 263, 270 (1984). A discriminatory restriction on commerce is subject to the "strictest scrutiny," and indeed is "virtually <u>per se</u> invalid." <u>Oregon Waste</u>, 511 U.S. at 99, 101. The restriction must be struck down unless the state can prove that it "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." <u>Id.</u> at 100-01.

Recent precedent from within the Third Circuit confirms the validity of a claim alleging discrimination against interstate commerce in the regulation of apprentice wages. In <u>Joseph Stong, Inc. v. Boyd</u>, Civ. No. 01-2914 (GEB), 2003 U.S. Dist. LEXIS 11931 (D.N.J. Mar. 26, 2003) (copy attached), a Pennsylvania plumbing contractor (Stong) brought suit against the Commissioner of the New Jersey Department of Labor, alleging that the Department had violated the dormant Commerce Clause by refusing to recognize Stong's Pennsylvania-registered apprentices for purposes of compliance with the New Jersey Prevailing Wage Act. <u>Id.</u> at *1-*2, *10-*11. On facts nearly identical to those here, the United States District Court for the District of New Jersey granted summary judgment for Stong and held that New Jersey's policy impermissibly discriminated against interstate commerce. <u>Id.</u> at *13-*14, *17-*18. "[T]he purpose and effect of the regulation has been to discriminate against out-of-state apprentices and in turn, out-of-state contractors, in violation of the dormant commerce clause." <u>Id.</u> at *13-*14.

Here, particularly with all inferences drawn in Tri-M's favor as required, there is no tenable argument that the Complaint fails to state a claim for violation of the Commerce Clause. Tri-M has alleged facts more than sufficient to show that Defendant's enforcement of the Regulations with respect to Pennsylvania-registered apprentices results in "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." This unmistakably is a valid claim under Stong and longstanding Commerce Clause jurisprudence. Defendant has not addressed Tri-M's constitutional claim, and in any event cannot meet his burden of showing that no relief could be granted under any set of facts consistent with the allegations of the Complaint.

## V.    **CONCLUSION**

For all of the foregoing reasons, Tri-M respectfully requests that the Court deny Defendant's motion to dismiss in all respects.

Respectfully submitted,

OF COUNSEL:

/s/ Phillip T. Mellet
M. Duncan Grant (Del. Bar No. 2994)
Stephen J. Sundheim                Phillip T. Mellet (Del. Bar No. 4741)
Glenn A. Beard                     PEPPER HAMILTON LLP
PEPPER HAMILTON LLP                Hercules Plaza, Suite 5100
3000 Two Logan Square              1313 N. Market Street
Eighteenth & Arch Streets          P.O. Box 1709
Philadelphia, PA  19103-2799       Wilmington, DE   19899-1709
(215) 981-4000                     (302) 777-6500

Dated:  December 8,  2006          Attorneys for Plaintiff Tri-M Group, LLC

-17-

EXHIBIT "A"

2 of 2 DOCUMENTS

**JOSEPH STONG, INC., and, NEIL STONG, Plaintiffs, v. MARK B. BOYD, COMMISSIONER OF THE STATE OF NEW JERSEY, DEPARTMENT OF LABOR, Defendant.**

**Civ. No. 01-2914 (GEB)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*2003 U.S. Dist. LEXIS 11931*

**March 26, 2003, Filed**

**SUBSEQUENT HISTORY:** Costs and fees proceeding at, Request granted *Joseph Stong, Inc. v. Boyd, 2003 U.S. Dist. LEXIS 11799 (D.N.J., Apr. 30, 2003)*

**DISPOSITION:** Plaintiffs' motion for summary judgment was granted and defendant's cross-motion for summary judgment was denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, a Pennsylvania plumbing contractor, filed a motion for summary judgment and defendant, the Commissioner of the State of New Jersey, Department of Labor (NJDOL), filed a cross-motion for summary judgment, in the contractor's suit challenging the NJDOL's assessment of past due wages, penalties and fees against the contractor resulting from the employment of two Pennsylvania apprentices working on a public works project in New Jersey.

