# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **TRI-M GROUP, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-556-SLR** |
| | ) | |
| **THOMAS B. SHARP, SECRETARY,** | ) | |
| **DELAWARE DEPARTMENT OF** | ) | |
| **LABOR,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT THOMAS B. SHARP'S
## <u>SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION TO DISMISS</u>

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

Linda M. Carmichael, I.D. #3570
Deputy Attorney General
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302)577-8400
Counsel for Defendant

DATED: May 27, 2008

## <u>TABLE OF CONTENTS</u>

TABLE OF CITATIONS ......................................................................................ii

NATURE AND STAGE OF THE PROCEEDINGS ......................................................1

SUMMARY OF THE ARGUMENT ......................................................................2

ARGUMENT................................................................................................3

      I.     **THE LEGISLATIVE HISTORY OF THE FITZGERALD ACT PROVIDES FOR PROTECTION OF APPRENTICES THROUGH A VOLUNTARY PROGRAM ADMINISTERED BY THE STATES** .............................................3

      II.    **THE FITZGERALD ACT DOES NOT PROVIDE FOR A PRIVATE RIGHT OF ACTION; THEREFORE, DISMISSAL IS APPROPRIATE BECAUSE PLAINTIFF DOES NOT HAVE STANDING**.............................13

      III.   **DELAWARE'S APPRENTICESHIP RULES AND REGULATIONS ARE FEDERALLY REVIEWED AND AUDITED, AND CONSISTENT WITH THE RULES, REGULATION AND/OR POLICIES OF OTHER STATES** .............................................................................15

CONCLUSION...........................................................................................20

## TABLE OF CITATIONS

CASES

Ashwander v. TVA, 297 U.S. 288 (1936) ...................................................................13

Calif. Div. of Labor Standards Enforcement v. Dillingham Constr. N.A., Inc.,
        519 U.S. 316 (1997) ...........................................................................................3

Cannon v. University of Chicago, 441 U.S. 677 (1979) ...........................................14

Cort v. Ash, 422 U.S. 66 (1975) ...............................................................................13

Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1 (2004) ...............................13

Gregory Electric Company, Inc. v. U.S. Dep't of Labor, 268 F. Supp. 987 (S.C. 1967) .............14

Joint Apprenticeship and Training Council v. New York State Department of Labor,
        829 F.Supp. 101 (1993) ...............................................................................13, 14

Joint Apprenticeship and Training Council of Local 363 v. New York State Department
        of Labor, 984 F.2d 589 (2d Cir. 1993) ...........................................................11

Meditronic, Inc. v. Lohr, 518 U.S. 470 (1996) ...........................................................3

N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,
        514 U.S. 645 (1995) ...........................................................................................3

Norfolk Southern Corp. v. Oberly, 822 F.2d 388 (3d Cir. 1987) .........................11, 12

Rice v. Santa Fe Elevator Corp., 331 U.S. 218 (1947) ...............................................3

Rush Prudential HMO v. Moran, 536 U.S. 355 (2002) ...............................................3

Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983) ....................................................11

Siuslaw Concrete Construction Co. State of Washington, Department of Transportation,
        784 F.2d 952 (9th Cir. 1986) ...........................................................................10

Slack v. McDaniel, 529 U.S. 437 (2000) ...................................................................13

South-Central Timber Development, Inc. Wunnicke, 467 U.S. 82 (1984) ..................12

Southern Pacific Co. v. Arizona, 325 U.S. 761 (1945) ...............................................12

Touche Ross & Co. v. Redington, 442 U.S. 560 (1979) .............................................13

Universities Research Ass'n v. Coutu, 450 U.S. 754 (1981)..................................................13, 14

Western & Southern Life Insurance Co. v. State Board of Equalization of California,
    451 U.S. 648 (1981) ...........................................................................................................12

## STATUTES AND OTHER AUTHORITIES

United States Constitution, Art. I § 8, Cl. 3 ......................................................................1

29 U.S.C. § 50.............................................................................................................passim

42 U.S.C. § 1983............................................................................................................1

29 C.F.R. 29.1 et seq.................................................................................................passim

Delaware Apprenticeship and Training Rules and Regulations ............................................1, 8, 9

81 Cong. Rec. 1675 (1937) ...........................................................................................4

81 Cong. Rec. 6632 (1937) ....................................................................................4, 5, 6

81 Cong. Rec. 6633 (1937) ...........................................................................................6

House Rpt. 945, 75th Congress......................................................................................7

Senate Rpt. 1078, 75th Congress.................................................................................7, 10

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Tri-M Group, LLC ("Tri-M") filed its complaint on or about September 7, 2006, challenging the validity of various statutes contained in Title 29, Delaware Code, known as the Prevailing Wage Law, and Rules and Regulations governing Delaware Apprenticeship and Training.  D.I. 1.  Plaintiff's complaint alleges a violation of its civil rights under 42 U.S.C. § 1983 and seeks a declaratory judgment that certain sections of Delaware's Prevailing Wage Regulations, and Apprenticeship and Training Rules and Regulations violate the Commerce Clause of the United States Constitution, U.S. Const. Art. 1, § 8, cl. 3, in that plaintiff has been deprived of its right to engage in interstate commerce.  (D.I. 1).  Plaintiff also seeks compensatory damages and attorney's fees.  *Id.*

1.      Plaintiff named Thomas B. Sharp, in his official capacity as Delaware's Secretary of Labor, as a defendant.   Plaintiff alleges that Secretary Sharp acted under color of state law when he enforced or supervised the enforcement of the regulations challenged herein. D.I. 1, par. 36.

2.      On April 22, 2008, the Court heard oral argument on the State Defendant's Motion to Dismiss.  At the conclusion of the argument the Court requested that State Defendant's counsel provide the Court with supplemental briefing on the issue of whether Delaware's Apprenticeship Rules and Regulations are in step with other states and whether the legislative history of the Fitzgerald Act recognized abuse of apprentices in the building and construction trades.  This is State Defendant's Supplemental Brief in Support of his Motion to Dismiss.

## SUMMARY OF THE ARGUMENT

I.    THE LEGISLATIVE HISTORY OF THE FITZGERALD ACT PROVIDES FOR PROTECTION OF APPRENTICES THROUGH A VOLUNTARY PROGRAM ADMINISTERED BY THE STATES.

II.   THE FITZGERALD ACT DOES NOT PROVIDE FOR A PRIVATE RIGHT OF ACTION; THEREFORE, DISMISSAL IS APPROPRIATE BECAUSE PLAINTIFF DOES NOT HAVE STANDING.

III.  DELAWARE'S APPRENTICESHIP RULES AND REGULATIONS ARE FEDERALLY REVIEWED AND AUDITED, AND CONSISTENT WITH THE RULES, REGULATION AND/OR POLICIES OF OTHER STATES

**ARGUMENT**

I.     **THE LEGISLATIVE HISTORY OF THE FITZGERALD ACT PROVIDES FOR PROTECTION OF APPRENTICES THROUGH A VOLUNTARY PROGRAM ADMINISTERED BY THE STATES.**

Because preemption constitutes a radical intrusion on a state's power, the Court has long recognized a strong presumption against preemption.  Particularly where "federal law is said to bar state action in fields of traditional state regulation . . . we have worked on the 'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'"  *Calif. Div. of Labor Standards Enforcement. v. Dillingham Constr. N.A., Inc.,* 519 U.S. 316, 325 (1997) (*quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 330 (1947)).  Although state legislation may be preempted by federal provisions in a number of ways, it is presumed that, in all circumstances, "Congress does not intend to supplant state law."  *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995).  This is particularly true where a party claims that federal law bars state action in areas of traditional state regulation.  *See Meditronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996), *see also California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997).  In the instant case preemption should not be found absent evidence that it was Congress' "clear and manifest purpose [to do so]."  *Rush Prudential HMO v. Moran*, 536 U.S. 355, 365 (2002); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

First, to begin the statutory construction analysis the text of the provision in question must be examined, and then if need be move on to the structure and purpose of the Fitzgerald Act.  *Travelers Ins. Co.*, 514 U.S. at 655.  Congress enacted the Fitzgerald Act in 1937 for the purpose of protecting apprentices through the establishment of minimum labor standards,

promoting apprenticeship as a system of training skilled workers and encouraging the federal government to cooperate with state agencies in formulating apprentice standards. *See* 29 U.S.C. § 50; 81 Cong. Rec. 6632 (1937) (statement of Representative William J. Fitzgerald) (attached as Exhibit A); 81 Cong. Rec. 1675 (1937) (statement of Representative Williams J. Fitzgerald) (attached as Exhibit B). The Fitzgerald Act authorized and directed the Secretary of Labor to promote and formulate labor standards to safeguard the welfare of apprentices and to cooperate with state agencies. *See* 29 U.S.C. § 50. The text of the Fitzgerald Act provides:

> The Secretary of Labor is authorized and directed to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices, to extend the application of such standards by encouraging the inclusion thereof in contracts of apprenticeship, to bring together employer and labor for the formulation of programs of apprenticeship, [and] to cooperate with State agencies engaged in the formation and promotion of standards of apprenticeship . . . .

There is nothing in the language of the Fitzgerald Act which would support Plaintiff's position that Congress intended to expressly override either complementary or inconsistent state law, rule or regulation.

In fact, just the opposite is evident in the testimony of Congressman Fitzgerald and in the House and Senate Reports on the bill. The purpose of the Fitzgerald Act was and still is to "put a cloak of protection around boys and girls and encourage them to go back in to the skilled trades." 81 Cong. Rec. 6632 (Ex. A). To achieve this "cloak of protection" the "bill sets up standards by Federal cooperation with the States and through the formation of voluntary committees in the States . . . protecting [the apprentices] and guaranteeing that when their time of service in a trade has expired, they will come out full-fledged mechanics." 81 Cong. Rec. 6632 (Ex. A). More specifically, Congressman Fitzgerald stated that the purpose of the bill was to ensure that after serving their apprenticeship period, an apprentice "will not be exploited . . . but will be a first-

class mechanic." *Id.* Further, when asked whether apprentices would be under the supervision of the Department of Labor, Congressman Fitzgerald responded that "[t]he standards will be set up by the Department of Labor in cooperation with the States." *Id.* Questioning continued regarding setting up the standards of apprenticeship:

> **Mr. Martin of Massachusetts**. And then setting up a standard for the apprenticeship, for the different States?
>
> **Mr. Fitzgerald**. Yes.
>
> **Mr. Martin of Massachusetts**. It is all voluntary?
>
> **Mr. Fitzgerald**. Yes.
>
> **Mr. Martin of Massachusetts**. It is not compulsory?
>
> **Mr. Fitzgerald**. No. In fact, 45 States have set up State committees already, and 112 voluntary committees are working, and these States already have passed these plans during the last year. There was no opposition before the committee.
>
> **Mr. Ditter**. [P]lease tell me what the power of the National Advisory Committee will be? Under section 2 the Secretary of Labor is authorized to appoint a National Advisory Committee, to serve without compensation. Will the gentlemen tell us what the duties and powers of that committee will be?
>
> **Mr. Fitzgerald**: They will set up a voluntary plan. It is national because some association wrote and asked that the name be changed to the National Association or the National Committee to make it function with the States.
>
> **Mr. Ditter**. Then to that extent the Secretary of Labor will be able to carry out and formulate a policy with respect to the several States.
>
> **Mr. Fitzgerald**. Not unless the States agree to it.
>
> **Mr. Ditter**. But the Secretary of Labor is authorized to appoint members of the committee. There is no reservation, no limitation with respect to the authority of the Secretary of Labor.

**Mr. Fitzgerald**.  The States adopt their own plan.

**Mr. Ditter**.    I am speaking now of the National Advisory Committee.  The gentlemen said the National Advisory Committee's duties and powers would be to formulate policies.  I say to that extent the influence of the Secretary of Labor will be expressed through the appointees of this committee.

**Mr. Fitzgerald**.  The committees will be appointed through the State agencies.

**Mr. Ditter**.  . . . Under section 2 the Secretary of Labor has authority to appoint the committee.  It does not say anything except to appoint this national committee.  It delegates that authority directly to the Secretary of Labor.

**Mr. Fitzgerald**.  That is, the national committee sets up with the State organization a voluntary plan.  Everything in this is voluntary.

**Mr. Ditter**.    And to that extent, then the Secretary of Labor's influence will be felt in the administration of the proposed act.

**Mr. Fitzgerald**.  I would not say so.

**Mr. Ditter**.    How is it to be obviated?

**Mr. Fitzgerald**.  Because it will be voluntary on the part of a State whether it accepts the act or not.

**Mr. Ditter**.    What is the power of the committee?

**Mr. Fitzgerald**.  Just making recommendations; that is all.

*Id.* at 6633.

Likewise, the House Report analyzed the Fitzgerald Act and found that it "specifically authorized and directs the Secretary of Labor to formulate and promote labor standards in apprenticeship and to encourage the inclusion thereof in contracts of apprenticeship, to bring together employers and employees for the formulation of programs of apprenticeship, to cooperate with State agencies engaged in the promotion of apprenticeship standards,  . . . 75[th]

Congress, House Rpt. 945 (Exhibit C).

Moreover, attached to the Senate Report on the Fitzgerald Act is an explanatory memorandum from Frances Perkins asserting that

> hearings had revealed that there never has been an adequate apprenticeship system in the United States; that, in 1930, some 750,000 young people under 25 years of age were employed in skilled trades, but were not being trained as apprentices; and that no national approach to the serious problem had been made prior to the creation of the Federal Committee on Apprentice Training in 1934.
>
> The thorough training of skilled workmen is of paramount importance to the employers, to labor, to apprentices, and to the public. To assure that type of training the Federal committee has, with the advice of employers, laborers, and educators, evolved certain minimum standards for apprenticeship. These relate to the scale of wages, ratio of apprentices to journeymen, the number of hours to be worked, the various processes of the trade to be learned, the amount of supplementary school instruction, a written agreement between employer and apprentice, etc.
>
> In its work the Federal committee has not had, nor will it have under this bill, any authority to compel adherence to its recommendations. The committee, and its cooperative State committees, act as a liaison between employers and employees together and give them the benefit of its assistance and counsel in setting up apprenticeship systems.

75th Congress, Senate Report No. 1078 (Exhibit D). There can be no doubt that congressional lawmakers were aware of their inherent authority to legislatively preempt state authority in the apprenticeship field by providing the National Committee with supervisory power or requiring mandatory compliance, however, the text of the debate and Senate Report clearly show that they chose not to do so.

In 1977, the Department of Labor issued extensive regulations to implement the Fitzgerald Act. *See* 29 C.F.R. § 29.1 *et seq.* (1992). These regulations provided a dual federal and state system of apprenticeship approval and recognition. They define the requirements of

apprenticeship programs and establish processes for review, registration and deregistration of apprenticeship training programs administered by federally recognized State Apprenticeship Agencies or Councils ("SACs"). *Id.* Under these regulations, a state agency may apply to the Secretary of Labor for recognition. 29 C.F.R. § 29.12. If the state agency's standards and procedures are in conformity with the federal standards, the state agency is recognized as a federally approved SAC and then is authorized to determine whether an apprenticeship program conforms with federal standards. *Id.* To be eligible for various federal grants, financial assistance, privileges and rights or other benefits, an apprenticeship program must conform with the federal standards and either (1) be registered with the federal Bureau of Apprenticeship and Training ("BAT") or (2) be registered with, or approved by, a recognized SAC. *Id.* § 29.3. An apprenticeship program which submits for registration with a recognized SAC also must comply with the State Apprenticeship laws and regulations to receive the federal benefits. *Id.* § 29.12(e)(1). A copy of the Federal Regulations governing apprenticeship is attached as Exhibit E.

In Delaware, apprenticeship programs also are regulated by a series of state rules and regulations. A copy of Delaware's Department of Labor Apprenticeship and Training Rules and Regulations is attached as Exhibit F. These rules and regulations provide standards for apprenticeship programs and individual apprenticeship agreements, *see* Delaware Apprenticeship and Training Rules and Regulations §§ 1.0, 1.3, and establish eligibility requirements and procedures for program registration and grounds and procedures for deregistration, *see* Delaware Apprenticeship and Training Rules and Regulations §§ 4.0, 10.0. Delaware does not require that an apprenticeship program be registered in order to operate. However, the state offers certain privileges to registered programs, including free education. *See* Delaware Apprenticeship and

Training Rules and Regulations § 9.0.

Delaware Department of Labor, Apprenticeship and Training Section has been recognized as a federally approved SAC since July 21, 1977. See Exhibit G. It is the single administrative agency responsible for the approval and registration of apprenticeship programs in Delaware. As a recognized SAC, Delaware may register apprenticeship programs "as meeting the basic standards and requirements of the Department for approval of such program for **Federal purposes**." 29 C.F.R. § 29.2(l) (emphasis added). "Federal purposes includes any Federal contract, grant agreement or arrangement dealing with apprenticeship; and any Federal financial or other assistance, benefit, privilege, contribution, allowance, exemption, preference or right pertaining to apprenticeship." 29 C.F.R. § 29.2(k).

Tri-M is a sponsor under Pennsylvania's State Apprenticeship and Training Council. Tri-M does not assert it is a member of a BAT approved apprentice sponsorship program. Tri-M seeks to have Delaware recognize its Pennsylvania registered apprenticeship program in the building and construction trade. By the Secretary of Labor's recognition of Delaware as a SAC, Delaware has the authority to determine whether an apprenticeship program conforms with the Secretary's published standards and the program is, therefore, eligible for those **Federal purposes** which require such a determination by the Secretary. 29 C.F.R. § 29.12(a) (emphasis added). Apprenticeship programs that are BAT registered or are registered by another SAC may request reciprocity of their apprenticeship programs and standards "in other than the building and construction industry." 29 C.F.R. § 29.12(b)(8). Tri-M may be recognized by Delaware for **Federal purposes** pursuant to 29 C.F.R. § 29.12(a), but Tri-M must comply with Delaware's Rules and Regulations for recognition for the building and construction trades.

Since its inception, the Fitzgerald Act's purpose has been to "Safeguard the Welfare of

Apprentices." *See* Exhibits A & B. Delaware's Apprenticeship and Training program has followed the intended purpose of the Fitzgerald Act - "safeguard the welfare of Apprentices." Section 1.2, Delaware Apprenticeship and Training Rules and Regulations. To that end, Delaware has established an apprenticeship agency in the Department of Labor, *see* 29 C.F.R. § 29.12(b)(i), which has jurisdiction over laws and regulations governing wages, hours, and working conditions, *see* 29 C.F.R. § 29.12(b)(ii). Delaware's Apprenticeship and Training unit registers apprenticeship programs and monitors compliance of its registered apprenticeship sponsors. Delaware, like the other states, has benefited from the assistance and counsel of the federal government in setting up its apprenticeship systems. *See* Senate Report (Exhibit D). As part of this voluntary federal/state cooperation, Delaware is permitted to exercise its decision making process in the registration of apprentice sponsors to ensure the safety of those apprentices. The Fitzgerald Act Congress specifically debated whether the Federal Committee had any authority to compel adherence to its recommendations – the conclusion was that it had not, nor would it under the Fitzgerald Act. *See* 81 Cong. Rec. 6633 (Ex. A); *see also* 75[th] Congress, Senate Report No. 1078 (Exhibit D). Congress did not legislatively preempt state authority in the apprenticeship field.

Two other cases have dealt with the issue of preemption and the Fitzgerald Act. First, in 1986, the Ninth Circuit in *Siuslaw Concrete Construction Co. v. State of Washington, Department of Transportation*, 784 F.2d 952 (9th Cir. 1986), decided a case where there was no express statement of congressional intent to preempt state laws. Instead, the Plaintiff argued that a Washington code was preempted by federal laws or regulations because first, there was a federal intent to occupy the field, and second, the state statute stands as an obstacle to the accomplishment of federal purposes. On the first argument, the Court found that since a "state

agency approves apprenticeship programs, it appears that there was no federal intent to allow contractors to bypass approval by a state agency." Id. at 956. Thus, there was no federal intent to occupy the field.

Likewise, on the second argument, the Court stated that it was "more reluctant to infer pre-emption from the comprehensiveness of regulations than from the comprehensiveness of statutes." Id. at 957. Further, "to infer pre-emption whenever an agency deals with a problem comprehensively is virtually tantamount to saying that whenever a federal agency decides to step into a field its regulations will be exclusive. Such a rule . . . would be inconsistent with the federal-state balance embodied in our Supremacy Clause jurisdiction." Id. The Court ultimately affirmed the District Court's ruling because the Plaintiff failed to demonstrate either federal intent to occupy the field through comprehensive regulation or compliance with the Washington State statute as an impediment to the accomplishment of federal purposes. Id. at 959.

Second, in *Joint Apprenticeship and Training Council of Local 363 v. New York State Department of Labor*, 984 F.2d 589 (2d Cir. 1993), the Court held that "[b]ecause the Fitzgerald Act, a federal statute, is the ultimate source of the authority of [the New York State Department of Labor] to deregister apprenticeship training programs, the [plaintiff's] reliance on ERISA preemption of state law [was] unwarranted." Id. at 594. ERISA does not preempt federal law or the laws and regulations promulgated thereunder as part of the enforcement scheme of that federal law. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 101-03 (1983).

Likewise, the dormant Commerce Clause does not preempt state regulations promulgated pursuant to the Fitzgerald Act. The dormant Commerce Clause "limits the powers of the states in areas where Congress has not affirmatively acted to either authorize or forbid the challenged state activity." *Norfolk Southern Corp. v. Oberly*, 822 F.2d 388, 392 (3d Cir. 1987).

Congressional consent is a defense to a dormant Commerce Clause challenge. *Id.* Congress, by its actions, may "redefine the distribution of power over interstate commerce [by] permit[ting] the states to regulate the commerce." *South-Central Timber Development, Inc. v. Wunnicke*, 467 U.S. 82, 87-88 (1984) (*quoting Southern Pacific Co. v. Arizona*, 325 U.S. 761, 769 (1945)). "Thus, the limitations on state authority created by the Commerce Clause cannot be ascertained without reference to the relevant federal law." *Norfolk Southern Corp. v. Oberly*, 822 F.2d at 393. Congressional intent must be "unmistakably clear" for a state regulation to be removed from the reach of the dormant Commerce Clause. *South-Central Timber Development, Inc. v. Wunnicke*, 467 U.S. at 91. The legislative history of the Fitzgerald Act clearly shows that Congress intended the states to regulate their own apprenticeship programs. The Supreme Court has held, where "Congress ordains that the States may freely regulate an aspect of interstate commerce, any action taken by a State within the scope of the congressional authorization is rendered invulnerable to Commerce Clause challenge." *Western & Southern Life Insurance Co. v. State Board of Equalization of California*, 451 U.S. 648, 652-53 (1981). For the foregoing reasons, this Court should find that Delaware is free to regulate its apprenticeship program as contemplated by Congress in 1937.

II.    **THE FITZGERALD ACT DOES NOT PROVIDE FOR A PRIVATE RIGHT OF ACTION; THEREFORE, DISMISSAL IS APPROPRIATE BECAUSE PLAINTIFF DOES NOT HAVE STANDING.**

The federal courts have long followed the prudential rule of not adjudicating constitutional issues unless necessary. *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11-12 (2004). It is a long–standing practice that the "Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of." *Slack v. McDaniel*, 529 U.S. 437, 485 (2000) (*citing Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)). Since the Fitzgerald Act does not provide Tri-M with a private right of action, it is proper for this Court to determine the case here on procedural grounds prior to argument on the merits of this case.

In *Joint Apprenticeship and Training Council v. New York State Department of Labor*, 829 F.Supp. 101 (1993), the Southern District of New York was faced with an apprenticeship training sponsor's request for a preliminary injunction seeking deactivation of an apprenticeship registration. The Court applied the four prong test set forth in *Cort v. Ash*, 422 U.S. 66 (1975), to determine whether a private right of action was established. *Id.* at 104.

> That test measures (1) whether the plaintiff is one of the class for whose special benefit the statute was enacted, i.e., whether the statute creates a federal right in favor of the plaintiff, (2) whether there is any indication of legislative intent to either create or deny a private cause of action, (3) whether an implied private remedy is consistent with the underlying purpose of the legislative scheme, and (4) whether the cause of action is in an area traditionally relegated to state law so that it would not be appropriate to infer a cause of action based solely on federal law.

*Id.* (*citing Cort v. Ash,* 422 U.S. at 78).

The hallmark of that evaluation is Congress' intent. *See Universities Research Ass'n v. Coutu*, 450 U.S. 754, 770 (1981); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575-578

(1979). The Fitzgerald Act does not expressly or by inference create a private right of action for program sponsors. *See Universities Research Ass'n v. Coutu*, 450 U.S. at 770 (relying upon the language and focus of the statute, its legislative history and its purpose to determine legislative intent under *Cort*). The Supreme Court has noted, "there '[is] far less reason to infer a private remedy in favor of individual persons' where [,as here,] Congress, rather than drafting the legislation 'with an unmistakable focus on the benefited class,' instead has framed the statute simply as a general prohibition or a command to a federal agency." *Universities Research Ass'n v. Coutu*, 450 U.S. at 772 (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 690-92 (1979)).

The Southern District of New York Court reviewed the Congressional Record and found that it was "Congress's clear intent to benefit the youth of America, not employers or unions, by eliminating exploitation of young workers through promotion of apprenticeship and skilled training." *Joint Apprenticeship and Training Council v. New York State Department of Labor*, 829 F.Supp. at 105 (1993). Further, the New York Court acknowledged the limited case authority and relied upon the no standing decision in *Gregory Electric Company, Inc., et al. v. U.S. Dep't of Labor*, 268 F.Supp. 987 (S.C. 1967). The *Gregory* Court held that contractors have no standing to obtain judicial review since the Fitzgerald Act was intended to promote the interest of laborers, not contractors. *Id.* at 993. Therefore, the New York Court concluded "that there is no basis on which to infer a private right of action where, as here, neither the statutory language nor the legislative history indicates that Congress intended to create one." *Joint Apprenticeship and Training Council v. New York State Department of Labor*, 829 F.Supp. at 105 (1993). As such, Tri-M is not provided with a private right of action under the Fitzgerald Act and thus lacks standing to proceed.

III.    **DELAWARE'S APPRENTICESHIP RULES AND REGULATIONS ARE FEDERALLY REVIEWED AND AUDITED, AND CONSISTENT WITH THE RULES, REGULATION AND/OR POLICIES OF OTHER STATES.**

As requested, counsel contacted every State Apprenticeship Council[1] to determine whether their state statute, rule, regulation and/or policies contained the same provision as Delaware's Apprenticeship Rules and Regulations regarding place of business of a sponsor or employer.  The below chart outlines the responses with a corresponding exhibit if obtained.

| State | Name and Title | Citation to Statute, Rule and Regulation | Attached as Exhibit |
|---|---|---|---|
| Arizona | Dennis Cahill, State Director | YES - 15.3 Reciprocity – "other than the building and construction industry" 16.8.1 Conduct of Compliance Review – comprehensive analyses and evaluations or each aspect of the apprenticeship program, including on-site investigations and audits. Apprenticeship Program List as of May 2008 – only AZ addresses on list of approved sponsors. | H |
| California | Glen Forman, Deputy Chief | NO – no requirement in the Statute or Regulation that an apprenticeship program is required to have a place of business in California. | |
| Connecticut | Jack M. Guerrera, Apprenticeship Program Manager | YES – Apprenticeship Standards, § 2 – Definitions – Sponsor means the duly established firm, association, committee, organization or corporation permanently located within the State of Connecticut in whose name this program is approved and registered. | I |

---

[1] Every SAC state except Hawaii was contacted for this survey.

| State | Name and Title | Citation to Statute, Rule and Regulation | Attached as Exhibit |
|---|---|---|---|
| Delaware | Kevin Calio, Administrator of Apprenticeship and Training Council | YES - § 3.0 Definition- Registrant or Sponsor: any person, association, committee or organization in whose name or title the Program is (or is to be) registered or approved regardless of whether or not such entity is an Employer. The Registrant or Sponsor must hold and maintain a permanent place of business . . . | F |
| District of Columbia | Lewis P. Brown, Director | PARTIAL – requirement that the sponsor have a street address in the District of Columbia where records must be kept for monitoring/auditing purposes. | J |
| Florida | Robert Grisar, Director of Apprenticeship | YES – but waiting for official response from Florida legal. | |
| Hawaii | Elaine Young, Administrator | Not contacted. | |
| Kansas | Loretta Shelley, Program Manager | YES – Part X – Record Maintenance: requires an "office of record" in the State of Kansas, Part XVIII – Reciprocity: "in other than the building and construction industry" | K |
| Kentucky | Michael Dickson, Director | YES – Section 6. Any apprenticeship programs and standards of employers and union in other than the building and construction industry, which jointly form a sponsoring entity on a multistate basis and are registered pursuant to all requirements of this administrative regulation by an recognized state apprenticeship agency or by the bureau, shall be accorded registration or approved reciprocity by the supervisor if such reciprocity is requested by the sponsoring entity. | L |
| Louisiana | Heather Stefan, Director | Not Applicable: Louisiana does not have apprentice rates for state public work projects, only benefit for apprentices on federal projects. | |

| State | Name and Title | Citation to Statute, Rule and Regulation | Attached as Exhibit |
|---|---|---|---|
| Maryland | Roger Lash, Director | No Response. | |
| Maine | Gene Ellis, Director | YES – no mention of place of business for employer/Sponsor but it is Maine's policy that the Apprentice program is for Maine residents, Maine educational institutions and Maine businesses. For construction companies that are based out of state, but do business in state on a "permanent" basis, they register Maine residents only. | M |
| Massachusetts | David Wallace, Division of Apprentice Training | YES - § 7.04 Procedure for Apprentice Program Registration(e) Documentation that the apprentice program sponsor's apprentice activities are primarily located in Massachusetts. Such document should include evidence of the following: (1) That the majority of the work to be performed by the apprentices will occur in Massachusetts; (2) That the efforts to conduct outreach for new apprentices will be directed in Massachusetts; (3) That the administration of the proposed apprentice program will be conducted in Massachusetts; and (4) That all documents and records concerning the proposed apprentice program will be located in Massachusetts. | N |
| Minnesota | Roslyn Wade | No Response. | |
| Montana | Mark S. Maki, Supervisor | YES – unwritten policy | O |
| Nevada | Michael Tancheck, Labor Commissioner | No Response. | |
| New Mexico | Chris Romero, State Director | NO | |
| New York | Yue Yee, Apprenticeship Training Unit | No Response. | |

17

| State | Name and Title | Citation to Statute, Rule and Regulation | Attached as Exhibit |
|---|---|---|---|
| North Carolina | Charles Vaughan, Bureau Chief | No Response. | |
| Ohio | Andy Maciejewski, State Administrator | YES - § 5101:11-3-01 Eligibility for program registration: (A) Any business entity applying for program registration must be incorporated in Ohio or, alternatively, have operated as a business in Ohio for at least twelve months. | P |
| Oregon | Stephen Sims, Apprenticeship and Training Division | NO.  Reciprocity with Washington and Montana. | |
| Pennsylvania | Robert O'Brien, Director | YES - § 83.2 Definitions:  Employer: A person or organization located or doing business in this Commonwealth that employs an apprentice on a work site, whether or not such a person or organization is a party to an apprenticeship agreement or program.  §83.11 Reciprocity: "do not include the building or construction industry." | Q |
| Rhode Island | Christine Grieco | YES - § 2 Definitions:  PROPOSED RULE CHANGE - (f) "Sponsor" means any person, firm, association, committee, organization or corporation that is principally located within the State of Rhode Island with a recognized capability to operate an apprenticeship program and in whose name the program is approved and registered. | R |
| Vermont | Pat Nagy, Director | YES – Out of State Program Sponsors:  Programs will not be registered unless the employer has a staffed office location in this state.  A post office box is not sufficient. | S |
| Virginia | Beverly Donati, Director | YES – Guidelines Governing An Out-of –State Business Participating in Registered Apprenticeship in Virginia:  3.  the out-of-state business must maintain an established physical address within the Commonwealth of Virginia. | T |

| State | Name and Title | Citation to Statute, Rule and Regulation | Attached as Exhibit |
|-------|----------------|------------------------------------------|---------------------|
| Washington | Elizabeth Smith, Apprenticeship Program Manager | NO – reciprocity agreements in place with Oregon and Montana. | |
| Wisconsin | Karen Morgan, Bureau Director | No Response. | |

Of the twenty-seven (27) SAC states surveyed, the results confirm that Delaware is with the majority of fourteen (14) states that have some rule, regulation or policies requiring some sort of place of business requirement in the registering state. With regard to the remainder: four (4) states indicated that they do not have such a rule, regulation or policy; six (6) states did not respond; one (1) state was not applicable, one (1) state was not contacted; and one (1) state was a partial requirement of a street address only.

19

## **CONCLUSION**

Based upon the foregoing and these additional arguments, Defendant, Thomas B. Sharp, Secretary Delaware Department of Labor respectfully requests that this Honorable Court enter an Order dismissing Plaintiff's complaint for the reasons set forth herein.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

BY: /s/ Linda M. Carmichael
Linda M. Carmichael, I.D. #3570
Deputy Attorney General
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302)577-8400
Counsel for Defendant
linda.carmichael@state.de.us

DATED: May 27, 2008

**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I hereby certify that on  May 27, 2008, I caused to be electronically filed Defendant

Thomas B. Sharp, Secretary Delaware Department of Labor's Supplemental  Brief in Support of

His Motion to Dismiss with the Clerk of the Court using CM/ECF which will provide copies to

the following:

> M. Duncan Grant, Esquire
> Matthew Kaplan, Esquire
> Pepper Hamilton LLP
> Hercules Plaza, Suite 5100
> 1313 N. Market Street
> P.O. Box 1709
> Wilmington, DE  19899-1709

> By: /s/ Linda M. Carmichael
>     Linda M. Carmichael I.D. #3570
>     Deputy Attorney General
>     Carvel State Office Building
>     820 North French Street, 6th Flr.
>     Wilmington, DE 19801
>     (302) 577-8400
>     linda.carmichael@state.de.us
>     Attorney for Defendant
>     Thomas B. Sharp, Secretary Department of
>     Labor

# EXHIBIT A

Case 1...v....

to freight and passenger transportation lines and ships and shipping within the Territory of Alaska. It may be re-...

The SPEAKER. Is there objection to the request of the gentleman from Minnesota?

There was no objection.

### PERMISSION TO ADDRESS THE HOUSE

Mr. HOFFMAN. Mr. Speaker, I ask unanimous consent that on Friday next after the special orders heretofore made I may be permitted to address the House for 15 minutes.

The SPEAKER. Is there objection to the request of the gentleman from Michigan?

There was no objection.

### PERSONAL EXPLANATION

Mr. LONG. Mr. Speaker, on June 29 on roll calls 98 and 99 I am shown as not having voted. I was unavoidably detained in my office. Had I been present, I would have voted "nay" on roll call 98 and "yea" on roll call 99.

### LEAVE OF ABSENCE

By unanimous consent, leave of absence was granted as follows:

To Mrs. JENCKES of Indiana, for 1 week, on account of official business.

To Mr. GRISWOLD (at the request of Mr. GREENWOOD), indefinitely, on account of illness.

To Mr. MERRITT, for 2 days, on account of important business.

### CALENDAR WEDNESDAY

The SPEAKER. The Clerk will continue the call of the committees.

Mr. RAYBURN (when the Committee on Education was called). Mr. Speaker, I ask unanimous consent that further business in order for today, Calendar Wednesday, be dispensed with.

Mr. Speaker, may I say that this calendar has been called more in the last 6 months than in any 4 years of my experience in the House. I have stated to each and every committee chairman that I would seek to protect the various committees and not have them called at 4:30 in the afternoon when by points of no quorum or otherwise they might lose their day.

The Committee on Labor is the next committee to be called. The chairman of that committee is present and has a bill for the consideration of the House. I am just afraid that committee may lose its day by being called at this late hour and that is why I am making this unanimous-consent request.

Mr. RANKIN. Mr. Speaker, reserving the right to object, I understand the Committee on Labor has some bills.

Mrs. NORTON. The committee has one bill to call up.

Mr. RANKIN. How long will its consideration take?

Mrs. NORTON. That depends entirely upon the House.

Mr. RANKIN. Probably how long?

Mrs. NORTON. It should not take more than 5 minutes.

Mr. RANKIN. Mr. Speaker, there probably will be little or no opposition to the measure, and I see no reason why the Committee on Labor should not take it up.

Mr. RAYBURN. The trouble is that some of the minority members of the Committee on Labor, who had no idea we would reach the Committee on Labor today, are not here.

Mrs. NORTON. Mr. Speaker, will the gentleman yield?

Mr. RANKIN. Yes.

Mrs. NORTON. I may say to the gentleman I have sent a messenger for the gentleman from California [Mr. WELCH], who is the ranking member of the Committee on Labor, in order that he may be on the floor, but I have not been able to reach him.

Mr. RANKIN. The difference between the Committee on Labor and the Committee on World War Veterans' Legislation is this: the Committee on Labor is always able to get a rule from the Committee on Rules.

Mr. RAYBURN. Oh, no.

Mr. RANKIN. The Committee on World War Veterans' Legislation is not even able to get a hearing on its bill before the Committee on Rules, and it has been trying to do so

for 60 days. So far we have been unable to get any hearing at all. We are not deceived about this matter. We realize this is the only way for us to get this bill passed by the House of Representatives. I hope the chairman of the Committee on Labor will call up her bill, for I am sure there will be no opposition to it, and let us proceed.

Mr. COX. Mr. Speaker, reserving the right to object, the gentleman from Mississippi knows something of my situation. Under the circumstances, and in view of the statement made by the majority leader, I do feel the gentleman ought to show me the consideration of not insisting upon his objection to the unanimous-consent request.

Mr. RANKIN. The gentleman is on the Committee on Rules.

Mr. COX. Yes; and I am in favor of granting the gentleman a rule for the consideration of his bill. I ask for his bill, and I will do everything within my power to influence the committee to give the gentleman a hearing. I hope the hearing will be granted and that a rule will be reported for the consideration of the gentleman's measure.

Mr. RANKIN. Will the gentleman force a vote of the Committee on Rules on my resolution?

Mr. COX. I cannot force the Committee on Rules to do anything, but I will do my best for the gentleman to get a rule.

Mr. RANKIN. This bill involves the gold-star mothers whose insurance payments are expiring, the mothers who sent their sons to the war and never saw them again. They must be taken care of, and this bill is their only hope. This is the only chance we have to take care of them. As I have stated, I have had the bill on the calendar for 60 days, and have had a resolution before the Committee on Rules for 40 days or more, trying to get the bill to the floor of the House. I should like to accommodate the gentleman from Georgia and should like to hear him speak, and will stay here as long as necessary in order to hear the gentleman speak.

Mr. GREEN. I am one who has signed the gentleman's petition, and I am willing to stay here until midnight to help the gentleman pass his bill.

Mr. RANKIN. I am willing to stay here until midnight.

Mr. RAYBURN. Does the gentleman have any idea the bill will come up today? Certainly not.

Mr. GREEN. I thought the Committee on World War Veterans' Legislation had the next call.

Mr. RANKIN. It will come up if the chairman of the Labor Committee will get her bill out of the way.

The SPEAKER. Is there objection to the request of the gentleman from Texas?

Mr. RANKIN. I object.

### APPRENTICES IN INDUSTRY

Mrs. NORTON. Mr. Speaker, by direction of the Committee on Labor I call up the bill (H. R. 7274) to enable the Department of Labor to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices and to cooperate with the States in the promotion of such standards, and ask for its immediate consideration.

Mr. THOMPSON of Illinois. Mr. Speaker, I make the point of order a quorum is not present.

Mr. RANKIN. We will pass this bill tonight unless the House adjourns on a roll call, if we have to stay here until midnight.

Mr. THOMPSON of Illinois. Mr. Speaker, I withdraw my point of order for the moment.

Mr. MARTIN of Massachusetts. I renew the point of order, Mr. Speaker.

The SPEAKER. The gentleman from Massachusetts makes the point of order a quorum is not present.

Mr. MARTIN of Massachusetts. Mr. Speaker, I think the minority members of the Committee on Labor are not aware this bill is coming up. I think they should be here and have a chance to be heard if we are going on with it.

Mrs. NORTON. Mr. Speaker, will the gentleman withhold his point of order?

Mr. MARTIN of Massachusetts. Yes; I withhold my point of order for the moment, Mr. Speaker.

Mr. COX. May I appeal to the gentleman from Mississippi that he kindly do not object to the unanimous-consent request of the gentleman from Texas?

Mr. RANKIN. If the gentleman will let the call of committees proceed, when it gets down to the Committee on World War Veterans' Legislation I am willing to let him dispense with further proceedings under the call of committees, but I am not going to withdraw my objection until the World War Veterans' Committee is called.

Mr. COX. The gentleman has that right, of course.

The SPEAKER. Does the gentleman from Massachusetts withhold his point of order?

Mr. MARTIN of Massachusetts. I must insist on my point of order, Mr. Speaker.

The SPEAKER. The gentleman declines to withhold his point of order. A constitutional question has been raised that a quorum is not present. The Chair will count.

Mr. MARTIN of Massachusetts. Mr. Speaker, I withdraw the point of order for a moment.

The SPEAKER. The gentleman from Massachusetts withdraws his point of order.

Mrs. NORTON. Mr. Speaker, by direction of the Committee on Labor I call up the bill (H. R. 7274) to enable the Department of Labor to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices and to cooperate with the States in the promotion of such standards, and ask for its immediate consideration.

The Clerk read the title of the bill.

Mrs. NORTON. Mr. Speaker, I ask unanimous consent that the bill may be considered in the House as in Committee of the Whole.

The SPEAKER. The gentlewoman from New Jersey asks unanimous consent that the bill may be considered in the House as in Committee of the Whole. Is there objection?

Mr. MARTIN of Massachusetts. Mr. Speaker, reserving the right to object, before we give this permission I think we should know something about the bill. We are somewhat handicapped because we did not expect it to come up at this time.

Mrs. NORTON. Mr. Speaker, I may say to the gentleman from Massachusetts that the author of the bill, the gentleman from Connecticut [Mr. FITZGERALD], is here and will be pleased to explain the measure.

I may say further that the bill was reported out unanimously by the Committee on Labor before I became chairman of that committee. I have looked up the record and I have found that the vote of the committee was unanimous.

Mr. MARTIN of Massachusetts. I think the rest of the House should know something about the bill, and under my reservation of objection, in order that we may know what the bill is about, I yield to the gentleman from Connecticut.

Mr. FITZGERALD. Mr. Speaker, this bill sets up in the Department of Labor an apprentice training system for the youth of this country. We have debated here today for hours about taking 200,000 boys and girls and putting them into the forests of America. This bill will provide a cloak of protection to put around boys and girls and encourage them to go back into the skilled trades, and in some localities today we have a crying need for trained and skilled workers.

Mr. MARTIN of Massachusetts. Just what does the bill do?

Mr. FITZGERALD. The bill sets up standards by Federal cooperation with the States and through the formation of voluntary committees in the States, throwing a cloak of protection around the boys and girls and setting up standards and protecting them and guaranteeing that when their time of service in a trade has expired, they will come out full-fledged mechanics. It also incorporates vocational education in the plants.

Mr. HOFFMANN. Mr. Speaker, will the gentleman yield for a question when he concludes his statement?

Mr. FITZGERALD. Yes. The bill was heard by a subcommittee of the Committee on Labor and representatives

of labor and capital appeared. I may say this is, perhaps, the only bill before the House today that both labor and capital are in favor of. The National Manufacturers Association wrote the committee and went on record in favor of the bill and Mr. John Frey represented the American Federation of Labor before the committee, testifying in favor of the bill.

If you really want to do something for the youth of the country, this is one of the best bills you can pass, because it will encourage them to learn a skilled trade as a means of livelihood.

In the past 25 years over one million and a quarter mechanics have come here from the European countries, and I am going to tell the Members of the House now that if a bill of this nature is not passed and a system of this kind not established, within 10 years you will lower your immigration bars in order to get mechanics from across the water. We have a need for mechanics in special lines today. Industry is crying for them and still we are passing laws here to put the youth of our country into the forests, instead of encouraging them to go back into the trades and become skilled mechanics.

Mr. HOFFMAN. Mr. Speaker, will the gentleman yield?

Mr. FITZGERALD. Yes.

Mr. HOFFMAN. In the New York Times of yesterday and in the same paper the day before there was a long article each day by a special writer who had been investigating conditions in Michigan, and in the article the statement was made that the W. P. A. and the C. I. O. were interested and that the C. I. O. had contributed some $6,000 in Michigan for the purpose of educating the youth there along certain lines. If the Department of Labor establishes this school, what connection, if any, will the C. I. O. workers have with the undertaking?

Mr. FITZGERALD. This bill does not propose to establish schools, but it proposes to protect the boys and girls in industry.

Mr. HOFFMAN. It proposes to educate them.

Mr. FITZGERALD. While they are getting practical knowledge, so that a boy, after serving an apprenticeship of 4 years, will not be exploited, but when he has served his apprenticeship he will be a first-class mechanic.

Mr. HOFFMAN. The question I want to ask the gentleman is this: What part has the C. I. O. in the training of these young men and women?

Mr. FITZGERALD. It has nothing to do with it, to my knowledge.

Mr. HOFFMAN. The W. P. A. has something to do with it, according to this article.

Mr. FITZGERALD. I do not know about that, but I do know that the bill is endorsed by both labor and capital.

Mr. HOFFMAN. Will not the C. I. O. furnish the teachers if the training is under the present Secretary of Labor?

Mr. FITZGERALD. The training is going to be done by the employers in the various industries.

Mr. HOFFMAN. But under the supervision of the Department of Labor?

Mr. FITZGERALD. The standards will be set up by the Department of Labor in cooperation with the States.

Mr. HOFFMAN. With the cooperation of Mme. Perkins?

Mr. FITZGERALD. The Department of Labor.

Mr. MARTIN of Massachusetts. Will the gentleman tell us whether the committee went into the cost of the administration of this bill?

Mr. FITZGERALD. Approximately $56,900 has been the amount provided previously. This activity has been functioning under the National Youth Administration.

If the gentleman will recall, 2 months ago, when the Committee on Appropriations had that part of the bill under consideration, they would not pass it, because that committee claimed it was not removed legally from the National Youth Administration into the Department of Labor. Both the minority and the majority parties on the committee are in favor of making that small appropriation of $56,900.

Mr. MARTIN of Massachusetts. And this is transferring it to the Department of Labor?

a rule from the Committee on Rules.
Mr. RAYBURN. Oh, no.

4 Mr. NORTONE (?) Speaker will the gent page 4 of 78
hold his point of order?

Mr. FITZGERALD. Yes.

Mr. MARTIN of Massachusetts. And then setting up a standard for the apprenticeship, for the different States?

Mr. FITZGERALD. Yes.

Mr. MARTIN of Massachusetts. It is all voluntary?

Mr. FITZGERALD. Yes.

Mr. MARTIN of Massachusetts. It is not compulsory?

Mr. FITZGERALD. No. In fact, 45 States have set up State committees already, and 112 voluntary committees are working, and these States already have passed these plans during the last year. There was no opposition before the committee.

Mr. DITTER. Mr. Speaker, I reserve the right to object. Will the gentleman from Connecticut please tell us what the power of the National Advisory Committee will be? Under section 2 the Secretary of Labor is authorized to appoint a National Advisory Committee, to serve without compensation. Will the gentleman tell us what the duties and powers of that committee will be?

Mr. FITZGERALD. They will set up a voluntary plan. It is national because some association wrote and asked that the name be changed to the National Association or the National Committee, to make it function with the States.

Mr. DITTER. Then to that extent the Secretary of Labor will be able to carry out and formulate a policy with respect to the several States.

Mr. FITZGERALD. Not unless the States agree to it.

Mr. DITTER. But the Secretary of Labor is authorized to appoint the members of the committee. There is no reservation, no limitation with respect to the authority of the Secretary of Labor.

Mr. FITZGERALD. The States adopt their own plan.

Mr. DITTER. I am speaking now of the National Advisory Committee. The gentleman said the National Advisory Committee's duties and powers would be to formulate policies. I say to that extent the influence of the Secretary of Labor will be expressed through the appointees of this committee.

Mr. FITZGERALD. The committees will be appointed through the State agencies.

Mr. DITTER. I am afraid that the gentleman and I are in disagreement. Under section 2 the Secretary of Labor has authority to appoint the committee. It does not say anything except to appoint this national committee. It delegates that authority directly to the Secretary of Labor.

Mr. FITZGERALD. That is, the national committee sets up with the State organization a voluntary plan. Everything in this is voluntary.

Mr. DITTER. And to that extent, then, the Secretary of Labor's influence will be felt in the administration of the proposed act.

Mr. FITZGERALD. I would not say so.

Mr. DITTER. How is it to be obviated?

Mr. FITZGERALD. Because it will be voluntary on the part of a State whether it accepts the act or not.

Mr. DITTER. What is the power of the committee?

Mr. FITZGERALD. Just making recommendations; that is all.

Mr. MARTIN of Massachusetts. Mr. Speaker, I am satisfied with the explanation of the gentleman from Connecticut and I withdraw my reservation of objection.

The SPEAKER. Is there objection to the request of the gentlewoman from New Jersey to consider the bill in the House as in Committee of the Whole?

Mr. HOFFMAN. Mr. Speaker, I reserve the right to object in order to ask the gentleman a question.

The SPEAKER. The gentleman from Michigan reserves the right to object.

Mr. HOFFMAN. Here is the article to which I referred, and it says about $7,000 is set aside by the union each month for the educational program from its income of $500,000 a month, and it ties in with the W. P. A. If this committee is established by the Department of Labor to teach these young men and women and qualify them to follow a trade, how does that hook up with this?

Mr. FITZGERALD. I do not see any connection at all with it, because all this bill does is this: After a boy is in a plant, working, he is indentured to learn a trade in the plant, working for the company. After he is indentured, these standards will be set up for his protection. He will get his practical experience right there. His vocational education he will get through the trade school.

Mr. HOFFMAN. But these schools are to be set up in these plants, and the C. I. O. is furnishing $7,000 a month to assist in that. Does not that tie up directly with this?

Mr. FITZGERALD. No.

The SPEAKER. Is there objection to the request of the gentlewoman from New Jersey?

There was no objection.

The SPEAKER. The Clerk will report the bill.

The Clerk read the bill, as follows:

Be it enacted, etc., That the Secretary of Labor is hereby authorized and directed to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices, to extend the application of such standards by encouraging the inclusion thereof in contracts of apprenticeship, to bring together employers and labor for the formulation of programs of apprenticeship, to cooperate with State agencies engaged in the formulation and promotion of standards of apprenticeship, and to cooperate with the National Youth Administration and with the Office of Education of the Department of the Interior in accordance with section 6 of the act of February 23, 1917 (39 Stat. 931), as amended by Executive Order No. 6166, June 10, 1933, issued pursuant to an act of June 30, 1932 (47 Stat. 414), as amended.

Sec. 2. The Secretary of Labor may publish information relating to existing and proposed labor standards of apprenticeship, and may appoint national advisory committees to serve without compensation. Such committees shall include representatives of employers, representatives of labor, educators, and officers of other executive departments, with the consent of the head of any such department.

Sec. 3. On and after the effective date of this act the National Youth Administration shall be relieved of direct responsibility for the promotion of labor standards of apprenticeship as heretofore conducted through the Division of Apprentice Training and shall transfer all records and papers relating to such activities to the custody of the Department of Labor. The Secretary of Labor is authorized to appoint such employees as he may from time to time find necessary for the administration of this act, with regard to existing laws applicable to the appointment and compensation of employees of the United States: Provided, however, That he may appoint persons now employed in Division of Apprentice Training of the National Youth Administration upon certification by the Civil Service Commission of their qualifications after reassembled examinations.

Sec. 4. This act shall take effect on July 1, 1937, or as soon thereafter as it shall be approved.

Mr. COX. Mr. Speaker, I move to strike out the last word.

The SPEAKER. The gentleman from Georgia is recognized for 5 minutes.

Mr. COX. Mr. Speaker, several days ago the House very kindly granted me 1 hour's time for an address after the completion of the legislative program for today.

My address, Mr. Speaker, will be more or less factual and largely intended to be used as a basis for discussion later on.

Mr. Speaker, the industrial contest which is today driving the United States of America toward what may be a state of civil war is a titanic struggle between forces favoring industrial relations between labor and capital on the basis of an organized labor democracy, as represented in the American Federation of Labor, and forces favoring industrial relations between labor and capital on the basis of a labor despotism, as typified by the Committee for Industrial Organization. Beginning as an apparently internal disagreement in the American Federation of Labor, John Lewis and his cohorts have expanded the Committee for Industrial Organization movement into what now cannot be described by any other term than as a reign of industrial terror.

Both the philosophies and the modus operandi of the American Federation of Labor and the Committee for Industrial Organization are as far apart as the poles.

The American Federation of Labor system of an organized labor democracy is based upon a lawful and orderly procedure of collective bargaining to adjust capital-labor relations. The Committee for Industrial Organization believes in a lawless and disorderly procedure to force its own desired adjustments of capital-labor relations.

The American Federation of Labor, a conservative but aggressive aggregation of trade-unions, has, over the years, demonstrated its disciplinary control over its unions and its high regard for the inviolability of its contracts with employers.

The Committee for Industrial Organization, a radical if not communistic, reckless, and marauding aggregation of hastily formed unions, has demonstrated no disciplinary control over its unions, but has demonstrated its utter disregard for the inviolability of any contract it has made or may make with employers.

The American Federation of Labor officials have been duly elected by a fair vote of their membership on the basis of a pure labor democracy.

The officials of the Committee for Industrial Organization are a group of self-constituted leaders intent upon wielding a despotic power over the laboring men and women of America. They have never been elected to their offices by any group.

The American Federation of Labor operates under a duly adopted constitution and bylaws approved by its membership.

So far as I have been able to ascertain, the Committee for Industrial Organization operates under no constitution and no bylaws, except the will and desires of John L. Lewis and his cohorts.

The American Federation of Labor grants autonomy to its member unions.

The Committee for Industrial Organization demands and secures absolute submission of its member unions to the mandates of John L. Lewis.

The American Federation of Labor revenues and expenditures are audited and accounted for to the general membership of the organization.

So far as I have been able to ascertain, the Committee for Industrial Organization makes no accounting to its union membership for dues or special assessments collected and expended.

The American Federation of Labor operates on a basis of voluntary membership of working men and women in its craft unions.

The Committee for Industrial Organization operates on a basis of an involuntary and impressed membership of working men and women in its unions.

The American Federation of Labor is a strictly nonpolitical labor democracy.

The Committee for Industrial Organization is a labor-political-communistic organization, insofar as its leaders are concerned.

The American Federation of Labor never makes any political contributions to any party.

The Committee for Industrial Organization made the largest single contribution in history to a political party in the last campaign.

The American Federation of Labor has always sternly rejected from its membership those who advocated a communistic government for the United States.

The Committee for Industrial Organization staff of officials, strike directors, and organizers are shot through and through with avowed Communists.

The American Federation of Labor has never made the closed shop and the check-off system a strike issue.

The avowed intention of John L. Lewis and the other Committee for Industrial Organization leaders is to make every industry, big and small, in the United States a closed shop—a Committee for Industrial Organization closed shop—with the check-off system.

The American Federation of Labor has at all times advocated legal methods of strike and picketing.

The very essence of the Committee for Industrial Organization technique is lawless methods of striking and armed picketing.

The American Federation of Labor invariably takes a vote of its membership in any industry before a strike is adopted—even as a last resort—to effectuate collective bargaining.

The Committee for Industrial Organization, with its group of sit-down technicians, and its strong-arm squads always strikes first without the consent, and usually without the knowledge, of the workers in any industry, and, after suspending operations, impresses those workers into membership in the Committee for Industrial Organization.

The American Federation of Labor has always maintained its operations within the realm of the economic field, where they properly belong, in striving to achieve better adjustment of wages, hours, and working conditions.

The Committee for Industrial Organization has shifted the problem of industrial relations between employers and employees from the economic field into a political movement; and that political movement has been shifted by the leaders of Committee for Industrial Organization into a communistic political movement.

The American Federation of Labor has always maintained the theory of the vested right of the worker in his job at proper wages, hours, and under proper working conditions.

The Committee for Industrial Organization holds to the theory that the worker not only has a vested right in his job but that he also has a vested ownership in the plant in which he may for the moment be working, and is therefore entitled to sit down and suspend operations whenever he so desires.

The American Federation of Labor has never countenanced and has never permitted an outlaw strike by any of its unions in defiance of a contract with employers. It has always appropriately disciplined such unions on the rare occasions of such action.

Committee for Industrial Organization unions, according to Dorothy Thompson, in the Washington Evening Star of Monday, June 21, have had 180 strikes in some part of the motors industry in 180 days since a solemn written agreement was signed between General Motors and Committee for Industrial Organization.

In short, the difference in the concept of industrial labor relations between the American Federation of Labor and the Committee for Industrial Organization is the difference between American constitutional government and the communistic concept of government of Soviet Russia.

The American Federation of Labor has fought for 50 years for the one objective of bettering the condition of the American working men and women.

The Committee for Industrial Organization is fighting for the declared objective of making John L. Lewis the labor czar of America, with a group of self-avowed Communists as his chief lieutenants and advisers.

In the Committee for Industrial Organization movement America today faces an organized terroristic movement which is utterly ruthless, utterly irresponsible, utterly unprincipled, and utterly foreign to any logical concept of the principles of either of the two great political parties of this country; utterly foreign to every concept expressed in the Constitution, completely at variance with everything we have known in this Nation since its birth in the way of organized movements for the improvement of our economic, industrial, or social conditions.

While the American Federation of Labor has always based its movement and its operation on a logical ground of economic necessity and advantage for the whole people, the Committee for Industrial Organization has proceeded, from the day it was conceived in the mind of John L. Lewis, on the basis of an appeal to the basest emotions and the grossest motives that can actuate those persuaded and propagandized into bitter class hatreds and warfare.

It is time that the emotionalism, the deception, and the cowardly acquiescence to a surge of organized lawlessness be stripped from this situation, and the true picture held up before the American people in all of its sinister and ugly possibilities.

How does the Committee for Industrial Organization operate?

A group of sit-down technicians, in no case employed in the industry they are going to strike, decide upon a demonstration of power by either the sit-down method or by the

armed picket method. Outside of a very few key places in the industry which is to be struck, no information is given to the rank and file of the workers in that industry. Suddenly the wheels stop. A small group of these sit-down strikers take wholly illegal possession of the plant. They immediately debar the law-abiding workers from entrance into the plant. To do this, if necessary, they quickly resort to armed intimidation, slugging, assassination, sabotage—any method which at the moment may be regarded as the most effective to frighten the workers and to force the employers to come to such terms as the Committee for Industrial Organization may desire, and by throwing large bodies of massed pickets around the plants, many of these pickets being imported from other States.

Owners of property are barred from their own premises. The United States mails are stopped. The duly constituted courts are defied. The law-enforcement agencies are ignored or resisted.

No appeal is made to the National Labor Relations Board for a free and fair referendum to ascertain whether or not the majority of the workers in the industry want to be represented in collective bargaining by the Committee for Industrial Organization.

Instead of that, these lawless strikers seize the properties; plant records are destroyed, furniture is befouled and defaced.

Not the slightest consideration is given to the economic loss forced upon the workers who, satisfied with the wages, hours, and conditions, are for days and weeks denied their constitutional right to engage peacefully in the vocations upon which they depend for a living for themselves and their families.

Not the slightest consideration is given to the economic loss imposed upon employers and innocent stockholders.

No consideration is accorded the inarticulate mass of ultimate consumers who must finally pay the penalty in increased prices for all the depredations, loss of wages, loss of profits, and suspension of production of real wealth.

Time and again—and it is happening now—the duly elected officials of cities and towns are defied and threatened with armed raids upon their communities, by legions of deluded and power-drunk Committee for Industrial Organization followers, led into these communities from the outside by communistic directors.

When met by determined citizens, properly armed and deputized by their officials, to protect the homes and the towns and the industries of this country, and when some of the Committee for Industrial Organization followers get bruised heads and blackened eyes, and in some cases when they are shot down while on their lawless raids, what happens? John Lewis and his communistic cohorts howl to high heaven of "butcheries", "massacres", "bloody outrages." When the Committee for Industrial Organization pickets beat up honest workingmen who want to go to their peaceful employment in the plants, John Lewis and his lieutenants approve it as being necessary incidents in a good cause.

Very rarely, indeed, is any communistic leader of these deluded Committee for Industrial Organization followers ever found in the forefront of the battle. They are always far back behind the line; inciting their excited dupes to these assaults upon peaceful citizens, and these defiances of the courts and the constituted law enforcement agencies. It is characteristic of this communistic breed, which is so active in carrying on the Committee for Industrial Organization depredations, that they are willing to fight to the last drop of the other fellow's blood. But they always make sure that their own heads are well out of the way of police clubs.

By a cowardly and supine surrender to these lawless forces in their initial depredation in the Michigan sit-down strikes we invited exactly the condition that we have in this country today. This is proved beyond question by the fact that those States whose governors had the moral and political courage to declare that the lawless methods of the Committee for Industrial Organization would not be tolerated have

been free of such scenes of carnage and disorder as have characterized the seven States now terrorized by this incipient revolution.

It would seem too grotesque for credence, if it had not happened, that conditions such as obtain in Michigan and Ohio and Pennsylvania could come to pass in the United States of America in A. D. 1937. What a sinister and alarming spectacle we have witnessed in Michigan when the troops were called out to protect and maintain sit-down strikers in their illegal possession of industrial plants, while orders of the courts were defied by the Committee for Industrial Organization.

What a sinister and utterly dangerous event, pregnant with the possibilities for red revolution, we have witnessed in the great State of Pennsylvania. There 14,000 peaceful men quietly engaged, under their constitutional rights, at their vocations in a steel plant were driven from their work by the bayonets and the pistol muzzles of Pennsylvania guardsmen and State police because a group of self-appointed Committee for Industrial Organization leaders had decreed they should not work until they submitted to forced membership in that organization.

What an alarming and utterly dangerous situation has arisen that thousands of men desirous of pursuing their peaceful employment in the steel plants of the Middle West should be driven from their labors at the point of bayonets because a group of self-appointed Committee for Industrial Organization strike leaders decreed they should not work.

What sardonic and unbelievable effrontery these Committee for Industrial Organization leaders have displayed in successfully petitioning the President to close the steel plants because of the "awful carnage", "dreadful scenes", "horrible bloodshed" that would be precipitated by the Committee for Industrial Organization strikers if peaceful American citizens were permitted to continue their work in the struck plants.

I wonder if the full implication of this audacious thing has reached the mind of America yet. Here a group of Committee for Industrial Organization strike technicians struck these plants for no other reason than that they wanted a written contract with the independent steel industry, designating the Committee for Industrial Organization as the sole bargaining agency of all the workers in that industry.

They stationed armed pickets, in defiance of the law and the law-enforcement agencies, to prevent ingress and egress of the workers. They stopped the United States mails. They shot into airplanes. And then they appealed to the President to see that peaceful employees were excluded from the plants by military force, because otherwise these lawless Committee for Industrial Organization groups would not be able to restrain themselves, and carnage and bloodshed would result. It is unfortunate and regrettable that the President acquiesced.

The Committee for Industrial Organization in these cases has made no appeal to the National Labor Relations Board for a free and voluntary referendum of the steel workers as to who shall represent them in their collective bargaining.

There is no issue of wages, or hours, or working conditions involved. The employers have agreed to every wage- and hour- and working-condition demand. The sole issue upon which all this lawlessness and disorder and bloodshed is based is an arrogant demand by the Committee for Industrial Organization leaders that the employers sign a written contract with them recognizing them as the sole representatives of all labor in the industry.

I hold no brief for Tom Girdler and his kind. I think they have been very unwise in their attitude toward labor over the years in the steel industry. That does not alter the fact that two wrongs never made a right; that two lawless and immoral acts never create a lawful and moral attitude; that two wrongful acts will not result in a right one.

Let us see what lies behind a written contract between the employers and the Committee for Industrial Organization:

The simple statement sounds logical that if a man is willing to make an agreement he should be willing to put his name to it. Here is a picture of what a signed contract between

Case 1:06-cv-00556-SLR    Document 41-2    Filed 05/27/2008    Page 7 of 78

employers and the Committee for Industrial Organization means, and has been demonstrated to mean:

It means that the employer is fully responsible for the performance of his part of the contract. It means that there is not one iota of responsibility on the part of the Committee for Industrial Organization to perform its part of the contract. Committee for Industrial Organization leaders have violated their contracts with employers scores of times.

A written contract with the Committee for Industrial Organization means new demands by irresponsible leaders, forced by extravagant promises to their deluded followers, for higher wages and shorter hours, without any regard to the economic laws governing production costs and consuming markets that set limits upon such demands.

A written contract with the Committee for Industrial Organization inevitably means—and it is so avowed by John L. Lewis and his lieutenants—a subsequent demand for a closed shop and the check-off system, precisely as John Lewis brought about the closed shop and the check-off system in the United Mine Workers of America.

What do the closed shop and the check-off system, under the Lewis concept of industrial relations, mean?

They mean that the American Federation of Labor craft unions would necessarily disappear from the economic picture in America. Every man and woman employed in any industry, big or small, dominated by the Committee for Industrial Organization, would have to submit to involuntary membership in the Committee for Industrial Organization as a condition to securing employment and making a living. They could not escape this condition. It would mean that no worker in America, be he skilled or unskilled, would dare, in his place of employment or the precincts of his own private home, to breathe one word of discontent or disrespect that might be heard by any member of the Committee for Industrial Organization OGPU on pain of being blacklisted by the Committee for Industrial Organization and denied any chance to make a living for himself and his family at his trade anywhere in America.

A signed contract with the Committee for Industrial Organization will mean eventually the check-off system. What does the check-off system mean? It means that every worker in every industry dominated by the Committee for Industrial Organization, as a condition of his involuntary and forced membership in the industrial union, would have to agree that any dues or special assessments levied against him as a tribute for his right to work would be withheld from his pay envelope by his employer upon orders of John L. Lewis, and, without the employee's consent or knowledge of the reason for such tribute, be transmitted by the employer to the treasury of John L. Lewis.

For any political or other purposes which he might choose, such a system would give John L. Lewis and his communistic cohorts a fund of untold millions a year with which to corrupt politics, buy elections, bribe officials, or use for any other purpose this labor czar of America might desire.

Such a system is plain unadulterated labor despotism.

There is no shadow of question that John L. Lewis and his leaders mean to move to that ultimate goal of the closed shop and the check-off system just as quickly as they can bludgeon American industry into submission to their power.

There is another and even more sinister picture to be drawn.

John Lewis and his lieutenants are now engaged in the unionization under the Committee for Industrial Organization banner, and according to the Committee for Industrial Organization concepts, of 3,000,000 Government workers, Federal and State. Newspaper reports have quoted some of the Committee for Industrial Organization leaders as saying that "as yet" the Army and Navy forces are not to be so organized. "As yet" the employees of the United States Postal Service are not to be so organized. Those two words, "as yet", contain implications of the gravest danger to this Nation, to our constitutional democracy, and to the personal liberties of our people.

Does anybody believe that when John Lewis and his communistic assistants have thoroughly organized the Federal and State and city employees that these labor commissars will hesitate to demand and to secure the most confidential documents in the files of the Government?

Does anybody question my assertion that the motivating force behind the Committee for Industrial Organization is communistic? Read the article entitled "John L. Lewis, His Labor Record" in the American Mercury Magazine for June.

Let me read you a paragraph from an editorial in the Daily Worker of June 22 last, this being the central organ of the Communist Party, United States of America, a section of the Communist International. This Communist newspaper is printed in New York. In an editorial entitled "Neither Spies Nor Weir's Hatchet Gang", the Daily Worker says:

> Now is the time to enroll the steel workers into the Communist Party, in every steel State and community. They are filled with new hopes in their great awakening. They are eager to listen to the party's message.
>
> What can a greater contribution to the advance of socialism in America than thousands of steel workers proudly enrolled under the banner of the Communist Party?

I have in my possession an authentic transcript of the plan of campaign for a general steel strike worked out by America's leading Communist, William Z. Foster, in Pittsburgh in 1936, the details of procedure of the present steel strike were laid down in their entirety in that plan.

I have in my possession an authentic list of the names of the organizers for Committee for Industrial Organization, which shows that 75 of them are members of the Communist Party. In addition to these 75 there are working as volunteer organizers 46 others who are known or suspected Communists. I have the names of these organizers and the cities in which they are working. Thus, out of an organizing staff of 249 people, 121 of them are self-avowed Communists or are known to be Communists.

It is not unknown to John Lewis that most of his chief aides and many of his organizers are Communists. He has publicly condoned that fact in more than one statement. The names of many of John Lewis' closest advisers and co-officials in the Committee for Industrial Organization have been placed in the RECORD of this House by other Members with the proof that they are Communists.

It is known to the commanding officers of both the military and the naval services that Communists are recruiting members to their party among the civil and the enlisted personnel. It is known that these Communist workers are carrying on their activities here in the Washington Navy Yard, at Brooklyn, and in the navy yard at San Francisco. Wherever these military and naval forces are stationed these communistic workers, men and women, are busy proselyting. The proofs behind these charges are available whenever any investigating committee of this Congress desires them to be produced.

The avowed purpose of John Lewis and his Committee for Industrial Organization is to create a political party with a large enough treasury—an obvious necessity—which, with the tremendous voting power of his labor forces, will give to him control of the Presidency and the Congress.

In addition to the aid the Committee for Industrial Organization has received from public officials, who are either too cowardly or blind to the ominous trends to perform their sworn duty in the face of John Lewis' threats, we have learned in the last few days that the strikers, as well as the men and women rendered idle through no desire or fault of their own, are to go on relief. If there is anything that has not been done by the Federal and several State Governments to aid and abet John Lewis in establishing a labor despotism in the United States of America, it would be difficult to imagine what it could be.

As I said awhile ago, we have invited this dangerous and costly condition because the Federal and State officials did not meet this threat as it should have been met, by a firm declaration that law and order would be maintained, that the

rights of private property would be upheld, that the rights of men and women to pursue their vocations without interference would be preserved, and that the edicts of the duly constituted court would be enforced by whatever armed force of the Federal and State Governments might be required.

To temporize with this movement is like temporizing with a deadly plague creeping over the country. To continue to temporize with this movement will be to invite utter disaster for this Nation.

If we are for a moment to admit that millions of working men and women who are satisfied with their wages and their hours and their working conditions are to be summarily denied their right to earn their living without being impressed into membership in the Committee for Industrial Organization, or in any other organization, we must be prepared to admit that this Government is no longer capable of maintaining the constitutional rights and privileges of its citizens.

If we are going to pursue a policy of encouraging defiance of the courts, of approving lawlessness and disorder, of condoning illegal seizures of entire industrial plants, and if we are going, as we already have gone, a dangerous step further, and use the armed forces of the States, and finally of the Federal Government itself, to compel satisfied wage earners to submit to conscription into the Committee for Industrial Organizations, then we must be prepared to admit not only that this Government is no longer capable of maintaining the constitutional rights and privileges of its citizens, but that it has gone into partnership with the forces of lawlessness and disorder; it has joined hands with a labor despot; it has embraced communism in industrial relations.

In my own Southland we have conditions unlike industrial conditions in the North, in the West, and in the East.

It is the declared intention of John Lewis, Sydney Hillman, and other Committee for Industrial Organization officials to invade the South and to organize both the white and the Negro labor of the Southern States—under the banner of the Committee for Industrial Organization—into a political party as well as a labor union. The proofs are at hand that Committee for Industrial Organization organizers have been convening meetings of Negroes in different parts of the South, at which they have preached social and political equality. They have promised those Negroes shorter hours and higher wages, and they have gone even further and promised them that through the Committee for Industrial Organization the Negroes would be able to dominate the white man's industry of the South.

There is not a Member of this Congress who comes from the Southland who does not know what awful and bloody possibilities lie alarmingly near the surface in any such situation as that.

I find myself amazed that the southern Members of this Congress do not rise en masse to strangle this movement in the South which will inevitably result not only in utter chaos in industrial conditions, but which will lead many a man, white and colored, ordinarily orderly and law abiding, into a conflict that can only end in havoc, bloodshed, and loss of lives.

I warn John L. Lewis and his communistic cohorts here and now that no second "carpetbag expedition" in the Southland, under the red banner of Soviet Russia, and concealed under the slogans of the Committee for Industrial Organization will be tolerated. If minions of the Committee for Industrial Organization attempt to carry through the South their lawless plan of organization, if they attempt to demoralize our industry, to corrupt our colored citizens, to incite race hatreds and race warfare, I warn them here and now that they will be met by the flower of southern manhood, and they will reap the bitter fruits of their own folly.

It is a lamentable and perilous situation that the apparent tendency of the National Labor Relations Board has been to aid and abet the Committee for Industrial Organization movement to the disadvantage and to the disadvantage of the American Federation of Labor ever since the Supreme Court decided that the Wagner Act was constitutional.

LXXXI——419

We were promised that the purpose of the National Labor Relations Act was to bring about industrial peace and sanity. We were assured that it would offer through the National Labor Relations Board a much-needed agency by which collective bargaining between industry and labor could be achieved without strikes and bloodshed. We were assured that its functions would be similar to those of the Railway Labor Board, and that the effect of the law would be to produce an era of cooperation between capital and labor which has, on the railroads of this country, prevented strikes for many years.

The National Labor Relations Board has not performed that function. The attitude of the National Labor Relations Board has clearly been that of a partisan adherent of the Committee for Industrial Organization. It has time after time submitted in a so-called free and voluntary referendum ballots which in effect said, "Do you want the Committee on Industrial Organization to act as your collective bargaining agency?" Thus the Labor Board has left no alternative for workers in industry but to choose Committee on Industrial Organization as their bargaining agency or remain without any organized representation.

The American Federation of Labor has protested and this now protesting to the National Relations Board this unfair and prejudiced action. If the National Labor Relations Board does not display a better spirit of fairness it will be necessary for this Congress to amend the act so that the Board will be compelled to be unprejudiced in its operations and decisions.

My chief concern is for the laboring men and women of this country. I do not want to see them conscripted into membership in the Committee on Industrial Organization against their will, or into any other labor organization. I am for labor organization, but I am for voluntary, democratic, American labor organization.

I do not want to see the wage earners of this country compelled to pay tribute to any labor despot or to any group of labor commissars for the privilege of exerting their constitutional right to work and to earn a living.

I have but to look at labor under Mussolini in Italy; I have but to look at labor under Hitler in Germany; I have but to look at labor under Stalin in Russia; I have but to look at labor in Turkey under Kemal Pasha, to learn what will be the plight of labor in America under the despotism of John L. Lewis or any other man who attains to the stature of a labor czar.

My next concern is for the consumers of this country. These consumers must in the end pay the full price for whatever power John Lewis and his communistic cohorts obtain and for the tribute which they will take from the pay envelopes of the wage earners of America. Every dollar of damage, every economic loss caused by these lawless outbreaks, these disorders, these epidemics of illegal strikes, will inevitably have to be paid for out of the pocketbooks of the ultimate consumers of this country.

I favor the highest wages, the best hours, and the most pleasant working conditions it is possible to give the wage earners of America which would be compatible with the purchasing power of the people of this country to afford a market for the products of the workers. But I do not favor any headlong, reckless, irresponsible, lawless terroristic attempt to adjust industrial relations that will precipitate a buyers' strike through inordinately high prices, which would in turn surely close the factories and put the deluded followers of the Committee for Industrial Organization leaders in the bread line along with other helpless wage earners.

John Lewis knows, his communistic cohorts know, we all know, that Mr. Roosevelt himself has been depending for the salvation of this great Nation upon the upturn in business, a return of prosperity to industry. With unerring accuracy, John Lewis and his advisers picked the moment when a recuperating industry was again beginning to hit its stride; they picked the moment when prosperity was returning to bring about this disruption in industrial labor relations. The wheels of industry are slowing down and

growing silent. Millions of dollars in lost wages and lost profits are mounting day after day. Investors are growing fearful of entrusting their money to industrial uses knowing not what they face from the Committee for Industrial Organization.

If this movement is not sternly curbed, it will lead this country directly into a new deflation. If this lawlessness is not strangled, if this disorder is not stamped out like a plague, this country will see civil war.

The wage earners of America must remember that when the right of private property is denied to the industrialists the right of private property is denied to those of the workers who own their own homes.

It is a sinister picture indeed that we face when we recall that the National Labor Relations Board has ruled in the case of a small Virginia industry that it could not be moved from one section of the State to another unless the owners moved their employees and their families to the new location at the expense of the company. It is but one step further—and a very short step indeed—to a decision by the Labor Board that the owner of a factory cannot close his plant without the permission of the Board. Regardless of what the Labor Board may call that sort of thing, it is governmental absolutism.

In the State of Michigan today there is pending before the legislature an act providing that if an employer cannot peacefully operate his business in event of a strike that the State shall take over and operate the plant. It is but one step further—and a very short step, indeed—to the confiscation and socialization of all industry in the United States.

The condition in Pennsylvania, the condition in Michigan, the condition in Ohio and in other States point unerringly to this final result:

If the Governor of Pennsylvania, the Governor of Ohio, and the Governor of Michigan are willing to use the armed forces of the Federal or State Government to close industries because the Committee for Industrial Organization pickets threaten bloodshed if those industries are not closed, then we have arrived at the point where in any community, at any time, the leaders of the Committee for Industrial Organization can, without consulting the workers employed in that industry, picket that plant and be assured of the use of State or Federal troops or police to help them make their picketing effective until they secure whatever demands they may make.

Mr. Speaker, there is no middle ground in this situation. It is law or it is lawlessness. It is order or it is disorder. It is right or it is wrong. It is justice or it is injustice. No compromise with lawlessness, disorder, wrong or injustice is possible, if this Nation is to survive as a constitutional democracy.

There is no middle ground, I say. There is only one course for the President, for the Governors of the States, for the courts and law-enforcement agencies to follow, and that is a firm and unflinching adherence to the principles of justice and law and order, let the cost be what it may from the standpoint of political expediency.

Let me paint you one last picture:

Not long ago the great Saginaw Valley in the State of Michigan suddenly found itself paralyzed. The wheels of industry stopped. Hospitals went dark with patients on the operating tables under the knife. Elevators stopped between floors. Fire alarms were stilled. Public transportation ceased and people found themselves trapped in high buildings or many weary miles from their homes. Refrigerators in private homes, hotels, restaurants, and markets ceased to function; and thousands of dollars worth of food spoiled. A vast economic loss was imposed upon this great industrialized valley of Saginaw, while 192 towns and villages and four great industrial cities remained helpless. And for 24 hours that condition prevailed. Why?

Because a disgruntled group of power company employees, led, it is said, by a boy 21 years of age, pulled the switches in the power-house that furnished the electric energy for the power and light and heat in that great valley. There was no notice. There was no parley. Suddenly the blow fell that paralyzed the valley. Why did these men do that thing?

Why? Because they grew impatient over a few hours' delay in the negotiations at the moment being conducted in Washington by John L. Lewis and other representatives of the Committee for Industrial Organization for the power company employees of the Saginaw Valley.

At the very instant those reckless men pulled the power switches the utilities company had signed a contract satisfactory to John L. Lewis and the Committee for Industrial Organization representatives of the employees of the power company. We then witnessed the spectacle of Committee for Industrial Organization leaders chartering a plane and flying to the Saginaw Valley in order to persuade those irresponsible industrial vandals to put the switches back in contact and release that valley from paralysis.

What explanation did John L. Lewis and his cohorts give for that lawless and despotic act? Their explanation was an attempt to waive that ominous incident aside with the statement that "It was an unfortunate outburst of impatience", and that "It was all a misunderstanding." Was there one word of regret for the economic loss imposed upon the workers and the employers, the householders, and the businessmen of the Saginaw Valley? Not a word.

Was there any assurance that these hotheaded, irresponsible, impatient men would be punished under the law or disciplined by the Committee for Industrial Organization? Not one word. Have they been punished for that lawless act? Not to this good hour. Have they been warned that it is an outrage not to be tolerated to cut off power and put out lights in hospitals, with patients on the operating tables, to cause elevators to stop between floors, to trap people in high buildings, to cause the spoilage of food in thousands of homes and markets? They have not. Does this ominous occurrence tell America anything?

The city of New York could find itself in that critical condition; it might also occur in the city of Chicago or the city of Washington, or in any large city in this country. A small group of reckless and power-drunk men, blinded and deluded by Committee for Industrial Organization propaganda and the dreams of dominating industry, could disrupt the water systems, the sewer systems, power systems, public transportation, communication, the hospitals, industry, and business in general of any city or community upon which they might choose to vent their wrath or display their lawless, despotic power.

Unless I very greatly misjudge my country and my countrymen, this menacing condition will not much longer be tolerated. If the Federal and State and county officials do not prove faithful to their oaths and duty, if this sinister movement is not brought within the bounds of law and order, this country will witness an uprising of its outraged citizens in protection of their industries, their businesses, their employment, and their homes.

And that, Mr. Speaker, will be civil war!

ORIGINAL LIST OF COMMITTEE FOR INDUSTRIAL ORGANIZATION AND STEEL WORKERS' ORGANIZING COMMITTEE ORGANIZERS

(Prepared June 19, 1937)

ORGANIZERS

(Salary, $150 per month and expenses)

Numerals denote the organization from which the organizers were drawn, and 8 shows volunteer worker.

LEGEND

1. United Mine Workers of America.
2. Mine, Mill, and Smelter Workers.
3. Amalgamated Association of Iron, Steel, and Tin Workers of North America.
4. International Longshoremen's Association.
5. Electrical Workers.
6. Garment Workers.
7. Communist Party.
8. Volunteer worker.
9. Glass Workers.
10. Clothing Workers.

| Numerals | Names | Location |
|---|---|---|
| 3... | Wm. Anderson | Chicago. |
| 3... | Albert Atallah | Aliquippa. |
| 3... | Geo. D. Athya | Apollo. |
| 1... | Helen Andersson | Indiana Harbor. |
| 1... | Bunny Askey | Johnstown. |
| 1... | Meyer Adelman | Waukegan. |
| 3... | D. Antilano | Pittsburgh. |
| 3... | Monroe Avseck | Do. |
| 7-8... | Arthur Anderson | Gary. |
| 3... | T. B. Anderson | South Chicago. |
| 7-8... | Amos Archer | Youngstown. |
| 1... | Alfred Avelli | South Chicago. |
| 8-3... | Robert Buck | Youngstown, Ohio. |
| 3... | Maurice Brown | Steubenville, Ohio. |
| 1... | Louis Buckley | Youngstown, Ohio. |
| 1... | Alfred Bittner | Ambridge. |
| 4... | B. Bajed | South Chicago. |
| 1... | Baltazija | Indiana Harbor. |
| 1... | Noel B. Beddow | Birmingham. |
| 7-8... | J. Burns | Gary. |
| 1... | Jos. Baron | McKeesport. |
| 1... | Bill Blizzard | Chicago. |
| 1... | Cal Bellew | Canton. |
| 1... | Hy Braun | Chicago. |
| 1... | Virginus Browning | Birmingham. |
| 1... | Ike Ballinger | Do. |
| 1... | Sam Bakely | Cleveland. |
| 1... | Louis Badem | Pittsburgh. |
| 7-8... | Jas. Barton | Birmingham. |
| 1... | Robt. Brown | Chicago. |
| 7-8... | Frank Butler | Pittsburgh. |
| 7-... | — Burk | Youngstown. |
| 1... | Joe Bowen | Wellsburg. |
| 8-3... | Louis Bake | Martins Ferry. |
| 8-3... | James Burns | Gary. |
| 1... | Thomas Butler | Johnstown. |
| 1... | J. P. Busavella | Pittsburgh. |
| 8-3... | Alex Balint | Cleveland. |
| 1... | Ferdinand Bundel | Tarentum. |
| 1... | John Clarus | Steubenville, Ohio. |
| 3... | M. A. Carr | Chicago, Ill. |
| 8-3... | Richard Carr | Steubenville, Ohio. |
| 8-3... | Bill Colen | Do. |
| 3... | Carl Corton | Do. |
| 1... | Margaret Cowa | Pittsburgh. |
| 7-4... | John Chesvich | Clairton. |
| 7-... | Ben Carrothers (col.) | Do. |
| 1... | John Concedrilli | Bethlehem. |
| 7-... | Thomas Conesa | Do. |
| 1... | Smile Chavak | Wildwood. |
| 7-8... | Elmer F. Cone | Youngstown. |
| 3... | — Cox | Duquesne. |
| 3... | — Chandler | New Kensington. |
| 7-8... | Jas. Carey | Pittsburgh. |
| 1... | Harry Cox | Youngstown. |
| 1... | Harry Carter | Gary. |
| 1... | Robt. Cling | Chicago. |
| 1... | Paul Cline | Sparrows Point. |
| 7-8... | Tony Cassava | Gary. |
| 7-4... | Robt. Crowell | |
| 3... | — Cole | Chicago. |
| 3... | — Casey (Otis) | Cleveland. |
| 3... | — Carter | Beaver Valley. |
| 1... | Peter Carr | Ambridge, Pa. |
| 3... | — Chamisha | Chicago Heights. |
| 1... | John Divens | Steubenville, Ohio. |
| 1... | Jack Davis | Do. |
| 8-3... | John P. Davis (col.) | Washington, D. C. |
| 1... | Mision Dolviche | Clairton. |
| 1... | John Dolphin | Homestead, Pa. |
| 1... | John Davich | Pittsburgh. |
| 7-4... | David Dovan | Do. |
| 3... | Jas. Dragovich | Do. |
| 1... | Joe Dallet | Youngstown. |
| 1... | Will Dunne | Chicago. |
| 3... | J. J. Davey | South Chicago. |
| 8-... | Charles Davis | McKeesport. |
| 3... | — Ivano (Otis) | Cleveland. |
| 8-... | — Davis (Otis) | Do. |
| 1... | Dick Eyar | Portsmouth, Ohio. |
| 1... | Wm. Evans | Waukegan. |
| 3... | James Evans | Homestead. |
| 7-4... | Herman Eskstad | Gary. |
| 1... | Nick Fontocebo | Chicago, Ill. |
| 1... | Wm. Feney | Monessen, Pa. |
| 1... | Patrick Fagan | Renton, Pa. |
| 1... | Paul Fair | New Kensington. |
| 1... | Chas. J. Feeney | South Chicago. |
| 1... | Frank E. Flynn | McKeesport. |
| 1... | Dave Fowler | Birmingham. |
| 1... | Jake Fox | Chicago. |
| 1... | Anthony Federa | Sharpsburg. |
| 1... | — Favelish (Otis) | Cleveland. |
| 1... | Salvatore Falvo | Pittsburgh. |
| 1... | George Ferguson | Farrell. |
| 1... | John Granit | Monongahela Valley. |
| 1... | Joseph Gorman | Detroit, Mich. |
| 1... | Ted Goal | New Kensington, Pa. |
| 1... | Joe Gilbert | South Chicago. |
| 1... | John B. Gallagher | Do. |
| 1... | Bill Gebert | Pittsburgh. |
| 3... | Leonard J. Green | Birmingham. |
| 1... | C. T. Greenwood | Steubenville. |
| 3... | Ben Green | Chicago. |
| 1... | Jas. Godowsh | Braddock. |
| 3... | Mike Halenda | Braddock, Pa. |
| 8-3... | Joe Hall | Steubenville, Ohio. |
| 1... | Charles Henry (col.) | South Chicago. |

| Numerals | Names | Location |
|---|---|---|
| 7-8... | Roy Halas | McKeesport, Pa. |
| 7-8... | John Hallas | Do. |
| 1... | Powers Hapwood | Pittsburgh. |
| 3... | James Hart (col.) | Gary. |
| 8-3... | Tod Hunter | South Chicago. |
| 1... | Ira Hart | Birmingham. |
| 1... | Bleckie Harris | Do. |
| 1... | Jinnnie Haley | Do. |
| 7-... | Robt. Hull | Gary. |
| 1... | Frank Herron | South Chicago. |
| 1... | Wm. Hill | Indiana Harbor. |
| 1... | Homer Henderson | Sharpsburg. |
| 1... | Jack Hotson | McKeesport. |
| 9... | C. A. Harris | Martins Ferry. |
| 1... | Jas. Hull | Chicago. |
| 1... | Carl Huester | Aliquippa. |
| 7-8... | Will Hubert | New Castle, Pa. |
| 7-3... | Clarence Irwin | South Chicago. |
| 4... | Henry (Ben) Johnson | Monessen. |
| 8-3... | Paul Juhasz | Chicago. |
| 8-3... | Jack Johnson | South Chicago. |
| 8-7... | — Jenkins | Johnstown. |
| 8-7... | George Janoway | Gilland. |
| 8-7... | Joe Jurleth | and L., Pittsburgh. |
| 8-7... | By Jackson (ex-district organizer, Birmingham and San Francisco). | |
| 7-8... | Vladinoe Janavice | Chicago. |
| 7-8... | John Jotis | Youngstown. |
| 1... | Jas. Kirkland | Chicago. |
| 3-4... | — Keim | South Chicago. |
| 3-8... | — Kowalski | Do. |
| 1... | Robt. B. Kimbo | Baltimore. |
| 1... | Anthony Kowalski | Weirton, W. Va. |
| 1... | C. R. Kramer | Bethlehem. |
| 7-8... | Steve Kiki | McKeesport. |
| 7-8... | Thomas Kevman | Pittsburgh. |
| 1... | Leo Kennedy | Gary. |
| 8-3... | Sam D. Kepler | Farrell. |
| 1... | Garfield Lewis | Bethlehem. |
| 1... | George Lorey | Pittsburgh. |
| 1... | Chubby Lark | Do. |
| 8-3... | — Lehman | Cleveland. |
| 1... | Miss Saralene Lowe | Chicago. |
| 3... | Geo. Lambert | Weirton. |
| 1... | — McDonald (col.) | Indiana Harbor. |
| 3... | Bert Millham | South Chicago. |
| 3... | T. Mellincer | Do. |
| 1... | Gred Matthews | Steubenville, Ohio. |
| 8-3... | John J. Mullen | Clairton, Pa. |
| 1... | Geo. Meykovic | Charleroi, Pa. |
| 7-8... | Thomas Moore | McDonald, Ohio. |
| 1... | A. B. Martin | Johnstown, Pa. |
| 1... | John Mays | Charleroi, Pa. |
| 8-3... | — McNellis | South Chicago. |
| 7-8... | E. R. McKinney (col.) | Youngstown. |
| 1... | — McCrone | Bethlehem. |
| 3... | John S. Mayer | Canon. |
| 3... | A. W. Metherson | McKeesport. |
| 7-3... | John J. McCarty | Pittsburgh, Pa. |
| 8-3... | Morris Mallinger | Monaca, Pa. |
| 1... | Ward Marabee | Steubenville. |
| 1... | Wm. Mitsch | Birmingham. |
| 1... | Frank Miley | Chicago. |
| 1... | John F. Moody | Pittsburgh. |
| 1... | Matt Markowitz | Do. |
| 1... | Harold McMullen | Chicago. |
| 1... | James McCullough | Do. |
| 7-8... | — McKnight | South Chicago. |
| 7-8... | Wm. Murphy | Farrell. |
| 1... | Tony Mimerich | Pittsburgh. |
| 7-8... | A. J. Marsh | Aliquippa. |
| 7-8... | John Marsh | Chicago. |
| 7-8... | Miles Morton, alias Zalnki | Do. |
| 1... | — McKay | Hillsville. |
| 8-3... | John Monarch | Martins Ferry. |
| 8-7... | Dave Matel | Gary. |
| 3... | — Moss | Chicago. |
| 3... | — Murphy (Otis) | Cleveland. |
| 7-3... | T. L. Majors | Ellwood City. |
| 3... | Glenn McCabe | New Kensington. |
| 1... | Jim Malone | Homestead. |
| 1... | McNeil | Worcester. |
| 8-3... | — Nakardo | South Chicago. |
| 1... | — Nordstrom | Waukegan. |
| 1... | Jos. North | Pittsburgh. |
| 7-8-1... | Joe O'Hara | Renton, Pa. |
| 3... | Andrew R. Olmstead | Chicago. |
| 7-8... | P. Frank O'Brien | Do. |
| 1... | Blace Owen | Pittsburgh. |
| 8-3... | Mike Ostroski | Gary. |
| 8-3... | Joe Petrich | South Chicago. |
| 7-8... | Mildred Price | Pittsburgh. |
| 1... | George Powers | Clairton, Pa. |
| 1... | Walter J. Payne | Yorkville, Ohio. |
| 8-3... | H. R. Patterson | South Chicago. |
| 1... | G. A. Patterson | Do. |
| 3... | Anthony Panto | Bethlehem. |
| 1... | Harry Phillips | Sharon. |
| 1... | Geo. Parsons | |
| 1... | Jake Rosak | Gary. |
| 1... | Richard Rector | Steubenville, Ohio. |
| 8-3... | Mike Repas | Monaca, Pa. |
| 1... | Paul Rosen | Greenwood, W. Va. |
| 4... | Arthur Rack (attorney) | McKeesport. |
| 1... | Harold Ruttenberg | Aliquippa. |
| 1... | J. V. Ellis | Chicago. |
| 1... | Dan Ryan | Waukegan. |
| 7-8... | Ann Rochester | Pittsburgh. |

| Numerals | Names | Location |
|---|---|---|
| 8 | Harold Rasmussen | Gary. |
| | Frank Humbaugh | South Chicago. |
| 1 | Wm. J. Issel | Chicago, Ill. |
| 8-3 | Lawrence Sckusil | South Chicago, Ill. |
| 7 | Charles Sharbo | Homestead, Pa. |
| 3 | Tom Shaw | Do. |
| 8 | —— Sherron | Do. |
| 3 | Fred Siders | Do. |
| 8-3 | George Sekerchak | Braddock, Pa. |
| | Andy Stewart | Madison, Ill. |
| 3 | Phillip Scheer | South Chicago. |
| 8-3 | Dan Serroci | Gary. |
| 1 | Frank Shifika | Gary. |
| h-7 | Ralph Shaw | Calumet. |
| 8-3 | Stewart | South Chicago. |
| 3 | Nick Stecosovick | Midland. |
| 3 | John Sako | Bethlehem. |
| 7-8 | Carl Smith | McKeesport. |
| 7-8 | —— Saunders | New Kensington. |
| 3 | James Strong | Cleveland. |
| 3 | Tim Sullivan | Chicago. |
| 3 | Jas. Shalhoom | Do. |
| 3 | T. J. Sparks | Anniston, Ala. |
| 3 | Leon Strong | St. Louis. |
| 3 | D. F. Sullivan | Oakland, Calif. |
| 8-3 | Carl Schmidt | Homestead. |
| 7-8 | Nat Sparks | Pittsburgh. |
| 7-8 | Tony Sabajak | Duquesne. |
| 8-3 | John Tablish | Johnstown, Pa. |
| 3 | Roman Taylor | South Chicago, Ill. |
| 1 | Louis Tomko | Donora, Pa. |
| 1 | Harry Tenlow | Youngstown. |
| 3 | Joseph Tisko | Midland. |
| 8-3 | Rade Travica | Do. |
| | —— Thomas | Johnstown. |
| | Paul Tolusako | Pittsburgh. |
| 3 | Tom Tippett | Anton. |
| 7-8 | Jas. Thompson | Chicago. |
| 7-8 | Sander Voros | Youngstown, Ohio. |
| 8-3 | August Vinkich | Donora. |
| 3 | Joe Vince | Yorkville. |
| 1 | Joe Walkowski | South Chicago, Ill. |
| 1 | Frank Wilkus | Steubenville. |
| 3 | Manuel Wood | South Side, Pittsburgh. |
| 3 | Ross Worth | Pittsburgh. |
| 17-8 | Robt. Washington | Birmingham. |
| 7-8 | Joe Weber | Gary. |
| 8-8 | Emmett Woods | Indiana. |
| 3 | John Williams | Coraopolis. |
| | —— Wilberton | Chicago. |

Mr. COX. Mr. Speaker, I ask unanimous consent that I may extend my remarks in the RECORD and include therein a list of Committee for Industrial Organization and Steel Workers' Organizing Committee organizers, showing the organization with which they are connected and the places where they are now located.

The SPEAKER. Is there objection to the request of the gentleman from Georgia?

Mr. BOILEAU. Mr. Speaker, reserving the right to object, I just want to ask the gentleman whether or not this list of organizers to which he refers is a complete list?

Mr. COX. It is a complete list as of date when first prepared. At least 50 percent of them are avowed Communists or known to be Communists.

Mr. BOILEAU. When was that list prepared, may I ask the gentleman?

Mr. COX. I am not prepared to give the gentleman the exact date when it was prepared.

Mr. BOILEAU. I should like to have definite assurance before I permit this request to be granted.

Mr. COX. The gentleman will be within the exercise of his right and privilege in objecting. I make the request, Mr. Speaker.

Mr. BOILEAU. Mr. Speaker, I have reserved the right to object. My only purpose is to identify the list, to know whether or not it is a complete list or whether the gentleman claims it to be a complete list. That is all.

Mr. COX. I do claim it to be a complete list and an accurate list.

Mr. BOILEAU. As of the present time or some time recently?

Mr. COX. June 19, as I recall.

Mr. BOILEAU. Of this year?

Mr. COX. Of this year.

Mr. BOILEAU. That is all I wanted to know.

The SPEAKER. Is there objection to the request of the gentleman from Georgia?

There was no objection.

Mr. MAVERICK. Mr. Speaker, about 3 or 4 weeks ago there came about what amounts to a rule in this House that no one could make a speech until after the legislative business had been completed. I do not say that rule is wrong. I do not want to impede legislation, but I just want to bring up the question of the fairness of the rule and how it applies.

The gentleman from Georgia [Mr. Cox] made an attack on the Secretary of Labor the other day, and I have been seeking recognition for several days, but will not get it until Friday. It seems to me we ought to eventually build up some sort of a custom where a few short speeches can be made in the early part of the day. I had reservation of time and could not speak until 7 o'clock. I did not want to insist on that time so late in the day. So I think something should be done so that Members can make at least short statements.

Mr. RANKIN. Mr. Speaker, will the gentleman yield?

Mr. MAVERICK. I yield.

Mr. RANKIN. All we have to do is go back to the time-honored practice of the House of Representatives, that when a man gets permission to address the House he should be given that time to address the House at that hour and let the committees come on afterward. This way of shoving these special orders off until after legislation is disposed of simply amounts to "Cannonizing" the House of Representatives, if you want to know how I feel about it. This practice deprives the Members of the only opportunity they have to come down in the Well of the House and deliver their speeches. I think we ought to go back to the original rule and let the Members speak when they have secured time.

Mr. RAYBURN. Mr. Speaker, will the gentleman yield?

Mr. MAVERICK. I yield.

Mr. RAYBURN. I want to say that the only way on earth, in my opinion, we can put into effect a program in the House is to do it the way we are doing it. For 3 months after the Congress met, before committees had reported a great many bills, I even announced that on Wednesday or Thursday of next week or Friday of next week there would be no program, and gentlemen could speak. At this late time in the session I am exercising the same right the gentleman from Mississippi has been exercising this afternoon, in objecting to unanimous-consent requests.

I think it is proper, in order to protect the legislative program, to protect these Mondays, these Tuesdays, and these Wednesdays, and the regular business of the House. I started this and I shall continue it until the close of the session.

Mr. MAVERICK. But let me point out, for instance, that the other day the gentleman from Georgia [Mr. Cox] got unanimous consent to address the House before the legislative program. It is a fact the gentleman from Texas [Mr. RAYBURN] was out of the room, and I think it was all right for the gentleman from Georgia to do what he did—I would have done the same thing. I am not criticizing the gentleman from Georgia. The result, however, is that when a Member wants to talk, the practice amounts to an effective gag. One of the things that is really wrong about it is that when you get a right to talk on a bill under consideration you get off the subject, just as we are doing now. The practice tends to disturb the relevancy of ordinary debate, and to otherwise gag the Members.

Mr. COX. Mr. Speaker, will the gentleman yield to permit me to make a brief observation?

Mr. MAVERICK. I yield.

Mr. COX. While this new rule has operated against me today, to my very bitter disappointment, still I think it is a very sensible practice.

Mr. MAVERICK. Of course the gentleman and I disagree on lots of things, and this is one of them.

Mr. BOILEAU. Mr. Speaker, will the gentleman yield?

Mr. MAVERICK. I yield to the gentleman from Wisconsin.

Mr. BOILEAU. Formerly we used to have a week now and then when there was nothing very important brought

up. Formerly when appropriation bills were brought up we used to have 3, 4, 5, or 6 days of general debate. Now when a week comes along with nothing particular to do we jam through an appropriation bill in a few hours and no one has any opportunity to talk. In former years, too, of course, we used to work on Saturdays. I think this is a situation that needs to be corrected.

Mr. MAVERICK. I just want to present that thought to the House as something that ought possibly to be changed. The expression of opinion pro and con on any subject is one of the most important functions of the House, whether it concerns actual legislation or not. The present situation should be corrected.

[Here the gavel fell.]

Mrs. NORTON. Mr. Speaker, I move the previous question on the bill to final passage.

The previous question was ordered.

The bill was ordered to be engrossed and read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

SENATE BILLS AND JOINT RESOLUTION REFERRED

Bills and a joint resolution of the Senate of the following titles were taken from the Speaker's table and, under the rule, referred as follows:

S. 642. An act for the relief of the Indians of the Fort Berthold Reservation in North Dakota; to the Committee on Indian Affairs.

S. 676. An act for the relief of Heinrich Schmidt, G. m. b. H., of Flensburg, Germany; to the Committee on Claims.

S. 714. An act relating to the eligibility of certain persons for admission to the civil service; to the Committee on the Civil Service.

S. 821. An act for the relief of Lawson N. Dick; to the Committee on Claims.

S. 1216. An act authorizing the Secretary of the Interior to convey certain land to the State of Montana to be used for the purposes of a public park and recreational site; to the Committee on the Public Lands.

S. 1379. An act authorizing any nation, tribe, or band of Indians, in suits heretofore filed under their original Jurisdictional Acts, to present claims to the United States Court of Claims, by amended petitions at any time before final submission of said suits, to conform to the evidence; and authorizing the said court to adjudicate such claims upon their merits as though filed within the time limitation fixed in said original Jurisdictional Acts; to the Committee on Indian Affairs.

S. 1435. An act to create a Board of Shorthand Reporting, and for other purposes; to the Committee on the Judiciary.

S. 1517. An act authorizing the payment of attorneys' fees contracted to be paid by certain Indians allotted on the Quinaielt Reservation, State of Washington, and for other purposes; to the Committee on Indian Affairs.

S. 1626. An act for the relief of Maurice D. Pryor; to the Committee on Military Affairs.

S. 1750. An act to amend an act entitled "An act to eliminate the requirements of cultivation in connection with certain homestead entries", approved August 19, 1935; to the Committee on the Public Lands.

S. 1865. An act for the relief of Mrs. Cliff Snider; to the Committee on Claims.

S. 1882. An act for the relief of the Consolidated Aircraft Corporation; to the Committee on Claims.

S. 1918. An act to authorize the award of a decoration for distinguished service to Acors Rathbun Thompson; to the Committee on Naval Affairs.

S. 1986. An act to amend section 42 of title 7 of the Canal Zone Code; to the Committee on the Judiciary.

S. 1998. An act to amend the act entitled "An act to provide for the collection and publication of statistics of peanuts by the Department of Agriculture", approved June 24, 1936; to the Committee on Agriculture.

S. 2010. An act to authorize the appointment of an additional judge for the southern district of Ohio; to the Committee on the Judiciary.

S. 2026. An act to provide for the addition of certain lands to the Fort Donelson National Military Park in the State of Tennessee, and for other purposes; to the Committee on the Public Lands.

S. 2085. An act to authorize the construction of a Federal reclamation project to furnish a water supply for the lands of the Arch Hurley Conservancy District in New Mexico; to the Committee on Irrigation and Reclamation.

S. 2093. An act for the relief of George H. Stahl and Henry A. Behrens; to the Committee on Military Affairs.

S. 2146. An act to amend the act entitled "An act conferring jurisdiction upon the Court of Claims to hear, determine, and render judgment upon the claim of the city of Perth Amboy, N. J., approved July 23, 1935; to the Committee on Claims.

S. 2221. An act to facilitate the control of soil erosion and flood damage originating upon lands within the exterior boundaries of the Cache National Forest in the State of Utah; to the Committee on Agriculture.

S. 2241. An act for the relief of W. G. Adams; to the Committee on Claims.

S. 2276. An act to provide for an additional midshipman at the United States Naval Academy, and for other purposes; to the Committee on Naval Affairs.

S. 2279. An act to amend section 2 of the act entitled "An act to give wartime rank to retired officers and former officers of the Army, Navy, Marine Corps, and/or Coast Guard of the United States", approved June 21, 1930, so as to prohibit persons who have been subsequently separated from the service under other than honorable conditions from bearing the official title and upon occasions of ceremony wearing the uniform of the highest grade held by them during their war services, and for other purposes; to the Committee on Military Affairs.

S. 2301. An act for the relief of Lois H. Anthony; to the Committee on Claims.

S. 2349. An act to authorize the administration of oaths by the Chief Clerk and the Assistant Chief Clerk of the Office of the United States High Commissioner to the Philippine Islands, and for other purposes; to the Committee on Insular Affairs.

S. 2416. An act relating to the citizenship of certain classes of persons born in the Canal Zone or the Republic of Panama; to the Committee on Immigration and Naturalization.

S. 2418. An act for the relief of John Prosser; to the Committee on Claims.

S. 2629. An act to authorize an exchange of lands between the city of San Diego, Calif., and the United States; to the Committee on Naval Affairs.

S. 2647. An act to provide for the reimbursement of certain enlisted men and former enlisted men of the Navy for the value of personal effects lost while engaged in emergency relief expeditions during the Ohio Valley flood in January and February 1937; to the Committee on Claims.

S. 2849. An act to authorize appropriations for construction and rehabilitation at military posts, and for other purposes; to the Committee on Military Affairs.

S. J. Res. 150. Joint resolution to provide for the appointment of a delegate to the Fifth World Congress of the Deaf; to the Committee on Foreign Affairs.

ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED

Mr. PARSONS, from the Committee on Enrolled Bills, reported that that committee had examined and found truly enrolled bills and joint resolutions of the House of the following titles, which were thereupon signed by the Speaker:

H. R. 563. An act for the relief of E. W. Garrison;

H. R. 607. An act for the relief of Dorothy McCourt;

H. R. 1235. An act for the relief of John Brennan;

H. R. 1310. An act for the relief of Clifford R. George and Mabel D. George;

H. R. 1406. An act for the relief of Frank S. Walker;

H. R. 1689. An act for the relief of Dominga Pardo;

H. R. 1731. An act for the relief of Angelo and Auro Cattaneo;

H. R. 1761. An act for the relief of Paul J. Francis;

# EXHIBIT B

Case: Filed 05/27/2008 Page 14 of 78

with the provisions of the act entitled "An act to provide for a 5-year construction and maintenance program for the United States Bureau of Fisheries", approved May 21, 1930, insofar as the provisions of such act are not inconsistent with the provisions of this act.

Sec. 2. The Secretary of Commerce is further authorized and directed (1) to conduct such investigations, and such engineering and biological surveys and experiments, as may be necessary to direct and facilitate conservation of the fishery resources of the Columbia River and its tributaries; (2) to construct, install, and maintain devices in the Columbia River Basin for the improvement of feeding and spawning conditions for fish, for the protection of migratory fish from irrigation projects, and for facilitating free migration of fish over obstructions; and (3) to perform all other activities necessary for the conservation of fish in the Columbia River Basin in accordance with law.

Sec. 3. There is hereby authorized to be appropriated, out of any money in the Treasury not otherwise appropriated, the sum of $500,000, or so much thereof as may be necessary, to carry out the purposes of this act.

The amendments were agreed to.

The bill was ordered to be engrossed for a third reading, read the third time, and passed.

The title was amended so as to read: "A bill to provide for the conservation of the fishery resources of the Columbia River, establishment, operation, and maintenance of one or more stations in Oregon, Washington, and Idaho, and for the conduct of necessary investigations, surveys, stream improvements, and stocking operations for these purposes."

## LABOR STANDARDS FOR APPRENTICES

The bill (H. R. 7774) to enable the Department of Labor to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices and to cooperate with the States in the promotion of such standards was announced as next in order.

Mr. McKELLAR. Mr. President, I should like to have an explanation of this.

Mr. KING. Let the bill go over.

Mr. LA FOLLETTE. Will not the Senator withhold his objection?

Mr. KING. I withhold it temporarily. I have received a letter in connection with this bill, and there will be another call of the calendar, when we can take it up. I should like to look into it.

Mr. LA FOLLETTE. If the Senator is positive that I cannot persuade him that this is a very meritorious bill, I shall not take the time of the Senate now to debate it, but I hope I can convince the Senator that he should give the bill his most ardent support.

Mr. KING. I do not think the Senator can persuade me today, although he is very persuasive. I received a letter in connection with the bill, and I shall be glad to have the bill taken up at the next call of the calendar.

Mr. LA FOLLETTE. Mr. President, I hope it may be passed over without prejudice.

Mr. KING. I assent to that.

The PRESIDING OFFICER. The Senator from Wisconsin asks unanimous consent that the bill be passed over without prejudice.

Mr. McNARY. Mr. President, there is no point in that. Any bill that goes over under objection is called automatically on the next call of the calendar.

The PRESIDING OFFICER. The Chair agrees with the Senator from Oregon; but the Senator from Wisconsin made a request, and the Chair was submitting the request to the Senate.

Mr. McNARY. I am raising the point that there is no point in it.

Mr. LA FOLLETTE. Mr. President, I hope the Senator from Oregon will not object to my occasionally making a facetious remark, because I am not very often guilty of it.

## ESCHEAT TO THE UNITED STATES

The bill (H. R. 7741) to amend the Adjusted Compensation Payment Act, 1936, to provide for the escheat to the United States of certain amounts was announced as next in order.

Mr. McKELLAR. Mr. President, may we have an explanation of this bill?

Mr. GEORGE. Mr. President, under the Adjusted Compensation Payment Act, it will be recalled, payment of the certificates is made in bonds of the denomination of $50, and any difference less than $50 is paid in cash.

It is believed that under the act, where the veteran dies intestate and without next of kin or heirs at law, any uncalled-for and any unused payment made by virtue of the issuance of bonds will escheat to the State of the residence of the veteran. The bill before us is simply for the purpose of making it clear that in such cases as those to which I have referred the amount would escheat to the Federal Treasury.

Mr. McKELLAR. Is the bill recommended by the Administration?

Mr. GEORGE. It is recommended by the Treasury very strongly, and it is estimated that some $150,000 is involved.

The PRESIDING OFFICER. Is there objection to the consideration of the bill?

There being no objection, the bill was considered, ordered to a third reading, read the third time, and passed.

## ADMINISTRATION OF OATHS IN THE PHILIPPINE ISLANDS

The bill (H. R. 7727) to authorize the administration of oaths by the Chief Clerk and the Assistant Chief Clerk of the Office of the United States High Commission to the Philippine Islands, and for other purposes, was considered, ordered to a third reading, read the third time, and passed.

## EXEMPTION FROM DUTY OF ARTICLES FOR EXHIBITION AT THE NEW YORK WORLD'S FAIR

The joint resolution (H. J. Res. 288) to permit articles imported from foreign countries for the purpose of exhibition at the New York World's Fair, 1939, New York City, N. Y., to be admitted, without payment of tariff, and for other purposes, was considered, ordered to a third reading, read the third time, and passed.

## EXEMPTION OF VESSELS FROM FORMAL ENTRY REQUIREMENT

The bill (H. R. 4543) to amend the Tariff Act of 1930 to exempt vessels arriving for the purpose of taking on ship's stores and certain sea stores from the requirement of formal entry was considered, ordered to a third reading, read the third time, and passed.

## EXEMPTION OF STATE LIQUOR DISPENSING SYSTEMS

The bill (H. R. 7949) to exempt State liquor-dispensing systems from the requirement of keeping certain records and rendering transcripts and summaries of entries with respect to distilled spirits, was announced as next in order.

Mr. McNARY. Mr. President, this touches a very important subject concerning the disposition and sale of liquor, and therefore I desire to look into the matter; so I object at this time.

Mr. GUFFEY. Mr. President, I should like to make a statement with reference to the bill.

The PRESIDING OFFICER. Will the Senator from Oregon withhold his objection?

Mr. McNARY. I will not withhold my objection. I am positive in my objection. However, I have no objection to the Senator making a statement.

Mr. GUFFEY. Mr. President, House bill 7949 makes provision to exempt State liquor-dispensing systems from the requirement of keeping certain records and rendering transcripts and summaries of entries with respect to distilled spirits.

The purpose of this bill is to exempt State agencies from the requirement of section 3318 of the Revised Statutes, as amended, that wholesale liquor dealers and rectifiers shall keep certain records of distilled spirits received and disposed of by them, and render monthly transcripts and summaries of such records to the collector of internal revenue of the district in which they are located.

The bill provides that the provisions of section 3318 shall not apply to States and commonwealths, and liquor stores operated by States and commonwealths which maintain and make available to inspection by internal-revenue officers such records as will enable those officers readily to trace all distilled spirits received and disposed of by them. The

---

Mr. McKELLAR. As I understand, the bill has the approval of both the State Department and the Attorney General.

Mr. PITTMAN. It has.

The PRESIDING OFFICER. The question is on the engrossment and third reading of the bill.

The bill was ordered to be engrossed for a third reading, read the third time, and passed.

## FISH-CULTURAL STATIONS—OREGON, WASHINGTON, AND IDAHO

The Senate proceeded to consider the bill (S. 2307) to provide for the establishment, operation, and maintenance of one

Case 2:09-cv-02008    Page 15 of 78

*(top of page, first column fragment)*

Green, an employee of the Veterans' Administration facility, Johnson City, Tenn., in respect of his claim for disability alleged to have resulted from an injury sustained by him on August 7, 1934, and be referred to the United States Employees' Compensation Commission; and the authorities to consider and determine his claim under the remaining provisions of said act: *Provided*, That no benefits shall accrue prior to the approval of this act.

**IDA A. GUNDERSON AND HER THREE MINOR DAUGHTERS**

The Senate proceeded to consider the bill (S. 213) for the relief of Ida A. Gunderson and her three minor daughters, which had been reported from the Committee on Claims with

*(second column top)*

The amendments were agreed to.

The bill was ordered to be engrossed for a third reading, read the third time, and passed.

**CENSUS OF UNEMPLOYMENT**

The Senate proceeded to consider the bill (S. 2705) to provide for the taking of a census of employment, unemployment, and occupations, and for other purposes, which had been reported from the Committee on Education and Labor with amendments.

---

Mr. BLACK. Mr. President, I may say to the Senator that there is no limitation provided by the bill as to the expenditure. I should have no objection to such a limitation if I knew exactly what the limitation should be. Perhaps if we were to provide a limitation it would be an invitation to spend up to the amount of the limitation, even if it were not needed.

Mr. BYRNES. Mr. President, will the Senator yield?

Mr. BLACK. I yield.

Mr. BYRNES. I will say to the Senator from Utah that I made a number of inquiries to see if we could reach an estimate. My own feeling is that it should not cost as much as some of the officials of the Department believe it will cost. One estimate was that $4,000,000 would cover it. I do not believe it will cost that much, in view of the experience of the Post Office Department and the cost involved when it aided the Social Security Board last January. It should not cost more than $4,000,000.

Mr. BLACK. I may say to the Senator that it is my judgment, that from the best information I have been able to obtain, that from four to five million dollars would be the maximum that would be necessary to take a census of the unemployed and partially unemployed. It would require $20,000,000 to take a census of the entire country.

With reference to the question asked by the Senator as to the limitation of time, the bill specifically provides that the President shall cause the census to be taken on or before April 1, 1938. It is hoped that the census will be begun a long time before that. It is the hope that it will be taken as expeditiously as possible.

In discussing this matter with numerous departments in an effort to work out a bill which would function in the proper way, we reached the conclusion that it was better to place a limitation within which we knew the work could be done. The conclusion was also reached that in determining the information to be required it was better to have the benefit of the experience of the officers named in the bill.

This may not be the best bill that could be drawn, but it has had a great deal of consideration by various agencies that are connected with the census.

The VICE PRESIDENT. The question is on the engrossment and third reading of the bill.

The bill was ordered to be engrossed for a third reading, read the third time, and passed.

The title was amended so as to read: "A bill to provide for the taking of a census of partial employment, unemployment, and occupations, and for other purposes."

**BILL PASSED OVER**

The bill (H. R. 5417) to provide for the measurement of vessels using the Panama Canal, and for other purposes, was announced as next in order.

Mr. KING. Mr. President, I have been requested by a Senator who is necessarily detained from the Senate to ask that that bill go over.

The VICE PRESIDENT. The bill will be passed over.

**MARKERS FOR GRAVES OF VETERANS**

The Senate proceeded to consider the bill (S. 1898) to authorize the Secretary of War to furnish certain markers for certain graves, which had been reported from the Committee on Military Affairs with an amendment, on page 2, line 2, after the words "Secretary of War", to insert "*And provided further*, That the price of each bronze grave marker furnished by the Secretary of War under the provisions of this act shall not exceed $9", so as to make the bill read:

*Be it enacted, etc.,* That, notwithstanding any provision of existing law, the Secretary of War is authorized and directed to furnish, at the option of the relative or representative of the deceased war veteran, either a flat stone grave marker, a standard flat bronze grave marker, or an upright stone grave marker or headstone, for the grave of any deceased person, for which the Secretary of War is authorized to furnish a marker or headstone: *Provided*, That the Secretary of War shall furnish the upright stone marker, authorized by section 4877 of the Revised Statutes, for cemeteries under the jurisdiction of the Secretary of War:

*And provided further,* That the price of each bronze grave marker furnished by the Secretary of War under the provisions of this act shall not exceed $9.

The amendment was agreed to.

The bill was ordered to be engrossed for a third reading, read the third time, and passed.

**PERMANENT MEMORIAL TO WILL ROGERS**

The bill (H. R. 6482) providing for cooperation with the State of Oklahoma in constructing a permanent memorial to Will Rogers was considered, ordered to a third reading, read the third time, and passed, as follows:

*Be it enacted, etc.,* That there is hereby established a commission to be known as the Federal Will Rogers Memorial Commission (hereinafter referred to as the Commission) and to be composed of three persons to be appointed by the President of the United States, one of whom shall be Mrs. Will Rogers. The members of the Commission shall serve without compensation, but traveling, subsistence, and other necessary expenses incurred by them in connection with the work of the Commission may be paid from any funds available for expenditure by the Commission. Any vacancy occurring in the membership of the Commission shall be filled by the President.

Sec. 2. There is hereby authorized to be appropriated the sum of $500,000, to be expended by the Commission, in cooperation with the Will Rogers Memorial Commission established by an act of the Legislature of the State of Oklahoma, and such other agencies, public and private, as the Commission may determine, for the purpose of designing and constructing on a site to be donated by Mrs. Will Rogers, in or near Claremore, Okla., a suitable permanent memorial to the memory of Will Rogers; but no part of the sum herein authorized to be appropriated shall be made available for expenditure until adequate provision has been made for the perpetual care and maintenance, without expense to the United States, of such site and the memorial constructed thereon.

(a) The Commission named hereunder shall have full power to accept gifts, grants, and donations from whatever source and such gifts, grants, and donations shall be applied on and reduce the amount of the $500,000 authorized herein to the extent of such gifts, grants, and donations.

Sec. 3. No amount shall be expended from the sums appropriated for the purposes of this act until an equal amount has been made available from other sources, public or private, for expenditure for the same purpose.

Sec. 4. All expenditures of the Commission shall be allowed and paid upon the presentation of itemized vouchers therefor approved by the chairman of the Commission, but no expenditure shall be made or authorized by the Commission except with the approval of a majority of its members.

Sec. 5. No fee or charge of any character shall be imposed or made for admission to such memorial or the grounds on which it is constructed.

Sec. 6. Plans and designs for the memorial shall be chosen only after open competition by architects and before any of the funds herein authorized to be appropriated shall be expended, the plans and designs of the memorial shall be approved by the Commission.

Sec. 7. The Commission shall cease and terminate upon the completion and acceptance by the said Joint Commission of the Will Rogers Memorial as herein provided, and the submission to the President of a final report including an audit of the expenditures of the funds expended as provided herein.

**JOINT RESOLUTION PASSED OVER**

The joint resolution (S. J. Res. 176) favoring employment by the Works Progress Administration of persons unable to find employment in private industry was announced as next in order.

Mr. KING. Mr. President, I have been requested, because of its importance, to ask that the joint resolution go over.

The VICE PRESIDENT. The joint resolution will be passed over.

**LABOR STANDARDS FOR APPRENTICES**

Mr. LA FOLLETTE. Mr. President, I ask unanimous consent to recur to Calendar No. 1124, being House bill 7274. The Senator from Utah [Mr. KING] desired and asked for further time to consider it. I have conferred with him and he has graciously consented to withdraw his objection, after a further examination of the bill. I think the measure is very meritorious, and I hope that consent will be given for its consideration and passage.

Mr. KING. Mr. President, I have no objection.

The VICE PRESIDENT. Is there objection to the present consideration of the bill?

Case: PY09-cv-00056 Limitation Document 1-1

he is on his feet, that is the limitation as to time in which the census is to be taken? I am not familiar with the bill.

Mr. BYRNES. Mr. President, I am satisfied that the point is well taken. Some one should be appointed who are to determine the method; the plans are already being discussed as to the method, and I am satisfied that by April 1 a census will be taken that will be of great value.

Mr. KING. Mr. President, I should like to ask the Senator from Alabama if there is any provision in the bill which will compel speedy action in taking the census within a reasonable time; and is there any limitation upon the item of expense? The only objection, it seems to me, is that the authority is scattered too much, and I should like to see it concentrated.

---

There being no objection, the bill (H. R. 7274) to enable the Department of Labor to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices, and to cooperate with the States in the promotion of such standards, was considered, ordered to a third reading, read the third time, and passed, as follows:

Be it enacted, etc., That the Secretary of Labor is hereby authorized and directed to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices, to extend the application of such standards by encouraging the inclusion thereof in contracts of apprenticeship, to bring together employers and labor for the formulation of programs of apprenticeship, to cooperate with State agencies engaged in the formulation and promotion of standards of apprenticeship, and to cooperate with the National Youth Administration and with the Office of Education of the Department of the Interior in accordance with section 6 of the act of February 23, 1917 (39 Stat. 932), as amended by Executive Order No. 6166, June 10, 1933, issued pursuant to an act of June 30, 1932 (47 Stat. 414), as amended.

Sec. 2. The Secretary of Labor may publish information relating to existing and proposed labor standards of apprenticeship, and may appoint national advisory committees to serve without compensation. Such committees shall include representatives of employers, representatives of labor, educators, and officers of other executive departments, with the consent of the head of any such department.

Sec. 3. On and after the effective date of this act the National Youth Administration shall be relieved of direct responsibility for the promotion of labor standards of apprenticeship as heretofore conducted through the division of apprentice training and shall transfer all records and papers relating to such activities to the custody of the Department of Labor. The Secretary of Labor is authorized to appoint such employees as he may from time to time find necessary for the administration of this act, with regard to existing laws applicable to the appointment and compensation of employees of the United States: Provided, however, That he may appoint persons now employed in division of apprentice training of the National Youth Administration upon certification by the Civil Service Commission of their qualifications after nonassembled examinations.

Sec. 4. This act shall take effect on July 1, 1937, or as soon thereafter as it shall be approved.

The VICE PRESIDENT. The bill just passed is the last bill appearing on the calendar.

FEDERAL AID IN WILDLIFE RESTORATION PROJECTS

Mr. PITTMAN. Mr. President, while the Senator from Nevada was occupying the chair yesterday, Calendar No. 889, being Senate bill 2670, was called. At that time, at the request of the Senator from Kentucky [Mr. BARKLEY], it was passed temporarily to the foot of the calendar. Under that agreement I ask that the bill be taken up for consideration at this time.

The VICE PRESIDENT. The Senator from Nevada asks unanimous consent to return to Calendar 889, Senate bill 2670, and also that it may be considered at this time. Is there objection?

Mr. CHAVEZ. Mr. President, we have in New Mexico a fish and game commission about as good as any in the country. They have asked to be given a little more time to study the bill. I ask the Senator from Nevada if he has any objection to having it go over for that purpose?

Mr. PITTMAN. Would the Senator object to granting me unanimous consent to make a statement with reference to the bill?

Mr. CHAVEZ. Certainly not.

Mr. PITTMAN. I make the statement so the Senate may know the purpose of the bill which is being passed over at the request of the Senator from New Mexico.

This is a bill to provide for cooperation and participation by the Federal Government, through the Department of Agriculture and the fish and game commissions of the various States, in the preservation of wildlife. It comes about mainly for the reason, I will state, a number of years ago Congress enacted the migratory bird law, for the purpose of attempting to save the migratory birds, of the country and then imposed a tax on guns, shells, and ammunition for the purpose of raising funds to administer that law.

During the emergency period large sums of money have been set aside for the purchase of migratory-bird sanctuaries throughout the country. They are numerous and are to be found in nearly all the States. However, no funds are available for the maintenance of the sanctuaries. Unless some provision is made for creation of such funds in the future, the sanctuaries will be worthless and useless without proper protection and guard.

Under the Federal tax law a certain amount of money is raised by a tax on sporting rifles, shotguns, shells, and things of that kind. That fund is not sufficient to take care of the game sanctuaries of the country at the present time, and it is the desire of the Federal Government to obtain aid in this particular from the various States. All of the States issue licenses for hunting and fishing. Therefore, each State has a fund of that character.

The plan is to utilize the fund raised from the tax upon guns, shells, ammunition, in connection with a fund raised in the States from the issuance of licenses for hunting and fishing. The bill provides, in other words, that the Federal Government shall put up 75 percent and the States 25 percent. No State has to participate in the program unless it wishes to do so. The projects will be outlined by the various States. If projects as outlined by the State include the Federal projects within the State, it may participate in this proposed plan. It may include other State projects, and, if that be so, then the Federal Government, through the Treasury Department, will turn over to the State a certain amount of money, 75 percent, to match the 25 percent to be put up by the State. The amount to be allocated to each State is determined somewhat along the lines of the allocation of money to the States under the Federal highway-aid provision. Area and hunting and fishing licenses are the bases for apportionment. The reason for taking area into consideration is because most of the sanctuaries are situated in the large spaces of the West.

The matter has been approved by all the States except New Mexico. Operation and application of the funds would be entirely within the administration of the State game and fish commission. If a State does not see fit to participate—and New Mexico does not have to participate if she does not desire to do so—it is not injured in the slightest degree. Forty-seven States desire to participate in the plan.

Mr. CHAVEZ. Mr. President, I was not objecting to the bill in and of itself, because there may be merit in it. All I ask is that it go over until I have an opportunity to examine it further.

The VICE PRESIDENT. The bill will be passed over.

UNIFORM SYSTEM OF MUNICIPAL BANKRUPTCY

Mr. PEPPER. Mr. President, I ask unanimous consent to recur to Calendar No. 936, being the bill (H. R. 5969) to amend an act entitled "An act to establish a uniform system of bankruptcy throughout the United States", approved July 1, 1898, and acts amendatory thereof and supplementary thereto.

The VICE PRESIDENT. Is there objection to the request of the Senator from Florida?

Mr. ASHURST. Mr. President, I do not rise to object, but, on the contrary, to state that I believe the bill proposes wholesome legislation for our country.

Though the Senator from Florida could probably make a better statement than could I, yet, since the measure came from the committee over which I have the honor to preside, I ask him to yield to me to make a brief statement concerning the bill.

The VICE PRESIDENT. The question is, Shall the Senate consent to return to the bill and consider it at this time? The Chair understands that to be the request of the Senator from Florida. The Chair first understood the Senator from Arizona to object, but the Senator from Arizona was not objecting. Is there objection to the request of the Senator from Florida to return to Calendar 936?

Mr. BURKE. Mr. President, there are some features of the bill about which I have serious doubt, and for that reason I object to returning to it at this time.

The VICE PRESIDENT. The Senator from Nebraska objects.

# EXHIBIT C

| 75TH CONGRESS 1st Session | HOUSE OF REPRESENTATIVES | REPORT No. 945 |
| --- | --- | --- |

## SAFEGUARD THE WELFARE OF APPRENTICES

JUNE 7, 1937.—Committed to the Committee of the Whole House on the state of the Union and ordered to be printed

Mr. CONNERY, from the Committee on Labor, submitted the following

# REPORT

[To accompany H. R. 7274]

The Committee on Labor, to whom was referred the bill (H. R. 7274) to enable the Department of Labor to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices and to cooperate with the States in the promotion of such standards, having had the same under consideration, report it back to the House and recommend that the bill do pass.

A bill (H. R. 6205) to enable the Department of Labor to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices and to cooperate with the States in the promotion of such standards, was referred to a subcommittee, and hearings were held on April 22, 23, and 26, 1937. H. R. 7274 is an amended version of the original bill and conforms to the considered views of the subcommittee after consideration of H. R. 6205.

The report of the Honorable William J. Fitzgerald, chairman of the subcommittee, to the full committee on the bill (H. R. 6205) follows:

### THE UNITED STATES APPRENTICESHIP PROGRAM

In considering this bill (H. R. 6205) it is essential that an understanding be had of the apprenticeship problem in the United States, the reasons for the problem, and the corrective measures undertaken to solve it. It is also essential that we have a clear understanding of what is meant by the term "apprentice." An apprentice is an employed youth who spends approximately 85 percent of his time learning a skilled trade through organized experience and teaching on the job. In addition to this training he receives nominal wages progressively increasing with his advancing skill. An apprenticeship system is an arrangement whereby all persons entering a skilled trade do so under conditions or standards which assure them full training in every process, division, and tool of the trade, supplemented by study in related subjects.

After listening to the witnesses who have appeared before the committee and after examining the documents and evidence submitted, we come to the conclusion that there has never been an adequate system for the training of apprentices in the United States. The United States Census reports for 1930 reveal information which is startling to those who recognize the implications. They

2    SAFEGUARDING THE WELFARE OF APPRENTICES

show that there were some 750,000 young men and women under 25 years of age employed in skilled trades who were not receiving organized training. They were, no doubt, picking up a little information as they worked, but practical men who have themselves learned trades and other practical men who employ skilled workers have informed us that skilled mechanics cannot be made by the "pick-up" method.

The economic progress of a great industrial nation such as ours is largely dependent on the skill and genius of its workmen. It is surprising, therefore, that definite national steps had not been taken long ago to assure an adequate supply of skilled workmen and at the same time provide young people much-needed employment in the trades.

The evidence presented to us shows that a few of the more forward-looking individual employers, employers' associations, and trade-unions have carried on excellent apprentice training programs, but these afforded opportunities to but a few of the thousands of young people who should benefit from such training. Those who have conducted sound apprenticeship programs are the foremost advocates of a nationally integrated apprenticeship system.

### PURPOSE OF THE BILL

Before 1934 there had been no national approach toward having labor standards of apprenticeship accepted. The Federal Committee on Apprentice Training has established a workable approach, has brought together national trade associations and labor organizations to formulate apprenticeship programs acceptable to both groups, has cooperated with State and local groups interested in apprenticeship, and has served in an advisory capacity to both employers and employees in setting up practical programs for training skilled workers. The bill (H. R. 6205) permits the continuation of the work which is now being done by the Federal Committee on Apprentice Training and which has proved of great value to industry, labor, and young people. The Federal Committee on Apprentice Training was appointed by the Secretary of Labor in June 1934 under authority granted by Executive Order No. 6750-C, to provide for genuine apprentice training under the National Recovery Administration codes and at the same time safeguard labor standards. So effective was the work of the Federal Committee under the National Recovery Administration that it was decided to continue it after the National Recovery Act was declared unconstitutional. Its administration was placed under the jurisdiction of the National Youth Administration. In September 1936 the President, in a letter to the Secretary of Labor, requested the transfer of the Federal Committee on Apprentice Training to the Department of Labor and directed that an appropriation to cover this activity be included in the Department's budget. Such action was approved by the National Youth Administration and by the Federal Committee on Apprentice Training. It was recognized that the work should be placed on a permanent basis.

Accordingly, the Department of Labor included an item for the work of the Federal Committee in its appropriation request for 1937–38 and the Budget Bureau recommended to the Congress an appropriation for this work during the coming fiscal year. However, the Committee on Appropriations of the House of Representatives was of the opinion that it could not approve this item as a matter of policy and that the assignment of functions should have special consideration by Congress. In accordance with this decision, H. R. 6205 was introduced by Mr. Fitzgerald of Connecticut and referred to the Committee on Labor.

The committee is of the opinion that the development of an adequate apprenticeship system is not an emergency program. There is constant need for some Federal agency to bring employers and employees together in the formulation of national programs of apprenticeship and to attempt to adjust the supply of skilled workers to the demands of industry. This is a logical function of the United States Department of Labor.

The forces which give rise to the prediction of a shortage of skilled workers in some trades were not set in motion by the depression alone. Because of the inadequacy of American apprenticeship, a large part of the supply of skilled labor came from abroad. The setting up of immigration bars dried up this source of supply. The effect of the immigration laws on the supply of skilled labor, however, was discounted because of the fact that it was erroneously believed the automatic machine was rapidly making the all-around skilled workman unnecessary; and because it was expected that technical schools could provide all the training required for skilled work. Another cause was the failure to emphasize

the attractiveness to youth of work in the trades. The depression, it is true, has aggravated the situation by terminating such apprenticeship programs as were being conducted. During the last 5 years there has also been a natural shrinkage in the ranks of skilled workers. The records of the United States Employment Service show that a skilled labor shortage is evidenced when a trade reaches 75 to 80 percent of normal. So, with increasing business activity, this problem of shortage of craftsmen will become more acute.

The important bearing that the training of skilled workers has upon our social structure, especially with respect to relief, security, citizenship, crime, and national defense, was clearly indicated to the committee. Because of the nature of the problem, it is of vital importance that the Congress take cognizance of it and take action to strengthen the remedial measures which have been inaugurated by the Federal Committee on Apprentice Training.

Both employers and labor heartily approved the work which is being done by the Federal Committee on Apprentice Training and recommended that it be continued under the Department of Labor. The agency dealing with labor standards in apprenticeship must have the confidence of labor and of employers, for their whole-hearted support and cooperation must be secured before constructive action can be started. The employer supplies the job and the facilities for training. The workers have the skill and do the actual imparting of skills to the apprentices. There is a mutual interest between the employer and the workers in proper standards for apprenticeship. Distrust and suspicion often develop when either one or the other undertakes the training program alone. It was pointed out to the committee by employers and employees that industry and labor are being brought together by the Federal Committee on Apprentice Training in a most effective manner to work out and administer apprentice programs and that young people are being assisted thereby to secure training which fits them for profitable employment and responsible citizenship. The experience of this close cooperation between management and labor on questions of apprenticeship may be expected to influence beneficially other negotiations between management and labor, with consequent benefits to the whole Nation.

Both the employer and employee representatives before the committee expressed themselves to the effect that the appropriation which had been requested for this work was inadequate. There was unanimous agreement, however, that the bill should be passed. The National Youth Administration and the United States Office of Education also endorsed the measure.

No opposition was registered with the committee.

## ANALYSIS OF THE BILL

Section 1 of the bill (H. R. 6205) specifically authorizes and directs the Secretary of Labor to formulate and promote labor standards in apprenticeship and to encourage the inclusion thereof in contracts of apprenticeship, to bring together employers and employees for the formulation of programs of apprenticeship, to cooperate with State agencies engaged in the promotion of apprenticeship standards, and to cooperate with the National Youth Administration and with the United States Office of Education. This insures the continuance of the present program of the Federal Committee on Apprentice Training and guards against any duplication of work.

The relationship between the Department of Labor and the United States Office of Education in the field of apprenticeship has been carefully worked out by the two Departments, based on the recognition that there are two distinct groups of responsibilities and functions in the promotion and subsequent operations of apprenticeship plans. One group deals with the apprentice as an employed worker and comes under the jurisdiction of the Department of Labor; the other deals with the apprentice as a student and comes under the jurisdiction of the Office of Education. The activities of the Federal Committee on Apprentice Training have centered on the apprentice as a worker. The effectiveness of such an apprenticeship program has been amply demonstrated in the last 3 years.

Section 2 authorizes the Secretary of Labor to publish information on labor standards of apprenticeship and to appoint advisory committees composed of representatives of employers, employees, educators, and officers of other executive departments, to serve without compensation. This provides for the participation in the program of all interested parties. Practical programs are worked out by utilizing the experience of industry and labor and education in this important field.

Section 3 provides that the National Youth Administration shall be relieved of responsibility of promoting labor standards in apprenticeship, that the papers

SAFEGUARDING THE WELFARE OF APPRENTICES

4

and records of the National Youth Administration relating to such activities shall be transferred to the Department of Labor, and authorizes the Secretary to employ persons necessary for the administration of the act with regard to existing laws applicable to the appointment and compensation of employees of the United States.

Section 4 provides for an effective date.

———

THE SECRETARY OF THE INTERIOR,
*Washington, May 18, 1937.*

Hon. WILLIAM J. FITZGERALD,
*House of Representatives, Washington, D. C.*

MY DEAR MR. FITZGERALD: I have your letter of April 16 requesting a report on H. R. 6205, a bill to enable the Department of Labor to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices and to cooperate with the States in the promotion of such standards

There is no objection on the part of the Department of the Interior to H. R. 6205, the provisions of which are in accord with a joint memorandum on apprenticeship issued to the Chairman and Members of the Subcommittee on Appropriations, House of Representatives, under date of March 1, 1937, by the Secretary of Labor and the Assistant Commissioner for Vocational Education of the Office of Education, a copy of which is enclosed herewith.

To avoid any possible misunderstanding with regard to advisory committees appointed by the Secretary of Labor, it would appear to be desirable to insert the word "National" after the word "appoint" in line 10 of section 2.

The Bureau of the Budget advises that this report is not in conflict with the legislative and financial policies of the President.

Sincerely yours,

CHARLES WEST,
*Acting Secretary of the Interior.*

MARCH 1, 1937.

JOINT MEMORANDUM TO THE CHAIRMAN AND MEMBERS OF THE SUBCOMMITTEE ON APPROPRIATIONS FOR THE DEPARTMENT OF LABOR, HOUSE OF REPRESENTATIVES

From: The Department of Labor and the Office of Education.
In re: Apprenticeship.

There seems to be some question in the minds of the committee members as to which phases of apprentice training relate to labor standards and which relate to education. It is clearly and officially recognized by the President, the United States Office of Education, the United States Department of Labor, the National Youth Administration, the American Federation of Labor, various national associations of employers, and State governments that there are two distinct groups of responsibilities and functions in the promotion and subsequent operation of plans for apprentice training. One group deals with the apprentice as an employed worker—the conditions under which he works, his hours of work, his rates of pay, the length of his learning period, and the ratio of apprentices to journeymen so that overcrowding or shortage of skilled workers in the trades may be avoided in large part. The second group of responsibilities deals with the apprentice as a student—the related technical and supplemental instruction needed to make him a proficient worker and the supervision and coordination of this instruction with his job experience.

The United States Office of Education and educators generally have not conceived it to be a part of their function in providing educational training for apprentices to give consideration to problems which relate to labor standards. Mr. Frank Cushman, Chief of the Trade and Industrial Education Service of the United States Office of Education, has stated, "We think there are two groups of responsibilities (in apprenticeship). One group has to do with labor standards, wages, hours, quotas, length of apprenticeship period, etc. The other group has to do with education and training of apprentices." Mr. Thomas Quigley, professor of industrial education at the Georgia School of Technology, and vice president of the American Vocational Association, said recently, "Certainly the vocational schools and their staffs do not wish to entangle themselves in the wages, working hours, and labor disputes involved in apprenticeship agreements any more than they do in other issues extraneous to the schools' one great job of training and coordinating such training."

activities
Secretary
regard to
ployees of

...OR,
8, 1937.

ng a report
e and pro-
welfare of
standards
or to H. R
on appren-
e Secretary
f the Office

committee-
le to insert

ct with the

EST,
e Interior.

R 1, 1937.

MMITTEE ON
NTATIVES

embers as to
ich relate to
the United
the National
national asso-
stinct groups
operation of
e as an em-
ork, his rates
i to journey-
ades may be
h the appren-
on needed to
f this instruc-

ave not con-
ig for appren-
ndards.  Mr.
ervice of the
two groups of
or standards,
her group has
Quigley, pro-
nd vice presi-
nly the voca-
in the wages,
reements any
t job of train-

There also seems to be a question in the minds of the committee members as to whether the two distinct phases of apprenticeship can be most effectively furthered nationally by a single administrative agency or by the two Government agencies which have jurisdiction, experience, and facilities in the respective fields.  It has been amply demonstrated that the responsibilities in connection with the apprentice as an employed worker can best be carried on by the State labor department which is charged with the general responsibility of improving working conditions and fostering the well-being of the workers, and that the responsibilities in connection with the apprentice as a student can best be performed by the State board for vocational education.  These State agencies in turn look to the United States Department of Labor and to the United States Office of Education for leadership and research and for the determination of national standards in their respective fields.

Except in a few States there has been no adequate machinery developed to promote uniformity and give adequate protection to employment standards of apprenticeship.  Partly because of lack of interest in apprenticeship on the part of employers and partly because of this lack of machinery, this vital system of training for the highly skilled trades has not kept pace either with the needs of industry or with the opportunities for employment in the skilled trades.  The United States Employment Service, as a consequence, warns that unless apprentices are put on now, within a very short period of time there will be a real shortage of skilled workers in many of our most important industries.  Labor has repeatedly expressed itself in opposition to any apprenticeship program that does not provide proper safeguards for labor standards.  If young workers are to be apprenticed to prevent this impending shortage, the trade-unions must be assured that the boys' interests will be safeguarded, that labor standards will be upheld, and that the apprentice will not be put on at the expense of the older worker.  The agencies that can gain the cooperation of the trade-union movement with employers in the development of the labor standard phases of apprenticeship are the labor departments—Federal and State.

With funds for apprenticeship promotion on a national basis, the Department of Labor will be carrying out the purpose for which it was created, "to foster, promote, and develop the welfare of the wage earners of the United States, to improve their working conditions, and to advance their opportunities for profitable employment."  It will in no way encroach upon the work now being done by the United States Office of Education, but, on the contrary, as evidenced by the activities of the Federal Committee on Apprentice Training during the past 2 years, will vitalize and greatly increase the demands upon the school authorities for preapprentice training, related instruction for apprentices, coordination of this instruction with job experience, the preparation of trade analyses and outlines of instruction, and for specially trained teachers to carry on these functions.

DEPARTMENT OF LABOR,
FRANCES PERKINS, *Secretary.*
UNITED STATES OFFICE OF EDUCATION,
J. C. WRIGHT,
*Assistant Commissioner for Vocational Education.*

# EXHIBIT D

# Calendar No. 1124

| | | |
|---|---|---|
| 75TH CONGRESS<br>1st Session | SENATE | REPORT<br>No. 1078 |

## SAFEGUARD THE WELFARE OF APPRENTICES

---

JULY 22 (calendar day, AUG. 4), 1937.—Ordered to be printed

---

Mr. PEPPER, from the Committee on Education and Labor, submitted
the following

## REPORT

[To accompany H. R. 7274]

The Senate Committee on Education and Labor, to whom was
referred the bill (H. R. 7274) to enable the Department of Labor to
formulate and promote the furtherance of labor standards necessary
to safeguard the welfare of apprentices and to cooperate with the
States in the promotion of such standards, having had the same under
consideration, report it back to the Senate without amendment and
recommend that the bill do pass.

The bill is as follows:

AN ACT To enable the Department of Labor to formulate and promote the furtherance of labor standards
necessary to safeguard the welfare of apprentices and to cooperate with the States in the promotion of
such standards

*Be it enacted by the Senate and House of Representatives of the United States of
America in Congress assembled,* That the Secretary of Labor is hereby authorized
and directed to formulate and promote the furtherance of labor standards neces-
sary to safeguard the welfare of apprentices, to extend the application of such
standards by encouraging the inclusion thereof in contracts of apprenticeship, to
bring together employers and labor for the formulation of programs of apprentice-
ship, to cooperate with State agencies engaged in the formulation and promotion
of standards of apprenticeship, and to cooperate with the National Youth Admin-
istration and with the Office of Education of the Department of the Interior in
accordance with section 6 of the Act of February 23, 1917 (39 Stat. 932), as
amended by Executive Order Numbered 6166, June 10, 1933, issued pursuant to
an Act of June 30, 1932 (47 Stat. 414), as amended.

SEC. 2. The Secretary of Labor may publish information relating to existing
and proposed labor standards of apprenticeship, and may appoint national
advisory committees to serve without compensation. Such committees shall
include representatives of employers, representatives of labor, educators, and
officers of other executive departments, with the consent of the head of any such
department.

SEC. 3. On and after the effective date of this Act the National Youth Admin-
istration shall be relieved of direct responsibility for the promotion of labor stand-
ards of apprenticeship as heretofore conducted through the division of apprentice
training and shall transfer all records and papers relating to such activities to
the custody of the Department of Labor.   The Secretary of Labor is authorized

**2**            SAFEGUARD THE WELFARE OF APPRENTICES

to appoint such employees as he may from time to time find necessary for the administration of this Act, with regard to existing laws applicable to the appointment and compensation of employees of the United States: *Provided, however,* That he may appoint persons now employed in division of apprentice training of the National Youth Administration upon certification by the Civil Service Commission of their qualifications after nonassembled examinations.

SEC. 4. This Act shall take effect on July 1, 1937, or as soon thereafter as it shall be approved.

Passed the House of Representatives June 30, 1937.

Attest:

SOUTH TRIMBLE, *Clerk.*

The following is a letter received by the chairman of the committee from the Secretary of Labor, in which is enclosed a statement with reference to the bill:

DEPARTMENT OF LABOR,
*Washington, July 27, 1937.*

Hon. HUGO L. BLACK,
Chairman, Committee on Education and Labor,
United States Senate, Washington, D. C.

DEAR SENATOR BLACK: While I know that it is quite late in the session and that your committee is at the present time occupied with the Black-Connery bill, I should like to call your attention to H. R. 7274, the apprentice training bill, which is now pending before your committee. This bill passed the House without a dissenting vote, and I think that if your committee deemed it desirable legislation and reported it out that it might have smooth sailing on the Senate floor.

The division which this bill operates has been in existence for some years in the Department of Labor, but it has been financed with funds provided by the National Youth Administration. This year continuation of the project was approved by the Bureau of the Budget and an appropriation for it was authorized when the bill was brought up on the floor. However, this item was stricken out on a point of order, although the members of the Appropriation Committee, who had the bill in charge, said they approved the purpose of the appropriation and would vote for an amendment to the substantive law if a bill embodying such an amendment were introduced and referred to the appropriate committees.

As a result of this suggestion, this bill was introduced by Congressman Fitzgerald and received favorable action by the House Labor Committee after exhaustive hearings were held with respect to it. I enclose an explanatory memorandum.

Sincerely yours,

FRANCES PERKINS.

STATEMENT ON H. R. 7274

H. R. 7274, which provides a permanent agency in the Department of Labor for setting up standards for the guidance of apprenticeship, and for the promotion of apprenticeship generally, under such standards, was favorably reported out of the House Labor Committee, and was later adopted by the House without a dissenting vote.

Since 1934, the Federal Committee on Apprentice Training has been operating through funds provided by the National Youth Administration. Its functions under this bill will be carried on through funds provided by the Department of Labor.

The questions arise: Why a Federal Committee on Apprentice Training? Why should it be part of the Department of Labor? The answers to these questions are found in the report of the House Labor Committee on the bill. The report says in part:

"The committee is of the opinion that the development of an adequate apprenticeship system is not an emergency program. There is constant need for some Federal agency to bring employers and employees together in the formulation of national programs of apprenticeship and to attempt to adjust the supply of skilled workers to the demands of industry. This is a logical function of the Department of Labor.

"The important bearing that the training of skilled workers has upon our social structure, especially with respect to relief, security, citizenship, crime, and national defense, was clearly indicated to the committee. Because of the nature of the problem, it is of vital importance that the Congress take cognizance of it and take action to strengthen the remedial measures which have been inaugurated by the Federal Committee on Apprentice Training."

sary for the
the appoint-
led, *however*,
e training of
Civil Service

ereafter as it

BLE, *Clerk.*

e committee
ement with

LABOR,
ly 27, 1937.

C.
ne session and
Black-Connery
entice training
sed the House
ied it desirable
on the Senate

some years in
rovided by the
ne project was
it was author-
m was stricken
ion Committee.
e appropriation
bill embodying
ate committees.
sman Fitzgerald
ifter exhaustive
emorandum.

CES PERKINS.

tment of Labor
or the promotion
reported out of
House without a

s been operating
i. Its functions
the Department

entice Training?
rs to these ques-
on the bill. The

adequate appren-
it need for some
he formulation of
supply of skilled
f the Department

as upon our social
ime, and national
the nature of the
nce of it and take
augurated by the

The House Labor Committee further commented to the effect that its hearings had revealed that there never has been an adequate apprenticeship system in the United States; that, in 1930, some 750,000 young people under 25 years of age were employed in skilled trades, but were not being trained as apprentices; and that no national approach to the serious problem had been made prior to the creation of the Federal Committee on Apprentice Training in 1934.

The thorough training of skilled workmen is of paramount importance to the employers, to labor, to apprentices, and to the public. To assure that type of training, the Federal committee has, with the advice of employers, labor, and educators, evolved certain minimum standards for apprenticeship. These relate to the scale of wages, ratio of apprentices to journeymen, the number of hours to be worked, the various processes of the trade to be learned, the amount of supplementary school instruction, a written agreement between employer and apprentice, etc.

In its work the Federal committee has not had, nor will it have under this bill, any authority to compel adherence to its recommendations. The committee, and its cooperating State committees, act as a liaison between employers and employees together and give them the benefit of its assistance and counsel in setting up apprenticeship systems. The procedure usually involves the setting up of a joint trade committee to supervise the apprenticeship program. Under such an arrangement the possibility of training more apprentices than can be absorbed into the trades is avoided.

Hearings before the House Labor Committee on the bill showed that employers, labor organizations, and educators thoroughly approved the bill. The Labor Committee reported that no opposition was registered with the committee.

Among those who either personally appeared before the House Labor Committee or sent letters strongly urging passage of the bill were the following:

William Green, president, American Federation of Labor.

C. R. Dooley, manager, industrial relations, Socony Vacuum Oil Co.

John P. Frey, president, metal-trades department, American Federation of Labor.

Richard R. Brown, deputy executive director, National Youth Administration.

J. C. Wright, Assistant Commissioner for Vocational Education, United States Office of Education.

G. S. Stuart, Painting and Decorating Contractors of America.

William F. Gallagher, Brotherhood of Painters, Decorators, and Paperhangers of America.

Oscar W. Rosenthal, National Association of Building Trades Employers and Associated General Contractors of America.

Michael F. Garrett, United Association of Journeymen Plumbers and Steamfitters of the United States.

Noel Sargent, secretary, National Association of Manufacturers.

Henry Ohl, Jr., president, Wisconsin State Federation of Labor.

C. R. Miller, president, Oregon Building Congress.

O. B. Chapman, director, Department of Industrial Relations, State of Ohio.

Martin Durkin, director, Illinois State Department of Labor.

Charles H. Schmetz, president, Illinois State Council of the Painting and Decorating Contractors of America.

George P. Hambrecht, past president, American Vocational Association.

Ernst Flentje, National Association of Master Plumbers.

Voyta Wrabetz, chairman, Wisconsin Industrial Commission.

O

# EXHIBIT E

 # U.S. Department of Labor
### *in the* **21st Century**



## *www.dol.gov*



Search / A to Z Index

By Topic | By Audience | By Top 20 Requested Items | By Form | By Organization | By Location

**Content Last Revised: 2/18/77**
---DISCLAIMER---

 Next

**CFR** Code of Federal Regulations Pertaining to ETA
⤷ **Title 29** Labor
⤷ **Chapter I** Office of the Secretary of Labor
⤷ **Part 29** Labor Standards for the Registration of Apprenticeship Programs

# 29 CFR 29.1 - Purpose and scope.

- **Section Number:** 29.1
- **Section Name:** Purpose and scope.

(a) The National Apprenticeship Act of 1937, section 1 (29 U.S.C. 50), authorizes and directs the Secretary of Labor ``to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices, to extend the application of such standards by encouraging the inclusion thereof in contracts of apprenticeship, to bring together employers and labor

for the formulation of programs of apprenticeship, to cooperate with State agencies engaged in the formulation and promotion of standards of apprenticeship, and to cooperate with the Office of Education under the Department of Health, Education, and Welfare * * *.'' Section 2 of the Act authorizes the Secretary of Labor to ``publish information relating to existing and proposed labor standards of apprenticeship,'' and to ``appoint national advisory committees * * *.'' (29 U.S.C. 50a).

(b) The purpose of this part is to set forth labor standards to safeguard the welfare of apprentices, and to extend the application of such standards by prescribing policies and procedures concerning the registration, for certain Federal purposes, or acceptable apprenticeship programs with the U.S. Department of Labor, Employment and Training Administration, Bureau of Apprenticeship and Training. These labor standards, policies and procedures cover the registration, cancellation and deregistration or apprenticeship programs and of apprenticeship agreements; the recognition of a State agency as the appropriate agency for registering local apprenticeship programs for certain Federal purposes; and matters relating thereto.

29CFR29.29.1 - Purpose and scope.                                    Page 2 of 2

Case 1:06-cv-00556-SLR    Document 41-2    Filed 05/27/2008    Page 29 of 78

(c) For further information about this part 29, contact: Deputy

Administrator, Bureau of Apprenticeship and Training, Employment and

Training Administration, Room 5000, Patrick Henry Building, Washington,

DC 20213, Telephone number (202) 376-6585.

<u>Updated Contact Information</u>



(▲) **Back to Top**                                                    **www.dol.gov**

**Frequently Asked Questions | Freedom of Information Act | Customer Survey**
**Privacy & Security Statement | Disclaimers | E-mail to a Friend**

**U.S. Department of Labor**                                          **1-866-4-USA-DOL**
Frances Perkins Building                                          TTY: 1-877-889-5627
200 Constitution Avenue, NW                                          **Contact Us**
Washington, DC 20210

29CFR29.29.2 - Definitions.          Page 1 of 3

Case 1:06-cv-00556-SLR     Document 41-2     Filed 05/27/2008     Page 30 of 78

 

# U.S. Department of Labor
### *in the* 21st Century

***www.dol.gov***           Search / A to Z Index

By Topic | By Audience | By Top 20 Requested Items | By Form | By Organization | By Location

 **Content Last Revised:** 2/18/77
---DISCLAIMER--- 

**CFR** Code of Federal Regulations Pertaining to ETA
↳**Title 29** Labor
  ↳**Chapter I** Office of the Secretary of Labor
    ↳**Part 29** Labor Standards for the Registration of Apprenticeship Programs

# 29 CFR 29.2 - Definitions.

- **Section Number:** 29.2
- **Section Name:** Definitions.

---

As used in ths part:

(a) Department shall mean the U.S. Department of Labor.

(b) Secretary shall mean the Secretary of Labor or any person specifically designated by him.

(c) Bureau shall mean the Bureau of Apprenticeship and Training, Employment and Training Administration.

(d) Administrator shall mean the Administrator of the Bureau of Apprenticeship and Training, or any person specifically designated by him.

(e) Apprentice shall mean a worker at least 16 years of age, except where a higher minimum age standard is otherwise fixed by law, who is employed to learn a skilled trade as defined in Sec. 29.4 under standards of apprenticeship fulfilling the requirements of Sec. 29.5.

(f) Apprenticeship program shall mean a plan containing all terms and conditions for the qualification, recruitment, selection, employment and training of apprentices, including such matters as the requirement for a written apprenticeship agreement.

(g) Sponsor shall mean any person, association, committee, or organization operating an apprenticeship program and in whose name the program is (or is to be) registered or approved.

(h) Employer shall mean any person or organization employing an

29CFR29.29.2 - Definitions.  Page 2 of 3

Case 1:06-cv-00556-SLR     Document 41-2     Filed 05/27/2008     Page 31 of 78

apprentice whether or not such person or organization is a party to an apprenticeship agreement with the apprentice.

(i) Apprenticeship committee shall mean those persons designated by the sponsor to act for it in the administration of the program. A committee may be joint, i.e., it is composed of an equal number of representatives of the employer(s) and of the employees represented by a bona fide collective bargaining agent(s) and has been established to conduct, operate, or administer an apprenticeship program and enter into apprenticeship agreements with apprentices. A committee may be unilateral or non-joint and shall mean a program sponsor in which a bona fide collective bargaining agent is not a participant.

(j) Apprenticeship agreement shall mean a written agreement between an apprentice and either his employer, or an apprenticeship committee acting as agent for employer(s), which agreement contains the terms and conditions of the employment and training of the apprentice.

(k) Federal purposes includes any Federal contract, grant, agreement or arrangement dealing with apprenticeship; and any Federal financial or other assistance, benefit, privilege, contribution, allowance, exemption, preference or right pertaining to apprenticeship.

(l) Registration of an apprenticeship program shall mean the acceptance and recording of such program by the Bureau of Apprenticeship and Training, or registration and/or approval by a recognized State Apprenticeship Agency, as meeting the basic standards and requirements of the Department for approval of such program for Federal purposes. Approval is evidenced by a Certificate of Registration or other written indicia.

(m) Registration of an apprenticeship agreement shall mean the acceptance and recording thereof by the Bureau or a recognized State Apprenticeship Agency as evidence of the participation of the apprentice in a particular registered apprenticeship program.

(n) Certification shall mean written approval by the Bureau of:

(1) A set of apprenticeship standards developed by a national committee or organization, joint or unilateral, for policy or guideline

29CFR29.29.2 - Definitions.                                                      Page 3 of 3

Case 1:06-cv-00556-SLR     Document 41-2     Filed 05/27/2008     Page 32 of 78

use by local affiliates, as substantially conforming to the standards of apprenticeship set forth in Sec. 29.5; or

(2) An individual as eligible for probationary employment as an apprentice under a registered apprenticeship program.

(o) Recognized State Apprenticeship Agency or recognized State Apprenticeship Council shall mean an organization approved by the Bureau as an agency or council which has been properly constituted under an acceptable law or Executive order, and has been approved by the Bureau as the appropriate body for State registration and/or approval of local apprenticeship programs and agreements for Federal purposes.

(p) State shall mean any of the 50 States of the United States, the District of Columbia, or any territory or possession of the United States.

(q) Related instruction shall mean an organized and systematic form of instruction designed to provide the apprenticeship with knowledge of the theoretical and technical subjects related to his/her trade.

(r) Cancellation shall mean the termination of the registration or approval status of a program at the request of the sponsor or termination of an apprenticeship agreement at the request of the apprentice.

(s) Registration agency shall mean the Bureau or a recognized State Apprenticeship Agency.


Frequently Asked Questions | Freedom of Information Act | Customer Survey
Privacy & Security Statement | Disclaimers | E-mail to a Friend

**U.S. Department of Labor**                                     **1-866-4-USA-DOL**
Frances Perkins Building                                         TTY: 1-877-889-5627
200 Constitution Avenue, NW                                      **Contact Us**
Washington, DC 20210

29CFR29.3 - Eligibility and procedure for Bureau registration of a program. Page 1 of 3

Case 1:06-cv-00556-SLR    Document 41-2    Filed 05/27/2008    Page 33 of 78

 

# U.S. Department of Labor
### *in the 21st Century*

**www.dol.gov** 

 Prev

Search / A to Z Index

By Topic | By Audience | By Top 20 Requested Items | By Form | By Organization | By Location

**Content Last Revised: 4/30/84**
---DISCLAIMER---

 Next

**CFR** Code of Federal Regulations Pertaining to ETA
└ **Title 29** Labor
  └ **Chapter I** Office of the Secretary of Labor
    └ **Part 29** Labor Standards for the Registration of Apprenticeship Programs

# 29 CFR 29.3 - Eligibility and procedure for Bureau registration of a program.

- **Section Number:** 29.3
- **Section Name:** Eligibility and procedure for Bureau registration of a program.

(a) Eligibility for various Federal purposes is conditioned upon a program's conformity with apprenticeship program standards published by the Secretary of Labor in this part. For a program to be determined by the Secretary of Labor as being in conformity with these published standards the program must be registered with the Bureau or registered with and/or approved by a State Apprenticeship Agency or Council recognized by the Bureau. Such determination by the Secretary is made only by such registration.

(b) No apprenticeship program or agreement shall be eligible for Bureau registration unless (1) it is in conformity with the requirements of this part and the training is in an apprenticeable occupation having the characteristics set forth in Sec. 29.4 herein, and (2) it is in conformity with the requirements of the Department's regulation on ``Equal Employment Opportunity in Apprenticeship and Training'' set forth in 29 CFR part 30, as amended.

(c) Except as provided under paragraph (d) of this section, apprentices must be individually registered under a registered program. Such registration may be effected:

(1) By filing copies of each apprenticeship agreement; or

(2) Subject to prior Bureau approval, by filing a master copy of

such agreement followed by a listing of the name, and other required data, of each individual when apprenticed.

(d) The names of persons in their first 90 days of probationary employment as an apprentice under an apprenticeship program registered by the Bureau or a recognized State Apprenticeship Agency, if not individually registered under such program, shall be submitted immediately after employment to the Bureau or State Apprenticeship Agency for certification to establish the apprentice as eligible for such probationary employment.

(e) The appropriate registration office must be promptly notified of the cancellation, suspension, or termination of any apprenticeship agreement, with cause for same, and of apprenticeship completions.

(f) Operating apprenticeship programs when approved by the Bureau shall be accorded registration evidenced by a Certificate of Registration. Programs approved by recognized State Apprenticeship Agencies shall be accorded registration and/or approval evidenced by a similar certificate or other written indicia. When approved by the Bureau, national apprenticeship standards for policy or guideline use shall be accorded certification, evidenced by a certificate attesting to the Bureau's approval.

(g) Any modification(s) or change(s) to registered or certified programs shall be promptly submitted to the registration office and, if approved, shall be recorded and acknowledged as an amendment to such program.

(h) Under a program proposed for registration by an employer or employers' association, where the standards, collective bargaining agreement or other instrument, provides for participation by a union in any manner in the operation of the substantive matters of the apprenticeship program, and such participation is exercised, written acknowledgement of union agreement or no objection to the registration is required. Where no such participation is evidenced and practiced, the employer or employers' association shall simultaneously furnish to the union, if any, which is the collective bargaining agent of the employees

29CFR29.29.3 - Eligibility and procedure for Bureau registration of a program.    Page 3 of 3

Case 1:06-cv-00556-SLR    Document 41-2    Filed 05/27/2008    Page 35 of 78

to be trained, a copy of its appplication for registration and of the apprenticeship program. The registration agency shall provide a reasonable time period of not less than 30 days nor more than 60 days for receipt of union comments, if any, before final action on the application for registration and/or approval.

(i) Where the employees to be trained have no collective bargaining agent, an apprenticeship program may be proposed for registration by an employer or group of employers.

(Approved by the Office of Management and Budget under control number 1205-0223)

[42 FR 10139, Feb. 18, 1977; 42 FR 30836, June 17, 1977, as amended at 49 FR 18295, Apr. 30, 1984]



Prev                                                    Next

▲ Back to Top                                           www.dol.gov

---

**Frequently Asked Questions | Freedom of Information Act | Customer Survey**
**Privacy & Security Statement | Disclaimers | E-mail to a Friend**

---

**U.S. Department of Labor**                           **1-866-4-USA-DOL**
Frances Perkins Building                                TTY: 1-877-889-5627
200 Constitution Avenue, NW                             **Contact Us**
Washington, DC 20210

29CFR29.29.4 - Criteria for apprenticeable occupations. Page 1 of 1

Case 1:06-cv-00556-SLR   Document 41-2   Filed 05/27/2008   Page 36 of 78

 

# U.S. Department of Labor
### *in the* 21st Century

## *www.dol.gov*

Search / A to Z Index

By Topic | By Audience | By Top 20 Requested Items | By Form | By Organization | By Location

 **Prev**   **Content Last Revised: 2/18/77**    **Next**
---DISCLAIMER---

**CFR** Code of Federal Regulations Pertaining to ETA
↳ **Title 29** Labor
  ↳ **Chapter I** Office of the Secretary of Labor
    ↳ **Part 29** Labor Standards for the Registration of Apprenticeship Programs

# 29 CFR 29.4 - Criteria for apprenticeable occupations.

- **Section Number:** 29.4
- **Section Name:** Criteria for apprenticeable occupations.

An apprenticeable occupation is a skilled trade which possesses all of the following characteristics:

(a) It is customarily learned in a practical way through a structured, systematic program of on-the-job supervised training.

(b) It is clearly identified and commonly recognized throughout an industry.

(c) It involves manual, mechanical or technical skills and knowledge which require a minimum of 2,000 hours of on-the-job work experience.

(d) It requires related instruction to supplement the on-the-job training.

 **Prev**    **Next**

▲ **Back to Top**

**www.dol.gov**

**Frequently Asked Questions | Freedom of Information Act | Customer Survey**
**Privacy & Security Statement | Disclaimers | E-mail to a Friend**

**U.S. Department of Labor**
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

**1-866-4-USA-DOL**
TTY: 1-877-889-5627
**Contact Us**

29CFR29.29.5 - Standards of apprenticeship.                                      Page 1 of 4

Case 1:06-cv-00556-SLR     Document 41-2     Filed 05/27/2008     Page 37 of 78

 **U.S. Department of Labor**
*in the 21st Century*



*www.dol.gov*                                       Search / A to Z Index


**CFR** Code of Federal Regulations Pertaining to ETA
&#8627; **Title 29** Labor
  &#8627; **Chapter I** Office of the Secretary of Labor
    &#8627; **Part 29** Labor Standards for the Registration of Apprenticeship Programs

# 29 CFR 29.5 - Standards of apprenticeship.

- **Section Number:** 29.5
- **Section Name:** Standards of apprenticeship.

An apprenticeship program, to be eligible for registration/approval by a registration/approval agency, shall conform to the following standards:

(a) The program is an organized, written plan embodying the terms and conditions of employment, training, and supervision of one or more apprentices in the apprenticeable occupation, as defined in this part, and subscribed to by a sponsor who has undertaken to carry out the apprentice training program.

(b) The program standards contain the equal opportunity pledge prescribed in 29 CFR 30.3(b) and, when applicable, an affirmative action plan in accordance with 29 CFR 30.4, a selection method authorized in 29 CFR 30.5, or similar requirements expressed in a State Plan for Equal Employment Opportunity in Apprenticeship adopted pursuant to 29 CFR part 30 and approved by the Department, and provisions concerning the following:

(1) The employment and training of the apprentice in a skilled trade;

(2) A term of apprenticeship, not less than 2,000 hours of work experience, consistent with training requirements as established by industry practice;

(3) An outline of the work processes in which the apprentice will

receive supervised work experience and training on the job, and the allocation of the approximate time to be spent in each major process;

(4) Provision for organized, related and supplemental instruction in technical subjects related to the trade. A minimum of 144 hours for each year of apprenticeship is recommended. Such instruction may be given in a classroom through trade or industrial courses, or by correspondence courses of equivalent value, or other forms of self-study approved by the registration/approval agency.

(5) A progressively increasing schedule of wages to be paid the apprentice consistent with the skill acquired. The entry wage shall be not less than the minimum wage prescribed by the Fair Labor Standards Act, where applicable, unless a higher wage is required by other applicable Federal law, State law, respective regulations, or by collective bargaining agreement;

(6) Periodic review and evaluation of the apprentice's progress in job performance and related instruction; and the maintenance of appropriate progress records;

(7) The numeric ratio of apprentices to journeymen consistent with proper supervision, training, safety, and continuity of employment, and applicable provisions in collective bargaining agreements, except where such ratios are expressly prohibited by the collective bargaining agreements. The ratio language shall be specific and clear as to application in terms of jobsite, work force, department or plant;

(8) A probationary period reasonable in relation to the full apprenticeship term, with full credit given for such period toward completion of apprenticeship;

(9) Adequate and safe equipment and facilities for training and supervision, and safety training for apprentices on the job and in related instruction;

(10) The minimum qualifications required by a sponsor for persons entering the apprenticeship program, with an eligible starting age not less than 16 years;

(11) The placement of an apprentice under a written apprenticeship

agreement as required by the State apprenticeship law and regulation, or the Bureau where no such State law or regulation exists. The agreement shall directly, or by reference, incorporate the standards of the program as part of the agreement;

(12) The granting of advanced standing or credit for previously acquired experience, training, or skills for all applicants equally, with commensurate wages for any progression step so granted;

(13) Transfer of employer's training obligation when the employer is unable to fulfill his obligation under the apprenticeship agreement to another employer under the same program with consent of the apprentice and apprenticeship committee or program sponsor;

(14) Assurance of qualified training personnel and adequate supervision on the job;

(15) Recognition for successful completion of apprenticeship evidenced by an appropriate certificate;

(16) Identification of the registration agency;

(17) Provision for the registration, cancellation and deregistration of the program; and requirement for the prompt submission of any modification or amendment thereto;

(18) Provision for registration of apprenticeship agreements, modifications, and amendments; notice to the registration office of persons who have successfully completed apprenticeship programs; and notice of cancellations, suspensions and terminations of apprenticeship agreements and causes therefor;

(19) Authority for the termination of an apprenticeship agreement during the probationary period by either party without stated cause;

(20) A statement that the program will be conducted, operated and administered in conformity with applicable provisions of 29 CFR part 30, as amended, or a State EEO in apprenticeship plan adopted pursuant to 29 CFR part 30 and approved by the Department;

(21) Name and address of the appropriate authority under the program to receive, process and make disposition of complaints;

(22) Recording and maintenance of all records concerning apprenticeship as

Case 1:06-cv-00556-SLR     Document 41-2     Filed 05/27/2008     Page 40 of 78

may be required by the Bureau or recognized State Apprenticeship Agency
and other applicable law.

(Approved by the Office of Management and Budget under control number
1205-0223)

[42 FR 10139, Feb. 18, 1977; 42 FR 30836, June 17, 1977, as amended at
49 FR 18295, Apr. 30, 1984]

⟨Prev                                                              Next⟩

 **Back to Top**                                    **www.dol.gov**

_____

Frequently Asked Questions | Freedom of Information Act | Customer Survey
Privacy & Security Statement | Disclaimers | E-mail to a Friend
_____

**U.S. Department of Labor**                              **1-866-4-USA-DOL**
Frances Perkins Building                              TTY: 1-877-889-5627
200 Constitution Avenue, NW                                 **Contact Us**
Washington, DC 20210

Case 1:06-cv-00556-SLR    Document 41-2    Filed 05/27/2008    Page 41 of 78



# U.S. Department of Labor
### *in the* 21st Century



## *www.dol.gov*

Search / A to Z Index

By Topic | By Audience | By Top 20 Requested Items | By Form | By Organization | By Location

 Prev

**Content Last Revised: 4/30/84**
---DISCLAIMER---

 Next

**CFR** Code of Federal Regulations Pertaining to ETA
 ↳**Title 29** Labor
  ↳**Chapter I** Office of the Secretary of Labor
   ↳**Part 29** Labor Standards for the Registration of Apprenticeship Programs

# 29 CFR 29.6 - Apprenticeship agreement.

- **Section Number:** 29.6
- **Section Name:** Apprenticeship agreement.

The apprenticeship agreement shall contain explicitly or by reference:

(a) Names and signatures of the contracting parties (apprentice, and the program sponsor or employer), and the signature of a parent or guardian if the apprentice is a minor.

(b) The date of birth of apprentice.

(c) Name and address of the program sponsor and registration agency.

(d) A statement of the trade or craft in which the apprentice is to be trained, and the beginning date and term (duration) of apprenticeship.

(e) A statement showing (1) the number of hours to be spent by the apprentice in work on the job, and (2) the number of hours to be spent in related and supplemental instruction which is recommended to be not less than 144 hours per year.

(f) A statement setting forth a schedule of the work processes in the trade or industry divisions in which the apprentice is to be trained and the approximate time to be spent at each process.

(g) A statement of the graduated scale of wages to be paid the apprentice and whether or not the required school time shall be compensated.

(h) Statements providing:

29CFR29.29.6 - Apprenticeship agreement.    Page 2 of 2

Case 1:06-cv-00556-SLR    Document 41-2    Filed 05/27/2008    Page 42 of 78

(1) For a specific period of probation during which the apprenticeship agreement may be terminated by either party to the agreement upon written notice to the registration agency;

(2) That, after the probationary period, the agreement may be cancelled at the request of the apprentice, or may be suspended, cancelled, or terminated by the sponsor, for good cause, with due notice to the apprentice and a reasonable opportunity for corrective action, and with written notice to the apprentice and to the registration agency of the final action taken.

(i) A reference incorporating as part of the agreement the standards of the apprenticeship program as it exists on the date of the agreement and as it may be amended during the period of the agreement.

(j) A statement that the apprentice will be accorded equal opportunity in all phases of apprenticeship employment and training, without discrimination because of race, color, religion, national origin, or sex.

(k) Name and address of the appropriate authority, if any, designated under the program to receive, process and make disposition of controversies or differences arising out of the apprenticeship agreement when the controversies or differences cannot be adjusted locally or resolved in accordance with the established trade procedure or applicable collective bargaining provisions.


(Approved by the Office of Management and Budget under control number 1205-0223)


[42 FR 10139, Feb. 18, 1977, as amended at 49 FR 18295, Apr. 30, 1984]



⟸ Prev                                    Next ⟹

🔺 **Back to Top**                                    **www.dol.gov**

**Frequently Asked Questions | Freedom of Information Act | Customer Survey**
**Privacy & Security Statement | Disclaimers | E-mail to a Friend**

**U.S. Department of Labor**
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

**1-866-4-USA-DOL**
TTY: 1-877-889-5627
**Contact Us**

http://www.dol.gov/dol/allcfr/ETA/Title_29/Part_29/29CFR29.6.htm                    5/25/2008

29CFR29.29.7 - Deregistration of Bureau-registered program.                    Page 1 of 4

Case 1:06-cv-00556-SLR    Document 41-2    Filed 05/27/2008    Page 43 of 78

 **U.S. Department of Labor** 
*in the* **21st Century**

*www.dol.gov*                     Search / A to Z Index

By Topic | By Audience | By Top 20 Requested Items | By Form | By Organization | By Location

 Prev                 **Content Last Revised:** 4/30/84                  Next
                              ---DISCLAIMER---

**CFR** Code of Federal Regulations Pertaining to ETA
└**Title 29** Labor
  └**Chapter I** Office of the Secretary of Labor
    └**Part 29** Labor Standards for the Registration of Apprenticeship Programs

# 29 CFR 29.7 - Deregistration of Bureau-registered program.

- **Section Number:** 29.7
- **Section Name:** Deregistration of Bureau-registered program.

Deregistration of a program may be effected upon the voluntary action of the sponsor by a request for cancellation of the registration, or upon reasonable cause, by the Bureau instituting formal deregistration proceedings in accordance with the provisions of this part.

(a) Request by sponsor. The registration officer may cancel the registration of an apprenticeship program by written acknowledgment of such request stating, but not limited to, the following matters:

(1) The registration is canceled at sponsor's request, and effective date thereof;

(2) That, within 15 days of the date of the acknowledgment, the sponsor shall notify all apprentices of such cancellation and the effective date; that such cancellation automatically deprives the apprentice of his/her individual registration; and that the deregistration of the program removes the apprentice from coverage for Federal purposes which require the Secretary of Labor's approval of an apprenticeship program.

(b) Formal deregistration--(1) Reasonable cause. Deregistration proceedings may be undertaken when the apprenticeship program is not conducted, operated, and administered in accordance with the registered provisions or the requirements of this part, except that deregistration

Case 1:06-cv-00556-SLR     Document 41-2     Filed 05/27/2008     Page 44 of 78

proceedings for violation of equal opportunity requirements shall be processed in accordance with the provisions under 29 CFR part 30, as amended;

(2) Where it appears the program is not being operated in accordance with the registered standards or with requirements of this part, the registration officer shall so notify the program sponsor in writing;

(3) The notice shall:

(i) Be sent by registered or certified mail, with return receipt requested;

(ii) State the shortcoming(s) and the remedy required; and

(iii) State that a determination of reasonable cause for deregistration will be made unless corrective action is effected within 30 days;

(4) Upon request by the sponsor for good cause, the 30-day term may be extended for another 30 days. During the period for correction, the sponsor shall be assisted in every reasonable way to achieve conformity;

(5) If the required correction is not effected within the allotted time, the registration officer shall send a notice to the sponsor, by registered or certified mail, return receipt requested, stating the following:

(i) The notice is sent pursuant to this subsection;

(ii) Certain deficiencies (stating them) were called to sponsor's attention and remedial measures requested, with dates of such occasions and letters; and that the sponsor has failed or refused to effect correction;

(iii) Based upon the stated deficiencies and failure of remedy, a determination of reasonable cause has been made and the program may be deregistered unless, within 15 days of the receipt of this notice, the sponsor requests a hearing;

(iv) If a request for a hearing is not made, the entire matter will be submitted to the Administrator, BAT, for a decision on the record with respect to deregistration.

(6) If the sponsor has not requested a hearing, the registration

29CFR29.29.7 - Deregistration of Bureau-registered program.    Page 3 of 4

Case 1:06-cv-00556-SLR    Document 41-2    Filed 05/27/2008    Page 45 of 78

officer shall transmit to the Administrator, BAT, a report containing all pertinent facts and circumstances concerning the nonconformity, including the findings and recommendation for deregistration, and copies of all relevant documents and records. Statements concerning interviews, meetings and conferences shall include the time, date, place, and persons present. The Administrator shall make a final order on the basis of the record before him.

(7) If the sponsor requests a hearing, the registration officer shall transmit to the Secretary, through the Administrator, a report containing all the data listed in paragraph (b)(6) of this section. The Secretary shall convene a hearing in accordance with Sec. 29.9; and shall make a final decision on the basis of the record before him including the proposed findings and recommended decision of the hearing officer.

(8) At his discretion, the Secretary may allow the sponsor a reasonable time to achieve voluntary corrective action. If the Secretary's decision is that the apprenticeship program is not operating in accordance with the registered provisions or requirements of this part, the apprenticeship program shall be deregistered. In each case in which reregistration is ordered, the Secretary shall make public notice of the order and shall notify the sponsor.

(9) Every order of deregistration shall contain a provision that the sponsor shall, within 15 days of the effective date of the order, notify all registered apprentices of the deregistration of the program; the effective date thereof; that such cancellation automatically deprives the apprentice or his/her individual registration; and that the deregistration removes the apprentice from coverage for Federal purposes which require the Secretary of Labor's approval of an apprenticeship program.


(Approved by the Office of Management and Budget under control number 1205-0223)


[42 FR 10319, Feb. 18, 1977, as amended at 49 FR 18295, Apr. 30, 1984]

Case 1:06-cv-00556-SLR    Document 41-2    Filed 05/27/2008    Page 46 of 78



Prev                                                                    Next

Back to Top                                                            www.dol.gov

**Frequently Asked Questions | Freedom of Information Act | Customer Survey**
**Privacy & Security Statement | Disclaimers | E-mail to a Friend**

**U.S. Department of Labor**                                          **1-866-4-USA-DOL**
Frances Perkins Building                                              TTY: 1-877-889-5627
200 Constitution Avenue, NW                                          **Contact Us**
Washington, DC 20210

29CFR29.29.8 - Reinstatement of program registration.                    Page 1 of 1

Case 1:06-cv-00556-SLR     Document 41-2     Filed 05/27/2008     Page 47 of 78

 

# U.S. Department of Labor
### *in the* 21st Century

**www.dol.gov**                                                  Search / A to Z Index

By Topic | By Audience | By Top 20 Requested Items | By Form | By Organization | By Location

 Prev      **Content Last Revised: 2/18/77**      Next 
                ---DISCLAIMER---

**CFR** Code of Federal Regulations Pertaining to ETA
⌐ **Title 29** Labor
  ⌐ **Chapter I** Office of the Secretary of Labor
    ⌐ **Part 29** Labor Standards for the Registration of Apprenticeship Programs

# 29 CFR 29.8 - Reinstatement of program registration.

- **Section Number:** 29.8
- **Section Name:** Reinstatement of program registration.

Any apprenticeship program deregistered pursuant to this part may be reinstated upon presentation of adequate evidence that the apprenticeship program is operating in accordance with this part. Such evidence shall be presented to the Administrator, BAT, if the sponsor had not requested a hearing, or to the Secretary, if an order of deregistration was entered pursuant to a hearing.

 Prev                                            Next 

⊕ **Back to Top**                                                    **www.dol.gov**

**Frequently Asked Questions | Freedom of Information Act | Customer Survey**
**Privacy & Security Statement | Disclaimers | E-mail to a Friend**

**U.S. Department of Labor**                              **1-866-4-USA-DOL**
Frances Perkins Building                                    TTY: 1-877-889-5627
200 Constitution Avenue, NW                                    **Contact Us**
Washington, DC 20210

 **U.S. Department of Labor** *in the* **21st Century** 



*www.dol.gov*                                             Search / A to Z Index

 **Prev**          **Content Last Revised: 2/18/77**          **Next**
                              ---DISCLAIMER---

**CFR** Code of Federal Regulations Pertaining to ETA
 └**Title 29** Labor
   └**Chapter I** Office of the Secretary of Labor
     └**Part 29** Labor Standards for the Registration of Apprenticeship Programs

# 29 CFR 29.9 - Hearings.

- **Section Number:** 29.9
- **Section Name:** Hearings.

---

(a) Within 10 days of his receipt of a request for a hearing, the Secretary shall designate a hearing officer. The hearing officer shall give reasonable notice of such hearing by registered mail, return receipt requested, to the appropriate sponsor. Such notice shall include:

(1) A reasonable time and place of hearing,

(2) A statement of the provisions of this part pursuant to which the hearing is to be held, and

(3) A concise statement of the matters pursuant to which the action forming the basis of the hearing is proposed to be taken.

(b) The hearing officer shall regulate the course of the hearing. Hearings shall be informally conducted. Every party shall have the right to counsel, and a fair opportunity to present his/her case, including such cross-examination as may be appropriate in the circumstances. Hearings officers shall make their proposed findings and recommended decisions to the Secretary upon the basis of the record before them.

 **Prev**                                         **Next** 

(A) **Back to Top**                                                    *www.dol.gov*

---

**U.S. Department of Labor**                                **1-866-4-USA-DOL**
Frances Perkins Building                                     TTY: 1-877-889-5627
200 Constitution Avenue, NW                                    **Contact Us**
Washington, DC 20210

29CFR29.29.10 - Limitations.　　　　　　　　　　　　　　Page 1 of 1

Case 1:06-cv-00556-SLR　　　Document 41-2　　　Filed 05/27/2008　　　Page 49 of 78

 **U.S. Department of Labor** *in the* **21st Century** 

*www.dol.gov* 　　　　　　　　　　　Search / A to Z Index

By Topic | By Audience | By Top 20 Requested Items | By Form | By Organization | By Location

 Prev　　　**Content Last Revised: 2/18/77**　　　Next
　　　　　　　　　　　---DISCLAIMER---

**CFR** Code of Federal Regulations Pertaining to ETA
 L**Title 29** Labor
　L**Chapter I** Office of the Secretary of Labor
　　L**Part 29** Labor Standards for the Registration of Apprenticeship Programs

# 29 CFR 29.10 - Limitations.

- **Section Number:** 29.10
- **Section Name:** Limitations.

　　　　Nothing in this part or in any apprenticeship agreement shall operate to invalidate:

　　　　(a) Any apprenticeship provision in any collective bargaining agreement between employers and employees establishing higher apprenticeship standards; or

　　　　(b) Any special provision for veterans, minority persons or females in the standards, apprentice qualifications or operation of the program, or in the apprenticeship agreement, which is not otherwise prohibited by law, Executive order, or authorized regulation.

 Prev　　　　　　　　　　　　 Next

**Frequently Asked Questions | Freedom of Information Act | Customer Survey
Privacy & Security Statement | Disclaimers | E-mail to a Friend**

**U.S. Department of Labor**　　　　　　　　　　　　　　**1-866-4-USA-DOL**
Frances Perkins Building　　　　　　　　　　　　　　　TTY: 1-877-889-5627
200 Constitution Avenue, NW　　　　　　　　　　　　　　**Contact Us**
Washington, DC 20210

Case 1:06-cv-00556-SLR    Document 41-2    Filed 05/27/2008    Page 50 of 78

 

**U.S. Department of Labor**
*in the* **21st Century**

***www.dol.gov***

Search / A to Z Index

By Topic | By Audience | By Top 20 Requested Items | By Form | By Organization | By Location

 Prev

**Content Last Revised: 2/18/77**
---DISCLAIMER---

 Next

<u>**CFR**</u>  Code of Federal Regulations Pertaining to ETA
 ↳<u>**Title 29**</u>  Labor
  ↳<u>**Chapter I**</u>  Office of the Secretary of Labor
   ↳<u>**Part 29**</u>  Labor Standards for the Registration of Apprenticeship Programs

# 29 CFR 29.11 - Complaints.

- **Section Number:** 29.11
- **Section Name:** Complaints.

---

(a) This section is not applicable to any complaint concerning discrimination or other equal opportunity matters; all such complaints shall be submitted, processed and resolved in accordance with applicable provisions in 29 CFR part 30, as amended, or applicable provisions of a State Plan for Equal Employment Opportunity in Apprenticeship adopted pursuant to 29 CFR part 30 and approved by the Department.

(b) Except for matters described in paragraph (a) of this section, any controversy or difference arising under an apprenticeship agreement which cannot be adjusted locally and which is not covered by a collective bargaining agreement, may be submitted by an apprentice, or his/her authorized representative, to the appropriate registration authority, either Federal or State, which has registered and/or approved the program in which the apprentice is enrolled, for review. Matters covered by a collective bargaining agreement are not subject to such review.

(c) The complaint, in writing and signed by the complainant, or authorized representative, shall be submitted within 60 days of the final local decision. It shall set forth the specific matter(s) complained of, together with all relevant facts and circumstances. Copies of all pertinent documents and correspondence shall accompany the complaint.

29CFR29.29.11 - Complaints.                                              Page 2 of 2

Case 1:06-cv-00556-SLR    Document 41-2    Filed 05/27/2008    Page 51 of 78

(d) The Bureau or recognized State Apprenticeship Agency, as appropriate, shall render an opinion within 90 days after receipt of the complaint, based upon such investigation of the matters submitted as may be found necessary, and the record before it. During the 90-day period, the Bureau or State agency shall make reasonable efforts to effect a satisfactory resolution between the parties involved. If so resolved, the parties shall be notified that the case is closed. Where an opinion is rendered, copies of same shall be sent to all interested parties.

(e) Nothing in this section shall be construed to require an apprentice to

use the review procedure set forth in this section.

(f) A State Apprenticeship Agency may adopt a complaint review procedure differing in detail from that given in this section provided it is proposed and has been approved in the recognition of the State Apprenticeship Agency accorded by the Bureau.

 

🔺 Back to Top

www.dol.gov

**Frequently Asked Questions | Freedom of Information Act | Customer Survey**
**Privacy & Security Statement | Disclaimers | E-mail to a Friend**

**U.S. Department of Labor**                                    **1-866-4-USA-DOL**
Frances Perkins Building                                        TTY: 1-877-889-5627
200 Constitution Avenue, NW                                     **Contact Us**
Washington, DC 20210

http://www.dol.gov/dol/allcfr/ETA/Title_29/Part_29/29CFR29.11.htm          5/25/2008

29CFR29.29.12 - Recognition of State agencies.     Page 1 of 5

Case 1:06-cv-00556-SLR    Document 41-2    Filed 05/27/2008    Page 52 of 78

 **U.S. Department of Labor**

*in the* **21st Century** 

***www.dol.gov***       Search / A to Z Index

By Topic | By Audience | By Top 20 Requested Items | By Form | By Organization | By Location

    **Content Last Revised:** 4/30/84    Next ⟩
       ---DISCLAIMER---

**CFR** Code of Federal Regulations Pertaining to ETA
└ **Title 29** Labor
  └ **Chapter I** Office of the Secretary of Labor
    └ **Part 29** Labor Standards for the Registration of Apprenticeship Programs

# 29 CFR 29.12 - Recognition of State agencies.

- **Section Number:** 29.12
- **Section Name:** Recognition of State agencies.

---

(a) The Secretary's recognition of a State Apprenticeship Agency or Council (SAC) gives the SAC the authority to determine whether an apprenticeship program conforms with the Secretary's published standards and the program is, therefore, eligible for those Federal purposes which require such a determination by the Secretary. Such recognition of a SAC shall be accorded by the Secretary upon submission and approval of the following:

(1) An acceptable State apprenticeship law (or Executive order), and regulations adopted pursuant thereto;

(2) Acceptable composition of the State Apprenticeship Council (SAC);

(3) An acceptable State Plan for Equal Employment Opportunity in Apprenticeship;

(4) A description of the basic standards, criteria, and requirements for program registration and/or approval; and

(5) A description of policies and operating procedures which depart from or impose requirements in addition to those prescribed in this part.

(b) Basic requirements. Generally the basic requirements under the matters covered in paragraph (a) of this section shall be in conformity with applicable requirements as set forth in this part. Acceptable State

provisions shall:

(1) Establish the apprenticeship agency in: (i) The State Department of Labor; or (ii) in that agency of State government having jurisdiction of laws and regulations governing wages, hours, and working conditions, or (iii) that State agency presently recognized by the Bureau; with a State official empowered to direct the apprenticeship operation;

(2) Require that the State Apprenticeship Council be composed of persons familiar with apprenticeable occupations and an equal number of representatives of employer and of employee organizations and may include public members who shall not number in excess of the number named to represent either employer or employee organizations. Each representative so named shall have one vote. Ex officio members may be added to the council but they shall have no vote except where such members have a vote according to the established practice of a presently recognized council. If the State official who directs the apprenticeship operation is a member of the council, provision may be made for the official to have a tie-breaking vote;

(3) Clearly delineate the respective powers and duties of the State official and of the council;

(4) Clearly designate the officer or body authorized to register and deregister apprenticeship programs and agreements;

(5) Establish policies and procedures to promote equality of opportunity in apprenticeship programs pursuant to a State Plan for Equal Employment Opportunity in Apprenticeship which adopts and implements the requirements of 29 CFR part 30, as amended, and to require apprenticeship programs to operate in conformity with such State Plan and 29 CFR part 30, as amended;

(6) Prescribe the contents of apprenticeship agreements;

(7) Limit the registration of apprenticeship programs to those providing training in apprenticeable occupations as defined in Sec. 29.4;

(8) Provide that apprenticeship programs and standards of employers and unions in other than the building and construction industry, which

29CFR29.29.12 - Recognition of State agencies.                                    Page 3 of 5

Case 1:06-cv-00556-SLR     Document 41-2     Filed 05/27/2008     Page 54 of 78

jointly form a sponsoring entity on a multistate basis and are
registered pursuant to all requirements of this part by any recognized
State Apprenticeship Agency/Council or by the Bureau, shall be accorded
registration or approval reciprocity by any other State Apprenticeship
Agency/Council or office of the Bureau if such reciprocity is requested
by the sponsoring entity;

(9) Provide for the cancellation, de- registration and/or
termination of approval of programs, and for temporary suspension,
cancellation, deregistration and/or termination of
approval of apprenticeship agreements; and

(10) Provide that under a program proposed for registration by an
employer or employers' association, and where the standards, collective
bargaining agreement or other instrument provides for participation by a
union in any manner in the operation of the substantive matters of the
apprenticeship program, and such participation is exercised, written
acknowledgment of union agreement or no objection to the registration is
required. Where no such participation is evidenced and practiced, the
employer or employers' association shall simultaneously furnish to the
union, if any, which is the collective bargaining agent of the employees
to be trained, a copy of its application for registration and of the
apprenticeship program. The State agency shall provide a reasonable time
period of not less than 30 days nor more than 60 days for receipt of
union comments, if any, before final action on the application for
registration and/or approval.

(c) Application for recognition. A State Apprenticeship Agency/
Council desiring recognition shall submit to the Administrator, BAT, the
documentation specified in Sec. 29.12(a) of this part. A currently
recognized Agency/Council desiring continued recognition by the Bureau
shall submit to the Administrator the documentation specified in
Sec. 29.12(a) of this part on or before July 18, 1977. An extension of
time within which to comply with the requirements of this part may be
granted by the Administrator for good cause upon written request by the
State agency but the Administrator shall not extend the time for
submission of the documentation required by Sec. 29.12(a). The

recognition of currently recognized Agencies/Councils shall continue

until July 18, 1977 and during any extension period granted by the

Administrator.

(d) Appeal from denial of recognition. The denial by the

Administrator of a State agency's application for recognition under this

part shall be in writing and shall set forth the reasons for the denial.

The notice of denial shall be sent to the applicant by certified mail,

return receipt requested. The applicant may appeal such a denial to the

Secretary by mailing or otherwise furnishing to the Administrator,

within 30 days of receipt of the denial, a notice of appeal addressed to

the Secretary and setting forth the following items:

(1) A statement that the applicant appeals to the Secretary to

reverse the Administrator's decision to deny its application;

(2) The date of the Administrator's decision and the date the

applicant received the decision;

(3) A summary of the reasons why the applicant believes that the

Administrator's decision was incorrect;

(4) A copy of the application for recognition and subsequent

modifications, if any;

(5) A copy of the Administrator's decision of denial. Within 10 days

of receipt of a notice of appeal, the Secretary shall assign an

Administrative Law Judge to conduct hearings and to recommend findings

of fact and conclusions of law. The proceedings shall be informal,

witnesses shall be sworn, and the parties shall have the right to

counsel and of cross-examination.


The Administrative Law Judge shall submit the recommendations and

conclusions, together with the entire record to the Secretary for final

decision. The Secretary shall make his final decision in writing within

30 days of the Administrative Law Judge's submission. The Secretary may

make a decision granting recognition conditional upon the performance of

one or more actions by the applicant. In the event of such a conditional

decision, recognition shall not be effective until the applicant has

submitted to the Secretary evidence that the required actions have been performed and the Secretary has communicated to the applicant in writing that he is satisfied with the evidence submitted.

(e) State apprenticeship programs. (1) An apprenticeship program submitted for registration with a State Apprenticeship Agency recognized by the Bureau shall, for Federal purposes, be in conformity with the State apprenticeship law, regulations, and with the State Plan for Equal Employment Opportunity in Apprenticeship as submitted to and approved by the Bureau pursuant to 29 CFR 30.15, as amended;

(2) In the event that a State Apprenticeship Agency is not recognized by the Bureau for Federal purposes, or that such recognition has been withdrawn, or if no State Apprenticeship Agency exists, registration with the Bureau may be requested. Such registration shall be granted if the program is conducted, administered and operated in accordance with the requirements of this part and the equal opportunity regulation in 29 CFR part 30, as amended.

(Approved by the Office of Management and Budget under control number 1205-0223)

[42 FR 10319, Feb. 18, 1977, as amended at 49 FR 18295, Apr. 30, 1984]



← Prev    Next →

▲ Back to Top                                                                www.dol.gov

**Frequently Asked Questions | Freedom of Information Act | Customer Survey**
**Privacy & Security Statement | Disclaimers | E-mail to a Friend**

**U.S. Department of Labor**                                        1-866-4-USA-DOL
Frances Perkins Building                                           TTY: 1-877-889-5627
200 Constitution Avenue, NW                                       **Contact Us**
Washington, DC 20210

http://www.dol.gov/dol/allcfr/ETA/Title_29/Part_29/29CFR29.12.htm                5/25/2008

29CFR29.29.13 - Derecognition of State agencies.                    Page 1 of 3

Case 1:06-cv-00556-SLR     Document 41-2     Filed 05/27/2008     Page 57 of 78

 

# U.S. Department of Labor
### *in the* 21st Century

**www.dol.gov**                     Search / A to Z Index

By Topic | By Audience | By Top 20 Requested Items | By Form | By Organization | By Location



**Content Last Revised: 4/30/84**
---DISCLAIMER---

**CFR** Code of Federal Regulations Pertaining to ETA
└ **Title 29** Labor
 └ **Chapter I** Office of the Secretary of Labor
  └ **Part 29** Labor Standards for the Registration of Apprenticeship Programs

# 29 CFR 29.13 - Derecognition of State agencies.

- **Section Number:** 29.13
- **Section Name:** Derecognition of State agencies.

The recognition for Federal purposes of a State Apprenticeship Agency or State Apprenticeship Council (hereinafter designated respondent), may be withdrawn for the failure to fulfill, or operate in conformity with, the requirements of this part. Derecognition proceedings for reasonable cause shall be instituted in accordance with the following:

(a) Derecognition proceedings for failure to adopt or properly enforce a State Plan for Equal Employment Opportunity in Apprenticeship shall be processed in accordance with the procedures prescribed in 29 CFR 30.15.

(b) For causes other than those under paragraph (a) above, the Bureau shall notify the respondent and appropriate State sponsors in writing, by certified mail, with return receipt requested. The notice shall set forth the following:

(1) That reasonable cause exists to believe that the respondent has failed to fulfill or operate in conformity with the requirements of this part;

(2) The specific areas of nonconformity;

(3) The needed remedial measures; and

(4) That the Bureau proposes to withdraw recognition for Federal purposes unless corrective action is taken, or a hearing request mailed,

Case 1:06-cv-00556-SLR　　Document 41-2　　Filed 05/27/2008　　Page 58 of 78

within 30 days of the receipt of the notice.

(c) If, within the 30-day period, respondent:

(1) Complies with the requirements, the Bureau shall so notify the respondent and State sponsors, and the case shall be closed;

(2) Fails to comply or to request a hearing, the Bureau shall decide whether recognition should be withdrawn. If the decision is in the affirmative, the Administrator shall forward all pertinent data to the Secretary, together with the findings and recommendation. The Secretary shall make the final decision, based upon the record before him.

(3) Requests a hearing, the Administrator shall forward the request to the Secretary, and the procedures under Sec. 29.9 shall be followed, with notice thereof to the State apprenticeship sponsors.

(d) If the Secretary determines to withdraw recognition for Federal purposes, he shall notify the respondent and the State sponsors of such withdrawal and effect public notice of such withdrawal. The notice to the sponsors shall state that, 30 days after the date of the Secretary's order withdrawing recognition of the State agency, the Department shall cease to recognize, for Federal purposes, each apprenticeship program registered with the State agency unless, within that time, the State sponsor requests registration with the Bureau. The Bureau may grant the request for registration contingent upon its finding that the State apprenticeship program is operating in accordance with the requirements of this part and of 29 CFR part 30, as amended. The Bureau shall make a finding on this issue within 30 days of receipt of the request. If the finding is in the negative, the State sponsor shall be notified in writing that the contingent Bureau registration has been revoked. If the finding is in the affirmative, the State sponsor shall be notified in writing that the contingent Bureau registration is made permanent.

(e) If the sponsor fails to request Bureau registration, or upon a finding of noncompliance pursuant to a contingent Bureau registration, the written notice to such State sponsor shall further advise the recipient that any actions or benefits applicable to recognition for Federal purposes are no longer available to participants in its

29CFR29.29.13 - Derecognition of State agencies.                    Page 3 of 3

Case 1:06-cv-00556-SLR     Document 41-2     Filed 05/27/2008     Page 59 of 78

apprenticeship program.

(f) Such notice shall also direct the State sponsor to notify, within 15 days, all its registered apprentices of the withdrawal of recognition for Federal purposes; the effective date thereof; and that such withdrawal removes the apprentice from coverage under any Federal provision applicable to his/her individual registration under a program recognized or registered by the Secretary of Labor for Federal purposes.

(g) A State Apprenticeship Agency or Council whose recognition has been withdrawn pursuant to this part may have its recognition reinstated upon presentation of adequate evidence that it has fulfilled, and is operating in accordance with, the requirements of this part.

(Approved by the Office of Management and Budget under control number 1205-0223)

[42 FR 10139, Feb. 18, 1977, as amended at 49 FR 18295, Apr. 30, 1984]



**U.S. Department of Labor**                              **1-866-4-USA-DOL**
Frances Perkins Building                                  TTY: 1-877-889-5627
200 Constitution Avenue, NW                              **Contact Us**
Washington, DC 20210

# EXHIBIT F

HOME ⌂ | TOC ☰

**DEPARTMENT OF LABOR**

**Division of Industrial Affairs**

Council on Apprenticeship and Training

Statutory Authority: 19 Delaware Code, Section 202(a) (19 **Del.C.** §202(a))

**FINAL**

**ORDER**

**Rules and Regulations Relating to Apprenticeship and Training Law**

A public hearing was held on October 5, 2006 to receive public comments relating to proposed changes to Regulation 9.0 – Related Instruction Requirement and the substitution of "Industrial Affairs" for "Employment and Training" throughout the entire Rules and Regulations. The members of Council present recommended that the Secretary of Labor adopt the proposal as it was published in the *Register of Regulations*, Vol. 10, Issue 3 (September 1, 2006).

**Summary of the Evidence and Information Submitted**

Exhibits Admitted:

Exhibit 1 – *News Journal* Affidavit of publication of notice of public hearing.

Exhibit 2 – *Delaware State News* Affidavit of publication of notice of public hearing.

Two individuals addressed the Council. First, Joe Potochney, Principal of New Castle County Vo-Tech, Adult Education ("NCC Vo-Tech"), stated that although he was in favor of the reduction in absences he was concerned with the current shortage of construction workers. Mr. Potochney identified that there is no policy in place for excused absences at NCC Vo-Tech. Further, students, on occasion, miss classes because they are required to work overtime or are working at a location far from school. With regard to these concerns, Mr. Potochney requested that the Council consider making the sponsors more accountable for the attendance of the students.

Mr. William E. Feher, Sussex Vo-Tech, Adult Education, next addressed the Council. Mr. Feher echoed the comments of Mr. Potochney in favor of the reduction of the number of absences permitted. Additionally, Mr. Feher supported sponsor accountability. Lastly, Mr. Feher stated that he would not be in favor of any further reduction in the number of absences.

In response to the public comments, the Council discussed the possibility of a letter to sponsors detailing the attendance policy.

**Recommended Findings of Fact with Respect to the Evidence and Information**

The Council is persuaded that these changes are consistent with the current administration of the program.

**Recommendation**

The proposed changes are respectfully submitted to the Secretary of Labor for consideration with a recommendation for adoption this 18th day of October, 2006.

COUNCIL ON APPRENTICESHIP AND TRAINING

Robert Buccini, Chairman Patricia Creedon

Dale Derrickson Andrew S. Nowell

R. Joseph Johnson David G. Kitto

Albert Bradbury

**Decision and Effective Date**

Having reviewed and considered the record and recommendations of members of the Council on Apprenticeship and Training, the proposed changes to (1) Regulations Regulation 9.0 is hereby adopted and made effective August 15, 2007, and (2) to substitute a reference to Industrial Affairs everywhere there was a reference to Employment and Training in the Rules and Regulations is hereby adopted and made effective 10 days following publication of the final regulation in the Register of Regulations.

**Text and Citation**

The text appears in the Register of Regulations, Vol. 10, Issue 3 (September 1, 2006).

DEPARTMENT OF LABOR

Thomas B. Sharp

Secretary of Labor

### 106 Apprenticeship and Training Regulations

**1.0 Purpose and Scope**

1.1 Section 204, Chapter 2, Title 19, **Delaware Code** authorizes and directs the Department of Labor to formulate regulations to promote the furtherance of labor standards necessary to safeguard the welfare of Apprentices and to extend the applications of such standards by requiring their inclusion in apprenticeship contracts.

1.2 The purpose of this chapter is to set forth labor standards to safeguard the welfare of Apprentices and to extend the application of such standards by prescribing policies and procedures concerning the registration of acceptable Apprenticeship Programs with the Delaware Department of Labor.

1.3 These labor standards and procedures cover the Registration and Cancellation of Apprenticeship Agreements and of Apprenticeship Programs; and matters relating thereto. Any questions and/or to request a copy of Delaware's Prevailing Wage Regulations regarding the employment of apprentices on state-funded construction projects must be referred to:

Delaware Department of Labor

Office of Labor Law Enforcement

4425 North Market Street

Wilmington, DE 19802

(302) 761-8200

## 2.0 Declaration of Policy

2.1 It is declared to be the policy of this State to:

2.1.1 encourage the development of an apprenticeship and training system through the voluntary cooperation of management and workers and interested State agencies and in cooperation with other states and the federal government;

2.1.2 provide for the establishment and furtherance of Standards of Apprenticeship and Training to safeguard the welfare of Apprentices and trainees;

2.1.3 aid in providing maximum opportunities for unemployed and employed persons to improve and modernize their work skills; and

2.1.4 contribute to a healthy economy by aiding in the development and maintenance of a skilled labor force sufficient in numbers and quality to meet the expanding needs of industry and to attract new industry.

**3 DE Reg. 641 (11/1/99)**

## 3.0 Definitions

3.1 As used in this part:

**"Administrator"** refers to the Administrator of the Office of Apprenticeship and Training for the State Department of Labor.

**"Agreement"** refers to a written agreement between an Apprentice and either his/her employer or an Apprenticeship Committee acting as agent for the Employer which contains the terms and conditions of the employment and training of the Apprentice.

**"Apprentice"** refers to a person at least sixteen years of age who is engaged in learning a recognized skilled trade through actual work experience under the supervision of a Journeyperson. This person must enter into a written Apprenticeship Indenture Agreement with a registered apprenticeship sponsor. The training must be supplemented with properly coordinated studies of related technical instruction. All hours worked by a registered apprentice, while in the employ of the apprentice's sponsor, shall be considered apprenticeship hours to be counted toward wage progression increments and completion of his/ her on-the-job training hours as set forth in the Apprenticeship Indenture Agreement.

**"Apprenticeship Standards"** refers to the document which embodies the procedure for the selection and the training of apprentices, setting forth the terms of the training, including wages, hours, conditions of employment, training on the job, and related instruction. The duties and responsibilities of the Sponsor, including administrative procedures, are set forth in their company's policies.

**"BAT"** refers to the U.S. Department of Labor, Bureau of Apprenticeship and Training.

**"Cancellation"** refers to the deregistration of a Program or the Termination of an Agreement.

**"Committee"** refers to those persons designated by the Sponsor to act on its behalf in the administration of the Apprenticeship Program. A Committee may be "joint" i.e., it is composed of an equal number of representatives of the employer(s) and of the employee(s) represented by a bona fide collective bargaining agent(s) and has been established to conduct, operate or administer a Program and enter into Agreements with Apprentices. A Committee may be "unilateral" or "non-joint" and shall mean a Program Sponsor in

which a bona fide collective bargaining agent is not a participant.

"**Council**" refers to the Governor's Advisory Council On Apprenticeship and Training.

"**Delaware Resident Contractor**" includes any general contractor, prime contractor, construction manager, subcontractor or other type of construction contractor who regularly maintains a place of business in Delaware. Regularly maintaining a place of business in Delaware does not include site trailers, temporary structures associated with one contract or set of related contracts, nor the holding, nor the maintaining of a post office box within this State. The specific intention of this definition is to maintain consistency with Title 30, **Delaware Code**, section 2501(3) "Resident Contractor".

"**Director**" refers to the Director of the Division of ~~Employment and Training~~ Industrial Affairs.

"**Division**" refers to the Division of ~~Employment and Training~~ Industrial Affairs, Department of Labor, State of Delaware.

"**Employer**" refers to any person or organization employing an Apprentice, whether or not such person or organization is a party to an Apprenticeship Agreement.

"**Journeyperson**" refers to a worker who is fully qualified as a skilled worker in a given craft or trade.

"**On-site Visit**" refers to a visit from a representative of the State of Delaware, Department of Labor, Division of ~~Employment and Training~~ Industrial Affairs to the office and/or the actual field job-site of the Sponsor, for the purposes of inspecting and/or monitoring the progress and training of the Registered Apprentice. This monitoring may include but is not limited to interviewing the Apprentice and the auditing of pertinent documents relative to the maintenance and enforcement of the terms of the Apprenticeship Agreement.

"**Program**" refers to an executed apprenticeship plan which contains all terms and conditions for the qualifications, recruitment, selection, employment and training of Apprentices, including such matters as the requirements for a written Apprenticeship Agreement.

"**Registrant or Sponsor**" refers to any person, association, committee or organization in whose name or title the Program is (or is to be) registered or approved regardless of whether or not such entity is an Employer. To be eligible, the Registrant or Sponsor must be a "Delaware Resident Contractor" or hold and maintain a "Delaware Resident Business License". The Registrant or Sponsor must hold and maintain a permanent place of business, not to include site trailers or other facilities serving only one contract or related set of contracts. To be eligible to be a Registrant or Sponsor, Employer/Business, association, committee or organization must have the training program and an adequate number of Journey persons to meet the ratio requirements as stated for that particular apprenticeable occupation.

"**Registration**" refers to the acceptance and recording of an Apprenticeship Program by the Delaware Department of Labor, Office of Apprenticeship and Training, as meeting the basic standards and requirements of the Division for approval of such Program. Approval is evidenced by a Certificate or other written indicia documentation. Registration also refers to the acceptance and recording of Apprenticeship Agreements thereof, by the Delaware Department of Labor, Office of Apprenticeship and Training, as evidence of the participation of the Apprentice in a particular Registered apprenticeship Program.

"**Related Instruction**" refers to a formal and systematic form of instruction designed to provide the Apprentice with knowledge of the theoretical and technical subjects related to his/her trade.

"**Secretary**" refers to the Secretary of Labor.

"**State**" refers to the State of Delaware

"**Supervisory Inspection**" shall mean the same as "ON SITE VISIT".

**3 DE Reg. 641 (11/1/99)**

**4.0 Eligibility and Procedure for State Registration**

4.1 No Program or Agreement shall be eligible for State Registration unless it is in conformity with the requirements of this chapter, and the training is in an apprenticeable occupation having the characteristics set forth in section 5.0 herein.

4.2 Apprentices must be individually registered under a Registered Program with the State of Delaware, Department of Labor, Division of ~~Employment and Training~~ Industrial Affairs. Such registration shall be effective when the completed agreement is submitted to and signed by the Administrator. Sponsors registered with states other than the State of Delaware shall not be construed as being registered for State of Delaware Apprenticeship Program Registration purposes.

4.3 The State must be properly notified through the Department of Labor, Division of ~~Employment and Training~~ Industrial Affairs, Office of Apprenticeship and Training of cancellation, suspension or termination of any Agreements, (with cause for same) and of apprenticeship completions. The State will attempt, where applicable, to verify the cause of apprenticeship termination.

4.4 Approved Programs shall be accorded Registration, evidenced by a Certificate of Registration. The Certificate of Registration for an approved Program will be made in the name of the Program Sponsor and must be renewed every four (4) years.

4.5 Any modification(s) or change(s) to registered standards shall be promptly submitted to the State through the appropriate office no later than thirty (30) days and, if approved, shall be recorded and acknowledged as an amendment to such standards.

4.6 Under a Program proposed for Registration by an Employer or Employer's Association, where the standards, collective bargaining agreement or other instrument provides for participation by a union in any way in the operation of the Program, and such participation is exercised, written acknowledgement of a union agreement or "no objection" to the Registration is required. Where no such participation is evidenced and practiced, the Employer shall simultaneously furnish to the union a copy of its Program application. In addition, upon receipt of the application for the Program, the State shall promptly send by certified mail to such local union another copy of the Program application and together with a notice that union comments will be accepted for thirty (30) days after the date of the agency transmittal.

4.7 Where the employees to be trained have no collective bargaining agent, a program plan may be proposed for Registration by an Employer or groups of Employers.

4.8 A Sponsor may register Programs in one or more occupations simultaneously or individually with the provision that the Program Sponsor shall, within sixty (60) days of Registration, be actively training Apprentices on-the-job and related study must begin within twelve (12) months for each occupation for which Registration is granted. At no time shall an individual Apprentice be employed in more than one (1) occupation, nor signed to more than one (1) Apprenticeship Agreement at any given time.

4.9 Each occupation for which a Program Sponsor holds Registration shall be subject to Cancellation if no active training of Apprentices on the job has occurred within a consecutive one hundred eighty (180) day period or if no Related Instruction has begun within a twelve (12) month period from the date of Registration or in any twelve (12) month period during the duration of that Agreement.

4.10 Each Sponsor of a Program shall submit to an on-site inspection or supervisory visit and shall make all documents pertaining to the Registered Program available to appropriate representatives of the Apprenticeship and Training Office or designated service personnel upon request.

4.11 Each Sponsor shall be so routinely examined, by the Office of Apprenticeship and Training, at least annually, but not more than every six (6) months, unless a specific violation is suspected or a specific document is being investigated.

4.12 The Sponsor shall notify the State Registration Agency of termination or lay-off from employment of a Registered Apprentice or of the completion of the terms of the Apprenticeship Agreement within thirty (30) calendar days of such occurrence.

4.13 The Sponsor shall notify the State of failure to obtain and register the Apprentice in an approved course of Related Instruction as stated and detailed on the Apprenticeship Agreement within (30) calendar days of such occurrence.

4.14 It shall be the responsibility of the Sponsor to monitor the progress and attendance of the Apprentice in all phases of training such as, but not limited to, on-the-job and/or Related Training.

**3 DE Reg. 641 (11/1/99)**

**9 DE Reg. 806 (11/1/05)**

### 5.0 Criteria for Apprenticeable Occupations

5.1 An Apprenticeable occupation is a skilled trade which possesses all of the following characteristics:

5.1.1 It is customarily learned in a practical way through training and work on the job.

5.1.2 It is clearly identified and commonly recognized throughout the industry, or recognized with a positive view towards changing technology or approved by the Delaware Department of Labor, Office of Apprenticeship and Training.

5.1.3 It involves manual, technical or mechanical skills and knowledge which require a minimum of two thousand (2,000) hours of on-the-job training, not including the time spent in Related Instruction.

5.1.4 It customarily requires Related Instruction to supplement the on-the-job training.

5.1.5 It involves the development of skills sufficiently broad enough to be applicable in similar occupations throughout the industry, rather than a restricted application to the products or services of any one company.

### 6.0 Standards of Apprenticeship

6.1 The following standards are prescribed for a Program.

6.1.1 The Program must include an organized, written plan delineating the terms and conditions of employment. The training and supervision of one or more Apprentices in an apprenticeable occupation must become the responsibility of the Sponsor who has undertaken to carry out the Apprentice's training program.

6.2 The standards must contain provisions concerning the following:

6.2.1 The employment and training of the Apprentice in a skilled occupation;

6.2.2 an equal opportunity pledge stating the recruitment, selection, employment and training of Apprentices during their apprenticeships shall be without discrimination based on: race, color, religion, national origin or sex. When applicable, an affirmative action plan in accordance with the State's requirements for federal purposes must be instituted;

6.2.3 the existence of a term of apprenticeship, not less than one year or two thousand (2,000) hours consistent with training requirements as established by industry practice;

6.2.4 an outline of the work processes in which the Apprentice will receive supervised work experience and

on-the-job training, and the allocation of the approximate time to be spent in each major process;

6.2.5 provision for organized related and supplemental instruction in technical subjects related to the trade. A minimum of one hundred forty-four (144) hours for each year of apprenticeship is required. Such instruction may be given in a classroom, through trade, industrial or approved correspondence courses of equivalent value or in other forms approved by the State Department of Labor, Office of Apprenticeship and Training;

6.2.6 a progressively increasing schedule of wage rates to be paid the Apprentice, consistent with the skill acquired which shall be expressed in percentages of the established Journeyperson's hourly wage;

6.2.7 Minimum Wage Progression for 1 through 7 year Apprentice Program as follows:

6.2.7.1 1 to 7 year programs

6.2.7.2 starting pay must be at least minimum wage

6.2.7.3 final period must be at least 85%

1 YEAR [OR] 2,000 HOUR APPRENTICESHIP PROGRAM:

1st 1,000 hours: 40%

2nd 1,000 hours: 85%

2 YEAR [OR] 4,000 HOUR APPRENTICESHIP PROGRAM:

1st 1,000 hours: 40%

2nd 1,000 hours: 51%

3rd 1,000 hours: 63%

4th 1,000 hours: 85%

3 YEAR [OR] 6,000 HOUR APPRENTICESHIP PROGRAM:

1st 1,000 hours: 40%

2nd 1,000 hours: 48%

3rd 1,000 hours: 57%

4th 1,000 hours: 65%

5th 1,000 hours: 74%

6th 1,000 hours: 85%

4 YEAR [OR] 8,000 HOUR APPRENTICESHIP PROGRAM:

1st 1,000 hours: 40%

2nd 1,000 hours: 46%

3rd 1,000 hours: 53%

4th 1,000 hours: 59%

5th 1,000 hours: 65%

6th 1,000 hours: 71%

7th 1,000 hours: 78%

8th 1,000 hours: 85%

5 YEAR [OR] 10,000 HOUR APPRENTICESHIP PROGRAM:

1st 1,000 hours: 40%

2nd 1,000 hours: 45%

3rd 1,000 hours: 50%

4th 1,000 hours: 55%

5th 1,000 hours: 60%

6th 1,000 hours: 65%

7th 1,000 hours: 70%

8th 1,000 hours: 74%

9th 1,000 hours: 79%

10th 1,000 hours: 85%

6 YEAR [OR] 10,000 HOUR APPRENTICESHIP PROGRAM:

1st 1,000 hours: 40%

2nd 1,000 hours: 44%

3rd 1,000 hours: 48%

4th 1,000 hours: 52%

5th 1,000 hours: 56%

6th 1,000 hours: 60%

7th 1,000 hours: 64%

8th 1,000 hours: 68%

9th 1,000 hours: 72%

10th 1,000 hours: 76%

11th 1,000 hours: 81%

12th 1,000 hours: 85%

7 YEAR [OR] 10,000 HOUR APPRENTICESHIP PROGRAM:

1st 1,000 hours: 40%

2nd 1,000 hours: 43%

3rd 1,000 hours: 47%

4th 1,000 hours: 50%

5th 1,000 hours: 54%

6th 1,000 hours: 57%

7th 1,000 hours: 61%

8th 1,000 hours: 64%

9th 1,000 hours: 68%

10th 1,000 hours: 71%

11th 1,000 hours: 74%

12th 1,000 hours: 78%

13th 1,000 hours: 81%

14th 1,000 hours: 85%

6.2.8 that the entry Apprentice wage rate shall not be less than the minimum prescribed by State statute or by the Fair Labor Standards Act, where applicable;

6.2.9 That the established Journeyperson's hourly rate applicable among all participating Employers be stated in dollars and cents. No Apprentice shall receive an hourly rate less than the percentage for the period in which he/she is serving applied to the established Journeyperson's rate unless the Sponsor has documented the reason for same in the individual Apprentice's progress report and has explained the reason for said action to the Apprentice and Registration Agency.

6.2.9.1 In no case other than sickness or injury on the part of the Apprentice, shall a Sponsor hold back an Apprentice's progression more than one period or wage increment without the written consent of the Administrator;

6.2.10 That the established Journeyperson's rate provided for by the Standards be reviewed and/or adjusted annually. Sponsors of Programs shall be required to give proof that all employees used in determining ratios of Apprentices to Journeypersons shall be receiving wages at least in the amount set for Journeypersons in their individual program standards, or are qualified to perform as Journey persons and must be paid at least the minimum journeyperson rate;

6.2.11 That the minimum hourly Apprentice wage rate paid during the last period of apprenticeship not be less than eighty-five (85) percent of the established Journeyperson wage rate. Wages covered by a collective bargaining agreement takes precedent over this section. However, wages may not be below the State's required minimum progression.

6.3 The Program must include a periodic review and evaluation of the Apprentice's progress in job performance and related instruction, and the maintenance of appropriate progress records.

6.4 The ratio of Apprentices to Journeypersons should be consistent with proper supervision, training and continuity of employment or applicable provisions in collective bargaining agreements.

6.4.1 The ratio of Apprentices to Journeypersons shall be one Apprentice up to each five (5) Journeypersons employed by the prospective Sponsor unless a different ratio based on an industry standard is contained in the signed Standards of Apprenticeship Agreement.

6.4.2 The following have been recognized to be the industry standard for the listed trades:

Ratio of Apprentice Journeypersons*

1 up to 4 Sheet Metal Worker

1 up to 4 Insulation Worker

1 up to 4 Asbestos Worker

1 up to 3 Industrial Maintenance Mechanic

1 up to 3 Plumbers/Pipefitters

1 up to 3 Electrician

1 up to 3 Precision Instrument Repairers

1 up to 3 Glaziers

1 up to 2 Roofers

1 up to 1 Sprinkler Fitters

* The ratio has no effect until the second apprentice is registered. Only one Journeyperson is necessary in any trade for the first Apprentice.

6.4.3 Exceptions.

6.4.3.1 If a collective bargaining agreement stipulates a ratio of Apprentices to Journeyperson, it shall prevail provided the Bargaining Ration is not lower than the State standard.

6.4.3.2 A deviation from the established standard may be granted by the Administrator upon written request after considering the needs of the plant and/or trade with consideration for growth, the availability of relevant training, and the opportunity for employment of skilled workers following the completion of their training. Such exception shall last no more than one year but may be renewed upon written request.

6.5 A probationary period shall be in relation to the full apprenticeship term with full credit toward completion of apprenticeship.

6.6 Adequate and safe equipment facilities for training and supervision and safety training for Apprentices on the job and in Related Instruction are required.

6.7 The required minimum qualifications for persons entering an Apprentice Program must be met.

6.8 Apprentices must sign an Agreement. The Agreement shall directly, or by reference, incorporate the standards of the Program as part of the Agreement.

6.9 Advance standing or credit up to 25% OJT hours of the particular trade term in question for previously acquired experience, training skills, or aptitude for all applicants equally, with commensurate wages for any accorded progression step may be granted. The granting of a greater amount of credit shall be set at the discretion of the Administrator based on supportive documentation submitted by the Sponsor. In no case shall more than one half of the particular trade term in question be granted unless the time in question has been spent in any state or federally registered program.

6.10 When a registered apprentice is no longer employed by a Sponsor, the Sponsor shall determine the time and training earned during his or her employment and send notice of such progress to the Apprenticeship and Training Section of the Delaware Department of Labor and to the apprentice in writing.

6.11 Transfer of Employer's training obligation through the sponsoring Committee if one exists and as warranted, to another Employer with consent of the Apprentice and the Committee or Program Sponsors, with full credit to the Apprentice for satisfactory time and training earned, may be afforded with written notice to, and approval of, the Registration Agency.

6.12 These Standards shall contain a statement of assurance of qualified training personnel.

6.13 There will be recognition for successful completion of apprenticeship evidenced by an appropriate certificate.

6.14 These Standards shall contain proper identification of the Registration Agency, being the Department of Labor, Division of ~~Employment and Training~~ Industrial Affairs, Office of Apprenticeship and Training.

6.15 There will be a provision for the Registration, Cancellation and Deregistration of the Program, and a requirement for the prompt submission of any modification or amendment thereto.

6.16 There will be provisions for Registration of Agreements, modifications and amendments, notice to the Division of persons who have successfully completed Programs, and notice of Cancellations, suspensions and terminations of Agreements an causes therefore.

6.17 There will be a provision giving authority for the termination of an Agreement during the probationary period by either party without stated cause.

6.18 There will be provisions for not less than five (5) days notice to Apprentices of any proposed adverse action and cause therefore with stated opportunity to Apprentices during such period for corrective action.

6.19 There will be provisions for a grievance procedure, and the name and address of the appropriate authority under the program to receive, process and make disposition of complaints.

6.20 There will be provisions for recording and maintaining all records concerning apprenticeships as may be required by the State or Federal law.

6.21 There will be provisions for a participating Employer's Agreement.

6.22 There will be funding formula providing for the equitable participation of each participating Employer in funding of a group Program where applicable.

6.23 All Apprenticeship Standards must contain articles necessary to comply with federal laws, regulations and rules pertaining to apprenticeship.

6.24 Programs and Standards of Employers and unions in other than the building and construction industry which jointly form a sponsoring entity on a multi-state basis and are registered pursuant to all requirements of this part by any recognized State apprenticeship agency shall be accorded Registration of approval reciprocity by the Delaware Department of Labor if such reciprocity is requested by the sponsoring entity. However, reciprocity will not be granted in the Building and Construction industry based on Title 29 CFR 29 Section 12(b) unless a "memorandum of understanding" has been signed by an individual state and the state of Delaware.

**3 DE Reg. 641 (11/1/99)**

**5 DE Reg. 204 (7/1/01)**

**8 DE Reg. 468 (9/1/04)**

**9 DE Reg. 806 (11/1/05)**

**7.0 Apprenticeship Agreement**

7.1 The Apprenticeship Agreement shall contain:

7.1.1 the names and signatures of the contracting parties (Apprentice and the program Sponsor or Employer), and the signature of a parent or guardian if the Apprentice is a minor;

7.1.2 the date of birth of the Apprentice;

7.1.3 the name and address of the program Sponsor and the Registrant;

7.1.4 the Apprentice's social security number;

7.1.5 a statement of the trade or craft which the Apprentice is to be taught, and the beginning date and term (duration) of apprenticeship;

7.1.6 the number of hours to be spent by the Apprentice in work on the job;

7.1.7 the number of hours to be spent in Related and Supplemental Instruction is recommended to be not less than one hundred forty-four (144) hours per year;

7.1.8 provisions relating to a specific period of probation during which the Apprenticeship Agreement may be terminated by either party to the Agreement upon written notice to the Registrant;

7.1.9 provisions that, after the probationary period, the Agreement may be suspended, canceled or terminated for cause, with due notice to the Apprentice and a reasonable opportunity for corrective action, and with written notice to the Apprentice and the Registrant of the final action taken;

7.1.10 a reference incorporating, as part of the Agreement, the standards of the Apprenticeship Program as it exists on the date of the Agreement or as it may be amended during the period of the Agreement;

7.1.11 a statement that the Apprentice will be accorded equal opportunity in all phases of apprenticeship employment and training without discrimination based on race, color, religion, national origin, marital status, or sex, or disability;

7.1.12 a statement that, if an Employer is unable to fulfill his obligation under his Agreement, the Agreement

may, with consent of the Apprentice and Committee, if one exists, be transferred to another Employer under a Registered Program with written notice of the transfer to the Registrant, and with full credit to the Apprentice for satisfactory time and training earned;

7.1.13 the name and address of the appropriate authority, if any, designated under the program to receive, process and make disposition of controversies or differences which cannot be adjusted locally or resolved in accordance with the established trade procedure or applicable collective bargaining provisions;

7.1.14 a statement setting forth a schedule of work processes in the trade or industry in which the Apprentice is to be trained and the approximate time to be spent at each process;

7.1.15 a statement of the graduated scale of wages to be paid the Apprentice and whether or not the required school time shall be compensated;

7.1.16 a statement that in the event the Registration of the Program has been Canceled or revoked, the Apprentice will be notified within fifteen (15) days of the event.

**3 DE Reg. 641 (11/1/99)**

## 8.0 Complaints

8.1 Any controversy or difference arising under an Agreement which cannot be resolved locally, or which is not covered by a collective bargaining agreement, may be submitted by an Apprentice or his/her authorized representative to the State Registration Agency for review. Matters covered by a collective bargaining agreement, however, shall be submitted and processed in accordance with the procedures therein provided.

8.2 The complaint shall be in writing, signed by the complainant, and submitted by the Apprentice or his/her authorized representative within sixty (60) days of receipt of local decision. The complaint shall set forth the specific problem, including all relevant facts and circumstances. Copies of all pertinent documents and correspondence shall accompany the complaint.

**3 DE Reg. 641 (11/1/99)**

## 9.0 Related Instruction Requirement

9.1 Regulations concerning Apprentices "attendance and tardiness" policy for related instruction.

9.1.1 A registered Apprentice who misses seven (7) six (6) classes while enrolled in a related studies program at any of the vocational schools in the three (3) counties of the State of Delaware will be dropped from school. This will result in their Apprenticeship Agreement being terminated by their Sponsor and/or State Registration Agency.

9.1.2 An absence will result when an Apprentice either arrives late or leaves early three (3) times. However, School District Officials may bring to the Administrator's attention, individual cases that may have experienced extenuating circumstances. With the Administrator's approval, such individuals may be granted exemption from this attendance policy.

9.1.3 Courses of fewer sessions will be prorated. Instructors will inform Apprentices of allowable absences.

9.1.4 If you are a Registered Apprentice who is enrolled through a trade union, trade society or any other organization that stipulates attendance rules more stringent than the above, then you are required to follow those regulations.

9.1.5 Related Instruction that is delivered through a state approved "in-house program", correspondence courses or other systems of equivalent value will require the Apprentice to produce a document detailing satisfactory participation and completion.

**3 DE Reg. 641 (11/1/99)**

**10.0 Deregistration by State Registered Program**

10.1 It is the policy of this State to discourage violations of the law or these rules and regulations by limiting or revoking the privilege to operate programs when Sponsors demonstrate an indifference to these requirements.

10.2 Where it appears to the Administrator that a program is not being operated in accordance with federal or state law or these rules and regulations, the Administrator shall so notify the Sponsor in writing stating the deficiency and providing a period for corrective action not to exceed 10 days. Such notice shall be sent by certified mail, return receipt requested. The Sponsor shall respond in writing to the letter within 10 days of receipt.

10.3 If the Sponsor fails to correct a deficiency after notice by the Administrator under 10.2, deregistration proceedings will be undertaken.

10.3.1 Voluntary deregistration is available to a Sponsor upon written request to the Administrator. Within fifteen (15) working days of the effective date of deregistration demonstrated by the acknowledgment of the Administrator, the Sponsor must notify all Apprentices of such deregistration, the effective date, and that the deregistration automatically deprives the apprentice of his/her individual registration.

10.3.2 Involuntary deregistration is initiated by the Administrator as follows:

10.3.2.1 If the Sponsor fails to respond to the notice of deficiency, the Administrator shall advise the Sponsor by certified mail, return receipt requested, that the program will be recommended for deregistration unless within 10 days the Sponsor requests a hearing.

10.3.2.2 If the response by the Sponsor to the notice is insufficient to correct the deficiency, the Administrator shall so advise the sponsor by certified mail, return receipt requested. Said letter shall advise the Sponsor that the program will be recommended for deregistration unless within 10 days the Sponsor requests a hearing.

10.3.2.3 If no hearing is timely requested, the Administrator will recommend deregistration to the Secretary. The decision of the Secretary is final and no further appeal is provided. The sponsor will be notified of the effective date of deregistration. In addition, a decision of deregistration and its effective date will be mailed to all Apprentices registered in the program.

10.3.2.4 All recommendations for involuntary deregistration as a result of violations of the Rules and Regulations will include a recommended period of deregistration of up to three (3) years.

**3 DE Reg. 641 (11/1/99)**

**4 DE Reg. 1852 (5/1/01)**

**11.0 Hearings on Deregistration**

11.1 A deregistration hearing will be scheduled before the Council on Apprenticeship and Training within 45 days of receipt of a timely request by the Sponsor.

11.2 Notice shall be in accord with the provisions of the Administrative Procedures Act.

11.3 Each party shall have the right to present evidence, to be represented by counsel, and to cross-examine witnesses.

11.4 A record from which a verbatim transcript can be prepared shall be made of the hearing. A party may

**10 DE Reg. 1021 (12/01/06) (Final)**

request a transcript at his or her expense.

11.5 At the conclusion of the hearing, the Council will determine, by a majority of the quorum, its recommendation to the Secretary.

11.6 The Council shall submit its recommended findings of fact, conclusions of law, and decision to the Secretary. Said recommendations may be authenticated by the chairperson.

11.7 The decision of the Secretary is final and no further appeal is provided. The decision will by sent by certified mail to the Sponsor. In addition, a decision of deregistration and its effective date will be mailed to all Apprentices registered in the program.

**3 DE Reg. 641 (11/1/99)**

**4 DE Reg. 1852 (5/1/01)**

### 12.0 Reinstatement of Program Registration

12.1 Program deregistered pursuant to this chapter may be reinstated upon presentation of adequate evidence that the Program is operating in accordance with this chapter. Such evidence shall be presented to the Apprenticeship and Training Council, which shall make a recommendation based on said evidence, past records and any other data deemed appropriate. After such presentation, the Council shall make a recommendation to the Secretary as to whether the Program should be reinstated. The Secretary's decision shall be final and binding.

**3 DE Reg. 641 (11/1/99)**

### 13.0 Program Registration Denial

13.1 Grounds for denial of program registration include, but are not limited to, violations of apprenticeship standards or of federal or state labor laws in any state by the applicant.

13.2 Any proposed Sponsor may, within fifteen (15) working days, request a hearing before the Apprenticeship and Training Council. If the proposed Sponsor requests a hearing, the Administrator shall advise the chairman of the Council, who shall convene the Council, for a hearing for the purpose of making a determination on the basis of the record and proposed findings of the Office of Apprenticeship and Training. This determination shall be subject to review and approval by the Secretary, whose decision shall be final and binding.

13.3 An applicant who has been denied registration of a program may reapply by demonstrating to the Council at a hearing that the deficiencies that led to the denial of registration have been remedied and the program will operate in accordance with all applicable laws and rules in a manner that safeguards the welfare of the apprentices. The Council will make a recommendation to the Secretary, whose decision shall be final and binding.

**9 DE Reg. 806 (11/1/05)**

### 14.0 Amendment to the Regulations in this Part

14.1 The Secretary may, at any time upon his/her own motion or upon written request of any interested person setting forth reasonable grounds therefore, and after opportunity has been given to interested persons to present their views, amend or revoke any of the terms of the regulations contained in this part.

**3 DE Reg. 641 (11/1/99)**

**10 DE Reg. 64 (07/01/06)**

# EXHIBIT G

U.S. DEPARTMENT OF LABOR
EMPLOYMENT AND TRAINING ADMINISTRATION
WASHINGTON, D.C.  20213



July 21, 1977

Honorable Donald P. Whiteley
Secretary of Labor
801 West Street
Wilmington, Delaware  19801

Dear Mr. Secretary:

By authorization of the Secretary of Labor and in
accordance with Title 29 CFR Part 29.12, I am pleased
to grant recognition to the State of Delaware as the
appropriate body for State registration and/or
approval of local apprenticeship programs and agree-
ments for Federal purposes.

I am particularly pleased that we can and will now
work together, in partnership, under the conditions
of Title 29 CFR Part 29 to formulate and promote
labor standards that will protect the apprentice and
provide for the skilled work force necessary for the
welfare of the States and the Nation.

Sincerely,


HUGH C. MURPHY
Administrator
Bureau of Apprenticeship
and Training

cc: Schneider

# EXHIBIT H

# ARIZONA APPRENTICESHIP SYSTEM
# REGULATIONS

## TABLE OF CONTENTS

1.   Introduction...............................................................................................................4

2.   Definitions ................................................................................................................5

3.   Arizona Apprenticeship Advisory Committee (AAAC) Organization......................8

    3.1   Membership ...................................................................................................8
    3.2   Appointment of AAAC Committee Chair.......................................................8
    3.3   Term ..............................................................................................................8
    3.4   Meetings........................................................................................................8
    3.5   Technical Training and Capacity Building .....................................................9

4.   Parliamentary Procedure and Order of Business .......................................................9

5.   Formulation of Policy................................................................................................9

6.   State Official(s) Empowered to Direct the Arizona Apprenticeship System ...........10

    6.1   Authority of the Director of Arizona Department of Commerce...................10
    6.2   Duties of the Director of Arizona Department of Commerce ........................10
    6.3   Duties of the AAAC .....................................................................................11
    6.4   United Stated Department of Labor (USDOL), Bureau of Apprenticeship
        and Training (BAT) ......................................................................................11
    6.5   Annual Apprenticeship Meeting and Awards Recognition
        Ceremony .....................................................................................................12

7.   Apprenticeship Program Committees.......................................................................12
    7.1   Organization of Apprenticeship Program Committees..................................12
    7.2   Duties of the Program Committees...............................................................12

8.   Apprenticeship Standards.........................................................................................13

    8.1   General Policy ..............................................................................................13
    8.2   Standards of Apprenticeship ........................................................................13
    8.3   Review of Standards ....................................................................................16
    8.4   Approval Process..........................................................................................16
    8.5   Cancellation/Deregistration .........................................................................17
    8.6   Hearings.......................................................................................................18
    8.7   Waivers ........................................................................................................18

9.   Program Reviews......................................................................................................19

    9.1   General Policy ..............................................................................................19
    9.2   Complaints ...................................................................................................19
    9.3   Methods of Review.......................................................................................20
    9.4   Purpose of Program Review and Technical Service ......................................20

10.   Apprentice Agreements of Indentures for Approval.................................................20

    10.1   Apprentice Agreement Approval .................................................................20
    10.2   Requirements ...............................................................................................20

# ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

11.    Related Instruction for Apprentices ........................................................................................22

    11.1    General Policy ....................................................................................................22
    11.2    Planned Related Instruction ..............................................................................23
    11.3    Public Schools and Other Educational Facilities ..............................................23
    11.4    Responsibility for Related Instruction ..............................................................23

12.    Apprenticeship Wages ............................................................................................................23

13.    Certificate of Completion of Apprenticeship .........................................................................23

    13.1    General Policy ....................................................................................................23

14.    Special Certificates ................................................................................................................24

    14.1    General Policy ....................................................................................................24
    14.2    Certificate of Meritorious Service .....................................................................24
    14.3    Certificate of Appreciation ................................................................................24
    14.4    Certificate of Special Recognition .....................................................................24
    14.5    Certificate of Outstanding Apprentice ..............................................................25
    14.6    Certificate of Exemplary Program Achievement ...............................................25

15.    Service to Apprenticeship Programs .......................................................................................25

    15.1    General Policy ....................................................................................................25
    15.2    Development of Programs ..................................................................................25
    15.3    Reciprocity .........................................................................................................25

# ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

16.    Equal Employment Opportunity in Apprenticeship Training ................................................27

16.1    Scope and Purpose .................................................................................27
16.2    Authority to Adopt Regulations .................................................................27
16.3    Equal Opportunity Standards ...................................................................27
16.4    Affirmative Action Plans .........................................................................29
16.5    Selection of Apprentices .........................................................................34
16.6    Existing List of Eligibles and Public Notice ..................................................41
16.7    Records.................................................................................................42
16.8    Compliance Reviews................................................................................43
16.9    Noncompliance with Federal and State
         Equal Opportunity Requirements..............................................................44
16.10   Complaint Procedure ..............................................................................44
16.11   Adjustments in Schedule for Compliance Review or
         Complaint Processing .............................................................................45
16.12   Sanctions..............................................................................................46
16.13   Hearings...............................................................................................46
16.14   Reinstatement of Program Registration ......................................................47
16.15   Intimidatory or Retaliatory Acts ...............................................................47
16.16   Non-Discrimination ...............................................................................47
16.17   Exemptions...........................................................................................48
16.18   Effective Date .......................................................................................48

         Appendix "A"- Complaint Procedure ........................................................A-1

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

## 1. INTRODUCTION

The Arizona Apprenticeship system is a voluntary, industry-driven system of on-the-job training and related technical instruction, approved by the State of Arizona, sponsored by employers, employer associations, and jointly by management and labor. An apprentice, as an employee, receives supervised, structured, on-the-job work experience combined with related technical instruction in a specific occupation.

The Governor's Council on Workforce Policy (GCWP) is Arizona's Human Resource Investment Council. It is the goal of the GCWP to provide business and industry with a vehicle to implement and ensure quality training in order to create the skilled workforce necessary to maintain and enhance Arizona's economy.

To ensure that Apprenticeship is promoted and recognized as an important employment and training resource for Arizona's business, industry and citizens, the Arizona Apprenticeship Advisory Committee of the GCWP is established. On behalf of Arizona, the Arizona Apprenticeship Advisory Committee will coordinate, advise, and recommend approval of procedures for the registration of Apprenticeship programs, and establish quality thresholds of employers and employees in a sound, voluntary system of apprenticeship for men and women in skilled trades and occupations.

The Registration Agency will coordinate its work and approval of standards of apprenticeship and apprentice agreements with the adopted procedures and regulations of the Bureau of Apprenticeship and Training, U.S. Department of Labor, in order to bring about a uniform system of apprenticeship throughout the United States.

The National Apprenticeship Act of 1937, Section 1 (29 U.S.C. 50), authorizes and directs the Secretary of Labor to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices, to bring together employers and labor for the formulation of programs of apprenticeship, and to cooperate with state agencies engaged in the formulation and promotion of standards of apprenticeship.

The Equal Employment Opportunity in Apprenticeship - State Plan (29 CFR part 30) is an integral part of the Arizona Apprenticeship System State Plan, Section 16.0 herein attached.

# ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

## 2. DEFINITIONS

a. "APPRENTICE" means a person at least sixteen years of age who has entered into a written Apprentice Agreement with the sponsor of a registered apprenticeship program. For the purpose of this document, apprentice and intern are synonymous.

b. "APPRENTICE AGREEMENT" means the apprenticeship agreement form which is a written agreement between an apprentice and either his employer, or an apprenticeship committee acting as agent for employer(s), which agreement contains the terms and conditions of the employment and training of the apprentice.

c. "APPRENTICESHIP DIRECTOR" means the Director of the Arizona Apprenticeship Division (AAD), ADOC.

d. "APPRENTICESHIP PROGRAM" means a program registered by the Registration Agency and is evidenced by a Certificate of Registration as meeting the standards for apprenticeship.

e. "APPRENTICESHIP PROGRAM COMMITTEE" means those persons designated by the sponsor to assist with the oversight and administration of the program.

f. "ARIZONA APPRENTICESHIP DIVISION (AAD)" means the office designated by the Director of the Arizona Department of Commerce to act as the Registration Agency responsible for staffing the day-to-day operation of Arizona's Apprenticeship Program.

g. "ARIZONA APPRENTICESHIP ADVISORY COMMITTEE (AAAC/Committee)" means Arizona's State Apprenticeship Council as defined in CFR 29 Part 29.12(2) (a) (2) and (b) (2).

h. "ARIZONA APPRENTICESHIP SYSTEM" consists of the Governor's Council on Workforce Policy, Arizona Apprenticeship Advisory Committee, which acts as the State Apprenticeship Council; the Arizona Department of Commerce, Office of Workforce Development; and the Arizona Department of Commerce Apprenticeship Division, the designated agency to register and administer Arizona's Apprenticeship Program.

i. "BAT" means the Bureau of Apprenticeship and Training (BAT).

j. "BUREAU" means the United States Department of Labor (USDOL), Bureau of Apprenticeship and Training (BAT).

k. "COUNCIL" means the Governor's Council on Workforce Policy (GCWP), Arizona's Human Resource Investment Council (HRIC).

l. "DEPARTMENT" means the U.S. Department of Labor

m. "DIRECTOR" means the Director of the Arizona Department of Commerce (ADOC).

n. "EMPLOYER" means any person or organization employing an apprentice whether or not the apprentice is enrolled with such person or organization or with some other person or organization.

o. "OATELS" means the Office of Apprenticeship Training, Employer and Labor Services in Washington, D.C.

# ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

p.  "REGISTRATION AGENCY" means the Arizona Department of Commerce Apprenticeship Division, the designated agency to register and administer Arizona's Apprenticeship Program.

q.  "REGISTERED APPRENTICESHIP PROGRAM" means a program with an established plan containing all terms and conditions for the qualification, recruitment, selection, employment and training of apprentices, including the requirement for a written apprentice agreement. The plan and written apprentice agreement must be approved by the Registration Agency.

r.  "SPONSOR" means any employer, association, or management/labor committee who chooses to develop an apprenticeship program for training employees and has the program registered by the state registration agency.

ARIZONA APPRENTICESHIP SYSTEM
REGULATIONS

# LABOR STANDARDS FOR THE REGISTRATION OF APPRENTICESHIP PROGRAMS [1]

---

[1] The following section meets CFR29, Part 29 – Labor Standards for the Registration of Apprenticeship Programs

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

### 3. ARIZONA APPRENTICESHIP ADVISORY COMMITTEE (AAAC) ORGANIZATION

#### 3.1 Membership

The Arizona Apprenticeship Advisory Committee consists of persons who are familiar with workforce development and the Arizona apprenticeship system. The Council will appoint a thirteen (13) member standing Arizona Apprenticeship Advisory Committee consisting of: four (4) representatives from employee organizations; four (4) representatives from business and industry; one (1) representative from a postsecondary institution; one (1) representative from a workforce development organization; one (1) representative from the Arizona Industrial Commission; one (1) non-voting representative from the Arizona Department of Education; and one (1) non-voting representative from the Bureau of Apprenticeship and Training. The Council will appoint a chair from the Committee's voting membership. The Arizona Apprenticeship Advisory Committee will carry out the duties and functions required of a state apprenticeship council.

#### 3.2 Appointment of Arizona Apprenticeship Advisory Committee Chair

At the call of and subject to the approval of the Governor, the GCWP chair will designate a member from the Arizona Apprenticeship Advisory Committee to act as chair. If the chair resigns from the Committee or if the position of committee chair becomes vacant before the tenure of office is completed, the GCWP chairperson will then appoint a successor for the unexpired term of office.

#### 3.3 Term

Members will initially serve for staggered terms of one, two, and three years. Upon expiration of the initial terms, appointments will be for three-year terms. Initial appointments of representatives of business and industry and organized labor will be for a minimum of two years.

#### 3.4 Meetings

The Committee will hold regular meetings to be held bi-monthly or as called by the Committee Chair. All Committee meetings will be open to the general public and adhere to State Open Meeting Laws.

3.4.1 During a regular meeting at least once each year, the Committee will adopt an annual resolution stating its procedure for giving a reasonable public notice of regular and special meetings as is required by the State Open Meeting Law.

3.4.2 All meetings will be open to all interested parties and to the public, with the exception of meetings that may be closed to the public as provided for in the State Open Meeting Law.

#### 3.5 Technical Training and Capacity Building

To ensure that the Arizona Apprenticeship Advisory Committee members are familiar with apprenticeable occupations and the Arizona Apprenticeship System, they will be required to receive training on federal labor standards for

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

registration, and Arizona's regulations that govern the Arizona Apprenticeship Program. Training will continue to be provided by the United States Department of Labor, Bureau of Apprenticeship and Training staff; the Arizona Department of Commerce Apprenticeship Division staff; and the "Extended Staff".

4.      **PARLIAMENTARY PROCEDURE AND ORDER OF BUSINESS**

Roberts Rules of Order, revised, will govern the proceedings of the Committee, unless otherwise specified in these regulations.

The order of business for all meetings of the Committee and its subcommittees will be:

  a.   Reading of the minutes of previous meeting
  b.   Communications
  c.   Reports of:
         (1)   Council Members
         (2)   Subcommittees
         (3)   Assistant Deputy Director
  d.   Unfinished Business
  e.   New Business
  f.   Call to the Public
  g.   Adjournment

5.      **FORMULATION OF POLICY**

The Committee recommends to the Director of the Department of Commerce or his/her designee general policies, principles, and standards under which the agency operates and interprets these principles and standards. It recommends the areas of emphasis to be placed on apprenticeship activities; represents the point of view of management and labor and the public with respect to challenges involving apprenticeship; serves as a liaison with management and labor and, in this capacity, helps to promote apprenticeship. The Chairman of the Arizona Apprenticeship shall be responsible for communicating the Committee's recommendations to the Department.

6.      **STATE OFFICIAL(S) EMPOWERED TO DIRECT THE ARIZONA APPRENTICESHIP SYSTEM**

6.1     **Authority of the Director of the Arizona Department of Commerce**

The Director of the Arizona Department of Commerce will have the authority and responsibility for the oversight, coordination, and operation of Arizona's workforce development system. Included in this system is Arizona's apprenticeship system.

With the advisement of the AAAC, the Director of Commerce has the authority to register and deregister standards for apprenticeship programs and apprentice agreements.

6.2     **Duties of the Director of the Arizona Department of Commerce**

The Director of the Arizona Department of Commerce or his/her designee has the authority to register and deregister standards for apprenticeship programs and apprentice agreements. The duties of the Director or his/her designee include but are not limited to:

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

6.2.1 Encouraging apprenticeship training through personal contact with management and labor groups.

6.2.2 Coordinating and cooperating with other state agencies and the Federal Apprenticeship Program.

6.2.3 Protecting the welfare of the apprentices.

6.2.4 Developing procedures, keeping records and statistics.

6.2.5 Managing public information pertaining to apprenticeship training for the purpose of public education.

6.2.6 Monitoring of training programs in apprenticeable occupations under the various federal and/or state training and Vocational Education Acts, in cooperation with other state and federal agencies.

6.2.7 Carrying out the policies recommended by the Committee.

6.2.8 Notifying all apprenticeship program sponsors of new or changed policies recommended by the Committee and approved by the Director or his/her designee.

**6.3     Duties of the Arizona Apprenticeship Advisory Committee**

One of the responsibilities of the Arizona Apprenticeship Advisory Committee is to recommend to the Director of the Department of Commerce or his/her designee policies, monitoring procedures, rules and regulations relative to the apprenticeship program in accordance with the intent and purpose of the federal law.

The Committee encourages and promotes the development, expansion and improvement of apprenticeship and training programs through the voluntary cooperation of labor and management by establishing apprenticeship standards in all skilled trades and occupations as recognized by the U.S. Department of Labor and the Arizona Department of Commerce which safeguards the welfare of the apprentice and provides for equal employment opportunities for men and women to obtain on-the-job training in the skilled trades with supplemental instruction in related technical subjects which will equip them for profitable employment and good citizenship.

The Arizona Apprenticeship Advisory Committee will:

6.3.1 Recommend the adoption of policies for the effective administration of this article.

6.3.2 Recommend standards for apprenticeship agreements which in no event will be less than those prescribed by this article.

6.3.3 Recommend the adoption of rules and regulations necessary to carry out the intent and purpose of this article.

6.3.4 Perform other functions relative to apprenticeship as the Governor's Council on Workforce Policy (GCWP) directs.

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

**6.4     United States Department of Labor (USDOL), Bureau of Apprenticeship and Training (BAT)**

It will be the responsibility of the GCWP to coordinate the activities and objectives of the Committee with those of the staff of the BAT assigned to Arizona. Mutual understanding and good faith on the part of the state and federal agencies is essential to the advancement of parallel interests of the state and federal governments.

### 6.4.1    Advisor to the Arizona Apprenticeship Advisory Committee

A representative from the Arizona BAT staff will be appointed as a non-voting member to the Arizona Apprenticeship Advisory Committee to offer advice, support, and assistance.

**6.5     Annual Apprenticeship Meeting and Awards Recognition Ceremony**

The Committee may sponsor an annual state apprenticeship conference and annual awards recognition ceremony. The annual conference may be held in conjunction with the State Conference on Vocational Education or a related conference.

## 7.    APPRENTICESHIP PROGRAM COMMITTEES

**7.1     Organization of Apprenticeship Program Committees**

An Apprenticeship Program Committee consists of persons designated by the program sponsor to assist in the administration and oversight of the apprenticeship program.

In the case of a joint labor-management apprenticeship program sponsor, the Program Committee will consist of an equal number of employer and employee representatives appointed by the representative employer and employee organization in the trade or group of trades affected.

In the case of a non-joint apprenticeship program sponsor, the sponsor may submit Standards of Apprenticeship to the Registration Agency for approval without the requirement of a committee. Sponsors without an Apprenticeship Program Committee will be responsible for fulfilling the requirements of Section 8 through 8.7.

**7.2     Duties of the Program Committee**

Duties of the Apprenticeship Program Committees will be in accordance with the procedures contained in the Apprenticeship Standards as approved by the Registration Agency. Those duties will include, but are not limited to the following:

### 7.2.1    Verifying that the recruitment, selection, employment and training of apprentices, during their apprenticeship, will be without discrimination in regard to race, color, religion, national origin or sex.

### 7.2.2    Receiving applications for apprenticeship, interviewing applicants and passing on their qualifications, or designating an agency to perform these functions.

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

7.2.3    Verifying that every apprentice is placed under an Apprentice Agreement and that all Apprentice Agreements are properly registered with the Registration Agency.

7.2.4    Ensuring apprentices are given a variety of work experiences and are adequately instructed and supervised.

7.2.5    Maintaining adequate records on all apprentices showing their progress in the classroom and on-the-job.

## 8.    APPRENTICESHIP STANDARDS

### 8.1    General Policy

The Registration Agency recognizes, as essential for a sound apprenticeship program, that the following criteria will be stipulated in Apprenticeship Standards.

### 8.2    Standards of Apprenticeship

Apprenticeship program standards, to be eligible for registration/approval by the Registration Agency, will conform to the following requirements:

a.    An organized, written plan embodying the terms and conditions of employment, training, and supervision of one or more apprentices in the apprenticeable occupation, as defined in this part, and subscribed to by a sponsor who has undertaken to carry out the apprentices' training program;

b.    These standards contain the equal opportunity pledge prescribed in 29 CFR 30.3(b) and, when applicable, an affirmative action plan in accordance with 29 CFR 30.4, a selection method authorized in 29 CFR 30.5, or similar requirements expressed in a State Plan for Equal Employment Opportunity (EEO) in Apprenticeship, adopted pursuant to 29 CFR Part 30 and approved by the Registration Agency, and provisions concerning the following:

(1)    The employment and training of the apprentice in a skilled trade;

(2)    A term of apprenticeship, with not less than 2,000 hours of work experience, consistent with training requirements as established by industry practice;

(3)    An outline of the work processes in which the apprentice will receive supervised work experience and training on the job, and the allocation of the approximate time to be spent in each major process;

(4)    Provision for organized, related and supplemental instruction in technical subjects related to the trade. A minimum of 144 hours for each year of apprenticeship is required. Such instruction may be given in a classroom through trade, industrial courses or by correspondence courses of equivalent value, or other forms of self-study approved by the registration/approval agency;

(5)    A progressively increasing schedule of wages to be paid the apprentice, consistent with the skill acquired. The entry wage will be not less than the minimum wage prescribed by the Fair Labor

12

## ARIZONA APPRENTICESHIP SYSTEM
### REGULATIONS

Standards Act, where applicable, unless a higher wage is required by other applicable federal law, state law, respective regulations, or by collective bargaining agreement;

(6)    Periodic review and evaluation of the apprentice's progress in job performance and related instruction; and the maintenance of appropriate progress records;

(7)    The numeric ratio of apprentices to journeyman consistent with proper supervision, training, safety and continuity of employment and applicable provisions in collective bargaining agreements, except where such ratios are expressly prohibited by the collective bargaining agreements. The ratio language will be specific and clear as to application in terms of job site, workforce, department or plant;

(8)    A probationary period reasonable in relation to the full apprenticeship term, with full credit given for such period toward completion of apprenticeship;

(9)    Adequate and safe equipment and facilities for training and supervision, and safety training of apprentices on the job and in related instruction;

(10)   The minimum qualifications required by a sponsor for persons entering the apprenticeship program, with an eligible starting age not less than 16 years;

(11)   The placement of an apprentice under a written apprentice agreement as required by the Arizona Apprenticeship System Regulations, or the Bureau where no such state law or regulation exists. The agreements will directly, or by reference, incorporate the standards of the program as part of the agreement;

(12)   The granting of advanced standing or credit for previously acquired experience, training, or skills for all applicants equally, with commensurate wages for any progression step so granted;

(13)   The transfer of an employer's training obligation when the employer is unable to fulfill his obligation under the apprentice agreement to another employer under the same program with consent of the apprentice and the apprenticeship program committee or program sponsor;

(14)   Assurance of qualified training personnel and adequate supervision on the job;

(15)   Recognition for successful completion of apprenticeship, evidenced by an appropriate certificate;

(16)   Identification of the registration agency;

(17)   Provision for the registration, cancellation and deregistration of the program; and requirement for the prompt submission of any modification or amendment thereto;

13

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

(18)  Provision for registration of apprentice agreements, modifications, and amendments; notice to the registration office of persons who have successfully completed apprenticeship programs; and notice of cancellations, suspensions and terminations of apprentice agreements and causes thereof;

(19)  Authority for the termination of an apprenticeship agreement during the probationary period by either party without stated cause;

(20)  A statement that the program will be conducted, operated and administered in conformity with applicable provisions of 29 CFR Part 30, as amended, or the Equal Employment Opportunity in Apprenticeship – State Plan statement as outlined in section 16 of these regulations adopted pursuant to 29 CFR part 30, and approved by the Bureau;

(21)  Name and address of the appropriate authority under the program to receive, process and make disposition of complaints; and

(22)  Recording and maintenance of all records concerning apprenticeship as may be required by the Bureau or recognized State Apprenticeship Agency and other applicable law.

8.3    **Review of Standards**

New standards or revisions of existing standards will be submitted to the Registration Agency. The Registration Agency will review the standards for compliance with Title 29 CFR Part 29 and 30 if applicable. Standards submitted to the Registration Agency will be forwarded to BAT after their review. The BAT State Director will forward the signed standards with requested copies to the Registration Agency with a notation that the standards either meet or do not meet the federal regulations.

8.4    **Approval Process**

The Registration Agency will approve Apprenticeship Standards for an approved trade or occupation, provided that the standards meet or exceed federal and state standards. A certificate of registration will be issued to the program sponsor.

The Registration Agency, when approving Standards of Apprenticeship, will not approve standards which contain language governing the wages, or working conditions, or employment, or fringe benefits for journeymen.

The Registration Agency's approved list of occupations or trades is the same list which has been approved by the BAT, USDOL.

In approving standards, the Registration Agency will conform to the Fair Labor Standards Act as a minimum wage for apprentices. Determination as to whether a program comes under the Fair Labor Standards Act will be the responsibility of the Federal Wage and Hour Division, Employment Standards Administration.

8.4.1    **Probationary Approval**

New programs recommended for approval by both the Registration Agency and BAT will be given probationary approval for a period of one year.

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

Technical assistance will be provided for new programs. All new programs will be reviewed for quality and findings will be filed with the Registration Agency. Programs not in operation or not conforming to regulations during the probationary approval period will be recommended to the Registration Agency for deregistration procedures. All findings will be reported to the Arizona Apprenticeship Advisory Committee for action.

The Registration Agency will approve Apprenticeship Standards that meet or exceed the minimum requirements outlined in Section 8.2 of this article. Standards will be reviewed, approved or disapproved, then returned to the BAT Apprenticeship and Training Representative (ATR) responsible for the program.

### 8.4.2    Permanent Approval Status

Upon satisfactory completion of the probationary requirements, the apprenticeship standards will be returned to the Registration Agency for permanent approval status. The Apprenticeship Program Committee will also be notified of the permanent approval status.

## 8.5    Cancellation/Deregistration

Apprenticeship standards for any program may be canceled by the Registration Agency as follows:

a.  A voluntary action in writing by the program sponsor stating its request and effective date of cancellation;

b.  The programs identified by the Registration Agency to be inactive or no longer in position to operate the program;

c.  When there is reasonable cause that the program is not being administered, conducted or operated in accordance with applicable apprenticeship laws, rules and regulations or their approved/registered standards;

d.  When there is reasonable cause that the program is in violation of the EEO requirements 29 CFR 30, as amended;

e.  Cancellation of standards of apprenticeship will automatically cancel all apprentice agreements registered under said standards; the sponsor will notify all apprentices of this action within 15 days.

The Registration Agency will notify the program sponsor of the proposed deregistration action to be taken, stating the reason that has become evident. The sponsor may be granted 30 days to take corrective action to retain registration.

A program deregistered for cause may be reinstated upon presentation of adequate evidence that the program is operating in accordance with the applicable laws, rules and regulations.

# ARIZONA APPRENTICESHIP SYSTEM
# REGULATIONS

**8.6    Hearings**

If the sponsor requests a hearing, the request will be made in writing to the Registration Agency within fifteen (15) days of receipt of the notice of pending deregistration action.    The Registration Agency will process this request in accordance with the established procedure as follows:

Within ten (10) days of receipt of a request for a hearing, the Registration Agency will designate hearing officers.  For the administration of these regulations, the term "Hearing Officers" will mean the Arizona Apprenticeship Advisory Committee.  The hearing officers will give reasonable notice of such hearing by registered mail, return receipt requested, to the appropriate sponsor.   Such notice will include (1) a reasonable time and place of hearing, (2) a statement of the provisions of this part pursuant to which the hearing is to be held, and (3) a concise statement of the matters pursuant to which the action forming the basis of the hearing is proposed to be taken.  The hearing officers will regulate the course of the hearing.  Hearings will be informally conducted.  Every party will have the right to counsel, and a fair opportunity to present his/her case, including such cross-examination as may be appropriate in the circumstances.  The hearing officers will make their proposed findings and recommended decisions in writing to the Registration Agency and to the affected sponsor upon the basis of the record before them.

The Registration Agency will advise the affected sponsor of its final decision within 15 days after the hearing officers have submitted their findings and recommendations.  If the deregistration action is upheld, the sponsor will send a notification to all apprentices indentured in the program outlining the effective date and that such deregistration automatically deprives the apprentice of his/her individual registration.

**8.7    Waivers**

**Employer's Proposed Program with Union Workforce**

Provide that under a program proposed for registration by an employer or employers' association, and where the standards, collective bargaining agreement or other instrument provides for participation by a union in any manner in the operation of the substantive matters of the proposed apprenticeship program, and such participation is exercised, written acknowledgement of union agreement or "no objection" to the registration is required.  Where no such participation is evidenced and practiced, the employer or employers' association will simultaneously furnish to the union, if any, which is the collective bargaining agent of the employees to be trained, a copy of its application for registration and of the proposed apprenticeship program.  The Registration Agency will provide a reasonable time period of not less than 30 days or more than 60 days for receipt of union comments, if any, before final action on the application for registration and/or approval.

# 9.    PROGRAM REVIEWS

**9.1    General Policy**

In order to operate a voluntary, industry-driven system serving employees, employers, students, government, consumers, and taxpayers, a strong partnership strengthened by working agreements between the state and federal programs will support ongoing training to achieve the most effective utilization of staff resources.

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

These resources will work toward the accomplishment of the mission of the provision of technical services.

In order to carry out the provisions of state and federal laws with regard to safeguarding the welfare of apprentices, the Standards of Apprenticeship, Section 8.2, under which apprentices are to be employed should be reviewed for their consistency with apprenticeship fundamentals and recognized apprenticeship policies and practices of industry.

A compliance review will be conducted on all registered programs upon completion of their one-year probationary period. All programs are subject to additional compliance reviews. The frequency and need for subsequent compliance reviews will be determined by the Registration Agency. Program reviews will examine apprenticeship program performance for quality of training and EEO compliance. All findings will be reported to the Apprenticeship Advisory Committee.

9.2    **Complaints**

This section is not applicable to any complaint concerning discrimination or other equal opportunity matter; all such complaints will be submitted, processed and resolved in accordance with applicable provisions of the State Apprenticeship System Regulations, Section 16, Equal Employment Opportunity in Apprenticeship Training.

Except for matters described in the previous paragraph of this section, any controversy or difference arising under an apprenticeship agreement which cannot be adjusted locally and/or which is not covered by a collective bargaining agreement, may be submitted by an apprentice, or his/her authorized representative, to the appropriate registration authority, which has registered and/or approved the program in which the apprentice is enrolled, for review in accordance with Appendix "A' of this document.

Nothing in this section will be construed to require an apprentice to use the review procedure set forth in this section.

9.3    **Methods of Review**

All registered apprenticeship programs will be reviewed periodically by the Bureau and/or the Registration Agency to determine compliance with approved standards, also federal and state laws, rules and regulations. A report on these reviews will be submitted to the Apprenticeship Committee for review and recommendations.

The guidelines and procedures for the review of registered apprenticeship programs are noted in this document. Procedures for these reviews will not exceed the necessary information needed to determine compliance with the registered standards and the quality of the on-the-job training (OJT), related training, and EEO requirements. Program reviews will be scheduled based upon the status of the program and available resources.

9.4    **Purpose of Program Review and Technical Service**

In reviewing the submitted program activity reports, the Apprenticeship Advisory Committee will determine if the programs meet the fundamentals of apprenticeship and criteria pertaining to apprenticeship as identified and recommended by the Registration Agency. In no case will the apprenticeship fundamentals be less than

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

the fundamentals as set forth by the Bureau of Apprenticeship and Training. Review is also provided: (1) to provide better service to management and labor in the development of apprenticeship programs; (2) to offer the advantage of suggestions, based upon accepted practices and new developments, as observed from review work; and (3) to provide a central reservoir of information available to potential apprenticeship programs sponsors when requested.

### 10.   APPRENTICE AGREEMENTS OR INDENTURES FOR APPROVAL

#### 10.1   Apprentice Agreement Approval

The Apprenticeship Division Director will approve Apprentice Agreements or indentures which are predicated upon a set of apprenticeship standards that have been approved by the Director of the Arizona Department of Commerce or his/her designee.

#### 10.2   Requirements

The apprentice agreement will contain explicitly or by reference:

a.   Names and signatures of the contracting parties (apprentice and the program sponsor or employer) and the signature of a parent or guardian if the apprentice is a minor.

b.   The apprentice's date of birth, Social Security number, ethnic origin, gender, and veteran status.

c.   The name and address of the program sponsor and the registration agency.

d.   A statement of the trade or craft in which the apprentice is to be trained, and the beginning date and term (duration) of apprenticeship.

e.   A statement showing (1) the number of hours to be spent by the apprentice in work on the job, and (2) the number of hours to be spent in related and supplemental instruction which is required to be not less than 144 hours per year.

f.   A statement setting forth a schedule of the work processes in the trade or industry divisions in which the apprentice is to be trained and the approximate time to be spent at each process.

g.   A statement of the graduated scale of wages to be paid the apprentice and whether or not the required school time will be compensated.

h.   Statements providing:

(1)   For a specific period of probation during which the apprentice agreement may be terminated by either party to the agreement upon written notice to the registration agency;

(2)   That, after the probationary period, the agreement may be canceled at the request of the apprentice, or may be suspended, canceled, or terminated by the sponsor, for good cause, with due notice to the apprentice and a reasonable opportunity for corrective action, and with written notice to the apprentice and to the Registration Agency of the final action taken.

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

i.  A reference incorporating as part of the agreement the standards of the apprenticeship program as it exists on the date of the agreement and as it may be amended during the period of the agreement.

j.  A statement that the apprentice will be accorded equal opportunity in all phases of apprenticeship employment and training, without discrimination because of race, color, religion, national origin, or sex.

k.  The name and address of the appropriate authority, if any, designated under the program to receive, process and make disposition of controversies or differences arising out of the apprentice agreement when the controversies or differences cannot be adjusted locally or resolved in accordance with the established trade procedure or applicable collective bargaining provisions.

l.  A statement that the services of the Apprenticeship Advisory Committee may be utilized for consultation regarding the settlement of differences arising out of the apprentice agreement where the differences cannot be adjusted locally or in accordance with the established trade procedure.

m.  Transfer of employer's training obligation when the employer is unable to fulfill his obligation under the apprentice agreement to another employer under the same program with consent of the apprentice and apprenticeship committee or program sponsor.

n.  Such additional terms and conditions as prescribed or approved by the Apprenticeship Program Committee not inconsistent with the terms of this article.

o.  All apprentice agreements will be submitted to the Apprenticeship Division Director for approval and registration.

p.  All apprentice agreements submitted to the Apprenticeship Division Director for approval will be predicated upon the Standards of Apprenticeship which have been approved by the Registration Agency.

q.  Assurance of qualified training personnel and adequate supervision on the job.

r.  The Apprenticeship Division Director will not approve an Apprentice Agreement for a person under sixteen (16) years of age who is employed or allowed to work in a hazardous or dangerous occupation.

## 11.    RELATED INSTRUCTION FOR APPRENTICES

### 11.1    General Policy

Related instruction designed to provide apprentices with knowledge in technical subjects related to their trade is considered essential in the development of the apprentice to the status of a qualified journeyman.

# ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

**11.2    Planned Related Instruction**

Standards should provide for organized instruction in technical subjects related to the apprentice's trade. This may include supervised correspondence or self-study courses, as approved by the applicable law or by policy of the Registration Agency. At least 144 hours of instruction for each year of apprenticeship is required.

**11.3    Public Schools and Other Educational Facilities**

Program sponsors will be encouraged to use existing local public school facilities in formulating established courses of related instruction. However, where public school facilities are not available or not suitable, or where the sponsors prefer to use private educational facilities existing within a trade or an industry; or supervised self-study course; or the facilities of a private or public institution of higher learning in formulating and establishing suitable related instruction, provision for the use of such alternative facilities will be acceptable as meeting the related instruction requirement.

**11.4    Responsibility for Related Instruction**

Responsibility for providing and/or coordinating related instruction rests with the sponsoring program.

**12.    APPRENTICE WAGES**

The Registration Agency does not set wages for apprentices and journeymen. However, the Registration Agency, as a matter of policy, does have an interest in wages so set. Wages for apprentices will be progressive throughout the term of apprenticeship and afford proper compensation for the value of the work performed as experience and ability are gained. The entry wage will not be less than the minimum wage prescribed by the Fair Labor Standards Act unless a higher wage is required by other applicable Federal law, State respective regulations, or by collective bargaining agreement.

**13.    CERTIFICATE OF COMPLETION OF APPRENTICESHIP**

**13.1    General Policy**

It is the policy to promote the significance of the certificate issued by the Apprenticeship Advisory Committee.

a.    Certificates of Completion of Apprenticeship will be issued to apprentices who will have completed training under approved Standards of Apprenticeship and have executed an Apprentice Agreement, which is predicated upon the Standards and approved by the Registration Agency. Certificates of Completion of Apprenticeship will only be issued to program sponsors who request them in writing for their completing apprentices in the appropriate program.

b.    When a Certificate of Completion has been issued to apprentices, they will also receive a pocket-sized identification card certifying the apprentice has been issued a Certificate of Completion of Apprenticeship in the appropriate program.

# ARIZONA APPRENTICESHIP SYSTEM
# REGULATIONS

## 14.    SPECIAL CERTIFICATES

### 14.1    General Policy

An appropriate award will recognize outstanding service toward apprenticeship.

### 14.2    Certificate of Meritorious Service

The Apprenticeship Advisory Committee will issue a Certificate of Meritorious Service only to Apprenticeship Program Committee members who will have served not less than five (5) years as a member of a bona fide Apprentice Program Committee. The Certificate of Meritorious Service will be issued only to retiring members of an Apprenticeship Program Committee upon the request of said Committee.

### 14.3    Certificate of Appreciation

The Apprenticeship Advisory Committee will issue a Certificate of Appreciation to instructors, coordinators, executive secretaries, apprenticeship and training representatives, school officials and other persons who have contributed to the furtherance of apprenticeship and who meet the requirements established by this Apprenticeship Advisory Committee.

### 14.4    Certificate of Special Recognition

The Apprenticeship Advisory Committee will issue, at its discretion or upon request, a Certificate of Special Recognition to retiring or deceased Apprenticeship Advisory Committee members for their service or participation in Apprenticeship Advisory Committee business and affairs.

# ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

### 14.5   Certificate of Outstanding Apprentice

The Apprenticeship Advisory Committee will issue Certificates of Outstanding Apprentice to those trainees who have demonstrated excellence in the completion of their apprenticeship term.

### 14.6   Certificate of Exemplary Program Achievement

The Apprenticeship Advisory Committee will issue **Exemplary Program Achievement** Certificates to those sites that demonstrate the highest level of excellence in their industry.

## 15.   SERVICE TO APPRENTICESHIP PROGRAMS

### 15.1   General Policy

Program sponsors will be required to accept full responsibility for the operation of their program with only such assistance as necessary from the Registration Agency to accomplish this objective.

### 15.2   Development of Programs

The Registration Agency will provide assistance in the development of programs that are flexible and acceptable to program sponsors. This will be worked out in accordance with the needs of industry and the community.

### 15.3   "Reciprocity"

Provide that apprenticeship programs and standards of employers and unions in other than the building and construction industry, which jointly form a sponsoring entity on the multi-state basis and are registered pursuant to all requirements of this part by any recognized State Apprenticeship Agency/Apprenticeship Advisory Committee or by the Bureau (BAT/USDOL), will be accorded registration or approval reciprocity by any other State Apprenticeship Agency/Apprenticeship Advisory Committee or office of the Bureau if such reciprocity is requested by the sponsoring entity.

ARIZONA APPRENTICESHIP SYSTEM
REGULATIONS

# Equal Employment Opportunity In Apprenticeship

## State Plan [2]

---

2 The following section meets CFR 29, Part 30 – Equal Employment Opportunity in Apprenticeship and Training

# ARIZONA APPRENTICESHIP SYSTEM
# REGULATIONS

**16.    EQUAL EMPLOYMENT OPPORTUNITY IN APPRENTICESHIP TRAINING**

### 16.1    Scope and Purpose

This section of the State Plan sets forth regulations to promote equality of opportunity in apprenticeship programs registered with the Arizona Apprenticeship Registration Agency.

These regulations apply to the recruitment and selection of apprentices, and to all conditions of employment and training during apprenticeship; and the procedures established provide for review of apprenticeship programs, for registering apprenticeship programs, for processing complaints, and for deregistering non-complying apprenticeship programs. The purpose of these regulations is to promote equality of opportunity in apprenticeship by prohibiting discrimination based on race, color, religion, national origin or sex in apprenticeship programs, by requiring affirmative action to provide equal opportunity in such apprenticeship programs, and by coordinating these regulations with other equal opportunity programs.

### 16.2    Authority to Adopt Regulations

The authority for the implementation and adoption of these polices and procedures, as outlined throughout the Arizona Apprenticeship System Regulations, affecting the registration of apprenticeship programs is vested in Executive Order 2003-24, establishing the Governor's Council on Workforce Policy.

### 16.3    Equal Opportunity Standards

#### 16.3.1    Obligations of Sponsors

Each sponsor of an apprenticeship program will:

a.    Recruit, select, employ, and train apprentices during their apprenticeship, without discrimination because of race, color, religion, national origin or sex; and

b.    Uniformly apply rules and regulations concerning apprentices, including but not limited to, equality of wages, periodic advancement, promotion, assignment of work, job performance, rotation among all work processes of the trade, imposition of penalties or other disciplinary action, and all other aspects of the apprenticeship program administration by the program sponsor; and

c.    Take affirmative action to provide equal opportunity in apprenticeship, including adoption of an affirmative action plan as required by these regulations.

#### 16.3.2    Equal Opportunity Pledge

Each sponsor of an apprenticeship program will include in its standards the following equal opportunity pledge:

"The recruitment, selection, employment, and training of apprentices during their apprenticeship will be without discrimination because of race, color, religion, national origin or sex. The sponsor will take affirmative action to provide equal opportunity in apprenticeship and will operate the

### ARIZONA APPRENTICESHIP SYSTEM
### REGULATIONS

apprenticeship program as required under Title 29 of the Code of Federal Regulations, Part 30."

**16.3.3  Programs Presently Registered**

Each sponsor of a program registered with the Registration Agency, as of the effective date of Title 29 CFR Part 30, Revised (effective June 12, 1978), will within ninety (90) days of that effective date take the following action:

a.  Include in the standards of its apprenticeship program the equal opportunity pledge prescribed by Section 16.3.2; and

b.  Adopt an affirmative action plan required by Section 16.4; and

c.  Adopt a selection procedure required by Section 16.5.  A sponsor adopting a selection method under Section 16.5.2 (a), (b) or (c) will prepare, and have available for submission upon request, copies of its amended standards, affirmative action plans, and selection procedure.  A sponsor adopting a selection method under Section 16.5.2 (d) will submit to the Registration Agency copies of its standards, affirmative action plan and selection procedure in accordance with the requirements of Section 16.5.2 (d)(1)(i.).

**16.3.4  Sponsors Seeking New Registration**

A sponsor of a program seeking new registration with the Registration Agency will submit copies of its proposed standards, affirmative action plan, selection procedures, and such other information as may be required.  The program will be registered if such standards, affirmative action plan, and selection procedure meet the requirements of this state plan.

ARIZONA APPRENTICESHIP SYSTEM
REGULATIONS

### 16.3.5  Program Subject to Approved Equal Employment Opportunity Programs

A sponsor will not be required to adopt an affirmative action plan under Section 16.4 or a selection procedure under Section 16.5 if it submits to the Registration Agency satisfactory evidence that it is in compliance with an equal employment opportunity program providing for the selection of apprentices and for affirmative action in apprenticeship including goals and timetables for women and minorities which has been approved as meeting the requirements of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. 2000e et seq.) and its implementing regulations published in Title 29 of the Code of Federal Regulations, Chapter XIV or Executive Order 11246, as amended, and its implementing regulations at Title 41 of the Code of Federal Regulations, Chapter 60: Provided, that approved programs, modified or renewed subsequent to the effective date of this amendment will qualify for this exception only if the goals and timetables for minorities and women selection of apprentices provided for in such programs are equal to or greater than the goals required under this part.

### 16.3.6  Program with Fewer than Five Apprentices

A sponsor of a program in which fewer than five apprentices are indentured will not be required to adopt an affirmative action plan under Section 16.4 or a selection procedure under Section 16.5., provided that such program was not adopted to circumvent the requirements of this state plan.

## 16.4  Affirmative Action Plans

### 16.4.1  Adoption of Affirmative Action Plans

A sponsor's commitment to equal opportunity in recruitment, selection, employment and training of apprentices will include the adoption of a written affirmative action plan.

### 16.4.2  Definition of Affirmative Action

Affirmative action is not mere passive nondiscrimination.  It includes procedures, methods, and programs for the identification, positive recruitment, training, and motivation of present and potential minority and female (minority and non-minority) apprentices including the establishment of goals and timetables.  It is action which will equalize opportunity in apprenticeship so as to allow full utilization of the work potential of minorities and women.  The overall result to be sought is equal opportunity in apprenticeship for all individuals participating in or seeking entrance to the nation's labor force.

### 16.4.3  Outreach and Positive Recruitment

An acceptable affirmative action plan must also include adequate provision for outreach and positive recruitment that would reasonably be expected to increase minority and female participation in apprenticeship by expanding the opportunity of minorities and women to become eligible for apprenticeship selection. In order to achieve these objectives, sponsors will undertake activities such as those listed below.  It is not contemplated that each sponsor necessarily will include all the listed activities in its affirmative

ARIZONA APPRENTICESHIP SYSTEM
REGULATIONS

action program. The scope of the affirmative action program will depend on all the circumstances including the size and type of the program and its resources. However, the sponsor will be required to undertake a significant number of appropriate activities in order to enable it to meet its obligations under this state plan. The affirmative action plan will set forth the specific steps the sponsor intends to take in the areas listed below.

a.    Dissemination of information concerning the nature of the apprenticeship, requirements for admission to apprenticeship, availability of apprenticeship opportunities, sources of apprenticeship applications, and the equal opportunity policy of the sponsor. For programs accepting applications only at specified intervals, such information will be disseminated at least 30 days in advance of the earliest date for application at each interval.   For programs customarily receiving applications throughout the year, such information will be regularly disseminated but not less than semiannually.  Such information will be given to the Registration Agency, local schools, employment service offices, women's centers, outreach programs and community organizations which can effectively reach minorities and women, and will be published in newspapers which are circulated in the minority community and among women, as well as in the general areas in which the program sponsor operates.

b.    Participation in annual workshops conducted by employment service agencies for the purpose of familiarizing school, employment service and other appropriate personnel with the apprenticeship system and current opportunities therein.

c.    Cooperation with local school boards and vocational education systems to develop programs for preparing students to meet the standards and criteria required to qualify for entry into apprenticeship programs.

d.    Internal communication of the sponsor's equal opportunity policy in such a manner as to foster understanding, acceptance, and support among the sponsor's various officers, supervisors, employees, and members and to encourage such persons to take the necessary action to aid the sponsor in meeting its obligations under this part.

e.    Engaging in programs such as outreach for the positive recruitment and preparation of potential applications for apprenticeships; where appropriate and feasible, such programs will provide for pre-testing experience and training.  If no such programs are in existence, the sponsor will seek to initiate these programs, or, when available, to obtain financial assistance from the Department.  In initiating and conducting these programs, the sponsor may be required to work with other sponsors and appropriate community organizations. The sponsor will also initiate programs to prepare and encourage women to enter traditionally male programs.

f.    Encouraging the establishment and utilization of programs of pre-apprenticeship, preparatory trade training, or others designed to afford related work experience, or to prepare candidates for apprenticeship, a sponsor will make appropriate provision in its

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

affirmative action plan to assure that those who complete such programs are afforded full and equal opportunity for admission into the apprenticeship program.

g.    Utilization of journey persons to assist in the implementation of the sponsor's affirmative action program.

h.    Granting advance standing or credit on the basis of previously acquired experience, training, skills, or aptitude for all applicants equally.

i.    Other appropriate action to ensure that the recruitment, selection, employment, and training of apprentices during apprenticeship will be without discrimination because of race, color, religion, national origin, or sex (e.g. general publication of apprenticeship opportunities and advantages in advertisements, industry reports, articles, etc.; use of present minority and female apprentices and journey persons as recruiters; career counseling; periodic auditing of affirmative action programs and activities; and development of reasonable procedures between the sponsor and employers of apprentices to ensure that employment opportunity is being granted, including reporting systems, on-site reviews, briefing sessions, etc.).   The affirmative action program will set forth the specific steps the sponsor intends to take, in the above areas, under this Section 16.4.3.  Whenever special circumstances warrant, the U.S. Department of Labor may provide such financial or other assistance, as it deems necessary to implement the above requirements.

### 16.4.4   Goals and Timetables

a.    A sponsor adopting a selection method under Section 16.5.2 (a) or (b) which determines on the basis of the analysis described in Section 16.4.5 of this section that it has deficiencies in terms of the underutilization of minorities and/or women (minority and non-minority) in the craft or crafts represented by the program will include in its affirmative action plan percentage goals and timetables for admission of minority and/or female (minority and non-minority) applications into the eligibility pool.

b.    A sponsor adopting a selection method under Section 16.5.2 (c) or (d) which determines on the basis of the analysis described in Section 16.4.5 of this section that it has deficiencies in terms of the underutilization of minorities and/or women in the craft or crafts represented by the program will include in its affirmative action plan percentage goals and timetables for the selection of minority and female (minority and non-minority) applicants for the apprenticeship program.

c.    "Underutilization" as used in this paragraph refers to the situation where there are fewer minorities and/or women (minority and non-minority) in the particular craft or crafts represented by the program than would reasonably be expected in view of an analysis of the specific factors in subparagraphs (a) through (e) in Section 16.4.5. Where, on the basis of the analysis, the sponsor determines that it has no deficiencies, no goals and timetables need be established.  However, where no goals and timetables are established, the affirmative action plan will include a

ARIZONA APPRENTICESHIP SYSTEM
REGULATIONS

detailed explanation of why no goals and timetables have been established.

d.  Where the sponsor fails to submit goals and timetables as part of its affirmative action plan or submits goals and timetables which are unacceptable, and the Registration Agency determines that the sponsor has deficiencies in terms of underutilization of minorities or women (minority and non-minority) within the meaning of this section, the Registration Agency will establish goals and timetables applicable to the sponsor for the admission of minority and female (minority and non-minority) applicants into the eligibility pool or selection of apprentices, as appropriate.

The sponsor will make good faith efforts to attain these goals and timetables in accordance with the requirements of this section.

### 16.4.5  Analysis to Determine if Deficiencies Exist

The sponsor's determination as to whether goals and timetables will be established, will be based on an analysis of at least the following factors, which analysis will be set forth in writing as part of the affirmative action plan.

a.  The size of the working age minority and female (minority and non-minority) population in the program sponsor's labor market area.

b.  The size of the minority and female (minority and non-minority) labor force in the program sponsor's labor market area.

c.  The percentage of minority and female (minority and non-minority) participation as apprentices in the particular craft as compared with the percentage of minorities and women (minority and non-minority) in the labor force in the program sponsor's labor market area.

d.  The percentage of minority and female (minority and non-minority) participation as journey persons employed by the employer or employers participating in the program as compared with the percentage of minorities and women (minority and non-minority) in the sponsor's labor market area and the extent to which the sponsor should be expected to correct any deficiencies through the achievement of goals and timetables for the selection of apprentices.

e.  The general availability of minorities and women (minority and non-minority) with present or potential capacity for apprenticeship in the program sponsor's labor market area.

### 16.4.6  Establishment and Attainment of Goals and Timetables

The goals and timetables will be established on the basis of the sponsor's analyses of its underutilization of minorities and women and its entire affirmative action program.  A single goal for minorities and a separate single goal for women is acceptable unless a particular group is employed in a substantially disparate manner, in which case separate goals will be required; for example, if a specific minority group of women were underutilized even though the sponsor had achieved its standards for women generally.  In

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

establishing the goals, the sponsor should consider the results which could be reasonably expected from its good faith efforts to make its overall affirmative action program work. Compliance with these requirements will be determined by whether the sponsor has met its goals within its timetables, or failing that, whether it has made good faith efforts to meet its goals and timetables. Its "good faith efforts" will be judged by whether it is following its affirmative action program and attempting to make it work, including evaluation and changes in its program where necessary to obtain the maximum effectiveness toward the attainment of its goals. However, in order to deal fairly with program sponsors, and with women who are entitled to protection under the goals and timetables requirements, during the first 12 months after the effective date of these regulations, the program sponsor would generally be expected to set a goal for women for the entering year class at a rate which is not less than 50 percent of the proportion of women who are in the workforce of the program sponsor's labor market area and set a percentage goal for women in each class beyond the entering class which is not less than the participation rate of women currently in the preceding class. At the end of the first 12 months after the effective date of these regulations, sponsors are expected to make appropriate adjustments in goal levels. See 29 CFR 30.8(b).

### 16.4.7    Data and Information

The Secretary of Labor, or a person or agency designated by the Secretary, will make available to program sponsors data and information on minority and female (minority and non-minority) labor force characteristics for each Standard Metropolitan Statistical Area and for other special areas as appropriate.

## 16.5    Selection of Apprentices

### 16.5.1    Obligation of Sponsors

In addition to the development of a written affirmative action plan to ensure that minorities and women have an equal opportunity for selection as apprentices and otherwise ensure the prompt achievement of full and equal opportunity in apprenticeship, each sponsor will further provide in its affirmative action program that the selection of apprentices will be made under one of the methods specified in the following Section 16.5.2.

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

**16.5.2  Selection Methods**

The sponsor will adopt one of the following methods for selecting apprentices:

a.    Selection on Basis of Rank from Pool of Eligible Applicants

    (1)    Selection

A sponsor may select apprentices from a pool of eligible applicants created in accordance with the requirements of Section 16.5.2 a. (3) of this subparagraph on the basis of the rank order of scores of applicants on one or more qualification standards where there is a significant statistical relationship between rank order of scores and performance in the apprenticeship program. In demonstrating such relationship, the sponsor will follow the procedures set forth in Guidelines on Employee Selection Procedures published at 41 CFR Part 60-3.

    (2)    Requirements

The sponsor adopting this method of selecting apprentices will meet the requirements of 16.5.2 a. (3) through (7).

    (3)    Creation of Pool of Eligibles

A pool of eligibles will be created from applicants who meet the qualifications of minimum legal working age; or from applicants who meet qualification standards in addition to minimum legal working age, provided that any additional qualification standards conform with the following requirements:

        (i)    Qualification Standards

The qualification standards, and the procedures for determining such qualification standards, will be stated in detail and will provide criteria for the specific factor and attributes to be considered in evaluating applicants for admission to the pool. The score required under each qualification standard for admission to the pool will also be specified. All qualification standards, and the score required on any standard for admission to the pool, will be directly related to job performance, as shown by a significant statistical relationship between the score required for admission to the pool, and performance in apprenticeship program. In demonstrating such relationship, the sponsor will follow the procedures set forth in 41 CFR Part 60-3. Qualifications will be considered as separately required so that the failure of an applicant to attain the specified score under a single qualification standard will disqualify the applicant from admission to the pool.

ARIZONA APPRENTICESHIP SYSTEM
REGULATIONS

(ii)    Aptitude Tests

Any qualification standard for admission to the pool consisting of aptitude test scores will be directly related to job performance, as shown by significant statistical relationships between the score on the aptitude tests required for admission to the pool, and performance in the apprenticeship program.    In determining such relationship, the sponsor will follow the procedures set forth in 41 CFR Part 60-3.  The requirements of Section 16.5.2 a. (3)(ii) will also be applicable to aptitude tests utilized by a program sponsor which are administered by a state employment agency, or any other person, agency, or organization engaged in the selection or evaluation of personnel.  A national test developed and administered by a national joint apprenticeship committee will not be approved by the Registration Agency unless such test meets the requirements of this subsection.

(iii)    Educational Attainments

All educational attainments or achievements as qualifications for admission to the pool will be directly related to job performance as shown by a significant statistical relationship between the score required for admission to the pool and performance in the apprenticeship program.    In demonstrating such relationship, the sponsor will meet the requirements of 41 CFR Part 60-3.  School records or a passing grade on the general education development tests recognized by the state or local public instruction authority will be evidence of educational achievement.    Education requirements will be applied uniformly to all applicants.

(4)    Oral Interviews

Oral interviews will not be used as a qualification standard for admission into an eligibility pool.  However, once an applicant is placed in the eligibility pool, and prior to selection for apprenticeship from the pool, he or she may be required to submit to an oral interview.  Oral interviews will be limited to such objective questions as may be required to determine the fitness of applicants to enter the apprenticeship program but will not include questions relating to qualifications previously determined in gaining entrance to the eligibility pool.  When an oral interview is used, each interviewer will record the questions and the general nature of the applicant's answers and will prepare a summary of any conclusions.    Each applicant rejected from the pool of eligibles on the basis of an oral interview will be given a written statement of such rejection, the reasons therefore, and the appeal rights available to the applicant.

ARIZONA APPRENTICESHIP SYSTEM
REGULATIONS

(5)    Notification of Applicants

All applicants who meet the requirements for admission will
be notified and placed in an eligibility pool. The program
sponsor will give each rejected applicant who is not selected
for the pool or the program notice of his or her rejection,
including the reason for the rejection, the requirements for
admission to the pool of eligibles, and the appeal rights
available to the applicant.

(6)    Goal and Timetables

The sponsor will establish, where required by Section 16.4.4,
percentage goals and timetables for the admission of
minorities and women (minority and non-minority) into the
pool of eligibles in accordance with the provisions of Section
16.4.5 through 16.4.7.

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

(7)     Compliance

A sponsor will be deemed to be in compliance with its commitments under subdivision (6) of this subparagraph if it meets its goals and timetables or if it makes a good faith effort to meet these goals and timetables. In the event of the failure of the sponsor to meet its goals and timetables, it will be given an opportunity to demonstrate that it has made every "good faith effort" to meet its commitments [see Section 16.4.6].

All the actions of the sponsor will be reviewed and evaluated in determining whether such good faith efforts have been made.

b.     Random Selection from Pool of Eligible Applicants

(1)     Selection

A sponsor may select apprentices from a pool of eligible applicants on a random basis. The method of random selection is subject to approval by the Registration Agency. Supervision of the random selection process will be by an impartial person or persons selected by the sponsor, but not associated with the administration of the apprentice program. The time and place of the selection, and the number of apprentices to be selected, will be announced. The place of selection will be open to all applicants and the public. The names of apprentices drawn by this method will be posted immediately, following the selection at the program sponsor's place of business.

(2)     Requirements

The sponsor adopting this method of selecting apprentices will meet the requirements of subdivisions (3) through (5) of Section 16.5.2 (a) relating to the creation of pool of eligibles, oral interview and notification of applicants.

(3)     Goals and Timetables

The sponsor will establish, where required by Section 16.4.4, percentage goals and timetables for the admission of minorities and women (minority and non-minority) into the pool of eligibles in accordance with the provisions of Section 16.4.4 through 16.4.6.

(4)     Compliance

Determinations as to the sponsor's compliance with its obligations under these regulations will be in accordance with the provisions of subdivision (7) of subparagraph (a) of Section 16.5.2.

c.     Selection from Pool of Current Employees

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

(1)    Selection

A sponsor may select apprentices from an eligibility pool of the workers already employed by the program sponsor in a manner prescribed by a collective bargaining agreement where such exists, or by the sponsor's established promotion policy.    The sponsor adopting this method of selecting apprentices will establish goals and timetables for the selection of minority and female apprentices, unless the sponsor concludes, in accordance with the provisions of Section 16.4.4 through 16.4.6 that it does not have deficiencies in terms of underutilization of minorities and/or women (minority and non-minority) in the apprenticeship of journey persons' crafts represented by the program.

(2)    Compliance

Determination as to the sponsor's compliance with its obligations under these regulations will be in accordance with the provisions of subdivision (7) of subparagraph (a) of Section 16.5.2.

d.    Alternative Selection Methods

(1)    Selection

A sponsor may select apprentices by means of any other method, including its present selection method, provided that the sponsor meets the following requirements:

(i)    Selection Method and Goals and Timetables

Within 90 days of the effective date of this amendment, the sponsor will complete development of the revised selection method it proposes to use along with the rest of its written affirmative action program including where required by Section 16.4.4, its percentage goals and timetables for the selection of minority and/or female (minority and non-minority) applicants for apprenticeship and its written analysis, upon which such goals and timetables, or lack thereof, are based. The establishment of goals and timetables will be in accordance with Section 16.4.4 through 16.4.6.    The sponsor may not implement any such selection method until the Registration Agency has approved the selection method as meeting the requirements of item (d.) of this subdivision and has approved the remainder of its affirmative action program including its goals and timetables.  If the Registration Agency fails to act upon the selection method and the affirmative action program within 30 days of its submission, the sponsor then may implement the selection method.

(ii)    Qualification Standards

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

Apprentices will be selected on the basis of objective and specific qualification standards. Examples of such standards are fair aptitude tests, school diplomas or equivalent, occupationally essential health requirements, fair interviews, school grades, and previous work experience. Where interviews are used, adequate records will be kept including a brief summary of each interview and the conclusions on each of the specific factors, e.g., motivation, ambition, and willingness to accept direction which are part of the total judgment. In applying any such standards, the sponsor will meet the requirements of 41 CFR Part 60.3.

(2)     Compliance

Determination as to the sponsor's compliance with its obligations under these regulations will be in accordance with the provisions of subdivision (7) of subparagraph (a) of Section 16.5.2. Where a sponsor, despite its good faith efforts, fails to meet its goals and timetables within a reasonable period of time, the sponsor may be required to make appropriate changes in its affirmative action program to the extent necessary to obtain maximum effectiveness toward the attainment of its goals. The sponsor may also be required to develop and adopt an alternative selection method, including a method prescribed by the Registration Agency where it is determined that the failure of the sponsor to meet its goals is attributable in substantial part to the selection method. Where the sponsor's failure to meet its goals is attributable in substantial part to its use of a qualification standard which has adversely affected the opportunities of minorities and/or women (minority and non-minority) for apprenticeship, the sponsor may be required to demonstrate that such qualification standard is directly related to job performance, in accordance with the provisions of Section 16.5.2 a. (3) (i).

## 16.6     Existing List of Eligibles and Public Notice

A sponsor adopting a selection method under Section 16.5.2 (a) or (b), and a sponsor adopting a selection method under Section 16.5.2 (d) that determines there are fewer minorities and/or women (minority and non-minority) on its existing lists of eligibles than would reasonably be expected in view of the analysis described in Section 16.4.4 will discard all existing eligibility lists upon adoption of the selection methods required by this part. New eligibility pools will be established and list of eligibility pools will be posted at the sponsor's place of business. Sponsors will establish a reasonable period of not less than two weeks for accepting applications for admission to an apprenticeship program. There will be at least 30 days of public notice in advance of the earliest date for application for admission to the apprenticeship program (see Section 16.4.3 on affirmative action with respect to dissemination of information).

Applicants who have been placed in a pool of eligibles will be retained on lists of eligibles subject to selection for a period of two years. Applicants may be removed

36

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

from the list at an earlier date by their request or following their failure to respond to an apprentice job opportunity given by certified mail, return receipt requested.

Applicants who have been accepted in the program will be afforded a reasonable period of time in light of the customs and practices of the industry for reporting for work. All applicants will be treated equally in determining such period of time. It will be the responsibility of the applicant to keep the sponsor informed of his or her current mailing address. Upon request, a sponsor may restore to the list of eligible applicants, applicants who have been removed from the list or who have failed to respond to an apprenticeship job opportunity.

### 16.7 Records

#### 16.7.1 Obligations of Sponsors

Each sponsor will keep adequate records including a summary of the qualifications of each applicant, the basis for evaluation and/or selection or rejection of each applicant, the records pertaining to interviews of applicants, the original application for each applicant, information relative to the operation of the apprenticeship program, including but not limited to job assignment, promotion, demotion, layoff, or termination, rates of pay, or other forms of compensation or conditions of work, hours (both hours of work and, separately, hours of training provided), and any other records pertinent to a determination of compliance with these regulations, as may be required by the Registration Agency. The records pertaining to individual applicants, selected or rejected, will be maintained in such manner as to permit identification of minority and female (minority and non-minority) participants.

#### 16.7.2 Affirmative Action Plans

Each sponsor must retain a statement of its affirmative action plan required by Section 16.4 for the prompt achievement of full and equal opportunity in apprenticeship, including all data and analyses made pursuant to the requirements of Section 16.4. Sponsors will review their affirmative action plans annually and update them where necessary, including the goals and timetables.

#### 16.7.3 Qualification Standards

Each sponsor must maintain evidence that its qualification standards have been validated in accordance with the requirements set forth in Section 16.5.2.

#### 16.7.4 Records of the Registration Agency

The Registration Agency will keep adequate records, including registration requirements, individual program standards and registration records, program compliance reviews and investigations, and any other records pertinent to a determination of compliance with these regulations, as may be required by the Bureau, and will report to the Bureau as may be required by the Bureau.

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

### 16.7.5  Maintenance of Records

The records required by these regulations and any other information relevant to compliance will be maintained for five years and made available upon request to the Registration Agency or other authorized representative.

## 16.8  Compliance Reviews

### 16.8.1  Conduct of Compliance Review

The Registration Agency will regularly conduct systematic reviews of apprenticeship programs in order to determine the extent to which sponsors are complying with these regulations and will also conduct compliance reviews when circumstances, including receipt of complaints not referred to a private review body pursuant to Section 16.10.2, so warrant, and take appropriate action regarding programs which are not in compliance with the requirements of these regulations.

Compliance reviews will consist of comprehensive analyses and evaluations of each aspect of the apprenticeship program, including on-site investigations and audits.

### 16.8.2  Reregistration

Sponsors seeking reregistration will be subject to a compliance review as described in Section 16.8.1 of this section by the Registration Agency as part of the reregistration process.

### 16.8.3  New Registrations

Sponsors seeking new registrations will be subject to a compliance review as described in Section 16.8.1 of this section by the Registration Agency as part of the registration process.

### 16.8.4  Voluntary Compliance

Where the compliance review indicates that the sponsor is not operating in accordance with this state plan, the Registration Agency will notify the sponsor in writing of the result of the review and make a reasonable effort to secure voluntary compliance on the part of the program sponsor within a reasonable time before undertaking sanctions under Section 16.12. In the case of sponsors seeking new registration, the Registration Agency will provide appropriate recommendations to the sponsor to enable it to achieve compliance for registration purposes.

## 16.9  Noncompliance with Federal and State Equal Opportunity Requirements

A pattern or practice of noncompliance by a sponsor (or where the sponsor is a joint apprenticeship committee, by one of the parties represented on such committee) with federal or state laws or regulations requiring equal opportunity may be grounds for the imposition of sanctions in accordance with Section 16.12 if such noncompliance is related to the equal employment opportunity of apprentices and/or graduates of such an apprenticeship program under these regulations. The sponsor will take affirmative steps to assist and cooperate with employers and unions in fulfilling their equal employment opportunity obligations.

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

**16.10    Complaint Procedure**

**16.10.1 Filing**

a.      Any apprentice or applicant for apprenticeship who believes that he or she has been discriminated against the basis of race, color, religion, national origin, or sex with regard to apprenticeship or that the equal opportunity standards with respect to his or her selection have not been followed in the operation of an apprenticeship program may, personally or through an authorized representative, file a complaint with the Registration Agency, or, at the apprentice's or applicant's election, with a private review body. The complaint will be in writing and will be signed by the complainant. It must include the name, address and telephone number of the person allegedly discriminated against, the program sponsor involved, and a brief description of the circumstances of the failure to apply the equal opportunity standards provided for in this part.

b.      The complaint must be filed not later than 180 days from the date of the alleged discrimination of specified failure to follow the equal opportunity standards; and, in the case of complaints filed directly with review bodies designated by program sponsors to review such complaints, any referral of such complaint by the complainant to the Registration Agency must occur within the time limitation stated above or 30 days from the final decision of such review body whichever is later. The time may be extended by the Registration Agency for good cause shown.

c.      Sponsors are encouraged to establish fair, speedy and effective procedures for a review body to consider complaints of failure to follow the equal opportunity standards. A private review body, established by the program sponsor for this purpose, should number three or more responsible persons from the community serving in this capacity without compensation.

Members of the review body should not be directly associated with the administration of an apprenticeship program. Sponsors may join together in establishing a review body to serve the needs of programs within the community.

**16.10.2 Processing of Complaints**

a.      When the sponsor has designated a review body for reviewing complaints, the Registration Agency, unless the complainant has indicated otherwise or unless the Registration Agency has determined that the review body will not effectively enforce the equal opportunity standards, will upon receiving a complaint refer it to the review body.

The Registration Agency will, within 30 days following the referral of a complaint to the review body, obtain reports from the complainant and the review body as to the disposition of the complaint. If the complaint has been satisfactorily adjusted and there is no other indication of failure to apply equal opportunity standards, the case will be closed and the parties appropriately informed.

When a complaint has not been resolved by the review body within 90 days or where, despite satisfactory resolution of the particular complaint by the

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

review body, there is evidence that the equal opportunity practices of the apprenticeship program are not in accordance with this state plan, the Registration Agency may conduct such compliance review as found necessary, and will take all necessary steps to resolve the complaint.

b. Where no review body exists, the Registration Agency may conduct such compliance review as found necessary in order to determine the facts of the complaint, and obtain such other information relating to compliance with these regulations as the circumstances warrant.

c. Sponsors will provide written notice of the above complaint procedure to all applicants for apprenticeship and all apprentices.

### 16.11    Adjustments in Schedule for Compliance Review or Complaint Processing

If, in the judgment of the Registration Agency, a particular situation warrants and requires special processing and either expedited or extended determination, it will take the steps necessary to permit such determination if it finds that no person or party affected by such determination will be prejudiced by such special processing.

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

**16.12    Sanctions**

a.  Where the Registration Agency, as a result of compliance review or other reason, determines that there is reasonable cause to believe that a program is not operating in accordance with these regulations and voluntary corrective action has not been taken by the program sponsor, the Registration Agency will institute proceedings to deregister the program or it will refer the matter to Equal Employment Opportunity Commission or to the Attorney General with recommendations for the institution of court action under the Title VII of the Civil Rights Act of 1964, as amended, or to the Attorney General for other court action as authorized by law.

b.  Deregistration proceedings will be conducted in accordance with the following procedures:

   (1)  The Registration Agency will notify the sponsor, in writing, that a determination of reasonable cause has been made under Section 16.13.a of this section and that the apprenticeship program may be deregistered unless, within 15 days of the receipt of the notice, the sponsor requests a hearing. The notification will specify the facts on which the determination is based.

   (2)  If within 15 days of the receipt of the notice provided for in subparagraph (1) of this section the sponsor mails a request for a hearing, the Apprenticeship Director will convene a hearing in accordance with Section 16.13.

   (3)  The Apprenticeship Director will make a final decision on the basis of the record, which will consist of the compliance review file and other evidence presented and, if a hearing was conducted pursuant to Section 16.13, the proposed finding and recommended decision of the hearing officers. The Apprenticeship Director may allow the sponsor a reasonable time to achieve voluntary corrective action. If the Apprenticeship Director's decision is that the apprenticeship program is not operating in accordance with this state plan, the apprenticeship program will be deregistered. In each case in which deregistration is ordered, the Apprenticeship Director will make public notice of the order and will notify the sponsor and the complainant, if any, and the Department of Commerce. The Registration Agency will inform any sponsor whose program has been deregistered that it may appeal such deregistration to the Department in accordance with the procedures of 29 CFR, Section 30.15.

**16.13    Hearings**

a.  Within 10 days after receiving a request for a hearing, the Apprenticeship Director will designate hearing officers. The hearing officers will give reasonable notice of such hearing by certified mail, return receipt requested, to the appropriate sponsor. Such notice will include (1) a reasonable time and place of hearing, (2) a statement of the provision of this plan, pursuant to which the hearing is to be held, and (3) a concise statement of the matters pursuant to which the action forming the basis of the hearing is proposed to be taken.

b.  The hearing officers will regulate the course of the hearing. Hearings will be informally conducted. Every party will have the right to counsel, and a fair opportunity to present his or her case including such cross-examination as may be appropriate in the circumstances. Hearing officers will make their proposed

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

findings and recommended decisions to the Apprenticeship Director upon the basis of the record before them.

**NOTE: For the Administration of these regulations for EEO in Apprenticeship the term "Hearing Officers" will mean the Apprenticeship Advisory Committee.**

### 16.14    Reinstatement of Program Registration

Any apprenticeship program deregistered pursuant to these adopted regulations may be reinstated upon presentation of adequate evidence to the Registration Agency that the apprenticeship program is operating in accordance with these regulations.

### 16.15    Intimidatory or Retaliatory Acts

Any intimidation, threat, coercion, or retaliation by or with the approval of any sponsor against any person for the purpose of interfering with any right or privilege secured by Title VII of the Civil Rights Act of 1964, as amended, Executive Order 11246, as amended, or because he or she has made a complaint, testified, assisted, or participated in any manner in any investigation proceeding, or hearing under this state plan will be considered in noncompliance with the equal opportunity standards of these regulations. The identity of complainants will be kept confidential except to the extent necessary to carry out the purposes of these regulations, including the conduct of any investigation, hearing or judicial proceeding arising there from.

### 16.16    Non-Discrimination

The commitments contained in the sponsor's affirmative action program are not intended and will not be used to discriminate against any qualified applicant or apprentice on the basis of race, color, religion, national origin, or sex.

# ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

### 16.17   Exemptions

Requests for exemption from these regulations, or any part thereof, will be made in writing to the Registration Agency and will contain a statement of reasons supporting the request. Exemptions may be granted for good cause.    The Registration Agency will notify the BAT of any such exemptions granted affecting a substantial number of employers and the reasons therefore.

### 16.18   Effective Date

This State Plan will be effective on the _____th day of December, 2005.

<br>

_____          _____
Signature of Authorized Official                                       Date
Gilbert Jimenez, Director
Arizona Department of Commerce

*Concurred By:*

_____          _____
Signature of Authorized Official                                       Date
Wendell Justice, Chair
Arizona Apprenticeship Advisory Committee

*Approved By:*

_____          _____
Signature of Authorized Official                                       Date
Anthony Swoope, Administrator
Office of Apprenticeship Training, Employer and Labor Services

ARIZONA APPRENTICESHIP SYSTEM
REGULATIONS

# APPENDIX "A"

# COMPLAINT PROCEDURE

ARIZONA APPRENTICESHIP SYSTEM
REGULATIONS

## ARIZONA APPRENTICESHIP ADVISORY COMMITTEE

In accordance with Section 5, of the Arizona Apprenticeship System Regulations, the Arizona Apprenticeship Advisory Committee adopts the following general policy for the processing and handling of complaints. Pursuant to the above regulations, the Apprenticeship Advisory Committee and the Arizona Department of Commerce Apprenticeship Division (Registration Agency) will assess and evaluate all complaints on an individual basis and determine whether an investigation and/or hearing are appropriate.

**Informal resolution is the preferred method of dealing with apprentice/applicant complaints prior to escalation to a formal hearing by the Arizona Apprenticeship Advisory Committee. All remedies available at the local level (Employer, Joint Apprenticeship Committee [JAC] or Sponsor's Committee or through industry review board), should be exhausted before a complaint is filed with the Registration Agency.**

**It is the recommendation of the Arizona Apprenticeship Advisory Committee that each Registered Apprenticeship/Internship Program Sponsor develop and place on file with the Registration Agency, their individual complaint procedure. This procedure should be distributed to all participating employers, apprentices and all applicants at the time of application.**

**The following instructions are broken into three parts.**

> **Part "A" will be for the processing and handling of apprenticeship program related complaints.**

> **Part "B" will be for complaints of discrimination or other equal opportunity matters.**

> **Part "C" will define the responsibilities of the U.S. Department of Labor, Bureau of Apprenticeship and Training.**

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

## PART A:          APPRENTICESHIP RELATED COMPLAINTS

**NOTE:   Informal resolution is the preferred method of dealing with apprentice/applicant complaints prior to escalation to a formal hearing by the Arizona Apprenticeship Advisory Committee.  All remedies available at the local level (Employer, Joint Apprenticeship Committee [JAC] or Sponsor's Committee or through industry review boards) should be exhausted before a complaint is filed with the Registration Agency.**

Types of complaints covered under this section.

      a.    Complaints concerning non-compliance with the registered apprenticeship or internship program standards;

Complaints alleging non-compliance with apprentice or intern agreements which cannot be adjusted locally and which are not covered by a collective bargaining agreement;

Complaints concerning matters covered by the Registered Program Sponsors administrative policies, rules or regulations.

## THESE INSTRUCTIONS DO NOT APPLY TO:

    1.    Any allegation and/or complaint concerning discrimination or other equal opportunity matter;

    2.    Any controversy or difference which is covered by a collective bargaining agreement;

    3.    Any complaint not precisely and specifically related to the program standards or apprentice agreement;

    4.    Any issue currently in litigation or filed with any other federal or state government office having jurisdiction.

A-2    Procedures For Filing Apprenticeship Related Complaints:

The complaint will be filed with the Registration Agency, in writing, within 60 days of the final decision rendered by a local program sponsor.  Send Complaints to:

                    Arizona Department of Commerce
                    Apprenticeship Office
                    1700 W. Washington Street, Suite 220
                    Phoenix, Arizona  85007

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

The complaint will set forth precisely and specifically the matter(s) complained of, together with all relevant factors and circumstances.

The complaint will be signed by the complainant (apprentice or intern) or authorized representative, it will contain the current address and phone number of the complainant and the name of the program sponsor involved.

A-3    Procedures for Processing Complaints:

The Registration Agency (Arizona Apprenticeship Division) will determine if the complaint is valid in conformity with Sections A-1 and A-2 above.

The Apprenticeship Division Staff will review the complaint and related documents to ascertain if all remedies available at the local level have been exhausted.

Reasonable efforts to affect a satisfactory resolution of the complaint will be made prior to referring the matter to the Arizona Apprenticeship Advisory Committee for a hearing.

Upon determination by the Apprenticeship Division Director that the complaint cannot be resolved and warrants further investigation, a full Compliance Review will be scheduled and conducted in accordance with Section 16.8 of the Arizona Apprenticeship System Regulations.

A summary of the facts based on the data submitted in the complaint, and resulting investigation (Compliance Review) of the matter submitted, will be provided to an administrative sub-committee appointed by the Chairman of the Arizona Apprenticeship Advisory Committee.

The sub-committee will, within 30 days, meet and render a decision regarding the validity of the complaint to see if it warrants a full hearing by the Arizona Apprenticeship Advisory Committee, or should be referred back to the complainant.

An opinion by the Arizona Apprenticeship Advisory Sub-Committee will be rendered within 60 days of receipt of the complaint; however, the time limit may be extended by the Committee for good cause shown.

4

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

A-4    <u>Hearings:</u> Pursuant to ARS 41-1001 et seq., and the Arizona Apprenticeship System Regulations, the Arizona Apprenticeship Advisory Committee will give notice of such a hearing to all parties concerned as follows:

   a.    Date, time and place of hearing;

A statement of the provision of the applicable rules and regulations pursuant to which the hearing is to be held;

   c.    A concise statement of the matters to be considered;

The Chairman of the Apprenticeship Advisory Committee will regulate the course of the hearing and the hearing will be conducted informally.    Every party will have a fair opportunity to present his/her position (case);

The decision of the Arizona Apprenticeship Advisory Committee will be final.

PART B:    EQUAL EMPLOYMENT OPPORTUNITY IN APPRENTICESHIP TRAINING COMPLAINT INSTRUCTIONS.

NOTE:  Informal resolution is the preferred method of dealing with apprentice/applicant complaints prior to escalation to a formal hearing by the Arizona Apprenticeship Advisory Committee.  All remedies available at the local level (Employer, Joint Apprenticeship Committee [JAC] or Sponsor's Committee or through industry review boards) should be exhausted before a complaint is filed with the Registration Agency.

B-1    Complaint Filing Procedures.

Any apprentice/intern or applicant for apprenticeship or internship, who believes that he or she has been discriminated against on the basis of race, color, religion, national origin, or sex, with regard to apprenticeship/internship or that the equal opportunity standards with respect to his or her selection have not been followed in the operation of an apprenticeship/internship program, may, personally or through an authorized representative, file a complaint with the Registration Agency*, or the EEOC**, at the apprentice/intern's or applicant's election, with a private review body established pursuant to 16.10.1, (c) of the Arizona Apprenticeship System Regulations.[3]

The complaint will be in writing and will be signed by the complainant.    It must include the name address, and telephone

---

[3]    As of January 1, 2000, no private review body exists in Arizona.

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

number of the person allegedly discriminated against, the program sponsor involved, and a brief description of the circumstances of the failure to apply the equal opportunity standards provided for under the Equal Employment Opportunity In Apprenticeship State Plan.

The complaint must be filed not later than 180 days from the date of the alleged discrimination or specified failure to follow the equal opportunity standards, and, in the case of a complaint filed directly with the review bodies designated by the program sponsor(s) to review such complaints, any referral of such complaint by the complainant to the Registration Agency must occur with the time limitation stated above or 30 days from the final decision of such review body, whichever is later.  The time may be extended by the Registration Agency for good cause shown.

| | |
|---|---|
| Registration Agency | Equal Employment Opportunity Commission |
| Arizona Apprenticeship Office | Phoenix District Office |
| 1700 W. Washington Street, Suite 220 | 3300 North Central Avenue, Suite 690 |
| Phoenix, AZ 85007 | Phoenix, AZ 85012 |
| (602) 771-1183 | (602) 640-5000 |

Sponsors are encouraged to establish fair, speedy and effective procedures for a review body to consider complaints of failure to follow the equal opportunity standards.  A private review body, established by the program sponsor for this purpose, should number three or more responsible persons from the community serving in this capacity without compensation.

Members of the review body should not be directly associated with the administration of an apprenticeship program.  Sponsors may join together in establishing a review body to serve the needs of programs within the community.

B-2  Processing Of Complaints.

Where no industry review body exists, the Registration Agency may conduct such compliance review as found necessary in order to determine the facts of the complaint, and obtain such other information relating to compliance with these regulations as the circumstances warrant.

Sponsors will provide written notice of the above complaint procedure to all applicants for apprenticeship and all apprentices.

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

Registration Agency Actions:

Upon receipt of a written complaint from an apprentice or applicant, the Registration Agency will take the following actions:

1.  The Registration Agency Director will make every effort to assist the complainant and the affected program sponsor through an informal resolution process.

    Should this informal process fail:

2.  A full compliance review will be scheduled and conducted in accordance with the Arizona Apprenticeship System Regulations, Section 16.8.

    The Registration Agency, upon review of all information received from the complainant and the compliance review process will render a decision within 30 days of the date of the completion of a full compliance review.

    Should this process fail to resolve the complaint.

3.  The complainant will be referred to the Phoenix District Office of the EEOC to file a formal complaint.

PART C:    U.S. DEPARTMENT OF LABOR, BUREAU OF APPRENTICESHIP AND TRAINING PARTICIPATION.

The Bureau and its staff, in accordance with the current BAT-SAC Working Agreement will serve as consultants/advisors to the Apprenticeship Division in the processing of any complaints received. However, in that the Bureau and its staff are the final level of appeal available under these procedures, the Bureau Staff will not participate in any complaint review or investigation conducted by the Apprenticeship Division or its staff.

## ARIZONA APPRENTICESHIP SYSTEM
## REGULATIONS

In accordance with Title 29, CFR Part 30, ¶ 30.15, (a), (3)...The Department (Bureau) retains the authority to conduct compliance reviews and complaint investigations to determine whether the state plan or any state apprenticeship program registered with a State Apprenticeship Council (Registration Agency) is being administered or operated in accordance with this part. ...

It will be noted, that all complainants who have exhausted the complaint process under these procedures will be advised that they may appeal the decision rendered under these provisions to the State Director, USDOL, Bureau of Apprenticeship and Training, at the address shown below.

Arizona State Director
U.S. Department of Labor
Bureau of Apprenticeship and Training
600 Las Vegas Blvd. South, Suite 520
Las Vegas, NV  89101-6643

# APPRENTICESHIP
## PROGRAM LIST

### *Complete Program List as of May 2008*

| | |
|---|---|
| **911 Collision**<br>140 S. Euclid<br>Tucson, AZ 85719<br><br>**Occupation:** Auto Body Repair (Auto Body Tech A) | Contact:    Marea Turnbull<br>Title:        Coordinator<br>Phone:       (520)791-9119<br>Email:        mareat@911collision.com |
| **ABCO Tool & Engineering**<br>210 South 37th Street<br>Phoenix, AZ 85034<br><br>**Occupation:** Tool & Die Maker | Contact:    Tony Boogaard<br>Title:<br>Phone:       (602)267-7234<br>Email:        tony@abcotool.com |
| **ACF Chef's Assoc. of Southern Arizona**<br>5901 South Calle Santa Cruz<br>Tucson, AZ 85709<br><br>**Occupation:** Cook/Pastry/Hotel Restaurant | Contact:    Edward Doran<br>Title:        Coordinator<br>Phone:       (520)206-5117<br>Email:        Edward.doran@pima.edu |
| **AERO Automatic Sprinkler Co.**<br>21605 N. Central Ave.<br>Phoenix, AZ 85024<br><br>**Occupation:** Pipe Fitter (Construction) | Contact:    Frances Cons<br>Title:        Coordinator<br>Phone:       (623)580-7800<br>Email:        fcons@aerofire.com |
| **Al-Marah Arabians**<br>4101 N. Bear Canyon Rd.<br>Tucson, AZ 85749<br><br>**Occupation:** Horse Trainer | Contact:    Jay Faircloth<br>Title:        Coordinator<br>Phone:       (520)749-1162<br>Email:        Al-marah@att.net |
| **ANEWCO**<br>1677 S. Research Loop<br>Tucson, AZ 85731<br><br>**Occupation:** Machinist | Contact:    Jerry Goff<br>Title:<br>Phone:       (520)751-1222<br>Email:        jerry@anewco.com |
| **Archon, Inc.**<br>1200 W. San Pedro Street<br>Gilbert, AZ 85233<br><br>**Occupation:** Form Builder (Const)/Craft Laborer | Contact:    Karl Moore<br>Title:<br>Phone:       (480)892-9291<br>Email:        kmoore@archon.inc.com |
| **Arizona Alliance for Dental Health Training and Education**<br>2333 W. University Drive, Suite 103<br>Tempe, AZ 85281<br><br>**Occupation:** Dental Assistant, Dental Laboratory Tech | Contact:    Mary Ann Gonzales<br><br>Title:        Coordinator<br>Phone:       (602)318-6222<br>Email:        ramtechacademy@cox.net |

| **Arizona Asbestos Workers JATC**<br>1841 N. 24th St., Suite #8<br>Phoenix, AZ 85008<br><br>**Occupation:** Insulation Worker | Contact:<br>Title:<br>Phone:<br>Email: | Joe Simburger<br>Coordinator<br>(480)839-1367 |
|---|---|---|
| **Arizona Builders Alliance**<br>1825 West Adams<br>Phoenix, AZ 85007<br><br>**Occupation:** Electrician. Sheet Metal, Carpenter,<br>Form Builder (Const), Pipe Fitter, Plumber, Sign Erector | Contact:<br>Title:<br>Phone:<br>Email: | Doug Mills<br>Director<br>(602)274-8222<br>dmills@azbuilders.org |
| **Arizona Chapter, Assoc. General Contr.**<br>1825 West Adams Street<br>Phoenix, AZ 85007<br><br>**Occupation:** Construction Equipment Mechanic,<br>Operating Engineer | Contact:<br>Title:<br>Phone:<br>Email: | Lloyd Hutchison<br>Coordinator<br>(602)329-6706<br>llhutch6789@aol.com |
| **Arizona Department of Transportation**<br>2225 South 22nd Ave., MS 071R<br>Phoenix, AZ 85007<br><br>**Occupation:** Operating Engineer | Contact:<br>Title:<br>Phone:<br>Email: | Lloyd Hutchison<br><br>(602)329-6706<br>Llhutch6789@aol.com |
| **Arizona Laborers Apprenticeship**<br>512 West Adams Street, #3<br>Phoenix, AZ 85003<br><br>**Occupation:** Construction Craft Laborer | Contact:<br>Title:<br>Phone:<br>Email | Anastacio Madrigal (Junior)<br>Director<br>(602)471-7944<br>anastacio.madrigal@gmail.com |
| **Arizona Masonry Contractors, Assn.**<br>1803 North 40th St., Suite 102<br>Phoenix, AZ 85008<br><br>**Occupation:** Bricklayer (Construction) | Contact:<br>Title:<br>Phone:<br>Email: | Joan Dandurand<br>Executive Director<br>(602)262-0510<br>joan@azmasonry.net |
| **Arizona Operating Engineers JA&TS**<br>10797 West Randolph Rd.<br>Casa Grande, AZ 85222<br><br>**Occupation:** Const. Equipment Mechanic, Diesel Mechanic,<br>Operating Engineers, Plant Operator | Contact:<br>Title:<br>Phone:<br>Email: | Ed Yarco<br>Admin. Manager<br>(602)252-1844<br>aoea@worldnet.att.net |
| **Arizona Public Service Company**<br>P O Box 53933, MS 3036<br>Phoenix, AZ 85072<br><br>**Occupation:** Automobile Mechanic, Electric Meter Repairer,<br>Line Maintainer, Line Repairer, Maintenance Machinist,<br>Power Plant Operator, Electrician (Maintenance) Instrument Mech. (Any INT) | Contact:<br>Title:<br>Phone:<br>Email: | Lori Erickson<br><br>(602)371-7104<br>lorraine.erickson@aps.com |

**Arizona Public Service, Forestry Dept.**
10025 North 21st Ave., PO Box 53933, M/S 3036
Phoenix, AZ 85072

| | |
|---|---|
| Contact: | Matt Hamblin |
| Title: | |
| Phone: | (602)371-6740 |
| Email: | matt.hamblin@aps.com |

**Occupation:** Tree Trimmer (Line Clear)

---

**Arizona Roofing Industry JATC**
1917 East Washington Street
Phoenix, AZ 85034

| | |
|---|---|
| Contact: | Masavi Perea |
| Title: | |
| Phone: | (602)254-7059 |
| Email: | masavi-p@hotmail.com |

**Occupation:** Roofer

---

**Arizona State Carpenters**
4547 W. McDowell, Suite 5
Phoenix, AZ 85035

| | |
|---|---|
| Contact: | Danny Lawler |
| Title: | |
| Phone: | (602)272-6547 |
| Email: | dlawer@azcarpenters.com |

**Occupation:** Carpenter, Cabinet Maker, Dry Wall Applicator

---

**Arizona Teamsters JA&TS**
11001 N. 99th Ave., Suite #124
Peoria, AZ 85345

| | |
|---|---|
| Contact: | Sue Meeks |
| Title: | Executive Secretary |
| Phone: | (623)875-2004 |
| Email: | |

**Occupation:** Truck Driver, Heavy

---

**ASARCO**
P O Box 8
Hayden, AZ 85235

| | |
|---|---|
| Contact: | Janeen Duarte |
| Title: | |
| Phone: | (520)356-3538 |
| Email: | jbanky@asarco.com |

**Occupation:** Line Installer Repairer

---

**ASARCO Hayden IAM&AW 2181**
P O Box 8
Hayden, AZ 85235

| | |
|---|---|
| Contact: | Gerald Banky |
| Title: | |
| Phone: | (520)356-2236 |
| Email: | jduarte@asarco.com |

**Occupation:** Mechanic Industrial Truck

---

**ASARCO-Hayden Operations IBEW**
P O Box 8
Hayden, AZ 85235

| | |
|---|---|
| Contact: | Gerald Banky |
| Title: | |
| Phone: | (520)356-2236 |
| Email: | jbanky@asarco.com |

**Occupation:** Electrician Maintenance

---

**ASARCO IBEW**
P O Box 8
Hayden, AZ 85235

| | |
|---|---|
| Contact: | Gerald Banky |
| Title: | |
| Phone: | (520)356-2236 |
| Email: | jbanky@asarco.com |

**Occupation:** Electrician Maintenance

---

**ASARCO USWA**
P O Box 8
Hayden, AZ 85235

| | |
|---|---|
| Contact: | Gerald Banky |
| Title: | |
| Phone: | (520)345-2236 |
| Email: | jbanky@asarco.com |

**Occupation:** Boilermaker, Boilermaker (Const), Carpenter Maintenance,
Diesel Maintenance, Maintenance Machinist, and Pipefitter (Const)

---

**ASARCO Pipefitter Local 741**
P O Box 8
Hayden, AZ 85235

| | |
|---|---|
| Contact: | Gerald Banky |
| Title: | |
| Phone: | (520)345-2236 |
| Email: | jbanky@asarco.com |

**Occupation:** Pipefitter Construction

| **ASARCO-Ray** | Contact: | Gerald Banky |
| P O Box 8 | Title: | |
| Hayden, AZ 85235 | Phone: | (520)345-2236 |
| | Email: | jbanky@asarco.com |
| **Occupation:** Maintenance Mech. (Any IND), Maintenance Machinist, Mechanic Industrial Truck, Boilermaker, Carpenter Maintenance, Construction Equip. Mech., Pipefitter Const., Forge Shop Machine Repair | | |

| **Aspen Communication** | Contact: | Sheila Richardson |
| 1855 W. Kaibab, Suite #4 | Title: | Coordinator |
| Flagstaff, AZ 86001 | Phone: | (928)699-8373 |
| | Email: | srichardson@aspentelco.com |
| **Occupation:** Cable Installer Repairer | | |

| **B & R Electric** | Contact: | Richard Feinberg |
| 13447 N. Heritage Gateway | Title: | Coordinator |
| Marana, AZ 85653 | Phone: | (520)572-0704 |
| | Email: | rick@bandrelectric.com |
| **Occupation:** Residential Wireman | | |

| **Boilermakers JAC** | Contact: | Diserai Welsh |
| 310 S. Octillo Avenue | Title: | Area Coordinator |
| Benson, AZ 85602 | Phone: | (520)586-7415 |
| | Email: | jovita174@aol.com |
| **Occupation:** Boilermaker | | |

| **Bureau of Indian Affairs, Colorado** | Contact: | Scott Sutliff |
| P O Box 1, Rt. 9-C | Title: | Electric Supervisor |
| Parker, AZ 85344 | Phone: | (928)669-7126 |
| | Email: | |
| **Occupation:** Line Repairer | | |

| **Campbell Electric, D.B.A.** | Contact: | Daniel J. Campbell |
| 1671 Papoose Drive | Title: | |
| Lake Havasu City, AZ 86496 | Phone: | (928)453-7520 |
| | Email: | |
| **Occupation:** Electrician | | |

| **Central Arizona Project** | Contact: | Sally Maxwell |
| 23636 North 7th Street | Title: | |
| Phoenix, AZ 85024 | Phone: | (623)869-2664 |
| | Email: | smaxwell@cap-az.com |
| **Occupation:** Truck Crane Operator, Machinist, Stationary Engineer, Heating & Air Cond, IND SER, Electrician(Mechanic) | | |

| **Chef's Assn. of Greater Phoenix** | Contact: | Al Seager |
| 5419 E. Charter Oak Rd. | Title: | |
| Scottsdale, AZ 85254 | Phone: | (602)678-4300 |
| | Email: | |
| **Occupation:** Cook (Hotel & Restaurant, Cook Pastry (Hotel & Rest.) | | |

| **Citizens Utilities Co.** | Contact: | Michael Jacobus |
| 1710 N. Mastick Way | Title: | |
| Nogales, AZ 85621 | Phone: | (520) 761-7951 |
| | Email: | |
| **Occupation:** Electric Meter Repairer, Line Erector | | |

| | | |
|---|---|---|
| **City of Mesa-Electric Utility** | Contact: | Les Klontz |
| 640 North Mesa Drive | Title: | Program Director |
| Mesa, AZ 85211 | Phone: | (480)644-2124 |
| | Email: | les.klontz@cityofmesa.org |
| **Occupation:** Line Installer Repairer | | |

| | | |
|---|---|---|
| **City of Phoenix – Public Housing** | Contact: | Molly Weiss |
| 1035 South 3rd Avenue | Title: | |
| Phoenix, AZ 85003 | Phone: | (602)261-8946 |
| | Email: | molly.weiss@phoenix.gov |
| **Occupation:** Maintenance Repairer Builder, Office Machine Service Childcare Dev. Specialist | | |

| | | |
|---|---|---|
| **City/Phoenix P.W. Electrical** | Contact: | Carlos Granado |
| 2631 South 23 Avenue | Title: | Electrical Facilities Supv. |
| Phoenix, AZ 85009 | Phone: | (602)262-7784 |
| | Email: | carlos.granado@phoenix.gov |
| **Occupation:** Electrician (Maintenance), Street Light Serviceman | | |

| | | |
|---|---|---|
| **Corbins Service Electric, LLC** | Contact: | Amy Flores |
| 102 S. 28th Street | Title: | Program Director |
| Phoenix, AZ 85034 | Phone: | (602)275-8500 |
| | Email: | a.flores@corbinselectric.com |
| **Occupation:** Electrician | | |

| | | |
|---|---|---|
| **E & K of Arizona, Inc.** | Contact: | Vernee Mancini |
| 3875 N. 28th Avenue | Title: | Director off Learning |
| Phoenix, AZ 85017 | Phone: | (602)269-8566 |
| | Email: | vernee.mancini@e-kco.com |
| **Occupation:** Drywall Applicator, Metal Fabricator, Painter (Construction), Taper | | |

| | | |
|---|---|---|
| **Elevator Constructors Local 140** | Contact: | Jerry Cluff |
| 1841 North 24th Street | Title: | Business Manager |
| Phoenix, AZ 85008 | Phone: | (602)273-0025 |
| | Email: | jerryc140@aol.com |
| **Occupation:** Elevator Constructor | | |

| | | |
|---|---|---|
| **Empire Precision Machining** | Contact: | Tony Gonzales |
| 41 West Iron Avenue | Title: | |
| Mesa, AZ 85210 | Phone: | (480)633-4872 |
| | Email: | tgonzales@empire-cat.com |
| **Occupation:** Machinist, Machinist Automotive | | |

| | | |
|---|---|---|
| **ENCO** | Contact: | Darold Lammers |
| 41630 W. Louis Johnson Drive | Title: | |
| Maricopa, AZ 85239 | Phone: | (520)424-9021 |
| | Email: | lammers@encous.com |
| **Occupation:** Line Installer Repairer | | |

| | | |
|---|---|---|
| **Fann Contracting, Inc.** | Contact: | Philip Rice |
| 1403 Industrial Way | Title: | HR Manager |
| Prescott, AZ 86302 | Phone: | (928)778-0170 |
| | Email: | fanncontracting@cableone.net |
| **Occupation:** Operating Engineer | | |

| | | |
|---|---|---|
| **Federal Correctional Complex** | Contact: | Samuel Brokenshire |
| 8901 S. Wilmot Road | Title: | |
| Tucson, AZ 85706 | Phone: | (520)574-7100 |
| | Email: | sbrokenshire@bop.com |
| **Occupation:** Electrician, Heating Air Cond. INST-SER | | |

| **Federal Correctional Inst. UNICOR** | Contact: | Tony Watson |
|---|---|---|
| 37940 N. 45th Ave., Dept. 1650 | Title: | |
| Phoenix, AZ 85027 | Phone: | (623)465-9757 |
| | Email: | mwatson@bop.gov |

**Occupation:** Cook(ANY IND), Plumber, Quality Control Technician, Electronics Tester, Electrician (Maintenance) Cabinet Worker, Waste Water Treat PL/OP, Manager Food Service, Welder Combination

| **Globe-Miami Elect.** | Contact: | Ed Gilbert |
|---|---|---|
| 630 N. Craycroft, Suite 131 | Title: | Training Director |
| Tucson, AZ 85711 | Phone: | (520)323-1622 |
| | Email: | |

**Occupation:** Electrician

| **Graham County Electric Cooperative** | Contact: | Dennis Kouts |
|---|---|---|
| 9 West Center | Title: | |
| P O Drawer B | Phone: | (928)485-2451 |
| Pima, AZ 85543 | Email: | dkouts@gce.coop |

**Occupation:** Line Repairer

| **Grand Canyon Resort Association** | Contact: | Waylon Honga |
|---|---|---|
| P.O. Box 359 | Title: | |
| Peach Springs, AZ 86434 | Phone: | (928)769-2419, Extension 128 |
| | Email: | |

**Occupation:** Building Maintenance Repairer, Welder (Combination)

| **Granite Construction Company** | Contact: | Antonio Burrola |
|---|---|---|
| 4115 E. Illinois | Title: | Coordinator |
| Tucson, AZ 85714 | Phone: | (520)584-6515 |
| | Email: | |

**Occupation:** Mechanic Industrial Truck. Operating Engineer, Plant Operator

| **GW Plastics** | Contact: | Dave Tabor |
|---|---|---|
| 2901 E. Valencia Road | Title: | VP – Tooling |
| Tucson, AZ 85706 | Phone: | (520)295-2836 |
| | Email: | dave.tabor@gwplastics.com |

**Occupation:** Tool & Die Maker

| **Honeywell International, Inc.** | Contact: | Roger Coriell |
|---|---|---|
| 1944 E. Sky Harbor Circle | Title: | |
| Phoenix, AZ 85034 | Phone: | (602)365-4531 |
| | Email: | roger.coriell@honeywell.com |

**Occupation:** Machinist, Electronics Mechanics, Machine Repairer

| **Housing Authority of the City of Yuma** | Contact: | Cecilio Molina |
|---|---|---|
| 420 South Madison Avenue | Title: | Coordinator |
| Yuma, AZ 85364 | Phone: | (928)782-3823 x103 |
| | Email: | cemo@hacy.org |

**Occupation:** Maintenance Repairer (Building)

| **Humboldt School District #22** | | |
|---|---|---|
| **Bradshaw Mountain High School** | Contact: | Kathy Griskowitz |
| 6000 East Long Look | Title: | YTP/Teacher |
| Prescott, AZ 86314 | Phone: | (928)759-4142 |
| | Email: | kgriskowitz@as.us |

**Occupation:** Childcare Development Specialist, Under Car Specialist

| **IECA of Southern Arizona**<br>4633 E. Broadway, Suite 101<br>Tucson, AZ 85711<br><br>**Occupation:** Electrician | Contact:<br>Title:<br>Phone:<br>Email: | Brenda Olsson<br>Coordinator<br>(520)820-5506<br>brenda@duffyelectric.com |
|---|---|---|
| **Independent Electrical Contractors**<br>3730 East Superior Ave., Suite 110<br>Phoenix, AZ 85040<br><br>**Occupation:** Line Repairer | Contact:<br>Title:<br>Phone:<br>Email: | Nancy Levey<br>Coordinator<br>(602)200-8883<br>iecaz@iecaz.org |
| **Independent Electrical Contractors**<br>3730 East Superior Ave., Suite 110<br>Phoenix, AZ 85040<br><br>**Occupation:** Electrician | Contact:<br>Title:<br>Phone:<br>Email: | Nancy Levey<br>Coordinator<br>(602)200-8883<br>iecaz@iecaz.org |
| **Intel Corporation**<br>5000 W. Chandler Blvd.<br>Chandler, AZ 85226<br><br>**Occupation:** Electrician Maintenance | Contact:<br>Title:<br>Phone:<br>Email: | Art Grosch<br><br>(480)554-8887<br>art.grosch@intel.com |
| **Interstate Mechanical Corp (IMCOR)**<br>1841 East Washington Street<br>Phoenix, AZ 85034<br><br>**Occupation:** Pipe Fitter Construction, Sheet metal worker | Contact:<br>Title:<br>Phone:<br>Email: | Rich Jans<br>Training Director<br>(602)257-1319<br>rjans@imcor-az.com |
| **Ironworkers JAT, Statewide**<br>950 East Elwood St.<br>Phoenix, AZ 85040<br><br>**Occupation:** Structural-Steel Worker | Contact:<br>Title:<br>Phone:<br>Email: | George Facista<br><br>(602)276-6055<br>iw75jac@msn.com |
| **Ironworkers Local #846**<br>2101 W. Jackson Street<br>Phoenix, AZ 85009<br><br>**Occupation:** Ironworker, Reinforcing Concrete | Contact:<br>Title:<br>Phone:<br>Email: | William Goggins<br><br>(623)695-2961 |
| **J.D. Steel Company**<br>2101 W. Jackson<br>Phoenix, AZ 85009<br><br>**Occupation:** Reinforcing Metal Worker | Contact:<br>Title:<br>Phone:<br>Email: | Brian Ellis<br>S.W. Reg. Manager<br>(602)254-8833<br>bellis@jdsteel.com |
| **Kazal Fire Protection, Inc.**<br>3499 East 34th Street<br>Tucson, AZ 85713<br><br>**Occupation:** Pipe Fitter Construction | Contact:<br>Title:<br>Phone:<br>Email: | Mary Lujan<br>Training Coordinator<br>(520)323-1518<br>mlujan@kazalfire.com |
| **Laron Incorporated**<br>4255 Santa Fe Drive<br>Kingman, AZ 86401<br><br>**Occupation:** Machinist, Millwright | Contact:<br>Title:<br>Phone:<br>Email: | John Hansen<br><br>(928)757-8424<br>john@laron.com |

| **Maricopa County Community College Dist.** | Contact: | Conrad Mills |
| c/o Scottsdale Community College | Title: | Apprenticeship Coord. |
| 9000 East Chapparal | Phone: | (480)423-6472 |
| Scottsdale, AZ 85256 | Email: | conrad.mills@sccmail.maricopa.edu |

**Occupation:** Carpenter Maintenance, Painter (Construction) Plumber, Heating & Air Condt. Inst-Ser, Electrician (Mechanic)

| **Mastercraft Companies** | Contact: | Nelson Macilvee |
| 3301 West Vernon | Title: | |
| Phoenix, AZ 85009 | Phone: | (602)484-4520 |
| | Email: | www.mastercraft-companies.com |

**Occupation:** Die Cast / Die Maker

| **McAtlin Electrical Corporation** | Contact: | Terri McAtlin |
| 2899 Maricopa Avenue | Title: | |
| Lake Havasu City, AZ 86406 | Phone: | (928)855-0389 |
| | Email: | leslie@mcatlin.com |

**Occupation:** Electrician

| **Mercury Air Conditioning & Heating** | Contact: | Ken Brown |
| 1465 Country Shire Ave. | Title: | |
| Lake Havasu City, AZ 86403 | Phone: | (928)854-4101 |
| | Email: | |

Occupation: Heating & Air Conditioning Inst-Ser

| **Metro Phoenix Plumbing, Heading &** | | |
| **Cooling Contractors Association** | Contact: | Dennis Correll |
| 7635 West Hope Drive | Title: | |
| Peoria, AZ 85345 | Phone: | (623)486-3324 |
| | Email: | denniscor@msn.com |

**Occupation:** Plumber

| **Mohave Electric** | Contact: | Tom Otero |
| P O Box 1807 | Title: | |
| Lake Havasu City, AZ 86406 | Phone: | (928)505-3209 |
| | Email: | taotero@citlink.net |

**Occupation:** Electrician

| **Mohave Electric Cooperative, Inc. JATC** | Contact: | Steven McArthur |
| P O Box 1045 | Title: | Secretary |
| Bullhead City, AZ 86430 | Phone: | (928)763-4115 |
| | Email: | cisco@mohaveaz.com |

**Occupation:** Line Repairer

| **Natl Tool & Mach-So Az Chapter** | Contact: | Mike Lanham |
| 6230 S. Country Club Rd. | Title: | |
| Tucson, AZ 85706 | Phone: | (520)746-0105 |
| | Email: | mlanham@catalinatool.com |

**Occupation:** Die Cast & Die Maker, Machinist, Numerical Control Mach Op, Tool & Die Maker

| **Navajo Tribal Utility** | Contact: | Gervase Begay |
| P O Box 170 | Title: | Training Coordinator |
| Fort Defiance, AZ 86504 | Phone: | (928)729-5721 |
| | Email: | gervaseb@ntvg.com |

**Occupation:** Electrician Mechanic, Automobile Mechanic, Electrician, Line Maintainer, Gas Meter Mechanic 1, Substation Operator, Transformer Repairer, Metal Coordinator, Gas Main Fitter

**Navopache Cooperative/IBEW Local 387 JATC**
1878 W. White Mountain Blvd.
Lakeside, AZ 85929

Contact:  Chuck Moore
Title:
Phone:    (928)368-5118
Email:    cmoore@navapache.org

**Occupation:** Line Installer, Electric Meter Repair,
Substation Operator, Tree Trimmer (Line Clearer)

---

**Northern Arizona University**
**Physical Resources Lockshop**
P O Box 6016
Flagstaff, AZ 86011

Contact:  Charles Snelling
Title:
Phone:    (928)523-6420
Email:    chuck.snelling@nau.edu

**Occupation:** Locksmith

---

**NTUA-Water/Waste-Wtr.**
P O Box 170
Fort Defiance, AZ 86504

Contact:  Gervase Begay
Title:
Phone:    (928)729-5721
Email:    gervaseb@ntua.com

**Occupation:** Water Treatment Plant Operator

---

**Oberg Arizona**
208 South McKemy
Chandler, AZ 85226

Contact:  Karrie Meyer
Title:
Phone:    (480)961-1300
Email:    karrie.meyer@oberg.com

**Occupation:** Plater, Machinist, Tool & Die Maker, Operator Heavy Duty

---

**Page Electric Utility**
P O Box 1955
Page, AZ 86040

Contact:  Todd Savage
Title:    General Manager
Phone:    (928)645-2419
Email:    todd@pageelectric.org

**Occupation:** Line Repairer

---

**Palo Verde Nuclear Generating Station**
5801 W. Wintersburg M/S 6190
Tonopah, AZ 85364

Contact:  Roy Lindsay
Title:
Phone:    (623)393-3728
Email:    tjones02@apsc.com

**Occupation:** Electrician Powerhouse, Instrument Tech. (Utilities),
Machinist, Maintenance Repairer Industrial, Powerhouse Mechanic,
Welder Fitter, Refrigeration Mechanic

---

**Parker Hannifin Tolleson**
8505 W. McDowell Road
Tolleson, AZ 85363

Contact:  Toni Zody
Title:    Coordinator
Phone:    (623)907-5303
Email:    tzody@parker.com

**Occupation:** Machinist

---

**Pascua Yaqui Tribe (BAT)**
7474 S. Camino De Oeste
Tucson, AZ 85746

Contact:  Andy Jaimez
Title:    Coordinator
Phone:    (520)879-5844
Email:    ajaimez@pasquayaqui-nsn.gov

**Occupation:** Carpenter, Electrician, Maintenance Repairer Builder

---

**Phelps Dodge Miami, Inc.**
P O Box 4444
Claypool, AZ 85532

Contact:  Dena Hyde
Title:
Phone:    (520)474-7571
Email:    dhyde@phelpsdodge.com

**Occupation:** Electrician Maintenance

**Phelps Dodge Morenci, Inc.**
4521 U. S. Highway 191
Morenci, AZ 85540

| | |
|---|---|
| Contact: | Kelly Daley |
| Title: | MCE Training Coord. |
| Phone: | (928)865-6762 |
| Email: | Kelli_Daley@FMI.com |

**Occupation**: Automobile Mechanic, Blacksmith, Boilermaker, Carpenter Maintenance, Diesel Mechanic, Industrial Truck, Painter Const., Pipefitter Const., Metal Worker, Maintenance, Tech Mech(ANY IND), Pyrometerins Trumentation, Line Erector, Millwright, Operating Engineer, Maintenance Machinist, Mechanic Endless Track VE

---

**Phelps Dodge Sierrita**
P O Box 527
Green Valley, AZ 85622

| | |
|---|---|
| Contact: | Hank Riessbeck |
| Title: | Training Coordinator |
| Phone: | (520)648-8546 |
| Email: | iessbeck@fmi.com |

**Occupation**: Electrician Maintenance

---

**Phoenix Bricklaying & Tile Setting JA&TC**
2601 East Monroe Street
Phoenix, AZ 85034

| | |
|---|---|
| Contact: | William Higgins |
| Title: | |
| Phone: | (602)286-9030 |
| Email: | phxbrickjate@qwest.net |

**Occupation**: Bricklayer Construction

---

**Phoenix Drywall Tapers & Finishers JATC**
1841 North 24th Street, #2
Phoenix, AZ 85008

| | |
|---|---|
| Contact: | Patricio Melivilu |
| Title: | Coordinator |
| Phone: | (602)244-0768 |
| Email: | paintersap@aol.com |

**Occupation**: Taper

---

**Phoenix Electrical JATC**
615 E. Palo Verde Drive
Phoenix, AZ 85012

| | |
|---|---|
| Contact: | Sean Foulk |
| Title: | |
| Phone: | (602)263-8104 |
| Email: | sfoulk@pejatc.org |

Occupation: Electrician

---

**Phoenix Painters & Decorators JATC**
1841 North 24th Street, #2
Phoenix, AZ 85008

| | |
|---|---|
| Contact: | Patricio Melivilu |
| Title: | Coordinator |
| Phone: | (602)244-0768 |
| Email: | paintersap@aol.com |

**Occupation**: Painter Construction

---

**Phoenix Pipe Fitting Trades JAC**
2950 W. Thomas Road
Phoenix, AZ 85016

| | |
|---|---|
| Contact: | Mike Wall |
| Title: | Training Coordinator |
| Phone: | (602)269-8213 |
| Email: | mwall@pipetrades.org |

**Occupation**: Pipefitter Construction, Plumber, Refrigeration Mechanic

---

**Phoenix Sheet Metal JA&TC**
2534 East Adams Street
Phoenix, AZ 85034

| | |
|---|---|
| Contact: | George Sapien |
| Title: | |
| Phone: | (602)275-6511 |
| Email: | gsapien@azsheetmetal.org |

**Occupation**: Sheet Metal Worker, Heating & Air Cond. (INST-SER)

---

**Pima Community College**
6680 S. Country Club Road
Tucson, AZ 85709

| | |
|---|---|
| Contact: | William Ward |
| Title: | Superintendent |
| Phone: | (520) 206-2764 |
| Email: | wward@pima.edu |

**Occupation**: Carpenter, Electrician, Locksmith, Plumber, Refrigeration Mechanic

| **Pinnacle West Energy Fossil JAC**<br>P O Box 188, M/S4464<br>Joseph City, AZ 86032 | Contact:<br>Title:<br>Phone:<br>Email: | Dan Nicholas<br>Coordinator<br>(928)288-1417<br>dnichola@apsc.com |
|---|---|---|
| **Occupation:** Instrument Tech. (Utilities), Automobile Mechanic, Machinist | | |

| **Plasterers & Cement Masons JATC**<br>1425 East McDowell Road<br>Phoenix, AZ 85006 | Contact:<br>Title:<br>Phone:<br>Email: | Brian Fierros<br><br>(602)258-8148<br>opcmia394@qwest.net |
|---|---|---|
| **Occupation:** Cement Mason, Plasterer | | |

| **Plumbers & Pipefitters JATC**<br>601 West Rellito<br>Tucson, AZ 85705 | Contact:<br>Title:<br>Phone:<br>Email: | Jay Casey<br><br>(520)622-0015<br>tucsonjatc@qwest.net |
|---|---|---|
| **Occupation:** Pipefitter (Construction), Plumber, Refrigeration Mechanic | | |

| **Raytheon Missile Systems Company**<br>P O Box 11337, Bldg. 801<br>Tucson, AZ 85734 | Contact:<br>Title:<br>Phone:<br>Email: | Robert Hoffman<br><br>(520)794-8824<br>Robert_w_hoffman@raytheon.com |
|---|---|---|
| **Occupation:** Electrical Technician | | |

| **RCI Systems, Inc.**<br>1220 W. Geneva Drive<br>Tempe, AZ 85282 | Contact:<br>Title:<br>Phone:<br>Email: | Rami Azzam<br><br>(480)894-8711<br>razzam@rcifire.com |
|---|---|---|
| **Occupation:** Pipe Fitter Construction | | |

| **Red Rock Stamping Company, Inc.**<br>464 East Chilton Drive<br>Chandler, AZ 85225 | Contact:<br>Title:<br>Phone:<br>Email: | Dave Landstrom<br><br>(480)961-0203<br>dave.landstrom@rrs.cc |
|---|---|---|
| **Occupation:** Die Maker | | |

| **Resort & Country Club Chef's Assn. – ACF**<br>1601 West Main<br>Mesa, AZ 85201 | Contact:<br>Title:<br>Phone:<br>Email: | Carlton Brooks<br><br>(480)461-4132<br>ebrooks@evit.com |
|---|---|---|
| **Occupation:** Cook (Hotel & Restaurant) | | |

| **Saguaro Acres Elder Assisted Living Homes**<br>18002 South Placita Octubre<br>Green Valley, AZ 85614 | Contact:<br>Title:<br>Phone:<br>Email: | Timothy P. McKenna<br><br>(520)399-2175<br>desertwater3458@aol.com |
|---|---|---|
| **Occupation:** Home Health Aide | | |

| **Salt River Pima Indian Community**<br>10005 East Osborn Road<br>Scottsdale, AZ 85256 | Contact:<br>Title:<br>Phone:<br>Email: | Lucille Antone<br>Program Manager<br>(480)850-8008<br>lucille.anton@arpmic-ed.org |
|---|---|---|
| **Occupation:** Carpenter, Bricklayer (construction), Drywall Applicator, Electrician, Maintenance Repairer Builder, Operating Engineer, Painter Construction, Plumbers, Heating/Air Cond. (INST & SER) Electrician (Maintenance), Peripheral EQ OP | | |

| **Salt River Project ATC**<br>P O Box 52025, MS FTF001<br>Phoenix, AZ 85072 | Contact:<br>Title:<br>Phone:<br>Email: | Lacy Greer<br>Program Manager<br>(602)236-2182<br>lvgreer@srpnet.com |
|---|---|---|

**Occupation:** Relay Tester

| **Salt River Project JAC**<br>P O Box 52025, MS FTF001<br>Phoenix, AZ 85072 | Contact:<br>Title:<br>Phone:<br>Email: | Lacy Greer<br>Coordinator<br>(602)236-2182<br>lvgreer@srpnet.com |
|---|---|---|

**Occupation:** Automobile Mechanic, Cable Splicer, Electrician,
Electrical Powerhouse, Electrical Substation, Electrician Technician, Line Installer Repairer,
Machinist, Maint. Mech. (ANY IND), Maintenance Repairer Industrial, Metal Fabricator,
SE Mechanic, Refrigeration Mechanic

| **Sam Nichols Electrical, Inc.**<br>785 Kiowa Ave., Suite 102<br>Lake Havasu City, AZ 86403 | Contact:<br>Title:<br>Phone:<br>Email: | David McAtlin<br><br>(928)855-4121<br>david@samnichols.com |
|---|---|---|

**Occupation:** Electrician

| **San Carlos Irrigation Project**<br>P O Box 250<br>Coolidge, AZ 85228 | Contact:<br>Title:<br>Phone:<br>Email: | David White<br>Engineer<br>(520)723-4025 |
|---|---|---|

**Occupation:** Line Repairer, Electrician Maintenance

| **Sierra Southwest Cooperative Servs., Inc.**<br>P O Box 670<br>Benson, AZ 85602 | Contact:<br>Title:<br>Phone:<br>Email: | Tisha Brackeen<br>Coordinator<br>(520)586-5342 |
|---|---|---|

**Occupation:** Electrician Powerhouse, Electrician Substation,
Instrument Tech (Utilities), Line Erector, Maintenance Machinist, Relay Technician

| **Simplex Grinnell**<br>4602 S. 36th Street<br>Phoenix, AZ 85040 | Contact:<br>Title:<br>Phone:<br>Email: | Terry Sheahan<br><br>(602)243-6700<br>tsheahan@tycoint.com |
|---|---|---|

**Occupation:** Fitter (Sprinkler System), Protective Signal Installer

| **Southern Arizona Painting & Decorating**<br>**Contractor of Arizona**<br>P O Box 18440<br>Tucson, AZ 85731 | Contact:<br>Title:<br>Phone:<br>Email: | Pat Johnson<br><br>(520)886-4788<br>pajuli@msn.com |
|---|---|---|

**Occupation:** Painter Construction

| **Southwest Electrical Training Center**<br>P O Box 62902<br>Phoenix, AZ 85082 | Contact:<br>Title:<br>Phone:<br>Email: | Steven Herold<br><br>(480)659-2903<br>stevenherold@aol.com |
|---|---|---|

Occupation: Electrician, Residential Wireman

| **Sulphur Springs Valley Electric**<br>P O Box 820<br>Willcox, AZ 85644 | Contact:<br>Title:<br>Phone:<br>Email: | Earl Wobensmith<br><br>(520)452-3910<br>ewobensmith@ssvec.com |
|---|---|---|

**Occupation:** Substation Electrician, Electric Meter Technician,
Line Installer/Repairer, Substation Operator

| **Suntec Concrete**<br>2221 W. Shangri-La Road<br>Phoenix, AZ 85029 | Contact:<br>Title:<br>Phone:<br>Email: | Sally George<br><br>(602)443-4451<br>sally@suntecconcrete.com |
|---|---|---|
| **Occupation:** Carpenter, Cement Mason | | |

| **Sun Tran**<br>4220 South Park Avenue<br>Tucson, AZ 85714 | Contact:<br>Title:<br>Phone:<br>Email: | Ernest Moss<br><br>520-206-8821<br>Ernest.Moss@tucsonaz.gov |
|---|---|---|
| **Occupation:** Diesel Mechanic | | |

| **Tech Mold Inc.**<br>1735 West 10th St.<br>Tempe, AZ 85281 | Contact:<br>Title:<br>Phone:<br>Email: | Karl Szanto<br><br>(480)968-8691<br>karl.szanto@techmold.com |
|---|---|---|
| **Occupation:** Die Cast / Die Maker | | |

| **Tohono O'odham Career Center**<br>P O Box 3129<br>Sells, AZ 85634 | Contact:<br>Title:<br>Phone:<br>Email: | Alex Vavages<br><br>(520)235-4868<br>kmiguel@tocc.cc.acz.us |
|---|---|---|
| **Occupation:** Carpenter, Electrician, Maintenance Repairer Builder, Painter Construction, Plumber, Residential Carpenter, Perpheral Equipment Operator Asphalt Paving Machine Operator, Residential Wireman | | |

| **Tohono O'odham Utility Authority**<br>P O Box 816<br>Sells, AZ 85634 | Contact:<br>Title:<br>Phone:<br>Email: | Loran Nixon<br>Electrical Supervisor<br>(520)383-2236<br>loren.nixon@hg.tova.nc |
|---|---|---|
| **Occupation:** Line Erector, Automobile Mechanic, Water Treatment Plant Operator | | |

| **Tooling Molds West, Inc.**<br>129 South Rockford Drive<br>Tempe, AZ 85281 | Contact:<br>Title:<br>Phone:<br>Email: | Fred Drawert<br><br>(480)921-9939<br>tmw@tmwinc.net |
|---|---|---|
| **Occupation:** Die Cast / Die Maker | | |

| **Town of Thatcher**<br>3700 West Main Street<br>Thatcher, AZ 85552 | Contact:<br>Title:<br>Phone:<br>Email: | Terry Hinton<br><br>(928)428-8229<br>thinton@graham.az.gov |
|---|---|---|
| **Occupation:** Line Repairer | | |

| **T-P Acoustics, Inc.**<br>2626 N. 29th Ave<br>Phoenix, AZ 85009 | Contact:<br>Title:<br>Phone:<br>Email: | Derrick Amerson<br><br>(602)269-6213<br>casoss@aol.com |
|---|---|---|
| **Occupation:** Acoustical Carpenter, Electrician Substation | | |

| **Trans-Matic Manufacturing**<br>4240 East Oasis St.<br>Mesa, AZ 85215 | Contact:<br>Title:<br>Phone:<br>Email: | R.J. Pearce<br>Plant Manager<br>(480)491-6977<br>rjpearce@transmatic.com |
|---|---|---|
| **Occupation:** Tool & Die Maker | | |

| **Tri-City Mechanical/Comfort Systems**<br>6875 W. Galveston Street<br>Chandler, AZ 85226<br><br>**Occupation**: Pipe fitter, Plumber, Sheet Metal Worker,<br>Heating & Air Conditioning INST-SER | Contact:<br>Title:<br>Phone:<br>Email: | Ken Brown<br>Coordinator<br>(480) 940-8400<br>kbrown@confortssystemsusa.com |
|---|---|---|
| **Tucson Electric Power Company**<br>P O Box 711 (M/S MT101)<br>Tucson, AZ 85702<br><br>**Occupation**: Electric Meter Repairer, Electrician Powerhouse,<br>Electrician substation, Electronics Technician, Line Repairer,<br>Operating Engineer, Engineering Technician, Relay Technician | Contact:<br>Title:<br>Phone:<br>Email: | Corrine Mellegard<br><br>(520)918-8234<br>cmellegard@tep.com |
| **Tucson Electrical JATC**<br>1665 E. 18th St., #107<br>Tucson, AZ 85719<br><br>**Occupation**: Electrician | Contact:<br>Title:<br>Phone:<br>Email: | Karen King<br>Training Director<br>(520)790-4690<br>kingktejatp@gmail.com |
| **Tucson Sheet Metal JAC**<br>8773 S. Alvernon Way<br>Tucson, AZ 85711<br><br>**Occupation**: Sheet Metal Worker | Contact:<br>Title:<br>Phone:<br>Email: | Dan Chacon<br><br>(602)273-1388<br>dchacon@azsheetmetal.org |
| **Tucson Unified School District**<br>530 South Norris Avenue<br>Tucson, AZ 85719<br><br>**Occupation**: Office Machine Server, Carpenter, Plumber,<br>Electronics Technician, Furniture Finisher, Maintenance Repairer Ind.,<br>Painter, Hand (ANY IND), Landscape Technician, Management Team,<br>Refrigeration Mechanic, Computer Programmer, Refrigeration Unit Repairer | Contact:<br>Title:<br>Phone:<br>Email: | Peter Herran<br><br>(520)225-4937<br>peter.herran@tusdl.org |
| **Tucson Utility Contractors Association**<br>1842 West Grant Road, #103<br>Tucson, AZ 85745<br><br>**Occupation**: Quality Control Technician | Contact:<br>Title:<br>Phone:<br>Email: | Jana Franz<br>Executive Assistant<br>(520)623-0444 |
| **Rinker**<br>P O Box 52140<br>Phoenix, AZ 85008<br><br>**Occupation**: Construction Driver, Truck Driver-Heavy | Contact:<br>Title:<br>Phone:<br>Email: | Michelle Passmore<br><br>(602)220-5000<br>bsntswe@rinker.com |
| **UNS Electric Incorporated**<br>2290 Airway Avenue<br>Kingman, AZ 86409<br><br>**Occupation**: Glass Blower, Lap Apparatus | Contact:<br>Title:<br>Phone:<br>Email: | Grace Brock<br>Coordinator<br>(928)681-8971<br>gbrock@uesaz.com |
| **University of Arizona**<br>1106 East University Ave.<br>Tucson, AZ 85721<br><br>**Occupation**: Glass Blower, Lap Apparatus | Contact:<br>Title:<br>Phone:<br>Email: | Charles M. Amling<br>Coordinator<br>(520)621-6365<br>amling@u.arizona.edu |

**US Dept of Justice Federal Co.**
P O Box 820
Safford, AZ 85540

| | | |
|---|---|---|
| Contact: | | Chuck Petersen |
| Title: | | |
| Phone: | | (928)428-6600 |
| Email: | | |

**Occupation:** Plumber, Manager Food Services, Welder Combination
Electrician Maintenance

**Western Fire Protection**
3375 East Highway 80
Yuma, AZ 85365

| | | |
|---|---|---|
| Contact: | | Mark Harris |
| Title: | | Coordinator |
| Phone: | | (928)344-5741 |
| Email: | | |

**Occupation:** Pipe Fitter Construction

**White Mountain Apache Tribe**
P O Box 2390
White River, AZ 85941

| | | |
|---|---|---|
| Contact: | | Marjorie Grimes |
| Title: | | Director |
| Phone: | | (928)338-4346 |
| Email: | | |

**Occupation:** Bricklayer Construction, Carpenter, Electrician,
Maintenance Repairer Builder, Operating Engineer, Painter Construction
Plumber, Roofer, Structural Steel Worker

**WYSR Academy, Inc.**
1950 W. Heatherbrae, Suite #4
Phoenix, AZ 85015

| | | |
|---|---|---|
| Contact: | | Opal J. Evans |
| Title: | | Executive Director |
| Phone: | | (602)277-2800 |
| Email: | | o.evans@wysracedemy.com |

**Occupation:** Computer Peripheral Equipment Operator

# EXHIBIT I



# Apprentice Handbook & Progress Report

## The Other 4 Year Degree

### The Connecticut Department of Labor
### Connecticut State Apprenticeship Council

# Apprentice Handbook
# & Progress Report

Issued To: _____

Apprentice Name: _____

Address: _____

_____

_____

Sponsor's Name: _____

Sponsor's Address: _____

_____

_____

This handbook is also available online at
www.ctapprenticeship.com

# *Table of Contents*

| | |
|---|---|
| ***Welcome!*** | 1 |
| ***Background*** | 1 |
| ***Apprenticeship 101*** | 2 |
|   1.  Apprenticeship Basics | 2 |
|   2.  The Apprenticeship Registration Agreement | 4 |
|   3.  Probationary Period | 5 |
|   4.  Related Instruction and the Importance of School Attendance | 5 |
|   5.  Work Records | 6 |
|   6.  Layoffs | 6 |
|   7.  Discipline | 7 |
|   8.  Harassment | 7 |
|   9.  Discrimination | 8 |
| 10.  Complaint Procedure | 9 |
| 11.  Veterans Benefits | 10 |
| 12.  Military Active Duty | 10 |
| 13.  Completion Procedures | 10 |
| ***Apprenticeship Standards*** | 11 |
|   1.  Special Provisions | 12 |
|   2.  Definitions | 12 |
|   3.  Qualifications for Applicants | 13 |
|   4.  Recruitment, Selection, Employment and Training Procedures | 13 |
|   5.  Term of Apprenticeship | 14 |
|   6.  Apprentice Agreement | 14 |
|   7.  Wage, Hours and Conditions of Work | 15 |
|   8.  Continuity of Employment | 15 |
|   9.  Training Capability Ratio | 15 |
| 10.  Related Instruction | 16 |
| 11.  Safety | 16 |
| 12.  Apprentice Responsibilities | 16 |
| 13.  Certificate of Completion | 17 |
| 14.  Complaint Procedures | 17 |
| 15.  Modification | 17 |
| 16.  Program Deregistration | 17 |
| 17.  Reinstatement of Programs | 18 |
| *Form A:  Apprentice Agreement (AT-5)* | |
| *Form B:  Apprentice Identification Card* | |
| *Form C:  Completion Form (AT-22)* | |
| *Form D:  The Eligibility Letter* | |
| ***Apprentice Progress Report*** | |

Apprentice Handbook and Progress Record

# Welcome!

Welcome to Connecticut's Apprenticeship System, The Other 4-Year Degree! You are now officially recognized as an apprentice in the State of Connecticut and have embarked on what will be one of the most rewarding opportunities of your life. During your period of training, you will receive some of the finest training and education available. Now that you are registered as an apprentice, you have certain rights under the Apprenticeship Law. However, with those rights come responsibilities. In order for you to fully benefit from your apprenticeship, you must take ownership of your training.

Periodically review your recorded hours in your progress report with the work schedule for your craft to ensure you are being trained in all work processes listed and attend all classroom training required as part of your apprenticeship.

The purpose of this handbook is to inform you of your rights and responsibilities as an apprentice. It is not intended to be a legal document. Please read it and use it for future reference when questions surface.

# Background

Apprenticeship is a Connecticut tradition that combines supervised structured on-the-job training with classroom instruction. The purpose of the program is to provide you with a comprehensive knowledge of your selected trade. Apprenticeship is a formal training program registered with the State of Connecticut, Department of Labor, Office of Apprenticeship Training.

As an apprentice, you will learn on-the-job under the supervision of a journeyperson, while working for an approved sponsor (sole employer or joint labor/management organization). You will also attend related instruction classes at an approved training site.

You will be paid according to a progressive schedule for wage increases over the term of your apprenticeship as listed on your Apprenticeship Agreement.

Apprentice Handbook and Progress Record

The National Apprenticeship Act, passed in 1937, was the first national apprenticeship law. The act is commonly known as the Fitzgerald Act, and was sponsored by Congressman William Fitzgerald of Connecticut. In our state, the Governor issued an Executive Order on March 9, 1938 creating the Connecticut State Apprenticeship Council. The Council 's mission was to establish basic Apprenticeship policies to govern the statewide Apprenticeship Training program. The Connecticut Legislature, in June 1959, passed the Voluntary Apprenticeship Act setting forth the functions of the Labor Commissioner with respect to apprenticeship and the Connecticut State Apprenticeship Council (CGS Section 31-22m-t). Regulations that govern Connecticut Apprenticeship, The Commissioner of Labor's Work Training Standards for Apprenticeship and Training Programs and Equal Employment Opportunity in Apprenticeship and Training were adopted in January 1980 and March 1982 respectively.

# *Apprenticeship 101*

## 1. <u>Apprenticeship Basics</u>

The Connecticut Department of Labor is the state agency that has the responsibility for the development, implementation and monitoring of apprenticeship programs in Connecticut. Specific responsibility for administering apprenticeship program standards is housed in the Office of Apprenticeship Training.

The Connecticut State Department of Education, Technical High School System provides classroom instruction for the apprenticeship programs and approves other providers of apprenticeship-related instruction training on behalf of the Connecticut Department of Labor.

The Office of Apprenticeship Training's Regional Apprenticeship Representatives, also known as Field Representatives, are assigned a specific geographic workload in the state for purposes of program implementation, oversight and administration. These representatives are listed on our website at <u>www.ctapprenticeship.com</u>. He/she is a point of contact when you have questions or concerns with your apprenticeship training, state policies and if your sponsor is unable to provide the response.

Although the Office of Apprenticeship Training has responsibility for oversight of the apprenticeship program, both your sponsor and you, the apprentice, have responsibilities.

**Apprentice Handbook and Progress Record**

**Apprentice Responsibilities**

1. Work safely.
2. Avoid absenteeism and tardiness at work and at school.
3. Attend and participate in related instruction and maintain the highest possible grades.
4. Be involved and show dedication to your training (both on the job and in the classroom).
5. Keep track of your training hours, (either in the form of work records or logbook) and advise your supervisor of any deficiencies in your apprenticeship training.
6. Show dedication and interest in learning the trade.
7. Show respect to the skilled journeypersons training and supervising you.
8. Comply with the provisions of the Apprentice Agreement.
9. Follow your sponsor's written work rules and policies.
10. You must be accompanied by a journeyperson while on the job site.

**Sponsor Responsibilities**

1. Provide a safe working and learning environment.
2. Provide supervision and training by a journeyperson on the job site at all times.
3. Provide well-rounded training so the apprentice has learned all aspects of the trade by the completion of the training program as listed in the Work Schedule
4. Monitor the apprentice's on-the-job progress and provide feedback on performance.
5. Comply with the provisions of the Apprentice Standards and Apprenticeship Agreement.

**Office of Apprenticeship Training Responsibilities**

1. Develop, register and monitor programs to ensure conformity to state statutes, regulations, standards and policies.
2. Review employers and apprentices.
3. Assist apprentices and employers with questions or concerns.
4. Provide technical assistance; i.e., complaints, work changes, and problem solving.
4. Confer with the providers of related instruction to assure quality classroom training.
5. Maintain Equal Opportunity and Affirmative Action Compliance.

Apprentice Handbook and Progress Record

## 2. **The Apprentice Registration Agreement**

The Apprentice Registration Agreement is a legal, binding document between you, your sponsor and the State of Connecticut. The terms and conditions of your training are contained in the Agreement including the start date of the apprenticeship. Pay raises are determined by the start date along with accumulation of work hours.

Your apprenticeship is valid only for the number of years/hours that is listed on your registration agreement. Failure to complete the required on-the-job training hours and related classroom instruction in this time frame will result in your **termination** from the program.

Please take time to review your copy of the Agreement. It should be thoroughly understood. You will receive your copy of the Agreement by mail. This is your record of registration and lists important information such as your wage progression, trade registration category and any credit for previous registered experience **(unregistered work hours are not counted toward the completion of the program)**. If you have any questions about the Agreement, call your Apprenticeship Representative listed on our website.

The Agreement contains the following sections that are important for you to read and understand:

- *Section 3 - Trade and Credit Hours-Extent of Period of Apprenticeship (Term)*. This section describes the length of the apprenticeship program. The term is stated as a total number of hours and months.
- *Section 3 - Trade and Credit Hours-School Information.* If you are receiving on the job training credit for being a Connecticut Technical High School graduate or an approved proprietary school graduate it will be listed under Tech Grad Credit in this section. This must always be supported by documentation.
- *Section 3 - Trade and Credit Hours-OJT Credit Hours.* Credit for previously registered apprenticeship hours are listed in this section
- *Section 4 - Previous Credit- Credit Provisions.* There are two types of credit that may be applied to the Registered Apprentice Agreement.
  (1) Credit for time served under a previous Connecticut registered apprenticeship program in which you were registered; and (2) Credit for time served under a previous federal or state registered (that state agency recognized by the US Department of Labor)

4

Apprentice Handbook and Progress Record

apprenticeship program in which you were registered. This must always be supported by documentation.

- *Section 5 - Wage Progression Chart-Minimum Compensation to be Paid*. A progressive wage schedule is stated as a percentage of the journeyperson wage rate. The sponsor must pay the apprentice the minimum stated amount The sponsor may also pay the apprentice more than the skilled wage rate. When the apprentice's wage is governed by a bargaining agreement, then that agreement governs and supercedes the Apprentice Registration Agreement. Apprentices assigned to prevailing wage project jobs must be paid their percentage of the sponsor's minimum completion wage rate or the project journeyperson's rate (prevailing wage) whichever is higher, plus 100% of the fringe benefits listed in the wage determination for their occupational classification.

## 3.  Probationary Period

A Probationary Period is required in each apprenticeship. It provides an opportunity for both the sponsor and the apprentice to adjust to each other and to the program. Should either you or your sponsor wish to cancel the Agreement during the Probationary Period, either party can do so by notifying the Office of Apprenticeship Training in writing of this decision. Unless otherwise stated, the length of the Probationary Period is the first wage progression period.

## 4.  Related Instruction and the Importance of School Attendance

Apprenticeship training combines several aspects as part of an overall strategy to train a skilled worker. This strategy combines supervised, structured on-the-job training and related instruction.

The importance of related instruction is twofold; the industry has uniformity of instruction and you, as an individual apprentice, are given the theoretical knowledge of your trade. This is what adds value to you as an individual, to your career, and to your industry.  The related instruction is the academic portion of the apprenticeship, and is usually provided by the Connecticut Technical High School Extension Division, merit shop association school, union JATC school or an approved proprietary school.

Related instruction is an integral part of every apprenticeship and is required by Connecticut apprenticeship regulations. Every sponsor has

Apprentice Handbook and Progress Record

the responsibility to arrange for the apprentice to attend related instruction. If the apprentice attends related instruction through the Connecticut Technical High School Extension Division, the sponsor is required to pay 50% of the cost of tuition at the time of class registration. It is not mandatory for your sponsor to pay for your books. Book costs are your responsibility.

It is your employer's responsibility to release you from work to attend the required school. Work is not a valid reason for missing school. Failure to attend is a violation of Connnecticut apprenticeship regulations. Excessive absenteeism or tardiness from school may lead to termination of your apprenticeship.  It is your responsibility to follow your school's attendance notification procedure.

## 5.  <u>Work Records</u>

It is highly recommended that you and your sponsor maintain a record of your progress. Because the training and schooling extends over several years, a record is required to assure all parts of the program have been covered. Also, if discrepancies occur concerning the training, there is an accurate record of hours worked. Your official work records should be signed and dated monthly by you and your employer. The Apprentice Progress Record is included as part of this handbook.

## 6.  <u>Layoffs</u>

If a reduction in workforce becomes necessary, the suspension and reinstatement of apprentices shall be done in relation to retention of the most advanced apprentice.

If you are laid off because of lack of work the sponsor does have the option of listing you as inactive rather than terminated. The following conditions will apply:

- The apprentice may be listed as inactive for a maximum of six months.
- If the layoff lasts longer than six months, the apprentice will be terminated but is still entitled to recall and reinstatement for two years from the original date of layoff.
- The sponsor will continue to pay his share of the inactive apprentice's cost of related instruction.
- The apprentice must continue to attend RI.  If he does not attend, he must be terminated and would lose all right to recall and reinstatement.

6

Apprentice Handbook and Progress Record

- The sponsor may terminate according to the old policy if the lay-off is expected to be permanent.
- All laid-off apprentices continue to have the same two-year recall right before new apprentices may be hired by the sponsor.
- The sponsor must notify the department in writing of any change in the status of an apprentice whether inactive, terminated, reactivated or rehired.
- If the apprentice is hired and registered by another sponsor, his connection to the original sponsor is broken and that sponsor is no longer obligated by the two-year recall and reinstatement policy.
- The inactive apprentice is still registered and attending RI but will not accumulate OJT hours toward the completion of his program.

## 7.  Discipline

You may be subject to disciplinary procedures when failing to make satisfactory progress or failing to meet your responsibilities in the apprenticeship program.

Behaviors that could lead to disciplinary action including termination of your apprenticeship, include, but are not limited to:

- Failure to abide by safety procedures and drug policies;
- Failure to follow work rules and procedures established by the sponsor;
- Disruptive behavior on-the-job or in related instruction;
- Failure to follow the directions of your sponsor;
- Failure to submit on-the-job training records as required;
- Failure to fulfill all related instruction requirements;
- Unsatisfactory grades for related instruction courses;
- Unsatisfactory attendance (including tardiness) for related instruction courses;
- Unsatisfactory attendance (including tardiness) at the job site;
- Failure to register for related instruction.

## 8.  Harassment

You have the right to a harassment free workplace and school setting. We find that apprentices for the most part act professionally in the classroom and on the job site. We have also found though, that when harassment* does occur, it is most often between apprentices.

7

Apprentice Handbook and Progress Record

Therefore, we want to enlist your help to eliminate harassment and to support respect. You can do the following to ensure you and your co-apprentices all receive the respect you deserve.

- Consider all apprentices your equal, personally and professionally.
- Respect other apprentices' opinions and beliefs about work, study, and personal goals.
- Acknowledge that each apprentice comes from a different background socially, economically, and ethnically, and each brings new knowledge to your classroom, worksite and the industry.
- Understand that it is awkward for most people to tell another person that certain behavior and activities offend them.
- Act on your instincts; if you feel you are taking a chance of offending someone with your words or actions, you probably are.
- Offer support to your classmates and co-workers if they are being harassed.
- Discuss any harassment you witness or experience with a person in authority.

Harassment, whether committed by students, co-workers, supervisors, or instructors needs to be addressed immediately. If harassment does occur in your classroom or on the jobsite, you have the right to seek assistance confidentially and without penalty or retribution. Policies will be in place in your employer's Human Resource office or at your union office that describe a procedure to address harassment. The best course of action is to follow the procedures. If you are unsure or uncomfortable about following the stated procedures, discuss the issue with your sponsor or union representative or contact your DOL Regional Apprenticeship Representative. While procedures used to address harassing behaviors might vary, the common goal for partners in apprenticeship training is the same; *to provide a supportive and respectful learning and working environment for apprentices.*

*\* The term harassment includes slurs, jokes, and other verbal, graphic or physical conduct relating to an individual's race, color, gender, religion, national origin, citizenship, age, handicap or disability, marital status or sexual orientation. Harassment also includes sexual advances, request for sexual favors, unwelcome or offensive touching, or other verbal, graphic, or physical conduct of a sexual or gender based nature.*

## 9.  Discrimination

Discrimination by sponsors, unions, and educational institutions is illegal when it is directed at an individual who is a member of a "protected

Apprentice Handbook and Progress Record

class*". It is unfair and unproductive when it is directed at an individual, exclusive of others at the worksite or in the classroom. Discrimination might take place prior to employment, but can also take place during employment. It stems from categorizing individuals based on stereotypes, and training or interacting with an individual based on the stereotype and without consideration of the individual's ability, skill, experience, or motivation. Supervisors and instructors are charged with providing equal training to all apprentices. Since there are not always policies that cover discrimination during training or employment, it is important that you discuss situations that you think might be discriminatory with a supervisor. These discussions should be held or kept confidential, and, like raising a harassment issue, should not result in penalty or retribution. You can also discuss a discrimination concern with your Regional Apprenticeship Representative.

*Protected classes include race, color, sex (gender), religion, national origin, age, arrest/conviction record, sexual orientation, marital status, ancestry, Vietnam-veteran status, and non-job related physical or mental handicap.*

## 10.  Complaint Procedure

A complaint is a question or request for assistance to solve a problem, or alleged problem, regarding any part of the apprenticeship program. If you have a concern/complaint related to your apprenticeship training, discuss it with your sponsor.

If you would like to pursue the complaint further, the complaint must be made in writing and submitted to:

Apprenticeship Program Manager
Office of Apprenticeship Training
Connecticut Department of Labor
200 Folly Brook Blvd.
Wethersfield, CT 06109

The Office of Apprenticeship Training personnel will then conduct an investigation and attempt to seek resolution. The Office of Apprenticeship Training normally has ninety (90) days to issue a decision.

Apprentice Handbook and Progress Record

## 11. <u>Veterans Benefits</u>

Some military veterans enter Connecticut apprenticeship programs after their discharge from the military or while serving as an active military reservist. If you are a military veteran who is eligible to collect Veterans Educational Benefits (GI Bill), you may do so while serving your apprenticeship.

This benefit is an entitlement paid directly to you as the veteran apprentice, not money to the sponsor to offset the cost of training. The benefit rate is at its highest level during the first six-month period when apprenticeship wages are at their lowest. You are paid at a reduced rate during the second six-month period and reduced again to a fixed amount for the remainder of the program.

The Office of Apprenticeship Training assists in completion of the Sponsor's VA benefit paperwork to ensure that it is completed and submitted properly. Additional information can be obtained from the Department of Veteran's Affairs' web address at <u>www.gibill.va.gov</u>.

## 12. <u>Military Active Duty</u>

If you are called to active duty during your apprenticeship, your Apprentice Agreement is put on hold. Have your sponsor contact your Regional Apprenticeship Representative so your file can reflect your current status. When you return from active duty, you can resume your apprenticeship. By law, your former sponsor is obligated to employ you when you return, if work is available and if you apply to your sponsor within the required period of time.

## 13. <u>Completion Procedures</u>

**What is required?**

The Apprentice Registration Agreement specifies the length of time that is required in order to graduate as a journeyperson within your trade.

The completion of an Apprentice Registration Agreement is based on satisfactory performance and accomplishment of these required objectives:

Apprentice Handbook and Progress Record

- Complete the "Term" [extent of period of apprenticeship] in year(s), hours, or a combination of both years and hours, depending on your specific trade. A letter or Form AT-22 needs to be provided by your sponsor indicating the term and work processes have been completed and the date they were completed.

- Completion of "Related Instruction", the required hours of related classroom instruction as listed in the Work Schedule for your trade from an instructional program previously approved by the Connecticut State Department of Education, Technical High School System. A letter/diploma or Form AT-23 must be submitted to the Regional Apprenticeship Representative indicating completion of related instruction from the approved teaching facility.

- Completion of "Special Provisions." Apprentices registered in the occupationally licensed trades are required to pass the appropriate journeyperson license examination as administered by the Connecticut Department of Consumer Protection, Occupational and Professional Licensing Division, prior to being awarded a completion certificate.

- In unlicensed trades, once the Office of Apprenticeship Training receives notification from your sponsor and school, the Office will then issue a Certificate of Apprenticeship and a Pocket Journeyperson Card.

## *Apprenticeship Standards*

The Connecticut State Apprenticeship Council, established under State Statutes, is composed of members with broad experience in the field of Apprentice Training. Recommendations of the Council are submitted to the Connecticut Labor Commissioner for adoption. The Commissioner of Labor has adopted regulations governing the Apprentice Work Training Standards (Sec. 31-51d-1 to 12).

The following Apprenticeship Standards have been adopted by the Council as the basic standards of approval for an Apprentice Program. The Council has made provisions for special requirements as part of each sponsor's standards submitted for review and approval. The regulations for the Commissioner of Labor's Work Training Standards for Apprenticeship and Training Programs are incorporated by this reference as part of the following standards.

Apprentice Handbook and Progress Record

## 1. __Special Provisions__

Explain any terms and conditions that govern this sponsor's program, which deviate from the language that follows. (Reference the Section of standards and add additional sheets if necessary.)

## 2. __Definitions__

**Sponsor** means the duly established firm, association, committee, organization or corporation permanently located within the State of Connecticut in whose name this program is approved and registered.

**Employer** means the sole owner, partnership or corporation that employs apprentices for wages; is responsible for the on-the-job training of apprentices; is a party of these standards either as a program sponsor or as a participant under the jurisdiction of a Joint Apprenticeship Committee.

**Joint Apprenticeship Committee** means a committee composed of equal representation of employer and labor members sponsoring an apprenticeship program.

**Apprentice** means a person training under a written agreement which provides specific terms of apprenticeship and employment including but not limited to wage progression; specific hours of job training processes; hours and courses of school instruction which satisfactory completion thereof provides recognition as a qualified professional, technical, craft or trade worker.

**Journeyperson** means any person who has completed an apprenticeship or is recognized/classified as a skilled person and possesses a valid Journeyperson card or occupational license when required.

**Council** means the Connecticut State Apprenticeship Council which recommends policy concerning apprenticeship to the Commissioner.

**Department** means the Connecticut Labor Department, which is the registration agency for all programs.

**Related Instruction** means an organized and systematic form of instruction designed to provide the apprentice with knowledge of the theoretical and technical subjects related to his/her trade.

Apprentice Handbook and Progress Record

### 3.    <u>Qualifications for Applicants</u>

**Age:** Applicants must not be less than 16 years of age.

**Education:**  Applicants shall possess the basic education necessary for entry-level training. A minimum education level factor may be determined by the sponsor as part of the Special Provisions in Section I.

**Physical:**  Applicants must be able to perform the essential functions of the trade.

### 4.    <u>Recruitment, Selection, Employment and Training Procedures</u>

**Equal Opportunity Pledge**

The recruitment, selection, employment and training of apprentices shall be without discrimination because of race, color, religious creed, age, marital status, national origin, ancestry, sexual orientation, learning disability or physical disability including but not limited to blindness; unless such disability prevents the apprentice or potential apprentice from performing the essential functions of the work involved in the apprenticeship program. The sponsor will operate the apprenticeship program as required under applicable laws, regulations and executive orders.

**Affirmative Action Plan**

A specific selection procedure and affirmative action plan must be developed when the program attains an enrollment of five or more apprentices. The Department will assist the sponsor in the development of a selection procedure and affirmative action plan.

**Recruitment Procedures Under An Affirmative Action Plan**

*Present Employees*:    Apprentices may be selected from the sponsor's existing workforce providing its composition does not indicate a discriminatory pattern.

*New Employees*:    Selection of apprentices from new employees must be made from a pool of eligible individuals. The Department will provide technical assistance to the sponsor for recruitment to attain goals and timetables.

13

Apprentice Handbook and Progress Record

## 5.    Term of Apprenticeship

The standard term of apprenticeship for each trade objective is defined herein. Appended to these standards is a work training process schedule for each trade objective. (Schedule "A")

Apprentices shall receive instruction and work experience to reach proficiency in the various skill processes throughout the training period. The sponsor will assure that proper record keeping is maintained. If conditions arise which preclude inclusion of certain skill processes, the work training schedule is to be modified in accordance with Section XIV of these standards.

The probationary period allows both the apprentice and the sponsor an opportunity to evaluate the training situation. Unless otherwise stated in Section I, the first wage period shall be considered a probationary period wherein either the apprentice or the sponsor may cancel the agreement. Apprentices entering with advanced standing will serve an equivalent period.

Each apprentice is entitled to have previous job experience and school training evaluated by the sponsor for the purpose of applying credit hours to reduce the standard training period. The amount of credit granted will be made part of the agreement. Apprentices admitted to advanced standing shall be entitled to rate of pay schedule established for the appropriate period.

Prior to each period of wage advancement, an evaluation of each apprentice for satisfactory progress in job skills and classroom training will be conducted by the sponsor. If job or classroom progress does not warrant advancement, the apprentice may be permitted to continue on a specific probationary period, not to exceed six months, prior to termination of the agreement. The Department shall be notified of the term of probation and all terminations.

## 6.    Apprentice Agreement

The Apprentice (and if a minor, his/her parent or guardian) and the sponsor shall sign an apprenticeship agreement making the apprenticeship standards a part thereof. Each agreement is subject to approval by the Chair of the State Apprenticeship Council prior to distribution to the apprentice and the sponsor and employer where applicable. (Schedule "D")

Apprentice Handbook and Progress Record

## 7. **Wage, Hours and Conditions of Work**

The workday and work week for apprentices shall be determined by the program sponsor. Employment of apprentices on regular shifts is encouraged to allow direct supervision by a journeyperson or supervisor of apprentices. Time spent in related classroom instruction, if during a scheduled work period, shall be considered as time worked and paid accordingly with the exception that the hours spent in classroom instruction may not be used in computing overtime.

Apprentices shall receive wages in accordance with the currently effective minimum wage schedule. (Schedule "C")

## 8. **Continuity of Employment**

When the program sponsor is the employer of the apprentice it will be the intention of the sponsor to give the apprentice continuous full-time employment and training. However, conditions of business may make it necessary to temporarily suspend the period of apprenticeship. Such periods of suspension shall not be for intermittent periods. Apprentices whose term of apprenticeship is suspended for the above reason will be given the opportunity to be re-employed or to resume their training before additional apprentices are employed. The suspension and reinstatement of apprentices shall be done in relation to retention of the most advanced apprentice.

When the program sponsor is not the employer and when the employer to whom the apprentice is assigned is unable to fulfill is obligations as a trainer, the sponsor will endeavor to transfer the apprentice to another employer under the same program who can fulfill the apprenticeship responsibilities, This will be done with the consent of the apprentice and the sponsor and with full credit to the apprentice for satisfactory time and training earned.

The Connecticut Department of Labor shall be notified of changes in the training status of all apprentices.

## 9. **Training Capability Ratio**

The numeric ratio of apprentices to journeypersons shall be consistent with proper supervision, training, safety, reasonable continuity of employment and applicable provisions in collection bargaining agreements. Each program's ratio requirements are reviewed based on

Apprentice Handbook and Progress Record

such factors as specific trade requirements, availability of skilled personnel, previous training history, economic factors, affirmative action efforts and such other factors which may be pertinent to a successful program operation. Regardless of any established hiring ratio, the work site ratio shall not be less than one full-time journeyperson instructing and supervising the work of each apprentice in a specific trade.

## 10. Related Instruction

The apprentice will be given instruction in related subjects, which assist him/her to qualify for journeyperson status. A minimum of 144 hours per year is required. The Department may, with the advice of the Council and in the best interest of apprenticeship, reduce or increase the hours of related instruction. The instruction may be delivered in a classroom (through trade or industrial courses) by correspondence courses of equivalent value or by other forms of self-study.

## 11. Safety

The employer shall instruct the apprentice in safe and healthful work practices and shall insure that the apprentice is trained in facilities and other environments that are in compliance with State and Federal occupational safety and health standards.

## 12. Apprentice Responsibilities

- Make every effort to understand the apprenticeship program and abide by all rules established by the program sponsor.

- Attend regularly and complete the required hours of instruction in subjects related to the trade.

- Maintain records as may be required of work experience and related instruction.

- Conform with safe working procedures as instructed to assure their own safety as well as the safety of fellow workers.

- Perform diligently and faithfully the work of the trade

## 13. Certificate of Completion

Upon notification by the sponsor that the apprentice has satisfactorily

Apprentice Handbook and Progress Record

completed his/her apprenticeship, the apprentice will be issued a *Certificate of Completion* by the Connecticut State Apprenticeship Council provided program requirements have been met. The apprentice will be advanced to no less than the minimum.

## 14.  **Complaint Procedures**

Complaints concerning discriminatory or other equal opportunity matters must be submitted, in writing, processed and resolved in accordance with state and/or federal equal opportunity laws, regulations and executive orders. The Department will attempt to reach an informal resolution of the complaint and will submit to the Commission on Human Rights and Opportunities the resolution for their disposition.

Other complaints arising under an apprenticeship agreement not resolved informally or which are not covered by a collective bargaining agreement may be submitted in writing by an apprentice or his/her authorized representative to the Department for review. In the event of any differences regarding the terms of this agreement, either party may request assistance from the Council.

## 15.  **Modification**

Any modifications or exceptions shall be listed in Section I of these standards under Special Provisions and approved by the Department.

## 16.  **Program Deregistration**

**Request from Sponsor**

The Department may cancel the registration of an apprenticeship program by a written acknowledgment of such request stating but not limited to the following:

- The registration is canceled at the sponsor's request, giving the effective date of such cancellation.

- That within 15 working days of the date of the acknowledgment, the sponsor must notify all apprentices of such cancellation and the effective date and that such cancellation automatically deprives the apprentice of his/her individual registration.

Apprentice Handbook and Progress Record

**Deregistration by Department**

Deregistration proceedings may be undertaken when the apprenticeship program is not conducted, operated or administered in accordance with applicable laws and regulations. The Department may allow the sponsor a reasonable time to achieve voluntary corrective action. The Council may conduct an informal hearing prior to a formal notice.

## 17.   <u>Reinstatement of Programs</u>

Any apprenticeship program deregistered may be reinstated upon presentation of adequate evidence that the apprenticeship program will operate in accordance with applicable laws and regulations.

Apprentice Handbook and Progress Record

FORM A: The **Apprentice Agreement** is a written agreement between the Apprentice, the Sponsor and approved by the Office of Apprenticeship Training. The agreement sets forth the responsibilities and obligations of all the parties to the Contract. A sample Apprentice Agreement is provided on the following pages.

AT-5 Rev 12/06
Form 1 of 3



| SAMPLE |

**OFFICE OF APPRENTICESHIP TRAINING**
**Connecticut Department of Labor**
**Apprentice Registration Agreement**

For Office Use Only
Registration Date

**(PLEASE PRINT OR TYPE)**

### Section 1 – Apprentice Information

Apprentice Name    Jane Smith                                    Date    11/1/05

Address    1 Any St., Any City, CT 00000

Name of Program Sponsor    Doe Electric Inc.

Address    1 Main St., Any City, CT 00000

### Section 2 – To Be Completed By Apprentice

Date of Birth    8/2/1980            Social Security #    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            Sex    ☐ Male  ☐ Female

Are you a veteran?  ☐ Yes  ☐ No   Are you a veteran, eligible dependent or member of the National Guard or
Reserve that is currently collecting GI Bill benefits from the Dept. of Veterans Affairs?    ☐ Yes  ☐ No

Ethnic Group   ☐ White              ☐ Hispanic              ☐ Asian or Pacific Islander
               ☐ Black/African American  ☐ Native American      ☐ Other

Education:   ☐ 8th Grade or less     ☐ GED     ☐ 9th thru 12th      ☐ High School or Greater

### Section 3 – Trade and Credit Hours

Trade    Electrician E-2                    Full Term of Apprenticeship    8,000    Hrs    48    Mos.

Graduate of High/Technical School    City High School, Anytown, CT                    Year    1998

OJT Credit Hours
Previously Registered Credit:    2,000        Tech Grad Credit:    1500        Total Credit Hours    3500

### Section 4 – Sponsors Previous Registered With

                                                                    Dates Registered
(1)   Jones Electric, Anytown, CT                    from   1/1/2000   to   1/1/2001   Hours   2,000
(2)                                                  from              to              Hours

### SECTION 5 – Refer To Your Wage Progression Chart
Apprentice Wage Progression for each Period - in percentage (%)

| 1st | 2nd | 3rd | 4th | 5th | 6th | 7th | 8th | 9th | 10th | 11th | 12th |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 50% | 55% | 60% | 65% | 70% | 75% | 80% | 85% | | | | |

Current Minimum Completion Rate:    $    18.00    per hour        Current hourly rate:    $    10.80

The parties hereto agree to the terms stated on Page 2 as part of this agreement.

_____            _____
Signature of Apprentice                    Signature of Official Sponsor Representative

_____            _____
Signature of Parent or Guardian (for minor age 16 and 17)    Print Name & Title of Sponsor Representative

_____            _____
Approved by the Office of Apprenticeship Training            Date
Apprenticeship Program Manager

AT-5 Rev 12/06
Form 1 of 3

## TERMS OF AGREEMENT

The Program Sponsor, the Apprentice, and his/her Parent or Guardian, in conformity with the terms and conditions provided herein, hereby agree to the following:

In conformity with the Program Sponsor's Standards as approved or amended in accordance with the Commissioner of Labor's Work Training Standards for Apprenticeship and Training Programs are as follows:

The Sponsor agrees to employ the Apprentice for the purpose of enabling said Apprentice to learn and acquire the trade or craft upon the terms and conditions contained in the Standards without discrimination because of race, color, religion, national origin, age, physical disability or sex. The sponsor is responsible to ensure attendance of related instruction for all registered apprentices in their program at an approved institution.

The apprentice registration date is the date the completed apprentice agreement (AT-5) is approved by the Department of Labor.

The Apprentice agrees to perform diligently and faithfully the work of the trade or craft complying with the training program contained in the Standards.

Your apprenticeship is valid only for the number of years/hours as listed on this registration agreement. Failure to complete the required on-the-job training hours and related classroom instruction in this time frame will result in your termination from the program. The Department of Labor will not recognize an individual as an apprentice beyond 6 months of the date of completion of the required on-the-job training hours.

In occupational licensed trades, upon successful completion of your on-the-job training hours and related instruction, an "Eligibility for License Examination" letter will be issued. The letter will allow you, upon application to the Connecticut Department of Consumer Protection, Occupational and Professional Trades Division, to sit for the occupational license examination in your trade category.

Pursuant to U.S.C.F.R. Title 29, Part 5 and C.G.S. 31-53, apprentices assigned to Prevailing Wage Project jobs must be paid their percentage of the program sponsor minimum completion rate or the project journeyperson's rate (Prevailing Wage), whichever is higher, plus 100% of the fringe benefits listed in the wage determination for their occupational classification.

Apprentice Handbook and Progress Record

FORM B: The **Apprentice Identification Card** signifies that you have been registered in a bona fide apprenticeship program. Make sure you obtain your apprentice identification card from your sponsor after your registration is approved. You **must** carry a valid apprentice identification card at all times while on the job and register for related instruction. Your apprentice identification card is **only valid for the sponsor with whom you are registered and carries an expiration date.** If you leave a sponsor and go to work for another sponsor, you must be **re-registered.**

**Sample Apprentice Identification Card**

APPRENTICE IDENTIFICATION

Opportunity Guidance Support

| | |
|---|---|
| Issued To: | Jane Smith |
| Registration #: | 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 |
| Registered With: | Doe Electric Company |
| Trade | Electrician (E-2) |

Not transferable to another sponsor nor valid after 6/30/07
Connecticut State Apprenticeship Council
CONNECTICUT DEPARTMENT OF LABOR

(Signature)
Apprenticeship Program Manager

*www.ctapprenticeship.com*

Apprentice Handbook and Progress Record

---

FORM C: The **Completion Form** (AT-22) is used by the sponsor to notify the Office of Apprenticeship Training that an apprentice has completed the on the job training portion of the program. Verification of completion of related classroom instruction must accompany the completion form for the packet to be complete.

### Sample Completion Form

Completion Form (AT-22)
Revised 10/03

Date: _____

Please fill in information requested below and attach required documentation. Return to:

**Office of Apprenticeship Training - Completion**
**Connecticut Department of Labor**
**200 Folly Brook Boulevard**
**Wethersfield, CT 06109**

Please be advised that apprentice _____
(Name – Print or Type exactly as desired on certificate)

_____
(Current Address)

has satisfactorily completed his/her training in the trade of _____

on _____ and is recommended for a Certificate of Apprenticeship Completion.*

Total hours/years of training program _____

Completed related classes at _____
(Name of School)

Graduated from _____    _____    _____
(Technical School)            (Course)          (Year)

Attach documentation (**required**) regarding completion of related instruction.

**If a licensed trade:**
License (to be) applied for _____
(Type and Number)

_____
(Sponsor)

_____
(Address)

_____
(Signature & Title of Authorized Representative of Sponsor)

_____
(Print Name and Title of Authorized Representative of Sponsor)

*www.ctapprenticeship.com*

Apprentice Handbook and Progress Record

FORM D: The **Eligibility Letter** is included with the occupational license application to apply for an occupational license through The Department of Consumer Protection, Occupational and Professional Licensing Division.

### Sample Eligibility Letter

Apprentice's Name
Company Name
Street Address
City, State Zip

RE:     **SS#:**           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
          **SPONSOR:**    Company Name
          **TRADE:**      Plumbing and Heating

Dear _____:

This office recently received notice from your apprenticeship program sponsor that you have completed training requirements in the above referenced licensed occupation. Enclosed is an "Application for Trade License" packet for your licensing examination.  Please submit this letter with enclosed application and appropriate fees to:

Department of Consumer Protection
Occupational & Professional Licensing
165 Capitol Avenue
Hartford, CT 06106

Be sure to attach **THIS** letter when submitting your application. **DO NOT** attach a photocopy.

Upon verification that you have attained the appropriate occupational license, a certificate of completion will be issued to you by the Department of Labor.

**PLEASE NOTE:**  Applicant must apply for the test within 30 days of the above date in order to be legally employed as an apprentice, in accordance with Section 20-33a as amended by Public Act 84-487.

If you have any questions regarding your exam or exam date contact the Department of Consumer Protection at 860-713-6135.

Sincerely,


Apprenticeship Program Manager
Connecticut Department of Labor


*www.ctapprenticeship.com*

# EXHIBIT J

according to the advanced standing granted.

1103.18  Each apprenticeship program shall require advance approval by the Director of any award of advanced standing or credit greater than one-fourth (¼) of the prescribed term.

1103.19  Each apprenticeship program shall require the use of qualified training personnel approved by the Apprenticeship Council.

1103.20  Each apprenticeship program shall provide recognition of successful completion of apprenticeship as evidenced by the appropriate certificate issued by the Apprenticeship Council.

1103.21  Each apprenticeship program shall identify the registration agency as the Apprenticeship Council.

1103.22  Each apprenticeship program shall require the sponsor to obtain the approval of the Apprenticeship Council for any modification or amendment to a registered program.

1103.23  Each apprenticeship program shall require not less than two (2) weeks written notice of any proposed adverse action including detailed specifications of the cause with written notice indicating the opportunity for corrective action during the two week period, unless such a requirement is in conflict with a collective bargaining agreement and a lesser requirement is approved by the Council.

1103.24  Upon the request of the sponsor of any multistate apprenticeship program in any industry other than building and construction, the Apprenticeship Council shall register such a program, if the sponsor demonstrates that the program is registered by any recognized State Apprenticeship Agency or Council or by the U.S. Department of Labor Bureau of Apprenticeship and Training.

1103.25  Each apprenticeship sponsor shall maintain a street address in the District of Columbia for the purpose of having records of apprentices and shall make such records available for review.

1104  DEREGISTRATION OF APPRENTICESHIP PROGRAMS

1104.1  At the sponsor's request, the Apprenticeship Council may deregister an apprenticeship program by giving written notice to the sponsor, indicating that the program is voluntarily deregistered and giving the effective date of such action.

5

# EXHIBIT K

# KANSAS APPRENTICESHIP COUNCIL

## *POLICY MANUAL*

Registered Apprenticeship is a voluntary program designed to afford an unskilled person the opportunity to obtain training that will equip them for profitable employment.

### Objectives

The objectives of Registered Apprenticeship Training are:

1) to assist unskilled persons in obtaining training in an apprenticeable occupation that will help to meet the current needs for skilled workers and the needs of future economic conditions, technological developments and national security; and

2) to increase the job opportunities, earning ability and security of the apprentice.

3) to mesh private-sector apprenticeship efforts with the Workforce Investment Act (WIA) and Education for a more systematic and comprehensive approach to industry training in an effort to meet the skill needs of the future.

## PART I

### KANSAS APPRENTICESHIP COUNCIL

### Authority

The Kansas Apprenticeship Council, hereinafter referred to as the Council, exists through KSA 44-661 et seq.

### Membership

The Council shall be composed of nine members as follows: four members' representatives of management appointed by the Secretary of Commerce, four members' representatives of labor appointed by the Secretary of Commerce and the Secretary of Commerce or the Secretary's designee. All members appointed by the Secretary of Commerce shall possess considerable knowledge of apprenticeship and apprenticeship programs. The Director of Apprenticeship shall serve as staff to the Council.

The State Director of the U.S. Department of Labor, Office of Apprenticeship Training, Employer and Labor Services, shall serve as and ex-officio member of the Council. This

representative's advice and counsel will be considered in matters pertaining to the respective areas of interest.

The Council shall organize annually by electing a Chairperson and a Vice-Chairperson from among the members appointed by the Secretary of Commerce. No two members representing the same sector (management, labor) may serve as Chair and Vice-Chair. The Chair (Vice-Chair in absence of Chair) shall appoint such standing and ad hoc committees as deemed necessary to conduct the business of the Council.

<u>Term</u>

Members shall be appointed to staggered 4-year terms and shall serve until their successors are appointed. When terms expire, incumbents are eligible for reappointment. If, for any reason, a member no longer represents the appropriate sector (management, labor), the Chair shall make a recommendation to the Secretary of Commerce to replace the member. Any vacancy shall be filled by appointment for the remainder of the unexpired term.

<u>Meetings</u>

Meetings of the Council shall be held bimonthly at locations that will best promote the purpose of the Council and apprenticeship. All meetings of the Council shall be open to the general public. Members are expected to attend the Council meetings. Inability to attend meetings will result in the Council's recommendation to seek a replacement for said member.

<u>Notice of Meetings</u>

Notice of each meeting of the Council shall be given to all Council members at least ten (10) days prior to the meeting date. Notice shall be given to such other persons and organizations requesting such notice.

<u>Duties</u>

The Council shall seek voluntary cooperation of management and labor in the promotion of joint and unilateral apprenticeship programs and shall encourage and provide assistance to management and labor in establishing programs of voluntary apprenticeship for training in the skilled trades. The Council shall identify and publish the fundamentals of apprenticeship to be recommended, which in no case may be less than the fundamentals as set forth by the National Apprenticeship Program promulgated by the Advisory Committee on Apprenticeship. They shall work jointly with representatives of the Kansas Department of Labor, Kansas Board of Regents, Kansas Department of Education and other agencies and organizations, both public and private, who are concerned with employment and training in the business and industrial sector. The Council, as recognized by the U.S. Department of Labor, Office of Apprenticeship Training, Employer and Labor Services, shall act as the official registration agency for

apprenticeship programs developed in the State for Federal purposes, and shall register and issue certification of registration for each program.  Additionally, the Council shall:

- register and assign a number to each apprentice in a registered program

- prescribe the contents of apprenticeship agreements

- issue certification of status of any apprentice registered in the State to governmental agencies empowered to request such certification

- upon written request of a sponsor of an apprenticeship program, cause such program and its attendant agreements to be cancelled, deregistered or temporarily suspended

- deregister any program adjudged not to be in conformance with the requirements of the provisions of the Kansas Plan of Equal Employment Opportunity

- deny registration to any proposed program which incorporates provisions for unilateral operation and administration by employers of employer organizations when a collective bargaining agreement or other instrument provides for union participation in any manner in the operation of any phase of the apprenticeship program unless supported by written acknowledgment of union agreement or "no objection"

- exercise approval authority for all construction industry programs in crafts by predetermined wage scale regulations, such as those lying within the purview of the Davis-Bacon Act, prior to registration; said programs will have full Council review at least two (2) weeks prior to Council meeting

- issue certificates of Completion of Apprenticeship when the provisions of the apprenticeship standards have been met successfully

- notify appropriate authorities when apprenticeship agreements have been registered

Administration

- A quorum shall consist of any five members other than the Secretary of Commerce or the Secretary's designee.

- Robert's Rule of Order shall govern the proceedings of all meetings.

- Each member present at a meeting shall be entitled to cast one vote on any motion properly placed before the committee.

- The Secretary of the Department of Commerce, or the Secretary's designee, shall cast a vote only in the event a vote of the membership results in a tie vote.

## PART II

## DEFINITIONS

1) *Apprentice* – a person at least 16 years of age, except where a high minimum age standards is otherwise fixed by law, who is covered by a written apprenticeship agreement approved by the Council

2) *Journeyworker* – a person who has completed either a registered apprenticeship in their craft or the equivalent of an apprenticeship in length and content of work experience and all other requirements in the apprenticeship standards for a craft that has workers classified as journeyworker in an apprenticeable occupation

3) *Registered Apprenticeship Program* – a plan containing all terms and conditions for the qualification, recruitment, selection, employment and training of apprentices, including such matters as the requirement for a written apprenticeship agreement

4) *Apprenticeship Agreement* – a written agreement between an apprentice and either the employer or an apprenticeship committee or sponsor acting as agent for employer(s), providing for not less than 2,000 hours of reasonably continuous employment or competency based training for such person for participation in an approved schedule of work experience and for organized, related instruction in technical related to the trade

5) *Sponsor* – any person, association, organization, or committee operating a Registered Apprenticeship program and in whose name the program is registered

6) *Employer* – any person or organization employing an apprentice whether or not such person or organization is a party to an apprenticeship agreement with the apprentice

7) *Apprenticeship Committee* – those persons designated by the sponsor to act for it in the administration of the apprenticeship program. A committee may be "joint", i.e. it is composed of an equal number of representatives of the employer(s) and of the employees represented by a bona fide collective bargaining agent(s) who has been established to conduct, operate or administer an apprenticeship program and to enter into apprenticeship agreements with apprentices. A committee may be "unilateral", meaning that a bona fide collective bargaining agent is not a participant in the program.

8)    *Federal Purposes* – any Federal contract, grant, agreement or arrangement dealing with apprenticeship; and any Federal financial or other assistance, benefit, privilege, contribution, allowance, exemption, preference or right pertaining to apprenticeship

9)    *Council* – the Kansas Apprenticeship Council

10)   *Department* – the Department of Commerce

11)   *Secretary* – the Secretary of the Department of Commerce

12)   *Manager* – the Apprenticeship Program Manager

13)   *Registration Agency* – the Kansas Apprenticeship Council

## PART III

### APPRENTICESHIP PROGRAM MANAGER

Powers and Duties

The Apprenticeship Program Manager functions with the advice and guidance of the Council, and the cooperation of apprenticeship committees and program sponsors. The Manager is authorized to provide staff support to the Council; to prepare and issue all correspondence pertaining to actions of the Council; and to serve on other committees and councils designated to promote the welfare and economy of Kansas through registered apprenticeship training. Additionally, the Manager is responsible to:

- set up conditions and training standards for apprentice agreements
- issue a Certificate of Registration for each approved program
- register for the Council any apprentice agreement which meets the established standards and assign a number to same
- issue a Certificate of Completion of apprenticeship when the provisions of the registered apprenticeship standards have been met successfully
- terminate or cancel any apprentice agreement in accordance with the provision of such agreement
- maintain records of apprenticeship agreements and their disposition
- promote Equal Employment Opportunity in Apprenticeship
- certify apprentices to federal agencies that require such proof apprenticeship
- conduct compliance review on programs to assure conformance with Committee policies and Federal regulations
- monitor registered apprenticeship programs to ensure they are operated in accordance with all applicable standards
- perform such other duties as are necessary to carry out the intent of the Council

Every apprentice agreement requires three signatures and is subject to approval by the Manager. Every apprentice agreement shall be signed by the Manager, by the apprentice and by an employer, an association of employers or an organization of employees or their agent or by a joint apprenticeship committee. If the apprentice is a minor, the signature of a parent or legal guardian is also required.

## PART IV

### ELIGIBILITY AND PROCEDURE FOR STATE
### REGISTRATION OF A PROGRAM

Eligibility for Federal purposes is conditioned upon a program sponsor's conformity with apprenticeship program standards adopted by the Council and published by the U.S. Department of Labor in this part. In order for a program to be in conformity with these published standards, the program must be registered with the Council, which has been recognized by the Office of Apprenticeship Training, Employer and Labor Services as the official registration agency.

No apprenticeship program or agreement shall be eligible for registration unless it meets the following:

1) it is in conformity with the requirements of this part and the training is in an apprenticeable occupation having the characteristics set forth in Part V

2) it is in conformity with the requirements of the Kansas Plan of Equal Employment Opportunity.

Except as provided for in the following paragraph, apprentices must be individually registered in a registered program. Registration may be affected:

1) by filing copies of each apprenticeship agreement; or
2) subject to prior approval, by filing a master copy of such agreement followed by a listing of the name and other required data, of each individual when apprenticed.

The names of persons in their first ninety (90) days of probationary employment as apprentices under an apprenticeship program registered by the Council, if not individually registered under the program, shall be submitted immediately after employment to the Council for certification to establish the apprentice as eligible for probationary employment.

The Council shall be promptly notified of the cancellation, suspension, or termination of any apprentice agreement and reasons therefore. The Council shall also be notified of apprenticeship completions.

Requests for modification (s) to registered or certified programs shall be submitted to the Council, and, if approved, shall be recorded and acknowledged as an amendment to the program.

In the event apprenticeship standards, a collective bargaining agreement or other instrument provides for union participation in any manner in the operation of the substantive matters of the apprenticeship program and such participation is exercised, written concurrence on the program by the union or "no objection" to the registration is required. When, as a condition of approval, no such participation is evidenced and practiced, an employer of employer's association shall simultaneously furnish to the collective bargaining agent of the employees to be trained, a copy of its application for registration and of the apprenticeship program. The Council shall provide a time period of not less than (30) days and no more than sixty (60) days for receipt of union comments, if any, before final action on the approval.

When the employees to be trained have no collective bargaining agent, an apprenticeship program may be proposed for registration by an employer or group of employers.

## PART V

### APPRENTICEABLE OCCUPATIONS

An apprenticeable occupation is one that requires one or more years of work experience to learn and which conforms to criteria for an apprenticeable occupation, as recognized by the Advisory Committee on Apprenticeship, and as adopted by the Kansas Apprenticeship Council.

An apprenticeable occupation is a skilled trade that possesses all of the following characteristics:

1) it is customarily learned in a practical way through a structured, systematic program of on-the-job training;

2) it is clearly identified and commonly recognized throughout an industry;

3) it involves manual, mechanical or technical skills and knowledge which require a minimum of 2,000 hours of on-the-job work experience, or is competency-based;

4) it requires related instruction to supplement the on-the-job training.

# PART VI

## STANDARDS OF APPRENTICESHIP

In order to be eligible for registration by the Council, an apprenticeship program shall conform to the following standards:

1) the program shall be an organized, written plan which embodies the terms and conditions of employment, training and supervision of one or more apprentices in an apprenticeable occupation that is subscribed to by a sponsor who has assumed responsibility for the implementation of the apprentice training program

2) program standards shall contain the Equal Opportunity pledge adopted by the Council as prescribed in 29 CFR 30.3 (b) and, when applicable, and affirmative action plan in accordance with 29 CFR 30.4, a selection method authorized in 29 CFR 30.5, or similar requirements expressed in the Kansas Plan for Equal Employment Opportunity in Apprenticeship, adopted pursuant to 29 CFR 30, which plan has been approved by the U.S. Department of Labor.

In addition, the following fundamentals must be addressed in the standards of apprenticeship:

1) the employment and training of the apprentice in a skilled trade;

2) a term of apprenticeship, not less than two thousand (2,000) hours of work experience, consistent with training requirements as established by industry practice;

3) an outline of the work processes in which the apprentice will receive supervised work experience and training on the job, and the allocation of the approximate time to be spent in each major process;

4) provisions for organized, related and supplemental instruction in technical subjects related to the trade – a minimum of 144 hours of instruction for each year of apprenticeship is recommended – such instruction may be given in a classroom through trade, vocational training, industrial courses or correspondence courses of equivalent value, or other forms of self-study approved by the committee;

5) a progressively increasing schedule of wages to be paid the apprentice consistent with the skill acquired – the entry wage shall be not less than the minimum wage prescribed by the Fair Labor Standards Act, when applicable,

unless a higher wage is required by other applicable Federal law, State law, or by collective bargaining agreement;

6) periodic review and evaluation of the apprentice's progress in job performance and related instruction and the maintenance of appropriate progress records;

7) the numeric ratio of apprentices to journeymen consistent with proper supervision, training, safety and continuity of employment. Said ratio shall also be consistent with applicable provisions in a collective bargaining agreement, except where such ratios are expressly prohibited by the collective bargaining agreements. The ratio language shall be specific and clear as to application in terms of jobsite, work force, department or plant;

8) A probationary period reasonable in relation to the full apprenticeship term, with full credit given for such period toward completion of the apprenticeship;

9) Adequate and safe equipment and facilities for training, supervision, and safety training for apprentices on the job and in related instruction;

10) The minimum qualifications required by a sponsor for persons entering the apprenticeship program – the eligible starting age shall be not less than sixteen (16) years of age;

11) The placement of an apprentice under a written apprenticeship agreement as required by state regulation – the agreement shall directly, or by reference, incorporate the standards of the program as part of the agreement;

12) The granting of advanced standing or credit for previously acquired, training, or skills for all applicants equally, with commensurate wages for any progression step so granted. An apprentice must serve at least 50% of the term of apprenticeship if the program is one year in length. If the program is two years or longer, the apprentice must serve at least one year;

13) Transfer of employer's training obligation, when the employer is unable to fulfill their obligation, to another employer under the same program with the consent of the apprentice and apprenticeship committee or program sponsor;

14) Assurance of qualified training personnel and adequate supervision on the job;

15) Recognition for successful completion of apprenticeship evidenced by an appropriate certificate;

16) Identification of the registration agency as the Kansas Apprenticeship Council;

17) Provision for the registration, cancellation and deregistration of the program, and requirement for the prompt submission of any modification of amendment thereto;

18) Registration of apprenticeship agreements including any modification and/or amendments;

19) Notice to the registration agency of persons who have successfully completed apprenticeship programs;

20) Notice of cancellations, suspensions and terminations of apprenticeship agreements and causes therefore;

21) Authority for the termination of an apprenticeship agreement during the probationary period by either party without stated cause;

22) A statement that the program will be conducted, operated and administered in conformity with applicable provisions of CFR 30, as amended, or the Kansas Plan of Equal Employment Opportunity in Apprenticeship adopted pursuant to 29 CFR 20 and approved by the U.S. Department of Labor.

23) Name and address of the appropriate authority under the program to receive, process and make disposition of complaints; and

24) Recording and maintenance of all records concerning apprenticeship as may be required by the Committee or any applicable law(s).

## PART VII

### QUALIFYING CRITERIA FOR SPONSORS

All program sponsors shall meet the following criteria:

1) sincere desire and ability on the part of the sponsor to impart thorough training to the apprentice in all skills required by the occupation;

2) journeyworkers in the employ of the sponsor who are qualified, capable and desirous of actively training apprentices in all facets of the occupation;

3) a variety of work experience sufficient to expose the apprentice to all work processes identified in the apprenticeship standards. If this is not possible, provisions must be made to transfer the apprentice from one facility or employer to another to insure that a sufficient range of work experience is provided;

4)  the ability to provide steady work, insofar as possible, to insure that the apprentice's program continues without interruption or delay;

5)  the capability and willingness to keep adequate records and to conduct periodic reviews of the apprentice's progress to insure that the requirements of the apprenticeship standards are met;

6)  the ability and willingness to provide, or make available to, the apprentice an organized related supplemental instruction in technical subjects related to the occupation – this should be in a classroom atmosphere, otherwise, Council approved correspondence courses, on-line/distance learning courses or some type of home study program shall be provided;

7)  supervision of the apprentice sufficient to provide adequate counseling, advice, guidance as to their progress, and recognition for exceptional performance, when applicable.

## PART VIII

### APPRENTICESHIP PROGRAMS

The apprenticeship program shall take the form of one of the following:

1)  Individual Joint (IJ) of Group Joint (GJ)

    A written program between the employer or the employer's association and the employees' organization which describes the terms and conditions of employment and training of apprentices.

2)  Individual Non-Joint (INJ) or Group Non-Joint (GNJ)

    A written program by the employer or employer's association which describes the terms and conditions of employment and training of apprentices where no employee organization exists.

3)  Individual Waiver (IW)

    A written program by the employee's organization or by the employer or employers' associations describing the terms and conditions of employment and training of apprentices in which either party waives participation in writing.

## PART IX

### APPRENTICESHIP AGREEMENTS

Every apprentice agreement entered into shall contain the following:

1) the name, address and signature of contracting parties, including signature of parent or guardian if apprentice is a minor;

2) the social security number, date of birth, race and sex of apprentice;

3) the veteran status and education level of the apprentice;

4) a statement of the trade, craft of business which the apprentice is to be taught;

5) the date on which the apprenticeship begins;

6) the term of apprenticeship, stated in hours, months or years;

7) the number of hours to be spent in related and supplemental instruction, which is recommended to be not less than 144 hours per year;

8) a statement setting forth a schedule of the work processes in the trade or major division in which the apprentice will receive supervised work experience and training on the job, and the allocation of approximate time to be spent in each major process;

9) the graduated scale of wages to be paid the apprentice, which cannot be less than the applicable State of Federal Minimum Wage, generally stated as a percentage of the journeyman's wage rate or in dollar amounts, and whether the required school time shall be compensated;

10) a statement providing for a period of probation during which time the apprentice agreement shall be terminated by the Director at the written request of either party – the probationary period may be stated in months or hours and shall be included as part of the term of apprenticeship;

11) a provision for granting credit to an apprentice for previous work and school experience;

12) a statement that the apprentice shall be accorded equal opportunity in all phases of apprenticeship employment and training, without discrimination because of race, color, religion, national origin or sex.

13) The name and address of the appropriate authority designated under the program to receive, process and make disposition of controversies of differences arising out of the apprenticeship agreement when the differences cannot be adjusted locally of resolved in accordance with the established procedures or applicable collective bargaining agreement;

14) A reference incorporating the standards of apprenticeship as part of the agreement as it exists on the date of the agreement and as it may be amended during the period of the agreement.

A copy of the apprentice agreement shall be furnished to the apprentice, the employer, the Registration Agency and the U. S. Department of Labor's Office of Apprenticeship Training, Employer and Labor Services.


## PART X

### RECORD MAINTENANCE

Council

All business records and reports of the Council shall be kept by the Manager for the Council. Such records shall include: registration requirements, program standards, registration records, program compliance reviews and investigations, Council minutes and any other records pertinent to a determination of compliance.

Program Sponsor

Records of apprentices' progress shall be kept by the program sponsor on an ongoing basic from the start to the completion of an apprenticeship. These progress records shall be kept on the sponsor's premises for a period of five (5) years and shall be accessible to all authorized personnel of the Department and the U.S. Department of Labor's Office of Apprenticeship Training, Employer and Labor Services.

In accordance with Council policy and 29 CFR 30 program sponsors shall keep records as required pertaining to individual applicants for apprenticeship, whether selected or rejected, for a period of five (5) years. Said records shall be made available upon request to authorized personnel of the Department and the U.S. Department of Labor's Office of Apprenticeship Training, Employer and Labor Services. These records shall be maintained in such a manner as to permit identification of female (minority and non-minority) and minority participants.

## PART XI

### APPRENTICE WAGES

Wages for apprentices shall be determined by employers, or by employers jointly with representatives of labor. They should start at approximately 50% of the journeyworker wage rate and be progressive throughout the term of apprenticeship. A gap between the final apprenticeship rate and the journeyworker rate is encouraged.

Wage rates established for apprentices under collective bargaining agreement will be accepted and shall be specifically expressed for each period of apprenticeship in the Standards of Apprenticeship.

The entry wage for an apprentice shall not be less than the minimum wage prescribed by the Fair Labor Standards Act. Whenever possible, the wage rate shall be expressed as a percentage of the journeyworker's wage rate.

## PART XII

### RATIO OF APPRENTICES TO JOURNEYWORKER

The numeric ratio of apprentices to journeyworker shall be consistent with the following:

1)  needs of the plant and/or trade in the community with consideration for growth and expansion;

2)  Safety;

3)  Proper supervision:

4)  Facilities and personnel available for training;

5)  Continuity of employment with assurance of a reasonable opportunity for employment as a journeyman upon completion of apprenticeship; and

6)  Limitations contained in applicable collective bargaining agreements.

The recommended ratio is not more than one (1) apprentice for the first journeyworker regularly employed plus one (1) apprentice for each additional three (3) journeyworkers regularly employed.

## PART XIII

## JOB SKILL TRAINING

Every reasonable effort shall be made to cause apprenticeship program sponsors to fully utilize the job as the primary means of developing the skills of apprentices.

Job Skill Training is emphasized by:

1) causing the program sponsor to include in the apprenticeship program a schedule of work processes outlining the major classes of work of the trade to be learned, and the estimated amount of time required to be spent on each process or required competencies to be successfully completed;

2) maintaining a record of the amount of experience for the apprentice in each work process, and this record in assigning the apprentice such work to assure skilled training and experience in all phases of the trade;

3) advising the program sponsor to use the apprentice's job experience record in evaluating the apprentice's progress and in determining work assignments for additional training and experience;

4) encourage the program sponsor to assign the apprentice to unusual or infrequently encountered jobs or to those requiring a varied combination of skills and knowledge;

5) providing encouragement and guidance to the journeymen in teaching the apprentice; and

6) adequate and safe equipment and facilities for training and supervision, and safety for apprentices on the job and in related instruction.

## PART XIV

## RELATED INSTRUCTION

Related instruction shall be designed to provide the apprentice with knowledge in technical subjects related to the trade. It shall be an organized and systematic presentation of the theoretical, technical and academic subjects considered essential to the development of a competent journeyworker.

One hundred forty-four (144) hours per year of related technical instruction is considered a desirable minimum standard for most trades. Such instruction may be given in a classroom situation, industrial or correspondence course of equivalent value, or other

form of supervised self-study program approved by the Council. Safety instruction shall be included in the required related instruction.

The program sponsor shall be responsible for insuring that the required related instruction commitments are completed by all apprentices for their trade prior to completion of the apprenticeship.

## PART XV

### REVIEW OF PROGRAMS

A review of apprenticeship programs shall be undertaken in order to carry out the provisions of applicable state and federal laws, rules and regulations. The program provisions under which apprentices are to be employed are reviewed for their consistency with apprenticeship fundamentals and recognized apprenticeship policies and practices of industry.

Purpose

    A.    New programs

        Apprenticeship program standards shall be submitted to the Council for review prior to the Council's registration of the program. The Council shall determine if the program standards meet the fundamentals of apprenticeship and criteria pertaining to apprenticeship as identified and recommended by the Council. In no case shall the apprenticeship fundamentals be less than the fundamentals as set forth by the National Apprenticeship Program promulgated by the Advisory Committee on Apprenticeship. Review objectives include: 1) to provide better service to management and labor in the development of apprenticeship programs; 2) to offer suggestions based upon accepted practices and new developments; and 3) to provide a central reservoir of information available to management and labor.

    B.    Existing Programs

        Registered program sponsors shall be contacted periodically to insure that the program is operating in accordance with the apprenticeship standards and the policies and procedures of the Council. Such reviews will include, but not be limited to, the following: wages, work processes, ratio, related instruction and proper supervision and training.

Method

    A. New Programs

        1) Outside Construction Industry

        The Manager shall review Standards of Apprenticeship submitted to the Council. Standards that appear to meet Council criteria shall be electronically forwarded to members for their review through an Executive Summary. A copy of the Work Process and Related Instruction shall accompany the Executive Summary. Comments from Council members shall be returned to the Manager within one (1) week. Approved standards will be ratified at the next Council meeting.

        2) Within Construction Industry

        The Manager shall review Standards of Apprenticeship submitted to the Council. Standards that appear to meet Council criteria shall be forwarded to members for their review. Comments from Council members shall be returned to the Director within two (2) weeks. Approved standards will be ratified at the next Council meeting.

    B. Existing Programs

    Revisions to existing standards may be registered by the Manager between Council meetings when such revisions are deemed to be of a routing nature (i.e. change in journeyman wage rate, probationary period). Such actions shall be submitted to Council members for ratification at the next Council meeting. Other revisions (i.e. addition of trade to standards) will be referred to the Council for their determination in the same manner as new apprenticeship standards.

## PART XVI

### EMPLOYEE-EMPLOYER COOPERATION

Cooperation between an employer and the skilled employees is essential for the proper training of apprentices. The employer provides employment for the apprentice and facilities for the apprenticeship program, including supervision. The skilled employees impart their skills and knowledge to the apprentice.

Organized Employees

Employers or organizations of employers and unions may indicate cooperation in the apprenticeship program in a variety of ways. Those would include: through the terms and conditions of a collective bargaining agreement; through membership on a joint apprenticeship committee; or through acceptance of the program as established by the other, by signature to the program standards or by a letter waving participation in the program. Any change in the bargaining agreement that change the terms of an apprenticeship program must be registered with the Council before being implemented.

Unorganized Employees

While the employers may seek the advice of their employees where they are unorganized, in the establishment of an apprenticeship program, such employees shall not be eligible for recognition as members of a joint apprenticeship committee since they have no authority to speak for other employees.

Joint Apprenticeship Committees

The composition of a joint apprenticeship committee shall consist of an equal number of employer and employee representatives in the trade in which apprentices are to be employed. The duties of said committees shall include: ascertaining employment needs; establishing standards of apprenticeship; responsibility for the operation of the apprenticeship program in accordance with the apprenticeship standards; and such other duties as may be necessary for the effective training and education of the apprentices.

All employers and their apprentices in each trade shall be processed and governed by the same standards. Whether organized or unorganized, the necessity for quality apprenticeship is the same. This will help insure that journeymen throughout the industry are well trained.

When standards of apprenticeship, established by apprenticeship committees, employers, or establishments conform to the fundamentals of apprenticeship as recommended by the Council, they shall be recognized and registered by the Council.

## PART XVII

## LIMITATIONS

Nothing in these policies or in any approved apprenticeship agreement shall operate to invalidate: 1) any apprenticeship provision in any collective bargaining agreement between employers and employees, establishing higher apprenticeship standards; or 2)

any special provisions for veterans, minority persons or females in the standards of apprenticeship, apprentice qualifications or operation of the program, or in the apprenticeship agreement, which is not otherwise prohibited by law, Executive Order or authorized regulations.

## PART XVIII

### RECIPROCITY

Apprenticeship programs and standards of employers and unions which jointly form a sponsoring entity on a multi-state basis shall be accorded registration or approval reciprocity by the Council, in other than the building and construction industry, if such reciprocity is requested by the sponsoring entity. Such programs shall have been registered pursuant to all requirements of this part by any recognized State Apprenticeship Council/Agency or by the U.S. Department of Labor's Office of Apprenticeship Training, Employer and Labor Services.

## PART XIX

### CERTIFICATE OF COMPLETION
### OF APPRENTICESHIP

A Completion of Apprenticeship certificate shall be issued to apprentices upon receipt of a transmittal of apprentice actions from the program sponsor that indicates the apprentice has successfully met all requirements of the apprenticeship standards. If the request is irregular in some respect, the circumstances shall be fully explained for requesting the Completion of Apprenticeship certificate.

When a Completion of Apprenticeship certificate has been issued to an apprentice, they shall also receive a pocketsize identification card. The card shall certify that the apprentice has completed their apprenticeship in the appropriate program.

## PART XX

### EQUAL OPPORTUNITY IN APPRENTICESHIP

The Council shall actively promote equal employment opportunity in apprenticeship under the Kansas Plan of Equal Employment Opportunity in Apprenticeship.

All apprenticeship programs registered with the Council shall be operated provided for in said plan, including the following:

1) applicants who have been placed in a pool of eligibles shall be retained on the list of eligibles, subject to selection, for a period of two (2) years

2) minority and female applicants may be admitted by the program sponsor to eligibility pools or apprenticeship programs without regard to timetables for establishment of such pools or normal ranking procedures when such admittance is necessary to meet affirmative action obligations.

## PART XXI

### INACTIVE PROGRAMS

A program shall be considered inactive when no apprentices are in training under it and other available information indicates the program is no longer operative. Where information indicates that the sponsor is no longer in a position to operate the program, no longer desires to have it registered, or does not intend to carry out the provisions of the program, the Council shall be notified. Following registration of a new program, if no apprentices are registered after 61 days a call or letter will go out to the program sponsor. The letter requires a response from the sponsor, or a decertification process may begin. The Manager shall be authorized to cancel registration of such programs and to take appropriate administrative action.

## PART XXII

### DEREGISTRATION OF REGISTERED PROGRAM

Deregistration of a program by the Council may be effected upon 1) a request by the sponsor for cancellation, and 2) a finding of reasonable cause by the Council during formal deregistration proceedings conducted in accordance with the provisions of this part.

Request by Sponsor

The Council may cancel the registration of an apprenticeship program by written acknowledgment of such request stating, but not limited to, the following matters:

1) the registration is cancelled at the sponsor's request, and effective date thereof;

2) that, within fifteen (15) days if the date of the acknowledgment, the sponsor shall notify all apprentices of such cancellation and the effective date;

3) that such cancellation automatically deprives the apprentice of their individual registration

4) that the deregistration of the program removes the apprentice from coverage for Federal purposes.

<u>Formal Deregistration</u>

1) Deregistration proceedings may commence when the apprenticeship program is not conducted, operated and administered in accordance with the registered provisions or the requirements of this part, except that;

2) Deregistration proceedings for violation of equal opportunity standards shall be processed in accordance with Council policy and the provisions under Title 29 CFR Part 30, as amended;

3) When it appears the program is not being operated in accordance with the registered standards or with requirements of this part, the Council shall notify the program sponsor in writing;

4) The notice shall:

    i)    be sent by registered or certified mail, return receipt requested;

    ii)   state the shortcoming (s) and the remedy required;

    iii)  state that a determination of reasonable cause for deregistration will be made unless corrective action is effected within thirty (30) days;

5) Upon request by the sponsor, if good cause is demonstrated, the thirty (30) day period may be extended for another thirty (30) days – during the period allowed for corrective action, the sponsor shall be assisted in every reasonable way to achieve conformity;

6) If the required corrective action is not effected within the allotted time, the Manager shall send a notice to the sponsor, by registered or certified mail, return receipt requested, stating the following:

    i)    the notice is sent pursuant to this subsection;

    ii)   certain deficiencies (state them) were called to the sponsor's attention with remedial measures requested (including dates of such occasion and letters) and that the sponsor has failed or refused to effect corrective action;

     iii)    based upon the sponsor's failure to remedy the stated deficiencies, a determination of reasonable cause has been made and that the program may be deregistered, unless, within fifteen (15) days of the receipt of the notice, the sponsor requests a hearing;

7) If a sponsor does not request a hearing, the Manager shall transmit a report to the Council containing all pertinent facts and circumstances concerning the nonconformity, including the findings and recommendations for deregistration, and copies of all relevant documents and records;

8) Statements concerning interviews, meetings and conferences shall include the time, date, place and persons present and the Council shall make a final order on the basis of the record;

9) If the sponsor requests a hearing, the Manager shall transmit a report to the Secretary containing all data listed in (8) above – the Secretary shall convene a hearing in accordance with Part XXIV and shall make a final decision on the basics of the record;

10) The Secretary may allow the sponsor a reasonable time to achieve voluntary conformance – in the event the Secretary determines that the program is not operation in accordance with the registered provisions or requirements of this part, the apprenticeship program shall be deregistered – in each case in which deregistration is ordered, the Secretary shall make public notice of the order and shall notify the sponsor;

11) A deregistration order shall provide that the sponsor shall, within fifteen (15) days of the effective date of the order, notify all registered apprentices of:

     i)    the deregistration of the program;
     ii)    the effective date of deregistration;
     iii)    that cancellation automatically deprives the apprentice of their individual registration; and
     iv)    that the deregistration removes the apprentice from coverage for Federal purposes.

## PART XXIII

### REINSTATEMENT

Any Registered Apprenticeship program deregistered pursuant to these regulations may be reinstated upon presentation of adequate evidence that the apprenticeship program is operating in accordance with these regulations. Such evidence shall be presented to the Council, if the sponsor has not requested a hearing, or to the Secretary if an order of deregistration was entered pursuant to a hearing.

## PART XXIV

### HEARINGS

The Secretary shall designate a hearing officer within ten (10) days of receipt of a request for a hearing. The hearing officer shall give reasonable hearing notice by registered mail, return receipt requested. Notice of hearings shall include:

1) time and place of hearing;

2) a statement of the provisions of these regulations pursuant to which the hearing is to be held: and

3) a concise statement of the issues before the hearing officer.

The hearing officer shall regulate the hearing. The hearing shall be informally conducted. Each party shall have the right to counsel and may cross-examine all witnesses. Hearing officers shall make their proposed findings and recommended decisions to the Secretary on the basis of record.

## PART XXV

### COMPLAINTS

Complaints concerning discrimination or other equal opportunity matters shall be resolved in accordance with applicable provisions of the Kansas Plan of Equal Employment Opportunity in Apprenticeship, adopted pursuant to Title 29 CFR Part 30 and approved by the U.S. Department of Labor, and provisions found in Title 29 CFR Part 30.

Except for matters as described above, any controversy or difference arising under an apprenticeship agreement which cannot be adjusted locally, and which is not covered by a collective bargaining agreement, may be submitted by an apprentice, or their authorized

representative, to the Council for review. Matters governed by a collective bargaining agreement are not subject to such review.

A written complaint shall be submitted within sixty (60) days of the final local decision. The complaint shall be signed by the complainant, or authorized representative. Specific issues, together with all relevant facts and circumstance, shall be stated in clear and concise form. Copies of all pertinent documents and correspondence shall accompany the complaint.

The Council shall render an opinion within ninety (90) days after receipt of the complaint. The opinion shall be based upon investigation of the issues identified on the complaint and the record. During the ninety (90) day period, the Council shall make a reasonable effort to effect a satisfactory resolution between the parties involved. If so resolved, the parties shall be notified that the case is closed. Copies of the resultant opinion shall be sent to all interested parties.

Nothing in this part shall be construed to require an apprentice to use the review procedure set forth in this part.

## PART XXVI

### AMENDMENTS

These policies may be amended by a two-thirds majority of Council members. All Council and ex-officio members, committees and any other interested persons shall be notified of any changes to this manual, in writing.

## PART XXVII

### REQUEST FOR PROGRAM STANDARDS

One copy of apprenticeship program standards will be provided upon receipt of a written request. This is in accordance with the Kansas Open Records Act, K.S.A. 45-215 et seq. All requests will be kept on file for reference. There shall be no fee charged for the service.

# EXHIBIT L

**803 KAR 1:010. Registration of apprenticeship programs.**

RELATES TO: KRS Chapter 343
STATUTORY AUTHORITY: KRS 343.020

NECESSITY, FUNCTION, AND CONFORMITY: KRS 343.020 authorizes the executive director with the aid of the Council to make administrative regulations to carry out the provisions and purposes of KRS Chapter 343. The function of this administrative regulation is to set forth labor standards to safeguard the welfare of apprentices, and to extend the application of such standards by prescribing policies and procedures concerning the registration of acceptable apprenticeship programs with the Kentucky Office of Workplace Standards, Supervisor of Apprenticeship and Training. These labor standards cover the registration, cancellation and deregistration of apprenticeship programs and of apprenticeship agreements.

Section 1. As used in these administrative regulations, unless the context clearly requires otherwise:

(1) "Apprentice" means a person at least sixteen (16) years of age who has entered into an apprenticeship agreement with an employer or an association of employers or an organization of employees;

(2) "Apprenticeship agreement" means a voluntary written agreement entered into by the apprentice or through his parent or guardian with an employer, or an apprenticeship and training committee acting as agent for an employer, which agreement contains the terms and conditions of the employment and training of the apprentice to enable the apprentice to learn the trade, craft or business of the employer;

(3) "Executive director" means the Executive Director of Workplace Standards, Labor Department, or any authorized person to act in his behalf, having jurisdiction over laws or administrative regulations governing wages and hours of employees working in this state;

(4) "Council" means apprenticeship and training council;

(5) "Supervisor" means supervisor of apprenticeship and training;

(6) "Apprenticeship program" means a plan containing all terms and conditions for the qualification, recruitment, selection, employment, and training of apprentices, including such matters as the requirement for a written apprenticeship agreement;

(7) "Sponsor" means any person, association, committee, or organization in whose name or title the program is or is to be registered, irrespective of whether such entity is an employer;

(8) "Employer" means any person or organization employing an apprentice whether or not such person or organization is a party to an apprenticeship agreement with the apprentice;

(9) "Related instruction" means an organized and systematic form of instruction designed to provide the apprentice with knowledge of the theoretical and technical subjects related to his trade;

(10) "Registration of an apprenticeship program" means the acceptance and recording of such program by the supervisor, as meeting the basic standards and requirements for approval of such program. Approval is evidenced by written indicia;

(11) "Joint apprenticeship committee" means a committee, composed of an equal number of representatives of employers and employees, which has been established by an employer or group of employers and a bona fide collective bargaining agent or agents to conduct, operate, or administer an apprenticeship program and enter into apprenticeship agreements with apprentices selected for employment under the particular program;

(12) "Nonjoint apprenticeship sponsor" means an apprenticeship program sponsor in which a bona fide collective bargaining agent does not participate; it includes an individual nonjoint sponsor (apprenticeship program sponsored by one (1) employer without the participation of a union) and a group nonjoint sponsor (apprenticeship program sponsored by two (2) or more employers without the participation of a union);

(13) "Bureau" means the Bureau of Apprenticeship and Training, Employment and Training Administration, United States Department of Labor.

Section 2. (1) No apprenticeship program shall be eligible for registration unless:

(a) it is in conformity with the requirements of this administrative regulation and the training is in an apprenticeable occupation approved by the Bureau; and

(b) it is in conformity with the regulations on "Equal Employment Opportunity in Apprenticeship and Training" set forth in 29 C.F.R. Part 30, as amended, and Kentucky law on "Equal Employment Opportunity in Apprenticeship and Training" set forth in KRS Chapter 344.

(2) Approved apprenticeship programs shall be accorded registration, evidenced by a certificate of registration or other written indicia.

(3) Any modification or change to a registered program shall be promptly submitted to the registration office and, if approved, shall be recorded and acknowledged as an amendment to such program.

(4) The request for registration of an apprenticeship program, together with all documents and data required by this administrative regulation, shall be submitted in three (3) copies.

(5) Under a program proposed for registration by an employer or employers' association, where the standards, collective bargaining agreement or other instrument, provides for participation by a union in any manner in the operation of the substantive matters of the apprenticeship program, and such participation is exercised, written acknowledgment of union agreement or "no objection" to the registration is required. Where no such participation is evidenced and practiced, the employer or employers' association shall simultaneously furnish to the union, if any, which is the collective bargaining

agent of the employees to be trained, a copy of its application for registration and of the apprenticeship program. The supervisor shall provide a reasonable time period of not less than thirty (30) days nor more than sixty (60) days for receipt of union comments, if any, before final action on the approval.

(6) Where the employees to be trained have no collective bargaining agent, an apprenticeship program may be proposed for registration by an employer or group of employers.

Section 3. The following standards are prescribed for an apprenticeship program:

(1) The program must be an organized, written plan embodying the terms and conditions of qualification, recruitment, selection, employment, training, and supervision of one (1) or more apprentices in an apprenticeable occupation and subscribed to by a sponsor who has undertaken to carry out the apprentice training program.

(2) The standards must contain the equal opportunity pledge prescribed in the Kentucky State Plan for equal employment opportunity in apprenticeship and, when applicable, an affirmative action plan and a selection method in accordance with the Kentucky State Plan for equal employment opportunity in apprenticeship, and provisions concerning the following:

(a) The employment and training of the apprentice in a skilled trade;

(b) A term of apprenticeship, not less than 2,000 hours of work experience, consistent with training requirements as established by industry practices;

(c) An outline of the work processes in which the apprentice will receive supervised work experience and training on the job, and the allocation of the approximate time to be spent in each major process;

(d) Provision for organized related and supplemental instruction in technical subjects related to the trade. A minimum of 144 hours for each year of apprenticeship is required. Such instruction may be given in a classroom, through trade, industrial, or correspondence courses of equivalent value, or other forms of approved self-study;

(e) A progressively increasing schedule of wages to be paid the apprentice consistent with the skill acquired and whether the required school time shall be compensated. The entry wage shall not be less than forty (40) percent of the established journeyman rate or not less than the minimum wage prescribed by federal or state law, whichever is greater. On projects where the wage rate has been established by law, the apprentice's rate of pay shall be based upon the established journeyman rate;

(f) Periodic review and evaluation of the apprentice's progress in job performance and related instruction; and maintenance of appropriate progress records;

(g) The ratio of apprentices to journeymen consistent with proper supervision, training, and continuity of employment, and applicable provisions in collective bargaining agreements, but in a ratio of not more than one (1) apprentice for the first journeyman, and one (1) apprentice for each additional three (3) journeymen; unless approval is granted by the supervisor in cooperation with the executive director and Apprenticeship and Training Council;

(h) A probationary period of not more than four (4) months during which the apprenticeship agreement may be terminated by either party, with full credit for such period toward completion of apprenticeship;

(i) Adequate and safe equipment and facilities for training and supervision, and safety training for apprentices on the job and in related instruction;

(j) Grant of advance standing or credit for previously acquired experience, training skills, or aptitude for all applicants equally, with commensurate wages for any accorded progression step;

(k) Transfer of employer's training obligation to another employer, where warranted, with full credit to apprentice for satisfactory time and training earned;

(l) Assurance of qualified training personnel;

(m) The placement of an apprentice under an apprenticeship agreement as required by the state apprenticeship law and administrative regulations. The agreement shall directly, or by reference, incorporate the standards of the program as part of the agreement;

(n) The required minimum qualifications for persons entering an apprenticeship program, with an eligible starting age to be not less than sixteen (16) years;

(o) Recognition for successful completion of apprenticeship evidenced by an appropriate certificate;

(p) Identification of the registration agency;

(q) Name and address of the appropriate authority under the program to receive, process and make disposition of complaints;

(r) Recording and maintenance of all records concerning apprenticeship as may be required by the state apprenticeship agency or other applicable law;

(s) Provision that all controversies or differences concerning the apprenticeship agreement which cannot be adjusted by the parties to be submitted to the supervisor for determination as required by law.

Section 4. The apprenticeship agreement shall contain explicitly:

(1) Names and signatures of the contracting parties (apprentice, and the program sponsor or employer), and the signature of a parent or guardian if

the apprentice is a minor;

(2) The date of birth of apprentice;

(3) Name and address of the program sponsor and registration agency;

(4) A statement of the trade, craft or business in which the apprentice is to be trained, and the beginning date and term of apprenticeship;

(5) A statement showing the number of hours to be spent by the apprentice in work on the job, and the number of hours to be spent in related and supplemental instruction;

(6) A statement setting forth a schedule of the work processes in the trade or industry divisions in which the apprentice is to be trained and the approximate time to be spent at each process;

(7) A statement of the graduated scale of wages to be paid the apprentice and whether or not the required school time shall be compensated;

(8) A statement providing for a period of probation of not more than four (4) months during which the apprenticeship agreement may be terminated by either party to the agreement upon written notice to the registration agency, and that after the probationary period, the agreement may be suspended, cancelled, or terminated by the supervisor by mutual agreement of the parties, or by the supervisor for good and sufficient reason, with due notice to the apprentice and a reasonable opportunity for corrective action, and with written notice to the apprentice and to the sponsor of the final action taken;

(9) A reference incorporating as part of the agreement the standards of the apprenticeship program as it exists on the date of the agreement and as it may be amended during the period of the agreement.

(10) A statement that the apprentice will be accorded equal opportunity in all phases of apprenticeship employment and training, without discrimination because of race, color, religion, national origin, sex or age between forty (40) and sixty-five (65).

Section 5. Deregistration of a program may be initiated upon the voluntary action of the sponsor by request for cancellation of the registration, or upon a finding of good and sufficient reason by the supervisor instituting formal deregistration proceedings in accordance with the provisions of this section.

(1) Request by sponsor. The supervisor may cancel the registration of an apprenticeship program for good and sufficient reason by written acknowledgment, of such request stating, but not limited to, the following matters:

(a) The registration is cancelled at sponsor's request, the reason thereof, and effective date thereof;

(b) That, within fifteen (15) days of the date of the acknowledgment, the sponsor shall notify all apprentices of such cancellation the reason thereof, and the effective date; that such cancellation automatically deprives the apprentice of his/her individual registration; and that the deregistration of the program removes the apprentice from coverage for state and federal purposes.

(2) Formal deregistration. Deregistration proceedings may be undertaken when the apprenticeship program is not conducted, operated, and administered in accordance with the registered provisions or the requirements of this administrative regulation, except that deregistration proceedings for violation of equal opportunity requirements shall be processed in accordance with the provisions in the Kentucky State Plan for equal employment opportunity in apprenticeship.

(a) Where it appears the program is not being operated in accordance with the registered standards or this administrative regulation, the supervisor shall so notify the program sponsor in writing. The notice shall be sent by certified mail, with return receipt requested. The notice shall state the violations and the remedy required, and that a determination of reasonable cause for deregistration will be made unless corrective action is effected within fifteen (15) days. Upon request by the sponsor for good cause, the fifteen (15) day term may be extended by the supervisor. During the period for correction, the sponsor shall be assisted in every reasonable way to achieve conformity. If the required correction is not effected within the allotted time, the supervisor shall send a notice to the sponsor, by certified mail, return receipt requested, stating the following:

1. The notice is sent pursuant to this section;

2. Certain deficiencies (stating them) were called to sponsor's attention and remedial measures requested, with dates of such occasions and letters; and that the sponsor has failed or refused to effect correction;

3. Based upon the stated deficiencies and failure of remedy, a determination of reasonable cause has been made and the program may be deregistered unless, within fifteen (15) days of the receipt of this notice, the sponsor requests a hearing.

(b) If a request for a hearing is not made, the supervisor will issue a determination with respect to deregistration of the program;

(c) If the sponsor has not requested a hearing, the supervisor will file his determination with the executive director. This determination shall contain all pertinent facts and circumstances concerning the nonconformity, including the findings and copies of all relevant documents and records;

(d) If no appeal is filed with the executive director within fifteen (15) days of the receipt of the supervisor's determination, the determination of the supervisor shall become final;

(e) If the sponsor requests a hearing, the executive director will convene a hearing after due notice to the parties and shall make a final decision on the basis of the record before him;

(f) Any party to the dispute aggrieved by the order or decision of the executive director may appeal in accordance with KRS 343.070.

Section 6. Any apprenticeship programs and standards of employers and unions in other than the building and construction industry, which jointly

Case No. 08-0089DLR Document 1-4

form a sponsoring entity on a multistate basis and are registered pursuant to all requirements of this administrative regulation by any recognized state apprenticeship agency or by the bureau, shall be accorded registration or approved reciprocity by the supervisor if such reciprocity is requested by the sponsoring entity. (LAB 1; 1 Ky.R. 47; eff. 10-2-74; Am. 4 Ky.R. 65, 177; eff. 11-2-77; TAm eff. 8-9-2007.)

# EXHIBIT M

**Carmichael Linda (DOJ)**

| | |
|---|---|
| **From:** | Ellis, Gene A. [Gene.A.Ellis@Maine.gov] |
| **Sent:** | Tuesday, May 27, 2008 1:33 PM |
| **To:** | Carmichael Linda (DOJ) |
| **Subject:** | RE: Apprenticeship Rules and Regulations |

http://www.maine.gov/sos/cec/rules/12/chaps12.htm  Scroll to 12 181 Chapters 1, 2, & 3

http://janus.state.me.us/legis/statutes/26/title26sec2006.html Scroll to Section 5-A

Linda,
These are the links to both Rules and Statute.  There is no mention of place of business for employer/Sponsor.  It is, however our policy that the Apprenticeship program is for Maine residents, Maine educational institutions, and Maine businesses.  There are exceptions with construction companies that are based out of State but do business here on a "permanent" basis.  For them we register Maine residents only.  I hope this is helpful.

Just as an aside, my brother and his family has lived in Newark, DE for many years.  Do you know Kevin Calio?

**Gene Ellis**
**Director of Apprenticeship Standards**
**Department of Labor**
**Bureau of Employment Services**
**55 State House Station**
**Augusta, ME  04333-0055**
**Ph. (207) 623-7990**
**gene.a.ellis@maine.gov**
**www.maine.gov/labor/apprenticeship**

*The Maine Department of Labor provides Equal Opportunity in employment and programs.  Auxiliary aids and services are available to individuals with disabilities upon request.*

---

**From:** Carmichael Linda (DOJ) [mailto:Linda.Carmichael@state.de.us]
**Sent:** Friday, May 23, 2008 2:47 PM
**To:** Ellis, Gene A.
**Subject:** Apprenticeship Rules and Regulations

Mr. Ellis:

This is a follow-up to my telephone message earlier today.  Can you tell me whether Maine has a requirement that their apprenticeship sponsors have a place of business in Maine?  If you could point me to Maine's rules and regs that discuss this matter it would be helpful.  Thanks for your time.

Linda

Linda M. Carmichael
Deputy Attorney General
820 N. French Street, 6th Floor

Wilmington, DE 19801
(302) 577-8400

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Confidentiality Notice: This electronic message and any attachment(s) are confidential and may be subject to the attorney/client privilege and/or work product immunity. This e-mail is only for the use of the intended recipient(s). If you have received this e-mail in error, please notify the sender immediately by replying to this e-mail, then delete this message and any attachment(s) from your system. Any unintended transmission expressly shall not waive the attorney/client or any other privilege.

**12**          **DEPARTMENT OF LABOR**

**181**         **MAINE STANDING COMMITTEE ON APPRENTICESHIP**

**Chapter 1:**  **RULES RELATING TO LABOR STANDARDS FOR REGISTRATION OF APPRENTICESHIP PROGRAMS**

---

**SUMMARY**: These rules are adopted to establish, define and provide for the registration and deregistration of Apprenticeship Agreements or Programs with the Maine Standing Committee on Apprenticeship. They contain guidelines for holding hearings and give the authority and the effective date.

---

**Sections**

1.1     Purpose and Scope

1.2     Definitions

1.3     Eligibility and Procedure for Committee Registration

1.4     Criteria for Apprenticeable Occupations

1.5     Standards of Apprenticeship

1.6     Apprenticeship Agreement

1.7     Deregistration of Committee-Registered Program

1.8     Hearings

1.9     Reinstatement of Program Registration

1.10    Complaints

1.11    Reciprocity

**Sec. 1.1    Purpose and Scope**

A.    Title 26 MRSA Chapter 25 authorizes and directs the Maine Standing Committee on Apprenticeship to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices and to extend the application of such standards by requiring the inclusion thereof in contracts of apprenticeship.

B.    The purpose of this regulation is to set forth labor standards to safeguard the welfare of apprentices, and to extend the application of such standards by prescribing rules and regulations concerning the registration of acceptable apprenticeship programs. These labor standards, rules and regulations cover the registration, termination and deregistration of apprenticeship programs and of apprenticeship agreements, and matters relating thereto.

C.    The provisions of this regulation shall apply to a person, firm, corporation or craft only after such person, firm, corporation or craft has voluntarily elected to conform to its provision.

**Sec. 1.2    Definitions**

As used in this regulation:

A.    "Committee" means the Maine Standing Committee on Apprenticeship.

B.    "Apprentice" means a worker at least 16 years of age who enters into a written apprenticeship agreement to receive detailed related instruction in apprenticeable occupation requiring not less than 2,000 hours of on the job work experience.

C.    "Apprenticeship Agreement" means a written agreement which conforms to standards established under Chapter 25 and this regulation and is entered into between an apprentice and either (1) an employer, (2) an association of employers, (3) an organization of employees, or (4) a joint committee representing employers and employees.

D.    "Apprenticeship Program" means a plan containing all terms and conditions for the qualification, recruitment, selection, employment and training of apprentices, including such matters as the requirements for a written apprenticeship agreement.

E.    "Apprenticeship Standard" means the written document which sets forth the minimum labor standards required by law for training apprentices in a specified industry, area or plant. By reference, it is a part of the apprenticeship agreement. There are two basic types of standards - one providing for **joint** employer-union participation in the program and the second, referred to as **unilateral** standards, where responsibility for the apprenticeship is assumed by either management or organized labor, but not both. Normally, unilateral programs are sponsored by single employers.

F.    "Sponsor" means any person, association, committee, or organization operating an apprenticeship program and in whose name the program is approved and registered.

G.    "Employer" means any person or organization employing an apprentice whether or not such person or organization is a party to an apprenticeship agreement with the apprentice.

H.    "Apprenticeship Committee" means those persons designated by the sponsor to act for it in the administration of the program. A committee may be "**joint**", i.e., it is composed of an equal number of representatives of the employer(s) and of the employees represented by a bona fide collective bargaining agent(s) and has been established to conduct, operate, or administer an apprenticeship program and enter into apprenticeship agreements with apprentices. A committee may be "**unilateral**" or "**non-joint**"' and shall mean a program sponsor in which a bona fide collective bargaining agent is not a participant; it includes an individual non-joint sponsor (apprenticeship program sponsored by one employer without the participation of a union) and group non-joint sponsor (apprenticeship program sponsored by two or more employers without the participation of a union).

I.    "Related Instruction" means an organized and systematic form of instruction designed to provide the apprentice with knowledge of the theoretical and technical subjects related to his/her trade.

J.    "Registration of an Apprenticeship Program" means the acceptance and recording of such program by the Committee as meeting the basic standards and requirements of the Committee for approval of such program. Approval is evidenced by a certificate of registration or other written indicia.

K.    "Registration of an Apprenticeship Agreement" means the acceptance and recording thereof by the Committee as evidence of the participation of the apprentice in a particular registered apprenticeship program.

## Sec. 1.3    Eligibility and Procedure for Committee Registration

A.    No apprenticeship program or agreement shall be eligible for Committee registration unless it is in conformity with the requirements of Chapter 25 and this regulation, and the training is in an apprenticeable occupation requiring not less than 2,000 hours of on job work experience and the characteristics set forth in Chapter 25.

B.    Apprentices must be individually registered under a registered program. Such registration shall be affected by filing copies of each apprenticeship agreement with the Committee. Registration shall be reserved for those desiring to learn a trade through reasonably continuous employment. Agreements shall not be registered for persons desiring only interim work or employed on a substantially shorter work week than is prevailing in the industry. This, however, does not apply to students pursuing a course of study in the same trade or closely related to the trade for which application is being made for registration.

C.    The Committee shall be notified promptly of the termination or suspension of any apprenticeship agreement, with cause for same, and of apprenticeship completions.

D.    Approved apprenticeship programs shall be accorded registration, evidenced by a certificate of registration.

E.     Any modification(s) or change(s) to registered standards shall be promptly submitted to the Committee, and if approved, shall be recorded and acknowledged as a revision of such standards.

F.     The request for registration, together with all documents and data required by Chapter 25 and this regulation, shall be submitted to the Committee.

G.     Under a program proposed for registration by an employer or employers' association, where the standards, collective bargaining agreement or other instrument, provides for participation by a union in any matter in the operation of the substantive matters of the apprenticeship program, and such participation is exercised, written acknowledgement of union Sec. 1.3 Eligibility and Procedure for Committee Registration (cont.) agreement or "no objection" to the registration is required. Where no such participation is evidenced and practiced, the employer or employers' association shall simultaneously furnish to the union, if any, which is the collective bargaining agent of the employees to be trained, a copy of its application for registration and of the apprenticeship program. The Committee shall provide a reasonable time period of not less than 30 days nor more than 60 days for receipt of union comments, if any, before final action on the application for registration and/or approval.

H.     Where the employees to be trained have no collective bargaining agent, an apprenticeship program may be proposed for registration by an employer or group of employers.

I.     If the sponsor is involved in any abnormal labor condition such as a strike, lockout, or other similar condition, the application for an apprenticeship program may be withheld until such issue is resolved.

J.     If it should be determined by the Committee that a sponsor is in violation of any Federal or State Labor laws or rules and regulations affecting registration of programs, the application for an apprenticeship program may be withheld until such issues are resolved.

## Sec. 1.4   Criteria for Apprenticeable Occupations

An apprenticeable occupation is a skilled trade which possesses all of the following characteristics:

A.     Is customarily learned in a practical way through a structured systematic program of on-the-job supervised training;

B.     It is clearly identified and commonly recognized throughout an industry;

C.     It involves manual, mechanical or technical skills and knowledge which require a minimum number of hours as required by statute of on-the-job work experience; and

D.     It requires related instruction to supplement the on-the-job training.

**Sec. 1.5   Standards of Apprenticeship**

An apprenticeship program to be eligible for registration by the Committee shall conform to the following standards:

A.    The program is an organized, written plan embodying the terms and conditions of employment, training, and supervision of one or more apprentices in the apprenticeable occupation, as defined in Chapter 25 and this regulation, and subscribed to by a sponsor who has undertaken to carry out the apprentice training program.

B.    The following standards are prescribed for an apprenticeship program:

1.    A statement of the trade or craft to be taught and the required hours for completion of apprenticeship which shall not be less than the statutory minimum number of hours of reasonably continuous employment;

2.    An outline of work processes in which the apprentice will receive supervised work experience and training on the job, and the allocation of the approximate time to be spent in each major process;

3.    A statement of the number of hours to be spent in related instruction which shall not be less than the statutory minimum number of hours per year, provided that the Committee may, in the best interest of apprenticeship, reduce the hours of related instruction of which instruction may be given in a classroom through trade or industrial courses, or by correspondence courses of equivalent value, or other forms of self-study approved by the Committee;

4.    A statement that apprentices shall be not less than sixteen years of age, with the exception of a higher age requirement which the Committee has determined applicable in accordance with the State and Federal Child Labor Laws;

5.    A statement of the progressively increasing scale of wages to be paid the apprentice consistent with the skill acquired, the entry wage to be not less than the minimum wage prescribed by the Federal and State Labor Standards Acts, where applicable, unless a higher wage is required by other applicable Federal law, State law, respective regulations, or by collective bargaining agreement;

6.    A provision for probationary period reasonable in relation to the full apprenticeship term, with full credit given for such period toward completion of apprenticeship;

7.    A provision that during the period of probation, the Committee shall be directed to terminate an apprenticeship agreement the request in writing of any party thereto;

8.    A provision that after the probationary period, the Committee shall be empowered to terminate an apprenticeship agreement upon agreement of the parties thereto, or for good cause on the Committee 's own motion after giving all parties notice and opportunity to be heard;

9.    Provision that the services of the Committee may be utilized for consultation regarding the settlement of differences arising out of apprenticeship agreement and

where the differences cannot be adjusted locally, or in accordance with the established trade procedure, and any such differences which cannot be amicably settled by the parties may be submitted to the Committee for final decision:

10. Provision for the numeric ratio of apprentice to journeymen consistent with proper supervision, training, safety, and reasonable continuity of employment, and applicable provisions in collective bargaining agreements, in relation to which a ratio of one apprentice for the first journeyman regularly employed and one apprentice for each subsequent three journeymen regularly employed by a participating employer in each apprenticeable occupation be established. The Committee shall have the authority to waive the above ratio in those circumstances in which it may deem such action warranted. All requests for waivers shall be made in writing to the Committee.

11. Provision for transfer of employer's training obligation when the employer is unable to fulfill the obligation under the apprenticeship agreement to another employer under the same program with the consent of the apprentice and apprenticeship committee or program sponsor, with full credit to the apprentice for satisfactory time and training earned;

12. Provision for minimum qualifications required by a sponsor for persons entering the apprenticeship program;

13. Provision for granting of an advanced standing or credit for previously acquired experience, training, or skills for all applicants equally, with commensurate wages for any progression step so granted;

14. A provision that the employer shall instruct the apprentice in safe and healthful work practices and shall insure that the apprentice is trained in facilities and other environments that are in compliance with either the occupational safety and health standards promulgated by the Secretary of Labor under Public Law 91-596, or State standards that have been found to be at least as effective as the Federal standards;

15. A provision for the placement of an apprentice under a written apprenticeship agreement, which shall directly, or by reference, incorporate the standards of the program as part of the agreement;

16. A provision for periodic review and evaluation of the apprentice's progress in job performance and in related instruction, and the maintenance of appropriate progress records;

17. A provision of recognition for successful completion of apprenticeship evidenced by an appropriate certificate;

18. Identification of the registration agency;

19. A statement that the regular work day or work week for apprentices shall not be greater than those of the journeymen;

20. Provision for the registration, cancellation and deregistration of the program and requirement for the prompt submission of any modification or revision thereto;

21. Provision for registration of apprenticeship agreements and revisions, notice to the Committee of persons who have successfully completed apprenticeship programs, and notice of terminations and suspensions of apprenticeship agreements and causes therefore;

22. A statement of how the committee is to be organized and a statement of the functions of the committee are required if the program sponsor is a joint apprenticeship committee;

23. A statement containing the equal opportunity pledge prescribed as follows:

   "The recruitment, selection, employment, and training of apprentices during their apprenticeship, shall be without discrimination because of race, sex, age, religion, color, ancestry, physical handicap, marital status, or arrest and court record;

24. Name and address of the appropriate authority under the program to receive, process, and make disposition of complaints;

25. Provision for a participating employer's agreement; and

26. All apprenticeship standards must contain articles to comply with Federal laws, regulations and rules pertaining to apprenticeship.

## Sec. 1.6   Apprenticeship Agreement

The apprenticeship agreement shall contain explicitly or by reference:

A. Name and signature of the contracting parties (apprentice, and the program sponsor or employer), and the signature of a parent or guardian if the apprentice is a minor;

B. The date of birth of apprentice;

C. Name and address of the program sponsor and registration agency;

D. A statement of the trade or craft in which the apprentice is to be trained and the beginning date and term of apprenticeship;

E. A statement showing:

   1. The number of hours to be spent by the apprentice in work on the job; and

   2. The number of hours to be spent in related and supplemental instruction;

F. A statement setting forth a schedule of the work processes in the trade in which the apprentice is to be trained and the approximate time to be spent at each process;

G.      A statement of the graduated scale of wages to be paid the apprentice and whether or not the required school time shall be compensated;

H.      Statements providing

      1.      For a specific period of probation during which the apprenticeship agreement may be terminated by either party to the agreement upon notice to the Committee; and

      2.      That, after the probationary period, the agreement may be terminated at the request of the apprentice, or may be suspended, or terminated by the sponsor, for good cause, with due notice to the apprentice and a reasonable opportunity for corrective action, and with written notice to the apprentice and to the Committee of the final action taken;

I.      A statement that the apprentice will be accorded equal opportunity in all phases of apprenticeship employment and training, without discrimination because of race, color, religion, ancestry, sex, age, physical handicap, marital status, or court and arrest record; and

J.      Name and address of the appropriate authority, if any, designated under the program to receive, process and make disposition of controversies or differences arising out of the apprenticeship agreement; any such controversies and differences which cannot be amicably settled by the parties may be submitted to the Committee for final decision.

## Sec. 1.7  Deregistration of Committee-Registered Program

Deregistration of a program may be effected upon the voluntary action of the sponsor by a request for cancellation of the registration or, upon reasonable cause, by the Committee, instituting formal deregistration proceedings in accordance with the provisions of this regulation.

A.      Request by Sponsor. The Committee may cancel the registration of an apprenticeship program by a written acknowledgement of such request stating, but not limited to, the following:

      1.      The registration is canceled at sponsor's request, and giving the effective date of such cancellation; and

      2.      That, within 15 workdays of the date of the acknowledgement, the sponsor must notify all apprentices of such cancellation and the effective date; that such cancellation automatically deprives the apprentice of his/her individual registration.

B.      Deregistration by Committee

      1.      Deregistration proceedings may be undertaken when the apprenticeship program is not conducted, operated, or administered in accordance with the registered standards or the requirements of Chapter 25 or this regulation.

2. Where it appears the program is not being operated in accordance with the registered standards or with requirements of Chapter 25 or this regulation, the Committee shall so notify the program sponsor in writing.

3. The notice shall be sent by registered or certified mail, return receipt requested, shall state the deficiency(s) and remedy(s) required and shall state that the program will be deregistered for cause unless the corrective action is taken within 30 days.

4. Upon request by sponsor, the 30-day period may be extended for up to an additional 30-day period. During the period for correction the sponsor may be assisted in every reasonable way by the Committee.

5. If the required action is not taken within the allotted time, the Committee shall send a notice to the sponsor by registered or certified mail, return receipt requested, stating the following:

    a. This notice is sent pursuant to this subsection;

    b. That certain deficiencies were called to the sponsor's attention and remedial actions requested;

    c. Based upon the stated cause, the program will be deregistered, unless within 15 Workdays of receipt of this notice, the sponsor requests a hearing; and

    d. If a hearing is not requested by the sponsor, the program will be automatically deregistered.

6. If the sponsor requests a hearing, the Committee shall convene a hearing in accordance with Section 8 of these regulations.

7. In its discretion, the Committee may allow the sponsor a reasonable time to achieve voluntary corrective action. If the Committee's decision is that the apprenticeship program is not operating in accordance with the registered standards or requirements of Chapter 25 and this regulation, the apprenticeship program shall be deregistered. In each case in which deregistration is ordered the Committee shall notify the sponsor.

8. Every order of deregistration shall contain a provision that the sponsor shall, within 15 workdays of the effective date of the order, notify all registered apprentices of the de-registration of the program, the effective date, and that such action automatically deprives the apprentice of his/her individual registration.

## Sec. 1.8   Hearings

A.    Notice of hearings to be held by the Committee shall be given as follows:

    1.    Within 10 working day of receipt of a request for a hearing, notice will be given by registered mail, return receipt requested, to the person or person's whose legal rights, duties or privileges are at issue, sufficiently in advance of the hearing date to afford an adequate opportunity to prepare and submit evidence and argument.

B.    All Notices of Hearings shall contain the following:

    1.    A statement of the legal authority and jurisdiction under which the proceeding is being conducted;

    2.    A reference to the particular substantive statutory and rule provisions involved;

    3.    A short and plain statement of the nature and purpose of the proceeding and of the matters asserted;

    4.    A statement of the time and place of the hearing;

    5.    A statement of the manner and time within which evidence and argument may be submitted to the agency for consideration.

C.    Disposition without full hearing

    1.    The Committee may make informal disposition of any adjudicatory proceeding by default when any party fails to appear at the scheduled hearing, provided that notice of the consequences of such failure to appear has been given to said party. Any such default may be set aside by the Committee for good cause shown.

    2.    The Committee may limit the issues to be heard or vary any procedure prescribed by Committee rule or the Administrative Procedure Act if the parties and Committee agree to such limitation or variation, or if no prejudice to any party will result.

D.    Ex Parte Communications: Separation of Functions,

    1.    In any adjudicatory proceeding, no Committee members authorized to take final action or presiding officers designated by the Committee to make findings of fact and conclusions of law shall communicate directly or indirectly, in connection with any issue of fact, law or procedure, with any person, except upon notice and opportunity for all parties to participate.

    2.    This section shall not prohibit any Committee member or other presiding office described above from:

        a.    Communicating in any respect with other members of the Committee or other presiding officer; or

b.     Having the aid or advice of those members of his own Committee staff, counsel or consultants retained by the Committee who have not participated and will not participate in the Committee proceeding in an advocate capacity.

E.     Opportunity to be Heard

1.     The opportunity for hearing shall be afforded without undue delay.

F.     Evidence

1.     The Committee need not observe the rules of evidence observed by the courts, but shall observe the rules of privilege recognized by law.

2.     Evidence shall be submitted if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs. The Committee may exclude irrelevant or unduly repetitious evidence.

3.     All witnesses shall be sworn.

4.     Subject to these requirements, the Committee may, for the purposes of expediting adjudicatory proceedings, require the prefiling of all or part of the testimony of any witness in written form. Every such witness shall be subject to oral cross-examination.

5.     No sworn written evidence shall be admitted unless the author is available for cross-examination or subject to subpoena, except for good cause shown.

G.     Official Notice

1.     The Committee may take official notice of any facts of which judicial notice could be taken, and in addition may take official notice of general, technical or scientific matters within their specialized knowledge and of statutes, regulations and nonconfidential agency records. Parties shall be notified of the material so noticed, and they shall be afforded an opportunity to contest the substance or materiality of the facts noticed.

2.     Facts officially noticed shall be included and indicated as such in the record.

3.     Notwithstanding the foregoing, the Committee may utilize their experience, technical competence and specialized knowledge in the evaluation of the evidence presented to them.

H.     Record

1.     In all adjudicatory proceedings the Committee shall make a record consisting of the following:

a.     All applications, pleadings, motions, preliminary and interlocutory rulings and orders;

b.      Evidence received or considered;

c.      A statement of facts officially noticed;

d.      Offers of proof, objections and rulings thereon;

e.      Proposed findings and exceptions, if any;

f.      The recommended decision, opinion or report, if any, by the presiding officer;

g.      The decision of the Committee; and

h.      All staff memoranda submitted to the members of the Committee or other presiding officers by Committee staff in connection with their consideration of the case, except memoranda of counsel to the Committee.

2.      The Committee shall record all hearings in a form susceptible to transcription. Portions of the record as required and specified in subsection 1 of this rule may be included in the recording. The Committee shall transcribe the recording when necessary for the prosecution of an appeal.

3.      The Committee shall make a copy of the record, including recordings made pursuant to subsection 2 of this rule, available at the office of the Bureau of Labor, for inspection by any person during normal business hours; and make copies of the recordings or transcriptions or recordings available to any person at actual cost. Notwithstanding the provisions of this subsection, the Committee shall withhold, obliterate or otherwise prevent the dissemination of any portions of the record which are made confidential by State or federal statute, but shall do so in the least restrictive manner feasible.

4.      All material, including record, reports, and documents in possession of the Committee, of which it desires to avail itself as evidence in making a decision, shall be offered and made part of the record and no other factual information or evidence shall be considered in rendering a decision.

5.      Documentary evidence may be incorporated in the record by reference when materials so incorporated are made available for examination by the parties before being received in evidence.

I.      Subpoenas

1.      Pursuant to Title 5 MRSA §9060, the Board may issue a subpoena if it first obtains the approval of the Attorney General or of any deputy attorney general. Any party to the proceeding may request that a subpoena be issued.

2.      Authorized subpoenas shall be issued in accordance with the following:

a.    The form of the subpoena shall adhere, insofar as practicable, to the form used in civil cases before the courts. Witnesses shall be subpoenaed only within the territorial limits and in the same manner as witnesses in civil cases before the courts, unless another territory or manner is provided by law.

b.    The subpoena shall show on its face the name and address of the party at whose request it was issued.

c.    Any witness subpoenaed may petition the Committee to vacate or modify a subpoena in its name. The Committee shall give prompt notice to the party who requested issuance of the subpoena.

After such investigation as the agency considers appropriate, it may grant the petition in whole or in part upon a finding that the testimony or the evidence whose production is required does not relate with reasonable directness to any matter in question, or that a subpoena for the attendance of a witness or the production of evidence is unreasonable or oppressive or has not been issued a reasonable period in advance of the time when the evidence is requested.

d.    Pursuant to Title 5 MRSA §9060 (1) (D) failure to comply with a subpoena lawfully issued and not revoked or modified shall be punishable by a fine of not less than $500.00 and not more than $5,000, or by imprisonment not to exceed 30 days, or both.

J.    Decisions

1.    Every Committee decision made at the conclusion of an adjudicatory proceeding shall be in writing or stated in the record, and shall include findings of fact sufficient to apprise the parties and any interested member of the public of the basis for the decision. A copy of the decision shall be delivered or promptly mailed to each party to the proceeding or his representative of record. Written notice of the party's rights to review or appeal of the decision within the agency or review of the decision by the courts, as the case may be, and of the action required and the time within which such action must be taken in order to exercise the right of review or appeal, shall be given to each party with the decision.

2.    The Committee shall maintain a record of the vote of each member of the agency with respect to the agency decision.

K.    Presiding Officers

1.    The Chairman of the Committee will act as the presiding officer in any hearing.

2.    Whenever a presiding officer is disqualified or it becomes impracticable for him to continue with the hearing, another presiding officer may be assigned to continue with the hearing; provided that, if it is shown substantial prejudice to any party will thereby result, the substitute officer shall commence the hearing anew.

3.   It shall be the duty of the presiding officer to:

   a.   Administer oaths and affirmations;

   b.   Rule on the admissibility of evidence;

   c.   Regulate the course of the hearing, set the time and place for filing of evidence, briefs and other written submissions; and

   d.   Take other action authorized by statute or Committee rule.

4.   In the event that the presiding officer prepares any report or proposed finding for the Committee, the report or findings shall be in writing. A copy of the report or findings shall be provided to each party and an opportunity shall be provided for response or exceptions to be filed by each party.

5.   Hearings shall be conducted in an impartial manner. Upon the filing in good faith by a party of a timely charge of bias or of personal or financial interest, direct or indirect, of a presiding officer or Committee member in the proceeding requesting that that person disqualify himself, that person shall determine the matter as a part of the record.

L.   Advisory Rulings

1.   Advisory rulings may be made with respect to the applicability of any statute or rule administered by the Committee to an interested person or his property or actual state of facts.

2.   An interested person means any apprentice or sponsor over whom the Committee has authority to inspect and enforce its safety standards.

3.   All requests for advisory rulings shall be made in writing and submitted to the Director of Apprenticeship Standards, 55 State House Station, Augusta, Maine, 04333-0055. Such requests shall state the facts and statutes or rules on which the ruling is requested.

4.   The Director of Apprenticeship Standards may request from any person seeking an advisory ruling any additional information that is necessary. Failure to supply such additional information shall be cause for the Committee to decline to issue an advisory ruling.

5.   The Committee may decline to issue an advisory ruling if a citation or penalty has been issued against the person requesting the ruling on the same factual grounds. The Committee may also decline to issue an advisory ruling if such ruling may harm the Committee's interest in any litigation in which it is or may be a party.

6.   All advisory rulings shall be issued, in writing no later than 30 days from the date all information necessary to make a ruling has been received by the Director of Apprenticeship Standards.

7.    No advisory ruling shall be binding upon the Committee provided that in any subsequent enforcement action initiated by the Committee, any person's reliance on such a ruling shall be considered in mitigation of any penalty sought to be assessed.

## Sec. 1.9    Reinstatement of Program Registration

Any apprenticeship program deregistered pursuant to Chapter 25, and this regulation, may be reinstated upon presentation of adequate evidence that the apprenticeship program is operating in accordance with Chapter 25 and this regulation. Such evidence shall be presented to the Committee, if an order of deregistration was entered pursuant to a hearing.

## Sec. 1.10    Complaints

A.    This section is not applicable to any complaint concerning discrimination or other equal opportunity matters; all such complaints shall be submitted, processed, and resolved in accordance with State or Federal Equal opportunity laws.

B.    Any controversy or differences arising under an apprenticeship agreement which cannot be resolved locally, or which is not covered by a collective bargaining agreement may be submitted by an apprentice or his/her authorized representative to the Committee for review. Matters covered by a collective bargaining agreement are not subject to such review.

C.    The complaint, in writing, and signed by the complainant, or authorized representative, shall be submitted within 60 days of the final local decision. it shall set forth the specific matter(s) complained of, together with all relevant facts and circumstances. Copies of all pertinent documents and correspondence shall accompany the complaint.

D.    The Committee shall render an opinion within 90 days after receipt of the complaint, based upon such investigation of the matters submitted as may be found necessary, and the record before it. During the 90-day period, the Committee shall make reasonable efforts to effect a satisfactory resolution between the parties involved. If so resolved, the parties shall be notified that the case is closed. Where a decision is rendered, copies of the decision shall be sent to all interested parties which shall be final.

## Sec. 1.11    Reciprocity

Where there exists similar Standards between the Maine Standing Committee on Apprenticeship and other states and the Federal Government, reciprocity shall be exercised by the Maine Committee and recognition be given upon presentation of appropriate information.

STATUTORY AUTHORITY: 26 MRSA §2006

EFFECTIVE DATE:
January 26, 1978

AMENDED:
November 20, 1979 (1.5 B10)

CONVERTED TO MS WORD:
July 9, 2003

AMENDED:
August 1, 2007 – filing 2007-313

# Maine Revised Statutes

☑ §2006 PDF
☑ §2006WORD/RTF
➡ STATUTE SEARCH
⬅ CH. 25 CONTENTS
⬅ TITLE 26 CONTENTS
⬅ LIST OF TITLES
➡ DISCLAIMER
⬅ MAINE LAW
⬅ REVISOR'S OFFICE
⬅ MAINE LEGISLATURE

§2005    **Title 26: LABOR AND INDUSTRY**    §2007

**Chapter 25: WORKFORCE INVESTMENT HEADING: PL 1987, c. 466, §1 (rpr); 2003, c. 114, §4 (rpr)**

**Subchapter 1: GENERAL PROVISIONS HEADING: PL 1987, c. 466, §1 (rpr)**

## §2006. Establishment of Maine Jobs Council

**1. Responsibilities.** The Maine Jobs Council is established to ensure that the State's workforce development system helps Maine people and businesses compete successfully in the global economy. Specific responsibilities include but are not limited to:

A. Performing all of the duties and responsibilities of the state board as defined in the Workforce Investment Act, 29 United States Code, Section 2801, including, but not limited to, the duties and responsibilities set forth in subsection 5-D; [2003, c. 114, §10 (AMD).]

B. Recommending to the Governor a state workforce development plan designed to maximize utilization and effectiveness of state workforce development services; [2003, c. 114, §10 (AMD).]

C. Monitoring agency and system-wide strategic goals based on the statewide workforce development policy and strategic plan and evaluating progress toward meeting those goals; [1997, c. 410, §12 (NEW); 1997, c. 410, §13 (AFF).]

D. Providing recommendations to the Governor and the Legislature that would improve system effectiveness and reduce system fragmentation; [1997, c. 410, §12 (NEW); 1997, c. 410, §13 (AFF).]

E. Creating greater coordination between economic development and human resource development and education programs; [2003, c. 114, §10 (AMD).]

F. Ensuring a balance between rural and urban workforce development; [2003, c. 114, §10 (AMD).]

G. Providing policy oversight and recommendations to ensure the effectiveness of vocational programs for people with disabilities in order to support efforts that reduce barriers to employment; [2003, c. 114, §10 (NEW).]

H. Providing policy oversight and recommendations to ensure that self-employment, microenterprise and small business are part of the overall workforce development strategy; [2003, c. 114, §10 (NEW).]

I. Providing policy recommendations to ensure the effectiveness of work-related programs and services for youth, including youth with disabilities; and [2003, c. 114, §10 (NEW).]

J. Providing policy recommendations to ensure the effectiveness of work-related programs and services for "at-risk" youth. [2003, c. 114, §10 (NEW).]

[ 2003, c. 114, §10 (AMD) .]

**2. Membership.** The council consists of members appointed by the Governor.

A. Thirty-five percent of the appointments must represent business and industry with consideration given to a balance among small, medium and large firms and 35% must represent employees, with no less than 15% of the total membership on the council representing organized labor. The remaining 30% must represent the general public. [2003, c. 114, §10 (AMD).]

B. Appointments must be consistent with the representation requirements of the Workforce Investment Act, including representatives from business and industry, organized labor, state agencies responsible for human resource programs and educational and community-based institutions. [2003, c. 114, §10 (AMD).]

The Governor shall ensure that the council and its technical support group have sufficient expertise to effectively carry out the duties and functions of the council.

[ 2003, c. 114, §10 (AMD) .]

**3. Terms of members.** One third of the initial appointees shall serve for a one-year term, 1/3 of the initial appointees shall serve for a 2-year term and 1/3 shall serve for a 3-year term. All subsequent appointees shall serve 3-year terms.

[ 1997, c. 410, §12 (NEW); 1997, c. 410, §13 (AFF) .]

**4. Chair and vice-chair.** The Governor shall appoint a chair and vice-chair from the membership of the council to serve for a one-year term. The Governor may reappoint members to serve as chair or vice-chair.

[ 1997, c. 410, §12 (NEW); 1997, c. 410, §13 (AFF) .]

**5. Functions and duties of the council.**

[ 2003, c. 114, §11 (RP) .]

**5-A. Apprenticeship.** In addition to its other duties, the council, through its Standing Committee on Apprenticeship, shall perform the duties of the former State Apprenticeship and Training Council.

A. As used in this subsection, unless the context otherwise indicates, the following terms have the following meanings.

(1) "Apprentice" means a person at least 16 years of age who is employed under an apprenticeship agreement to work at and learn a specific occupation and is registered with the council.

(2) "Apprentice agreement" means a written agreement that is entered into by an apprentice or organization of employees with an employer or an association of employers and provides for the

apprentice's participation in a definite sequence of job training and for such related and supplemental instruction as may be determined necessary for the apprentice to qualify as a journeyman in a particular occupation.

(3) "Committee" means the council's Standing Committee on Apprenticeship.

(4) "Journeyman upgrading" means continued related instruction advocated for by a sponsor, including joint apprenticeship and training committees or employers, for an individual who has fulfilled a bona fide apprenticeship as determined by the committee. Enrollment criteria are established by the committee.

(5) "Sponsor" means an employer or a potential employer. [1997, c. 683, Pt. D, §9 (NEW).]

B. The committee is composed of 12 voting members appointed by the Governor and made up as follows: 4 members must be representatives of employees and be bona fide members of a recognized major labor organization; 4 members must be representatives of employers and be bona fide employers or authorized representatives of bona fide employers; and 4 members must be representatives of the public, selected from neither industrial employers nor employees, nor may they be directly concerned with any particular industrial employer or employee. At least 2 members who are representatives of the public must represent the interests of women, minorities and recipients of aid to families with dependent children who are in registered apprenticeships. Each member holds office until a successor is appointed and qualified, and any vacancy must be filled by appointment for the unexpired portion of the term. The chair of the committee must be a member of the committee and is named by the members of the committee. The Commissioner of Labor or a designee, the Commissioner of Economic and Community Development or a designee, the Commissioner of Education or a designee, the chair of the council or a member designee and the President of the Maine Community College System or a designee are nonvoting ex officio members of the committee. [1997, c. 683, Pt. D, §9 (NEW); 2003, c. 20, Pt. OO, §2 (AMD); 2003, c. 20, Pt. OO, §4 (AFF).]

C. The committee shall:

(1) Establish standards, through joint action of employers and employees, assist in the development of registered apprenticeship programs in conformity with this subsection and generally encourage and promote the establishment of registered apprenticeship programs;

(2) Register or terminate, or cancel the registration of, apprenticeship programs and apprenticeship agreements, including journeyman upgrading;

(3) Authorize and issue certificates of completion of apprenticeship to apprentices who have been certified by a joint apprenticeship committee or employer as having satisfactorily completed their training;

(4) Keep a record of registered programs and apprentice agreements, including the number of women and minority apprentices by occupation and the number of occupations that are nontraditional for women;

(5) Adopt rules necessary to carry out the intent and purpose of this subsection. Rules adopted pursuant to this subsection are routine technical rules as defined in Title 5, chapter 375, subchapter II-A;

(6) Make an annual report by March 1st of each year to the Governor, the joint standing committee of the Legislature having jurisdiction over labor matters, the joint standing committee of the Legislature having jurisdiction over education and cultural affairs and the joint standing committee of the Legislature having jurisdiction over business and economic development matters. The report must include, for each business assisted under this subsection, the name and location of each business, the number of apprentices, the return on investment and, when applicable, the number of new jobs created;

(7) Ensure availability and oversee coordination of related and supplemental instruction for apprentices; and

(8) Develop a biennial plan in consultation with the Department of Labor and develop an evaluation tool and process that facilitates a review of the apprenticeship program outcomes based on the committee's biennial goals and objectives. As a result of this process, the committee may initiate programs that promote apprenticeship and work force development. [1997, c. 683, Pt. D, §9 (NEW).]

D. Committee meetings are held quarterly and as often as is necessary in the opinion of a majority of the committee. The chair shall designate the time and place of the meetings and the staff shall notify all committee members at least one week in advance of each meeting. A majority of the membership of the committee constitutes a quorum, as long as each of the groups in paragraph B has at least one representative present. [1997, c. 683, Pt. D, §9 (NEW).]

E. Standards for apprentice agreements must contain the following:

(1) A statement of the occupation to be taught and the required hours for completion of apprenticeship;

(2) A statement of the major work processes in the occupation to be taught and the approximate amount of time to be spent at each process;

(3) A statement of educational subjects to be studied and mastered, including on-the-job-training work experience. An agreement must state the number of hours required to complete an apprenticeship and indicate the approximate number of hours spent in each process and each training component;

(4) A statement that the apprentices may not be less than 16 years of age;

(5) A statement of the progressively increasing scale of wages to be paid the apprentice;

(6) A period of probation during which the committee shall terminate the apprentice agreement upon the written request of any party to the apprentice agreement. After the probationary period, the committee may terminate the registration of an apprentice upon agreement of the parties;

(7) A statement that, when differences arising out of the apprentice agreement can not be adjudged locally or in accordance with the occupation's established procedures, the services of the committee may be used for consultation regarding the settlement of the differences;

(8) A statement that if an employer is unable to fulfill its obligation under the apprentice agreement, the employer may transfer the obligation to another employer;

(9) A statement that there may be no discrimination based on sex, race, creed or color in employing apprentices; and

(10) Additional standards as may be prescribed in accordance with this subsection. [1997, c. 683, Pt. D, §9 (NEW).]

F. The committee may establish local, regional and state joint apprenticeship committees in any occupation or group of occupations, in cities, regions of the State or occupation areas whenever the apprentice training needs of the occupation or group of occupations justify the establishment. These local, regional or state joint apprenticeship committees are composed of an equal number of employer and employee representatives, selected by the respective local or state employer and employee organizations in the occupation or group of occupations, and any advisory members representing local boards or other agencies as may be advisable. Each local, regional or state joint apprenticeship committee must include an even number of voting members with expertise in issues related to women, minorities or recipients of aid to families with dependent children who are in apprenticeships, 1/2 to be chosen by the employer representatives and 1/2 to be chosen by the employee representatives. In an occupation or group of occupations in which there is no bona fide employer or employee organization, a joint apprenticeship committee may be composed of persons known to represent the interests of employers and of employees, or a state joint apprenticeship committee may be approved as the joint apprenticeship committee in that occupation or group of occupations. Subject to the review of the committee and in accordance with standards established by the committee, the joint apprenticeship committees may devise standards for apprenticeship agreements and give necessary aid to their respective occupations and localities. The activities of the joint apprenticeship committees must comply with all applicable affirmative action rules adopted by the committee. [1997, c. 683, Pt. D, §9 (NEW).]

G. This subsection, or any apprentice agreement approved under this subsection, does not invalidate an apprenticeship provision in a collective bargaining agreement between employers and employees that sets up higher apprenticeship standards. None of the terms or provisions of this subsection applies to any person, firm, corporation or craft unless the person, firm, corporation or craft voluntarily elects to be subject to

the terms and provisions of this subsection. [1997, c. 683, Pt. D, §9 (NEW).]

H. In carrying out its duties on a state level, the committee shall employ personnel in the Department of Labor, Bureau of Employment Services.

> (1) The Bureau of Employment Services must have a director of apprenticeship and training who supervises the execution of agreements and the maintenance of standards.

> (2) The Bureau of Employment Services shall keep a record of apprentice agreements and programs and ensure that all aspects of related and supplemental instruction are delivered and coordinated in a timely manner.

> (3) Apprenticeship field staff may be retained by agreements between the Bureau of Employment Services and its service provider network. Field staff are responsible for promoting apprenticeships to employers, writing apprenticeship programs and carrying out delegated council duties.

> (4) The committee's budget request must be incorporated into the overall budget of the Department of Labor.

> (5) The Commissioner of Labor is ultimately responsible for selecting and supervising all personnel employed by the committee, providing adequate staff support to the committee and disbursing funds according to committee policy. [1997, c. 683, Pt. D, §9 (NEW).]

I. The Maine Community College System remains the primary vendor for apprenticeship-related instruction according to a biennial articulation agreement with the Department of Labor.

> (1) The committee shall cooperate with the Department of Education, local school authorities, such as adult education and career and technical education centers, and other groups in organizing and establishing related or supplemental instruction for apprentices employed under approved agreements.

> (2) An educational institution or apprenticeship sponsor may provide related and supplemental instruction according to the policies established by the committee. Educational providers shall identify a contact person for the committee staff. As funds permit, the Department of Labor shall underwrite 50% of tuition costs for apprentices in good standing at public educational institutions and provide tuition assistance to sponsor groups in accordance with committee policies. To ensure that adequate funds are available for tuition, the committee shall provide the Commissioner of Labor with its biennial plan, including projected apprenticeship enrollments and a subsequent budget request.

> (3) The committee shall assist the Department of Education, the State's community colleges, local school authorities, such as adult education and career and technical education centers, and other groups in developing training courses to establish preapprenticeship training programs if the community colleges, local schools and other groups wish to do so. Successful

completion of preapprenticeship training programs enables a participant to meet the qualifying standards of the apprenticeship for which the participant has expressed serious interest. All preapprenticeship training programs are subject to approval by the committee. [1997, c. 683, Pt. D, §9 (NEW); 2003, c. 20, Pt. OO, §2 (AMD); 2003, c. 20, Pt. OO, §4 (AFF); 2003, c. 545, §5 (REV).]

J. The committee shall cooperate with the Department of Labor and the Department of Economic and Community Development in matters relating to work force and economic development. [1997, c. 683, Pt. D, §9 (NEW).]

K. The committee shall cooperate and consult with the Department of Corrections to develop policies concerning issues of job safety for prisoners involved in prison industries programs, work release programs and job displacement created by those programs and to develop opportunities for jobs in the prison industries programs consistent with Title 34-A, section 1403, subsection 9. [1997, c. 683, Pt. D, §9 (NEW).]

L. The committee shall cooperate, consult and coordinate with groups that help people on welfare find jobs. The committee shall also cooperate with other relevant groups to identify obstacles that may prevent women and recipients of aid to families with dependent children from participating in registered apprenticeships, and the necessary measures to be taken to overcome them. [1997, c. 683, Pt. D, §9 (NEW).]

M. Committee field staff are responsible for identifying and contacting potential sponsors with whom apprenticeship programs may be developed. Staff may receive business referrals from a variety of sources, including, but not limited to, local work force development centers, business visitation programs, local chambers of commerce, the Department of Economic and Community Development and the Department of Labor's Employer Assistance Division. Staff and committee members may regularly conduct presentations to employer groups, schools and other interested parties and develop brochures, public service announcements and promotional videotapes for the purpose of promoting apprenticeship. [1997, c. 683, Pt. D, §9 (NEW).]

N. Committee staff may provide apprenticeship sponsors with technical assistance that encourages high-quality job creation, reorganizes a workplace to help it remain competitive, upgrades worker skills by providing essential work competencies, occupational task analysis and instructor training and encourages affirmative action and recruitment of special populations. [1997, c. 683, Pt. D, §9 (NEW).]

O. All apprentice and training programs established under this subsection must conform to 29 Code of Federal Regulations, Parts 29 and 30, and any subsequent applicable provisions. The Federal Bureau of Apprenticeship and Training is available as a resource to the committee. [1997, c. 683, Pt. D, §9 (NEW).]

[ 1997, c. 683, Pt. D, §9 (NEW); 2003, c. 20, Pt. OO, §2 (AMD); 2003, c. 20, Pt. OO, §4 (AFF); 2003, c. 545, §5 (REV) .]

**5-B. Employment of people with disabilities.** In addition to its other duties, the council, through its Standing Committee on Employment of People with Disabilities, referred to in this subsection as the "committee," shall perform the duties of the former Governor's Committee on Employment of People with Disabilities.

A. The committee shall:

(1) Advise, consult and assist the executive and legislative branches of State Government on activities of State Government that affect the employment of disabled individuals. The committee is solely advisory in nature. The committee may advise regarding state and federal plans and proposed budgetary, legislative or policy actions affecting disabled individuals;

(2) Serve as an advocate on behalf of disabled citizens promoting and assisting activities designed to further equal opportunity for people with disabilities;

(3) Conduct educational programs considered necessary to promote public understanding of the needs and abilities of disabled citizens of this State;

(4) Provide information, training and technical assistance to promote greater employer acceptance of disabled workers;

(5) Advise and assist employers and other organizations interested in developing employment opportunities for disabled people; and

(6) Inform the public of the benefits of making buildings accessible to and usable by individuals with disabilities; monitor the enforcement of state and federal laws regarding architectural accessibility; and advise and assist building owners by disseminating information about accessibility and by making technical assistance available when appropriate.

(a) A wheelchair symbol must be appropriately displayed to identify buildings with facilities that are accessible to disabled and elderly individuals; accessibility is determined by the committee.

(b) The symbol required in division (a) must be that adopted by the Rehabilitation International's World Congress in 1969.

(c) Application for display of the wheelchair symbol must be made by the committee, which shall obtain and keep on file a supply of symbols. [1997, c. 683, Pt. D, §9 (NEW).]

B. The committee shall administer in accordance with current fiscal and accounting regulations of the State, and in accordance with the philosophy, objectives and authority of this subsection, any funds appropriated for expenditure by the committee or any grants or gifts that may become available and are accepted and received by the committee. [1997, c. 683, Pt. D, §9 (NEW).]

C. The committee shall submit an annual report directly to the Governor and the Legislature not later than September 1st of each year concerning its work, recommendations and interest of the previous fiscal year and future plans. The committee shall make any interim reports it considers

advisable. [1997, c. 683, Pt. D, §9 (NEW).]

D. The committee shall keep minutes of all meetings, including a list of people in attendance. [1997, c. 683, Pt. D, §9 (NEW).]

E. The committee may employ, subject to the Civil Service Law, the staff necessary to carry out its objectives. The committee may employ consultants and contract for projects it determines necessary. To the extent feasible and reasonable, the committee must be given the staff, facilities, equipment, supplies, information and other assistance required to carry out its activities. [1997, c. 683, Pt. D, §9 (NEW).]

F. The committee may make necessary rules, not inconsistent with this subsection, for promoting its purposes. [1997, c. 683, Pt. D, §9 (NEW).]

G. The committee may receive and accept, from any source, allocations, appropriations, loans, grants and contributions of money or other things of value to be held, used or applied to carry out this subsection, subject to the conditions upon which the loans, grants and contributions may be made, including, but not limited to, appropriations, allocations, loans, grants or gifts from a private source, federal agency or governmental subdivision of the State or its agencies. [1997, c. 683, Pt. D, §9 (NEW).]

[ 1997, c. 683, Pt. D, §9 (NEW) .]

**5-C. Occupational information.** In addition to its other duties, the council shall perform the duties of the former Maine Occupational Information Coordinating Committee.

A. The council shall:

(1) Support the development, maintenance and operation of the Comprehensive Career, Occupational and Economic Data-based System, established in section 1451, and foster communication and coordination of education, employment and training programs through the use of the system;

(2) Develop and implement an overall system for coordinating and delivering occupational and economic supply and demand information, using standardized techniques as feasible, to employment, training, career and technical education and vocational rehabilitation agencies; economic development agencies; private industry; and individuals;

(3) Facilitate the use of occupational and economic information in planning and allocating employment, training, career and technical education and vocational rehabilitation programs;

(4) Facilitate the use of career and occupational information in both school and nonschool settings through promotion and support of career education programs and activities;

(5) Provide the Governor with the comprehensive occupational and economic information required to improve the coordination of employment, training, career and technical education and vocational rehabilitation programs to meet commonly defined needs; and

(6) Recommend to the Governor legislative and executive initiatives designed to increase the utility of the Comprehensive Career, Occupational and Economic Data-based System as the system relates to a more effective coordination of employment, training, career and technical education and vocational rehabilitation programs, especially as these programs support economic development initiatives as the system relates to industrial recruitment and expansion efforts, and as the system relates to the delivery of career information to those involved in the career decision-making process. [1997, c. 683, Pt. D, §9 (NEW); 2003, c. 545, §4 (REV).]

B. The Executive Director of the Bureau of Employment Services may appoint, subject to the Civil Service Law, personnel authorized by the council and necessary to carry out the duties in this subsection. [1997, c. 683, Pt. D, §9 (NEW).]

C. The council may accept gifts, grants or other money from any source and may enter into contracts, charge fees and make grants for services consistent with this subsection. [1997, c. 683, Pt. D, §9 (NEW).]

[ 1997, c. 683, Pt. D, §9 (NEW); 2003, c. 545, §4 (REV) .]

**5-D. Workforce investment.** In addition to its other duties, the council shall perform the duties of the state board under the Workforce Investment Act, referred to in this subsection as "the Act."

A. The council shall assist the Governor in:

(1) Developing and continuously improving a statewide system of activities funded under the Act or carried out through a one-stop delivery system described in Section 134(c) of the Act including review of local plans and development of linkages to ensure coordination and nonduplication among the programs and activities with required and optional partners described in Section 121(b) of the Act;

(2) Designating local areas as required in Section 116 of the Act;

(3) Developing allocation formulas for the distribution to local areas of funds for youth activities and adult employment and training activities as allowed under Sections 133(b)(3)(B) and 128 (b)(3)(B) of the Act;

(4) Developing and continuously improving comprehensive state performance measures including state-adjusted levels of performance to assess the effectiveness of the workforce investment activities of the State as required under Section 136(b) of the Act;

(5) Developing an application for an incentive grant under Section 503 of the Act;

(6) Preparing an annual report to the United States Secretary of Labor as described in Section 136(d) of the Act;

(7) Commenting on measures taken pursuant to Section 113(b)(14) of the federal Carl D. Perkins Vocational and Applied Technology Education Act, 20 United States Code, Section 2323(b)(14); and

(8) Developing the statewide statistics system described in Section 15(e) of the federal Wagner-Peyser Act, 29 United States Code, Section 49l-2(e). [2003, c. 114, §12 (RPR).]

B. The council has the necessary authority to carry out the purposes of this section.

C. The commissioner may appoint employees necessary to carry out the council's responsibility under this subsection.

D. The commissioner may adopt rules, in accordance with Title 5, chapter 375, necessary to carry out the council's responsibility under this subsection. [2003, c. 114, §12 (RPR).]

[ 2003, c. 114, §12 (RPR) .]

**6. Powers.** The council shall have the necessary authority to carry out the purposes of this section.

[ 1997, c. 410, §12 (NEW); 1997, c. 410, §13 (AFF) .]

**7. Committee structure.** The council has the following committee structure.

A. The council shall create 4 standing committees of up to 12 members. Each standing committee may include up to 8 noncouncil members appointed by the council chair and drawn from the same constituency groups as the council's membership. The standing committees shall make recommendations to the full council. The 4 standing committees are as follows:

(1) Apprenticeship, with its membership specified in subsection 5-A, paragraph B;

(2) School-to-work;

(3) Employment of people with disabilities; and

(4) Women's employment issues. [1999, c. 6, §1 (AMD).]

B. The council may also create additional committees to address specific problems and issues. These committees may consist of up to 12 members and may include up to 8 noncouncil members appointed by the council chair and drawn from the same constituency groups as the council's membership. These committees shall make recommendations to the full council. [1999, c. 6, §2 (AMD).]

C. The Governor shall appoint members to a technical support group to assist the council in the performance of its duties and responsibilities. The Governor shall appoint persons to serve on the technical support group for 3-year terms. The services provided by the State's various workforce organizations must be fairly represented in the technical support group with consideration given to a balance between rural and urban interests. Organizations with representation on the technical support group may include, but are not limited to:

(1) The local areas;

(2) Adult education;

(3) School-to-work;

(4) Providers that specialize in women's workforce issues;

(5) Rehabilitation providers;

(6) Welfare-to-work;

(7) The University of Maine System;   ·

(8) The Maine Community College System;

(9) Career and technical education; and

(10) The Department of Economic and Community Development, the Department of Education, the Department of Health and Human Services, the Department of Labor and the State Planning Office. [2003, c. 20, Pt. OO, §2 (AMD); 2003, c. 114, §13 (AMD); 2003, c. 20, Pt. OO, §4 (AFF); 2003, c. 545, §4 (REV); 2003, c. 689, Pt. B, §6 (REV).]

[ 2003, c. 20, Pt. OO, §2 (AMD); 2003, c. 114, §13 (AMD); 2003, c. 20, Pt. OO, §4 (AFF); 2003, c. 545, §4 (REV); 2003, c. 689, Pt. B, §6 (REV) .]

**8. Meetings.** The council shall meet at such times and such places as it considers necessary. The meetings must be publicly announced and open to the general public. A majority of members of the council constitutes a quorum for the transaction of business.

[ 1997, c. 410, §12 (NEW); 1997, c. 410, §13 (AFF) .]

**9. Administration.** The Department of Education and the Department of Labor shall jointly administer the council. The Department of Labor is the fiscal agent for the council. Pursuant to the Commissioner of Labor's authority under section 1401-B and to the Commissioner of Education's authority under Title 20-A, section 253, subsection 2, the Commissioner of Labor and the Commissioner of Education may designate employees they consider necessary to carry out the State's responsibility under this section.

The Commissioner of Education and the Commissioner of Labor are authorized to adopt joint rules as may be necessary to carry out the State's responsibility under this section. Rules adopted pursuant to this subsection are routine technical rules as defined in Title 5, chapter 375, subchapter II-A.

The council shall establish bylaws for its governance. These bylaws are subject to the Governor's approval.

[ 1997, c. 410, §12 (NEW); 1997, c. 410, §13 (AFF) .]

**10. Compensation.** Members of the council receive no compensation for their services. Reimbursement of necessary expenditures incurred in the performance of their duties on the council, which are allowed by state law, are administered by the Department of Labor from federal or state appropriations.

[ 1997, c. 410, §12 (NEW); 1997, c. 410, §13 (AFF) .]

SECTION HISTORY
1997, c. 410, §12 (NEW). 1997, c. 683, §§D7-10 (AMD). 1997, c. 410, §13 (AFF). 1999, c. 6, §§1,2 (AMD). 2003, c. 20, §OO2 (AMD). 2003, c. 114, §§10-13 (AMD). 2003, c. 20, §OO4 (AFF). 2003, c. 114, §12 (RPR). 2003, c. 114, §12 (RPR). 2003, c. 114, §12 (RPR). 2003, c. 545, §§4,5 (REV). 2003, c. 689, §B6 (REV) .

*Data for this page extracted on 02/12/2008 09:40:18.*

**The Revisor's Office cannot provide legal advice or interpretation
of Maine law to the public.
If you need legal advice, please consult a qualified attorney.**

<u>**Office of the Revisor of Statutes**</u>
**7 State House Station
State House Room 108
Augusta, Maine 04333-0007**

# EXHIBIT N

The Official Website of the Executive Office of Labor and Workforce Development (EOLWD)

# Labor and Workforce Development

Mass.Gov

Mass.Gov Home    State Agencies    State Online Services

Home > Businesses > Sponsoring Apprentices > Policies and Procedures >

## Rules and Regulations (EOLWD)

### CMR CHAPTER 7.00: APPRENTICE TRAINING

### Chapter 357 of the Acts of 2002 [PDF]

© 2008 Commonwealth of Massachusetts

Site Policies    Feedback    Contact Us

SEARCH

Labor and Wo
Search

The Official Website of the Executive Office of Labor and Workforce Development (EOLWD)

# Labor and Workforce Development

Mass.Gov

Mass.Gov Home     State Agencies     State Online Services

Home > Businesses > Sponsoring Apprentices > Policies and Procedures > Rules and Regulations (EOLWD) >

**SEARCH**

Labor and Wo

Search

# CMR CHAPTER 7.00: APPRENTICE TRAINING

### CODE OF MASSACHUSETTSREGULATIONS

### TITLE 453: DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT

### CHAPTER 7.00: APPRENTICE TRAINING

**7.01: Authority, Purpose, and Scope**

(1) Authority. 453 CMR 7.00 is promulgated under the authority of M.G.L. c. 23, § 3; c. 23 §§ 11E, 11G and 11K.

(2) Purpose. 453 CMR 7.00 establishes:

(a) Criteria under which the Department of Labor and Workforce Development's Division of Apprentice Training may continue to be recognized as an appropriate agency for registering local apprentice programs for federal purposes pursuant to the Fitzgerald Act, 29 U.S.C. § 50 and the federal regulations promulgated thereunder, 29 CFR §§ 29.1 through 29.13;

(b) Minimum standards governing apprenticeship in Massachusetts to maintain the integrity of employment-based training programs and to safeguard the welfare of Massachusetts apprentices;

(c) Application procedures and requirements for obtaining status as a Massachusetts registered apprentice program;

(d) Procedures for redressing noncompliance by apprentices or apprentice program sponsors with any Massachusetts or federal law governing apprenticeship; and

(e) Notice and recordkeeping requirements with which all registered apprentice programs must comply.

(3) Scope. 453 CMR 7.00 shall apply to any person, firm, corporation, or other entity that applies for registration of an apprentice program with the Department of Labor and Workforce Development's Division of Apprentice Training, or enters into apprenticeship arrangements with registered apprentice program sponsors or apprentices.

**7.02: Definitions**

Apprentice. Any person, at least 16 years of age, except where a higher minimum age standard is otherwise fixed by law, who is participating, through employment, in an approved schedule of work experience supplemented by related instruction and who is a party to an apprentice agreement registered with the Department of Labor and Workforce Development's Division of Apprentice Training.

Apprenticeable Occupation. An occupation which possesses all of the following characteristics:

(a) It involves mechanical, cognitive, literacy and technical skill and knowledge which customarily requires a minimum of two years or longer of work, training, and learning experience to learn the occupation;

(b) It is customarily learned in a practical way through a structured, hands-on, systematic program of on-the-job training and task rotation that involves the development of skills sufficiently broad as to be applicable in like occupations throughout an industry and not narrowly restricted to the tools, materials and processes or operations of a single employer;

(c) It is clearly identified and commonly recognized throughout an industry and it is not part of another apprenticeable occupation unless such part is commonly practiced throughout an industry as an identifiable and distinct occupation possessing all of the characteristics set forth in 453 CMR 7.02;

(d) It requires a measurable component, depending upon the complexity and demands of the occupation, of instruction or study in related and technical subjects to supplement work-acquired skills.

Apprentice Agreement. A written agreement which conforms to the standards established under M.G.L. c. 23, § 3; c. 23 §§ 11B through 11L and 453 CMR 7.00 and is entered into between an apprentice and an apprentice program sponsor.

Apprentice Council. The Massachusetts Apprentice Council established under M.G.L. c. 23, § 11E.

Apprentice Program. A program for the, recruitment, selection, employment, training, and qualification of apprentices.

Apprentice Program Sponsor. Any person, association, committee, organization, corporation, partnership, or other entity operating an apprentice program and in whose name the program is registered.

Apprenticeship Committee. Those persons designated by the apprentice program sponsor to act for it in the administration of an apprentice program.

Deputy Director. The Deputy Director of the Department of Labor and Workforce Development's Division of Apprentice Training and his/her designees.

Deregistration. The termination of the registration status of an apprentice program.

Director. The Director of the Department of Labor and Workforce Development and his/her designees.

Division. The Department of Labor and Workforce Development's Division of Apprentice Training.

Employer. Any person or organization employing an apprentice, whether or not such person or organization is a party to an apprentice agreement with the apprentice.

Registration of Apprentice Agreement. The acceptance and recording of an apprentice agreement by the Division following a determination by the Deputy Director that the agreement meets the requirements of M.G.L. c. 23, §§ 11B through 11L and 453 CMR 7.00.

Registration of Apprentice Program. The acceptance and recording of an apprentice program by the Division following a determination by the Deputy Director that the program meets the requirements of M.G.L. c. 23, §§ 11E through 11L and 453 CMR 7.00.

Related Instruction. Organized classroom instruction designed to provide the apprentice with the theoretical and technical knowledge related to the apprentice's trade.

Suspension. The temporary termination of the registration of an apprentice program which is instituted by the Division for cause.

### 7.03: Eligibility for Apprentice Program Registration

No apprenticeship program sponsor shall be eligible for registration unless:

(a) The occupation at issue is an apprenticeable occupation as defined in 453 CMR 7.02;

(b) The terms and conditions of the proposed apprentice program comply with the requirements of M.G.L. c. 23, §§ 11E through 11L and 453 CMR 7.00; and

(c) The proposed apprentice program conforms to the Massachusetts State Plan for Equal Employment Opportunity in Apprenticeship and Training.

**7.04: Procedure for Apprentice Program Registration**

(1) All new applicants for apprentice program registration must submit to the Division the following:

(a) A completed application form as prescribed by the Deputy Director;

(b) Documentation describing the proposed apprentice program including, but not limited to, a description of the relevant work processes on which the apprentices will work, the terms and conditions of employment, arrangements for supervision of the apprentices, and the provision of related instruction;

(c) A copy of the apprentice agreement form;

(d) If the apprentice program sponsor will be administering the program through an apprenticeship committee, documentation describing the organization of the committee and the functions of each of its members;

(e) Documentation that the apprentice program sponsor's apprentice activities are primarily located in Massachusetts. Such documentation should include evidence of the following:

1. That the majority of the work to be performed by the apprentices will occur in Massachusetts;

2. That the efforts to conduct outreach for new apprentices will be directed in Massachusetts;

3. That the administration of the proposed apprentice program will be conducted in Massachusetts; and

4. That all documents and records concerning the proposed apprentice program will be located in Massachusetts.

(f) A declaration concerning whether the apprentice program sponsor will give credit towards completion of the program for any relevant hands-on training or related instruction which an apprentice may have received while previously participating in other apprentice programs or while employed by previous employers in the relevant occupation and, if so, the terms and conditions under which such credit will be given.

(2) If the applicant for apprentice program registration is an employer or an employer's association who is a party to a collective bargaining agreement which is applicable to the trade for which the apprentice program is being developed, such applicant must provide a copy of its registration application to the collective bargaining agent no later than two weeks before the date that the application is filed with the Division. With its application for registration, the apprentice program sponsor may submit a written acknowledgement by the collective bargaining agent that such agent has no objection to the registration of the apprentice program. If no such acknowledgement is submitted, the applicant must submit to the Division with its application documentation that the collective bargaining agent was provided a copy of the application and was notified that it has the right to file comments with the Division concerning the application. The Division shall allow no less than 30 calendar days nor more than 60 calendar days for receipt of comments by the collective bargaining agent before final action on the application is taken.

If the applicant for apprentice program registration is an employer or an employer's association who is a party to a collective bargaining agreement which is applicable to the trade for which the apprentice program is being developed, such applicant must submit with the application a statement attesting to such fact.

(3) If the applicant for apprentice program registration is involved in any abnormal labor condition, such as a strike, lockout, or other similar condition, the application of an apprentice program shall be withheld until such issue is resolved.

(4) The Deputy Director may deny an application for registration upon a finding that the proposed apprentice program does not comply with M.G.L. c. 23, §§ 11E through 11L, 453 CMR 7.00, or the Massachusetts State Plan for Equal Employment Opportunity in Apprenticeship and Training. Applicants shall be advised by the Deputy Director in writing of the denial and the reasons therefor.

(5) Following registration of an apprentice program, the apprentice program sponsor must notify the

Division promptly in writing of any modifications to the program or material changes in the information submitted with the application for registration.

## 7.05: Standards for Apprentice Programs

All registered apprentice programs must comply with the following standards:

(1) The apprentice must be employed and trained in an apprenticeable occupation as defined in 453 CMR 7.02;

(2) The apprentice shall be provided no less than 2,000 hours per year of employment in the relevant occupation;

(3) The apprentice shall be provided with a description of the work processes in which he or she will work and an approximation of the proportion of time to be spent in each major process;

(4) The apprentice program sponsor shall ensure that the apprentice receives approximately 150 hours per year of related instruction in all subjects related to the trade. Such instruction may be given in a classroom or through correspondence courses or other forms of self-study, but must be approved by the Deputy Director. The sponsor will not necessarily be responsible for paying the cost of the related instruction or any books, other written materials, or supplies necessary for such instruction. If, however, the apprentice is to be responsible for all or any portion of such costs, the apprentice agreement must contain an explicit statement to that effect;

(5) The sponsor must ensure that the apprentice will be paid no less than an amount specified in a predetermined schedule of wage rates. Such wage rates shall be expressed as a percentage of the established journeyperson rate and shall progressively increase consistent with the level of skill acquired by the apprentice for the duration of time that the apprentice participates in the apprentice program. The apprentice's scale of wages shall average not less than 50% of the journeyperson rate for the term of apprenticeship;

(6) The journeyperson rate used for establishing the apprentice's wage schedule shall be stated in dollars and cents and shall be reviewed annually and, if appropriate, re-adjusted;

(7) The entry apprentice wage rate shall be not less than the minimum wage prescribed by applicable state or federal law;

(8) The apprentice shall be given performance evaluations at the time of each step increase but no less than two performance evaluations per year. Such evaluations shall be in writing either on forms prepared by the Division or forms prepared by the apprentice program sponsor and approved by the Deputy Director. Nothing in 453 CMR 7.05 shall preclude the apprentice program sponsor from providing oral performance evaluations in addition to the written evaluations required hereunder;

(9) The ratio of apprentices to journeypersons indentured by the apprentice program sponsor shall not exceed the ratios specified in the most recent version of the Division's *Ratio Policy Implementation Manual*;

(10) The apprentice shall be trained in safe and healthful work practices and shall work only in environments that comply with all applicable Massachusetts and federal occupational safety and health standards;

(11) The apprentice shall not be less than 16 years of age. The employment of apprentices between the ages of 16 and 18 shall comply with all applicable Massachusetts and federal child labor laws;

(12) The apprentice program sponsor may, at its discretion, grant credit or advanced standing to an apprentice for hands-on training or related instruction which the apprentice may have obtained while previously participating in other apprentice programs or while employed by previous employers. However, such previous training or experience must be documented and comply with M.G.L. c. 23, §§ 11E through 11L and 453 CMR 7.00. Step increases in pay shall be commensurate with the credit given to the apprentice. The granting or denial of credit or advanced standing to any particular apprentice must conform to the apprentice program sponsor's stated policy on this issue as described in the apprentice program application materials and in the apprentice agreement;

(13) Upon successful completion of the apprentice program, the apprentice program sponsor shall

provide the apprentice with a certificate evidencing completion of the program; and

(14) The apprentice program sponsor shall establish a procedure to receive, investigate, and resolve complaints and concerns raised by apprentices relative to the apprentice program. To the extent possible, confidentiality of the information provided to the apprentice program sponsor concerning matters raised by apprentices shall be maintained.

### 7.06: Registration of Apprentice Agreements

(1) All apprentices participating in an apprentice program must execute an apprentice agreement with the apprentice program sponsor.

(2) No apprentice agreement shall be effective until it is submitted to, and approved by, the Deputy Director.

(3) No apprentice program sponsor may submit for registration an apprentice agreement if, at the time that the apprentice agreement is submitted to the Division, the sponsor has reason to believe that the apprentice who executed the agreement will not be provided continuous employment for the entire period of time required to complete the program.

(4) The apprentice agreement shall contain the following terms, conditions, and information:

(a) The names and signatures of the contracting parties;

(b) If the apprentice is a minor, the name and signature of the apprentice's parent or guardian;

(c) The apprentice's date of the birth;

(d) The name and address of the apprentice program sponsor and the Division;

(e) The name of the trade or craft in which the apprentice is to be trained;

(f) The date on which the apprentice's participation in the program is to commence and the term of apprenticeship;

(g) The number of hours per year of hands-on training that will be provided to the apprentice;

(h) The number of hours per year of related instruction which the apprentice will receive and whether the apprentice will be responsible for paying any or all of the costs of related instruction;

(i) The total number of hours of hands-on training and related instruction required of the apprentice for completion of the program;

(j) A description of the work processes in which the apprentice will work and an approximation of the proportion of time to be spent in each major process;

(k) A statement of the graduated scale of wages to be paid to the apprentice as described in 453 CMR 7.05(5);

(l) A statement describing the duration and conditions of the probationary period and the terms and conditions governing apprentice agreement cancellation as prescribed by 453 CMR 7.07;

(m) A statement that the apprentice will be given equal opportunity in all phases of the apprentice program and will not be discriminated against based on race, color, religion, national origin, gender, or sexual orientation;

(n) The name(s), address(es) and telephone number(s) of the individual(s) designated by the apprentice program sponsor to receive, investigate, and resolve complaints and concerns raised by apprentices relative to the apprentice program;

(o) A statement that if the apprentice has a complaint or concern relative to the apprentice program which, after fully exhausting all internal procedures, is not resolved by the apprentice program sponsor to the apprentice's satisfaction, then the Deputy Director is available to receive, investigate, and resolve the complaint or concern. Matters unrelated to 453 CMR 7.00 or M.G.L. c. 23, §§ 11E through 11L are not subject to such review;

(p) A statement that the apprentice's participation in the apprentice program is governed by M.G.L. c.

23, §§ 11E through 11L and 453 CMR 7.00; and

(q) The amount of credit which the apprentice program sponsor will give to the apprentice towards completion of the program, if any, for any relevant hands-on training or related instruction which the apprentice may have obtained while previously participating in other apprentice programs or while employed by previous employers.

(5) Within 30 calendar days of an apprentice's cancellation or completion of the apprentice program, the apprentice program sponsor must send written notification thereof to the Division.

### 7.07: Probation and Cancellation of Apprentice Agreements

(1) The apprentice program sponsor shall establish a probationary period for new apprentices during which time the apprentice agreement may be canceled by any party to the agreement for any reason upon notice to the Division. Upon completion of the probationary period, the apprentice shall be given full credit for the term of the probationary period toward completion of the apprentice program.

(2) Following the probationary period, an apprentice agreement may be canceled either by consent of all of the parties to the agreement or by one or more parties upon a showing of sufficient cause. If cancellation is sought by a party to the agreement other than the apprentice, the apprentice shall be given notice of the proposed cancellation and a reasonable opportunity to make corrective action.

(3) The apprentice program sponsor shall give written notice to the Division of the cancellation of any apprentice agreement and the reason(s) therefor within 30 calendar days of the cancellation.

(4) At any time during the period of apprenticeship, the Deputy Director may cancel an apprentice agreement where he or she deems appropriate.

### 7.08: Suspension and Deregistration of Apprentice Programs

Suspension or deregistration of an apprentice program may be effected voluntarily by the apprentice program sponsor or by order of the Deputy Director.

(1) Voluntary Deregistration by Sponsor. The apprentice program sponsor may voluntarily deregister an apprentice program by providing written notice of such voluntary deregistration to the Division which shall include the effective date of the deregistration. Following receipt of such notice, the Deputy Director shall provide written acknowledgement of the deregistration to the apprentice program sponsor. Within ten business days of receipt by the apprentice program sponsor of such acknowledgement, the sponsor must provide written notice to all apprentices of the deregistration of the apprentice program which shall state that such deregistration automatically effects the termination of all apprentice agreements executed thereunder.

(2) Suspension or Deregistration by the Division.

(a) The Deputy Director may institute proceedings to suspend or deregister an apprentice program upon finding of sufficient cause. The apprentice program sponsor shall be notified in writing of the proposed suspension or deregistration and reasons therefor. In the case of a suspension, the sponsor shall also be notified of the intended duration of the proposed suspension and any conditions that must be met before reinstatement of the registration. Any of the following shall constitute sufficient cause for suspension or deregistration:

1. False statements or material omissions in the application for registration or documentation submitted therewith;

2. Violation of any of the requirements of M.G.L. c. 23, §§ 11E through 11L or 453 CMR 7.00; or

3. Violation of any Massachusetts or federal law which the Deputy Director determines to be of such serious and compelling nature to warrant suspension or deregistration of the apprentice program.

(b) Apprentice program sponsors shall have the right to a hearing before the Deputy Director on a proposed suspension or deregistration by submitting a written request for a hearing within ten business days of receipt of the notice of suspension or deregistration. Such notice must state the main facts and points of law the apprentice program sponsor intends to raise at the hearing in support of its contention that the proposed action should not be taken. If the Division does not receive such request

within ten business days of the sponsor's receipt of the notice, the proposed action will be effective immediately upon expiration of such ten day period.

(c) If a request for a hearing before the Deputy Director is filed timely, the Deputy Director shall conduct such hearing in accordance with the Standard Adjudicatory Rules of Practice and Procedure, 801 CMR 1.01: *Formal Rules*. Following the hearing, the determination of the Deputy Director shall be filed with the Director and notice of such determination shall, at the same time, be sent to all interested parties.

(d) If no appeal of the determination of the Deputy Director is filed with the Director within ten business days of filing and notice of the Deputy Director's determination, such determination shall be effective immediately upon expiration of such ten day period. If an appeal is filed timely by an interested party, the Director shall conduct a hearing on the proposed action in accordance with the Standard Adjudicatory Rules of Practice and Procedure, 801 CMR 1.01: *Formal Rules*. Following the hearing, notice of the determination of the Director shall be sent to all interested parties.

(e) Any interested party aggrieved by the determination of the Director may appeal to the superior court as provided in M.G.L. c. 23, § 11K. If no such appeal is filed within 30 calendar days from the date of receipt of the notice of the Director's determination, such determination shall be effective immediately upon expiration of such 30 day period.

(f) Within ten business days of the effective date of a suspension or deregistration, the apprentice program sponsor must provide written notice to all apprentices that, for the period of such suspension or deregistration, all apprentice agreements are automatically terminated.

(3) Documentation of Apprentice Hours. Within 30 calendar days of the date of the deregistration (either voluntary or involuntary) of an apprentice program, the apprentice program sponsor shall send to the Division a copy of all documents demonstrating the number of hours of hands-on training and related instruction obtained by all apprentices employed in the program.

### 7.09: Reinstatement of Apprentice Program Registration

Any apprentice program suspended or deregistered pursuant to 453 CMR 7.08 may be reinstated, at the discretion of the Deputy Director, upon presentation to the Deputy Director of adequate evidence that the condition that gave rise to the action has been rectified. Following a deregistration for cause, the apprentice sponsor may not file a request for reinstatement of registration prior to six months after the effective date of the deregistration.

Upon reinstatement of an apprentice program following a suspension or deregistration, the apprentices employed under such program shall be given credit for any *bona fide* hands-on training or related instruction obtained by such apprentices during the period of the suspension or deregistration. However, the amount of credit for hands-on training shall not exceed the number of hours of such training corresponding to six months of employment in the trade in which the apprentice is registered.

### 7.10: Recordkeeping

(1) Registered apprentice program sponsors shall maintain the following documents in a centralized location in Massachusetts and shall make such records available to the Deputy Director:

(a) A complete copy of the apprentice program sponsor's application for registration and all documentation submitted therewith;

(b) Documentation concerning any violations of M.G.L. c. 23, §§ 11E through 11L or 453 CMR 7.00 cited by the Division or any prior action instituted by the Division to suspend or deregister the apprentice program;

(c) Copies of all current or canceled apprentice agreements;

(d) Copies of all certificates evidencing completion by apprentices of the apprentice program;

(e) A current list of journeypersons who are members or employees of the apprentice sponsor and are licensed in the trade covered by the apprentice program. The list shall include the license numbers of each such journeyperson;

(f) Documents concerning any complaints or concerns by apprentices and efforts by the apprentice program sponsor to investigate and resolve such matters;

(g) Documentation of the number of hours of hands-on-training provided to each apprentice in the program;

(h) Documentation of the number of hours of related instruction received by each apprentice in the program; and

(i) Copies of all apprentice performance reviews.

(2) Documents required by 453 CMR 7.10(1) shall be retained for a period of not less than ten years.

**7.11: Limitations of Regulations**

(1) Nothing in 453 CMR 7.00 shall operate to invalidate:

(a) Any term or condition in any collective bargaining agreement between employers and employees establishing more stringent standards of apprenticeship; or

(b) Any special provisions instituted by the apprentice program sponsor for the benefit of veterans, minority persons, or women which are not otherwise prohibited by law.

**7.12: Severability**

If any provision of 453 CMR 7.00 is held to be unconstitutional or inconsistent, either on its face or as applied, with any provision of Massachusetts or federal law, the unconstitutionality or inconsistency shall not affect the remaining provisions.

© 2008 Commonwealth of Massachusetts

Site Policies    Feedback    Contact Us

# Chapter 357 of the Acts of 2002

## AN ACT RELATIVE TO APPRENTICESHIP TRAINING PROGRAMS.

Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same, as follows:

**SECTION 1.** Chapter 23 of the General Laws is hereby amended by striking out sections 11E to 11L, inclusive, and inserting in place thereof the following 8 sections:-

**Section 11E.** There shall be in the department an apprenticeship council, to consist of 8 members, 6 of whom shall be appointed by the director with the approval of the governor, 1 of whom shall be the deputy director of employment and training or his successor, in the department of labor and workforce development, ex officio, and 1 of whom shall be the associate commissioner of career and technical education or his successor, in the department of education, ex officio. Of the appointive members, 3 of whom, on account of previous vocation, employment, occupation or affiliation, may be classified as representatives of labor and 3 of whom shall be persons who, on account of previous vocation, employment, occupation or affiliation, may be classified as representatives of management. The terms of office of the representatives of labor and management initially appointed shall expire as designated by the director at the time of making the appointments, 1 representative each of labor and management shall be appointed for a term of 1 year, 1 representative each of labor and management shall be appointed for a term of 2 years, and 1 representative each of labor and management shall be appointed for a term of 3 years. Thereafter, each member representing labor and management shall be appointed for a term of 3 years. Any member appointed to fill a vacancy occurring prior to the expiration of the term of his predecessor shall be appointed for the remainder of the term. Each member of the council not otherwise compensated by the commonwealth may be reimbursed for transportation and other necessary expenses. The council shall not meet more than 15 days in a year.

The council shall meet at the call of the director and shall aid the director in formulating policies for the effective administration of this chapter. The council shall suggest standards for apprentice programs and apprentice agreements, which shall in no case be lower than those prescribed by this chapter. The council shall suggest such rules and regulations as it deems necessary to carry out the intent and purposes of this chapter, and shall perform such other functions as the director may direct.

**Section 11F.** The director, subject to approval by the governor, shall appoint a deputy director of apprentice training. The deputy director may appoint and employ such clerical, technical and professional assistance as shall be necessary to effectuate the purposes of this chapter, and may utilize any federal funds available to aid in the administration of this chapter.

**Section 11G.** The director and deputy director, with the advice and guidance of the apprenticeship council, shall administer sections 11E to 11W, inclusive, shall keep a record of apprentice programs and apprentice agreements and their disposition, shall cooperate with the state department of education and the local school authorities in regard to the education of apprentices in accordance with the standards established by the director and deputy director for the same trade or group of trades, and shall perform such other duties as are necessary to carry out the intent of said sections 11E to 11W, inclusive.

The director and deputy director may set up and establish conditions and training standards for apprentice programs and apprentice agreements, which conditions or standards shall in no case be lower than those prescribed by said sections 11E to 11W, inclusive, may create and implement a schedule of progressive sanctions regarding registration of apprentice programs, may act as secretary of the apprenticeship council, may approve an apprentice program or apprentice agreement which meets the standards established under said sections 11E to 11W, inclusive, may terminate or cancel an apprentice program or apprentice agreement in accordance with said sections 11E to 11W, inclusive, and may issue certificates of completion of apprenticeship.

**Section 11H.** As used in this chapter the following words shall, unless the context clearly requires otherwise, have the following meaning:-

"Apprentice", a person at least 16 years of age who has entered an apprentice agreement with an employer, or an association of employers, or an organization of employees, or other apprentice program sponsor.

"Apprentice agreement", a written agreement between an apprentice and an apprentice program sponsor which is registered with the division and which provides for not less than 2,000 hours of reasonably continuous employment, consistent with training requirements as established by industry practice, in the occupation to which he is apprenticed. The written agreement shall also provide for not less than 150 hours per year of related instruction for a person in the occupation to which he is apprenticed, as well as participation in an approved schedule of work experience throughout a reasonably continuous period of employment.

"Apprenticeable occupation", a skilled trade which: (1) is customarily learned in a practical way through a structured, systemic program of on-the-job supervised training; (2) is clearly identified and commonly recognized through an industry; (3) involves manual, mechanical or technical skills and knowledge which require a minimum of 2,000 hours of on-the-job work experience; and (4) requires related training to supplement the on-the-job training.

"Apprentice program", a program which is registered with the division for the recruitment, selection, employment, training and qualification of apprentices.

"Apprentice program sponsor", a person, association, committee, organization, corporation, partnership, trust or other entity operating an apprentice program and in whose name the program is registered with the division.

"Deputy director", the deputy director of apprentice training.

"Director", the director of labor and workforce development.

"Division", the division of apprentice training in the department of labor and workforce development.

**Section 11I.** Every apprentice agreement entered shall include at least the following basic provisions:

(a) a requirement that the apprentice receive a minimum of 2,000 hours of employment as an apprentice, consistent with training requirements as established by industry practice, in the occupation to which he is apprenticed;

(b) a requirement that the apprentice receive a minimum of 150 hours per year of related classroom instruction during the period of apprenticeship in the occupation to which he is apprenticed;

(c) a schedule of the work processes to be learned in the occupation;

(d) a progressively increasing scale of wages for the apprentice, during the period of apprenticeship, averaging at least ½ of the rate of pay of a journey person over a similar period;

(e) a concise and accurate statement of the terms and conditions of the employment and training of the apprentice and a statement that the apprenticeship agreement shall be registered with the division within 30 days of its execution;

(f) a statement that such agreement may be terminated, within 6 months of its execution, by either the employer or the apprentice, for any reason;

(g) a statement that the agreement may be terminated by the deputy director any time during the duration of the agreement if the deputy director deems it proper; and

(h) a statement that the division is available to receive, investigate and resolve any complaints the apprentice has about the apprentice training program in which the apprentice is registered.

**Section 11J.** No apprentice agreement shall be effective until approved by and registered with the division. An apprentice agreement shall be signed by the apprentice program sponsor and by the apprentice and, if the apprentice is a minor, by a legal guardian of the minor and by the deputy director. When a minor enters into an apprentice agreement for a period of training extending beyond the date upon which the apprentice shall attain his majority, the apprentice agreement, if approved and registered, shall be binding for the entire period referred to in the agreement, including so much thereof as may extend beyond the date upon which the apprentice attained majority.

**Section 11K.** To be approved by and registered with the division, an apprentice program shall substantially conform with the following basic standards:-

(a) The ratio of apprentices to journeypersons shall not conflict with the ratio established in apprenticeable occupations operated by the joint labor management apprentice training programs approved under this chapter. Notwithstanding section 11G, neither the deputy director, the director, nor the apprenticeship council shall set up and establish conditions and training standards for apprentice programs which are in conflict with this ratio.

(b) The apprentice program shall be open to all persons at least 16 years old and shall not discriminate on the basis of age, race, color, creed, national origin, gender, sexual orientation or disability.

(c) The apprentice program shall ensure that each apprentice works a minimum of 2,000 hours of employment, consistent with training requirements as established by industry practice, at the occupation to which he is apprenticed. The apprentice program shall ensure that each apprentice receives a minimum of 150 hours annually of related classroom instruction in the occupation to be learned.

(d) The apprentice program must ensure that each apprentice is paid in accordance with a predetermined schedule of wage rates based on the journeyperson rate, said schedule to progressively increase with the apprentice's skill level and average at least 50 per cent of the journeyperson's rate for the apprenticeship term.

(e) The apprentice program shall allow credit or advanced standing to be granted to an apprentice for hands-on training or related instruction which the apprentice may have previously obtained, but all such credit or advanced standing shall comply with this chapter.

(f) The apprentice program shall establish a procedure to receive, investigate and resolve apprentices' complaints about the program. The procedure shall provide that any such complaint shall be filed within 6 months after the apprentice knew, or reasonably should have known of the act giving rise to the complaint. Notice of the complaint procedure shall be provided to all apprentices. Such notice shall advise an apprentice that the division is available to receive, investigate and resolve any complaints about the program that have not been resolved to the satisfaction of the apprentice after all internal procedures have been fully exhausted.

**Section 11L.** A person, association, committee, organization, corporation, partnership, trust or other entity seeking to sponsor an apprentice program may apply for a registration in accord with procedures established by the division. The application shall describe the proposed program, giving the terms and conditions of the apprentices' employment, supervision of apprentices and provision of related instruction. The application shall also describe whether credit or advanced standing will be given for relevant hands-on training or related instruction and, if so, the terms and conditions by which such credit or advanced standing will be granted.

If the applicant is a party to a collective bargaining agreement, a statement to that effect shall be included with the application and a copy of the application shall be provided to the agent for the collective bargaining unit at least 2 weeks prior to filing the application with the division. If the applicant is involved in any abnormal labor condition, such as a strike, lockout or other similar condition, the application shall be withheld until such condition is resolved. Once a program is registered, the sponsor shall notify the division in writing within 30 days of any significant modifications to the program or of any material changes in information submitted with the application.

**SECTION 2.** Said chapter 23 is hereby further amended by inserting after section 11S the following 4 sections:-

**Section 11T.** (a) An apprentice program sponsor may voluntarily deregister its program by providing written notice to the division and its apprentices and otherwise complying with provisions established by the division.

(b) The deputy director, on his own initiative, or upon the complaint of an interested person, may investigate and determine whether there has been a violation of the terms of an apprentice agreement or apprentice program and may hold hearings, inquiries and other proceedings necessary to such investigations and determination. All hearings, investigations and determinations shall be made under authority of reasonable rules and procedure approved by the director.

The deputy director may deregister an apprentice program upon finding sufficient cause. Any of the following shall constitute sufficient cause for deregistration: (1) false statements or material omissions in the application for registration or documentation submitted; (2) violation of any of the requirements of this chapter; or (3) violation of a state or federal law which the deputy director determines to be of such serious and compelling nature to warrant suspension or deregistration of the apprentice program. The apprentice program sponsor shall be given a fair and impartial hearing, after reasonable notice of the hearing has been provided. If the proposed deregistration is for

a specific period of time, the duration of the deregistration and any conditions that shall be met in order to be re-registered shall be provided with the notice.

An apprentice program sponsor of a deregistered program shall comply with provisions established by the division. Such provisions shall include, but not be limited to, the requirement that within 10 business days of the effective date of any deregistration, the apprentice program sponsor shall provide written notice to all apprentices in its program that, for the period of such deregistration, all apprentice agreements shall be automatically terminated.

The determination of the deputy director shall be filed with the director and notice of the determination shall, at the same time, be mailed, postage prepaid, to each person known by the division to be an interested person, at his last address as shown by the division's records. A person aggrieved by a determination or action of the deputy director may, within the 10 day period, appeal to the director, who shall hold a hearing after due notice to all interested parties. If no appeal is filed with the deputy director within 10 days after the date of such filing and notice, the determination shall become the decision of the director.

A party to an apprentice program aggrieved by an order or decision of the director may appeal to the superior court; provided, however, that such order or decision shall be conclusive if the appeal shall not be filed within 30 days after the date of the order or decision. The order or decision shall be reviewed in accordance with the standards for review provided in section 14 of chapter 30A.

No person shall institute an action for the deregistration of an apprentice program unless he shall first have exhausted all administrative remedies provided by this section.

(c) Within 30 days of the date of the deregistration, whether voluntary or involuntary, of an apprentice program, the apprentice program sponsor shall send to the division a copy of all documents demonstrating the number of hours of hands-on training and related instruction obtained by all apprentices in the program.

(d) The division may reinstate the registration of an apprentice program in its discretion upon presentation of adequate evidence that the condition that gave rise to the deregistration has been remedied.

**Section 11U.** (a) The division, upon the complaint of an interested person or upon its own initiative, may investigate and determine whether there has been a violation of the terms of an apprentice agreement, and may hold hearings, inquiries and other proceedings necessary to the investigations and determination, provided that the apprentice filing a complaint has exhausted the procedures established pursuant to section 11K. All hearings, investigations and determinations of apprentice agreements shall be made under authority of reasonable rules and procedure prescribed by the director.

(b) The division shall not be required to hold hearings in matters confined solely to identifiable apprentice agreements, which the division may deregister at any time during the period of apprenticeship if it determines appropriate.

(c) The determination of the deputy director shall be filed with the director and notice of the determination shall, at the same time, be mailed, postage prepaid, to each person known by the division to be an interested person, at the last address as shown by the records of the division. If no appeal is filed

with the deputy director within 10 days after the date of the filing and notice, the determination shall become the decision of the director.

A person aggrieved by a determination or action of the deputy director may, within the time allowed, appeal to the director, who shall hold a hearing after due notice to all interested parties. A party to an apprentice program aggrieved by an order or decision of the director may appeal to the superior court; provided, however, that the order or decision shall be conclusive if the appeal is not filed within 30 days after the date of the order or decision. The order or decision shall be reviewed in accordance with the standards for review provided in section 14 of chapter 30A.

No person shall institute an action for the enforcement or deregistration of any apprentice agreement until after the person has exhausted all administrative remedies provided by this section.

(d) The deputy director may reinstate the registration of an apprentice agreement in its discretion upon presentation of adequate evidence that the condition that gave rise to the deregistration has been remedied.

**Section 11V.** Nothing in this chapter or in an apprentice program or apprentice agreement entered into and approved under this chapter shall operate to invalidate any apprenticeship provision in a collective bargaining agreement between employers and employees setting up higher apprenticeship standards.

**Section 11W.** The deputy director shall require each apprentice entering into a written agreement pursuant to this chapter to submit an application to the division for an apprentice identification card. Said application shall be accompanied by a fee paid by the apprentice or the program sponsor, together with photographic prints as required by the deputy director. The deputy director shall charge the fees necessary for the establishment and maintenance of the identification card system. The funds shall be received by the state treasurer on behalf of the commonwealth and deposited in a special trust account for the division and may be expended, without further appropriation, under the direction of the deputy director. An apprentice identification card shall contain the photograph of the apprentice; the apprentice registration number or such other number as the deputy director requires; the name and business address of the appropriate apprenticeship committee or single employer sponsor; the steps of progression and related dates applicable to the apprentice; and the projected date on which the apprentice is projected to complete the apprenticeship. As a condition of apprenticeship, the apprentice shall keep the apprentice identification card on his person during all hours of employment during the apprenticeship.

**SECTION 3.** The first paragraph of section 27 of chapter 149 of the General Laws, as appearing in the 2000 Official Edition, is hereby amended by inserting after the eighth sentence the following 2 sentences:- An apprentice performing work on a project subject to this section shall maintain in his possession an apprentice identification card issued pursuant to section 11W of chapter 23.

**SECTION 4.** The first paragraph of section 27B of said chapter 149, as so appearing, is hereby amended by inserting after the first sentence the following sentence:- For every week in which an apprentice is employed by a contractor, subcontractor or public body subject to this section, a photocopy of the apprentice's apprentice identification card, issued pursuant to section 11W of chapter 23, shall be attached to the records submitted under this section.

Approved October 25, 2002.

# EXHIBIT O

Linda Carmichael this is Mark Maki State Director of Apprenticeship in Montana it is Tuesday morning about 7:30 my time and I guess 9:30 yours um I am returning your phone call regarding uh the uh question of with out of state registration. We're a Montana registration agency with based off Montana tax payers money. We're recognized by the federal government and by Montana Statute to register, basically, Montana employers and apprentices. We don't have any statute or administrative rule that prohibits a a independent or out of state employers uh to uh basically register in Montana. Rule is policy we don't uh we do have a form of reciprocity(?) uh that we work with with folks that come into the state whether long term or short term uh but as a rule we I guess working policy is that register here as an employer you have to be physically you know uh located with a you know tax paying you know ID number uh place of business and so forth.

# EXHIBIT P

## APPRENTICESHIP COUNCIL RULES
### Effective March 22, 2004

**5101:11-1-01 Definitions.**

Effective Date: March 22, 2004.

As used in division-level designation 5101:11 of the Administrative Code:

(A) "Apprentice" means a person at least sixteen years of age, except where a higher minimum age standard is otherwise fixed by law, who is participating in a registered apprenticeship program to learn a skilled occupation, pursuant to a registered apprenticeship agreement.

(B) "Apprenticeship agreement" means a written agreement between the sponsor of a registered apprenticeship program and a participant of that program, providing for the latter's participation, and stipulating certain expectations for both parties to the agreement, as established by parts 29 and 30 of 29 CFR, current as of July 1, 2003, and as further established in Ohio under division-level designation 5101:11 of the Administrative Code.

(C) "Apprenticeable occupation," means one which :

   (1) Is customarily learned in a practical way through a structured, systematic program of supervised training on the job;

   (2) Is clearly identified and commonly recognized or accepted throughout an industry;

   (3) Requires two thousand or more hours of work experience to learn;

   (4) Requires related instruction to supplement the on-the-job experience training;

   (5) Involves manual, mechanical, and/or technical skills applicable in like occupations throughout an industry; and

   (6) Is recognized by the registration agency and/or the US bureau of apprenticeship and training as meeting the foregoing five criteria.

(D) "Council" or "OSAC" means the Ohio state apprenticeship council, created under section 4139.02 of the Revised Code.

(E) "Chairperson" means chairperson of the Ohio state apprenticeship council.

(F) "Administrator" means the administrative director of the Ohio state apprenticeship council.

(G) "Apprenticeship program" means a program that is registered by a registration agency and that combines on-the-job training and related technical instruction, according to the specifications established by parts 29 and 30 of 29 CFR, current as of July 1, 2003, and as further established in Ohio under division-level designation 5101:11 of the Administrative Code, such requirements being designed to ensure a high level of program quality and accountability, supported by state and federal administrative oversight. This model of training does not correspond to activities designated as "apprenticeship" in other division-level designations of the Administrative Code, except where programs are stipulated that are registered pursuant to division-level designation 5101:11 of the Administrative Code.

(H) "Program standards" means a written plan describing an apprenticeship program in terms of the requirements for registration that are specified by division-level designation 5101:11 of the Administrative Code.

(I) "Sponsor" means any organization operating a registered apprenticeship program and in whose name the program is registered.

(J) "Employer" means any organization employing a registered apprentice, whether or not such organization is a party to the apprenticeship agreement with the apprentice.

(K) "Apprenticeship committee" means those persons designated by the sponsor to act for it in the administration of the program and to enter on its behalf into apprenticeship agreements with apprentices.

(L) "Registration of an apprenticeship program" means the registration agency's acceptance and recording of such program as complying with the quality and accountability criteria established by parts 29 and 30 of 29 CFR, current as of July 1, 2003, and as further established in Ohio under division-level designation 5101:11 of the Administrative Code, as well as with requirements for approval of such program for other federal and state purposes.

(M) "Registration of an apprenticeship agreement" means the registration agency's acceptance and recording thereof as evidence of an apprentice's participation in a particular registered program, under stipulations established by parts 29 and 30 of 29 CFR, current as of July 1, 2003, and as further established in Ohio under division-level designation 5101:11 of the Administrative Code.

(N) "Cancellation" means the termination of an apprenticeship program's registration at the request of the sponsor, or termination of an apprenticeship agreement at the request of the apprentice.

(O) "Registration agency" or "registration entity" means an entity authorized by the US department of labor (DOL) office of apprenticeship training, employer and labor services (OATELS) to administer and enforce on a statewide basis the requirements for registration of apprenticeship programs and apprentices, as established by parts 29 and 30 of 29 CFR, current as of July 1, 2003, and as further established in Ohio under division-level designation 5101:11 of the Administrative Code. In Ohio, the registration agency is the Ohio state apprenticeship council.

(P) "National apprenticeship system" means the combined set of all registered apprenticeship programs nationwide, those organizations that provide service to such programs, and the government agencies at various geographic levels that oversee such programs.

(Q) "ODJFS" means the Ohio department of job and family services.

(R) "Bureau" means the bureau of apprenticeship and training, US department of labor.

(S) "Department" means the US department of labor.

(T) "Secretary" means the secretary of labor, the assistant secretary of labor for employment and training, or any person specifically designated by either of them.

(U) For purposes of division-level designation 5101:11 of the Administrative Code, the terms "minority" or "minority groups" are deemed to mean one of four major ethnic groups other than White, namely Black, American Indian, Asian, and Hispanic.

Replaces: 4111-2-01    Effective: March 22, 2004    R.C. 119.032 review dates: 03/22/2009
Certification: certified electronically Date: 03/12/2004    Promulgated Under: 111.15
Statutory Authority: RC 4139.03    Rule Amplifies: RC 4139.01 Prior Effective Dates: 10/8/71, 6/20/79, 11/23/98

## 5101:11-2-01 Ohio State Apprenticeship Council.

Effective Date: March 22, 2004.

(A) Authority. The authority for implementation and adoption of rules under division-level designation 5101:11 of the Administrative Code, affecting the registration of apprenticeship programs, is vested in the Ohio state apprenticeship council, under sections 4139.01 to 4139.06 of the Revised Code.

(B) Objectives. The objectives of the Ohio state apprenticeship council are:

    (1) To promote maximum effectiveness and accountability throughout Ohio's apprenticeship training system;

    (2) To promote the development of a skilled, journey-level work force;

    (3) To assist and promote expansion in the use of the registered apprenticeship training model and to encourage enrollment in registered programs, such as to benefit the maximum number of Ohioans;

    (4) To assist and encourage the use of registered apprenticeship training in new and emerging industries and occupations.

(C) Policy. The policy of the Ohio state apprenticeship council shall be:

    (1) To cooperate with all other interested state and federal governmental agencies in every way possible for the development of registered apprentice training;

    (2) To remain fully accessible to the public for assistance and information concerning registered apprenticeship;

    (3) To make the most effective and efficient use of the resources available for carrying out the purposes and functions of the council as stated in paragraph (D) of this rule.

(D) Purposes and functions. The purposes and functions of the Ohio state apprenticeship council are:

    (1) To enforce the permanent requirements established by parts 29 and 30 of 29 CFR, current as of July 1, 2003, and further established under division-level designation 5101:11 of the Administrative Code,

regarding the registration and operation of apprenticeship programs;

(2) To establish and enforce requirements regarding registered apprenticeship programs, as warranted to address the needs of Ohio's businesses, labor, and communities, and in accordance with the industrial, occupational, and economic conditions of this state;

(3) To provide information and technical assistance to interested parties, to aid in the establishment of registered apprenticeship programs; and in like manner to help prospective apprentices to locate, apply to, and register in such programs;

(4) To answer technical questions for current sponsors and apprentices of registered programs, regarding the activities and operations of such programs;

(5) To serve as a clearing house for information about all matters pertaining to registered apprentice training in Ohio;

(6) To promote maximum effectiveness, quality, and accountability in Ohio's registered apprenticeship programs, through monitoring and regulatory enforcement as well as through technical assistance, guidance, and the encouragement of opportunities for discussion and information sharing among stakeholders in the registered apprenticeship system;

(7) To promote public interest in the establishment of registered apprenticeship training and to encourage enrollment in registered programs;

(8) To resolve conflicts and complaints that arise between parties to a registered apprenticeship agreement, where such matters have been submitted to local entities charged with this function and remain in dispute;

(9) To collaborate with all other interested state and federal governmental agencies in the fulfillment of these functions;

(10) To review proposed apprenticeship training programs and apprenticeship agreements, for compliance with the requirements for registration;

(11) To review registered programs at the request of parties concerned, and to recommend revisions where needed to ensure program compliance with state and federal requirements; and

(12) To award certificates of completion of apprenticeship.

(E) Powers and duties. The apprenticeship council may establish minimum requirements for apprenticeship programs and may formulate policies, issue rules, and take such administrative actions as may be necessary to carry out the purposes and functions defined in paragraph (D) of this rule. The council shall determine the dates and places of its meetings and shall prescribe its own rules of procedure.

(F) Records of the council. The council shall keep adequate records concerning registration requirements, approved program standards, registration, deregistration actions, compliance reviews and investigations, and any other matters stipulated by the department, pertinent to programs' compliance with the requirements of division-level designation 5101:11.

Replaces: 4111-2-02, 4111-2-03, 4111-2-04, 4111-3-08          Effective: March 22, 2004
R.C. 119.032 review dates: 03/22/2009          Certification: certified electronically          Date:
03/12/2004
Promulgated Under: 111.15          Statutory Authority: 4139.03          Rule Amplifies: 4139.03
Prior Effective Dates: 10/8/71, 11/23/98


## 5101:11-2-02 Procedure for notice of public meetings.

Effective Date: March 22, 2004.

(A) As provided for in division (F) of section 121.22 of the Revised Code, the council shall give notice of all public meetings that it calls, whether special or regularly scheduled.

(B) Such notice shall be filed with the director of job and family services (ODJFS), stating the meeting time, place, and purpose. Any person may obtain that information by writing to the OSAC administrator.

(C) Any person may obtain advance notice of all public council meetings, or of council meetings where a specific type of public business is to be discussed, in return for paying a three-dollar annual fee and providing the OSAC administrator with a sufficient quantity of self-addressed stamped envelopes for the mailing of notices. Notice shall be mailed no later than seven calendar days before the pertinent meeting.

(D) At its request, a news organization shall receive notice of every public council meeting, with the following lead intervals: seven days for a meeting that is regularly scheduled, twenty-four hours for one that is specially called, and immediately upon arrangement of an emergency meeting.

Replaces: 4111-1-02                     Effective: March 22, 2004    R.C. 119.032 review dates:
                                        03/22/2009
Certification: certified electronically Date: 03/12/2004
Statutory Authority: 4139.03           Rule Amplifies: 4139.03    Promulgated Under: 111.15
                                                                  Prior Effective Dates: 7-1-76; 11-23-98

## 5101:11-2-03 Procedures for council registration of programs and apprentices.
Effective Date: March 22, 2004.
(A) Program registration.
   (1) An organization seeking program registration shall provide the council with copies of its proposed standards. The program shall be registered if such standards meet the requirements of division-level designation 5101:11 of the Administrative Code.
   (2) Every program registration shall be recorded.
   (3) Any modification or change to a registered program shall be promptly submitted to the council and, if approved, shall be acknowledged and recorded as an amendment to such program.
   (4) Where the standards, a collective bargaining agreement, or other instrument provide for a union to participate in operating a program, the program's registration shall be subject to that union's agreement or lack of objection, as stated in writing. Where a union is the collective bargaining agent of the employee(s) to be trained, but is not expected to participate in operating the program, the sponsor shall provide the union a copy of its registration application and of its program standards. The council shall allow sixty days for receipt of union comments, if any, before taking final action on the registration application.
(B) Apprentice registration.
   (1) Each apprentice must be registered by means of a separate apprenticeship agreement. The apprentice shall be registered if such apprenticeship agreement meets the requirements of division-level designation 5101:11 of the Administrative Code.
   (2) The agreement shall contain a reference incorporating the program standards.
   (3) The council must be promptly notified of the cancellation, suspension, or termination of any apprenticeship agreement, with cause for same.

Replaces: 4111-2-06  Effetcive: March 22, 2004    R.C. 119.032 review dates: 03/22/2009
Certification: certified electronically Date: 03/12/2004
Statutory Authority: 4139.03           Rule Amplifies: 4139.06    Promulgated Under: 111.15
                                                                  Prior Effective Dates: 6-20-79; 11-23-98

## 5101:11-3-01 Eligibility for program registration.
Effective Date: March 22, 2004.
To be eligible for registration with the council, each apprenticeship program shall conform to the following requirements;
(A) Any business entity applying for program registration must be incorporated in Ohio or, alternatively, have operated as a business in Ohio for at least twelve months. This provision shall not be interpreted to preclude any employer from joining an existing apprenticeship program.
(B) Any sponsor applying for program registration must submit a set of program standards to the council, in the form of an organized, written plan embodying the terms and conditions of employment, training, and supervision in an apprenticeable occupation.
(C) The program standards must contain the equal opportunity pledge prescribed in paragraph (B) of rule 5101:11-4-01 of the Administrative Code and, for programs that will enroll five or more apprentices at a time, an affirmative action plan in accordance with rule 5101:11-4-02 of the Administrative Code.
(D) The program standards shall include:
   (1) EEO
      (a) The methods of selection, employment, and advancement of apprentices, which methods shall

conform to all requirements of division-level designation 5101:11 of the Administrative Code regarding selection methods and equal opportunity;

(2) Enrollment

    (a) The sponsor's minimum qualifications for persons to enter the program, including an eligible starting age not less than sixteen years;

    (b) Where the standards allow for granting advanced credit toward program completion based on previously acquired experience, training, and/or skills: the specific criteria for granting credit; a method for evaluating applicants by these criteria and assigning them to corresponding progression steps in the program, with commensurate wages; and rules for applying such method consistently, fairly, and without discrimination based on any consideration besides the stated criteria;

    (c) Provision for issuing an apprenticeship agreement for each apprentice, to be signed by the sponsor or its agent, and by the apprentice, and if the apprentice is a minor, by his/her legal guardian;

(3) Training

    (a) Provision for employing and training every apprentice of the program in a skilled occupation;

    (b) A term of apprenticeship that includes not less than two thousand hours of work experience and is consistent with training requirements of the occupation;

    (c) A schedule of work processes by which every apprentice of the program in a given occupation is to receive experience and training on the job, such schedule to state the approximate time to be spent in each major process;

    (d) Provision for a minimum of one hundred forty-four hours per year for each apprentice, of "related instruction," i.e., organized instruction of demonstrated value in technical subjects concerning the apprentice's occupation; which instruction may be given through classroom occupational or industrial courses, correspondence courses, self-study, or other format(s), subject to council approval;

(4) Participant status

    (a) Provision for a probationary period reasonable in relation to the full apprenticeship term, with full credit given for on-the-job instruction and related activities during such period, toward the completion of the apprenticeship;

    (b) Authorization for the termination of an apprenticeship agreement during the probationary period by either party without stated cause;

    (c) When an employer in a group program is unable to fulfill its training obligation under the apprenticeship agreement, the transfer of this obligation to another employer under the same program, with the consent of the apprentice and the apprenticeship committee or the program sponsor;

    (d) A method by which the sponsor will report to the council concerning: completion of training by each apprentice; every revision of an apprenticeship agreement; and every cancellation, suspension, and termination of an apprenticeship agreement, and the cause(s) thereof;

    (e) A procedure for requesting council registration of every apprenticeship agreement, and every modification and amendment to an agreement;

    (f) A procedure for periodically evaluating each apprentice's progress in the program, including his/her performance in work activities and related instruction, and for keeping adequate records of this progress;

    (g) A method of advancement for the apprentices who show progress in learning an occupation;

    (h) The sponsor's procedures for requesting from the council a certificate of completion for every registered apprentice who successfully completes training in a registered program;

(5) Safety and welfare

    (a) A schedule for a progressively increasing apprentice wage that at each step relates to the journey wage, in roughly the same proportion as the apprentice skill-level to the journey skill-level; with the entry wage to be no less than the minimum prescribed by the Fair Labor Standards Act of 1938, 29 USC 8, where applicable, and higher if so required by law, regulation, or a collective bargaining agreement;

(b) A procedure for adjudicating differences which may arise between the apprentice(s) and other parties to the program;

(c) The name, phone number, and address of the appropriate authority under the program to receive, process, and make disposition of complaints;

(d) Description of the specific working conditions of the apprentice(s);

(e) Designation of a qualified person or persons to be responsible for supervising and training the apprentice;

(f) In the case of a program in the building and construction industry, an assurance consistent with proper supervision, training, safety, and continued employment, that the program shall comply with the following stipulations regarding the ratio of apprentices to journeypersons employed on the job site:

　　(i) Where a program sponsor is bound by one or more collective bargaining agreement(s) affecting the pertinent trade(s), the ratio shall conform to the applicable terms of the agreement(s);

　　(ii) Where a program sponsor is not bound by such an agreement, the ratio may conform to either of two criteria:

　　　　(a) the applicable terms of the agreement(s) affecting the pertinent trade(s) in the geographic area nearest to the job site, or

　　　　(b) the standard formula of one apprentice to one journeyperson for the first apprentice and one apprentice to three journeypersons for each additional apprentice.

　　(iii) Where the nature of the training poses particular, significant risk to the health, safety, or well being of the apprentice, the council retains the right to deny registration to any program where the utilized ratio does not ensure adequate safety and supervision of the apprentice(s);

(g) Provision for the safety training of all apprentices, both on the job and in related instruction, and for ensuring that all equipment and facilities used in the program are adequate and safe.

(6) Program administration

(a) Identification of the registration agency;

(b) The name and signature of the party or parties sponsoring the apprenticeship program;

(c) Provision for employer-employee cooperation where a bargaining agreement exists;

(d) Provision for producing and maintaining all program records required by the registration agency;

(e) Provision for the registration, cancellation, and deregistration of the program and the prompt submission for council approval of any modification or amendment thereto.

(E) Nothing in rules 5101:11-2-03, 5101:11-3-01, or 5101:11-3-03 of the Administrative Code shall operate to invalidate:

(1) Any apprenticeship provision in any collective bargaining agreement between employers and employees establishing higher apprenticeship standards;

(2) Any special provision for veterans, minority persons or females in the standards, apprentice qualifications or operation of the program or in the apprenticeship agreement, which is not otherwise prohibited by law, executive order or authorized regulation.

Replaces: 4111-2-05, 4111-2-11　　　Effective: March 22, 2004　　R.C. 119.032 review dates: 03/22/2009
Certification: certified electronically　Date: 03/12/2004　　　Promulgated Under: 111.15
Statutory Authority: 4139.03　　　　Rule Amplifies: 4139.03, 4139.06　　　Prior Effective Dates: 10-8-71; 6-20-79; 11-23-98

## 5101:11-3-02 Selection of apprentices.

Effective Date: March 22, 2004.

(A) All methods used in, and leading to, the selection of applicants for apprenticeship, shall be applied consistently and fairly, and shall be subject to approval by the council.

(B) The standards of each program in which five or more apprentices are to be registered at any one time, shall stipulate one and only one of the methods specified in paragraphs (B)(1) to (B)(3) of this rule, for the selection of apprentices. A program with fewer than five apprentices shall not be required to adopt a

selection procedure under rule 5101:11-3-03 of the Administrative Code, provided that such program was not created and/or designed to circumvent any requirements of division-level designation 5101:11 of the Administrative Code.

(1) Selection from a pool of eligible applicants (i.e., an "eligibility pool").

   (a) Creation of an eligibility pool. An open pool may be developed from applicants, not limited to current employees, who meet the qualification criteria specified by the sponsor, provided that this process conforms to the following requirements:

      (i) Allowable criteria. The qualification criteria, and the procedure that was used for determining them, shall be stated in detail. These criteria shall consist of specific factors and attributes to be considered in evaluating applicants for admission to the pool. The sponsor shall also provide a scoring system to be used in rating applicants' conformity with each criterion, and shall specify the score required under each criterion for admission to the pool. All qualification criteria, and the score required on each, shall be directly related to job performance, as shown by a significant statistical relationship between the score required for admission to the pool, and performance in the apprenticeship program. In demonstrating such relationships, the sponsor shall follow the procedures set forth in 41 CFR 60-3, current as of July 1, 2003. The sponsor shall specify which criterion or group of criteria comprises a threshold, on which the failure of an applicant to attain the required score(s) shall be sufficient to disqualify the applicant from admission to the pool. The results of oral interviews shall not be used as qualification criteria for admission into an eligibility pool.

      (ii) Examples. Qualification criteria may, but need not, include school diplomas, and/or results from one or more of the following: aptitude tests, school courses, general education development (GED) tests, occupationally relevant health exams, and work experience.

      (iii) Notification of applicants. All applicants who meet the requirements for admission shall be notified and placed in the eligibility pool. The program sponsor shall give each applicant who is rejected from the pool notice of his or her rejection, including the reasons for the rejection, the requirements for admission to the pool of eligibles, and the appeal rights available to the applicant.

   (b) Selection for the program. Once a pool of eligible applicants has been created in accordance with the requirements above, the sponsor may select the applicant(s) to be enrolled in the program, using no more than one of the following methods:

      (i) Random selection from the pool. A random selection process must be supervised by an impartial person or persons selected by the sponsor, but not associated with the administration of the apprenticeship program. The time and place of the selection, and the number of apprentices to be selected, shall be announced. The place of the selection shall be open to all applicants and the public. The names of apprentices drawn by this method shall be posted at the program sponsor's place of business, immediately following the selection.

      (ii) Selection on the basis of rank. Selection may be based on the rank order of applicant scores under one or more of the qualification criteria for admission to the pool. This process may, but need not, be accompanied by the use of results from oral interviews as a selection criterion. In that case, all interview questions shall be objective and of a nature necessary to determine fitness for the program, but shall not relate to qualifications previously determined in creating the eligibility pool. For each interviewee, the interviewer must record the question(s) asked, the general nature of the answer(s), and a summary of any resulting conclusions about the applicant's qualifications.

(2) Selection from current employees. A sponsor may select apprentices from workers already employed by the sponsor or an affiliate of the sponsor, in a manner prescribed by a collective bargaining agreement where such exists, or by the sponsor's established promotion policy, provided that the method used for selection is described in the program standards and is determined by the council to be fair and impartial.

(3) Alternative selection methods. A sponsor may select apprentices by means of any other method,

provided that it is based on objective and specific qualification criteria that conform to the requirements stated in paragraph (B)(1)(a)(i) of this rule for "allowable criteria," except that the use of such criteria need not be limited to the creation of an eligibility pool. Oral interviews may be used as part of the method, but are subject to the limitations of paragraphs (B)(1)(a)(i) and (B)(1)(b)(ii) of this rule.

(C) Sponsors using the methods described in paragraph (B)(1) and/or (B)(3) of this rule shall establish a reasonable period of not less than two weeks for accepting applications for admission to an apprenticeship program. There shall be at least thirty days of public notice in advance of the earliest date for application (refer to paragraph (C) of rule 5101:11-4-02 of the Administrative Code, on affirmative action, with respect to dissemination of information.) With the exception of cases covered by paragraph (K) of rule 5101:11-4-02 of the Administrative Code (regarding newly adopted selection methods), the name of each applicant admitted to an eligibility pool shall be retained on a list of eligibles subject to selection, for a period of two years. An applicant's name may be removed from the list sooner if he/she either requests the removal or fails to respond to notice of an apprenticeship enrollment opportunity, given by certified mail with return receipt requested. The sponsor may restore the name at the applicant's request. Applicants accepted into the program shall be afforded a reasonable period, in light of industry customs and practices, for work. All applicants shall be treated equally in determining such period. It shall be the responsibility of the applicant to keep the sponsor informed of his or her current mailing address.

(D) The program sponsor shall give each applicant who is not selected for the program, notice of his or her non-selection, including the reason(s) for the non-selection, the requirements for selection, and the appeal rights available to the applicant.

(E) The sponsor may revise its selection method, but may not implement the revised method until the council has approved it as being compatible with the equal opportunity requirements of Chapter 5101:11-4 of the Administrative Code.

Replaces: 4111-3-06  Effective: March 22, 2004    R.C. 119.032 review dates: 03/22/2009
Certification: certified electronically Date: 03/12/2004        Promulgated Under: 111.15
Statutory Authority: 4139.03        Rule Amplifies: 4139.05        Prior Effective Dates: 10-8-71; 10-13-78; 11-23-98

## 5101:11-3-03 Apprenticeship Agreement.

Effective Date: March 22, 2004.

The apprenticeship agreement shall contain explicitly or by reference:

(A) Names and signatures of the contracting parties (the apprentice and the program sponsor), and the signature of a parent or guardian if the apprentice is a minor;

(B) The date of birth of the apprentice;

(C) The name, phone number, and address of the program sponsor and the council;

(D) A statement of the occupation or craft in which the apprentice is to be trained, and the beginning date and term (duration) of apprenticeship;

(E) A statement showing:
   (1) The number of hours to be spent by the apprentice on the job, and
   (2) The number of hours to be spent in related and supplemental instruction, which must not be less than one hundred forty-four per year;

(F) A graduated scale of wages to be paid the apprentice and whether or not the required time in related instruction shall be compensated;

(G) A statement providing for a specific period of probation during which the apprenticeship agreement may be terminated by either party to the agreement upon written notice to the council;

(H) A statement incorporating as part of the agreement the standards of the apprenticeship program as it exists on the date of the agreement and as it may be amended during the period of the agreement;

(I) Assurance that the apprentice will be accorded equal opportunity in all phases of apprenticeship employment and training, without discrimination because of race, color, religion, national origin, sex, or age;

(J) The name and address of the appropriate authority designated to address and make disposition of

controversies or differences arising between the apprentice and any other parties to the apprenticeship agreement.

Replaces: 4111-2-07 Effective: March 22, 2004    R.C. 119.032 review dates: 03/22/2009
Certification: certified electronically Date: 03/12/2004    Promulgated Under: 111.15
Statutory Authority: 4139.03    Rule Amplifies: 4139.06    Prior Effective Dates: 6-20-79; 11-23-98

## 5101:11-3-04 Records.

Effective Date: March 22, 2004.

(A) Obligations of sponsors. Each sponsor shall keep adequate records including: a summary of the qualifications of each applicant; the basis for evaluation and for selection or rejection of each applicant; the records pertaining to interviews of applicants; the original application for each applicant; information relative to the operation of the apprenticeship program, including but not limited to job assignment, promotion, demotion, lay-off, or termination, rates of pay or other forms of compensation or conditions of work; hours, including hours of work and, separately, hours of training provided; and any other records pertinent to determining compliance with division-level designation 5101:11 of the Administrative Code, as may be required by the council. The records pertaining to individual applicants selected or rejected, shall be maintained in such manner as to permit identification of minority and female participants.

(B) Affirmative action plans. Each sponsor must retain a statement of its affirmative action plan required by rule 5101:11-4-02 of the Administrative Code for the prompt achievement of full and equal opportunity in apprenticeship, including all data and analyses made pursuant to the requirements of paragraph (F) of rule 5101:11-4-02 of the Administrative Code.

(C) Qualification criteria. Each sponsor must maintain evidence that its qualification criteria have been validated in accordance with the requirements set forth in paragraph (B)(1)(a)(i) of rule 5101:11-3-02 of the Administrative Code.

(D) Maintenance of records. The records required by this rule, and any other information relevant to compliance with division-level designation 5101:11 of the Administrative Code, shall be maintained for five years and made available upon request to the council, department, or other authorized representative.

Replaces: 4111-3-08 Effective: March 22, 2004    R.C. 119.032 review dates: 03/22/2009
Certification: certified electronically Date: 03/12/2004    Promulgated Under: 111.15
Statutory Authority: 4139.03    Rule Amplifies: 4139.06    Prior Effective Dates: 10-8-71; 10-13-78; 11-23-98

## 5101:11-3-05 Reciprocity agreement.

Effective Date: March 22, 2004.

(A) Apprenticeship programs and standards of employers and unions in other than the building and construction industry, which jointly form a sponsoring entity on a multistate basis and are registered pursuant to all requirements of division-level designation 5101:11 of the Administrative Code by any recognized state apprenticeship agency/council or by the bureau of apprenticeship and training, employment and training administration, shall be accorded registration or approval reciprocity by the council if such reciprocity is requested by the sponsoring entity.

(B) The Ohio state apprenticeship council (OSAC) has the authority to register out of state apprenticeship programs for the building and construction industry pursuant to a reciprocity agreement with any or all Ohio's contiguous states provided such agreement includes all of the following criteria:

(1) The jurisdiction of the apprenticeship program must extend into the state of Ohio. In addition, the jurisdiction of the apprenticeship program must extend into the county where the project is being performed.

(2) The apprenticeship program of the contiguous state must substantially meet the apprenticeship standards of the OSAC as provided in Chapter 5101:11-3 of the Administrative Code.

(3) A copy of the affected program standards must be on file with the Ohio state apprenticeship council prior to registration being granted.

(4) Verification of apprentice(s) indenturement with affected program shall be on file with the OSAC.

(5) Upon request, the program requesting registration must demonstrate to the satisfaction of the OSAC that the related classroom instruction will not be interrupted.

(C) If a program is registered by the OSAC, apprentices employed on public works projects in Ohio shall be subject to the requirements of Chapter 4115 of the Revised Code. The rate of wages established by the Ohio department of commerce, superintendent of labor and employee safety, shall supercede the rate of wages contained in the apprenticeship standards.

Replaces: 4111-2-13  Effective: March 22, 2004    R.C. 119.032 review dates: 03/22/2009
Certification: certified electronically Date: 03/12/2004    Promulgated Under: 111.15
Statutory Authority: 4139.03    Rule Amplifies: 4139.05    Prior Effective Dates: 9-15-80; 11-23-98; 1-12-01

## 5101:11-4-01 Equal opportunity requirements.

Effective Date: March 22, 2004.

(A) Obligation of sponsors. Each sponsor of an apprenticeship program shall uniformly apply rules and regulations concerning apprentices, including but not limited to, equality of wages, credit for previous training, periodic advancement, promotion, assignment of work, job performance, rotation among all work processes of the occupation, imposition of penalties or other disciplinary action, and all other aspects of the apprenticeship program administered by the program sponsor.

(B) Equal opportunity pledge. Each sponsor of a registered apprenticeship program shall adhere to, and include in its program standards, the following equal opportunity pledge: "The recruitment, selection, employment, and training of apprentices shall be without discrimination because of race, color, religion, national origin, sex, or age. The sponsor will take affirmative action to provide equal opportunity in apprenticeship and will operate the apprenticeship program as required under Title 29 of the Code of Federal Regulations, Part 30, and equal employment opportunity regulation of the state of Ohio."

(C) Sponsors under "Title VII" EEO programs. A sponsor shall not be required to adopt an affirmative action plan under rule 5101:11-4-02 of the Administrative Code, if it submits to the council and the department satisfactory evidence that it is in compliance with an equal employment opportunity program that:

(1) Provides for affirmative action in the recruitment, enrollment, and treatment of apprentices; and
(2) Includes affirmative action goals and timetables regarding women and minorities, which:
   (a) Have been approved as meeting the requirements of 29 CFR 30 (7/1/01) and 42 USC 2000e et. seq. (7/29/03); and
   (b) Are equal to or greater than the goals and timetables required under Rule 5101:11-4-02.

(D) Programs with fewer than five apprentices. A program in which fewer than five apprentices are to be enrolled at any one time, shall not be required to adopt an affirmative action plan under rule 5101:11-4-02 of the Administrative Code, provided that such program was not created and/or designed to circumvent any requirements of division-level designation 5101:11 of the Administrative Code.

Replaces: 4111-3-04  Effective: March 22, 2004    R.C. 119.032 review dates: 03/22/2009
Certification: certified electronically Date: 03/12/2004    Promulgated Under: 111.15
Statutory Authority: 4139.03    Rule Amplifies: 4139.05    Prior Effective Dates: 10-8-71; 10-13-78; 11-23-98

## 5101:11-4-02 Affirmative action plan.

Effective Date: March 22, 2004.

(A) Adoption of affirmative action plans. Except in the cases described in paragraphs (C) and (D) of rule 5101:11-4-01 of the Administrative Code, a sponsor's commitment to equal opportunity in recruitment, selection, employment and training of apprentices shall include the adoption of a written affirmative action plan. Rule 5101:11-4-02 of the Administrative Code applies specifically to programs that are subject to this requirement.

(B) Definition of affirmative action. Affirmative action is not mere passive nondiscrimination. It includes procedures, methods and programs for the identification, positive recruitment, training, and motivation of minority and female apprentices including the establishment of goals and timetables. It is action which will

equalize opportunity in apprenticeship so as to allow full utilization of the work potential of minorities and women. The overall result to be sought is equal opportunity in apprenticeship for all individuals participating in or seeking entrance to the nation's labor force.

(C) Outreach and positive recruitment. An acceptable affirmative action plan must also include adequate provision for outreach and positive recruitment that would reasonably be expected to increase minority and female participation in apprenticeship by expanding the opportunity of minorities and women to become eligible for apprenticeship selection. The sponsor shall undertake a significant number of appropriate activities in order to meet its obligations under division-level designation 5101:11 of the Administrative Code. The scope of the affirmative action plan will depend on such circumstances as the size and type of the program and its resources. Whenever special circumstances warrant, the US Department of Labor may provide such financial or other assistance as it deems necessary to implement the requirements of this paragraph. The affirmative action plan shall explicitly include one or more of the following activities:

   (1) Dissemination of information concerning the nature and benefits of apprenticeship, requirements for admission to apprenticeship, availability of apprenticeship opportunities, sources of apprenticeship applications, and the equal opportunity policy of the sponsor. If adopting this strategy, programs that accept applications only at specified intervals must disseminate such information at least thirty days in advance of the earliest date for application at each interval. Programs adopting this strategy, that customarily take applications throughout the year, must disseminate the information regularly, but not less than semiannually. All sponsors that take applications from non-employees must, if adopting this information strategy, disseminate the information to the council, the bureau, local schools, employment service offices, Workforce Investment Act (WIA) one-stop offices, women's centers, outreach programs, and community organizations which can effectively reach minorities and women, and shall distribute it through mass media that provide contact with the minority community and women, as well as those that reach the general public in areas where the program sponsor operates.

   (2) Participation in annual workshops conducted by employment service agencies for the purpose of familiarizing school, employment service, and other appropriate personnel with the apprenticeship system and current opportunities therein.

   (3) Cooperation with local school boards and vocational education systems to develop programs for preparing students to meet the criteria for entry into apprenticeship programs, insofar as these efforts promote the purposes of affirmative action.

   (4) Internal communication of the sponsor's equal opportunity policy in such a manner as to foster understanding, acceptance and support among the sponsor's various officers, supervisors, employees, and members, and to encourage such persons to take the necessary action to aid the sponsor in meeting its obligations under division-level designation 5101:11 of the Administrative Code.

   (5) Utilization of journeypersons to assist in the implementation of the sponsor's affirmative action program.

   (6) Granting advance standing or credit on the basis of previously acquired experience, training, skills or aptitude, to encourage entry by individuals who may lack access to traditional preparation for apprenticeship; provided that such policies are applied equally and without discrimination.

   (7) Other appropriate activities that can be applied toward affirmative action, such as: general publicity about apprenticeship opportunities and the benefits thereof, via advertisements, industry reports, articles, etc.; use of present minority and female apprentices and journey persons as recruiters; career counseling; periodic auditing of affirmative action plans and activities; and the relevant use of administrative procedures such as reporting systems, on-site reviews, briefing sessions, etc.

(D) Collaboration with other entities

   (1) The sponsor shall collaborate with other organizations (for instance, community organizations and other sponsors) in positive recruitment and preparation of female and/or minority applicants for apprenticeship. Where appropriate and feasible, such initiatives shall provide for pre-testing of experience and training. If no such initiatives exist in the sponsor's locality, the sponsor shall seek to develop one, and/or to obtain financial assistance for such efforts when it is available from the department. In each case where registered training is for a traditionally male occupation, the sponsor

shall engage in one or more initiatives to prepare and encourage women to enter that training.

    (2)   To encourage the establishment and use of programs designed to prepare significant numbers of female and minority individuals for apprenticeship, through activities such as pre-apprenticeship, preparatory occupational training, and others, a sponsor's affirmative action shall ensure that people served by these initiatives are afforded full and equal opportunity for admission to the apprenticeship program.

(E)  Updating plans. Sponsors shall review their affirmative action plans annually and update them where necessary, including the goals and timetables.

(F)  Analysis to determine if deficiencies exist. The sponsor shall conduct an analysis of at least the following factors, which analysis shall be set forth in writing as part of the affirmative action plan.

    (1)   The sizes of the working age minority and female populations in the sponsor's labor market area;

    (2)   The sizes of the minority and female labor forces in the sponsor's labor market area;

    (3)   The percentages of the program's apprentice labor force in each craft that are minority and female, as compared with these percentages of the overall labor force in the sponsor's labor market area;

    (4)   The percentages of the program's journeyperson labor force that are minority and female, as compared with these percentages of the overall labor force in the sponsor's labor market area;

    (5)   The extent to which the sponsor should be expected to correct any deficiencies through the achievement of goals and timetables for the selection of apprentices;

    (6)   The general availability of minorities and women with present or potential capacity for apprenticeship in the program sponsor's labor market area.

(G)  Goals and timetables

    (1)   "Analysis" as used in this paragraph means the analysis described in paragraph (F) of this rule.

    (2)   "Underutilization" or "deficiency" as used in this section refers to the situation where a sponsor's total workforce for a craft represented by the program includes fewer minorities and/or women, than would reasonably be expected in view of the analysis described above. In this sense, the "sponsor" means the program sponsor itself as well as any employer(s) affiliated with the program.

    (3)   A sponsor which determines, on the basis of the analysis described in O.A.C. paragraph (F) of this rule, that it underutilizes minorities and/or women, shall include in its affirmative action plan percentage goals and timetables for the selection of minority and/or female applicants for the apprenticeship program in the pertinent craft(s) and, where an eligibility pool is used in the selection process, through the admission of applicants into the pertinent eligibility pool.

    (4)   Where, on the basis of the analysis, the sponsor determines that it has no deficiencies, no goals and timetables need be established. However, in that case, the affirmative action plan shall include a detailed explanation why no goals and timetables have been established.

    (5)   Establishment of goals and timetables. Where goals and timetables are required, they shall be established on the basis of the sponsor's analysis and its entire affirmative action program. A single goal for minorities and a separate single goal for women is acceptable unless a particular subset of one or both of these groups is substantially underutilized, in which case a separate goal shall be established for that subset. A subset goal would be required, for example, if a specific minority group of women were underutilized even though the sponsor had achieved its goal(s) for women generally. In establishing all of its goals, the sponsor should consider the results which could be reasonably expected from its good faith efforts to make its overall affirmative action program work. However, in order to deal fairly with program sponsors, and with demographic groups addressed by the goals and timetables requirements, the program sponsor would generally be expected to set a goal for selection of apprentices from these groups at a rate which is not less than fifty per cent of their proportion of the workforce in the sponsor's labor market area. Sponsors are expected to make appropriate adjustments annually in their goal levels, but not to reduce them. See 29 CFR 30.8(b) ("equal employment opportunity in apprenticeship and training"), current as of July 1, 2001.

    (6)   Adjustment of goals and timetables. Where the council determines that the sponsor has deficiencies within the meaning of this rule, and that its affirmative action plan contains inadequate goals and timetables, or none at all, the council shall establish goals and timetables for the program that it deems appropriate to address the requirements of paragraph (G) of this rule. The sponsor shall make good

faith efforts to attain these goals and timetables.

(H) Compliance. Compliance with the requirements of paragraph (G) of this rule shall be determined by whether the sponsor has met its goals within its timetable, or failing that, whether it has made good faith efforts to meet its goals and timetables. Its "good faith efforts" shall be judged by whether it is following its affirmative action program and attempting to make it work, including evaluation and changes in its program where necessary to obtain the maximum effectiveness toward the attainment of its goals. In the event of the failure of the sponsor to meet its goals and timetables, it shall be given an opportunity to demonstrate that it has made every "good faith effort" to meet its commitments. All the actions of the sponsor shall be reviewed and evaluated in determining whether such good faith efforts have been made.

(I) Adjustment of program standards for affirmative action. Where a sponsor, despite its good faith efforts, fails to meet its goals and timetables within a reasonable period of time, the sponsor may be required to make appropriate changes in its affirmative action program to the extent necessary to obtain maximum effectiveness towards the attainment of its goals. The sponsor may also be required to develop and adopt an alternative selection method, including a method prescribed by the council, where it is determined that the failure of the sponsor to meet its goals is attributable in substantial part to the selection method. Where the sponsor's failure to meet its goals is attributable in substantial part to its use of a qualification standard which has adversely affected the opportunities of minorities and/or women for apprenticeship, the sponsor may be required to demonstrate that such qualification standard is directly related to job performance, in accordance with the provisions of paragraph (B)(1)(a)(i) of rule 5101:11-3-02 of the Administrative Code.

(J) Data and information. The secretary of labor or ODJFS shall make available to program sponsors data and information on minority and female labor force characteristics for each standard metropolitan statistical area, and for other special areas as appropriate.

(K) Existing lists of eligibles. Upon adopting a selection method under paragraph (B)(1) or (B)(3) of rule 5101:11-3-02 of the Administrative Code, a sponsor that determines there are fewer minorities and/or women named on any of its pre-existing eligibility lists, than would reasonably be expected in view of the analysis conducted under paragraph (F) of this rule, shall discard that list. In its place, a new eligibility list shall be established pursuant to the requirements of this chapter, and shall be posted at the sponsor's place of business.

(L) Nondiscrimination. The commitments contained in the sponsor's affirmative action program are not intended, and shall not be used, to discriminate against any qualified applicant or apprentice on the basis of race, color, religion, national origin, sex., or age.

Replaces: 4111-3-05, 4111-3-07, 4111-3-16    Effective: March 22, 2004
R.C. 119.032 review dates: 03/22/2009    Certification: certified electronically    Date:
                                        03/12/2004
Promulgated Under: 111.15    Statutory Authority: 4139.03 Rule Amplifies: 4139.03, 4139.05
Prior Effective Dates: 10-8-71; 10-13-78; 11-23-98

## 5101:11-4-03 Compliance reviews.
Effective Date: March 22, 2004.

(A) Conduct of compliance reviews. The council and/or, by mutual agreement, the bureau will conduct regular and systematic reviews of apprenticeship programs to determine the extent of their compliance with the rules under Chapter 5101:11-4 of the Administrative Code, as well as special reviews for this purpose in the event of complaints and other indications of non-compliance with those rules; and will take appropriate action regarding programs which are found non-compliant. Each compliance review will consist of comprehensive analysis and evaluation of every aspect of the apprenticeship program, by means that include on-site investigations and audits.

(B) Registration. Sponsors seeking new registration or reregistration shall be subject to a compliance review as described in paragraph (A) of this rule by the council or the bureau as part of the registration or reregistration process.

Replaces: 4111-3-09  Effective: March 22, 2004    R.C. 119.032 review dates: 03/22/2009
Certification: certified electronically Date: 03/12/2004    Promulgated Under: 111.15

Statutory Authority: 4139.03        Rule Amplifies: 4139.05        Prior Effective Dates: 10-8-71; 10-13-78; 11-23-98

### 5101:11-5-01 Complaints in matters of general compliance.

Effective Date: March 22, 2004.

(A) This rule is not applicable to any complaint concerning discrimination or other equal opportunity matters; all such complaints shall be processed and resolved in accordance with rule 5101:11-5-02 of the Administrative Code.

(B) Except for matters described in paragraph (A) of this rule, a registered apprentice or his/her authorized representative may submit for council review any controversy or disagreement that he/she encounters within his/her program which cannot be resolved under the program standards' dispute resolution process. Matters covered by a collective bargaining agreement are not subject to council review until all appeal processes under that agreement have been exhausted.

(C) To qualify for council review the complaint must be in writing, signed by the complainant or his/her authorized representative, and submitted to the council within sixty days of the final action available under the program standards' resolution process and the process, if any, provided by a collective bargaining agreement. The complaint shall be specific, shall include all relevant facts and circumstances, and be accompanied by copies of all pertinent documents and correspondence.

(D) The council shall complete its review and make a decision about the complaint within ninety days after receiving the complaint, based upon such investigation as the council finds necessary and upon the record before it. During those ninety days, the council shall make a reasonable effort to effect a satisfactory resolution by agreement between the parties involved. If successful in this effort, the council shall notify the parties that the case is closed.

(E) Should the council determine that such a resolution is unlikely, its decision on the matter may consist of one and only one of the following conclusions:

    (1) That the complaint is accurate and there is reasonable cause to suspect sponsor non-compliance with a provision or provisions of division-level designation 5101:11 of the Administrative Code;

    (2) That the complaint is accurate but does not reflect a violation under this chapter;

    (3) That the complaint is not accurate or cannot be determined accurate at the time of decision.

(F) If the council determines, in accordance with paragraph (E)(1) of rule 5101:11-3-08 of the Administrative Code, that there is reasonable cause to suspect the sponsor is in non-compliance with some provision of division-level designation 5101:11 of the Administrative Code, the council will take the requisite disciplinary action under Chapter 5101:11-5 of the Administrative Code. In addition:

    (1) In the event that it finds such reasonable cause, the council shall so notify the program sponsor in writing.

    (2) The notice shall:

        (a) Be sent by registered mail, with return receipt requested;

        (b) State the apparent shortcoming(s) and the remedy required; and

        (c) State that a determination of reasonable cause for deregistration will be made unless corrective action is effected within thirty days.

    (3) Upon request by the sponsor, and at the council's discretion, the thirty-day term may be extended for another thirty days. During the period for correction, the sponsor shall be assisted in every reasonable way to achieve conformity.

(G) If the council determines that there is no such reasonable cause, it shall so notify the interested parties and advise them that, absent new information bearing on the matter, the council will take no further action regarding the complaint.

Replaces: 4111-2-12  Effective: March 22, 2004    R.C. 119.032 review dates: 03/22/2009
Certification: certified electronically  Date: 03/12/2004        Promulgated Under: 111.15
Statutory Authority: 4139.03        Rule Amplifies: 4139.03        Prior Effective Dates: 11-23-98

### 5101:11-5-02 Noncompliance with equal opportunity requirements.

Effective Date: March 22, 2004.

(A) Council authority.

    (1) A pattern or practice of noncompliance by a sponsor or by one of the parties in a joint apprenticeship committee, with federal or state laws or regulations requiring equal opportunity, may be grounds for imposing sanctions. When the council is informed, as a result of a compliance review or other reason, that such a pattern or practice may be occurring, it will determine whether there is reasonable cause to believe that an apprenticeship program is not operating in accordance with Chapter 5101:11-4 of the Administrative Code.

    (2) Where a compliance review indicates that the sponsor is not operating in accordance with Chapter 5101:11-4 of the Administrative Code, the council shall notify the sponsor in writing of the results of the review and make a reasonable effort to secure voluntary compliance on the part of the program sponsor within a reasonable time, before undertaking sanctions under paragraph (C) of this rule. The council will provide appropriate recommendations to any sponsor seeking new registration, to help it achieve compliance.

(B) Complaint procedure in matters of equal opportunity.

    (1) Sponsor review bodies. Sponsors are encouraged to establish review bodies with fair, speedy and effective procedures for considering complaints of failure to follow the equal opportunity requirements of Chapter 5101:11-4 of the Administrative Code. A private review body established by a sponsor for this purpose should number three or more responsible persons from the community, serving in this capacity without compensation. Members of the review body should not be directly associated with the administration of an apprenticeship program. Sponsors may join together in establishing a review body to serve the needs of programs within the community.

    (2) Filing complaints

        (a) Anyone who believes that the equal opportunity requirements of Chapter 5101:11-4 of the Administrative Code have not been followed with respect to his/her selection for, or treatment within, a program, may personally or through an authorized representative file a complaint with the council or, at his/her election, with a private review body established pursuant to paragraph (B)(1) of this rule. The complaint shall be in writing and shall be signed by the complainant. It must include the name, address, and telephone number of the person allegedly discriminated against, the program sponsor involved, and a brief description of the circumstances of the alleged failure to apply the equal opportunity requirements.

        (b) A complaint filed with the council must be filed not later than one hundred eighty days from the date of the latest alleged instance of failure to follow the equal opportunity requirements, or in the case of a complaint filed first with a review body as described in paragraph (A) of this rule, thirty days from the final decision of such review body, whichever is later. The time may be extended by the council for good cause shown.

    (3) Processing of complaints

        (a) When the council receives a complaint, it shall refer it to the sponsor-designated review body, if one exists; unless the complainant has indicated otherwise or the council determines that the review body will not effectively enforce the equal opportunity requirements.

        (b) The council shall, within thirty days following its referral of a complaint to a review body, obtain a report from the complainant and the review body as to the disposition of the complaint. If the complaint has been satisfactorily adjusted, and there is no other indication of failure to apply equal opportunity requirements, the case shall be closed and the parties appropriately informed.

        (c) When a complaint filed with a review body has not been resolved by that body within ninety days or where, despite resolution of the complaint by the review body, there is evidence that the program's equal opportunity practices are not in accordance with Chapter 5101:11-4 , the council, or by mutual agreement the Bureau, may conduct such compliance review as found necessary, and the council will take all necessary steps to resolve the complaint.

        (d) Where no review body exists, the council will conduct such compliance review as found necessary in order to determine the facts of the complaint, and obtain such other information relating to

compliance with rules under Chapter 5101:11-4 of the Administrative Code, as the circumstances warrant.

    (e)  Sponsors shall provide written notice of the above complaint procedure to all applicants for apprenticeship and all apprentices.

(C)  Sanctions.

    (1)  Where the council, as a result of a compliance review or other reason, determines that there is a reasonable cause to believe that an apprenticeship program is not operating in accordance with Chapter 5101:11-4 of the Administrative Code, and voluntary corrective action has not been taken by the program sponsor, the council shall institute proceedings to deregister the program, or it shall refer the matter to the equal employment opportunity commission or to the attorney general with recommendations for the institution of a court action under Title VII of the Civil Rights Act of 1964 or to the attorney general for other court action as authorized by law.

    (2)  Deregistration proceedings, when initiated, shall be conducted in accordance with Chapter 5101:11-6 of the Administrative Code.

    (3)  The council shall inform any sponsor of a de-registered program that it may appeal such deregistration to the department in accordance with the procedures of 29 CFR, section 30.15 ("equal employment opportunity in apprenticeship and training"), current as of July 1, 2003.

(D)  Adjustments in schedule for compliance review or complaint processing. If, in the judgement of the council, an allegation of non-compliance with Chapter 5101:11-4 of the Administrative Code warrants and requires either an expedited or extended process to determine reasonable cause, it shall take the steps necessary to permit such a process, if it finds that no person or party will be prejudiced thereby.

(E)  Intimidatory or retaliatory acts. Any intimidation, threat, coercion or retaliation by or with the approval of any sponsor against any person for the purpose of interfering with any right or privilege secured by Title VII of the Civil Rights Act of 1964 or by executive order 11246, or because he or she has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Chapter 5101:11-4 or Chapter 5101:11-5 of the Administrative Code, shall be considered noncompliance with the equal opportunity requirements of Chapter 5101:11-4 of the Administrative Code. The identity of complainants shall be kept confidential except to the extent necessary to carry out the purpose of Chapter 5101:11-4 of the Administrative Code, including the conduct of any investigation, hearing or judicial proceeding arising therefrom.

Replaces: 4111-3-09; 4111-3-10; 4111-3-11; 4111-3-12; 4111-3-13; 4111-3-15        Effective:
March 22, 2004

R.C. 119.032 review dates: 03/22/2009    Certification: certified electronically    Date:
03/12/2004

Promulgated Under: 111.15    Statutory Authority: 4139.03 Rule Amplifies: 4139.06
Prior Effective Dates: 10-8-71; 10-13-78; 11-23-98

## 5101:11-6-01 Deregistration of programs.

Effective Date: March 22, 2004.

Program registration may be discontinued in one of two ways:

(A)  Request of sponsor. The council may cancel the registration of an apprenticeship program at the sponsor's request, by providing the sponsor written notification:

    (1)  That the registration is canceled at the sponsor's request, and effective date thereof; and

    (2)  That, within fifteen days of the date of acknowledgment, the sponsor shall notify all apprentices: of such cancellation and the effective date; that such cancellation automatically deprives each apprentice of his/her individual registration; and that the deregistration of the program removes the apprentice from coverage for federal and state purposes which require the council's approval of an apprenticeship program.

(B)  Formal deregistration. Deregistration proceedings must be undertaken when the council finds reasonable cause to suspect that the apprenticeship program is not conducted, operated, and administered in accordance with the registered program standards or the rules under division-level designation 5101:11 of the

Administrative Code, and when compliance has not been achieved through voluntary corrective action by the sponsor within the time frame(s) allowed by those rules.

(1) In this event, the council administrator shall transmit to the council a report containing: all pertinent facts and circumstances concerning the nonconformity, including the findings and recommendations for deregistration; and copies of all relevant documents and records. Any statement concerning an interview, meeting, or conference shall specify the pertinent time(s), date(s), and place(s), as well as the person(s) present. At the same time, the council shall send a notice to the sponsor, by registered or certified mail, return receipt requested, stating the following.

   (a) That the notice is sent pursuant to this rule;

   (b) That certain deficiencies were called to the sponsor's attention and remedial measures requested, the dates and means of such communications; what the deficiencies and requested measures were; and that the sponsor has failed or refused to effect correction;

   (c) That based upon the stated deficiencies and failure of remedy, a determination of reasonable cause has been made and the program may be deregistered unless, within fifteen days of receipt of this notice, the sponsor requests a hearing;

   (d) That if the request for a hearing is not made, the entire matter will be submitted to the council, for a decision on the record with respect to deregistration.

(2) If the sponsor does not request a hearing, the council shall make a final decision on the basis of the record before it, except that in cases involving non-compliance with equal opportunity rules, the chairperson or his/her designee will render the final decision on the same basis. In the event that the chairperson appoints a designee, the designee shall be either another council member or the council administrator.

(3) If the sponsor requests a hearing, the council shall convene a hearing in accordance with rule 5101:11-6-02 of the Administrative Code and shall make a final decision on the basis of the record before it, including the proposed findings and recommendations of the hearing officer; except that in cases involving equal opportunity, the chairperson or his/her designee shall convene the hearing make and a final decision on the same basis.

(4) A final decision, whether in the event of a hearing or in the absence of a request for a hearing, may consist of one and only one of the following conclusions:

   (a) That the program shall be de-registered;

   (b) That there are not sufficient grounds for de-registration; or

   (c) That the sponsor may be allowed a reasonable additional period to correct the designated deficiencies, such period to be specified as part of the final decision, at the end of which the program will be automatically de-registered, unless the council can determine with certainty, based entirely on such evidence as the sponsor may present at that time, that the cited deficiencies have been corrected.

(5) In the event of deregistration, the person(s) issuing the final decision shall also issue a de-registration order, and shall give notice of the order to the sponsor and to the public.

(6) Every order of deregistration shall contain a provision that the sponsor shall, within fifteen days of the effective date of the order, notify each registered apprentice of the deregistration of the program; the effective date thereof; that such cancellation automatically deprives the apprentice of his/her individual registration; and that the deregistration removes the apprentice from coverage for federal and state purposes which require the council's approval of the apprenticeship program.

Replaces: 4111-2-08      Effective: March 22, 2004      R.C. 119.032 review dates: 03/22/2009
Certification: certified electronically  Date: 03/12/2004      Promulgated Under: 111.15
Statutory Authority: 4139.03      Rule Amplifies: 4139.06      Prior Effective Dates: 6-20-79; 11-23-98

## 5101:11-6-02 Hearings.

Effective Date: March 22, 2004.

(A) Within ten days of receiving a request for a hearing under rule 5101:11-6-01 of the Administrative Code, the council shall designate a hearing officer, with the exception that in cases involving non-compliance with

equal opportunity rules, the chairperson or his/her designee will, in place of the council, select a hearing officer. The hearing officer shall give reasonable notice of such hearing by registered mail, return receipt requested, to the appropriate sponsor. Such notice shall include:

(1) A reasonable time and place of hearing;

(2) A statement of the provision(s) of division-level designation 5101:11 of the Administrative Code with which the program is alleged not to comply; and

(3) A concise statement of alleged instance(s) of non-compliance based on which the current de-registration proceedings were initiated.

(B) The hearing officer shall regulate the course of the hearing. Hearings shall be informally conducted. Every party shall have the right to counsel, and a fair opportunity to present his/her case, including such cross-examination as may be appropriate in the circumstances. The hearing officer shall develop findings and a recommended decision, on the basis of the record of the hearing and any record(s) available to the parties at the time of the hearing, and will present these within thirty calendar days of the conclusion of the hearing to the person(s) responsible for issuing a final decision.

Replaces: 4111-2-10  Effective: March 22, 2004    R.C. 119.032 review dates: 03/22/2009
Certification: certified electronically Date: 03/12/2004        Promulgated Under: 111.15
Statutory Authority: 4139.03        Rule Amplifies: 4139.05      Prior Effective Dates: 6-20-79; 11-23-98

### 5101:11-6-03 Reinstatement of program registration.

Effective Date: March 22, 2004.

(A) The registration of any apprenticeship program deregistered pursuant to Chapter 5101:11-4 of the Administrative Code may be reinstated upon presentation of adequate evidence to the chairperson or his/her designee that the apprenticeship program is operating in accordance with Chapter 5101:11-4 of the Administrative Code.

(B) The registration of any apprenticeship program deregistered pursuant to any other rules of division-level designation 5101:11 of the Administrative Code may be reinstated no earlier than one year after issuance of the de-registration order, if the council determines with certainty that the program has been brought into compliance with all requirements for registered programs, based entirely on such evidence as the sponsor may present at that time.

Replaces: 4111-2-09; 4111-3-14      Effective: March 22, 2004      R.C. 119.032 review dates: 03/22/2009
Certification: certified electronically Date: 03/12/2004        Promulgated Under: 111.15
Statutory Authority: 4139.03        Rule Amplifies: 4139.03, 4139.06
Prior Effective Dates: 10-8-71; 10-13-78; 6-20-79; 11-23-98

### 5101:11-7-01 Exemptions.

Effective Date: March 22, 2004.

Requests for exemption from these regulations, or any part thereof, shall be made in writing to the chairperson or his/her designee and shall contain a statement of reasons supporting the request. Exemptions may be granted for good cause. The council will immediately notify the department of any such exemptions affecting a substantial number of employees and the reasons therefor.

Replaces: 4111-3-17  Effective: March 22, 2004    R.C. 119.032 review dates: 03/22/2009      Certification: certified electronically        Date: 03/12/2004      Promulgated Under: 111.15  Statutory Authority: 4139.03    Rule Amplifies: 4139.06      Prior Effective Dates: 10-8-71; 10-13-78; 11-23-98

# EXHIBIT Q

# REGULATIONS GOVERNING APPRENTICESHIP AND TRAINING PROGRAMS



COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF LABOR AND INDUSTRY
BUREAU OF LABOR LAW COMPLIANCE

1997 EDITION

# PART IV. APPRENTICESHIP AND TRAINING COUNCIL

**Chap.**                                                                    **Sec.**
**81.**     **EQUAL OPPORTUNITY IN APPRENTICESHIP PROGRAMS** ....................... **81.1**
**83.**     **WELFARE OF APPRENTICES** ........................................................... **83.1**

## CHAPTER 81. EQUAL OPPORTUNITY IN APPRENTICESHIP PROGRAMS

### GENERAL PROVISIONS

Sec.
81.1.     Purpose.
81.2.     Scope.
81.3.     Definitions.

### EQUAL OPPORTUNITY STANDARDS

81.11.     Obligation of sponsors.
81.12.     Equal opportunity pledge.
81.13.     Programs currently registered.
81.14.     Sponsors seeking new registration.
81.15.     Programs subject to approved equal employment opportunity plans.
81.16.     Programs with fewer than five apprentices.

### AFFIRMATIVE ACTION PLANS

81.21.     Affirmative action defined; adoption of plan.
81.22.     Outreach and positive recruitment.
81.23.     Goals and timetables–when required.
81.24.     Analysis to determine if deficiencies exist.
81.25.     Goals and timetables–establishment, attainment.
81.26.     Availability of information.

### SELECTION OF APPRENTICES

81.31.     Obligation of sponsors.
81.32.     Selection on basis of rank from pool of eligible applicants.
81.33.     Random selection from pool of eligible applicants.
81.34.     Selection from pool of current employes.
81.35.     Alternative selection methods.

### MAINTENANCE OF ELIGIBILITY LIST

81.41.     Existing list of eligibles.
81.42.     Public notice of eligibility pools.
81.43.     Retention of applicants on list; reporting for work.

# RECORDS

81.51.  Obligations of sponsors.
81.52.  Affirmative action plans.
81.53.  Qualification standards.
81.54.  Maintenance of records.
81.55.  Records of the Council.

# COMPLIANCE

81.61.  Conduct of compliance reviews.
81.62.  Compliance review as part of registration.
81.63.  Voluntary compliance.
81.64.  Noncompliance with Federal or State requirements.

# COMPLAINT PROCEDURES

81.71.  Filing.
81.72.  Establishment of private review body.
81.73.  Processing of complaints.

# SANCTIONS

81.81.  When sanctions will be imposed.
81.82.  Deregistration procedures.
81.83.  Conduct of hearings.

# MISCELLANEOUS PROVISIONS

81.91.  Special processing for compliance review or complaint processing.
81.92.  Reinstatement of program registration.
81.93.  Intimidatory or retaliatory acts.
81.94.  Nondiscrimination.
81.95.  Requests for exemptions.

## Authority

The provisions of this Chapter 81 issued under section 4 of The Apprenticeship and Training Act (43 P. S. § 90.4), unless otherwise noted.

## Source

The provisions of this Chapter 81 adopted June 23, 1971, 1 Pa.B. 1500, amended through March 16, 1979, 9 Pa.B. 814, unless otherwise noted.

## Cross References

This chapter cited in 34 Pa. Code § 83.3 (relating to eligibility and procedure for council registration); 34 Pa. Code § 83.7 (relating to deregistration of council-registered programs); and 34 Pa. Code § 83.10 (relating to compliance).

## GENERAL PROVISIONS

### § 81.1.    Purpose.

The purpose of the policies and procedures set forth in this chapter is to promote equality of opportunity in apprenticeship by prohibiting discrimination based on race, color, religion, national origin or sex in apprenticeship programs, by requiring affirmative action to provide equal opportunity in such apprenticeship programs, and by coordinating such policies and procedures with other equal opportunity programs.

### § 81.2.    Scope.

This chapter sets forth policies and procedures to promote equality of opportunity in apprenticeship programs registered with the Council. These policies and procedures apply to the recruitment and selection of apprentices, and to all conditions of employment and training during apprenticeship, and the procedures established provide for review of apprenticeship programs, for registering apprenticeship programs, and for deregistering noncomplying apprenticeship programs.

### § 81.3.    Definitions.

The following words and terms, when used in this chapter, have the following meanings, unless the context clearly indicates otherwise:

*Apprenticeship program*–A program registered with the Council and evidenced by a Certificate of Registration or other appropriate document as meeting the apprenticeship standards of the Council.

*Council*–The Apprenticeship and Training Council of the Commonwealth.

*Director*–Any authorized person legally appointed to supervise the activities of the Council.

*Employer*–Any person or organization employing an apprentice whether or not the apprentice is enrolled with such person or organization or with some other person or organization.

*Minority*–One of four major ethnic groups other than Caucasian, namely Negro, American Indian, Oriental and Spanish American or a person, regardless of race, who is handicapped with a nonjob-related disability. The term "Spanish American" or "Spanish-surnamed American" is deemed to include all persons of Mexican, Puerto Rican, Spanish or Cuban origin.

*Nonjob-related disability*–Any handicap or disability which does not substantially interfere with the ability to perform the essential functions of the employment which a handicapped person applies for, is engaged in, or has been engaged in.

*Sponsor*–Any person or organization operating an apprenticeship program, irrespective of whether the person or organization is an employer.

## EQUAL OPPORTUNITY STANDARDS

### § 81.11.    Obligation of sponsors.

Each sponsor of an apprenticeship program shall be responsible for the following:

(1)    The recruitment, selection, employment, and training of apprentices during their apprenticeship, without discrimination because of race, color, religion, national origin, sex or nonjob-related disability.

(2)    The uniform application of rules and regulations concerning apprentices, including but not limited to, equality of wages, periodic advancement, promotion, assignment of work, job performance, rotation among all work processes of the trade, imposition of penalties or other disciplinary action, and

all other aspects of apprenticeship program administration by the program sponsor.

(3)    The taking of affirmative action to provide equal opportunity in apprenticeship, including adoption of an affirmative action plan as required by this chapter.

### § 81.12.    Equal opportunity pledge.

Each sponsor of an apprenticeship program shall include in its standards the following equal opportunity pledge:

The recruitment, selection, employment and training of apprentices during their apprenticeship shall be without discrimination because of race, color, religion, national origin, sex or nonjob-related disability. The sponsor shall take affirmative action to provide equal opportunity in apprenticeship and will operate the apprenticeship program as required under Title 29 of the *Code of Federal Regulations*, Part 30 and equal employment opportunity regulations of the Commonwealth of Pennsylvania.

### Cross References

This section cited in 34 Pa. Code § 81.13 (relating to programs currently registered).

### § 81.13.    Programs currently registered.

Each sponsor of a program registered with the Council shall, within 6 months following the effective date of this chapter, take the following actions:

(1)    Include in the standards of its apprenticeship program the equal opportunity pledge prescribed in § 81.12 (relating to equal opportunity pledge).

(2)    Adopt an affirmative action plan as required in this chapter.

(3)    Adopt a selection procedure as required in this chapter. A sponsor adopting one of the selection methods specified in §§ 81.32–81.34 (relating to selection of apprentices) shall prepare, and have available for submission upon request, copies of its amended standards, affirmative action plans and selection procedure. A sponsor adopting a selection method under § 81.35 (relating to alternative selection methods) shall submit to the Council copies of its standards, affirmative action plan, and selection procedure.

### § 81.14.    Sponsors seeking new registration.

A sponsor of a program seeking new registration with the Council shall submit copies of its proposed standards, affirmative action plan, selection procedures, and such other information as may be required. The program will be registered if such standards, affirmative action plan and selection procedure meet the requirements of this chapter.

### § 81.15.    Programs subject to approved equal employment opportunity plans.

A sponsor shall not be required to adopt an affirmative action plan or a selection procedure as specified in this chapter if it submits to the Council satisfactory evidence that it is subject to an equal employment opportunity program providing for the selection of apprentices and for affirmative action in apprenticeship including goals and timetables for women and minorities which has been approved as meeting the requirements of Title VII of the Civil Rights Act of 1964 (42 U.S.C.A. § 2000e et seq.) or Executive Order 11246, as amended (30 FR 12319; 32 FR 12986) and the implementing regulations published in 29 CFR Chapter XIV, and 41 CFR, Chapter 60; provided, that programs approved, modified, or renewed subsequent to the effective date of this amendment will qualify for this exception only if the goals and timetables for minorities and women for the selection of apprentices provided for in such programs are equal to or greater than the goals required under this part.

### § 81.16. Programs with fewer than five apprentices.

A sponsor of a program in which fewer than five apprentices are indentured will not be required to adopt a written affirmative action plan or a selection procedure as specified in this chapter; provided that such program was not adopted to circumvent the requirements of this chapter.

## AFFIRMATIVE ACTION PLANS

### § 81.21. Affirmative action defined; adoption of plan.

(a)    Affirmative action is not mere passive nondiscrimination. It includes procedures, methods and programs for the identification, positive recruitment, training and motivation of present and potential minority and female apprentices. It is action which will equalize opportunity in apprenticeship so as to follow full utilization of the work potential of minorities and women. The overall result to be sought is equal opportunity in apprenticeship for all individuals participating in or seeking entrance to the nation's labor force.

(b)    The commitment of a sponsor to equal opportunity in recruitment, selection, employment and training of apprentices shall include the adoption of a written affirmative action plan.

### § 81.22. Outreach and positive recruitment.

(a)    An acceptable affirmative action plan shall include adequate provision for outreach and positive recruitment that would reasonably be expected to increase minority and female participation in apprenticeship by expanding the opportunity of minorities and women to become eligible for apprenticeship selection. In order to achieve these objectives, sponsors shall undertake activities such as those listed in subsection (b). It is not contemplated that each sponsor necessarily will include all of the listed activities in its affirmative action program. The scope of the affirmative action program will depend on all the circumstances including the size and type of the program and its resources; however, the sponsor shall be required to undertake a significant number of appropriate activities in order to enable it to meet its obligation under this chapter.

(b)    The affirmative action plan shall set forth the specific steps the sponsor intends to take in the following areas:

(1)    Dissemination of information concerning the nature of apprenticeship, availability of apprenticeship, opportunities, sources of apprenticeship applications and the equal opportunity policy of the sponsor. For programs accepting applications only at specified intervals, such information shall be disseminated at least 30 days in advance of the earliest date for application at each interval. For programs customarily receiving applications throughout the year, such information shall be regularly disseminated but not less than semiannually. Such information shall be given to the Council, local schools, employment service offices, women's centers, public or private rehabilitation centers and community organizations which can effectively reach minorities and women, and published in newspapers which are circulated in the minority community and among women, as well as the general areas in which the program sponsor operates.

(2)    Participation in annual workshops conducted by employment service agencies for the purpose of familiarizing school, employment service, and other appropriate personnel with the apprenticeship system and current opportunities therein.

(3)    Cooperation with local school boards and vocational education systems to develop programs for preparing students to meet the standards and criteria required to qualify for entry into apprenticeship programs.

(4)    Internal communication of the equal opportunity policy of the sponsor in such a manner as to foster understanding, acceptance, and support among the sponsor's various officers, supervisors, employes, and members and to encourage such persons to take the necessary action to aid the sponsor in meeting its obligations under this chapter.

(5)    Engaging in programs such as outreach for the positive recruitment and preparation of potential applicants for apprenticeships. Where appropriate and feasible, such programs shall provide for pretesting experience and training. If no such programs are in existence, the sponsor shall seek to initiate these programs. In initiating and conducting such programs, the sponsor may be required to work with other sponsors and appropriate community organizations. The sponsor shall also initiate programs to prepare women and encourage women to enter traditionally male programs.

(6)    In order to encourage the establishment and utilization of programs of preapprenticeship, preparatory trade training, or others designed to afford related work experience or to prepare candidates for apprenticeship, a sponsor shall make appropriate provision in its affirmative action plan to assure that those who complete such programs are afforded full and equal opportunity for admission into the apprenticeship program.

(7)    Utilization of journeymen to assist in the implementation of the affirmative action program of the sponsor.

(8)    Granting advance standing or credit on the basis of previously acquired experience, training, skills or aptitude for all applicants equally.

(9)    Admission to apprenticeship programs of persons whose age exceeds the maximum age for admission to the program, where such action is necessary to assist the sponsor in achieving its affirmative action obligations.

(10)    Such other action as to ensure that the recruitment, selection, employment, and training of apprentices during apprenticeship shall be without discrimination because of race, color, religion, national origin, sex or nonjob-related disability. This may include general publication of apprenticeship opportunities and advantages in advertisements, industry reports, articles, and the like; use of present minority and female apprentices and journeypersons as recruiters; career counseling; periodic auditing of affirmative action programs and activities; and development of reasonable procedures between the sponsor and employers of apprentices to ensure that equal employment opportunity is being granted including reporting systems, on site reviews, briefing sessions, and the like. The affirmative action program shall set forth the specific steps the sponsor intends to take in the above areas under this section.

### Cross References

This section cited in 34 Pa. Code § 81.42 (relating to public notice of eligibility pools).

## § 81.23.   Goals and timetables–when required.

(a)    A sponsor adopting one of the selection methods specified in §§ 81.32 and 81.33 (relating to selection on basis of rank from pool of eligible applicants; random selection from pool of eligible applicants) and which determines on the basis of the analysis described in § 81.24 (relating to analysis to determine if deficiencies exist) that it has deficiencies in terms of underutilization of minorities or women–minority and nonminority–or both, in the craft or crafts represented by the program shall include in its affirmative action plan percentage goals and timetables for the admission of minority and female–minority and nonminority–applicants into the eligibility pool.

(b)    A sponsor adopting one of the selection methods specified in §§ 81.34 and 81.35 (relating to selection from pool of current employes; alternative selection methods) and which determines on the basis of the analysis described in § 81.24 (relating to analysis to determine if deficiencies exist) that it has deficiencies in terms of the underutilization of minorities or women, or both, in the craft or crafts represented by the program shall include in its affirmative action plan percentage goals and timetables for the selection of minorities or women–minority and nonminority–or both, applicants for the apprenticeship program.

(c)    "Underutilization" as used in this section refers to the situation where there are fewer minorities or women–minority and nonminority–or both, in the particular craft or crafts represented by the program than would reasonably be expected in view of an analysis of the factors specified in § 81.24 (relating to analysis to determine if deficiencies exist). Where, on the basis of such analysis, the sponsor determines that it has no deficiencies, goals, and timetables need not be established; however, where no goals and timetables are established, the affirmative action plan shall include a detailed explanation why no goals and timetables have been established.

(d)    Where the sponsor fails to submit goals and timetables as part of its affirmative action plan or submits goals and timetables which are unacceptable, and the Council determines that the sponsor has deficiencies in terms of underutilization of minorities or women–minority and nonminority, the Council shall establish goals and timetables applicable to the sponsor for the admission of minority and female–minority and nonminority–applicants into the eligibility pool or selection of apprentices, as appropriate. The sponsor shall make good faith efforts to attain these goals and timetables.

### Cross References

This section cited in 34 Pa. Code § 81.33 (relating to random selection from pool of eligible applicants); 34 Pa. Code § 81.34 (relating to selection from pool of current employes); and 34 Pa. Code § 81.35 (relating to alternative selection methods).

### § 81.24.  Analysis to determine if deficiencies exist.

The determination by the program sponsor as to whether goals and timetables need to be established shall be based on an analysis of at least the following factors, which analysis shall be set forth in writing as part of the affirmative action plan:

(1)    The minority and female–minority and nonminority–population of the labor market area in which the program sponsor operates.

(2)    The size of the minority and female–minority and nonminority–labor force in labor market area of the sponsor.

(3)    The percentage of minority and female–minority and nonminority–participation as apprentices in the particular craft as compared with the percentage of minorities in the labor force in the labor market area of the sponsor.

(4)    The percentage of minority and female–minority and nonminority–participation as journeymen employed by the employer or employers participating in the program as compared with the percentage of minorities in the labor market area of the sponsor and the extent to which the sponsor should be expected to correct any deficiencies through the achievement of goals and timetables for the selection of apprentices.

(5)    The general availability of minorities and women–minority and nonminority–with present or potential capacity for apprenticeship in the labor market area, of the sponsor.

### Cross References

This section cited in 34 Pa. Code § 81.23 (relating to goals and timetables–when required); 34 Pa. Code § 81.33 (relating to random selection from pool of eligible applicants); and 34 Pa. Code § 81.34 (relating to selection from pool of current employes).

### § 81.25.  Goals and timetables–establishment, attainment.

Goals and timetables shall be established on the basis of an analysis by the sponsor of its underutilization of minorities and women and its entire affirmative action program. A single goal for minorities and a

separate single goal for women is acceptable unless a particular group is employed in a substantially dispar-ate manner, in which case separate goals shall be established for such group. Such separate goals would be required, for example, if a specific minority group of women were underutilized even though the sponsor had achieved its standards for women generally. In establishing the goals, the sponsor should consider the results which could be reasonably expected from its good faith efforts to make its overall affirmative action program work. Compliance with these requirements shall be determined by whether the sponsor has met its goals within its timetable, or failing that, whether it had made good faith efforts to meet its goals and timetables. Its "good faith efforts" will be judged by whether it is following its affirmative action program and attempting to make it work, including evaluation and changes in its program where necessary to obtain the maximum effectiveness toward the attainment of its goals; however, in order to deal fairly with program sponsors and with women who are entitled to protection under the goals and timetables requirements, during the first 12 months after the effective date of this chapter, the program sponsor would generally be expected to set a goal for women for the entering-year class at a rate which is not less than 50% of the proportion women comprise of the work force in the program sponsor's labor market area and to set a percentage goal for women in each class beyond the entering class which is not less than the participation rate of women currently in the preceding class. At the end of the first 12 months after the effective date of this chapter, sponsors are expected to make appropriate adjustments in goal levels. In establishing the goals, the sponsor should consider the results which could be reasonably expected from its good faith efforts to make its overall affirmative action program work. Compliance with these requirements will be determined by whether the sponsor has met its goals within its timetable or, failing that, whether it had made good faith efforts to meet its goals and timetables. Its "good faith efforts" will be judged by whether it is following its affirmative action program and attempting to make it work, including evaluation and changes in its program where necessary to obtain the maximum effectiveness toward the attainment of its goals.

### Cross References

This section cited in 34 Pa. Code § 81.33 (relating to random selection from pool of eligible appli-cants); and 34 Pa. Code § 81.34 (relating to selection from pool of current employes).

### § 81.26.  Availability of information.

The United States Department of Labor will make available to program sponsors data and information on minority and female—minority and nonminority—population and labor force characteristics for each Stan-dard Metropolitan Statistical Area, and for other special areas as appropriate.

### SELECTION OF APPRENTICES

### § 81.31.  Obligation of sponsors.

(a)    In addition to the development of a written affirmative action plan to ensure that minorities have an equal opportunity for selection as apprentices and otherwise insure the prompt achievement of full and equal opportunity in apprenticeship, each sponsor shall further provide in its affirmative action program that the selection of apprentices shall be made in accordance with this chapter.

(b)    Each sponsor shall adopt one of the methods for selecting apprentices specified in §§ 81.32–81.35 (relating to selection of apprentices).

### § 81.32.  Selection on basis of rank from pool of eligible applicants.

The sponsor who adopts the method of selecting apprentices on the basis of rank from a pool of eligible applicants shall comply with the following:

(1)    *Selection.* A sponsor may select apprentices from a pool of eligible applicants on the basis of the rank order of scores of applicants on one or more qualification standards where there is a signifi-cant statistical and practical relationship between rank order of scores and performance in the appren-

ticeship program. In demonstrating such relationship, the sponsor shall follow the procedures set forth in the United States Department of Labor Order of September 9, 1968 (33 FR 14392, September 24, 1968) covering the validation of employment tests of contractors and subcontractors subject to the provision of Executive Order 11246, as amended.

(2)    *Creation of pool of eligibles.* A pool of eligibles shall be created from applicants who meet the qualifications of minimum legal working age or from applicants who meet qualification standards in addition to minimum legal working age and the sponsor's minimum physical requirements; provided that any additional qualification standards conform with the following requirements:

(i)    *Qualification standards.* The qualification standards, and the procedures for determining such qualification standards shall be stated in detail and shall provide criteria for the specific factors and attributes to be considered in evaluating applicants for admission to the pool. The score required under each qualification standard for admission to the pool shall also be specified. All qualification standards, and the score required on any standard for admission to the pool, shall be directly related to job performance, as shown by a significant statistical and practical relationship between the score on the standards, and the score required for admission to the pool, and performance in the apprenticeship program. In demonstrating such relationships, the sponsor shall follow the procedures set forth in 41 CFR Part 60-3. Qualifications shall be considered as separately required so that the failure of an applicant to attain the specified score under a single qualification standard shall disqualify the applicant from admission to the pool.

(ii)    *Aptitude tests.* Any qualification standard for admission to the pool consisting of aptitude test scores shall be directly related to job performance, as shown by significant statistical and practical relationships between the score on the aptitude tests, and the score required for admission to the pool, and performance in the apprenticeship program. In determining such relationships, the sponsor shall follow the procedures set forth in 41 CFR Part 60-3. This requirement shall also be applicable to aptitude tests utilized by a program sponsor which are administered by a State employment service agency; a private employment agency, or any other person, agency, or organization engaged in the selection or evaluation of personnel.

(iii)    *Educational attainments.* All educational attainments or achievements as qualifications for admission to the pool shall be directly related to job performance, as shown by a significant statistical and practical relationship between the score, and the score required for admission to the pool, and performance in the apprenticeship program. In demonstrating such relationships, the sponsor shall meet the requirements of 41 CFR Part 60-3. School records or the results of general education development tests recognized by the State or local public instruction authority shall be evidence of educational achievement. Education requirements shall be applied uniformly to all applicants.

(3)    *Oral interviews.* Oral interviews shall not be used as a qualification standard for admission into an eligibility pool; however, once an applicant is placed in the eligibility pool, and before he is selected for apprenticeship from the pool, the applicant may be required to submit to an oral interview. Oral interviews shall be limited only to such objective questions as may be required to determine the fitness of applicants to enter the apprenticeship program, but shall not include questions relating to qualifications previously determined in gaining entrance to the eligibility pool. When an oral interview is used, each interviewer shall record his questions, the general nature of answers, and shall prepare a summary of any conclusions. Applicants rejected from the pool of eligibles on the basis of an oral interview shall be given a written statement of such rejection, the reasons therefor, and the appeal rights available to the applicant.

(4)    *Notification of applicants.* All applicants who meet the requirements for admission shall be notified and placed in the eligibility pool. The program sponsor shall give each rejected applicant notice of his rejection including the reasons for his rejection, the requirements for admission to the pool of eligibles, and the appeal rights available to the applicant.

(5)  *Goals and timetable.* The sponsor shall establish, when required, percentage goals and timetables for the admission of minorities and women—minority and nonminority—to the pool of eligibles in accordance with the provisions of §§ 81.23–81.25 (relating to affirmative action plans). A sponsor shall be deemed to be in compliance with this paragraph if it meets its goals or timetables or if it makes a good faith effort to meet these goals and timetables. In the event of the failure of the sponsor to meet its goals and timetables, it shall be given an opportunity to demonstrate that it has made every good faith effort to meet its commitments. All the actions of the sponsor shall be reviewed and evaluated in determining whether such good faith efforts have been made.

### Cross References

This section cited in 34 Pa. Code § 81.13 (relating to programs currently registered); 34 Pa. Code § 81.23 (relating to goals and timetables–when required); 34 Pa. Code § 81.31 (relating to obligation of sponsors); 34 Pa. Code § 81.33 (relating to random selection from pool of eligible applicants); 34 Pa. Code § 81.34 (relating to selection from pool of current employes); 34 Pa. Code § 81.35 (relating to alternative selection methods); 34 Pa. Code § 81.41 (relating to existing list of eligibles); and 34 Pa. Code § 81.53 (relating to qualification standards).

## § 81.33.  Random selection from pool of eligible applicants.

The sponsor who adopts the method of a random selection of apprentices from a pool of eligible applicants shall comply with the following:

(1)  *Selection.* A sponsor may select apprentices from a pool of eligible applicants on a random basis. The method of random selection shall be subject to approval by the Council. Supervision of the random selection process shall be by an impartial person or persons selected by the sponsor, but not associated with the administration of the apprenticeship program. The time and place of the selection and the number of apprentices to be selected shall be announced. The place of the selection shall be open to all applicants and the public. The names of apprentices drawn by this method shall be posted immediately following the selection at the place of business of the sponsor.

(2)  *Other requirements.* The sponsor shall meet the requirements of §§ 81.23–81.25 and § 81.32(2)–(5).

### Cross References

This section cited in 34 Pa. Code § 81.13 (relating to programs currently registered); 34 Pa. Code § 81.23 (relating to goals and timetables–when required); 34 Pa. Code § 81.31 (relating to obligation of sponsors); 34 Pa. Code § 81.41 (relating to existing list of eligibles), and 34 Pa. Code § 81.53 (relating to qualification standards).

## § 81.34.  Selection from pool of current employes.

The sponsor who adopts the method of a selection of apprentices from a pool of current employes shall comply with the following:

(1)  *Selection.* A sponsor may select apprentices from an eligibility pool of the workers already employed by the program sponsor in a manner prescribed by a collective bargaining agreement where such exists, or by the sponsor's established promotion policy. The sponsor adopting this method of selecting apprentices shall establish goals and timetables for the selection of minority and female apprentices, unless the sponsor concludes, in accordance with the provisions of §§ 81.23–81.25 (relating to affirmative action plans) that it does not have deficiencies in terms of underutilization of minorities or women—minority and nonminority–or both, in the apprenticeship of journeymen crafts represented by the program.

(2)  *Goals and timetables.* The sponsor shall meet the requirements of § 81.32(5) (relating to selection on basis of rank from pool of eligible applicants).

**Cross References**

This section cited in 34 Pa. Code § 81.13 (relating to programs currently registered); 34 Pa. Code § 81.31 (relating to obligation of sponsors); and 34 Pa. Code § 81.53 (relating to qualification standards).

**§ 81.35.  Alternative selection methods.**

A sponsor may select apprentices by any other method than those specified in this chapter, including its present selection method, if such sponsor complies with the following:

(1)  *Selection method and goals and timetables.* Within 90 days of the effective date of this chapter, the sponsor shall submit to the Council a detailed statement of the revised selection method it proposes to use along with the rest of its written affirmative action program including, where required, its percentage goals and timetables for the selection of minority or female--minority and nonminority-- or both, applicants for apprenticeship and its written analysis, upon which such goals and timetables, or lack thereof, are based. The establishment of goals and timetables shall be in accordance with the provisions of § 81.23 (relating to goals and timetables--when required). The sponsor may not implement any such selection method until the Council has approved the selection method as meeting the requirements of this section and has approved the remainder of its affirmative action program including its goals and timetables. If the Council fails to act upon the selection method and the affirmative action program within 30 days of its submission, the sponsor may implement the selection method on the effective date of this chapter.

(2)  *Qualification standards.* Apprentices shall be selected on the basis of objective and specific qualification standards. Examples of such standards are fair aptitude tests, school diplomas, age requirements, occupationally essential physical requirements, fair interviews, school grades and previous work experience. Where interviews are used, adequate records shall be kept including a brief summary of each interview and the conclusions on each of the specific factors, such as motivation, ambition, and willingness to accept direction which are part of the total judgment.

(3)  *Goals and timetables.* The sponsor shall meet the requirements of § 81.32(5) (relating to selection on basis of rank from pool of eligible applicants). Where a sponsor, despite its good faith efforts, fails to meet its goals and timetables within a reasonable period of time, the sponsor may be required to make appropriate changes in its affirmative action program to the extent necessary to obtain maximum effectiveness towards the attainment of its goals. The sponsor may also be required to develop and adopt an alternative selection method, including a method prescribed by the Council where it is determined that the failure of the sponsor to meet its goals is attributable in substantial part to the selection method. Where the sponsor's failure to meet its goals is attributable in substantial part to its use of a qualification standard which had adversely affected the opportunities of minorities or women-- minority and nonminority--or both, for apprenticeship, the sponsor may be required to demonstrate that such qualification standards are directly related to job performance in accordance with the provisions of § 81.32(2)(i) (relating to selection on basis of rank from pool of eligible applicants).

**Cross References**

This section cited in 34 Pa. Code § 81.13 (relating to programs currently registered); 34 Pa. Code § 81.23 (relating to goals and timetables--when required); 34 Pa. Code § 81.31 (relating to obligation of sponsors); 34 Pa. Code § 81.41 (relating to existing list of eligibles); and 34 Pa. Code § 81.53 (relating to qualification standards).

**MAINTENANCE OF ELIGIBILITY LIST**

**§ 81.41.  Existing list of eligibles.**

A sponsor adopting a selection method under § 81.32, § 81.33 or § 81.35, and who determines that there are fewer minorities on its existing lists of eligibles than would reasonably be expected after an

analysis to determine if deficiencies exist, shall discard all existing eligibility lists upon adoption of such selection method. Thereafter new eligibility pools shall be established.

### § 81.42.  Public notice of eligibility pools.

(a)    Sponsors shall establish a reasonable period of not less than 2 weeks for accepting applications for admission to an apprenticeship program.

(b)    Lists of eligibility pools shall be posted at the place of business of the sponsor.

(c)    There shall be at least 30 days of public notice in advance of the earliest date for application for admission to an apprenticeship program. Reference should be made to § 81.22 (relating to outreach and positive recruitment).

### § 81.43.  Retention of applicants on list; reporting for work.

(a)    Applicants who have been placed in a pool of eligibles shall be retained on lists of eligibles subject to selection for a period of 2 years. Applicants may be removed from the list at an earlier date by their request or following their failure to respond to an apprentice job opportunity given by registered return receipt mail notice.

(b)    Applicants who have been accepted in the program shall be afforded a reasonable period of time in light of the customs and practices of the industry for reporting for work. All applicants shall be treated equally in determining such period of time. It shall be the responsibility of the applicant to keep the sponsor informed of his current mailing address.

(c)    A sponsor may restore to the list of eligibles an applicant who has been removed from the list at his request or who has failed to respond to an apprenticeship job opportunity.

RECORDS

### § 81.51.  Obligations of sponsors.

Each sponsor shall keep adequate records including a summary of the qualifications of each applicant, the basis for evaluation and for selection or rejection of each applicant, the records pertaining to interviews of operation of the apprenticeship program, including, but not limited to, job assignment, promotion, demotion, layoff, or termination, rates of pay, or other forms of compensation or conditions of work, and any other records pertinent to a determination of compliance with this chapter as may be required by the Council. The records pertaining to individual applicants, whether selected or rejected, shall be maintained in such manner as to permit identification of minority and female–minority and nonminority–participants.

### § 81.52.  Affirmative action plans.

Each sponsor shall retain a statement of its affirmative action plan for the prompt achievement of full and equal opportunity in apprenticeship, including all data and analysis made pursuant to the requirements of this chapter. Sponsors shall periodically review their affirmative action plan and update it where necessary.

### § 81.53.  Qualification standards.

Each sponsor shall maintain evidence that its qualification standards have been validated in accordance with the requirements in §§ 81.32–81.35 (relating to selection of apprentices).

### § 81.54.  Maintenance of records.

The records required by this chapter and any other information relevant to compliance with this chapter shall be maintained for 5 years and made available upon request to the Council, United States Department of Labor or authorized representatives.

### § 81.55.  Records of the Council.

The Council shall keep adequate records, including registration requirements, approved individual program standards, standards registration actions, deregistration actions, program compliance reviews and investigations, individual program ethnic count, total apprenticeship ethnic count and any other records pertinent to a determination of compliance with this chapter as many as may be required by the United States Department of Labor and shall report such information to the United States Department of Labor, through the Office of the State Supervisor of the Bureau of Apprenticeship and Training, United States Department of Labor, semiannually.

## COMPLIANCE

### § 81.61.  Conduct of compliance reviews.

(a)    The Council will regularly conduct systematic reviews of apprenticeship programs in order to determine the extent to which sponsors are complying with this chapter. The Council will also conduct compliance reviews when circumstances, including receipt of complaints not referred to a private review body pursuant to § 81.73(a) (relating to processing of complaints), so warrant, and take appropriate action regarding programs which are not in compliance with the requirements of this chapter.

(b)    Compliance reviews will consist of comprehensive analysis and evaluations of each aspect of the apprenticeship program, including on site investigations and audits.

### § 81.62.  Compliance review as part of registration.

Sponsors seeking reregistration or new registration shall be subject to a compliance review by the Council as part of the registration process.

### § 81.63.  Voluntary compliance.

Where the compliance review indicates that the sponsor is not operating in accordance with this chapter, the Council will notify the sponsor in writing of the results of the review and make a reasonable effort to secure voluntary compliance on the part of the program sponsor within a reasonable time before undertaking any sanctions pursuant to this chapter. In the case of sponsors seeking new registration, the Council will provide appropriate recommendations to the sponsor to enable it to achieve compliance for registration purposes.

### § 81.64.  Noncompliance with Federal or State requirements.

A pattern or practice of noncompliance by a sponsor or where the sponsor is a joint apprenticeship committee, by one of the parties represented on such committee with Federal or State laws or regulations requiring equal opportunity may be grounds for the imposition of sanctions in accordance with §§ 81.81–81.83 (relating to sanctions) if the noncompliance is related to the equal employment opportunity of apprentices or graduates of such an apprenticeship program under this chapter. The sponsor shall take positive steps to assist and cooperate with employers and unions in fulfilling their equal employment opportunity obligations.

## COMPLAINT PROCEDURES

### § 81.71.  Filing.

(a)    Any apprentice or applicant for apprenticeship who believes that he has been discriminated against on the basis of race, color, religion, national origin, sex or nonjob-related disability with regard to apprenticeship or that the equal opportunity standards with respect to his selection have not been followed in the operation of an apprenticeship program may, by the apprentice or by an authorized representative, file a complaint with the Council, or with a private review body established pursuant to § 81.72 (relating to

establishment of private review body). The complaint shall be in writing and shall be signed by the complainant. It shall include the name, address and telephone number of the person allegedly discriminated against, the program sponsor involved, and a brief description of the circumstances of the failure to apply the equal opportunity standards provided for in this chapter.

(b)    The complaint shall be filed not later than 180 days from the date of the alleged discrimination of specified failure to follow the equal opportunity standards; and, in the case of complaints filed directly with review bodies designated by program sponsors to review such complaints, any referral of such complaints by the complainant to the Council shall occur within the time limitation stated in this subsection or 30 days from the final decision of such review body, whichever is later. The time may be extended by the Council for good cause shown.

(c)    Subsection (a) supersedes 1 Pa. Code §§ 35.9 and 35.10 (relating to formal complaints generally).

## § 81.72. Establishment of private review body.

Sponsors are encouraged to establish fair, speedy and effective procedures for a review body to consider complaints of failure to follow the equal opportunity standards. A private review body established by the program sponsor for this purpose should number three or more responsible persons from the community serving in this capacity without compensation. Members of the review body should not be directly associated with the administration of an apprenticeship program. Sponsors may join together in establishing a review body to serve the needs of programs within the community.

### Cross References

This section cited in 34 Pa. Code § 81.71 (relating to filing).

## § 81.73. Processing of complaints.

(a)    When the sponsor has designated a review body for reviewing complaints, and if the Council determines that such review body will effectively enforce the equal opportunity standards, the Council, upon receiving a complaint, will refer the complaint to the review body.

(b)    The Council will, within 30 days following the referral of a complaint to the review body, obtain reports from the complainant and the review body as to the disposition of the complaint. If the complaint has been satisfactorily adjusted, and there is no other indication of failure to apply equal opportunity standards, the case shall be closed and the parties appropriately informed.

(c)    When a complaint has not been resolved by the review body within 90 days or where, despite satisfactory resolution of the particular complaint by the review body, there is evidence that the equal opportunity practices of the apprenticeship program are not in accordance with this chapter, the Council may conduct such compliance review as found necessary, and shall take all necessary steps to resolve the complaint.

(d)    If no review body exists, the Council may conduct such compliance review as found necessary in order to determine the facts of the complaint, and obtain such other information relating to compliance with this chapter as the circumstances warrant.

(e)    Sponsors shall provide written notice of the compliant procedure set forth in this section to all applicants for apprenticeship and all apprentices.

### Cross References

This section cited in 34 Pa. Code § 81.61 (relating to conduct of compliance reviews).

## SANCTIONS

### § 81.81.  When sanctions will be imposed.

Where the Council, as a result of a compliance review or other reason, determines that there is reasonable cause to believe that an apprenticeship program is not operating in accordance with this chapter and voluntary corrective action has not been taken by the program sponsor, it will institute proceedings to deregister the program or refer the matter to the United States Department of Labor for referral to the United States Attorney General with recommendations for the institution of a court action by the United States Attorney General under Title VII of the Civil Rights Act of 1964 (42 U.S.C.A. § 2000e et seq.).

### Cross References

This section cited in 34 Pa. Code § 81.64 (relating to noncompliance with Federal or State requirements); and 34 Pa. Code § 81.82 (relating to deregistration procedures).

### § 81.82.  Deregistration procedures.

Deregistration proceedings shall be conducted in accordance with the following procedures:

(1)    The Council will notify the sponsor, in writing, that a determination of reasonable cause has been made under § 81.81 (relating to when sanctions will be imposed) and that the apprenticeship program may be deregistered unless, within 15 days of the receipt of the notice, the sponsor requests a hearing. The notification shall specify the facts on which the determination is based.

(2)    If, within 15 days of the receipt of the notice, the sponsor mails a request for a hearing, the Director will convene a hearing.

(3)    The Director will make a final decision on the basis of the record before him, which shall consist of the compliance review file and other evidence presented and, if a hearing was conducted, the proposed findings and recommended decision of the hearing officer. The Director may allow the sponsor a reasonable time to achieve voluntary corrective action. If the decision of the Director is that the apprenticeship program is not operating in accordance with this chapter, the apprenticeship program shall be deregistered. In each case in which deregistration is ordered, the Director may make public notice of the order and will notify the sponsor and the complainant, if any, and the United States Department of Labor. The Council shall inform any sponsor whose program has been deregistered that it may appeal such deregistration to the United States Department of Labor in accordance with the procedures of 29 CFR 30.15.

### Cross References

This section cited in 34 Pa. Code § 81.64 (relating to noncompliance with Federal or State requirements).

### § 81.83.  Conduct of hearings.

Hearings shall be conducted in accordance with the following procedures:

(1)    Within 10 days of his receipt of a request for a hearing, the Director shall designate a hearing officer. The hearing officer shall give reasonable notice of such hearing by registered mail, return receipt requested, to the sponsor. The notice shall include a reasonable time and place of hearing, a statement of the provisions of this chapter pursuant to which the hearing is to be held, and a concise statement of the matters pursuant to which the action forming the basis of the hearing is proposed to be taken.

(2)    The hearing officer will regulate the course of the hearing. Hearings will be informally conducted. Every party shall have the right to counsel, and a fair opportunity to present the party's case including such cross-examination as may be appropriate in the circumstances. Hearing officers shall

make their proposed findings and recommended decisions to the Director upon the basis of the record before them.

(3)    Paragraph (2) supersedes 1 Pa. Code §§ 35.189, 35.201 and 35.202 (relating to manner of conduct of hearings; certification of record without proposed report; and proceedings in which proposed reports are prepared).

### Cross References

This section cited in 34 Pa. Code § 81.64 (relating to noncompliance with Federal or State requirements).

### MISCELLANEOUS PROVISIONS

### § 81.91.  Special processing for compliance review or complaint processing.

If, in the judgment of the Council, a particular situation warrants and requires special processing and either expedited or extended determination, it will take the steps necessary to permit such determination if it finds that no person or party affected by such determination will be prejudiced by such special processing.

### § 81.92.  Reinstatement of program registration.

Any apprenticeship program deregistered pursuant to this chapter may be reinstated upon presentation of adequate evidence to the Director that the apprenticeship program is operating in accordance with this chapter.

### § 81.93.  Intimidatory or retaliatory acts.

Any intimidation, threat, coercion or retaliation by or with the approval of any sponsor against any person for the purpose of interfering with any right or privilege secured by Title VII of the Civil Rights Act of 1964 (42 U.S.C.A. § 2000e et seq.), Executive Order 11246, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this chapter shall be considered noncompliance with the equal opportunity standards of this chapter. The identity of complainants will be kept confidential except to the extent necessary to carry out the purpose of this chapter, including the conduct of any investigation, hearing or judicial proceeding arising therefrom.

### § 81.94.  Nondiscrimination.

The commitments contained in the affirmative action program of the sponsor are not intended and shall not be used to discriminate against any qualified applicant or apprentice on the basis of race, color, religion, national origin or sex.

### § 81.95.  Requests for exemptions.

(a)    Requests for exemption from any provision of this chapter shall be made in writing to the Director and shall contain a statement of reasons supporting the request. Exemptions may be granted for good cause.

(b)    The Council shall immediately notify the United States Department of Labor of any such exemptions granted affecting a substantial number of employes and the reasons therefor.

(c)    Subsection (a) supersedes 1 Pa. Code § 35.18 (relating to petitions for issuance, amendment, waiver or repeal of regulations).

## CHAPTER 83. WELFARE OF APPRENTICES

Sec.
83.1.     Purpose and scope.
83.2.     Definitions.
83.3.     Eligibility and procedures for Council registration.
83.4.     Criteria for apprenticeable occupations.
83.5.     Standards of apprenticeship.
83.6.     Apprenticeship agreements.
83.7.     Deregistration of Council registered programs.
83.8.     Hearings.
83.9.     Reinstatement of program registration.
83.10.    Complaints.
83.11.    Reciprocity.

### Authority

The provisions of this Chapter 83 issued under The Apprenticeship and Training Act (43 P. S. §§ 90.1–90.10), unless otherwise noted.

### Source

The provisions of this Chapter 83 adopted March 16, 1979, 9 Pa.B. 814, unless otherwise noted.

### § 83.1.   Purpose and scope.

(a)   The act authorizes and directs the Council to adopt rules and regulations to promote the furtherance of standards of apprenticeship and training to safeguard the welfare of apprentices, to bring together employers and labor for the establishment of programs of apprenticeship, and to cooperate with Federal and State agencies which carry on programs related to apprenticeship.

(b)   The purpose of this chapter is to set forth labor standards to safeguard the welfare of apprentices and to extend the application of such standards by prescribing policies and procedures concerning the registration of acceptable apprenticeship programs with the Department of Labor and Industry, Apprenticeship and Training Council. These labor standards and procedures cover the registration, cancellation and deregistration of apprenticeship programs and of apprenticeship agreements and matters relating thereto.

### § 83.2.   Definitions.

The following words and terms, when used in this chapter, have the following meanings, unless the context clearly indicates otherwise:

*Act*–The Pennsylvania Apprenticeship and Training Act (43 P.S. §§ 90.1–90.10).

*Apprentice*–A worker at least 16 years of age who is engaged in learning a recognized skilled trade, as defined in this chapter, under standards of apprenticeship fulfilling the requirements of § 83.5 (relating to standards of apprenticeship), including persons in the building construction industry using the tools of the trade except journeypersons.

*Apprenticeship agreement*–A written agreement between an apprentice and either his employer or an apprenticeship committee acting as agent for the employer, which agreement contains the terms and conditions of the employment and training of the apprentice.

*Apprenticeship program*–A written plan containing terms and conditions for the qualification, recruitment, selection, employment and training of apprentices, including such matters as the requirement for a written apprenticeship agreement.

*Cancellation*–Either the deregistration by the Council of an apprenticeship program at the request of the program sponsor, the termination of an apprenticeship agreement at the request of an apprentice or formal deregistration proceedings by the Council resulting in the termination of an apprenticeship agreement or program.

*Council*–The Pennsylvania, Apprenticeship and Training Council.

*Director*–The Director of the Pennsylvania Apprenticeship and Training Council.

*Employer*–A person or organization located or doing business in this Commonwealth that employs an apprentice on a work site, whether or not such a person or organization is a party to an apprenticeship agreement or program.

*Joint apprenticeship committee*–A committee composed of an equal number of representatives of employers and employes, which has been established by an employer or group of employers and a bona fide collective bargaining agent or agents to conduct, operate or administer an apprenticeship program and enter into apprenticeship agreements with apprentices selected for employment under the particular program.

*Non-joint apprenticeship sponsor*–An apprenticeship program sponsor in which a bona fide collective bargaining agent does not participate or a union sponsored program in which the employer does not participate; it includes an individual non-agent, an apprenticeship program sponsored by one employer without the participation of a union; and a group non-joint sponsor, an apprenticeship program sponsored by two or more employers without the participation of a union.

*Registration of an apprenticeship agreement*–The acceptance and recording thereof by the Council as evidence of the participation of the apprentice in a particular registered apprenticeship program.

*Registration of an apprenticeship program*–The acceptance and recording of such program by the Pennsylvania Apprenticeship and Training Council as meeting the basic standards and requirements of the Council for approval of such program. Approval is evidenced by a Certificate of Registration.

*Related instruction*–An organized and systematic form of instruction designed to provide the apprentice with knowledge of the theoretical and technical subjects related to his or her trade.

*Resumption*–The reinstatement of an apprentice to active status following suspension.

*Sponsor*–A person, association, committee or organization in whose name or title the apprenticeship program is or is to be registered, irrespective of whether such entity is an employer.

*Suspension*–Layoff of an apprentice due to lack of work, military leave or extended sick leave.

## § 83.3.  Eligibility and procedure for Council registration.

(a)  No apprenticeship program or agreement shall be eligible for Council registration unless the following apply:

(1)  It is in conformity with the requirements of the chapter, and the training is in an apprenticeable occupation having the characteristics set forth in § 83.4 (relating to criteria for apprenticeable occupations).

(2)  It is in conformity with the requirements of Chapter 81 (relating to equal opportunity in apprenticeship programs).

(b)    Apprentices shall be individually registered under a registered program. Such registration shall be effected by submitting three copies of each apprenticeship agreement to the Council for approval. The Council will promptly determine whether the agreement conforms with the established standards. If the agreement does not so conform, the Council will authorize the Director to return the agreement to the Sponsor so that it can be modified or changed by the parties to the agreement so that it is in conformity.

(c)    The Council shall be promptly notified by the Sponsor of the cancellation or suspension of any apprenticeship agreements, with cause for same, and of apprenticeship completions.

(d)    Upon receipt of a request for registration of any apprenticeship program, the Council will promptly determine whether the standards of apprenticeship conform to the requirements of the act and this chapter, whether the proposed training is in an apprenticeable occupation, and whether the program is in conformity with the requirements of the State Plan for Equal Employment in Apprenticeship. If the program is approved, the Council will authorize the Director to register the program and issue a Certificate of Registration as evidence of registration.

(e)    Modifications or changes to registered or certified programs shall be promptly submitted in writing to the Director and, if approved by the Council, shall be recorded and acknowledged as an amendment to the program.

(f)    Documents and data required by this chapter in connection with a request for registration of an apprenticeship program shall be submitted in triplicate.

(g)    Under a program proposed for registration by an employer or employers' association, where the standards, collective bargaining agreement or other instrument provide for participation by a union in any manner in the operation of the substantive matters of the apprenticeship program, and such participation is exercised, written acknowledgement of union agreement or "no objection" to the registration is required. Where no such participation is evidenced and practiced, the employer or employers' association shall simultaneously furnish to the union local, if any, which is the recognized or certified collective bargaining agent of the employes to be trained, a copy of its application for registration and of the apprenticeship program. In addition, upon receipt of the application and apprenticeship program, the Director shall promptly send by certified mail to such local union, another copy of the application and of the apprenticeship program together with notice that union comments will be accepted for 30 days after the date of the Director's transmittal.

(h)    Where the employes to be trained have no collective bargaining agent, an apprenticeship program may be proposed for registration by an employer or group of employers.

## § 83.4.    Criteria for apprenticeable occupations.

An apprenticeable occupation is a skilled trade which possesses all of the following characteristics:

(1)    It is customarily learned in a practical way through a structured, systematic program of on-the-job, supervised training.

(2)    It is clearly identified and commonly recognized throughout an industry.

(3)    It involves manual, mechanical or technical skills and knowledge which require a minimum of 2,000 hours of on-the-job work experience, not including the hours spent on related instruction.

(4)    It requires related instruction to supplement on-the-job training. Such instruction may be given in a classroom or through correspondence courses.

(5)    It involves the development of skill which is not restricted in application to products of any one company, but which is broad enough to be applied in like occupations throughout an industry.

**Cross References**

This section cited in 34 Pa. Code § 83.3 (relating to eligibility and procedure for Council registration.

## § 83.5.    Standards of apprenticeship.

(a)    An apprenticeship program, to be eligible for registration by the Council, shall be an organized, written plan embodying the term and conditions of employment, training and supervision of one or more apprentices in an apprenticeable occupation, as defined in this chapter, and subscribed to by a sponsor who has undertaken to carry out the apprentice training program.

(b)    The standards shall contain provisions concerning the following:

(1)    The employment and training of the apprentice in a skilled trade.

(2)    A term of apprenticeship, not less than one year or 2,000 hours, consistent with training requirements as established by industry practice.

(3)    An outline of work processes in which the apprentice will receive supervised work experience and training on-the-job, and the allocation of the approximate time to be spent in each major process.

(4)    Provision for organized related and supplemental instruction in technical subjects related to the trade. A minimum of 144 hours for each year of apprenticeship is recommended. Such instruction may be given in a classroom, through trade, industrial or approved correspondence courses of equivalent value.

(5)    A progressively increasing schedule of wages to be paid the apprentice. Wage rates shall be determined as follows: Where apprentice wage rates are established by collective bargaining agreement, they shall be accepted by the Council for apprentices covered by such agreements. Where wage rates are not established by collective bargaining agreements:

(i)    The progressively increasing schedule of apprentice wage rates shall be expressed in terms of percentages of the journeyperson hourly rate.

(ii)    Such rates shall represent the minimum for each incremental period of apprenticeship.

(iii)    The hourly rate for a journeyperson for each trade included in a registered program shall be the average journeyperson hourly rate applicable to the employer and shall be stated in terms of dollars and cents.

(iv)    The entry wage shall not be less than the State minimum wage, where applicable, unless a higher wage is required by other applicable Federal law, State law or respective regulations.

(v)    Modification of wage progression or journeyperson wage shall be promptly reported to the Council.

(6)    Periodic review and evaluation of the progress of the apprentice in job performance and related instruction and the maintenance of appropriate progress records.

(7)    The ratio of apprentices to journeymen should be consistent with proper supervision, training, and continuity of employment or applicable provisions in collective bargaining agreements. The standard Pennsylvania Apprenticeship and Training Council ratio for Non-Joint programs shall be one apprentice employed for the first, second, third and fourth journeymen regularly employed; two ap-

prentices for the fifth, sixth, seventh, eighth and ninth journeymen regularly employed; three apprentices for the tenth, eleventh, twelfth, thirteenth and fourteenth journeymen regularly employed, and so on in units of five journeymen regularly employed. Exemptions to the Pennsylvania Apprenticeship and Training Council's standard ratios may be granted upon written request and approval of the Council.

(8)    A probationary period reasonable in relation to the full apprenticeship term, with full credit for such period toward completion of apprenticeship.

(9)    Adequate and safe equipment facilities for training and supervision, and safety training for apprentices on the job and in related instruction.

(10)    The required minimum qualifications for persons entering an apprenticeship program.

(11)    The placement of an apprentice under an apprenticeship agreement. The agreement shall directly, or by reference, incorporate the standards of the program as part of the agreement.

(12)    The granting of advanced standing or credit for previously acquired experience, training, or skills for all applicants equally, with commensurate wages for any progression step so granted.

(13)    Transfer of employer's training obligation to another employer when the employer is unable to fulfill his obligation under the apprenticeship agreement, with consent of the apprentice and apprenticeship committee or program sponsor, with full credit to the apprentice for satisfactory time and training earned.

(14)    Assurance of qualified training personnel and adequate supervision on the job.

(15)    Recognition for successful completion of apprenticeship evidenced by an appropriate certificate.

(16)    Identification of the registration agency.

(17)    Provision for the registration, cancellation and deregistration of the program and requirement for the prompt submission of any modification or amendment thereto.

(18)    Provision for registration of apprenticeship agreements, notice to the Council of persons who have successfully completed apprenticeship programs, and notice of cancellations and suspensions of apprenticeship agreements and cause therefore.

(19)    Authority for the termination of an apprenticeship agreement during the probationary period by either party without stated cause.

(20)    A statement that the program will be conducted, operated and administered in conformity with the Pennsylvania State Plan for Equal Employment Opportunity.

(21)    Name and address of the appropriate authority under the program to receive, process and make disposition of complaints.

(22)    Recording and maintenance of records concerning apprenticeship as may be required by the Council and applicable law.

## Notes of Decisions

ERISA does not preempt Pennsylvania's prevailing wage and apprenticeship requirements insofar as they restrict the payment of apprenticeship wages to apprentices registered in approved programs. *Ferguson Electric Co. v. Foley*, 115 F.3d 237 (3d Cir. 1997).

**Cross References**

This section cited in 34 Pa. Code § 83.2 (relating to definitions).

## § 83.6.    Apprenticeship agreements.

The Apprenticeship Agreement shall contain the following provisions:

(1)    Names and signatures of the contracting parties, apprentice and the program sponsor or employer, and the signature of a parent or guardian if the apprentice is a minor.

(2)    The date of birth of the apprentice.

(3)    Name and address of the program sponsor and registration agency.

(4)    A statement of the trade or craft in which the apprentice is to be trained, and the beginning date and term of apprenticeship.

(5)    A statement showing the number of hours to be spent by the apprentice in work on the job and the number of hours to be spent in related and supplemental instruction which is recommended to be not less than 144 hours per year.

(6)    A statement setting forth a schedule of the work processes in the trade or industry divisions in which the apprentice is to be trained and the approximate time to be spent at each process.

(7)    A statement of the graduated scale of wages to be paid the apprentice and whether or not the required school time shall be compensated.

(8)    A statement providing for a specific period of probation during which the apprenticeship agreement may be terminated by either party to the agreement upon written notice to the registration agency.

(9)    A statement providing that, after the probationary period, the agreement may be cancelled at the request of the apprentice, or may be suspended, cancelled, or terminated by the sponsor for good cause, with due notice to the apprentice and a reasonable opportunity for corrective action, and with written notice to the apprentice and to the Council of the final action taken.

(10)    A reference incorporating as part of the agreement the standards of the apprenticeship program as it exists on the date of the agreement and as it may be amended during the period of the agreement.

(11)    A statement that the apprentice will be accorded equal opportunity in all phases of apprenticeship employment and training without discrimination because of race, color, religion, national origin, sex and nonjob-related disability.

(12)    Name and address of the Pennsylvania Apprenticeship and Training Council as the agency to receive, process and make disposition of controversies or differences arising out of the apprenticeship agreement when the controversies or differences cannot be adjusted locally or resolved in accordance with the established trade procedure or applicable collective bargaining provisions.

## § 83.7.    Deregistration of Council-registered programs.

Deregistration of a program may be effected upon the voluntary action of the sponsor by a request for cancellation of the registration or upon reasonable cause by the Council instituting formal deregistration proceedings in accordance with the provisions of this chapter.

(1)  *Request by sponsor.* Upon a written request by the sponsor, the Council may cancel the registration of an apprenticeship program by written acknowledgment of the request stating, but not limited to, the following matters:

    (i)  That the registration is cancelled at the request of the sponsor and giving the effective date of the cancellation.

    (ii)  That within 15 work days of the date of the acknowledgment, the sponsor shall notify apprentices of the cancellation and the effective date, and that the cancellation shall automatically deprive the apprentice of individual registration.

(2)  *Formal deregistration for reasonable cause.* Deregistration proceedings may be undertaken when the apprenticeship program is not conducted, operated and administered in accordance with the registered standards or the requirements of this chapter, except that deregistration proceedings for violation of equal opportunity requirements shall be processed under Chapter 81 (relating to equal opportunity in apprenticeship programs).

(3)  *Nonconformity with regulations.* If it appears the program is not being operated in accordance with the registered standards or the requirements of the act or these regulations, the Director will so notify the program sponsor in writing.

(4)  *Notice.* The notice shall be sent by registered or certified mail, with return receipt requested, state the shortcomings and the remedy required, and that a determination of reasonable cause for deregistration will be made unless corrective action is effected within 30 days.

(5)  *Extensions.* Upon request by the sponsor for good cause, the 30 day period may be extended for up to an additional 30 day period. During the period for correction, the sponsor shall be assisted in every reasonable way to achieve conformity.

(6)  *Failure to correct.* If the required corrective action is not effected within the allotted time, the director shall send a notice to the sponsor by registered or certified mail, return receipt requested, stating the following:

    (i)  That the notice is being sent under this section.

    (ii)  That certain stated deficiencies were called to the sponsor's attention and remedial measures requested, with dates of the occasions and letters, and that the sponsor has failed or refused corrections.

    (iii)  That based upon the stated deficiencies and failure of remedial action, a determination of reasonable cause has been made and that the program may be deregistered unless, within 15 days of the receipt of this notice, the sponsor requests a hearing.

    (iv)  That if a hearing is not requested by the sponsor, the entire matter shall be submitted to the Council for a decision on the record with respect to deregistration.

(7)  *Hearing.* If the sponsor requests a hearing, the Council shall convene a hearing in accordance with § 83.8 (relating to hearings) and shall make a final decision on the basis of the record before it.

(8)  *Voluntary corrective action.* In its discretion, the Council may allow the sponsor a reasonable time to achieve voluntary corrective action. If the decision is that the apprenticeship program is not operating in accordance with the registered standards of requirements of this chapter, the apprenticeship program shall be deregistered. In each case where deregistration is ordered, the Council will notify the sponsor.

(9)  *Deregistration.* Every order of deregistration shall contain a provision that the sponsor

shall, within 15 work days of the effective date of the order, notify all registered apprentices of the deregistration of the program, the effective date and that the action automatically deprives the apprentice of his individual registration.

### Source

The provisions of this § 83.7 corrected March 31, 1995, effective September 29, 1979, 25 Pa.B. 1166. Immediately preceding text appears at serial pages (40691) to (40693).

### Cross References

This section cited in 34 Pa. Code § 83.8 (relating to hearings).

## § 83.8.  Hearings.

(a)    Within 10 days of receipt of a request for a hearing under § 83.7 (relating to deregistration of Council registered programs), the Council will give reasonable notice of the hearing by registered mail, return receipt requested, to the appropriate sponsor. The notice shall include the following provisions:

(1)    A reasonable time and place of hearing.

(2)    A statement of the provisions of this chapter under which the hearing is to be held.

(3)    A concise statement of the matters under which the action forming the basis of the hearing is proposed to be taken.

(b)    The Chairman of the Council will act as Hearing Officer. The Hearing Officer will regulate the course of the hearing. Hearings shall be informally conducted. Every party shall have the right to counsel and a fair opportunity to present its case, including the cross-examination as may be appropriate in the circumstances. The Council will make its findings and final decisions on the basis of the record before it.

### Cross References

This section cited in 34 Pa. Code § 83.7 (relating to deregistration of Council–registered programs).

## § 83.9.    Reinstatement of program registration.

An apprenticeship program deregistered under the act or this chapter may be reinstated upon presentation of adequate evidence that the apprenticeship program is operating in accordance with the act and this chapter. The evidence shall be presented to the Council if the sponsor had not requested a hearing or an order of deregistration was entered pursuant to a hearing.

## § 83.10.  Complaints.

(a)    A controversy or difference arising under an apprenticeship agreement which cannot be resolved locally or which is not covered by a collective bargaining agreement may be submitted by an apprentice or authorized representative to the Council for review. Matters covered by a collective bargaining agreement shall be submitted and processed in accordance with the procedures therein provided.

(b)    The complaint shall be in writing, signed by the complainant and submitted by the apprentice or an authorized representative within 60 days of receipt of the final local decision. The complaint shall set forth the specific problem, including relevant facts and circumstances. Copies of pertinent documents and correspondence shall accompany the complaint.

(c)    The Council will render an opinion within 90 days after receipt of the complaint based upon the investigation of the matters submitted as may be found necessary and the record before it. During the 90

day period, the Director will make reasonable efforts to effect a satisfactory resolution between the parties involved. If so resolved, the parties will be notified that the case is closed. When an opinion is rendered, copies will be sent to interested parties.

(d)     Nothing in this section may operate to prohibit the apprentice from electing to resort to any form or procedure, other than that of the registration agency, that may be available for the disposition of the complaint, or to institute appropriate court proceedings.

(e)     This section does not apply to a complaint concerning discrimination or other equal opportunity matters. Those complaints shall be submitted and resolved under Chapter 81 (relating to equal opportunity in apprenticeship programs).

## § 83.11.  Reciprocity.

Apprenticeship programs and agreements shall be registered under this chapter upon request of the sponsor with proof of registration elsewhere when they comply with the following:

(1)     They do not include the building or construction industry.

(2)     They have a joint apprenticeship committee on a multistate basis.

(3)     They are registered with either the Bureau of Apprenticeship and Training, United States Department of Labor or any other "recognized" State Apprenticeship Agency or Council under 29 CFR 29.12.

# EXHIBIT R

**Carmichael Linda (DOJ)**

| | |
|---|---|
| **From:** | Victor Lepore [vlepore@dlt.ri.gov] |
| **Sent:** | Friday, May 23, 2008 11:54 AM |
| **To:** | Carmichael Linda (DOJ) |
| **Cc:** | Christine Grieco |
| **Subject:** | RI sponsor question |

Ms. Carmichael,
 In response to your question, "Does Rhode Island have a requirement that their apprenticeship sponsors have a place of business in Rhode Island?" the answer is presently no. However, an amendment to the Apprenticeship Program's rules and regulations will require a sponsor to have a physical presence within the state. This change to the rules has been provided to the RI Secretary of State's office to be filed pending approval. If you require further assistance, please feel free to contact me personally at the telephone number noted below.

Victor


Victor Lepore
RI Department of Labor & Training
Division of Workforce Regulation & Safety
**Supervisor of Apprenticeship**
1511 Pontiac Avenue
P.O. Box 20390
Cranston, RI
Phone: (401) 462-8536
Fax:    (401) 462-8530

**A public hearing will be held on Tuesday, November 20, 2007 at 9:30 a.m.
in Building 73, 1st Floor, Main Conference Room.**

**RULES AND REGULATIONS RELATING TO LABOR STANDARDS FOR THE
REGISTRATION OF APPRENTICESHIP PROGRAMS UNDER TITLE 28, CHAPTER 45**

## APPRENTICESHIP PROGRAMS IN TRADE & INDUSTRY

**Section 1. Purpose and Scope -**

(a) Title 28, Chapter 45, authorizes the Rhode Island Apprenticeship Council to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices and to extend the application of such standards by requiring the inclusion thereof in contracts of apprenticeship.

(b) The purpose of this regulation is to set forth labor standards to safeguard the welfare of apprentices, and to extend the application of such standards by prescribing rules and regulations concerning the registration of acceptable apprenticeship programs. These labor standards, rules and regulations cover the registration, termination and deregistration of apprenticeship programs and of apprenticeship agreements and matters relating thereto.

(c) The provisions of this regulation shall apply to a person, firm, corporation or craft only after such person, firm, corporation or craft has voluntarily elected to conform ~~with~~ <u>to</u> its provisions.

**Section 2. Definitions -**

As used in this regulation:

a. "Council" means the Rhode Island Apprenticeship and Training Council <u>approved and recognized by the Bureau of Apprenticeship and Training, United States Department of Labor.</u>

b. "Apprentice" means a person participating, through employment, in an approved schedule requiring not less than 2,000 hours of on-the-job work experience supplemented by related instruction and who is a party of an apprenticeship agreement registered with the Council.

c. "Apprenticeship Agreement" means a written agreement which conforms to standards established under Title 28, Chapter 45 and this regulation and is entered into between an apprentice and either (1) an employer, (2) an association of employers, (3) an organization of employees, or (4) a joint committee representing employers and employees.

d. "Apprenticeship Program" means a plan containing all terms and conditions for the qualification, recruitment, selection, employment and training of apprentices, including such matters as the requirements for a written apprenticeship agreement.

e. "Apprenticeship Standard" means the written document which sets forth the minimum labor standards required by law for training apprentices in a specified industry, area or plant. By reference, it is a part of the apprenticeship agreement. There are two basic types of standards - one providing for joint employer-union participation in the program and the second, referred to as unilateral standards, where responsibility for the apprenticeship is assumed by either management or organized labor, but not both. Normally, unilateral programs are sponsored by single employers.

f. "Sponsor" means any person, <u>firm,</u> association, committee, ~~or~~ organization <u>or corporation that is principally located within the State of Rhode Island with a recognized capability to operate</u> ~~operating~~ an apprenticeship program and in whose name the program is approved and registered.  .

g. "Employer" means any person or organization employing an apprentice whether or not such person or organization is a party to an apprenticeship agreement with the apprentice.

h. "Apprenticeship Committee" means those persons designated by the sponsor to act for it in the administration of the program. A committee may be "joint", i.e., it is composed of an equal number of representatives of the employer(s) and of the employees represented by a bona fide collective bargaining agent(s) and has been established to conduct, operate, or administer an apprenticeship program and enter into apprenticeship agreements with apprentices. A committee may be "unilateral" or "non-joint" and shall mean a program sponsor in which a bona fide collective bargaining agent is not a participant; it includes an individual non-joint sponsor ~~(apprenticeship program sponsored by one employer without the participation of a union)~~ and a group non-joint sponsor ~~(apprenticeship program sponsored by two or more employers without the participation of a union)~~.

i. "Related Instruction" means an organized and systematic form of instruction designated to provide the apprentice with knowledge of the theoretical and technical subjects related to his/her trade.

j. "Registration of an Apprenticeship Program" means the acceptance and recording of such program by the Council as meeting the basic standards and requirements of the Council for approval of such program. Approval is evidenced by a certificate of registration or other written indicia.

k. "Registration of an Apprenticeship Agreement" means the acceptance and recording thereof by the Council as evidence of the participation of the apprentice in a particular registered apprenticeship program.

## Section 3. Eligibility and Procedure for Council Registration -

a. No apprenticeship program or agreement shall be eligible for Council registration unless it is in conformity with the requirements of Title 28, Chapter 45 of this regulation, and the training is in an apprenticeable occupation requiring not less than 2,000 hours of on-job-work experience and the characteristics set forth in Title 28, Chapter 45.

b. Apprentices must be individually registered under a registered program. Such registration shall be effected by filing copies of each apprenticeship agreement with the Council. Registration shall be reserved for those desiring to learn ~~a trade~~ <u>an occupation</u> through

reasonably continuous employment. Agreements shall not be registered for persons desiring only interim work or employed on a substantially shorter work week than is prevailing in the industry. This, however, does not apply to students pursuing a course of study in the same ~~trade~~ occupation or closely related to the ~~trade~~ occupation for which application is being made for registration.

c. The Council shall be notified promptly of the termination or suspension of any apprenticeship agreement, with cause for same, and of apprenticeship completions.

d. Approved apprenticeship programs shall be accorded registration, evidenced by a certificate of registration.

e. Any modification(s) or change(s) to registered standards shall be promptly submitted to the Council, and if approved, shall be recorded and acknowledged as a revision of such standards.

f. The request for registration, together with all documents and data required by Title 28, Chapter 45 and this regulation, shall be submitted to the Council.

g. Under a program proposed for registration by an employer or employers' association, where the standards, collective bargaining agreement or other instrument, provides for participation by a union in any matter in the operation of the substantive matters of the apprenticeship program, and such participation is exercised, written acknowledgement of union agreement or "no objection" to the registration is required. Where no such participation is evidenced and practiced, the employer or employers' association shall simultaneously furnish to the union, if any, which is the collective bargaining agent of the employees to be trained, a copy of its application for registration and of the apprenticeship program. The Council shall provide a reasonable time period of not less than 30 days nor more than 60 days for receipt of union comments, if any, before final action on the application for registration and/or approval.

h. Where the employees to be trained have no collective bargaining agent, an apprenticeship program may be proposed for registration by an employer or group of employers.

i. If the sponsor is involved in any abnormal labor condition such as a strike, lockout, or other similar condition, the application for an apprenticeship program may be withheld until such issue is resolved.

j. If it should be determined by the Council that a sponsor is in violation of any Federal or State Labor laws or rules and regulations affecting registration of programs, the application for an apprenticeship program may be withheld until such issues are resolved.

k. If the Council determines that a registered sponsor has violated any Federal or State labor program requirement, the Council may suspend the apprenticeship registration for a six (6) month period after notice and hearing.

## Section 4. Criteria for Apprenticeable Occupations –

An apprenticeable occupation ~~is a skilled trade which~~ shall possesses all of the following

characteristics:

a. Is customarily learned in a practical way through a structured systematic program on on-the-job supervised training;

b. It is clearly identified and commonly recognized throughout an industry;

c. It involves manual, mechanical or technical skills and knowledge which require a minimum number of hours as required by statute of on-the-job work experience; and

d. It requires related instruction to supplement the on-the-job training.

## Section 5. Standards of Apprenticeship –

An apprenticeship program to be eligible for registration by the Council shall conform to the following standards:

a. The program is an organized, written plan embodying the terms and conditions of employment, training and supervision of one or more apprentices in the apprenticeable occupation, as defined in Title 28, Chapter 45, and this regulation, and this regulation, and subscribed to by a sponsor who has undertaken to carry out the apprentice training program.

b. The following standards are prescribed for an apprenticeship program:

1. A statement of the <u>occupation</u>, trade or craft to be taught and the required hours for completion of apprenticeship which shall not be less than the statutory minimum number of hours of reasonably continuous employment;

2. An outline of work processes in which the apprentice will receive supervised work experience and training on-the-job, and the allocation of the approximate time to be spent in each major process;

3. A statement of the number of hours to be spent in related instruction which shall not be less than the statutory minimum number of hours per year, provided that the Council may, in the best interest of apprenticeship, reduce the hours of related <u>classroom</u> instruction of which instruction may be given in a classroom through <u>of</u> trade or industrial courses, or by correspondence courses of equivalent value, or other forms of self-study approved by the Council; <u>one hundred and forty-four (144) hours for each year of apprenticeship is recommended;</u>

4. A statement that apprentices shall be not less than sixteen years of age, with the exception of a higher age requirement which the Council has determined applicable in accordance with the State and Federal Child Labor Laws;

5. A statement of the progressively increasing scale of wages to be paid the apprentice consistent with the skill acquired, the entry wage to be not less than the minimum wage prescribed by the Federal and State Labor Standards Acts, where applicable, unless a higher wage is required by other applicable Federal law, State law, respective regulations, or by

collective bargaining agreement;

6. A provision for probationary period reasonable in relation to the full apprenticeship term, with full credit given for such period toward completion of apprenticeship;

7. A provision that during the period of probation, the Council shall be directed to terminate an apprenticeship agreement at the request in writing of any party thereto;

8. A provision that after the probationary period, the Council shall be empowered to terminate an apprenticeship agreement upon agreement of the parties thereto, or for good cause on the Council's own motion after giving all parties notice and opportunity to be heard;

9. Provision that the services of the Council may be utilized for consultation regarding the settlement of differences arising out of apprenticeship agreement and where the differences cannot be adjusted locally, or in accordance with the established ~~trade~~ occupation procedure, and any such differences which cannot be amicably settled by the parties may be submitted to the Council for final decision;

10. Provision for the numeric ration of apprentice to journeymen consistent with proper supervision, training, safety, and reasonably continuity of employment, and applicable provisions in collective bargaining agreements. ~~, in relation to which it is recommended that a minimum ratio of no more than one apprentice for each journeymen regularly employed by a participating employer in each apprenticeable occupation be established;~~ The ratio of apprentice to journeymen is set forth in Appendix A attached hereto and made a part herein and is applicable to all participating employers in each apprenticeable occupation;

11. Provision for transfer of employer's training obligation when the employer is unable to fulfill the obligation under the apprenticeship agreement to another employer under the same program with the consent of the apprentice and apprenticeship committee or program sponsor, with full credit to the apprentice for satisfactory time and training earned;

12. Provision for minimum qualifications required by a sponsor for persons entering the apprenticeship program;

13. Provision for granting of an advanced standing or credit for previously acquired experience, training, or skills for all applicants equally, with commensurate wages for any progression step so granted;

14. A provision that the employer shall instruct the apprentice in safe and healthful work practices and shall insure that the apprentice is trained in facilities and other environments that are in compliance with either the occupational safety and health standards promulgated by the Secretary of Labor under Public Law 91-596, or State standards that have been found to be at least as effective as the Federal standards; all construction apprentices shall comply with RIGL § 28-20-35 (OSHA);

15. A provision for the placement of an apprentice under a written apprenticeship agreement, which shall directly, or by reference, incorporate the standards of the program as part of this agreement;

16. A provision for periodic review and evaluation of the apprentice's progress in job

performance and in related instruction, and the maintenance of appropriate progress records;

17. A provision of recognition for successful completion of apprenticeship evidenced by an appropriate certificate;

18. Identification of the registration agency;

19. A statement that the regular work day or work week for apprentices shall not be greater than those of the journeymen;

20. Provision for the registration, cancellation and deregistration of the program, and requirement for the prompt submission of any modification or revision thereto;

21. Provision for registration of apprenticeship agreements and revisions, notice the Council of persons who have successfully completed apprenticeship programs, and notice of terminations and suspensions of apprenticeship agreements and causes therefore;

22. A statement of how the committee is to be organized and a statement of the functions of the committee are required if the program sponsor is a joint apprenticeship committee;

23. A statement containing the equal opportunity pledge prescribed as follows: "The recruitment, selection, employment, and training of apprentices during their apprenticeship, shall be without discrimination because of race, sex, age, religion, color, ancestry, physical handicap, marital status, or arrest and court record":

24. Name and address of the appropriate authority under the program to receive, process and make disposition of complaints;

25. Provision for a participating employer's agreement; and, all apprenticeship standards must contain articles to comply with Federal laws, regulations and rules pertaining to apprenticeship;

26. All apprenticeship standards must contain articles to comply with Federal laws, regulations and rules pertaining to apprenticeship Records of the apprentice's work experience and related class instruction shall be kept by the sponsor. The apprentice shall submit a weekly report to the sponsor showing work completed and classes attended and those shall be noted upon the Master Record Card Sheet under the control of the sponsor. All records pertaining to apprenticeship must be retained a minimum of five (5) years;

27. The estimated completion date affixed to the apprentice agreement may be extended not to exceed two (2) years. Request for an extension beyond two years will be made in writing to the Council; and,

28. Upon satisfactory completion of the on the job training (OJT) and the required hours of related and supplemental instructions have been met the sponsor shall recommend to the Council that a State Certificate of Completion be awarded. SAC applications will be accompanied by proof of OJT and related training;

**Section 6. Apprenticeship Agreement –**

The apprenticeship agreement shall contain explicitly or by reference:

a. Name and signature of the contracting parties (apprentice, and the program sponsor or employer), and the signature of a parent or guardian if the apprentice is a minor;

b. The date of birth of apprentice;

c. Name and address of the program sponsor and registration agency;

d. A statement of the occupation, trade or craft in which the apprentice is to be trained and the beginning date and term of apprenticeship;

e. A statement showing:

1. The number of hours to be spent by the apprentice in work on the job; and

2. The number of hours to be spent in related and supplemental instruction;

f. A statement setting forth a schedule of the work processes in the trade occupation in which the apprentice is to be trained and the approximate time to be spent at each process;

g. A statement of the graduated scale of wages to be paid the apprentice and whether or not the required school time shall be compensated;

h. Statements providing:

1. For a specific period of probation during which the apprenticeship agreement may be terminated by either party to the agreement upon notice to the Council; and

2. That, after the probationary period, the agreement may be terminated at the request of the apprentice, or may be suspended, or terminated by the sponsor, for good cause, with due notice to the apprentice and a reasonable opportunity for corrective action, and with written notice to the apprentice and to the Council of the final action taken;

i. A statement that the apprentice will be accorded equal opportunity in all phases of apprenticeship employment and training, without discrimination because of race, color, religion, ancestry, sex, age, physical handicap, marital status, or court and arrest record; and

j. Name and address of the appropriate authority, if any, designated under the program to receive, process and make disposition of controversies or differences arising out of the apprenticeship agreement; any such controversies and differences which cannot be amicably settled by the parties may be submitted to the Council for final decision.

**Section 7. Deregistration of Council-Registered Program –**

Deregistration of a program may be effected upon the voluntary action of the sponsor by a

request for cancellation of the registration or, upon reasonable cause, by the Council, instituting formal deregistration proceedings in accordance with the provisions of this regulation.

a. REQUEST BY SPONSOR. The Council may cancel the registration of an apprenticeship program by a written acknowledgement of such request stating, but not limited to, the following:

1. The registration is cancelled at sponsor's request, and giving the effective date of such cancellation; and

2. That, within 15 workdays of the date of the acknowledgement, the sponsor must notify all apprentices, of such cancellation and the effective date; that such cancellation automatically deprives the apprentice of his/her individual registration.

b. Deregistration by Council

1. Deregistration proceedings may be undertaken when the apprenticeship program is not conducted, operated, or administered in accordance with the registered standards or the requirements of Title 28, Chapter 45, or this regulation.

2. Where it appears the program is not being operated in accordance with the registered standards or with requirements of Title 28, Chapter 45, or this regulation, the Council shall so notify the program in writing.

3. The notice shall be sent by registered or certified mail, return receipt requested, shall state the deficiency(s) and remedy(s) required and shall state that the program will be deregistered for cause unless the corrective action is taken within 30 days.

4. Upon request by sponsor, the 30 day period may be extended for up to an additional 30 day period. During the period for correction the sponsor may be assisted in every reasonable way by the Council.

5. If the required action is not taken within the allotted time, the Council shall send a notice to the sponsor by registered or certified mail, return receipt requested, stating the following:

I. This notice is sent pursuant to this subsection;

II. That certain deficiencies were called to the sponsor's attention and remedial actions requested;

III. Based upon the stated cause, the program will be deregistered, unless within 15 workdays of receipt of this notice, the sponsor requests a hearing; and

IV. If a hearing is not requested by the sponsor, the program will be automatically deregistered.

6. If the sponsor requests a hearing, the Council shall convene a hearing in accordance with Section 8 of these regulations.

7. In its discretion, the Council may allow the sponsor a reasonable time to achieve voluntary corrective action. If the Council's decision is that the apprenticeship program is not operating in accordance with the registered standards or requirements of Title 28, Chapter 45, and this regulation, the apprenticeship program shall be deregistered. In each case in which deregistration is ordered, the Council shall notify the sponsor.

8. Every order of deregistration shall contain a provision that the sponsor shall, within 15 workdays of the effective date of the order, notify all registered apprentices of the deregistration of the program, the effective date, and that such action automatically deprives the apprentice of his/her individual registration.

## Section 8. Hearings -

a. Within 10 workdays of receipt of a request for a hearing, reasonable notice of such hearing shall be registered mail, return receipt requested, to the appropriate sponsor. Such notice shall include:

1. A reasonable time and place of hearing;

2. A statement of the provisions of this regulation pursuant to which the hearing is to be held; and

3. A concise statement of the matters pursuant to which the action forming the basis of the hearing is proposed to be taken.

b. The Chairman of the Council shall regulate the course of the hearing. Hearings shall be informally conducted. Every party shall have the right to counsel, and a fair opportunity to present his/her case including such cross-examination as may be appropriate in the circumstances. The Council shall render final decisions based on their findings.

## Section 9. Reinstatement of Program Registration -

Any apprenticeship program deregistered pursuant to Title 28, Chapter 45, and this regulation, may be reinstated upon presentation of adequate evidence that the apprenticeship program is operating in accordance with Title 28, Chapter 45, and this regulation. Such evidence shall be presented to the Council, if an order of deregistration were entered pursuant to a hearing.

## Section 10. Complaints -

(a) The section is not applicable to any complaint concerning discrimination or other equal opportunity matters; all such complaints shall be submitted, processed, and resolved in accordance with State or Federal Equal Opportunity laws.

(b) Any controversy or differences arising under an apprenticeship agreement which cannot be resolved locally, or which is not covered by a collective bargaining agreement, may be submitted by an apprentice or his/her authorized representative to the Council for review.

Matters covered by a collective bargaining agreement are not subject to such review.

(c) The complaint, in writing, and signed by the complainant, or authorized representative, shall be submitted within 60 days of the final local decision. It shall set forth the specific matter(s) complained of, together with all relevant facts and circumstances. Copies of all pertinent documents and correspondence shall accompany the complaint.

(d) The Council shall render an opinion within 90 days after receipt of the complaint, based upon such investigation of the matters submitted as may be found necessary, and the record before it. During the 90 day period, the Council shall make reasonable efforts to effect a satisfactory resolution between the parties involved. If so resolved, the parties shall be notified that the case is closed. Where a decision is rendered, copies of the decision shall be sent to all interested parties which shall be final.

### Section 11. ~~Reciprocity~~ Fees

~~Where there exists similar Standards between the Rhode Island Apprenticeship Council and other states and the Federal Government, reciprocity shall be exercised by the Rhode Island Council and recognition be given upon presentation of appropriate information.~~

Apprenticeship programs shall comply with RIGL § § 28-45-9.1 and 28-45-13.1.

### Section 12. EEO Plan-

Apprenticeship programs shall comply with RIGL § 28-45-14.

### Section 13. Reciprocity

1. Apprenticeship programs shall comply with RIGL § 28-45-16.

2. Licensed journeypersons from other states shall not be permitted to register as apprentices in the same occupation, trade or craft with the Council.

Apprenticeship RIGL 28-45-1 through 28-45-17

# APPENDIX A

## JOBSITE RATIO FOR LICENSED INDENTURED TRADES

| TRADE | COMMERCIAL | RESIDENTIAL | MANUFACTURING/SHOP (controlled environment) | EXPLANATION |
|---|---|---|---|---|
| Electricians | 1-1 then 1-3 | 1-1 | 1-1 then 1-3 | *See Definitions |
| Master Oil Burner Electrician | 1-1 | 1-1 | | As provided in §5-6-24 |
| Journeyperson Oil Burner Electrician | 1-1 | 1-1 | 1-1 | As provided in §5-6-24 |
| Master Alarm Electrician | 1-1 | 1-1 | 1-1 | As provided in §5-6-24 |
| Journeyperson Alarm Electrician | 1-1 | 1-1 | 1-1 | As provided in §5-6-24 |
| Electric Sign Contractor | 2-1 | 2-1 | 2-1 | As provided in §5-6-24 |
| Electric Sign Installer | 2-1 | 2-1 | 2-1 | As provided in §5-6-24 |
| Plumbers | 1-1 | 1-1 | 1-1 | As provided in §5-20-25 and rules and regulations |
| Elevators | 1-1 | 1-1 | 1-1 | Elevator Safety Code Rule #4.0 "Requirements" |
| Telecommunications | 2-1 | 2-1 | 2-1 | As provided in §5-70-5 |
| Operating Engineers | 1-5 | 1-5 | 1-5 | Must have license to operate equipment |
| Master Mechanical Contractor | 1-1 then 1-3 | 1-1 | 1-1 | Unlimited heating, cooling and process work. (Rules and Regulations) |
| Refrigeration Master I | 1-1 then 1-3 | 1-1 | 1-1 | Unlimited as to restriction on refrigeration work. (Rules and Regulations) |

## JOBSITE RATIO FOR LICENSED INDENTURED TRADES

| TRADE | COMMERCIAL | RESIDENTIAL | MANUFACTURING/SHOP (controlled environment) | EXPLANATION |
|---|---|---|---|---|
| Refrigeration Master II | 1-1 | 1-1 | 1-1 | Limited to installations up to 20-ton comfort cooling systems and installations up to 3 ton product cooling or up to one (1) horsepower. |
| Pipefitter Master I | 1-1 then 1-3 | 1-1 | 1-1 | Unlimited as to restriction on pipefitting and heating work. (Rules and Regulations) |
| Pipefitter Master II | 1-1 | 1-1 | 1-1 | Commercial and residential heating installations are limited to 500,000 BTU's. (Rules and Regulations) |
| Sheet Metal Master I | 1-1 then 1-3 | 1-1 | 1-1 | Unlimited as to restriction on sheet metal work. (Rules and Regulations) |
| Sheet Metal Master II | 1-1 | 1-1 | 1-1 | Limited to installation of sheet metal on a residential occupancy as defined by the RI Building Code current edition. (Rules and Regulations) |
| PJF/Natural Gas Service Master II | 1-1 | 1-1 | 1-1 | Limited to installation of warm air heating furnaces not exceeding 500,000 BTU's. (Rules and Regulations) |
| PJF/Propane Gas Service Master II | 1-1 | 1-1 | 1-1 | Limited to installation of warm air heating furnaces not exceeding 500,000 BTU's. (Rules and Regulations) |
| Refrigeration Journeyperson I | 1-1 and 1-3 | 1-1 | 1-1 | Unlimited as to restriction on refrigeration work. (Rules and Regulations) |
| Refrigeration Journeyperson II | 1-1 | 1-1 | 1-1 | Limited to installations up to 20-ton comfort cooling systems and installations up to 3 ton product cooling or one (1) horsepower freezing. (Rules and Regulations) |
| Pipefitter Journeyperson I | 1-1 then 1-3 | 1-1 | 1-1 | Unlimited as to restriction on pipefitting and heating work. (Rules and Regulations) |

## JOBSITE RATIO FOR LICENSED INDENTURED TRADES

| TRADE | COMMERCIAL | RESIDENTIAL | MANUFACTURING/SHOP (controlled environment) | EXPLANATION |
|---|---|---|---|---|
| Pipefitter Journeyperson II | 1-1 | 1-1 | 1-1 | Commercial and residential heating installations are limited up to 500,000 BTU's. (Rules and Regulations) |
| Sheet Metal Journeyperson I | 1-1 then 1-3 | 1-1 | 1-1 | Unlimited as to restriction on sheet metal work. (Rules and Regulations) |
| Sheet Metal Journeyperson II | 1-1 | 1-1 | 1-1 | Limited to installation of sheet metal on a residential occupancy as defined by the RI Building Code current edition. (Rules and Regulations) |
| Fire Suppression | 1-1 | 1-1 | 1-1 | Limited to the dry or wet chemical fire suppression systems. (Rules and Regulations) |
| Gas Serviceperson (Natural Gas) | 1-1 | 1-1 | 1-1 | Limited to installing headers, meters and reconnection of gas service to existing equipment and related piping. Service work on natural gas burners and service of appliances and warm air heating equipment which are fueled by natural gas. Must work under a Pipefitter Master I or Pipefitter Master II. Warm air furnace installations must be performed with a Pipefitter Master I, Pipefitter Master II, Pipefitter Journeyperson I, or Pipefitter Journeyperson II. (Rules and Regulations) |

## JOBSITE RATIO FOR LICENSED INDENTURED TRADES

| TRADE | COMMERCIAL | RESIDENTIAL | MANUFACTURING/SHOP (controlled environment) | EXPLANATION |
|---|---|---|---|---|
| Gas Serviceperson (Propane Gas) | 1-1 | 1-1 | 1-1 | Limited to the installation of propane tanks, regulators, including residential gas stoves, gas logs, gas grills, and space heaters and installation and service of appliances and warm air heating equipment which are fueled by propane. Must work for a Pipefitter Master I or Pipefitter Master II. Installations must be performed with a Pipefitter Master I, Pipefitter Master II, Pipefitter Journeyperson I, or Pipefitter Journeyperson II. (Rules and Regulations) |
| Synthetic Exhaust Ducting Limited II | 1-1 | 1-1 | 1-1 | Limited to the installation of plastic exhaust ducting, not related to heating or air conditioning. (Rules and Regulations) |
| Oil Burner Serviceperson | 1-1 | 1-1 | 1-1 | Limited to service work, installation of oil burners, oil lines, oil storage tanks, related piping, and warm air heating equipment. Must work for a Pipefitter Master I or Pipefitter Master II (in the case of residential service work, the serviceperson's employer must also possess an Electric Oil Burner Contractor's license). Installations must be performed with a Pipefitter Master I, Pipefitter Master II, Pipefitter Journeyperson I, or Pipefitter Journeyperson II. This license shall limit the holder to do work on electric wiring or equipment located between the burner thermal switch and the oil burner and equipment. (Rules and Regulations) |

## JOBSITE RATIO FOR LICENSED INDENTURED TRADES

| TRADE | COMMERCIAL | RESIDENTIAL | MANUFACTURING/SHOP (controlled environment) | EXPLANATION |
|---|---|---|---|---|
| Gas Station | 1-1 | 1-1 | 1-1 | Limited to installation of gas stations, including underground piping and tank installation, piping to the pumps, vents, spill and fill lines. (Rules and Regulations) |
| Fire Protection Master | 1-1 then 1-3 | 1-1 | 1-1 | Unlimited as to restriction on fire protection work. (Rules and Regulations) |
| Fire Protection Journeyperson | 1-1 then 1-3 | 1-1 | 1-1 | Unlimited as to restriction on fire protection work. (Rules and Regulations) |

DEFINITIONS:

Manufacturing – A commercial or industrial facility which makes or processes (a raw material) into a finished product by a large-scale industrial operation.

Shop – A controlled environment within the premises owned and/or occupied by the employer.

Residential - Three (3) dwelling units and under.

Commercial - Commercial Building or one that contains more than three (3) dwelling units.

## JOBSITE RATIOS FOR UNLICENSED TRADES

| TRADE | COMMERCIAL | RESIDENTIAL | MANUFACTURING/SHOPS (controlled environment) |
|---|---|---|---|
| Boiler Makers | 1-5 | 1-1 | 1-1 |
| Bricklayers | 1-5 | 1-5 | 1-5 |
| Carpenters | 1-5 | 1-5 | 1-4 |
| Ironworkers | 1-5 | 1-5 | 1-5 |
| Laborers | 1-5 | 1-1 | 1-1 |
| Painters | 1-3 | 1-1 | 1-1 |
| Glaziers | 1-3 | 1-1 | 1-1 |
| Plasterers | 1-4 | 1-1 | 1-1 |
| Cement & Masons | | | |
| Roofers | 1-5 | 1-1 | 1-1 |

**WITH REGARD TO PREVAILING WAGE PROJECTS, THE FEDERAL LAW MANDATES THAT THE APPLICABLE PROVISIONS OF A COLLECTIVE BARGAINING AGREEMENT (CBA) SHOULD BE CONSIDERED IN DETERMINING RATIOS; THEREFORE, IF THE RATIO IN A CBA IS MORE FAVORABLE THAN THE RATIOS SET BY THE SAC, THE PREVAILING WAGE UNIT SHOULD USE THE CBA RATIO FOR THE SPECIFIC PROJECT INVOLVED. IF THE CBA IS LESS FAVORABLE, THE SAC RATIO WILL BE MAINTAINED. NATURALLY, IN ORDER TO CONSIDER THE RATIO SET IN A CBA, SUCH AN AGREEMENT WOULD HAVE TO EXIST FOR THE TRADE, AND THE PREVAILING WAGE UNIT WOULD BY PRIVY TO THAT DOCUMENT. INFORMATION REGARDING THE APPRENTICESHIP RATIO CONTAINED IN A CBA MAY BE REQUESTED FROM THE DEPARTMENT'S PREVAILING WAGE UNIT BY ANY POTENTIAL BIDDER.

# EXHIBIT S

# VERMONT STATE APPRENTICESHIP TRAINING PROGRAM

## OUT-OF-STATE PROGRAM SPONSORS

Programs will not be registered unless the employer has a staffed office located in this state. A post office box is not sufficient. It does not matter where the apprentice lives. If an employer has an office in Vermont as well as another state, a check with that state's Apprenticeship Registration Agency must be made in order to prevent "double-counting" of licenses.

You will need to obtain a list of the names of all trained individuals working for the employer who are to be used in satisfying the Vermont ratio prior to contacting the other state agency. This list can be compared with the other state's information regarding the individuals from the company that are being used to satisfy that state's ratio. Employers cannot count the same individual insofar as satisfying ratio requirements in more than one state at the same time.

# EXHIBIT T

## GUIDELINES GOVERNING AN OUT-OF-STATE BUSINESS PARTICIPATING IN REGISTERED APPRENTICESHIP IN VIRGINIA

Purpose:

The purpose of these guidelines is to ensure that program sponsors with registered apprentices working out-of-state continue to meet the established standards of the Virginia Apprenticeship Council.

Intent:

A program sponsor, (either INJ, IJ, GNJ, or GJ) who works apprentices out-of-state either directly or through a subsidiary organization or through a participating employer is responsible to ensure that, while apprentices are working out-of-state, the program continues to meet the established standards of the Virginia Apprenticeship Council. Apprentices working out-of-state must receive appropriate compensation, training and work experience consistent with their prescribed work processes and training plans, appropriate and timely related instruction, proper supervision and instruction on the job, and safe working conditions, and all other provisions of the apprenticeship agreement. The Virginia Apprenticeship Council will hold the program sponsor accountable.

Definitions:

a.    out-of-state business: any business with its main headquarters in another state that has contracted (which includes signed contracts, required licensing, etc.) to do business in Virginia;

b.    individual non-joint apprenticeship sponsor (INJ): an individual employer having no bargaining agreement with those employees in the trade which is apprenticed;

c.    individual joint apprenticeship sponsor (IJ): an individual employer having a bargaining agreement with those employees engaged in the trade which is apprenticed;

d.    Group non-joint apprenticeship sponsor (GNJ): a registered apprenticeship sponsor which is a group and/or an association of employers whose members participating under the standards of apprenticeship have no bargaining agreement with their employees;

e.    Group joint apprenticeship sponsors (GJ): a registered apprenticeship sponsor which is a group and/or an association of employers whose members participating under the standards of apprenticeship have a bargaining agreement with their employees;

f.    Virginia Apprenticeship Program: the program within the Virginia Department of Labor and Industry that registers apprenticeship sponsors for the Virginia Apprenticeship Council.

Adopted by the Virginia Apprenticeship Council December 5, 1996
Revised by the Virginia Apprenticeship Council March 21, 2002

GUIDELINES:

Out-of-state businesses electing to participate in voluntary apprenticeship training in the Commonwealth of Virginia must meet the following guidelines to be eligible to participate:

1.    the out-of-state business must furnish the Virginia Apprenticeship Program written evidence of participation in apprenticeship training in the state in which its main headquarters is located or in another state or provide a satisfactory explanation for non-participation;

2.    the out-of-state business must provide the Virginia Apprenticeship Program with a written description of the efforts to be made to assure continued employment and training for apprentices in the event that the business discontinues operations in the Commonwealth of Virginia; and

3.    the out-of-state business must maintain an established physical address within the Commonwealth of Virginia.

Once the out-of-state business's eligibility for participation in voluntary apprenticeship in the Commonwealth of Virginia has been established, it must comply with the *Regulations Governing the Administration of Apprenticeship Programs in the Commonwealth of Virginia.* The out-of-state business must apply for registration as either an Individual Non-Joint (INJ) apprenticeship sponsor or an Individual Joint (IJ) apprenticeship sponsor; or, that business may participate with a Group Non-Joint (GNJ) or a Group Joint (GJ) apprenticeship sponsor as one of the employers of the sponsoring group.

The out-of-state business electing to participate with either the Group Non-Joint (GNJ) or the Group Joint (GJ) apprenticeship sponsor may establish its' eligibility for participation in voluntary apprenticeship training in the Commonwealth of Virginia by having the registered Group Non-Joint (GNJ) or Group Joint (GJ) apprenticeship sponsor, in which the out-of-state business plans to participate, notify the Virginia Apprenticeship Program of the out-of-state business's planned participation and verify to the Virginia Apprenticeship Program that the out-of –state business meets the above definitions and guidelines.

The Virginia Apprenticeship Program's decisions regarding the eligibility of out-of-state businesses to participate in voluntary apprenticeship training in the Commonwealth of Virginia may be appealed to the Virginia Apprenticeship Council.  The Council's decision shall be finial.