IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRI-M GROUP. LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-556-SLR |
| | ) |
| THOMAS B. SHARP, SECRETARY, | ) |
| DELAWARE DEPARTMENT OF | ) |
| LABOR, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington this 29th day of September, 2008, having considered defendant's motion to dismiss and the papers filed in connection therewith;

IT IS ORDERED that said motion (D.I. 6) is denied, for the reasons that follow:

1. **Background.** Plaintiff Tri-M Group, LLC ("plaintiff") brought this action for declaratory and injunctive relief against defendant Thomas B. Sharp ("defendant"), Secretary of the State of Delaware Department of Labor ("DDOL"), alleging that the DDOL has discriminated against plaintiff and other out-of-state contractors by refusing to recognize their out-of-state registered apprentices for purposes of the Delaware Prevailing Wage Law, thereby burdening interstate commerce without justification in violation of the Commerce Clause of the United States Constitution. The following facts, taken from the complaint (D.I. 1), are essentially undisputed and are accepted as true for purposes of this proceeding.

2. **Facts.** Plaintiff is a Pennsylvania-based electrical contracting company that has performed, and plans to continue to perform, work on state-funded construction projects in Delaware. The DDOL is charged with administering and enforcing the Delaware Prevailing Wage Law, 29 Del. C. § 6960 *et seq.*, in connection with such projects. Plaintiff maintains an apprenticeship program that is registered with the Pennsylvania Apprenticeship and Training Council of the Pennsylvania Department of Labor and Industry ("PATC") under standards approved by PATC and the Federal Committee on Apprenticeship. Plaintiff employs apprentice electricians who participate in plaintiff's apprenticeship program and who are individually registered with PATC in that apprenticeship program pursuant to individual apprenticeship agreements.

3. Plaintiff was the successful bidder on a certain contract for electrical work at the Delaware State Veterans Home ("the Project"), a construction project in Milford, Delaware, that is funded in part by Delaware state funds. Plaintiff began work on the Project in August 2005; plaintiff employed Pennsylvania-registered apprentices for the project and initially paid them apprentice wage rates based on DDOL's prevailing wage determination for the Project.

4. In May 2006, DDOL's Office of Labor Law Enforcement conducted a prevailing wage compliance audit of plaintiff's payroll records from the Project. Plaintiff was informed that it had violated the Delaware Prevailing Wage Law by paying apprentice rates to its Pennsylvania-registered apprentices who were not registered with DDOL. Plaintiff was further informed that it was required to either perform a self-audit and make payment for any prevailing wage deficiencies or submit to further investigation by DDOL's Office of Labor Law Enforcement and face potential legal

2

action and civil penalties. Plaintiff chose the former direction. As a result of the self-audit, plaintiff was informed that six (6) Pennsylvania-registered apprentices were not recognized as apprentices under Delaware law and, therefore, had to be paid the higher journeyman rate of pay.

5. It is undisputed that the DDOL will not recognize plaintiff's Pennsylvania-registered apprentices because they are not registered in Delaware. Moreover, DDOL will not register plaintiff's Pennsylvania-registered apprentices unless plaintiff has a permanent place of business in Delaware.[1] Defendant relies on two regulations in support of DDOL's position:

(a) Section III.D.1.a. of the Delaware Prevailing Wage Regulations defines "apprentice," for purposes of the Prevailing Wage Law, as "persons who are indentured and employed in a bona fide apprenticeship program and individually registered by the program sponsor with the Delaware Department of Labor."

(b) Section 3.1 of the Delaware Apprenticeship and Training Rules and Regulations provides that, to be a registrant or sponsor of an apprenticeship program registered in Delaware, an employer must hold and maintain a permanent place of business in Delaware.

6. The effect of enforcing the above regulations is that non-Delaware contractors working on Delaware public works projects, including plaintiff, are required to pay journeyman rates to their non-Delaware apprentices, while Delaware contractors on the same projects are permitted to pay substantially lower apprentice rates to their

---

[1] A site trailer that plaintiff had maintained in Delaware for many years has not qualified as a permanent place of business for purposes of this requirement.

3

Delaware apprentices, thereby placing plaintiff and other out-of-state public works contractors at a competitive disadvantage. Plaintiff seeks declaratory and injunctive relief against defendant in his official capacity.

7. **Standard of review.** Defendant's motion seeks the dismissal of plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is appropriate only if the rights claimed by a plaintiff are "'so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy.'" *Growth Horizons, Inc. v. Delaware County, Pa.*, 983 F.2d 1277, 1280-81 (3d Cir. 1993) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)). In considering defendant's motion under Rule 12(b)(1), the court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of plaintiff. *See Erickson v. Pardus,* — U.S. —, 127 S. Ct. 2197, 2200 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* — U.S. —, 127 S. Ct. 1955, 1964 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 1964-65 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to

raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 1959.

