IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRI-M GROUP, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-556-SLR |
| | ) |
| THOMAS B. SHARP, SECRETARY, | ) |
| DELAWARE DEPARTMENT OF | ) |
| LABOR, | ) |
| | ) |
| Defendant. | ) |

M. Duncan Grant, Esquire and Maria L. Panichelli, Esquire of Pepper Hamilton LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Stephen J. Sundheim, Esquire of Pepper Hamilton LLP, Philadelphia, Pennsylvania.

Linda M. Carmichael, Esquire, Deputy Attorney General, State of Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: April 14, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Tri-M Group, LLC ("plaintiff") brought this action for declaratory and injunctive relief against defendant Thomas B. Sharp ("defendant"), then Secretary of the State of Delaware Department of Labor ("DDOL"), alleging that the DDOL has discriminated against plaintiff and other out-of-state contractors by refusing to recognize their out-of-state registered apprentices for purposes of the Delaware Prevailing Wage Law, thereby burdening interstate commerce without justification in violation of the Commerce Clause of the United States Constitution. (D.I. 1) In lieu of a response, defendant moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Following oral argument on the motion, the court allowed defendant to supplement the record with evidence of legislative history and states with regulations similar to the prevailing wage regulations at issue. (D.I. 39) The court subsequently denied defendant's motion. (D.I. 44) Discovery proceeded and has now closed. Presently before the court are cross-motions for summary judgment. (D.I. 71; D.I. 72) The court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(3). For the reasons that follow, the court grants plaintiff's motion and denies defendant's motion.

## II. BACKGROUND

### A. The Parties

The case at bar addresses the constitutionality of Delaware's statutory scheme as it relates to the applicable rates of pay for Delaware and non-Delaware-registered

2

trade apprentices working on state-funded projects. Plaintiff is a Pennsylvania-based electrical contracting company that has performed, and plans to continue to perform, work on state-funded construction projects in Delaware. Plaintiff maintains an apprenticeship program that is registered with the Pennsylvania Apprenticeship and Training Council of the Pennsylvania Department of Labor and Industry ("PATC") under standards approved by PATC and the Federal Committee on Apprenticeship. (D.I. 74, ex. 2) Plaintiff employs apprentice electricians who participate in plaintiff's apprenticeship program and who are individually registered with PATC in that apprenticeship program pursuant to individual apprenticeship agreements. Neither plaintiff nor its apprentices are registered in Delaware.

### B. The DDOL's Investigation

Plaintiff was the successful bidder on a contract for electrical and building automation work at the Delaware State Veterans Home ("the Project"), a construction project in Milford, Delaware, that is funded in part by Delaware state funds. Nason Construction, Inc. was the general contractor; plaintiff was the electrical subcontractor. Plaintiff began work on the Project in August 2005; plaintiff employed Pennsylvania-registered apprentices for the project and initially paid them apprentice wage rates based on DDOL's prevailing wage determination for the Project. The DDOL is charged with administering and enforcing the Delaware Prevailing Wage Law, 29 Del. C. § 6960 et seq. (hereinafter, the "PWL"), in connection with such projects. See 19 Del. C. § 105(a)(1). As a subcontractor, plaintiff was subject to the PWL.

On March 26, 2009, Daniel Nelson ("Nelson"), a Labor Law Enforcement Officer with the Office of Labor Law Enforcement of the DDOL, conducted an on-site

inspection at the Project site. During his inspection, Nelson spoke with several of plaintiff's employees and sought to identify those working as apprentices. On April 7, 2006, Nelson wrote a letter to plaintiff stating that a case had been opened to verify its compliance with the PWL. Nelson asked plaintiff for copies of all daily logs as well as certified sworn payroll reports for employees working on the Project to demonstrate its compliance with the law; plaintiff timely supplied the requested information, which demonstrated that plaintiff paid its (Pennsylvania-registered) apprentices the Delaware apprentice rate.