**OVERVIEW:** The contractor was sanctioned for paying less to two Pennsylvania-registered apprentices because apprentices who did not meet New Jersey's regulations were to be paid a higher wage under the N.J. Prevailing Wage Act, N.J. Stat. Ann. § 34:11-4 et seq. The NJDOL stated it would not recognize apprenticeship programs for other states because other states had taken a similar stance against New Jersey contractors. The contractor argued that the NJDOL purposely enforced its apprenticeship regulation in a discriminatory manner to benefit in-state economic interests at the expense of out-of-state economic interests in violation of the dormant commerce clause. The court found that the N.J. Prevailing Wage Act was not facially discriminatory. However, the court found that New Jersey openly engaged in discrimination against out-of-state apprentices and, in turn, out of state contractors, on public works projects in New Jersey in retaliation for out-of-state treatment of in-state contrac-

tors. The discriminatory purpose and effect of the regulation subjected it to heightened scrutiny and rendered it invalid as violative of the dormant commerce.

**OUTCOME:** The contractor's motion for summary judgment was granted and the NJDOL's cross-motion for summary judgment was denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards > Legal Entitlement*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN1] A party seeking summary judgment must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding whether there is a disputed issue of material fact, the court must view the underlying facts and draw all reasonable inferences in favor of the nonmoving party. The threshold inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
[HN2] See Fed. R. Civ. P. 56(e).

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Evidence > Procedural Considerations > Burdens of Proof > Ultimate Burden of Persuasion*
[HN3] Fed. R. Civ. P. 56(e) does not increase or decrease a party's ultimate burden of proof on a claim.

Case 1:06-cv-00556-SLR    Document 9-2    Filed 12/08/2006    Page 3 of 9

Page 2
2003 U.S. Dist. LEXIS 11931, *

Rather, the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case.

*Civil Procedure > Pleading & Practice > Pleadings > Supplemental Pleadings*
*Civil Procedure > Discovery > General Overview*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN4] Under Fed. R. Civ. P. 56(e), a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains. Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be supplemented by depositions, answers to interrogatories, or further affidavits, its opponent must do more than simply show that there is some metaphysical doubt as to material facts. What the nonmoving party must do is go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.

*Labor & Employment Law > Wage & Hour Laws > Administrative Proceedings & Remedies > General Overview*
[HN5] See N.J. Admin. Code tit. 12, § 60-7.1.

*Constitutional Law > Congressional Duties & Powers > Commerce Clause > Interstate Commerce > Prohibition of Commerce*
[HN6] See U.S. Const. art. I. § 8, cl. 3.

*Constitutional Law > Congressional Duties & Powers > Commerce Clause > General Overview*
*Transportation Law > Interstate Commerce > State Powers*
[HN7] The negative or dormant commerce clause prohibits the states from burdening interstate commerce. In its negative aspect, the Commerce Clause prohibits economic protectionism--that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors. Thus, state statutes that clearly discriminate against interstate commerce are routinely struck down unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism.

*Constitutional Law > Congressional Duties & Powers > Commerce Clause > General Overview*
*Transportation Law > Interstate Commerce > State Powers*
[HN8] The initial question in a dormant Commerce Clause case is whether the state regulation at issue discriminates against interstate commerce either on its face or in practical effect. If so, heightened scrutiny applies. Discrimination against interstate commerce in favor of local business or investment is per se invalid, save in a narrow class of cases in which the state can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest. State laws that are facially neutral but have the effect of eliminating a competitive advantage possessed by out-of-state firms trigger heightened scrutiny.

*Constitutional Law > Congressional Duties & Powers > Commerce Clause > General Overview*
[HN9] A state retaliating against other states in order to protect in-state economic interests is a violation of the dormant commerce clause.

*Constitutional Law > Congressional Duties & Powers > Commerce Clause > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Administrative Proceedings & Remedies > General Overview*
[HN10] The discriminatory purpose and effect of N.J. Admin. Code tit. 12, § 60-7.1 subject it to heightened scrutiny and render it invalid as violative of the dormant commerce clause.

*Constitutional Law > Substantive Due Process > Scope of Protection*
[HN11] See U.S. Const. amend. XIV.

*Constitutional Law > Substantive Due Process > Scope of Protection*
[HN12] Principles of due process require an agency to follow its own regulations, which have the force of law. The Due Process Clause is implicated only when an agency violates regulations mandated by the Constitution or by law; or when an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
[HN13] The Bureau of Apprenticeship and Training regulations provide for, cooperation with state agencies engaged in the formulation and promotion of standards of apprenticeship and recognition of a state agency as the appropriate agency for registering local apprenticeship programs. 29 C.F.R. § 29.1 (a),(b). Under these regulations, a recognized state apprenticeship agency is an agency or council which has been approved by the Bureau as the appropriate body for state registration and/or approval of local apprenticeship programs and agreements for federal purposes. 29 C.F.R. § 29.2(o).