8. **Analysis.** Defendant has conceded that he is a "person" subject to suit for prospective relief under 42 U.S.C. § 1983 and that the Eleventh Amendment does not bar plaintiff's claims for such relief against him in his official capacity.[2] The court finds that plaintiff's claim is ripe for judicial review, as plaintiff is continuing to work on Delaware public works projects and the DDOL has issued credible threats that it will enforce the very regulations that are challenged in the instant litigation. *See Planned Parenthood of Central N.J. v. Farmer*, 220 F.3d 127, 148 (3d Cir. 2000). Finally, the court finds that plaintiff has standing to challenge the regulations, as it has brought suit under 42 U.S.C. § 1983 to vindicate its own constitutional right to engage in interstate commerce free of the alleged discriminatory burdens imposed by the challenged regulations, to wit, the requirement to pay higher wages to Pennsylvania-registered apprentices than to Delaware-registered apprentices, thereby placing plaintiff at a competitive disadvantage vis a vis Delaware businesses.[3] The Third Circuit has held that "construction contractors have standing to challenge a [discriminatory] ordinance upon a showing they are 'able and ready to bid on contracts [subject to the ordinance] and that a discriminatory policy prevents [them] from doing so on an equal basis.'"

---

[2]Defendant's argument regarding "qualified immunity," therefore, is not relevant to the facts of record.

[3]The court does not credit defendant's argument that plaintiff lacks standing because it is not altogether foreclosed from bidding on state projects. The question raised by plaintiff's suit is whether it can bid on equal footing with businesses that are similarly situated, but for the fact that one business is a Delaware business and one is not.

*Contractors Ass'n of Eastern Pa., Inc. v. City of Philadelphia,* 6 F.3d 990, 995 (3d Cir. 1993) (quoting *Northeastern Fla. Chapter of the Associated Gen. Contractors of America v. City of Jacksonville,* 508 U.S. 656, 666 (1993)).

9. The question that remains, therefore, is whether plaintiff's complaint states a claim for violation of the dormant Commerce Clause. The Commerce Clause of the United States Constitution provides that "Congress shall have Power . . . [t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. Although it is phrased as an affirmative grant of power to Congress, the Commerce Clause has long been understood to have a "negative" or "dormant" aspect that prohibits the states from unjustifiably discriminating against or burdening interstate commerce. *See Oregon Waste Sys., Inc. v. Department of Environmental Quality,* 511 U.S. 93, 98 (1994). Consequently, a state law or regulation is unconstitutional and invalid if it discriminates against interstate commerce – that is, if it results in "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.* at 99. A finding that a state law or regulation creates such "economic protectionism" may be made on the basis of discriminatory purpose or discriminatory effect. *See Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 270 (1984). A discriminatory restriction of commerce is subject to the "strictest scrutiny," and must be struck down unless the state can prove that it "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Oregon Waste,* 511 U.S. at 100-101 (citation omitted).

10. Defendant argues in support of its motion that "Congressional consent is a

defense to a dormant Commerce Clause challenge." (D.I. 41 at 12)  More specifically, because "[t]he legislative history of the Fitzgerald Act[4] clearly shows that Congress intended the states to regulate their own apprenticeship programs," "Delaware is free to regulate its apprenticeship program" as it sees fit.

11. In order for Congressional consent to be a defense to a Commerce Clause challenge, however, it must be "unmistakenly clear"[5] that Congress intended to permit **discriminatory** state regulation.  See Granholm v. Heald, 544 U.S. 460, 489 (2005). Looking to the record,[6] the court cannot say that the rights claimed by plaintiff are so devoid of merit as not to involve a federal controversy.

12. **Conclusion.**  For the reasons stated, defendant's motion to dismiss (D.I. 6) is denied.  Plaintiff's counsel shall confer with defendant's counsel as to an appropriate case management order.  The court shall conduct a telephonic scheduling conference

---

[4]All federal and state apprenticeship programs are derived from the National Apprenticeship Act of 1937, 29 U.S.C. § 50, commonly known as the Fitzgerald Act, which was enacted to protect apprentices through the establishment of minimum labor standards.  Assuming the facts of the complaint to be true, the court notes at this juncture the irony that, through enforcement of the challenged regulations, Delaware apprentices are being paid less that Pennsylvania apprentices.

[5]See South-Central Timber Development, Inc. v. Wunnicke, 467 U.S. 82, 91 (1984); Norfolk Southern Corp. v. Oberly, 822 F.2d 388, 390 (3d Cir. 1987).

[6]Defendant's efforts to comply with the court's request for more information vis a vis comparable regulations are appreciated.  As it turns out, however, such information raised more questions that were answered. (Compare, e.g., D.I. 41, exs. H-T with D.I. 43, exs. 1-2)

on **October 8, 2008 at 10:30 a.m.**  Plaintiff's counsel shall initiate the call.

                                                             _____
                                                             United States District Judge