As part of his case investigation, Nelson asked the Delaware Apprenticeship and Training Department whether plaintiff's apprentices were registered in Delaware. Nelson was informed that plaintiff did not have an apprentice program registered in Delaware. This necessarily meant that plaintiff's apprentices were not registered in Delaware's Apprenticeship and Training program. On May 9, 2006, plaintiff's Chief Financial Officer Robert Gose ("Gose") spoke with Nelson and informed him that all of plaintiff's apprentices working on the Project were registered in Pennsylvania. Gose asked Nelson how plaintiff could register its apprentices in Delaware. Nelson informed Gose that Delaware requires an apprentice program sponsor to maintain a permanent place of business in Delaware. This was also confirmed by a conversation between Mark Weaber ("Weaber"), plaintiff's Safety and Health Specialist, and Kevin Calio ("Calio") of Delaware's Apprenticeship and Training Department.

After his conversation with Gose, Nelson wrote to plaintiff advising that, upon review of the records supplied by plaintiff, it appeared that plaintiff was "in violation of Delaware's Prevailing Wage Law (29 Del. C. § 6960) and Prevailing Wage Regulation

4

III.D.a. for failure to pay the applicable prevailing wage rates prescribed for th[e Project] to [its] journeymen[1] and apprentices." (D.I. 74, ex. 6) Nelson's letter informed plaintiff that it was required to either perform a self-audit and pay any prevailing wage deficiencies to its Pennsylvania-registered apprentices who plaintiff paid the Delaware apprentice (rather than journeyman) wage, or submit to further investigation by DDOL's Office of Labor Law Enforcement and face potential legal action and civil penalties. (*Id.*) Plaintiff chose the former direction. As a result of the self-audit, plaintiff was informed that six Pennsylvania-registered apprentices working on the Project were not recognized as apprentices under Delaware law and, therefore, had to be paid the higher journeyman rate of pay. On May 18, 2006, plaintiff supplied documentation to Nelson regarding its self-audit, including the amount needed to bring each employee's pay up to the Delaware Prevailing Wage rate and checks for each employee payment. On June 1, 2006, Nelson informed Gose that the DDOL determined that plaintiff was in violation of the PWL and the Regulations but, having demonstrated that plaintiff brought the apprentices' pay up to journeyperson rates, plaintiff now appears to be in compliance with these rules. (D.I. 74, ex. 8)

### C. The Challenged Regulatory Scheme

It is plaintiff's position that the PWL and the DDOL's regulations work in concert to permit in-state contractors on public works projects to pay reduced wage rates to their apprentices while denying out-of-state contractors the same right. (D.I. 74 at 3)

---

[1]According to Nelson, the terms "journeyman" or "journeyperson" and "mechanic" are interchangeable within the context of the regulations. (D.I. 74, ex. 11 at 7:13-8:7) According to the DDOL website, a "journeyperson is nationally recognized as having a well-rounded ability in all phases of their trade."

5

This places plaintiff and other out-of-state public works contractors at a competitive disadvantage, insofar as their project bids must incorporate higher apprentice salaries.[2]

The PWL requires that

> [t]he specifications for every contract or aggregate of contracts relating to a public works project in excess of $100,000 for new construction (including painting and decorating) or $15,000 for alteration, repair, renovation, rehabilitation, demolition or reconstruction (including painting and decorating of buildings or works) to which this State or any subdivision thereof is a party and for which the State appropriated any part of the funds and which requires or involves the employment of mechanics and/or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Delaware Department of Labor, Division of Industrial Affairs, to be prevailing in the county in which the work is to be performed.

29 Del. C. § 6960(a). The PWL imposes a financial penalty on employers who knowingly fail or refuse to pay the prevailing wage rates, and bars employers judicially determined to have violated the PWL from bidding on public construction contracts for a period of three years from the judgment. 29 Del. C. § 6960(e).