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
[HN14] Pennsylvania's Apprenticeship and Training Council is a Bureau of Apprenticeship and Training, United States Department of Labor approved state apprenticeship agency empowered to regulate apprenticeship programs under Federal law.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
[HN15] See 29 C.F.R. § 29.12(a).

*Constitutional Law > Substantive Due Process > Scope of Protection*
[HN16] To satisfy the requirements of the Due Process Clause, laws and regulations must provide specific standards which avoid arbitrary and discriminatory enforcement.

**COUNSEL:** [*1] For JOSEPH STONG, INC., NEIL STONG, plaintiffs: PATRICIA A. SMITH, PEPPER HAMILTON, LLP, CHERRY HILL, NJ USA.

For MARK B. BOYD, defendant: ROBERT M. STRANG, OFFICE OF THE NJ ATTORNEY GENERAL, TRENTON, NJ.

**JUDGES:** GARRETT E. BROWN, JR., U.S.D.J.

**OPINION BY:** GARRETT E. BROWN, JR.

**OPINION:**

**BROWN, District Judge**

This matter comes before the Court upon the motion of plaintiffs, Joseph Stong, Inc., and Neil Stong ("Stong") for summary judgment and the cross-motion of defendant, Mark B. Boyd n1, Commissioner of the State

of New Jersey, Department of Labor ("NJDOL") for summary judgment. The Court has jurisdiction over this action pursuant to *28 U.S.C. § 1331.* For the reasons discussed below, plaintiffs' motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied.

n1 By Court order dated, October 15, 2001, Mark B. Boyd, Commissioner of the State of New Jersey Department of Labor, was substituted as the defendant.

**I. BACKGROUND**

Stong is a plumbing [*2] contractor, incorporated in Pennsylvania, and based in Chester, Pennsylvania. Plaintiffs' Statement of Facts ("Pls' Stmt. of Facts") at 2. Neil Stong is the President of Stong and is a Pennsylvania resident. *Id.* Stong works on New Jersey state funded construction projects, which are governed by the New Jersey Prevailing Wage Act, *N.J.S.A. § 34:11-4.1 et seq. Id.* Stong hires, apprentice plumbers and sprinkler fitters who are registered in an apprenticeship training program developed by the American Fire Sprinkler Association ("AFSA") and administered in Pennsylvania by the Southeast Pennsylvania Chapter of Associated Builders and Contractors ("ABC"), a construction contractors' association of which Stong is a member. *Id.* at 2. The AFSA apprenticeship program has been registered and approved on a national level by the Bureau of Apprenticeship and Training ("BAT"), United States Department of Labor. *Id.* at 2-3.

On the state level, Stong's apprenticeship program is approved and certified by the Pennsylvania Apprenticeship and Training Council ("PATC") and the Federal Committee on Apprenticeship. *Id.* at 3. PATC is a division of the Pennsylvania Department of Labor and [*3] Industry, which is responsible for establishing and maintaining apprenticeship standards and registering apprenticeship programs in cooperation with BAT. *Id.* "BAT is authorized to formulate and promote labor standards necessary to safeguard the welfare of apprentices to extend such standards, and to cooperate with state agencies engaged in the formulation and promotion of apprenticeship standards." Defendant's Statement of Facts ("Defs Stmt. of Facts") at 2-3. PATC is a BAT approved State Apprenticeship Agency or State Apprenticeship Council ("SAC"). Pls' Stmt. of Facts at 3. Pennsylvania is a SAC state, in which the PATC has the power, approved by BAT, to register apprenticeship programs for federal purposes. *Id.* "BAT provides promotional, servicing, and data storage assistance to the limited field staff and

works with employers to develop apprenticeship programs and register apprentices." Defs' Stmt. of Facts at 4. New Jersey has no SAC and thus is considered a BAT state, where BAT registers apprentices and apprenticeship programs directly. *Id.*

Defendant is responsible for administering and enforcing New Jersey's prevailing wage laws. Pls' Stmt. of Facts at 4. The Public [*4] Contracts Section of NJDOL's Division of Wage and Hour Compliance ("Division") specifically enforces the *Prevailing Wage Act.* *Id.* The Public Contracts Section ensures that contractors on New Jersey public works projects properly classify their employees and pay them the appropriate wages under their classification pursuant to the prevailing wage laws. *Id.* Apprentices who do not meet New Jersey's regulations are paid a higher wage. Defs' Stmt. of Facts at 2.