Pursuant to 29 Del. C. § 8503(7), the DDOL has implemented Prevailing Wage Regulations to implement the provisions of 29 Del. C. § 6960 (hereinafter, "the Regulations").[3] The Regulations define a "laborer" as including apprentices, or

---

[2]Gose testified that, in his estimation, plaintiff has suffered a loss of $600,000 on the electrical segment of the Project. (D.I. 77, ex. B at 29:16-30:8) There is no indication, however, that this was entirely due to the increased pay for plaintiff's apprentices. Christopher Algard ("Algard"), plaintiff's Business Development Manager under its Building Automation Division, testified that he did the bid estimate for the Project and only used Delaware's prevailing wage rates for journeypersons in that process. (*Id.*, ex. A at 8:5-11:1)

[3]Available at http://www.delawareworks.com/industrialaffairs/Forms/de_prevailing_wage_regulations.pdf (Ed. Feb. 2, 2009)(last accessed April 8, 2010). For ease of reference the court will cite the Regulations as "DPWR §. . . ."

"persons who are indentured and employed in a bona fide apprenticeship program and individually registered by the program sponsor with the [DDOL]." DPWR §§ III(C) & (D)(1)(a). The DDOL periodically publishes its prevailing wage determinations by industry, which state that "non-registered apprentices must be paid the mechanic's rate."[4] The Regulations also provide that non-registered apprentices shall be paid the "wage rate determined by the [DDOL] for the classification of work (s)he actually performed." DPWR § III(D)(2)(b).

Registered apprentices may be paid a percentage of the mechanic's rate corresponding to seniority in the apprenticeship program. DWPR § III(D)(2)(d). These rates are set forth in the Rules and Regulations Relating to Delaware Apprenticeship and Training Law (hereinafter, the "DATL Rules").[5] Specifically, in a 2000-hour apprenticeship program, the minimum apprentice rate is 40% of the mechanic's rate for the first 1,000 hours and 85% for the second 1,000 hours. For an 8,000-hour program, the minimum apprentice rate is 40% for the first 1,000 hours, increasing at each 1,000-hour increment to 46%, 53%, 59%, 65%, 71%, 78% and 85%. The starting pay must always exceed minimum wage, and the final period must correspond to 85% of the mechanic's rate. The applicable rates of pay, therefore, depend both on the length of

---

[4] The prevailing wage rates for building construction effective March 15, 2010 are available at http://www.delawareworks.com/industrialaffairs/services/pwBldgFOIA2010.pdf. Plaintiff has included the 2009 edition with its papers, which also contains the forementioned statement. (D.I. 74, ex. 16)

[5] The DATL Rules are available at http://www.delawareworks.com/industrialaffairs/forms/pdf/07/apprenticeship/apprenticeship.rr.pdf. The cited rates are contained in section 6.2.7.3 of those rules, which the court will hereinafter cite as "DATL Rules § . . ." for ease of reference.

7

the apprenticeship program and how far the apprentice has progressed within the program.

> The DATL Rules contain the following relevant definitions, provided below in full.
>
> "Registrant or Sponsor" refers to any person, association, committee or organization in whose name or title the Program is (or is to be) registered or approved regardless of whether or not such entity is an Employer. To be eligible, the Registrant or Sponsor must be a "Delaware Resident Contractor" or hold and maintain a "Delaware Resident Business License."[6] The Registrant or Sponsor must hold and maintain a permanent place of business, not to include site trailers or other facilities serving only one contract or related set of contracts. To be eligible to be a Registrant or Sponsor, Employer/Business, association, committee or organization must have the training program and an adequate number of Journeypersons to meet the ratio requirements as stated for that particular apprenticeable occupation.
>
> "Delaware Resident Contractor" includes any general contractor, prime contractor, construction manager, subcontractor or other type of construction contractor who regularly maintains a place of business in Delaware. Regularly maintaining a place of business in Delaware does not include site trailers, temporary structures associated with one contract or set of related contracts, nor the holding, nor the maintaining of a post office box within this State. The specific intention of this definition is to maintain consistency with Title 30, Delaware Code, section 2501(3) "Resident Contractor."[7]

DATL Rules § 3.1.[8] Plaintiff has worked in Delaware for many years at the

---

[6]"Delaware Resident Business License" is not separately defined.

[7]Section 2501(3) of the Delaware Code provides the definitions for the laws regarding contractors' license requirements and taxes, and defines "resident contractor" (or "resident subcontractor") for purposes of that section as

> any general contractor, prime contractor, construction manager, subcontractor or other type of construction or construction transportation contractor who **regularly maintains a place of business in this State**.