The Division's enforcement procedures are as follows. Alleged violations of the prevailing wage laws are identified by the Public Contracts Section field representatives and then confirmed by their superiors in the Division. Pls' Stmt. of Facts at 4. Field representatives investigate complaints, prepare written reports and make initial determinations on whether a violation has occurred. *Id.* The field representatives are overseen by three district supervisors, who review the reports and either give the report back for further investigation or pass it along to a hearing officer to assess penalties and fines. *Id.* If the employer contests the finding of a violation, it may request an informal pre-hearing settlement conference. [*5] *Id.* If this does not occur or settle the matter, then a hearing officer holds a hearing and renders a decision. *id.* If the employer then disputes this decision, the case is transferred to the Office of Administrative Law for an adversarial proceeding. *Id.*

"In 1997, the Division decided to strictly enforce the regulation because it believed that contiguous states had begun to enforce their own similar statutes and regulations to the perceived detriment of New Jersey contractors." Defs' Stmt. of Facts at 5. This decision was memorialized in a letter dated June 11, 1997, from Leonard Katz ("Katz"), the Assistant Commissioner of NJDOL responsible for the Division of Wage and Hour Compliance, to Dennis Fitzgerald ("Fiztgerald"), the New Jersey state director of BAT. Pls' Stmt. of Facts at 5. Katz's letter stated that New Jersey would "not recognize apprenticeship programs for other states effective this date" because other states have taken a similar stance against New Jersey contractors. *Id.* The NJDOL relies on Fitzgerald to confirm the bona fide status of apprentices for purposes of the *Prevailing Wage Act* compliance. *Id.*

In 1999, Stong was investigated by the NJDOL [*6] to determine the wages paid to two apprentices, Jeff

Shetter and Brian Haines, that were working on a public works project in Trenton, New Jersey. *Id.* at 6. Stong provided documentation that the apprentices were registered in Pennsylvania. *Id.* "On October 10, 1999, BAT advised the Division that the Stong Apprentices 'are not registered apprentices.'" Defs' Stmt. of Facts at 6. On February 29, 2000, Nelson Reeder ("Reeder"), Chief of the Public Contracts Section, informed Stong that it was found in violation of the Prevailing Wage Act. Pls' Stmt. of Facts at 8. A pre-hearing settlement conference was scheduled for April 11, 2000. *Id.* Stong then requested a formal hearing. *Id.* On July 12, 2000, the NJDOL issued a Final Order assessing past due wages, penalties and fees against Stong. *Id.*

On June 15, 2001, plaintiffs filed the instant action before this Court. On November 7, 2002, plaintiffs moved for summary judgment. Upon oral application, defendant cross-moved for summary judgment. n2 These motions are fully briefed and are before the Court for its consideration.

> n2 It appears that defendant's counsel submitted a notice of cross-motion for summary judgment to plaintiffs' counsel, but an original notice of cross-motion for summary judgment was not filed with the Clerk of this Court.

[*7]

## II. DISCUSSION

### A. STANDARD FOR SUMMARY JUDGMENT

[HN1] A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir.1996); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1219, n. 3 (3d Cir.1988), cert. denied, 490 U.S. 1098 (1989); Hersh v. Allen Prod. Co., 789 F.2d 230, 232 (3d Cir.1986).*

In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir.1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).* The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder [*8] of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc., 477*

*U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)* (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).

[HN2] In deciding whether triable issues of fact exist, *Rule 56(e)* of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

*Fed. R. Civ. P.56(e).* [HN3] The rule does not increase or decrease a party's ultimate burden of proof on a claim. Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." [*9] *Anderson, 477 U.S. at 255-56.*

[HN4] Under the rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains. *Celotex, 477 U.S. at 324.* Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented. . . by depositions, answers to interrogatories, or further affidavits," *id.,* "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48* ("by its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion. . .the requirement is that there be no genuine issue of material fact.").