30 Del. C. § 2501(3) (emphasis added). There is no specific language in this section further defining what a "regularly maintained" place of business is (or is not).

[8]These provisions were added to the DATR Rules in November 1999. *See http://www.legis.delaware.gov/lis/register.nsf/vwRegisters/35/$file/November1999.pdf?o*

AstraZeneca facility in Wilmington, where it maintains a site trailer. As reflected in a June 23, 2006 letter from defendant to plaintiff's counsel,[9] a site trailer does not satisfy the Delaware residency requirement under the DATL Rules § 3.1. Pursuant to these definitions, plaintiff (and other out-of-state contractors) cannot sponsor apprentices without incurring the cost of setting up and maintaining a second office location in Delaware, nullifying any cost benefits from paying a reduced apprentice wage.

### III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*,

---

*penelement.* Until that time, the rules did not contain a permanent place of business requirement. No specific reason was noted for the incorporation of this language in 1999. *See id.* at pp. 641-650. Defendant offers none in its papers.

[9](D.I. 74, ex. 9)

475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

### A. Dormant Commerce Clause

The Commerce Clause of the United States Constitution provides that "Congress shall have Power . . . [t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. Although it is phrased as an affirmative grant of power to Congress, the Commerce Clause has long been understood to have a "negative" or "dormant" aspect that prohibits the states from unjustifiably discriminating against or burdening interstate commerce. *See Oregon Waste Sys., Inc. v. Department of Environmental Quality*, 511 U.S. 93, 98 (1994). Consequently, a state law or regulation is unconstitutional and invalid if it discriminates against interstate commerce – that is, if it results in "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.* at 99. A finding that a state law or

regulation creates such "economic protectionism" may be made on the basis of discriminatory purpose or discriminatory effect. *See Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 270 (1984).

The Third Circuit has articulated three standards of review:

(1) state actions that purposefully or arbitrarily discriminate against interstate commerce or undermine uniformity in areas of particular federal importance are given heightened scrutiny;

(2) legislation in areas of peculiarly strong state interest is subject to very deferential review; and

(3) the remaining cases are governed by a balancing rule, under which state law is invalid only if the incidental burden on interstate commerce is clearly excessive in relation to the putative local benefits.

*See Old Bridge Chemicals, Inc. v. New Jersey Dept. of Environmental Protection*, 965 F.2d 1287, 1291 (3d Cir. 1992) (citations omitted). A discriminatory restriction of commerce is subject to the "strictest scrutiny" and must be struck down unless the state can prove that it "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Oregon Waste*, 511 U.S. at 100-101 (citation omitted). That is, the statute will not be upheld if "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church Inc.*, 397 U.S. 137, 142 (1970).

### B. Analysis

#### 1. Plaintiff's claim is not barred

The court dismisses at the outset defendant's various arguments that plaintiff lacks standing to bring the instant suit. For the first time on summary judgment, defendant argues that the Secretary of Labor is an improper defendant in this § 1983

11

action. Defendant cites no authority supporting this position. (D.I. 79 at 3) The Secretary of Labor heads the DDOL, which administers the state's labor laws. *See* 19 Del. C. § 105(a)(1).

The court has previously held that plaintiff has standing to challenge the regulations, as it has brought suit under 42 U.S.C. § 1983 to vindicate its own constitutional right to engage in interstate commerce free of the alleged discriminatory burdens imposed by the challenged regulations. *See Contractors Ass'n of Eastern Pa., Inc. v. City of Philadelphia,* 6 F.3d 990, 995 (3d Cir. 1993) ("construction contractors have standing to challenge a [discriminatory] ordinance upon a showing they are 'able and ready to bid on contracts [subject to the ordinance] and that a discriminatory policy prevents [them] from doing so on an equal basis.'") (citation omitted).