What the nonmoving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to [*10] interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex, 477 U.S. at 324; see also Lujan v. National Wildlife Fed., 497 U.S. 871, 888, 111 L. Ed. 2d 695, 110 S. Ct. 3177 (1990)* ("the object of

*[Rule 56(e)* is not to replace conclusory allegations of the complaint. . . with conclusory allegations of an affidavit"); *Anderson, 477 U.S. at 249; Big Apple BMW Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir.1992)* ("to raise a genuine issue of material fact.. . .the [nonmoving party] need not match, item for item, each piece of evidence proffered by the movant," but rather must exceed the 'mere scintilla' threshold"), *cert. denied, 507 U.S. 912 (1993).*

## B. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT/DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

1. New Jersey's Prevailinn Wage Act and the *Commerce Clause*

Stong argues that since 1997, the NJDOL has purposely enforced its apprenticeship regulation in a discriminatory manner so as to benefit in-state economic interests at the expense of out-of-state economic interests in violation of the dormant *commerce* [*11] *clause.* Plaintiffs' Brief ("Pls' Br.") at 14. Defendant contends that *New Jersey's Prevailing Wage Act* is facially neutral and non-discriminatory in effect and therefore is not violative of the dormant *commerce clause.* Defendant's Brief ("Def's Br.") at 7-8. This Court agrees with plaintiffs.

[HN5] The prevailing wage laws regulating apprentices in New Jersey provide, in relevant part,

> 'Apprentice' means an individual who, while performing work on a public work project, is registered, in good standing, in an apprenticeship program approved or certified by the Division of Vocational Education in the New Jersey Department of Education or by the Bureau of Apprenticeship and Training [BAT] in the United States Department of Labor.

N.J.A.C. § 12:60-7.1.

[HN6] The *Commerce Clause of the United States Constitution* provides that "Congress shall have Power. . . to regulate Commerce. . . among the several States." *U.S. Const. art. I, § 8, cl. 3.* [HN7] The negative or dormant *commerce clause* prohibits the states from burdening interstate commerce. *Oklahoma Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 179-80, 131 L. Ed. 2d 261, 115 S. Ct. 1331 (1995).* In its negative aspect, the *Commerce Clause* "prohibits [*12] economic protectionism--that is, 'regulatory measures designed to benefit in-state economic interests by burdening out-of-state com-

petitors." *Associated Indus. of Mo. v. Lohman*, 511 U.S. 641, 647, 128 L. Ed. 2d 639, 114 S. Ct. 1815 (1994) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273, 100 L. Ed. 2d 302, 108 S. Ct. 1803 (1988)). "Thus, state statutes that clearly discriminate against' interstate commerce are routinely struck down. . . unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism. . ." *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 192, 129 L. Ed. 2d 157, 114 S. Ct. 2205 (1994) (quoting *New Energy*, 486 U.S. at 273-74).

[HN8] "The initial question in a dormant *Commerce Clause* case is whether the state regulation at issue discriminates against interstate commerce 'either on its face or in practical effect.' If so, heightened scrutiny applies." *Cloverland-Green Spring Dairies, Inc. v. Penn. Milk Mktg. Bd.*, 298 F.3d 201, 210 (3d Cir. 2002) (citing *Maine v. Taylor*, 477 U.S. 131, 138, 91 L. Ed. 2d 110, 106 S. Ct. 2440 (1986); *Harvey & Harvey, Inc., v. County of Chester*, 68 F.3d 788, 797 (3d Cir. 1995), cert. denied, 516 U.S. 1173 (1996)). [*13] "'Discrimination against interstate commerce in favor of local business or investment is *per se* invalid, save in a narrow class of cases in which the [State] can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest."' *Id.* at 210-211 (quoting *C&A Carbone, Inc., v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 392, 128 L. Ed. 2d 399, 114 S. Ct. 1677 (1994); *Juzwin v. Asbestos Corp., Ltd.*, 900 F.2d 686, 689 (3d Cir. 1990), cert. denied, 498 U.S. 896 (1990)). First, the regulation at issue here is not facially discriminatory. It applies equally to instate and out-of-state employers who employ apprentices while performing public works in New Jersey. However, "it is clear that state laws that are facially neutral but have the effect of eliminating a competitive advantage possessed by out-of-state firms trigger heightened scrutiny." *Id.* at 211 (citing *Hunt v. Wash: State Apple Adver. Comm'n*, 432 U.S. 333, 53 L. Ed. 2d 383, 97 S. Ct. 2434 (1977); *Baldwin v. G.A.F. Seeling, Inc.*, 294 U.S. 511 (1935)).