The court also dismisses defendant's argument that it should abstain from judgment on this matter pending the resolution of an action filed in Delaware Superior Court under the Delaware Administrative Procedures Act ("DAPA"). Plaintiff has not filed an action in state court alleging a violation of the Delaware Constitution, the resolution of which could obviate the necessity of determining the federal question here presented. *Cf. Askew v. Hargrave,* 401 U.S. 476 (1971) (cited by defendant). Nothing in the DAPA (or the Regulations) underscores this court's original jurisdiction to determine federal constitutional claims. Plaintiff is not appealing the DDOL's determination that it was in violation of the PWL; it is challenging the constitutionality of the Regulations and DATL Rules.

Finally, the court rejects defendant's argument that the court should defer to the U.S. Department of Labor's ("USDOL"'s) review of the regulations. Delaware is

recognized by the USDOL as a State Apprenticeship Council ("SAC"), charged with the implementation of federal equal employment opportunity standards. See 29 C.F.R. § 30.15(a)(1). The Office of Apprenticeship ("OA") of the USDOL, in conducting a compliance review in this regard,[10] identified in June 2008 that "Delaware's apprenticeship law" did not conform to 29 C.F.R. parts 29 and 30 because it did not include equal opportunity statements. (D.I. 73, ex. C) Once those provisions were added, the OA "reviewed Delaware's revised Apprenticeship Agreement and . . . determined that the Apprenticeship Agency [was] now in full compliance with 29 C.F.R. parts 29 and 30." (D.I. 73, ex. D)

It is not clear from the record whether the OA examined the Regulations, the DATL Rules, or both in connection with its review, nor is there any indication whether USDOL assessed the constitutionality of the provisions at issue in this case. Even had the USDOL given its blessing in this regard, a proper presumption on plaintiff's motion for summary judgment, this court is not, as defendant avers, obligated to stand in deference to the USDOL on an issue within this court's original jurisdiction. Defendant's assertion that Congress's empowerment of the USDOL with "regulatory power" somehow nullifies the dormant commerce clause issue presented in this case is, at a minimum, not compelling. (D.I. 79 at 6) The court proceeds to address the merits of plaintiff's claim.

### 2. Strict scrutiny applies

The case at bar poses nearly identical facts to those in Joseph Stong, Inc. v.

---

[10] See 29 C.F.R. § 30.15(a)(3).

*Boyd*, Civ. No. 01-2914, 2003 U.S. Dist. LEXIS 11931 (D.N.J. Mar. 26, 2003) (hereinafter, "*Stong*").[11] In *Stong*, a Pennsylvania-based contractor working on New Jersey-funded projects, which are governed by the New Jersey Prevailing Wage Act ("NJPWA"),[12] brought a claim against the Commissioner of the State of New Jersey, Department of Labor ("NJDOL"). 2003 U.S. Dist. LEXIS at *1-3. After a formal hearing, the NJDOL determined that plaintiff violated the NJPWA by failing to pay two apprentices the prevailing (journeyman) wage. *Id.* at *6. Plaintiff's apprentices were registered (with the PATC) in Pennsylvania. Despite providing documentation of this, the NJDOL determined that plaintiff violated the NJPWA because the apprentices were not registered in a program

> approved or certified by the Division of Vocational Education in the New Jersey Department of Education or by the Bureau of Apprenticeship and Training [or "BAT"] in the United States Department of Labor.[13]

*Id.* at *6, *11 (quoting N.J.A.C. § 12:60-7.1 (2003)).[14]

Upon its review, the United States District Court for the District of New Jersey found that, although the regulation at issue was not facially discriminatory, insofar as it applied equally to in-state and out-of-state employers, the practical effect of the

---

[11]The *Strong* decision was unpublished. Defendant has not identified any New Jersey rule prohibiting this court's consideration of the case as persuasive authority.

[12]N.J.S.A. § 34:11-4.1 *et seq.*

[13]Pennsylvania is recognized by the USDOL as a SAC, therefore, the PATC has the power (approved by the BAT) to register apprentice programs for federal purposes. *Stong*, 2003 U.S. Dist. LEXIS at *3. New Jersey has no SAC; the BAT registers New Jersey's apprentices directly. *Id.* Plaintiff's apprentices were registered with PATC (on behalf of BAT), not the BAT directly, as is the case in SAC states.