Since June 11, 1997, the purpose and effect of the regulation has been to discriminate against out-of-state apprentices [*14] and in turn, out-of-state contractors, in violation of the dormant *commerce clause*. New Jersey has openly engaged in clear economic protectionism as evidenced by the record. As noted earlier, in a letter from Katz to Fitzgerald, Katz stated, "based on policies currently in place with our neighboring states, the New Jersey Department of Labor will no longer recognize out-of-state apprenticeship programs for the purposes of *Prevailing Wage Act* Compliance. Therefore. . . we do not recognize apprenticeship programs for other states effective this date. Certification of Glen E. Beard ("Beard Cert."), Exhibit 8.

Reeder explained during his deposition that Katz, as Assistant Commissioner of the Division of Wage & Hour Compliance, he reported directly to Commissioner Gelade and that Katz sets policy in that division. *Id.* Exhibit 3 at 31-32. Reeder also noted that Fitzgerald's job was to confirm the bona fide status for apprentices and that an apprentice is not accepted in New Jersey unless and until Fitzgerald confirms it. *Id.* at 34. Reeder further stated that prior to 1997, he was not aware of an instance where New Jersey invalidated the wages paid to Pennsylvania, New York, or Delaware [*15] apprentices based on the apprentice program from that state. *Id.* at 50-51. In addition, he remarked that following 1997, there was a change in enforcement of the regulation. *Id.* at 51. Reeder commented, "it just simply came down from Assistant Commissioner Katz or from someone that the instructions were, at my level, that henceforth and forever after, we're going to enforce our apprenticeship regulation the way it was intended." *Id.* When asked whether Stong's apprentices were participants in a properly registered apprenticeship program in the State of Pennsylvania, Reeder stated, "in the State of Pennsylvania, that is correct." *Id.* at 68.

Ridolfino, a former Chief of the Public Contracts Section, stated in his deposition.

> We had received a letter from Mr. Katz, if I recall properly, saying that we're no longer accepting apprentices registered in other states, and that's all I needed, and that's all I got. From that day forward, anybody who had a conference for apprentices, I wasn't accepting anybody that was registered in any other state, that was the extent of it.

*Id.* Exhibit 7 at 18. Ridolfino further explained that he sent a copy of Katz's letter [*16] to plaintiffs' counsel to explain to her why New Jersey would not accept apprentices from any other state. *Id.* at 28-29. In addition, in field representative Raymond Williams's ("Williams") report regarding Stong's two apprentices under investigation, he stated, "[Jeff Shetter] was properly registered in PA approved apprenticeship program . . . Brian Haines... is also not registered in NJ but was approved in Pennsylvania. New Jersey does not recognize PA apprentice programs. . ." *Id.* Exhibit 12. Furthermore, Raymond Smid, District Supervisor for the Wage and Hour Division of the New Jersey Department of Labor, when asked at his deposition whether apprentices registered in another state are accepted in New Jersey he replied, "they have to be registered in New Jersey." *Id.* Exhibit 6 at 10. n3

n3 Defendant argues, for the first time at oral argument, that the reasoning from *Grant's Dairy--Maine, LLC v. Comm'r of Maine Dep't of Agric., Food & Rural Resources, 232 F.3d 8, 23 (1st Cir. 2000)*, should apply and that Katz's letter did not amount to a discriminatory purpose. However, *Grant's Dairy--Maine* is clearly distinguishable. In that case, the following statements about Maine's statutory scheme were proffered to establish discriminatory purpose: - (1) "economic chaos in the State's dairy industry [would be created]"; (2) "potentially disruptive to the State's dairy industry"; (3) "shakes the entire system"; and (4) "essential to the stability of an industry undergoing considerable change." *Id.* The *Grant's Dairy--Maine* court held that these were innocuous expressions of concern about the stability of Maine's dairy industry. *Id.* In the instant situation, Katz's letter clearly expresses the NJDOL's intent to discriminate against any out-of-state apprentice in retaliation for discrimination against New Jersey contractors abroad. This was not an innocuous expression, but rather a statement of clear economic protectionism.