[14]NJPWA regulations are codified in the New Jersey Administrative Code.

regulation "has been to discriminate against out-of-state apprentices and in turn, out-of-state contractors." *Stong*, 2003 U.S. Dist. LEXIS at *13-14. Because the regulation practically discriminated against interstate commerce, the court found that heightened scrutiny applied. *Id.* at *12.

In *Stong*, "[t]he NJDOL's stated purpose in disallowing out-of-state apprentices was to protect in-state contractors due to similar treatment against them in other states." *Id.* at *17. That is, the NJDOL determined (in 1997) that, because its neighboring states no longer recognized its apprentice programs for the purposes of satisfying their prevailing wage laws, New Jersey would no longer recognize out-of-state apprentice programs. *Id.* at *14, *18. As New Jersey "openly engaged in discrimination . . . in retaliation for out-of-state treatment of [its] contractors," the court found that the "discriminatory purpose and effect of th[e] regulation subject[ed] it to heightened scrutiny and render[ed] it invalid as violative of the dormant commerce [clause]." *Id.* at *18.

Unlike the regulation in *Stong*, which mandated program approval by either New Jersey's Division of Vocational Education or the BAT irrespective of an employer's residency, Delaware's statutory scheme discriminates against out-of-state employers on its face. The DATL rules contain an express in-state presence requirement: a "registrant" sponsor must "regularly maintain[ ] a place of business in Delaware" that is not a site trailer, temporary structure, or post office box. DATL Rules § 3.1. Accordingly, Delaware's regulations effectuate a bias against out-of-state construction

firms seeking to compete for bids on Delaware-funded public works contracts.[15] Heightened scrutiny applies and, therefore, the requirement is invalid unless it "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Oregon Waste*, 511 U.S. at 100-101 (citation omitted); *see also Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978) ("State laws that discriminate against interstate commerce face a virtually *per se* rule of invalidity.") (citation and internal quotations omitted).

### 3. Nondiscriminatory alternatives exist

To this end, defendant argues that it has a legitimate and "very strong" state interest in safeguarding the safety and welfare of its apprentices and that it sees fit to "strictly regulate the use of apprentices" to prevent circumvention of the law. (D.I. 73 at 20, 23; *see also* 19 Del. C. § 201 ("Declaration of policy")) Delaware-registered apprentices must adhere to the guidelines of the Governor's Council on Apprenticeship and Training. The DDOL argues that it cannot require out-of-state programs to adhere to these guidelines for the number of hours necessary to achieve journeyman status, the journeyman-to-apprentice ratio per trade, and training facility attendance policy. (D.I. 77 at 22-23) Defendant also argues that the DDOL is "without the ability to travel to other states to perform on-site visits" at a sponsor's place of business, which are "necessary to confirm the validity of the employer-employee relationship and accompanying insurance responsibilities that coincide with such a relationship." (D.I.

---

[15]The court disagrees with defendant's argument that heightened scrutiny should not apply because the regulations are "applied uniformly to all registered apprentices and sponsors." (D.I. 79 at 10)

16

79 at 11) Defendant avers that the DDOL cannot "check[ ] on whether the business actually exists" by mail. (*Id.*) The DDOL does not have the resources to conduct work-site visits out-of-state to verify the employment of Delaware-registered apprentices that do not work on Delaware projects. (*Id.* at 12) Finally, the DDOL states that it would need a waiver by the apprentice to obtain his or her educational records (with respect to the DDOL's attendance policy), and that the DDOL would have to rely on sponsors to voluntarily comply with the regulations insofar as the DDOL lacks subpoena power to obtain certified payrolls on non-prevailing wage projects. (*Id.* at 12-13)