[*17]

The record reveals that the NJDOL was engaging in economic protectionism when it decided to no longer recognize out-of-state apprentices. Out-of-state contractors, like Stong, who employ out-of-state apprentices are at a disadvantage because in order to employ these apprentices on New Jersey public works projects, they would have to pay the apprentices a higher wage. The NJDOL's stated purpose in disallowing out-of-state apprentices was to protect in-state contractors due to similar treatment against them in other states. The fact that in-state contractors also are affected by the out-right prohibition against out-of-state apprentices does not make the regulation any less violative of the dormant *commerce clause. Carbone, 511 U.S. at 391* (stating that "the ordinance is no less discriminatory because in-state or in-town processors are also covered by the prohibition.").

The United States Supreme Court has held that [HN9] a state retaliating against other states in order to protect in-state economic interests is a violation of the dormant *commerce clause. Great Atl. Pac. & Tea Co. Inc. v. Cottrell, 424 U.S. 366, 379-80, 47 L. Ed. 2d 55, 96 S. Ct. 923 (1976)* (finding that the proper method [*18] of challenging a sister state's alleged discrimination is by pursuing a constitutional remedy under the *commerce clause*). New Jersey has openly engaged in discrimination against out-of-state apprentices and, in

turn, out of state contractors, on public works projects in New Jersey in retaliation for out-of-state treatment of in-state contractors.

Defendant's stated justification of the regulation merely reenforces the illegal discriminatory purpose. Defendant stated, "in 1997, the Division decided to strictly enforce the regulation because it believed that contiguous states had begun to enforce their own similar statutes and regulations to the perceived detriment of New Jersey contractors." Def's Stmt. of Facts at 5. In addition, defendant has not shown that nondiscriminatory alternatives were unavailable. [HN10] The discriminatory purpose and effect of this regulation subject it to heightened scrutiny and render it invalid as violative of the dormant commerce.

2. New Jersey's Prevailing Wage Act and the Due Process Clause

Stong also asserts that the NJDOL's refusal to recognize Pennsylvania registered apprentices violates *New Jersey's Prevailing Wage Act* and the *Due Process clause* [*19] of the *Fourteenth Amendment of the United States Constitution.* Pls' Br. at 17. Defendant maintained, at oral argument, that New Jersey does recognize out-of-state apprentices and that Stong simply did not follow the proper procedures under the regulations. This Court agrees with plaintiffs.

[HN11] The Due Process clause of the *Fourteenth Amendment* provides that no state shall, "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV. [HN12] "Principles of Due Process require an agency to follow its own regulations, which have the force of law." *Marshall v. Lansing, 839 F.2d 933, 943 (3d Cir. 1988)* (citations omitted). "*The Due Process Clause* is implicated only when an agency violates regulations mandated by the Constitution or by law; or when 'an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency.'" *Tolchin v. Supreme Court of the State of NJ., 111 F.3d 1099, 1115 (3d Cir. 1997)* (quoting *United States v. Caceres, 440 U.S. 741, 752-53, 59 L. Ed. 2d 733, 99 S. Ct. 1465 (1979)).*

As noted earlier, New Jersey's prevailing wage [*20] laws state that the "apprenticeship program [be] approved or certified by the Division of Vocational Education in the New Jersey Department of Education or by the Bureau of Apprenticeship and Training [BAT] in the United States Department of Labor." N.J.A.C. § 12:60-7.1. [HN13] The BAT regulations provide for, "cooperation with State agencies engaged in the formulation and promotion of standards of apprenticeship" and "recognition of a State agency as the appropriate agency for registering local apprenticeship programs." *29 C.F.R.* §

*29.1 (a),(b)*. Under these regulations, a Recognized State Apprenticeship Agency is "an agency or council which. . . has been approved by the Bureau [BAT] as the appropriate body for State registration and/or approval of local apprenticeship programs and agreements for Federal purposes." *29 C.F.R. § 29.2(o)*. [HN14] Pennsylvania's PATC is a BAT-approved State Apprenticeship Agency or SAC "empowered to regulate apprenticeship programs under Federal law." *Ferguson v. Elec. Co. v. Foley, 115 F.3d 237, 239 n. 3 (3d Cir. 1997)*. [HN15] The BAT regulations further provide, "the Secretary's recognition of a State [*21] Agency or Council (SAC) gives the SAC the authority to determine whether an apprenticeship program conforms with the Secretary's published standards." *29 C.F.R. § 29.12(a)*. As defendant stated in oral argument, BAT approved Pennsylvania's apprenticeship program and registered the apprentices.