The court finds the foregoing insufficient to justify the in-state presence requirement of the DATL Rules. As an initial matter, defendant has not adduced any evidence in support for any of its arguments that it cannot satisfy the state's interests in protecting apprentices through other, nondiscriminatory means.[16] The only evidence at bar suggests otherwise. Weaber testified that, during their conversation regarding whether plaintiff could register its apprentices in Delaware, Calio conveyed that the states (Pennsylvania, Delaware, and Maryland) began retaliating against each other by "not allowing each others' apprentices." (D.I. 74, ex. 15 at 49:2-9) Calio acknowledged at his deposition that he indicated to Weaber that Pennsylvania and Delaware do not recognize each other's apprentices. He "possibly" indicated to Weaber that one of the reasons that Delaware was not recognizing Pennsylvania was because Pennsylvania was not recognizing Delaware. (*Id.*, ex. 12 at 105:16-106:2) Regardless of what Calio

---

[16]Heightened scrutiny places the burden on the **state** to demonstrate "both that the statute serves a local purpose and that this purpose could not be served as well by available nondiscriminatory means." See *Maine v. Taylor*, 447 U.S. 131, 138 (1986) (internal quotations and citations omitted).

stated to Weaber, Calio acknowledged that the states were in a contest of wills over apprentice recognition. (*Id.*, ex. 12 at 132:12-135:5)

It is also clear from the record that the DDOL conducted its investigation of plaintiff on the Project without having visited plaintiff's headquarters in Kennett Square, Pennsylvania. Nelson interviewed workers at the Project site in Delaware, and conducted its inquiries through phone calls and letters. The DDOL relied on a self-audit from plaintiff to rectify its PWL violation. After receiving plaintiff's daily logs and certified payroll reports, the DDOL determined that plaintiff was thereafter "in compliance" with the PWL. (D.I. 74, ex. 8) In essence, defendant argues that the DDOL cannot take out-of-state companies at their word, but did exactly that with respect to its investigation of plaintiff.[17] Incidentally, there is no evidence that the DDOL cannot obtain attendance and educational records by mail or electronically (through a student request, waiver or otherwise). To the extent Delaware-registered apprentices work on non-Delaware projects, there is no evidence that the DDOL cannot verify out-of-state work through certified payrolls, tax records, or other documentation as compared to a personal inspection of the apprentice's out-of-state work job site. Delaware has a legitimate interest in protecting its apprentices through regulation, and the court cannot discern any reason why the DDOL must employ discriminatory means to pursue this admirable goal.

---

[17]The PWL grants the DDOL the authority to investigate claims and, if necessary, to bring a legal action for violating the PWL which could result in penalties ranging from $1,000 to $5,000 for each violation and the revocation of the ability of a penalized employer to bid on future public construction contracts.. (D.I. 74, ex. 8; 29 Del. C. §§ 6960(d) & (e)) To this end, sponsors (and non-sponsors alike) have a motivation to comply with a DDOL investigation and the PWL.

States cannot require an out-of-state business "to become a resident in order to compete on equal terms." *Granholm v. Heald*, 554 U.S. 460, 475 (2005) (citing *Halliburton Oil Well Cementing Co. v. Reily*, 373 U.S. 64, 72 (1963)) (holding New York statutes imposing additional burdens on out-of-state wineries seeking to ship wine directly to New York consumers violate the dormant commerce clause). As in *Stong*, and as confirmed by Calio, the DDOL's promulgated in-state presence requirement was responsive to Pennsylvania's failure to recognize Delaware's registered apprentices. Economic protectionism in this form results in discrimination to out-of-state businesses and subjects the regulation to strict scrutiny, in this case, rendering the scheme invalid under the dormant commerce clause. *See id.; see also Stong*, 2003 U.S. Dist. LEXIS at *17-18; *Palmer-Lucan, Inc. v. Martin's Herend Imports, Inc.*, 827 F. Supp. 345, 348 (W.D. Pa. 1993) (applying strict scrutiny standard to, and invalidating, Pennsylvania statute imposing employee contract requirements and penalties for breach of those requirements on "[a]ny person who does not have a permanent of fixed place of business in this Commonwealth" along with meeting other criteria).

## V. Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied.[18] An appropriate order shall issue.

---

[18]The court does not address the parties' cursory arguments with respect to attorney fees. Plaintiff has not identified the lodestar in its papers. The court will take up the issue of the reasonableness of plaintiff's fees should plaintiff file an appropriate motion and in view of a substantive challenge to the reasonableness of that amount by defendant.