The record reveals that the NJDOL was fully aware that Stong's two challenged apprentices were approved and registered in Pennsylvania. As noted earlier, Williams explained in his investigation report that both apprentices were registered in Pennsylvania and Reeder also stated that he was aware that both apprentices were registered in Pennsylvania. Beard Cert. Exhibits 3,12. However, the NJDOL still refused to recognize Stong's apprentices. Defendant argues that New Jersey will recognize out-of-state apprentices if the employer establishes "a New Jersey presence." n4 Defendant asserts that a potential employer would become aware of this requirement, not by the regulation, but by calling the NJDOL. Because there is no notice in the regulation regarding the requirement of establishing "a New Jersey presence," and the regulation clearly states that compliance requires that [*22] the apprentices either be approved or certified by the NJDOL or BAT, then Stong fully complied with the regulation. [HN16] "To satisfy the requirements of the *Due Process Clause*, laws and regulations must provide specific standards which avoid arbitrary and discriminatory enforcement." *Tolchin, 111 F.3d at 1115* (citing *Grayned v. City of Rockford, 408 U.S. 104, 109, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972))*. The NJDOL has acted in direct contravention of its own law by refusing to recognize Stong's apprentices who, as is required by the regulation, were registered apprentices in the BAT approved SAC state of Pennsylvania. Therefore, this Court holds that the NJDOL has violated the Due Process clause.

---

n4  Defendant asserts that apprenticeship programs in SAC states present enforcement problems for the Division because it cannot conduct on-site inspections of out-of-state apprenticeship programs. Certification of Nelson Reeder

---

P P 22-24. However, the regulation provides that a NJDOL or BAT approved or certified apprenticeship program is all that is required. As Reeder stated, registration in a SAC approved, out-of-state apprenticeship program. is facially valid. *Id. P 25*.

[*23]

## III. CONCLUSION

For the reasons stated herein, plaintiffs' motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied. An appropriate form of order is filed herewith.

GARRETT E. BROWN, JR., U.S.D.J.

BROWN, District Judge

This matter comes before the Court upon the motion of plaintiffs, Joseph Stong, Inc., and Neil Stong for summary judgment; and the cross motion of defendant, Mark B. Boyd, Commissioner of the State of New Jersey, Department of Labor for summary judgment; and the Court having considered the parties' submissions; and having heard oral argument on December 16, 2002; and for the reasons stated in the Memorandum Opinion accompanying this order;

IT IS this 26th day of, 2003; ORDERED that plaintiffs' motion for summary judgment is GRANTED; and it is further ORDERED that defendant's cross-motion for summary judgment is DENIED; and it is further

ORDERED that defendant is enjoined from denying recognition to apprentices properly registered in apprenticeship training programs approved or certified by BAT-approved State Apprenticeship Councils; and it is further

ORDERED that defendant cease, withdraw, reverse and rescind [*24] all investigations, citations and administrative proceedings against plaintiffs, and all related debarment proceedings and claims for unpaid wages, fees and penalties against plaintiffs, based on findings or allegations that apprentices properly registered by the Pennsylvania Apprenticeship and Training Council are not or were not properly registered for purposes of the *New Jersey Prevailing Wage Act*; and it is further

ORDERED that plaintiffs are directed to submit an affidavit of plaintiffs' costs and reasonable attorneys' fees incurred in this matter, on or before April 7, 2003, and defendant is directed to submit any response thereto within ten (10) days thereafter, and the Court shall thereafter rule upon the application on the papers without oral argument.

GARRETT E. BROWN, JR., U.S.D.J.

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2006, I served the foregoing Plaintiff

Tri-M Group, LLC's Answering Brief in Opposition to Defendant's Motion to Dismiss

using CM / ECF which will send electronic notice of such filing to:

Linda M. Carmichael, Esq.
State of Delaware Department of Justice
820 North French Street, 6th Floor
Wilmington, DE  19801

/s/ Phillip T. Mellet
Phillip T. Mellet (DE Bar No. 4741)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE   19899-1709
(302) 777-6500